**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MUSAIB ISMAILOVYCH ISMAILOV, and AKHMED HADZHYIOVYCH BILALOV, <br><br> Plaintiffs, <br><br>  v. <br><br> MYKHAILO SAFARBEKOVYCH HUTSERIEV, STANISLAV KOSTIANTYNOVYCH KUZNETSOV, and PUBLIC JOINT STOCK COMPANY "SBERBANK OF RUSSIA," <br><br> Defendants. | Case No. 1:24-cv-03287 (AT) |

**MEMORANDUM OF LAW IN SUPPORT OF OMNIBUS MOTIONS TO DISMISS BY THE SBERBANK DEFENDANTS**

Jay S. Auslander
Natalie Shkolnik
Aari Itzkowitz
Michael Van Riper
Wilk Auslander LLP
825 Eighth Avenue, Suite 2900
New York, New York 10019
Tel: (212) 981-2338

*Attorneys for Defendants Stanislav Kostiantynovych Kuznetsov and Public Joint Stock Company Sberbank of Russia*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT................................................................................................ 1

PROCEDURAL AND FACTUAL BACKGROUND .............................................................. 6

    A.   The Alleged Expropriation of Krasnaya Polyana ................................................. 6

    B.   Bilalov's Defeat in *Bilalov I* ............................................................................... 8

    C.   Bilalov's Resurgence in the Ukraine Action ...................................................... 10

        1.   The Newly Discovered Sales Agreement..................................................... 10

        2.   The Forum Selection Clause That Wasn't.................................................... 13

        3.   Bilalov's Commencement of the Ukraine Action, Failure to Serve the Sberbank Defendants, and Consequent Default Judgment ............................. 13

    D.   Plaintiffs Ask this Court to Recognize the Ukrainian Judgment While Ignoring Its Own.............................................................................................................. 15

    E.   Kuznetsov's Relationship With and Indemnification By Sberbank................................ 16

    F.   Plaintiffs' Failure to Allege The Present Status of the Krasnaya Polyana Shares and the Proceeds of Its Sale ............................................................................. 17

    G.   Plaintiffs' Failure to Allege the Present Status of Sberbank CIB ..................................... 17

ARGUMENT ......................................................................................................................... 18

    I.   PLEADING STANDARD AND STANDARD OF REVIEW...................................... 18

        A.   Standard Under Rule 12(b)(1) – Subject Matter Jurisdiction ............................. 18

        B.   Standards Under Rules 12(b)(2), 12(b)(3), and 12(b)(5) – Personal Jurisdiction, Venue, and Service................................................................................................ 19

        C.   Standard Under Rule 12(b)(6) – Failure to State a Claim and Defenses Apparent on the Face of the Complaint ...................................................................................... 20

    II.   PLAINTIFFS DO NOT ALLEGE AND CANNOT ESTABLISH THE EXPROPRIATION EXCEPTION .................................................................................. 21

        A.   Subject Matter Jurisdiction Over a Claim Against A Foreign State Hinges Solely on the FSIA and Its Exceptions................................................................................... 21

        B.   The First Amended Complaint Does Not Establish A Single Element of the Expropriation Exception ................................................................................................ 22

            1.   The Parties' Respective Property Rights in Krasnaya Polyana Are Not "In Issue" In this Action on a Purported Judgment Debt..................................... 22

            2.   Even By Resort to Plaintiffs' Underlying Claim, The Expropriation Exception Does Not Apply................................................................................................ 24

                i.   The Expropriation Exception Does Not Reach Intangible Rights In Property or Rights to Payment............................................................... 24

   ii. Sberbank Cannot Have Expropriated Any Property Because it is Not the Russian Federation .................................................................................... 26

  3. Plaintiffs Allege No Taking of Property "In Violation of International Law" Because They Do Not Allege That the Taking Was Arbitrary, Discriminatory, or Without Provision for Prompt Adequate Compensation ............................ 29

  4. Plaintiffs Allege No Nexus Between Krasnaya Polyana, Its Alleged Expropriation, and the United States ................................................................ 30

III. WITHOUT JURISDICTION OVER SBERBANK UNDER THE FSIA, THE ACTION MUST BE DISMISSED, EVEN IF KUZNETSOV IS NOT IMMUNE ................................................................................................................ 31

 A. No Supplemental Jurisdiction Can Exist Over Kuznetsov ................................... 31

 B. Rule 19 Mandates Dismissal Absent Jurisdiction Over Sberbank ....................... 32

IV. NO PERSONAL JURISDICTION OR *QUASI IN REM* JURISDICTION ATTACHS TO EITHER SBERBANK DEFENDANT IN THIS ACTION ................. 33

 A. Plaintiffs Do Not Allege Long-Arm or Specific Jurisdiction .............................. 33

 B. *Quasi In Rem* Jurisdiction Does Not and Cannot Attach ................................... 35

V. THE SOUTHERN DISTRICT IS NOT A PROPER VENUE .................................... 36

VI. SERVICE OR PROCESS IN THIS RECOGNITION ACTION WAS BOTH INSUFFICIENT UNDER THE FSIA AND IN VIOLATION OF THE HAGUE SERVICE CONVENTION ........................................................................... 37

VII. ALL THREE MANDATORY GROUNDS FOR NON-RECOGNITION OF A JUDGMENT UNDER THE UNIFORM ACT ARE APPARENT ON THE FACE OF THE COMPLAINT ......................................................................................... 39

CONCLUSION ..................................................................................................................... 42

## TABLE OF AUTHORITIES

Page(s)

Cases

*Ackerman v. Ackerman*,
676 F.2d 898..................................................................................................................... 46

*Alberti v. Empresa Nicaraguense de la Carne*,
705 F.2d 250 (7th Cir.1983)............................................................................................. 30

*Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*,
663 F. Supp. 3d 11 (D.D.C. 2023) ............................................................................ 16, 26

*Amidax Trading Grp. v. S.W.I.F. T. SCRL*,
671 F.3d 140 (2d Cir. 2011) ............................................................................................. 19

*AMTO, LLC v. Bedford Asset Mgmt., LLC*,
No. 14-CV-9913, 2015 WL 3457452 (S.D.N.Y. June 1, 2015) ...................................... 43

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)......................................................................................................... 24

*Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*,
999 F.3d 808 (2d Cir. 2021)............................................................................................. 33

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................... 20, 23

*Bilalov v. Gref*,
No. 20-cv-09153 (AT), 2022 WL 4225968 (S.D.N.Y. Sept. 13, 2022) ..................... passim

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
581 U.S. 170 (2017).......................................................................................................... 20

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991)............................................................................................... 23

*Daou v. BLC Bank, S.A.L.*,
42 F.4th 120 (2d Cir. 2022).............................................................................................. 38

*Daventree Ltd. v. Republic of Azerbaijan*,
349 F. Supp. 2d 736 (S.D.N.Y. 2004) .............................................................................. 28

*Ferris v. Cuevas*,
118 F.3d 122...................................................................................................................... 31

*Freund v. Republic of France*,
592 F.Supp.2d 540 (S.D.N.Y. 2008) ................................................................................ 32

*Garb v. Republic of Poland*,
440 F.3d 579 (2d Cir. 2006).............................................................................................. 30

*Gater Assets Ltd. v. AO Moldovagaz*,
  2 F.4th 42 (2d Cir. 2021) ................................................................................................. 38

*George v. Pro. Disposables Int'l, Inc.*,
  221 F. Supp. 3d 428 (S.D.N.Y. 2016) ............................................................................... 22

*Geveke & Co. Int'l v. Kompania Di Awa I Elektrisidat Di Korsou N.V.*,
  482 F. Supp. 660 (S.D.N.Y. 1979) .................................................................................... 41

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005) .............................................................................................. 22

*Hulton v. Bayerische Staatsgemaldesammlungen*,
  346 F. Supp. 3d 546 (S.D.N.Y. 2018) .......................................................................... 19, 32

*Hussein v. Maait*,
  607 F. Supp. 3d 374 (S.D.N.Y. 2022) ............................................................................... 26

*In re Ne. Indus. Dev. Corp.*,
  513 B.R. 825 (Bankr. S.D.N.Y. 2014) ................................................................................. 8

*John Galliano, S.A. v. Stallion, Inc.*,
  15 N.Y.3d 75 (2010) .......................................................................................................... 46

*Kadmon Corp., LLC v. Ltd. Liab. Co. Oncon*,
  No. 22-CV-5271 (LJL), 2023 WL 2346340 (S.D.N.Y. Mar. 3, 2023) ................................. 44

*Kotsopoulos v. Asturia Shipping Co.*,
  467 F.2d 91 (2d Cir.1972) ................................................................................................. 26

*Levitin v. PaineWebber, Inc.*,
  159 F.3d 698 (2d Cir. 1998) .............................................................................................. 23

*Lord Day & Lord v. Socialist Republic of Vietnam*,
  134 F.Supp.2d 549 (S.D.N.Y. 2001) ................................................................................. 28

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) .............................................................................................. 19

*Nemariam v. Fed. Democratic Republic of Ethiopia*,
  491 F.3d 470 (D.C. Cir. 2007) .......................................................................................... 28

*New England Merchants Nat. Bank v. Iran Power Generation & Transmission Co.*,
  495 F. Supp. 73 (S.D.N.Y. 1980) ...................................................................................... 42

*Odhiambo v. Republic of Kenya*,
  930 F. Supp. 2d 17 (D.D.C. 2013) .................................................................................... 35

*Phoenix Light SF Ltd. v. Bank of New York Mellon*,
  66 F.4th 365 (2d Cir. 2023) .............................................................................................. 31

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008) .......................................................................................................... 36

*Republic of the Congo*,
No. 11 CIV. 6176 JFK, 2012 WL 1468486 (S.D.N.Y. Apr. 27, 2012) ...................................... 41

*Rukoro v. Fed. Republic of Germany*,
976 F.3d 218 (2d Cir. 2020) ................................................................................................. 34

*Samantar v. Yousef*,
560 U.S. 305 (2010) .............................................................................................................. 35

*Saudi Arabia v. Nelson*,
507 U.S. 349 (1993) .............................................................................................................. 27

*Schlunk*,
486 U.S. ................................................................................................................................. 44

*Sheafen Kuo v. Gov't of Taiwan*,
802 F. App'x 594 (2d Cir. 2020) .......................................................................................... 34

*Turkiye Halk Bankasi A.S. v. United States*,
598 U.S. 264 (2023) .............................................................................................................. 24

*United States v. Assa Co.*,
934 F.3d 185 (2d Cir. 2019) ................................................................................................. 41

*USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*,
681 F.3d 103 .......................................................................................................................... 19

*Virtual Countries, Inc. v. Republic of S. Afr.*,
300 F.3d 230 (2d Cir. 2002) ................................................................................................. 20

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
751 F.2d 117 (2d Cir. 1984) ........................................................................................... 21, 22

*Water Splash, Inc. v. Menon*,
581 U.S. 271 (2017) .............................................................................................................. 44

*Wyly v. Weiss*,
697 F.3d 131 (2d Cir. 2012) ................................................................................................. 30

*Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*,
215 F.3d 247 (2d Cir. 2000) ............................................................................... 20, 24, 31, 32

Statutes

28 U.S.C. § 1330 ........................................................................................................................... 24

28 U.S.C. § 1331 ........................................................................................................................... 24

28 U.S.C. § 1367 ........................................................................................................................... 36

28 U.S.C. § 1391(f) .................................................................................................................... 5, 41

28 U.S.C. § 1605(a)(2) .................................................................................................................... 1

28 U.S.C. § 1605(a)(3) ................................................................................................... 9, 18, 24, 25

28 U.S.C. § 1605(a)(7)........................................................................................................... 26, 27

28 U.S.C. § 1608................................................................................................................... 17, 42

28 U.S.C. § 1608(b)(3)(C) .......................................................................................................... 42

28 U.S.C. 1391(f)(1) ................................................................................................................... 41

28 U.S.C. 1391(f)(3) ................................................................................................................... 41

28 U.S.C. section 1603 ............................................................................................................... 41

28 U.S.C. section 1603(b)........................................................................................................... 41

Rules

CPLR 302...................................................................................................................................... 38

CPLR 5304.................................................................................................................................... 25

CPLR 5304(b)(1) ......................................................................................................................... 15

Federal Rule of Civil Procedure 12(b)(1) ..................................................................................... 1

Federal Rule of Civil Procedure 44.1 .......................................................................................... 23

Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(5), 12(b)(6), and
    Rule 19 .................................................................................................................................. 47

Rule 12(b)(2)................................................................................................................................... 1

Rule 12(b)(3)................................................................................................................................... 1

Rule 12(b)(5)................................................................................................................................... 1

Rule 12(b)(6)................................................................................................................................... 1

Rule 12(b)(7)................................................................................................................................... 1

Defendants Public Joint Stock Company Sberbank of Russia ("Sberbank") and Stanislav Kostiantynovych Kuznetsov (collectively, the "Sberbank Defendants") respectfully submit this Memorandum of Law in support of their motion to dismiss the First Amended Complaint of Plaintiffs Akhmed Hadzhyiovych Bilalov and Musaib Ismailovych Ismailov for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), lack of personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), insufficient service of process under Rule 12(b)(5), failure to state a claim under Rule 12(b)(6), and – following and contingent upon Sberbank's dismissal – Rule 12(b)(7) for failure to join a required party under Rule 19.

## PRELIMINARY STATEMENT

In this unusual case, an aggrieved businessman tries and fails to set aside the sovereign immunity of a state-owned enterprise under the Foreign Sovereign Immunities Act ("FSIA") by invoking the so-called "expropriation" or "takings" exception to that Act. 28 U.S.C. § 1605(a)(2).

That is not the unusual part. It is actually quite common for aggrieved businessmen to try to inflate an overseas commercial dispute with a foreign state into a "tak[ing] in violation of international law," *id*, in order to circumvent foreign sovereign immunity in a United States court. It is also quite common for such efforts to fail. It is quite *uncommon*, however, for a businessman to fail in the effort once, then return to the same court almost two years later making exactly that same failed argument against the same defendant in the same dispute.

Yet that is exactly what Plaintiff Bilalov has done here. This is his second visit to the Southern District, and the second time he has asked this Court to enter judgment against Sberbank for its alleged expropriation, in early 2013, of his interests in OJSC Krasnaya Polyana ("Krasnaya Polyana," or the "Company"). *See generally Bilalov. v. Gref, et al.*, No. 1:20-cv-09153 (PGG) ("*Bilalov I*"). The Court rejected his first attempt, dismissing a circus parade of state and federal

claims both on the merits and because Sberbank – which is majority-owned by the Russian Federation and therefore a "foreign state" within the meaning of the FSIA – remained immune to those claims, despite Bilalov's invocation of the expropriation exception. *Bilalov v. Gref,* No. 20-cv-09153 (AT), 2022 WL 4225968, at *1 (S.D.N.Y. Sept. 13, 2022).

The Court explained its ruling in close detail in a decision issued September 13, 2022: First, a "taking" is a quintessentially *sovereign* act, and therefore a state-owned enterprise – though undoubtedly a "foreign state" within the meaning of the FSIA – also undoubtedly lacks the sovereign power to execute a "taking," except in those rare instances where it acts as an alter ego of the sovereign. *Id.* at 6. Second, the so-called "domestic takings rule" holds that takings by a foreign state of the property of *its own* nationals does not violate *inter*-national law and therefore precludes any assertion by Bilalov (a Russian citizen, then and now) that Sberbank (a Russian corporation) engaged in a "taking" of Krasnaya Polyana (a Russian company owning property in Russia). After giving Bilalov leave to seek one final amendment, the Court entered final judgment in *Bilalov I* on July 5, 2023.

Bilalov obviously took note of the domestic takings rule, because he returns for a second attempt alongside a new supporter, Ismailov, allegedly a Ukrainian businessman with his own heretofore undisclosed stake in Krasnaya Polyana, and whose claims would (presumably) escape the reach of that rule. Together, Plaintiffs brandish a May 25, 2023 default judgment, which they procured in Ukraine after suing for supposed breach of a stock purchase agreement that they cut from whole cloth: a March 15, 2013 Sales Agreement for the sale of 817 shares of Krasnaya Polyana (the "Sales Agreement"). They ask this Court to ignore its own judgment in *Bilalov I*, and instead recognize the Ukrainian default judgment under New York's Uniform Foreign Country Money Judgments Act – thus conveniently hand-waving away any of the pesky judicial scrutiny

2

this Court applied in *Bilalov I* (or so they think). They ask the Court – again – to set aside Sberbank's sovereign immunity under the expropriation exception to the FSIA, just as Bilalov did in *Bilalov I*. Yet Bilalov's claims still fail, and so do Ismailov's.

First, the FSIA still bars their claims, depriving the court of subject matter jurisdiction. Issue preclusion attaches to this Court' decision in *Bilalov I*, barring re-litigation of Sberbank's immunity by either Plaintiff. But even if it did not, the Court's holding in *Bilalov I* applies with equal force here: (i) the domestic takings rule, even if it does not apply to Ismailov (allegedly Ukrainian), still applies to Bilalov himself; and (ii) Sberbank is still a Russian state-owned enterprise, not the Russian state itself, and is therefore categorically incapable of executing a "taking."

Besides that, Plaintiffs either fail to plead or outright contradict the remaining elements of the expropriation exception: Their alleged property rights to Krasnaya Polyana are not "in issue" here, as the expropriation exception requires, because their lawsuit asks the Court to recognize the Ukrainian default judgment, not adjudicate those rights. They allege that Sberbank expropriated intangible property, but intangible property cannot be "taken" within the meaning of the expropriation exception, and – in any event – a breach of contract is not by itself a taking. They also do not allege a taking "in violation of international law," a concept that embraces more than just the domestic takings rule, requiring the additional showing that the seizure of property was arbitrary, discriminatory, or without provision for adequate compensation. And they do not allege the required commercial nexus between their alleged expropriation and the United States – quite the opposite, as they rely on a subsidiary, Sberbank CIB USA, Inc. ("Sberbank CIB"), to establish that nexus, even though Sberbank CIB no longer exists.

3

Plaintiffs also add a new defendant alongside Sberbank – Kuznetsov. But that does not change the outcome either, because Plaintiffs allege that Kuznetsov acted *solely* in his capacity as an officer and director of Sberbank. That makes Sberbank the real party in interest, and so sovereign immunity shields Kuznetsov in the same measure that it shields Sberbank. And even if that were not the case, the Court must dismiss Plaintiffs' claims against Kuznetsov in Sberbank's absence, because: (i) Plaintiffs lack a jurisdictional anchor through which they may obtain supplemental jurisdiction over Kuznetsov; and (ii) even if they did, Rule 19 requires dismissal because the maintenance of the suit against Kuznetsov ultimately harms *Sberbank*, as Sberbank holds its officers and directors harmless from liabilities and defense costs incurred in the course of their official duties.

Second, Plaintiffs allege neither a basis for personal jurisdiction under New York's long-arm statute, nor specific jurisdiction within the limits of the Due Process Clause. Plainly neither defendant – both Russians – are subject to general jurisdiction in New York. And with respect to the long-arm statute, and specific jurisdiction, Plaintiffs never even try to explain how the alleged forum contacts between Sberbank and New York relate to Krasnaya Polyana, or to the phony March 15, 2013 Sales Agreement, or really any part of this lawsuit whatsoever. Instead, Plaintiffs claim that the Sberbank Defendants submitted to jurisdiction in New York under the Sales Agreement itself, but in support they point to a choice-of-law provision, *not* a forum selection provision. Accordingly, the Sberbank Defendants did not agree to jurisdiction in New York, even assuming that the Sales Agreement is authentic (which it is not).

Third, and relatedly, Plaintiffs have not properly sited venue in the Southern District under the governing provision of the FSIA, because: (i) no part of the events giving rise to this claim occurred in New York, let alone a "substantial" part, nor is Krasnaya Polyana or its shares located

in New York; and (ii) neither Sberbank, nor Sberbank CIB is doing business or licensed to do business in New York. *See* 28 U.S.C. § 1391(f).

Fourth, Plaintiffs have not properly served the Sberbank Defendants, despite obtaining an order from the Court on May 5, 2024 authorizing them to serve process via email to Sberbank's U.S.-based counsel. Service was improper because: (i) Plaintiffs inexplicably withheld the governing law from the Court, moving under Rule 4(f) even though the correct provision – Rule 4(j) – requires that service on a foreign state defendant comply with the FSIA; and (ii) service by email complies with neither Rule 4(f), Rule 4(j), nor the FSIA. That is so because the 1965 Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention") prohibits such service, as does Russian civil procedure.

Fifth, and finally, the First Amended Complaint and its exhibits present on their face three mandatory and complete defenses to recognition of a judgment under the Uniform Act: (i) Plaintiffs pursued the Sberbank Defendants in Ukraine, which – sadly for all people of the region, but conveniently for our opportunistic Plaintiffs – does not afford due process or impartial tribunals to Russian defendants under currently applicable martial law; (ii) Plaintiffs relied on service by a single email to Kuznetsov's alleged personal gmail account, plus publication on the Ukrainian court's website – an approach not reasonably calculated to provide defendants with notice of the Ukrainian lawsuit, but instead calculated to *deprive* them of such notice; and (iii) the Ukrainian court lacked subject matter jurisdiction under its own domestic law. In addition, the claim preclusive effect of *Bilalov I* – here the last-filed judgment in this dispute – forecloses recognition of the Ukrainian court's judgment.

For all of those reasons, the Sberbank Defendants respectfully submit that this Court must dismiss with prejudice and without further leave to amend.

## PROCEDURAL AND FACTUAL BACKGROUND

From top to bottom, this action remains fundamentally identical to Bilalov's previous failed lawsuit in the Southern District. Yes, there is a new plaintiff: Ismailov. (First Am. Compl. ¶ 2) (ECF No. 18). And there are also new individual defendants: Kuznetsov and Hutseriev – both of whom were peripheral players in *Bilalov I*, but who are now named defendants and putative judgment debtors. (*Compare Bilalov I* Compl. ¶¶ 27, 30, 59 (*Bilalov I*, ECF No. 4) *with* First Am. Compl. ¶ 3). There is also a new claim: recognition of the May 25, 2023 Ukrainian default judgment, the product – say Plaintiffs – of a breach of the Sales Agreement, albeit by a *non*-party to this lawsuit. (*Id*. ¶ 3 and Ex. A at 1).

At bottom, however, Bilalov has *always* contended that some mix of Sberbank, its officers, and its agents wronged him in 2013 when, he says, somebody transferred control of Krasnaya Polyana to somebody else. (*See generally Bilalov I* Compl. ¶¶ 18-21, 27-40). As Bilalov piled up one defeat after the next, the exact mix of defendants, the nature of that wrong, and the precise identities of those "somebodies" evolved. Yet despite the shifting parties, theories, venues, claims, and freshly laundered Ukrainian judgment, Bilalov offers nothing that changes the result: dismissal.

### A.    The Alleged Expropriation of Krasnaya Polyana

This time around Bilalov has settled on the following theory: the Sberbank Defendants and Hutseriev cheated him in March 2013 by not paying the purchase price under the Sales Agreement, a blockbuster $200 million deal – supposedly written on a single piece of paper – in which a British Virgin Islands company (*not* Plaintiffs Bilalov or Ismailov) sold its 817 shares of Krasnaya Polyana to one of Hutseriev's companies (*not* defendant Sberbank, Kuznetsov, or Hutseriev himself). (*Id*. ¶¶ 1-2, 91 and Ex. A at 1 (ECF No. 18-2)).

6

According to the First Amended Complaint, Krasnaya Polyana owned a ski resort in the Sochi region of the Russian Federation. (*Id*. ¶ 64). After the International Olympic Committee announced that Sochi would host the 2014 Winter Games in 2007, a Sberbank affiliate joined the ownership of the newly valuable Company, kicking off an eventual struggle over its ownership. (*Id*. ¶¶ 65-67). The first phase of that struggle ended, say Plaintiffs, in March 2013, with the majority of its shares wrested away from them. (*Compare Bilalov I* Compl. ¶¶ 97-99 *with* First Am. Compl. ¶¶ 88-91).

Bilalov says that he initially owned the Company with his wife and his brother Magomed, who managed construction projects on the resort site in preparation for the Games. (*Id*. ¶ 62). Those projects fared poorly, leading the Russian Government to oust the Bilalovs' construction company and replace it with a Turkish concern, allegedly at the urging of Sberbank's CEO, Herman Gref. (*Id*. ¶ 75). Naturally, according to Plaintiffs, Bilalov's failures were all *Sberbank's* fault: first, because, rather than extend the 40 billion ruble line of credit it allegedly promised to Bilalov, Sberbank funded a mere 1 billion ruble bridge loan and injected a paltry $108,000,000 in total capital; second, because Sberbank did not pay for a major highway leading to the site. (*Compare* First Am. Compl. ¶¶ 68-73 *with Bilalov I* Compl. ¶ 66-67).

Worse than that, say Plaintiffs, Sberbank's refusal to extend essentially limitless credit to the Bilalov family was actually all part of an orchestrated scheme to push them out. You see, when the Turkish company replaced Bilalov's family concern in mid-2012, Sberbank injected an additional $50,000,000 of capital into Krasnaya Polyana, but shamelessly insisted on at least two more conditions: that the other partners in the Company would *also* have to contribute capital and that Gref would assume control of the floundering project from the Bilalovs. (First Am. Compl. ¶¶ 75-77). With that foothold, according to the First Amended Complaint, the Sberbank Defendants

and Hutseriev forced Bilalov and his brother Magomed out entirely by March 2013. (First Am. Compl. ¶¶ 82-83). They did so through an alleged combination of threats and a purportedly false report to the Russian Government, which brazenly attributed the delays and overruns at the Krasnaya Polyana site to the family – the Bilalovs – that had managed its construction for four-and-a-half out of the preceding five years. (First Am. Compl. ¶¶ 82-84).

And that is how, in Plaintiffs' telling, what at first glance appears to be a very public dispute occasioned through the incompetent management of a project of national and worldwide importance by a family of oligarchs, was actually a scheme to "steal" Krasnaya Polyana from Bilalov. As this is a Rule 12(b) motion, the Sberbank Defendants will take these absurdities as truth, for now.

### B.    Bilalov's Defeat in *Bilalov I*

In his first lawsuit, however, Bilalov attributed this supposed theft of Krasnaya Polyana to "Reiderstvo," a lurid form of corporate raiding. (*Bilalov I* Compl. ¶¶ 1, 7). He made *no mention whatsoever* of any written contract governing the sale of Krasnaya Polyana's shares, and indeed flatly ruled out that possibility by bringing a claim for unjust enrichment in all three iterations of his complaint, even though that claim "may *only* be brought in the *absence* of a written contract relating to the same subject matter."  *In re Ne. Indus. Dev. Corp.*, 513 B.R. 825, 842 (Bankr. S.D.N.Y. 2014).

Then again, any mention of the Sales Agreement would have contradicted Bilalov's insistence in his very first complaint that he "never gave any instruction to transfer nor personally transferred any other shares." (*Bilalov I* Compl. ¶ 99). Rather, "as Plaintiff found out from mass media, the aforementioned deals were completed, illegally and without Plaintiff's consent or participation." (*Id*). Until he took in the news with his morning coffee, then, Bilalov was evidently

unaware of this "illegal" (yet somehow binding) deal, the deal he now claims to have successfully sued upon in Ukraine. Until he lost *Bilalov I*, that is. Then the story changed.

Despite this factual incoherence, Bilalov at least maintains some modicum of legal coherence, alleging in both actions that Sberbank lacks immunity under the expropriation exception to the FSIA (*see* First Am. Compl. ¶ 39), which pierces immunity in any case "in which rights in property taken in violation of international law are in issue . . . ." 28 U.S.C. § 1605(a)(3). In *Bilalov I*, however, this Court recognized two categorical flaws in that argument: First, a "taking" is a quintessentially sovereign act, and therefore Sberbank – a foreign "*state*" within the meaning of the Act, but emphatically not a foreign *sovereign* – cannot, by definition, execute a taking:

> [F]or the purposes of the FSIA, the term taken refers to acts of a sovereign, not a private enterprise, that deprive a plaintiff of property without adequate compensation.

*Bilalov I*, 2022 WL 4225968, at *6 (S.D.N.Y. Sept. 13, 2022) (citations and quotation marks omitted). Second, the Court then assumed for the sake of argument that Sberbank was an interchangeable alter ego of the Russian Federation itself, but properly held that what is commonly known as the domestic takings rule nevertheless barred the suit:

> Assuming, arguendo, that Plaintiff has alleged that Sberbank Russia acted as an "alter ego" of the Russian Federation when it took Plaintiff's property, the Court *still finds* that the expropriation exception does not apply . . . . because Plaintiff is a citizen of Russia and his property was allegedly taken in Russia by the Russian government . . . .

*Id*. (citations omitted) (emphasis added). Accordingly, on September 13, 2022, the Court dismissed *Bilalov I* for lack of subject matter jurisdiction under the FSIA. But it *also* dismissed every single one of Bilalov's federal and state law claims on the merits, both for failure to state a claim and as time-barred. *Id*. at *1

9

After an improvident interlocutory appeal, and then a final motion to amend – Bilalov's *third* such motion (*Bilalov I*, ECF Nos. 36, 90, 103) – this Court entered final judgment against Bilalov on July 5, 2024. (*Bilalov I*, ECF No. 121). Bilalov did not take an appeal from the actual final judgment, however, nor has he ever pursued post-judgment relief in *Bilalov I* under Rule 60. Given this more than full and fair opportunity to litigate, well-trod principles of issue preclusion collaterally estop any argument by Bilalov that the expropriation exception permits him to sue the Sberbank Defendants for the alleged expropriation of Krasnaya Polyana, and claim preclusion blocks recognition of the Ukrainian judgment outright.

Yet, even if not entitled to formal preclusive effect, the Court's decision in *Bilalov I* still applies with equal force here: Sberbank is still a Russian state-owned enterprise and therefore a "foreign state" within the meaning of the FSIA, but it is not a foreign sovereign, and cannot "take" within the meaning of that law. *Bilalov I*, 2022 WL 4225968, at *6-7.

**C.    Bilalov's Resurgence in the Ukraine Action**

Partially enlightened by the Court's September 13, 2022 ruling, yet entirely undeterred, Bilalov evidently determined that what he needed to avoid the domestic takings rule under the expropriation exception was a non-Russian confederate: Ismailov. Although Ismailov had merited *not a single line* in any of the three operative complaints in *Bilalov I* (ECF Nos. 4, 11, 51), and although – like Bilalov– he is not a party to the concocted Sales Agreement, Ismailov *is* Ukrainian (and presumably not Russian), at least according to the First Amended Complaint. (First Am. Compl. ¶ 6). That was good enough for Bilalov to pursue a judgment overseas that he thought would avoid the domestic takings rule back here in New York.

*1.    The Newly Discovered Sales Agreement*

This time around, Bilalov somewhat downplays the salaciousness of his claims (which, after all, did not work out for him in *Bilalov I*) and instead alleges that – surprise! – the March 15,

2013 Sales Agreement governed the sale of Krasnaya Polyana all along. (*Id*. ¶ 90). What's more, says Bilalov, after losing Sberbank's motion to dismiss on *Bilalov I*, but while his last-ditch motion to amend in that action remained pending, he decamped for Ukraine, sued under the Sales Agreement, and in roughly ten weeks obtained a default judgment against the Sberbank Defendants. (*Id*. ¶¶ 93-95).

That imagined Sales Agreement, however, lends Plaintiffs little support: First, neither Plaintiff is actually party to it, nor are either of the individual defendants, making for a tough breach of contract claim. (*Id*., Ex. A at 1). Rather, Zeeland Development Corporation – a heretofore undisclosed British Virgin Islands entity supposedly under Plaintiffs' joint control – agreed to sell its own 817 shares of Krasnaya Polyana for $200,000,000 to BIN Group of Companies, an entity or group of entities allegedly under control of defendant Hutseriev, which purportedly bought the shares on behalf of Sberbank. (*Id*. ¶88 and Ex. A at 1). That payment, say Plaintiffs, was supposed to have gone to Bilalov and Ismailov within thirty days, not Zeeland, although neither Bilalov nor Ismailov actually owned a single piece of Zeeland until March 15, 2013, the date of the Sales Agreement itself. (First Am. Compl. ¶ 90).

As with Bilalov's past pleadings, the details of Plaintiffs' control over Zeeland are murky and suspect, but are largely irrelevant to this motion. What *is* relevant is that Bilalov and Ismailov claim to have controlled Zeeland and its shares in Krasnaya Polyana pursuant to what the First Amended Complaint describes as a "partnership agreement," (*Id*. ¶ 88), a concession that extends *Bilalov I's* issue and claim preclusive effect from Bilalov to Ismailov, because it confirms that Bilalov and Ismailov were in privity the whole time.

So Zeeland, not Plaintiffs, was the seller of the shares under the Sales Agreement (*Id*., Ex. A), even though Zeeland was *not* a plaintiff in Ukraine, is *not* a judgment creditor under Plaintiffs'

11

Ukrainian default judgment, and is *not* a plaintiff here. Likewise, the buyer of those 817 shares of Krasnaya Polyana under the new-found Sales Agreement, BIN Group – allegedly represented by defendant Hutseriev – was *not* a defendant in Ukraine. (*Id.*) And Sberbank had no obligation to perform for Plaintiffs under the Sales Agreement, instead having a single obligation running in favor of BIN Group: a supposed promise to extend a $15 billion line of credit in exchange for its purchase of the shares for Sberbank. (*Id.*) For their part, the individual defendants – Hutseriev and Kuznetsov – had no obligations under the Sales Agreement *whatsoever*, as they signed as disclosed representatives of BIN Group and Sberbank, respectively. (*Id.*)

Yet, by some weird alchemy, it is Ismailov and Bilalov who are judgment creditors, not Zeeland, and it is Hutseriev, Kuznetsov, and Sberbank, not BIN Group, who are now judgment debtors, all under what Plaintiffs contend is an entirely above-board default judgment conveniently insulated from this Court's scrutiny under the Uniform Act. (First Am. Compl. ¶¶ 2-3). Left unsaid in all of this, moreover, is why Sberbank would need an intermediary to make a share purchase under an Agreement to which it was already a supposed party; or why a Sales Agreement memorializing such a complex arrangement, with such a gob-smacking purchase price and an even bigger loan facility, would run for a single page – all in spite of its literally Olympian subject matter.

The answer is that, in truth, the Sales Agreement is a crude forgery, crafted by Bilalov after his defeat in *Bilalov I* in a manner that tries (but fails) to minimize any facial contradiction with his allegations in *Bilalov I*, so that he can sustain the scam for one last round after laundering his claims through the Ukrainian court system. That is why he never mentioned the Sales Agreement in *Bilalov I* (and alleged a claim – unjust enrichment – that is completely incompatible with it), why neither he nor Ismailov are the sellers under that fake Agreement, why neither Hutseriev nor

12

the Sberbank Defendants were the buyers, and why such a massive deal was drawn up on little more than a cocktail napkin.

Again, however: this is a Rule 12(b) motion, and so the Sberbank Defendants will accept these absurdities solely for purposes of argument. Plaintiffs still lose, because these allegations fail to make out and at times flatly contradict the application of the expropriation exception.

### 2. The Forum Selection Clause That Wasn't

Plaintiffs also claim that Paragraph 5 of this fake Sales Agreement establishes personal jurisdiction over the Sberbank Defendants in both Ukraine and in New York, but its text flatly contradicts Plaintiffs' assertions of personal jurisdiction in Ukraine and then New York:

> In the event of any disputes arising out of this agreement and/or related to the fact of performance of obligations under this agreement, the parties reserve the right to resolve such disputes in accordance with the national laws of the [Commonwealth of Independent States] countries and/or the Laws of the State of New York. . . .

(First Am. Compl. Ex. A ¶ 5). That is not a forum selection clause, however, it is a choice of law clause. And it isn't even that, as it does not actually choose the law of any single forum, but rather presents *both* parties with a menu of thirteen different legal regimes: New York's, plus the thirteen nations of the Commonwealth of Independent States (a post-Soviet regional bloc that has sometimes included Ukraine). (*Id.*)

As such, Paragraph 5 does not constitute consent by the Sberbank Defendants to jurisdiction in either Ukraine or New York, even assuming that the Sales Agreement is authentic. And it does not constitute consent by Kuznetsov *to anything at all*, because Kuznetsov allegedly signed the phony agreement solely on behalf of Sberbank. (*Id.*)

### 3. Bilalov's Commencement of the Ukraine Action, Failure to Serve the Sberbank Defendants, and Consequent Default Judgment

Having found his confederate and conjured up his contract, Bilalov commenced suit on March 2, 2024 in perhaps the one jurisdiction in which a Russian state-owned defendant would be

guaranteed a loss: Ukraine. (First Am. Compl. ¶ 93). That is because – as set forth more fully below at Section VII – Ukraine is presently under martial law, and that martial law outright prevents Russian nationals from mounting any effective defense, thus depriving them of due process and an impartial tribunal.

Moreover, not content to rely on martial law in Ukraine, Plaintiffs ensured that the Sberbank Defendants would receive no notice of the action, by serving both of them via a single email to Kuznetsov's alleged personal gmail account, kuznecov.s.k.1962@gmail.com. (First Am. Compl. ¶ 106, Ex. C ¶ 15). Though dubious service on its face, Plaintiffs would themselves confirm that such service is *not* reasonably calculated to provide effective notice on May 7, 2024, when they moved this Court for an order authorizing alternative service via email to Sberbank's U.S.-based counsel. (ECF No. 14).

Under the FSIA, this was not sufficient service either (see below at Section VI), but it does show that Plaintiffs know very well how to transmit papers when they actually want the Sberbank Defendants to receive them. Nothing stopped Plaintiffs from pursuing a similar course in the Ukrainian action: They simply did not want the Sberbank Defendants to know about their clandestine effort to steal a base in Ukraine after striking out in New York, not until they had their crooked judgment safely in hand.

What's more, the transmittal records attached to the First Amended Complaint show that the only email to Kuznetsov's gmail address went out about half an hour *after* the first hearing in the Ukraine action. (*Compare* First Am. Compl. Ex. E at 6, 20 (ECF No. 18-6) *with* Ex. B at 2 (ECF No. 18-3)). Worse, apparently no subsequent notice of further scheduling in the case was ever provided to Kuznetsov or Sberbank, even though it appears the Ukrainian court later changed the date of the final hearing at least twice, first by order dated April 22, 2023 out to May 11, 2023

(*see id*., Ex E. at 23-24), then again by order dated May 11, 2023 out to May 24, 2023. (*See id*. at 26-27). This single initial email to Kuznetsov, then – even assuming it went to a valid personal email address – informed him of a hearing that had already concluded, and incorrectly informed him of the date of the hearing at which the Ukraine court would subsequently pronounce judgment upon him and Sberbank.

For Plaintiffs, suing under a Uniform Act that denies recognition when defendants lack notice of a claim in sufficient time to defend, *see* CPLR 5304(b)(1), this is not a great start. And, sure enough, with no notice of the action and no way to defend against it even if they had notice, the Sberbank Defendants inevitably fell to a default judgment in Ukraine, issued on May 25, 2024. (First Am. Compl. ¶ 112).

In this fashion, Bilalov laundered his nonsense claims against Sberbank through the Ukrainian court system – despite his then-looming loss in *Bilalov I*, after the Court had granted Sberbank's motion to dismiss under both the FSIA and on the merits. Ismailov thus received a default award in Ukraine in the principal amount of $30,000,000; and Bilalov received $170,000,000 – though, inexplicably, *each* Plaintiff seeks a lump sum judgment for the *full* the amount of $200,000,000.

### D.    Plaintiffs Ask this Court to Recognize the Ukrainian Judgment While Ignoring Its Own

As the First Amended Complaint itself acknowledges, this action does not seek recovery for breach of contract. Rather, it is a suit on a judgment debt: "Defendants have not satisfied any portion of the Default Judgment. Plaintiffs seek this Court's recognition and enforcement of the Default Judgment to stop this injustice." (First Am. Compl. ¶ 5).

Aside from sloppiness with numbers and hangdog posturing about "injustice," Plaintiffs' description of this action is surprisingly apt, as they bring two counts seeking recognition of the

15

judgment debt under New York's Foreign Country Money Judgments Recognition Act and one count of restitution to recover whatever benefit may have accrued to defendants from fluctuating exchange rates. (*Id*. ¶¶ 137, 153, 158). Conspicuously missing, however, are any claims seeking damages for the supposed expropriation of Krasnaya Polyana by conversion or fraud. *Those* claims were central to (and rejected by) *Bilalov I*. Likewise, Plaintiffs bring no claims for breach of contract. *Those* claims, say Plaintiffs, were already conclusively resolved in their favor in Ukraine, preventing any collateral attack by Sberbank on their merits. "Although this may seem like a fine distinction," it is not. *See Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp. 3d 11, 32 (D.D.C. 2023). The expropriation exception applies only where rights in property are "in issue" – and here the judgment debt is at issue, not the parties' underlying rights.

After filing, Plaintiffs brought an *ex parte* motion to authorize alternative service. (ECF No. 14). Yet – even though the First Amended Complaint repeatedly acknowledges that Sberbank is a "foreign state" under the FSIA (*see, e.g.*, ¶¶ 33-36) – Plaintiffs ignored the FSIA in that motion. Rather, they told this Court that Rule 4(f) governed service on the Sberbank Defendants, even though it is Rule 4(j) that plainly governs, and even though *that* provision requires compliance with 28 U.S.C. § 1608. Plaintiffs hid all of that from the Court, which authorized alternative service on the Sberbank Defendants on June 6, 2024.

### E.    Kuznetsov's Relationship With and Indemnification By Sberbank

The First Amended Complaint mentions Kuznetsov sparingly, but makes clear that Kuznetsov acted solely in his capacity as an officer and director of Sberbank. For instance, as Paragraph 90 alleges:

> Plaintiff Ismailov, on behalf of Zeeland, executed a sales agreement with Defendants Hutseriev and Sberbank (*by and through Defendant Kuznetsov*) for the sale of Zeeland's ownership interest in 817 shares of the Company for USD$200 million . . . .

(emphasis added). Similarly, Paragraph 91 alleges that:

> Defendants Hutseriev and Sberbank (*by and through Defendant Kuznetsov*) by way of the Sales Agreement obtained ownership of 817 shares of the Company without payment to Plaintiffs.

(emphasis added). Accordingly, Sberbank is the real party in interest and Kuznetsov is therefore shielded by its immunity. *See, e.g., Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 34 (D.D.C. 2013). Kuznetsov, moreover, remains an officer of Sberbank to this day, and – like most of its American counterparts – Sberbank holds harmless its officers and directors for losses or judgments allegedly incurred as a result of their official acts under Section 3.6.4 of its Code of Corporate Governance. (A copy of Sberbank's Code of Corporate Governance is attached to the accompanying Declaration of Michael Van Riper as Exhibit 1). Consequently, and in Sberbank's absence, the case against Kuznetsov cannot proceed under Rule 19 (see below at Section III.B).

F.      **Plaintiffs' Failure to Allege The Present Status of the Krasnaya Polyana Shares and the Proceeds of Its Sale**

The First Amended Complaint has even less to say about the present ownership of the 817 shares of Krasnaya Polyana that Sberbank supposedly expropriated by breaching the Sales Agreement. This is a curious omission, as the expropriation exception applies only when its so-called "nexus" element applies, and the nexus element applies only when (i) the foreign state owns or operates the expropriated property or its proceeds in the United States, or (ii) one of its agencies or instrumentalities owns the property or its proceeds, and that agency or instrumentality engages in commercial activity in the United States. 28 U.S.C. § 1605(a)(3). Yet on that question – who owns the property or its proceeds? – the First Amended Complaint is utterly silent.

G.      **Plaintiffs' Failure to Allege the Present Status of Sberbank CIB**

The one entity that assuredly does *not* currently own or operate the Krasnaya Polyana shares or their proceeds is Sberbank CIB USA, Inc. ("Sberbank CIB"). Sberbank CIB no longer

exists, and it does not have a New York business license either, because Sberbank CIB dissolved in December 2023. (Van Riper Decl. Ex. 2). That is a fatal problem for Plaintiffs, who apparently had no idea of this easily verifiable fact, and who rely solely upon Sberbank CIB's alleged commercial activity in New York to allege the nexus element: "Sberbank satisfies the Expropriation Exception. 28 U.S.C. § 1605(a)(3). Specifically: . . . Sberbank, *via Sberbank [CIB]*, is engaged in commercial activity in the United States." (First Am. Compl. ¶ 42). That is false: Sberbank CIB engaged in no such activity, *because Sberbank CIB does not exist*.

## ARGUMENT

### I.    PLEADING STANDARD AND STANDARD OF REVIEW

#### A.    Standard Under Rule 12(b)(1) – Subject Matter Jurisdiction

On a motion to dismiss for lack of subject matter jurisdiction under the FSIA – as under a typical motion to dismiss – the Court starts with the assumption that the allegations of the complaint are true. *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 105 n. 4 (2d Cir. 2012). But that is where the similarities end.

Sovereign immunity is a question of both international comity and subject matter jurisdiction, such that: "In reviewing a facial attack to the court's jurisdiction, [the Court] draw[s] all facts – which [it] assume[s] to be true unless contradicted by more specific allegations or documentary evidence – from the complaint and the exhibits attached thereto." *Hulton v. Bayerische Staatsgemaldesammlungen*, 346 F. Supp. 3d 546, 549 (S.D.N.Y. 2018) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)) (alterations in original).

The courts do *not* assume the truth of a fact if contradicted with extrinsic evidence on a motion to dismiss under the FSIA.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Rather, a foreign state moving under Rule 12(b)(1) may rely on extrinsic evidence and testimony, not merely judicially noticeable facts or documents integral to the complaint. The court

18

may likewise rely on that extrinsic material in resolving the motion, or even conduct evidentiary hearings – though no such hearings will be necessary here. *See Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

The FSIA, moreover, imposes a burden-shifting framework, even at the pleading stage: "In contrast to a Rule 12(b)(6) motion to dismiss for failure to state a claim, in a challenge to FSIA subject matter jurisdiction, the defendant must present a *prima facie* case that it is a foreign sovereign . . . . Then, *the plaintiff* has the *burden of going forward with evidence* showing that, under exceptions to the FSIA, immunity should not be granted." *Virtual Countries, Inc. v. Republic of S. Afr.*, 300 F.3d 230, 241 (2d Cir. 2002) (citations and internal quotation marks omitted) (emphases in original).

In addition, although a plaintiff need only allege a "claim to relief that is plausible on its face" to survive a motion to dismiss for failure to state a claim, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), a plaintiff seeking to establish the expropriation exception faces a more difficult test: "[T]he relevant factual allegations must make out a legally valid claim that a certain kind of right is at issue (*property* rights) and that the relevant property was taken in a certain way (in violation of international law)." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017) (emphasis in original). Close enough is not close enough: The First Amended Complaint *must* fully and particularly allege that an expropriation is at issue. *See id*. Plaintiffs fail that test.

### B. Standards Under Rules 12(b)(2), 12(b)(3), and 12(b)(5) – Personal Jurisdiction, Venue, and Service

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), or insufficient service under Rule 12(b)(5), the Court again starts with the presumption that the allegations of the complaint are true, but a defendant may make a

19

facial challenge to the pleadings. *See, e.g., Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). "[W]hen the issue is decided initially on the pleadings and without discovery," the plaintiff must allege "a prima facie case" that personal jurisdiction exists, and when the defendant challenges plaintiffs' allegations with extrinsic evidence, "a plaintiff must demonstrate by a preponderance of the evidence that in personam jurisdiction [actually] exists." *Id*.

The same standards apply on both a motion to dismiss for improper venue under Rule 12(b)(3) and a motion to dismiss for insufficient service. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) ("[W]e will apply the same standard of review in Rule 12(b)(3) dismissals for improper venue as we do in Rule 12(b)(2) dismissals for lack of personal jurisdiction . . . ."); *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 442 (S.D.N.Y. 2016) ("[A]lthough a Rule 12(b)(5) motion is distinct from a Rule 12(b)(2) motion, which challenges the actual existence of personal jurisdiction, both go to the Court's ability to exercise judicial power over the defendant . . . (quotations marks and citations omitted)).

### C.   Standard Under Rule 12(b)(6) – Failure to State a Claim and Defenses Apparent on the Face of the Complaint

Because a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims – not the accuracy of or evidentiary support for a plaintiff's factual contentions – the Court in reviewing the Sberbank Defendants' motion to dismiss for failure to state a claim must assume that all factual allegations of the complaint are true and must draw all reasonable inferences from those facts in favor of plaintiff. *See generally Bell Atl. Corp.*, 550 U.S. at 570.

The Court's indulgence on a Rule 12(b)(6) motion is not limitless, however. Most importantly, the Court "need not accept legal conclusions," *Halebian v. Berv*, 590 F.3d 195, 203 (2d Cir. 2009) (citation and quotation marks omitted) – and here, the First Amened Complaint

abounds with unsupported legal conclusions. The complaint, moreover, "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). Where applicable, the Court may also consider foreign law noticed under Federal Rule of Civil Procedure 44.1. *See Bristol–Myers Squibb Co. v. Matrix Lab'ys Ltd.*, 655 F. App'x 9, 12 (2d Cir. 2016).

## II.    PLAINTIFFS DO NOT ALLEGE AND CANNOT ESTABLISH THE EXPROPRIATION EXCEPTION

### A.    Subject Matter Jurisdiction Over a Claim Against A Foreign State Hinges Solely on the FSIA and Its Exceptions

Section 2(a) of the FSIA, now codified as 28 U.S.C. § 1330, "provides the sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989). "*Amerada Hess* made clear that the FSIA displaces general grants of subject-matter jurisdiction in Title 28—that is, in *civil* cases against foreign states." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 278 (2023). The First Amended Complaint's puzzling insistence on federal question jurisdiction under 28 U.S.C. § 1331 is therefore incorrect: There is no such thing as federal question jurisdiction over a claim against a foreign state defendant, as has been "clear" for thirty-five years. *Id*.

Rather, the only possible source of subject matter jurisdiction over the Sberbank Defendants is the FSIA. Plaintiffs invoke the expropriation exception, which sets aside immunity in any case:

> [I]n which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

28 U.S.C. § 1605(a)(3).

21

The expropriation exception therefore has four main elements, each of which Plaintiffs must establish to set aside immunity, that: "(1) rights in property are in issue; (2) that the property was 'taken'; (3) that the taking was in violation of international law; and (4) that one of the two nexus [with the United States] requirements is satisfied." *Zappia*, 215 F.3d at 251. The nexus element, moreover presents two alternatives: (i) either the property itself or its proceeds are "present in the United States" in connection with commercial activity by the foreign state; or (ii) although not present in the United States, the property or its proceeds is "owned or operated" by an agency or instrumentality that is itself engaged in commercial activity in the United States. 28 U.S.C. § 1605(a)(3).

The First Amended Complaint, however, elides these elements and the rules governing them at almost every turn. It does not allege facts sufficient to show even a single element of the expropriation exception, unwittingly contradicts some of those elements outright, and ignores others entirely, most flagrantly the "owned or operated" prong of the nexus element.

**B.     The First Amended Complaint Does Not Establish A Single Element of the Expropriation Exception**

      *1.     The Parties' Respective Property Rights in Krasnaya Polyana Are Not "In Issue" In this Action on a Purported Judgment Debt*

The expropriation exception does not apply when property rights are in some loose sense implicated by a cause of action or incorporated into the plaintiffs' complaint. No, it applies only to an action in which rights to allegedly expropriated property are actually "in issue." *Id.*  Here, they are not. On the contrary, Plaintiffs' rights to Krasnaya Polyana – whatever they are, and whatever their source and validity – were "in issue" in *Bilalov I* and then the Ukrainian action, which considered whether the Sberbank Defendants owed Plaintiffs any compensation for BIN Group's failure to pay Zeeland under the Sales Agreement.

22

Ludicrously, the Ukrainian Court's answer was "yes." For purposes of the expropriation exception, however, that court's *answer* is beside the point. What matters is that – in Plaintiffs' telling – they presented the *issue* of their rights in Krasnaya Polyana and under the Sales Agreement to the court in Ukraine, and that court answered it finally and conclusively in Plaintiffs' favor, making them judgment creditors and prohibiting any direct collateral challenge from the Sberbank Defendants under the Uniform Act. (First Am. Compl. ¶¶ 4, 96). Conversely, the Sberbank Defendants – though deprived of notice and any possibility of defense – are now putative judgment debtors. Although they can challenge the judgment under CPLR 5304, and the Court can reject the judgment as the grotesque product of fraud that it plainly is, the Sberbank Defendants cannot otherwise collaterally attack the merits of Plaintiffs' underlying claim for breach of contract.

In what sense are Plaintiffs' rights to the shares of Krasnaya Polyana or under the Sales Agreement "in issue" when Plaintiffs claim those rights have already been conclusively determined in Ukraine, and the Uniform Act forecloses a direct collateral attack on that determination by Defendants? None that matters. The parties' respective rights to the shares of Krasnaya Polyana, therefore, are not "in issue" here: comity is. *See also Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91, 95 (2d Cir.1972) ("Once a claim is reduced to judgment, the original claim is extinguished and merged into the judgment; and a new claim, called a judgment debt, arises.").

While this may seem a "fine distinction," it is not, as the district court recognized in *Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp.3d 11 (D.D.C. 2023). In that case – in which the judgment creditor first won an arbitration award in Zambia, then obtained a judgment confirming that award in Zambia, then sought to recognize that judgment in the District

23

of Columbia against a Zimbabwean state-owned enterprise – the court determined that an action to recognize a judgment does *not* fall within the scope of the FSIA's arbitration exception. *Id*. ("Plaintiffs' action is not one to enforce the [arbitration agreements] or to confirm the Zambian arbitral award . . . [it is] an action under the D.C. Judgments Recognition Act to recognize and enforce the Zambian judgment."). The same reasoning controls here: Plaintiffs' rights in Krasnaya Polyana or under the Sales Agreement are not "in issue"; the question "in issue" is whether to recognize the Ukrainian Court's judgment under the Uniform Act, a question that narrows and in some respects eliminates many of the defenses that the Sberbank Defendants could and would raise if this were a suit on the contract itself.

> 2.    *Even By Resort to Plaintiffs' Underlying Claim, The Expropriation Exception Does Not Apply*

Plaintiffs nevertheless invite the Court to look past the form of their action – a suit under the Uniform Act – and assess the expropriation exception by resort to their underlying contract claims. Yet even if the Court were to accept that invitation, the Sberbank Defendants remain immune.

> i.    The Expropriation Exception Does Not Reach Intangible Rights In Property or Rights to Payment

"As numerous courts have held, for purpose of the expropriations exception to the FSIA, the 'property taken . . . means physical property and not the right to receive payment.'" *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 749 (S.D.N.Y. 2004), *opinion clarified on denial of reconsideration*, No. 02 CIV. 6356 (SHS), 2005 WL 2585227 (S.D.N.Y. Oct. 13, 2005) (quoting *Lord Day & Lord v. Socialist Republic of Vietnam*, 134 F.Supp.2d 549, 560 (S.D.N.Y. 2001) and collecting cases). Accordingly, whether characterized as the shares of Krasnaya Polyana (which are intangible) or as a right to payment under the Sales Agreement, the property rights that

Plaintiffs claim are "in issue" in this case cannot be the object of an expropriation and the expropriation exception does not apply.

Not all courts have agreed with *Daventree*, but there is a related reason that a supposed right to payment under the Sales Agreement (as opposed to the shares themselves) cannot function as the expropriated property in *this* action: the First Amended Complaint does not allege that the Sberbank Defendants took control or possession of that supposed right; it alleges that they declined to comply with their own supposed contractual obligations (and rightfully so). In *Nemariam v. Fed. Democratic Republic of Ethiopia*, 491 F.3d 470, 473 (D.C. Cir. 2007), plaintiffs alleged that the Ethiopian Central Bank issued orders seizing their bank accounts. Reasoning that a bank account includes a right to payment of the funds therein, that such a right is intangible, and that intangible rights are not subject to expropriation, the district court dismissed. The D.C. Circuit took a more skeptical view of the rule that intangible property can never be expropriated, but affirmed regardless, explaining that: "the [Central Bank] owns the funds in the [bank] accounts. The property right at issue, however, is the appellants' contractual right to receive payment and the [Central Bank] has neither taken possession of nor exerted control over that right. . . . the [Central Bank] did not assume the appellants' contractual right to performance—instead it declined to perform its own contractual obligations."

The same holds true here. Plaintiffs do not own the funds that they say the Sberbank Defendants should have paid over to them, rather than Zeeland, under the fake Sales Agreement: the Sberbank Defendants do. The Sberbank Defendants, moreover, did not owe an obligation to pay *anyone* under the Sales Agreement: BIN Group did and it owed it to Zeeland, not Plaintiffs. To constitute "expropriation" of Plaintiffs' (non-existent) right to payment, then, the Sberbank Defendants would have needed to demand that BIN Group pay *them*, rather than Zeeland or

Plaintiffs. What Plaintiffs allege instead is that the Sberbank Defendants did not pay for the shares, but that is not an expropriation of Zeeland's or Plaintiffs' supposed right to payment from BIN Group.

ii.     Sberbank Cannot Have Expropriated Any Property Because it is Not the Russian Federation

The Court, however, need not share this conclusion in order to dismiss, because the next point is the same one it correctly found dispositive in *Bilalov I*: Sberbank, while a "foreign state," is not a foreign *sovereign*.

"[N]ationalization of property is a 'quintessential [g]overnment act.'" *Garb v. Republic of Poland*, 440 F.3d 579, 587 (2d Cir. 2006) (quoting *Alberti v. Empresa Nicaraguense de la Carne*, 705 F.2d 250, 254 (7th Cir.1983)). Consequently, as this court held in *Bilalov I*: "for the purposes of the FSIA, the term taken refers to acts of a sovereign, not a private enterprise, that deprive a plaintiff of property without adequate compensation." *Bilalov I*, 2022 WL 4225968, at *6. The court thus dismissed Bilalov's claims, reasoning that – even if Sberbank were the alter ego of the Russian Federation – the domestic takings rule would still bar Bilalov's claim.

Indisputably, that holding bound Bilalov when the Court issued final judgment in July 2023, and it continues to bind him now. There is nothing in the First Amended Complaint that even hints at some reason Bilalov's claims are now suddenly viable despite the domestic takings rule, and it is not remotely clear why he thinks they are. Nothing has changed, and *nothing possibly can change* to alter that calculus, yet here is Bilalov again seeking judgment from the Sberbank Defendants and again by resort to the expropriation exception – and for $30 million more than the Ukrainian court awarded him!

Moreover, although Ismailov was not party to *Bilalov I* – and although he is allegedly Ukrainian – the Court's holding in *Bilalov I* binds him as well under well-settled principles of issue

preclusion. Issue preclusion (or collateral estoppel) attaches where: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (alteration in original). Issue preclusion, moreover, not only binds the named parties to a previous lawsuit, but also "prevents parties *or their privies* from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365, 371 (2d Cir. 2023) (emphasis added).

All elements for preclusion are present here: (i) *Bilalov I* decided the issue of whether Sberbank was immune to claims for its alleged expropriation of Krasnaya Polyana (or, if one further level down in abstraction seems more appropriate, the issue of whether Sberbank – as a state-owned enterprise – was capable of "expropriating" Krasnaya Polyana at all); (ii) the Court decided the issue in its decision of September 13, 2022 granting Sberbank's motion to dismiss; (iii) Bilalov had a full and fair opportunity to litigate, complete with multiple motions to amend his complaint and even an interlocutory appeal; and (iv) the Court's determination that Sberbank remained immune was necessary to its final judgment.

*Bilalov I* also binds Ismailov, moreover, because the First Amended Complaint alleges that "Plaintiffs Ismailov and Bilalov, together with [Bilalov's brother] Magomed, *entered a partnership agreement* whereby Ismailov acquired the powers of Trustee of Zeeland and the assets owned by Zeeland . . . ." (emphasis added). "Business partners are generally held to be in privity for purposes of business activities." *See Ferris v. Cuevas*, 118 F.3d 122, 128 n. 6 (2d Cir. 1997).

27

But even if issue preclusion did not bind Ismailov, the Court's reasoning in *Bilalov I* was both correct and categorical: Sberbank cannot "take" because Sberbank is *not* the sovereign. That rule comes from *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 249 (2d Cir. 2000). In that case, a British Virgin Islands company and its principal sued the Emirate of Abu Dhabi and two of its state-owned instrumentalities for breach of construction contracts, alleging that – under threat of imprisonment – the instrumentalities forced the company to replace its management with the managers of a different contractor and then refused to pay under the contracts.

Striking *factual* similarities aside, it is the Second Circuit's *holding* that controls here. The district court had dismissed on the grounds that contractual rights are intangible and therefore not subject to expropriation. The Second Circuit passed on that issue, however, and instead reasoned that the foreign state defendants' "actions did not constitute a taking within the meaning of the FSIA," because "nationalization or expropriation of property" are the "acts of a sovereign, not a private enterprise." *Id.*; *see also Hulton v. Bayerische Staatsgemaldesammlungen*, 346 F. Supp. 3d 546, 550 (S.D.N.Y. 2018) ("[T]he taking 'must be done by a sovereign – not a private entity' – for this Court to exercise jurisdiction." (quoting *Freund v. Republic of France*, 592 F.Supp.2d 540, 553–54 (S.D.N.Y. 2008))). Accordingly, then, neither the Emirate itself nor either of its agencies or instrumentalities yielded immunity under the expropriation exception: the Emirate because it simply had nothing to do with the contracts, and its agencies or instrumentalities because they were not the Emirate. The same result entails here: Sberbank is *not* the Russian Federation, and the expropriation exception *cannot* apply.

28

      3.      *Plaintiffs Allege No Taking of Property "In Violation of International Law" Because They Do Not Allege That the Taking Was Arbitrary, Discriminatory, or Without Provision for Prompt Adequate Compensation*

*Zappia* also correctly noted that "breach of a commercial contract alone does not constitute a taking pursuant to international law," thus according with the D.C. Circuit's *Nemariam* decision. *Zappia*, 215 F.3d 252. Beyond that, moreover, a taking – breach of contract or otherwise – does not violate international law unless: (i) the foreign state takes property from the national of a different state (i.e. the domestic takings rule); *and* (ii) the taking is illegal, meaning, *precisely*: "[a] takings 'without payment of . . . prompt[,] adequate[,] and effective compensation'; [b] takings that are 'discriminatory'; and [c] takings that are 'arbitrary.'" *Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*, 999 F.3d 808, 821 (2d Cir. 2021). An "arbitrary taking," moreover, is one that "bears no rational relationship to a public purpose." *Id*.

Plaintiffs purport to have solved their problem under the domestic takings rule by bringing in Ismailov, but they make no account – none – for these additional elements of a violation of international law. Not only do the words "arbitrary" appear nowhere in the First Amended Complaint, but Bilalov has always *conceded* that Krasyana Polyana had a public purpose: the 2014 Winter Olympics. Plaintiffs, moreover, make no allegation that the Sberbank Defendants' alleged expropriation of Ismailov's interest in Zeeland's shares (whatever that mysterious interest was) was discriminatory: that is, that the Sberbank Defendants acquired that interest *because* Ismailov is supposedly Ukrainian.

As for prompt adequate compensation, doubtless Plaintiffs will respond that the Sberbank Defendants' purported failure to pay or otherwise ensure payment of the alleged purchase price owed by BIN Group under the Sales Agreement was a failure to make compensation by the Sberbank Defendants themselves. But that theory is hopelessly circular: by assuming that the alleged breach itself was a taking, it destroys the underlying rule that *a breach itself is not a taking*.

       4.     *Plaintiffs Allege No Nexus Between Krasnaya Polyana, Its Alleged Expropriation, and the United States*

The expropriation exception is not established unless Plaintiffs allege a nexus between their claims, the Sberbank Defendants, and the United States. More precisely: the "nexus requirement may be satisfied by showing . . . that the property 'is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.'" *Sheafen Kuo v. Gov't of Taiwan*, 802 F. App'x 594, 597 (2d Cir. 2020). The First Amended Complaint breezes past that vital "owned or operated" element entirely, alleging that: "Sberbank, via Sberbank USA, is engaged in commercial activity in the United States." What is missing? The "owned or operated" element – even as a conclusory legal assertion, let alone supported by well-pleaded facts.

Plaintiffs are therefore on the wrong foot right off the bat, and they never recover. They are entirely silent on the present ownership of Zeeland's shares after Zeeland transferred them to the BIN Group (not to the Sberbank Defendants). They say nothing about whether BIN Group, the Sberbank Defendants or anyone else subsequently liquidated or sold those shares, or when, or to whom, or whether *that* imaginary party engages in commercial activity in the United States. They fall short, then, of the Supreme Court's admonition in *Helmerich* that the allegations must show the applicability of the exception, not just make out a hazy case for it. *Cf. Rukoro v. Fed. Republic of Germany*, 976 F.3d 218, 225 (2d Cir. 2020) ("[T]here is no reason to read the [Supreme Court's *Helmerich*] decision as applying the valid argument standard to only that [third] element, rather than the entire exception.") Rather, as far as the First Amended Complaint is concerned, the "owned or operated" element of the expropriation exception may as well not exist. But it does exist, and it forecloses this lawsuit.

Worse than that, Plaintiffs allege that their claims satisfy the nexus element because Sberbank CIB – not Sberbank itself – engages in commercial activity in the Untied States. Even if they had alleged that Sberbank CIB owns or operates Zeeland's shares in Krasnaya Polyana (they do not), that allegation is false, because Sberbank CIB dissolved in December 2023. The First Amended Complaint thus utterly fails to allege the nexus element of the expropriation exception.

## III.   WITHOUT JURISDICTION OVER SBERBANK UNDER THE FSIA, THE ACTION MUST BE DISMISSED, EVEN IF KUZNETSOV IS NOT IMMUNE

Although *Samantar v. Yousef*, 560 U.S. 305, 325 (2010) determined that a natural person is not a "foreign state" within the meaning of the FSIA, it also confirmed that a natural person is entitled to immunity when the foreign state is the "real party in interest." Since then, the courts have almost uniformly held that, in a lawsuit alleging that a natural person acted on behalf of a "foreign state" (i.e. Sberbank), the foreign state is the real party in interest, and that natural person is entitled to its immunity. *See, e.g., Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 34 (D.D.C. 2013), *aff'd*, 764 F.3d 31 (D.C. Cir. 2014).

Here, the First Amended Complaint alleges throughout that Kuznetsov acted *solely* in his capacity as an officer and director of Sberbank and *solely* on Sberbank's behalf. Kuznetsov is thus entitled to dismissal for all of the reasons stated above. Yet even if Kuznetsov were not immune, the Court must dismiss.

### A.     No Supplemental Jurisdiction Can Exist Over Kuznetsov

First, Kuznetsov would still be entitled to dismissal because Plaintiffs would have no original jurisdictional anchor from which to assert supplemental jurisdiction over their claims against Kuznetsov. Supplemental jurisdiction under 28 U.S.C. § 1367 exists only when a claim that *does not* furnish the Court with original subject matter jurisdiction shares a "common nucleus

31

of operative fact" with a claim that *does*. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011).

Plaintiffs echo this very analysis at length in the First Amended Complaint, explaining in detail why – once original subject matter jurisdiction is established over Sberbank through the FSIA – they may assert supplemental jurisdiction over the individual defendants. (First Am. Compla. ¶¶ 44-50). The problem, of course, is that they never get around to establishing subject matter jurisdiction over Sberbank. "With no anchor claim," however, "Plaintiffs cannot rely on supplemental jurisdiction to confer subject-matter jurisdiction over the litigation." *Cellucci v. O'Leary*, No. 19-cv-2752, 2021 WL 242806, at *5 (S.D.N.Y. Jan. 25, 2021).

### B.       Rule 19 Mandates Dismissal Absent Jurisdiction Over Sberbank

Second, Kuznetsov would still be entitled to dismissal because – under Rule 19 – *Sberbank* is entitled to have him dismissed, as the Supreme Court explained at length in *Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008). Rule 19 requires dismissal of a required party (previously known as a "necessary party") whenever, "in equity and good conscience," the lawsuit cannot proceed in that party's absence (previously known as an "indispensable party"). *Pimentel* reasoned that – when a foreign state entity under the FSIA is entitled to dismissal on grounds of immunity, yet the action still carries the "potential for injury to the interests of the absent sovereign" – the very considerations of international comity that mandate immunity likewise forbid the action from proceeding in the foreign state's absence. *Id*. As the Court held: "A case may not proceed when a required-entity sovereign is not amenable to suit." *Id*.

Here, Sberbank – like most multi-national corporations – holds its officers and directors harmless from liability under Section 3.6.4 of its Code of Corporate Governance. (*See* Van Riper Decl. Ex. 1). Consequently, Rule 19 and *Pimentel* require this Court to dismiss, and that is true even if the Court determines that Kuznetsov himself does not share Sberbank's immunity.

32

**IV.    NO PERSONAL JURISDICTION OR *QUASI IN REM* JURISDICTION ATTACHS TO EITHER SBERBANK DEFENDANT IN THIS ACTION**

**A.    Plaintiffs Do Not Allege Long-Arm or Specific Jurisdiction**

Under the FSIA, personal jurisdiction exists only if the foreign state is not immune and has been properly served. 28 U.S.C. § 1330. Neither is true here, and therefore no personal jurisdiction exists over either of the Sberbank Defendants. The Court need proceed no further. Yet even if the Court were to conclude that the expropriation exception pierces the Sberbank Defendants' immunity, and further concludes that service of process was sufficient, personal jurisdiction still fails under the ordinary rules of long-arm and specific jurisdiction applicable in any typical case.

To be sure, the First Amended Complaint asserts that personal jurisdiction need not be established in an action under the Uniform Act, and that a "foreign state" may not avail itself of the Due Process Clause. (First Am. Compl. ¶ 47). But Plaintiffs are wrong on both points. First, although New York case law equivocates on whether a judgment creditor must establish personal jurisdiction in an *un*-contested action under the Uniform Act, the case law unequivocally holds that it *must* do so in a *contested* action, like this one. *AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*, 160 A.D.3d 93, 108 (1st Dept. 2018) ("To require a defendant to litigate such substantive issues in a forum where it maintains no property, and where it has no contacts that would otherwise subject it to personal jurisdiction, would offend [the] traditional notions of fair play and substantial justice.") (citation omitted) (alteration in original). Second, although it is true that a foreign state as such – France, the United Kingdom, the Russian Federation – is not a "person" within the meaning of and subject to the protections of the Due Process Clause, a state-owned enterprise remains a corporate "person" under that Clause and is entitled to its protection. *See Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021).

New York's "long-arm" statute, CPLR 302, authorizes personal jurisdiction over out-of-state defendants in relevant part as follows: "[A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: . . . transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . . owns, uses or possesses any real property situated within the state." Personal jurisdiction attaches, however, if – and *only* if – the "cause of action aris[es] from" those acts. *Id.*; *see generally Daou v. BLC Bank*, S.A.L., 42 F.4th 120, 130 (2d Cir. 2022). Likewise – and entirely aside from the long-arm statute – a federal court may only assert specific personal jurisdiction within the limits of the Due Process Clause when that action arises out of the defendants' alleged contacts with the forum. *See id.*

Here, the First Amended Complaint purports to offer a series of forum contacts between Sberbank and New York. But Plaintiffs never say how these contacts are connected to the dispute over Krasnaya Polyana, let alone their judgment debt, and indeed it appears that none of those contacts have any connection to either.

Sberbank has offered, and U.S. corporations have bought, American Depository shares of Sberbank? (First Am. Compl. ¶ 14). Maybe, but what does that have to do with Krasnaya Polyana, which is a Russian company, owned by a British Virgin Islands company, controlled by a Ukrainian and Russian national (so they say), and which owned real property in Russia? Herman Gref once purportedly boasted that Sberbank's increasing market share in the U.S. gives it a place at the table with U.S. regulators? (*Id.* ¶ 15). Fine, let us duly assume that this is true, but – again – what does that have to do with Krasnaya Polyana?

It is as if Plaintiffs got frustrated, threw their hands up, and decided that maybe specific jurisdiction here should turn on whether Sberbank did some kind of business (any business) in New York, regardless of when it did that business or whether that business has any connection to

34

the underlying lawsuit. Yet Plaintiffs *must* allege a connection between the alleged forum contacts and the underlying claims, and they do not.

Plaintiffs are left, then, with Paragraph 5 of the Sales Agreement, the alleged forum selection clause. The problem there, however, is that Paragraph 5 is at most a choice-of-law clause, not a forum selection clause. (*See* above at 13). And – whatever its meaning – it simply does not bind Kuznetsov, who allegedly signed it in his representative capacity on behalf of Sberbank.

### B.      *Quasi In Rem* Jurisdiction Does Not and Cannot Attach

Plaintiffs also attempt to assert *quasi in rem* jurisdiction, but they do not even identify the property over which they claim to assert such jurisdiction, which makes it impossible to determine whether it might be appropriate as a means of satisfying the putative judgment debt. Such jurisdiction, moreover, cannot exist under Rule 4(n) until a plaintiff *actually attaches the property* under New York law, because "[j]urisdiction is acquired by seizing the assets under the circumstances and in the manner provided by state law in [the] district." Plaintiffs, however, have not even attempted to attach this unidentified property – and no wonder, because the FSIA sets forth its own procedures for attachment of foreign state property, with an entirely different thicket of statutory provisions, exceptions, and counter-exceptions. *See* 28 U.S.C. § 1610.

Yet even if Plaintiffs were correct that this is an action *quasi in rem*, and had properly attached the property that they vaguely allude to as the source of such jurisdiction, that conclusion would annihilate subject matter jurisdiction under the FSIA, which extends only to actions *in personam*. *See* 28 U.S.C. § 1330(a). That is no idle word choice either; it is the product of careful Congressional deliberation. *See Geveke & Co. Int'l v. Kompania Di Awa I Elektrisidat Di Korsou N.V.*, 482 F. Supp. 660, 664 (S.D.N.Y. 1979) ("[B]ecause this action is brought against a foreign state as defined in 28 U.S.C. section 1603 and is an action in rem not in personam, subject matter jurisdiction under section 1330(a) is lacking."); *United States v. Assa Co.*, 934 F.3d 185, 190 (2d

Cir. 2019) ("The background of § 1609 makes this point clear. Congress sought to clamp down on quasi in rem suits because they 'caused significant irritation to many foreign governments' and could potentially 'give rise to serious friction in United States' foreign relations.'")

There is no *quasi in rem* jurisdiction in this matter, and if there were, there would be no subject matter jurisdiction.

## V.    THE SOUTHERN DISTRICT IS NOT A PROPER VENUE

Venue under the FSIA must be sited in accordance with 28 U.S.C. 1391(f), which includes two provisions relevant here that lay venue:

- [I]n any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. 28 U.S.C. 1391(f)(1).

- [I]n any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title. 28 U.S.C. 1391(f)(3).

The same pleading deficiencies that defeat personal jurisdiction and the commercial nexus element of the expropriation exception therefore defeat Plaintiff's assertion of venue under the FSIA – except that venue requires a greater showing than personal jurisdiction. *See, e.g., Commissions Imp. Exp. S.A. v. Republic of the Congo*, No. 11 CIV. 6176 JFK, 2012 WL 1468486, at *2 (S.D.N.Y. Apr. 27, 2012).

Plaintiffs allege that a Russian state-owned enterprise (Sberbank), represented by its Russian Vice Chairman (Kuznetsov), breached a contract with a British Virgin Islands company (Zeeland) for the sale of its shares in a Russian company (Krasnaya Polyana) that owned valuable property in Russia (Sochi), leading to a Ukrainian judgment in favor of a Russian citizen (Bilalov) and Ukrainian citizen (Ismailov). The correct venue, according to Plaintiffs? New York, of course.

36

But that is simply not so: Plaintiffs have alleged no connection between the underlying events and this district, and alleged nothing about the present location of the allegedly expropriated property at all. Nor have they alleged that Sberbank is presently licensed in or doing business in New York: On the contrary, they seek to impute Sberbank CIB's alleged New York activity to Sberbank, but – even if that were a valid theory of venue under the FSIA – Sberbank CIB does not exist.

## VI.    SERVICE OR PROCESS IN THIS RECOGNITION ACTION WAS BOTH INSUFFICIENT UNDER THE FSIA AND IN VIOLATION OF THE HAGUE SERVICE CONVENTION

In their application for Court-authorized alternative service by email to counsel, Plaintiffs' counsel avoided all mention of the FSIA, representing instead that the Court had discretion to authorize such service solely under Rule 4(f). The governing provision, however – Rule 4(j) – expressly requires that service comply with the FSIA, 28 U.S.C. § 1608, which further requires that court-ordered service remain "consistent with the law of the place where service is to be made." 28 U.S.C. § 1608(b)(3)(C).

"[T]he mode of service authorized by the court," therefore, "should not be prohibited under the law of the foreign state." *New England Merchants Nat. Bank v. Iran Power Generation & Transmission Co.*, 495 F. Supp. 73, 78–79 (S.D.N.Y. 1980). And even under Rule 4(f), the Court's discretion – though wide – remains limited to other means "not prohibited by international agreement."

Here, contrary to Plaintiffs' motion for alternative service, the Hague Service Convention does indeed prohibit service of process by email in Russia, despite what Plaintiffs characterize *ex parte* as Russia's refusal to cooperate with requests for service under the Hague Convention issuing from the United States. That is because – even *before* the current contretemps with the State Department  – Russia objected to mail service under Article 10 of the Convention, which the

Convention itself gives member states the express and absolute right to do. *See generally Kadmon Corp., LLC v. Ltd. Liab. Co. Oncon*, No. 22-CV-5271 (LJL), 2023 WL 2346340, at *3 (S.D.N.Y. Mar. 3, 2023); Declaration and Reservation to the Hague Convention by the Russian Federation (available at https://www.hcch.net/en/instruments/conventions/status-table/notifications/ ?csid=418&disp=resdn). Russian courts, moreover, enforce that treaty objection regularly, not just on behalf of Russian parties, but on behalf of parties from countries that have likewise objected to Article 10 service. (*See* Van Riper Decl. Exs. 3 and 4).

In the Russian Federation, then, the courts do *not* permit service of overseas process by email. That is hardly some wild-eyed approach to balancing service, notice, and convenience to the court and the parties, but *even if it were*, the FSIA has no exception for foreign state methods of service deemed inconvenient by a judgment creditor, or for supposed difficulties arising from diplomatic disputes. Service of process on a foreign state agency or instrumentality must comply with the law of the foreign state, and service of process by email on the Sberbank Defendants does not. Furthermore,

Some courts – typically in response to similarly unopposed *ex parte* applications – have nevertheless used Russia's alleged non-cooperation with U.S. service requests as a justification to set aside the Hague Service Convention entirely. Yet the timing alone makes that rationale quite dubious, and, in any event, that more recent dispute "does not change the fact that Russia does not agree to service by mail." *AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-CV-9913, 2015 WL 3457452, at *7 (S.D.N.Y. June 1, 2015).

A less shaky rationale is that the Russian Federation's objection to service by mail does not constitute an objection to service by *electronic* mail. Yet that rationale did not survive *our own* Supreme Court's decision in *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017): "[T]he Hague

38

Service Convention specifies certain approved methods of service and '*pre-empts inconsistent methods of service wherever it applies*.'" (quoting *Schlunk*, 486 U.S. at 699)) (emphasis added). What this means, as this Court explained at length in *Kadmon Corp.,* 2023 WL 2346340, at *3, is that the Convention starts from an *exclusive* list of service methods, including mail, but not including email (unsurprising, as the Convention was first ratified in 1965). Therefore, no member state need object to service by email, because it is not on the approved list of service methods in the first place.

Granted, the Hague Service Convention's authorization of service by "mail" might well be deemed to include "email," but, if that is the case, then the Russian Federation's objection to service by mail under Article 10 must *also* constitute an objection to service by email. Otherwise, when determining what is a valid method of service in the first place, "mail" would include "email," yet when determining whether a contracting state party has *objected* to service, "mail" would *not* include "email." That is not a tenable construction, and so "Russia's objection only to the methods specifically delineated in Article 10 (and not specifically to service by email) cannot be construed to reflect an agreement to permit service by email." *Id*.

## VII.  ALL THREE MANDATORY GROUNDS FOR NON-RECOGNITION OF A JUDGMENT UNDER THE UNIFORM ACT ARE APPARENT ON THE FACE OF THE COMPLAINT

The Uniform Act sets forth three grounds under which a judgment must be denied recognition, that: (i) "the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law; (ii) "the foreign court did not have personal jurisdiction over the defendant"; and (iii) "the foreign court did not have jurisdiction over the subject matter." CPLR 5203(a). All three grounds are present on the face of Plaintiffs' complaint.

First, Plaintiffs allege that they obtained a judgment against the Sberbank Defendants in Ukraine, but presently controlling provisions of martial law foreclose due process and impartial tribunals for Russian nationals. Sanctions regulations restrict the provision of services to Russian nationals for compensation, and – unlike in the United States – those regulations have no exception for attorneys or legal services. (*See* Van Riper Decl. Ex. 5). Other provisions expressly prohibit Russian nationals from accessing the services of civil law notaries. (*See* Van Riper Decl. Ex. 6.) Unlike in common law jurisdictions, that is a severe limitation. Notaries do more than simply verify attestations: they draft and authenticate legal documents in their entirety; their endorsement establishes legal capacity and authority to enter such instruments; they certify the accuracy of translations in court; and – in Ukraine – a notary *must* certify real estate contracts, mortgages, leases, and operating agreements for joint stock companies. (*See* Van Riper Decl. Ex. 7).

The provenance or justification for these rules is not the point. Nor is whether Plaintiffs were aware of these rules (though they surely were, and were counting on them). What matters is that they exist, and that they precluded the possibility of a fair defense by a Russian national in Ukraine at the time the judgment issued.

Second, the Ukrainian court did not exercise personal jurisdiction over the Sberbank Defendants in conformance with New York law, both because the court had no basis to exercise specific jurisdiction and because Plaintiffs ensured that the Sberbank Defendants would not receive proper service. "[I]if recognition of a foreign money judgment were sought in New York and the defendant had received no meaningful notice of the foreign proceeding, that lack of notice would serve as a legitimate basis for not enforcing the judgment in our state, as the entry of such a judgment would not comport with our conception of personal jurisdiction or our notion of fairness." *John Galliano, S.A. v. Stallion, Inc.*, 15 N.Y.3d 75, 80 81 (2010). As detailed above, the

40

lone email purporting to serve the Sberbank Defendants notified them of the Court's initial hearing thirty minutes *after* it happened, and there were no subsequent emails at all. Such service is grossly deficient.

Third, the Ukrainian court lacked subject matter jurisdiction under *its own* law. Article 76 or Ukraine's Law on Private International Law indeed supports the exercise of jurisdiction in a cross-border dispute involving a Ukrainian national – on that point, at least, the First Amended Complaint is correct. But Plaintiffs overlook that such jurisdiction extends only in cases alleging "harm," defined as physical or property damages – that is, to personal injury cases, *not* commercial disputes. Beyond the non-existent forum selection clause in the Sales Agreement, the First Amended Complaint offers no other basis to support what it claims was a valid exercise of subject matter jurisdiction by the Ukrainian court.

Lastly, the Uniform Act also permits the Court to decline recognition of a judgment that "conflicts with another final and conclusive judgment." CPLR 5204(b)(4). Here, the Court should exercise that discretion, even at the pleading stage, because the Ukrainian judgment that granted an award to Bilalov conflicts with its own judgment in *Bilalov I* denying all relief. As the last-filed judgment, moreover, it is this Court's judgment – not the Ukrainian court's – that is entitled to claim preclusive effect. *Ackerman v. Ackerman*, 676 F.2d 898, 903 n. 5 (2d Cir. 1982) And that effect extends to both Bilalov and Ismailov, his partner and privity. Consequently, this Court can and should deny recognition to the Ukrainian judgment and dismiss the case in its entirely at the pleading stage.

41

## **CONCLUSION**

For the reasons set forth above, this Court should grant the Sberbank Defendants' motion

to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(5), 12(b)(6),

and Rule 19.

Date:   August 12, 2024
        New York, New York

                                        Respectfully submitted,


                                        */s/Jay S. Auslander*

                                        Jay S. Auslander
                                        Natalie Shkolnik
                                        Aari Itzkowitz
                                        Michael Van Riper
                                        Wilk Auslander LLP
                                        825 Eighth Avenue, Suite 2900
                                        New York, New York 10019
                                        Tel: (212) 981-2338

                                        *Attorneys for Defendants Stanislav
                                        Kostiantynovych Kuznetsov and Public Joint
                                        Stock Company Sberbank of Russia*

42