**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MUSAIB ISMAILOVYCH ISMAILOV, and
AKHMED HADZHYIOVYCH BILALOV,

               Plaintiffs,

     v.

MYKHAILO SAFARBEKOVYCH HUTSERIEV,
STANISLAV KOSTIANTYNOVYCH KUZNETSOV,
and PUBLIC JOINT STOCK COMPANY
"SBERBANK OF RUSSIA,"

               Defendants.

---

Case No. 1:24-cv-03287 (AT)

**MEMORANDUM OF LAW IN SUPPORT OF THE SBERBANK DEFENDANTS'**
**MOTION FOR SANCTIONS**

Jay S. Auslander
Natalie Shkolnik
Aari Itzkowitz
Michael Van Riper
Wilk Auslander LLP
825 Eighth Avenue, Suite 2900
New York, New York 10019
Tel: (212) 981-2338

*Attorneys for Defendants Stanislav
Kostiantynovych Kuznetsov and Public Joint
Stock Company Sberbank of Russia*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..............................................................................................iii

PRELIMINARY STATEMENT......................................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND ...................................................... 3

    A.   *Bilalov I* Proceedings Through The Date of Filing of the Ukraine Action .................... 3

        1.   Initial Proceedings in the District Court ........................................................ 3

        2.   The Court Grants Defendants' Motions to Dismiss ........................................ 5

        3.   Appeal to the Second Circuit ........................................................................ 6

    B.   The Ukraine Proceeding.......................................................................................... 7

        1.   The Fraudulent Sales Agreement and the Forum Selection Clause that Wasn't............ 7

        2.   Ismailov is In Privity With Bilalov ................................................................. 9

        3.   Ukrainian martial law precludes Ukrainian lawyers from providing services to Russian defendants............................................................................ 10

        4.   Grossly Deficient Email Service..................................................................11

        5.   The Inevitable Result ................................................................................... 12

    C.   Last-Filed Final Judgment in *Bilalov I* ................................................................. 13

    D.   The Present Action ................................................................................................ 14

        1.   Plaintiffs At Last Reveal the Existence of the Sales Agreement................................. 14

        2.   Plaintiffs File a Sanctionable Motion for Alternative Service ...................................... 15

        3.   Plaintiffs Attribute Sberbank CIB's Jurisdictional Contacts to Sberbank, Even Through Sberbank CIB Does Not Exist........................................................ 15

        4.   The Sberbank Defendants Provide Safe Harbor Notice................................................. 16

ARGUMENT ................................................................................................................... 17

      I.   LEGAL STANDARD UNDER RULE 11 ................................................................. 17

        A.   Improper Purpose ........................................................................................ 18

        B.   Frivolous Law ............................................................................................. 18

        C.   Unsupported Factual Contentions ............................................................... 19

      II.   PLAINTIFFS FILED THE FIRST AMENDED COMPLAINT FOR THE IMPROPER PURPOSE OF AVOIDING THE PRECLUSIVE EFFECT OF *BILALOV I* AND AVOIDING FURTHER SCRUTINY OF THEIR CLAIMS........ 19

        A.   The First-Filed Action Rule ......................................................................... 20

        B.   The Last-In-Time Judgment Rule ................................................................. 20

        C.   Filing Suit to Avoid Preclusive Effect Is An Improper Purpose and Constitutes Harassment Under Rule 11(b)(1) ......................................................... 22

III.  THE FRIVOLOUS LEGAL BASIS OF THE FIRST AMENDED COMPLAINT
      VIOLATES RULE 11 ................................................................................................ 23

   A.  The First Amended Complaint Depends Upon a Frivolous Application of the
       Expropriation Exception to the FSIA ................................................................ 23

      1.  The Underlying Breach of Contract Claims Against Sberbank Categorically
          Fall Outside the Expropriation Exception Because Sberbank Is Not the
          Russian Federation and Because Bilalov's Claims Remain Blocked by the
          Domestic Takings Rule ...................................................................................... 24

      2.  Because Plaintiffs Lack Any Non-Frivolous Basis to Invoke Original
          Subject Matter Jurisdiction under the FSIA, Plaintiffs Also Lack Any Non-
          Frivolous Basis to Invoke Subject Matter Jurisdiction Over Kuznetsov .......... 25

   B.  There Is No Non-Frivolous Argument That The Ukraine Court Had Personal
       Jurisdiction Under New York Law, Leaving The Judgment Incapable of
       Recognition Under CPLR 5304(a)(2) ................................................................ 26

   C.  Plaintiffs' Letter Application Was Frivolous ........................................................ 27

IV.  SANCTIONABLE FACT ERRORS ........................................................................ 27

   A.  The Sales Agreement ............................................................................................ 27

   B.  The Non-Existent Forum Selection Clause ........................................................... 28

   C.  The Lonely Demise of Sberbank CIB .................................................................... 29

V.   APPROPRIATE SANCTIONS ................................................................................. 29

CONCLUSION ........................................................................................................................ 30

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ackerman v. Ackerman,*
676 F.2d 898 ............................................................................................................ 20, 21

*Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.,*
663 F. Supp.3d 11 (D.D.C. 2023) .................................................................................. 23

*Bilalov v. Gref*
No. 20-cv-09153 (AT), 2022 WL 4225968 (S.D.N.Y. Sept. 13, 2022) ..................................... 5, 9

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990) ...................................................................................................... 30

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
No. 17-mc-0151, 2022 WL 611586 (D. Del. Mar. 2, 2022) ................................................... 30

*Eastway Const. Corp. v. City of New York,*
762 F.2d 243 (2d Cir. 1985) ............................................................................................ 19

*EDP Med. Computer Sys., Inc. v. United States,*
480 F.3d 621 (2d Cir. 2007) ............................................................................................ 20

*ESI, Inc. v. Coastal Corp.,*
61 F.Supp.2d 35 (S.D.N.Y.1999) ..................................................................................... 28

*Fed. Republic of Ger. v. Philipp,*
141 S. Ct. 703 (2021) ...................................................................................................... 9

*Ferris v. Cuevas,*
118 F.3d 122 .................................................................................................................. 10

*First City Nat'l Bank & Trust Co. v. Simmons,*
878 F.2d 76 (2d Cir.1989) ............................................................................................... 20

*In re Bruetman,*
259 B.R. 649 (Bankr. N.D. Ill.) ....................................................................................... 21

*In re Girardi,*
611 F.3d 1027 (9th Cir. 2010) ......................................................................................... 28

*In re Ne. Indus. Dev. Corp.,*
513 B.R. 825 (Bankr. S.D.N.Y. 2014) ................................................................................ 4

*John Galliano, S.A. v. Stallion, Inc.,*
15 N.Y.3d 75 (2010) ...................................................................................................... 26

*Knipe v. Skinner,*
19 F.3d 72 (2d Cir. 1994) ........................................................................................... 18, 22

*Koninklijke Philips Elecs. v. Digital Works, Inc.,*
358 F. Supp. 2d 328 (S.D.N.Y. 2005) ............................................................................... 28

*Kropelnicki v. Siegel*,
   290 F.3d 118 (2d Cir. 2002) .................................................................... 17, 19

*LCS Grp., LLC v. Shire LLC*,
   No. 18-cv-02688, 2019 WL 1234848 (S.D.N.Y. Mar. 8, 2019) ............................... 18

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
   17 F. Supp. 3d 385 (S.D.N.Y. 2014) ............................................................ 20

*Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   202 F. Supp. 2d 126 (S.D.N.Y. 2002) .......................................................... 29

*Margo v. Weiss*,
   213 F.3d 55 (2d Cir. 2000) ....................................................................... 17

*McGreal v. Village of Orland Park*,
   928 F.3d 556 (7th Cir. 2019) .................................................................... 19

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 US 306 (1950) .................................................................................. 26

*O'Brien v. Alexander*,
   101 F.3d 1479 (2d Cir. 1996) .................................................................... 19

*Omari v. Khaimah Free Trade Zone Authority*,
   No. 16-cv-3895 (NRB), 2017 WL 3896399 (S.D.N.Y. Aug. 18, 2017) ..................... 18

*Paganucci v. City of New York*,
   993 F.2d 310 (2d Cir. 1993) ...................................................................... 25

*Prachand v. Government of India Tourist Office*,
   No. 92-C-4336, 1992 WL 245523 (N.D. Ill. Sept. 22, 1992) ................................ 22

*Salovaara v. Eckert*,
   222 F.3d 19 (2d Cir.2000) ........................................................................ 29

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
   682 F.3d 170 (2d Cir. 2012) .................................................................. 17, 19

*Storey v. Cello Holdings, L.L.C.*,
   347 F.3d 370 (2d Cir. 2003) .............................................................. 17, 18, 19

*Sung Hwan Co. v. Rite Aid Corp.*,
   7 N.Y.3d 78, 850 N.E.2d 647 (2006) ............................................................. 7

*Sussman v. Bank of Israel*,
   56 F.3d 450 (2d Cir. 1995) .................................................................... 18, 23

*Thornton v. Wahl*,
   787 F.2d 1151 (7th Cir. 1986) ................................................................... 19

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir.1990) ................................................................... 18

*United States v. Donziger*,
   No. 11-cv-0691 (LAK), 2021 WL 3141893 .................................................... 26

*W.K. Webster & Co. v. Am. President Lines, Ltd.*,
    32 F.3d 665 (2d Cir.1994) ................................................................................ 19

*Walker v. City of New York*,
    No. 14-cv-0680, 2024 WL 1158798 (E.D.N.Y. Mar. 18, 2024) ............................ 18

*Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*,
    215 F.3d 247 (2d Cir. 2000) ............................................................................. 24

**Statutes**

28 U.S.C. § 1604 ...................................................................................................... 23

28 U.S.C. § 1605 .............................................................................................. 9, 16, 24

28 U.S.C. § 1608 .......................................................................................... 12, 15, 27

**Rules**

CPLR 5304(a)(2) ..................................................................................................... 26

Federal Rule of Civil Procedure 11 .............................................................. passim

Defendants Public Joint Stock Company Sberbank of Russia ("Sberbank") and Stanislav Kostiantynovych Kuznetsov (collectively, the "Sberbank Defendants") respectfully submit this Memorandum of Law in support of their motion for the imposition of sanctions upon Plaintiffs Akhmed Hadzhyiovych Bilalov and Musaib Ismailovych Ismailov and their counsel pursuant to Federal Rule of Civil Procedure 11.

## PRELIMINARY STATEMENT

Although you would never know it from his complaint, this is not Plaintiff Bilalov's first visit to the Southern District. Nor is it the first time he has asked this Court to enter judgment against Sberbank for its alleged expropriation of the company OJSC Krasnaya Polyana ("Krasnaya Polyana," or the "Company") in 2013. Quite the opposite, in fact: Bilalov first pursued Sberbank in November 2020, pressing defective federal and state claims in this Court against Sberbank, its CEO, Herman Gref, and its subsidiary, Sberbank CIB USA, Inc. ("Sberbank CIB"). *Bilalov. v. Gref, et al.*, No. 1:20-cv-09153 (PGG) ("*Bilalov I*"). Nearly three years of litigation ensued, including two amended complaints, four motions to amend, and a short-lived interlocutory appeal, but when the dust settled on July 5, 2023, this Court had rejected all of Bilalov's claims for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") and on the merits. (*Bilalov I*, ECF No. 121).

How, then, has Bilalov returned to the Southern District almost a year after the Court roundly rejected his previous lawsuit? Simple: Bilalov laundered his baseless claims through the Ukrainian legal system even as his final motion to amend in *Bilalov I* remained pending, aided by a forged 2013 Sales Agreement, provisions of martial law that strip Russian nationals of due process in Ukraine, and a manner of service – a single Gmail – that was calculated not to afford Defendants an opportunity to defend, but to deprive them of it. Joined by his confederate, Ismailov, Bilalov inevitably obtained a default judgment against the absent and unaware Sberbank

Defendants in Ukraine on May 25, 2023, and – voila! – they now ask the Court to recognize *that* judgment while ignoring its own.

*Bilalov I* certainly lacked merit, but at least that action presented the occasionally debatable question of law or fact. This action, in contrast, is so lacking in merit, so obviously defective and contrived, that the only way to deter such abusive claim laundering in the future is to impose sanctions on Plaintiffs and their counsel.

Formally, Plaintiffs' filing of the original Complaint and later First Amended Complaint in this action violated Rule 11(b), because: (i) Plaintiffs filed this action for the improper purpose of avoiding the preclusive effect of *Bilalov I* (which, incidentally, they have failed to do), and that is "harassment" within the meaning of Rule 11(b)(1); (ii) the First Amended Complaint levels legal claims and contentions warranted by neither existing Second Circuit law nor any nonfrivolous argument for the extension, modification, or reversal of that law, thus violating Rule 11(b)(2); and (iii) the First Amended Complaint makes factual contentions that lack any evidentiary support, thus violating Rule 11(b)(3). Plaintiffs violated Rule 11(b)(2) again through a May 7, 2024 letter application to the Court seeking to authorize alternative service on the Sberbank Defendants, which urged the Court to authorize service under an inapplicable provision of Rule 4, while concealing the correct rule and statute governing service under the FSIA.

Now that Plaintiffs have chosen to persist with this folly, even after 21-days' safe harbor notice, this Court can and should enter an order: (i) finding that Plaintiffs and their counsel violated Rule 11(b); (ii) striking the First Amended Complaint and dismissing this action with prejudice and without leave to amend; (iii) enjoining Plaintiffs from further litigating any claims arising out of or connected to the transfer of OJSC Krasnaya Polyana; and (iv) holding any award of attorney's

fees in abeyance pending an application by the Sberbank Defendants to the Office of Foreign Assets Control ("OFAC") for a license permitting such award.

## PROCEDURAL AND FACTUAL BACKGROUND

### A.    *Bilalov I* Proceedings Through The Date of Filing of the Ukraine Action

In *Bilalov I*, Plaintiff Bilalov sought a judgment against Sberbank imposing damages for its alleged expropriation of Krasnaya Polyana, a Russian company that owned a ski resort in Sochi that later became a competition site in the 2014 Winter Olympic Games.

#### 1.    *Initial Proceedings in the District Court*

Bilalov filed that action on November 2, 2020. (*Bilalov I*, ECF No. 1). According to the salacious allegations of his first complaint, Gref and Kirill Androsov led a campaign of so-called Reiderstvo – corporate raiding with a dash of criminality – against Bilalov to wrest away control of Krasnaya Polyana. (*Bilalov I*, Compl. ¶¶ 1, 7) (ECF No. 4). That original complaint named both Sberbank and Kuznetsov as "third parties," rather than defendants, but alleged that they were also participants in the supposed conspiracy to take control of the company. (*Id*. ¶¶ 21, 25, 30). The original complaint brought claims under the Racketeer Influenced Corrupt Organizations Act ("RICO") and Alien Tort Statute ("ATS"), as well as state law claims for fraud, conspiracy to commit fraud, conversion, abuse of process, and – critically – unjust enrichment. (*Id*. ¶¶ 168-186, 199-222).

The complaint, however, brought no claim for breach of contract, and made no mention whatsoever of the March 15, 2013 Sales Agreement that later formed the basis for Plaintiffs' subsequent lawsuit in Ukraine. On the contrary, by bringing a claim for unjust enrichment, Bilalov unwittingly admitted that this supposed 2013 Sales Agreement never actually existed, because a claim for unjust enrichment "may *only* be brought in the *absence* of a written contract relating to

the same subject matter." *In re Ne. Indus. Dev. Corp.*, 513 B.R. 825, 842 (Bankr. S.D.N.Y. 2014), *adopted*, No. 14-cv-07056, 2015 WL 3776390 (S.D.N.Y. June 16, 2015) (emphasis added).

Regardless – and momentarily taking Bilalov at his word – there is no reason he could not have pressed his claims under the phony Sales Agreement against Sberbank and Kuznetsov in *Bilalov I*. First, the date of the alleged Sales Agreement long predates the filing of *Bilalov I*. Second, according to Plaintiffs in *this* lawsuit, under Paragraph 5 of the alleged Sales Agreement: "Defendants contemplated having disputes arising under the Sales Agreement, such as this action, be adjudicated by Courts in this District." (First Am. Compl. ¶ 59). Bilalov therefore could have avoided claim preclusion by suing on the Sales Agreement from the very start – unless, of course, the Sales Agreement itself is a forgery that Bilalov dreamed up after the fact to salvage some claim (any claim) against someone (anyone) after this Court had dismissed all of his others. By not doing so, he *guaranteed* claim preclusion.

But that would come much later. In February 2021, before serving either Gref or Androsov, Bilalov amended the complaint in *Bilalov I* as of right on February 5, 2021, dropping Androsov as defendant and replacing him with Sberbank's American subsidiary, Sberbank CIB. (*Bilalov I*, First Am. Compl. ¶¶ 18-19). Bilalov again alleged that Kuznetsov and Sberbank participated in his imaginary scheme, but again stopped short of naming either as a defendant, or raising any claim under the putative Sales Agreement. (*Id*. ¶¶ 38, 40).

After Gref and Sberbank CIB appeared on April 12, 2021, Bilalov amended the complaint yet again, this time adding Sberbank itself as a defendant, while again alleging that Kuznetsov participated in the conspiracy without naming him as a defendant. (*Bilalov I,* Second Am. Compl. ¶¶ 19, 53, 55, 100) (ECF No. 51). The supposed Sales Agreement, meanwhile, still languished

unnoticed and unremarked, jilted in favor of a count for unjust enrichment that denied its very existence. (*Id*. ¶¶ 220-224).

2.    *The Court Grants Defendants' Motions to Dismiss*

Gref, Sberbank CIB, and Sberbank all moved to dismiss on September 6, 2021. (*Bilalov I,* ECF Nos. 58-59, 61-62). Six months after briefing on those motions closed, but while they remained pending, Bilalov filed an unauthorized second motion for leave to amend. (*Bilalov I,* ECF No. 90). Again he made no mention of the Sales Agreement or a possible claim for breach of contract. The Court denied the motion. (*Bilalov I*, ECF No. 92).

On September 13, 2022, the Court dismissed *Bilalov I* under the FSIA and on the merits, holding that: (i) Sberbank is immune under the FSIA, despite Bilalov's resort to the FSIA's expropriation exception, except for the count for the abuse of process (which instead proceeded under the commercial activity exception); (ii) all RICO counts were both time-barred and failed to state a claim; (iii) the ATS count failed to state a claim; (iv) all state law counts were time-barred, again save for abuse of process; and (v) the abuse of process count failed to state a claim under Florida law. *See Bilalov I*, 2022 WL 4225968, at *1 (S.D.N.Y. Sept. 13, 2022).

Reasoning that it may not have been immediately apparent that Florida law would control on the abuse of process claim, the Court proactively gave Bilalov leave to file one last motion to amend on that count only. *See Bilalov I*, 2022 WL 4225968, at *13 (S.D.N.Y. Sept. 13, 2022). Bilalov accepted the invitation, filing his third and final motion to amend on October 4, 2022. (*Bilalov I,* ECF Nos. 103-05). Even though that motion exceeded the bounds of the Court's lenity, seeking not just to amend the abuse of process count, but to add a claim for malicious prosecution, Bilalov *still* made no mention of the phony Sales Agreement and did not ask the Court for leave to include a new claim for breach of contract. (*Bilalov I,* ECF Nos. 104, 104-1, 104-2).

3.    *Appeal to the Second Circuit*

As of October 4, 2022, then, the Court had dismissed all of Bilalov's claims, but had yet to enter final judgment while it considered his third and final motion to amend. Bilalov nevertheless filed an interlocutory notice of appeal on October 12, 2022, carving out the abuse of process claims from that notice. (*Bilalov I,* ECF No. 107), and then moved to stay *Bilalov I* pending that partial appeal. (*Bilalov I,* ECF No. 113). The Court denied that motion on December 13, 2022, explaining that federal appeals do not work that way and assigning the motion to amend to Magistrate Judge Jennifer Willis for a report and recommendation. *Bilalov I*, 2022 WL 17616758, at *1-2 (S.D.N.Y. Dec. 13, 2022). Absorbing the lesson, Bilalov voluntarily dismissed his appeal without prejudice on January 24, 2023, *Bilalov v. Gref*, No. 22-2671 (2d Cir. Jan 24, 2023) (ECF No. 52), but not before filing a brief that – *again* – made no mention of any possible claims under the Sales Agreement. (*Bilalov I,* ECF No. 116).

And so that is where Bilalov found himself as January 2023 came to a close: bereft of any likely recovery from Sberbank or Gref in the Southern District, save through the pending motion to amend, the future possibility of an appeal from the *actual* final judgment, and/or a future post-judgment motion under Rule 60(b).

His solution? None of the above. Instead, he decided to avoid further scrutiny in New York and decamp for Ukraine, where martial law precludes any Russian defendant from making a proper defense and where – just to be safe – the absence of anything resembling proper service and notice would prevent the Sberbank Defendants from mounting that defense anyway. Then, having laundered an invented claim based on an invented agreement through a court system that he knew would apply scrutiny to neither, he would return to the Southern District and take advantage of New York's Uniform Foreign Country Money Judgments Recognition Act (the "Uniform Act"),

under which courts recognize foreign judgments "without microscopic analysis of the underlying proceeding." *Sung Hwan Co. v. Rite Aid Corp.*, 7 N.Y.3d 78, 83, 850 N.E.2d 647, 651 (2006).

"Microscopic" analysis is not necessary to defeat this crude fraud, but sanctions are necessary to deter it.

### B.    The Ukraine Proceeding

In his lawsuit in Ukraine, Plaintiff Bilalov sought a judgment against the Sberbank Defendants imposing damages for their alleged expropriation of Krasnaya Polyana, a Russian company that owned a ski resort in Sochi that later became a competition site in the 2014 Winter Olympic Games.

#### 1.    *The Fraudulent Sales Agreement and the Forum Selection Clause that Wasn't*

In the Ukraine action, commenced on March 2, 2023, Bilalov and his new confederate Ismailov sued the Sberbank Defendants for breach of the alleged March 2013 Sales Agreement, which provided for the sale of 817 shares of Krasnaya Polyana at a purchase price of $200,000,000 and which was never mentioned in *Bilalov I*. (First Am. Compl. ¶¶ 3, 88-91) (ECF No. 18).

Neither Bilalov nor Ismailov, however, were actually parties to the Sales Agreement. Rather, the seller was Zeeland Development Corporation ("Zeeland"), a British Virgin Islands company *represented* by Plaintiff Ismailov. The buyer was BIN Group of Companies ("BIN Group"), *represented* by Defendant Hutseriev, and allegedly making the share purchase on behalf of Sberbank. Yet Sberbank – *represented* by Kuznetsov – was neither a buyer nor a seller; it was allegedly the lender on a credit line of $15 billion to BIN Group, not to Bilalov, Ismailov, or their company, Zeeland.

Puzzlingly, moreover, Zeeland (the seller) was not a plaintiff in Ukraine and is not a plaintiff here. Likewise, BIN Group (the buyer) was not a defendant in Ukraine and is not a

defendant here. The Sales Agreement, moreover, runs for but a single page, despite its $200 million purchase price, its 15 *billion* dollar credit line, and despite its literally Olympian subject matter.

In reality, the Sales Agreement is fake. Plaintiffs forged it solely for the purpose of laundering a phony claim through the Ukrainian courts. Plaintiffs' inclusion of the Sales Agreement in the First Amended Complaint thus violates Rule 11(b)(3).

According to the First Amended Complaint, moreover, the Sales Agreement also includes a forum selection clause, alleging that: "[T]he Parties consented in writing to the jurisdiction of the Ukrainian courts at the time of the execution of the Sales Agreement." (First Am. Compl. ¶ 99(b)). In reality, that provision – Paragraph 5 of the Sales Agreement – reads as follows:

> In the event of any disputes arising out of this agreement and/or related to the fact of performance of obligations under this agreement, the parties reserve the right to resolve such disputes in accordance with the national laws of the [Commonwealth of Independent States] countries and/or the Laws of the State of New York. . . .

(First Am. Compl., Ex. A). That is not consent in writing to the jurisdiction of the Ukrainian courts, because it is a choice of law clause, not a forum selection clause (and because Ukraine is no longer a member of the Commonwealth of Independent States anyway). Indeed, it is not even a valid choice-of-law clause, as it does not actually *choose* anything. Rather, it provides *both* parties with a menu of at least twelve *different* national laws to choose from (*i.e.* the Commonwealth of Independent States), plus the laws of the State of New York.

Kuznetsov, moreover, signed the alleged Sales Agreement solely in his representative capacity on behalf of Sberbank, which the alleged Agreement itself confirms and the First Amended Complaint concedes outright. Whatever this garbled nonsense actually means, then, *Kuznetsov* simply did not agree to it and is not bound by it, not even in Plaintiffs' fanciful telling.

2.    *Ismailov is In Privity With Bilalov*

The First Amended Complaint now alleges that Bilalov and Ismailov were partners in the ownership of Krasnaya Polyana through a nebulous agreement vesting Ismailov with a trusteeship over Zeeland's assets:

> On March 9, 2013, Plaintiffs Ismailov and Bilalov, together with [Bilalov's brother] Magomed, *entered a partnership agreement* whereby Ismailov acquired the powers of Trustee of Zeeland and the assets owned by Zeeland, which included ownership of 817 shares of the Company.

(First Am. Compl. ¶ 88) (emphasis added). Yet none of the voluminous pleadings or proposed amendments in *Bilalov I* ever made any mention of Ismailov. Why the change of heart? Because of the domestic takings rule, one among many grounds for Bilalov's defeat in *Bilalov I*.

Under the domestic takings rule, an alleged taking by a "foreign state" of the property of its own citizens can never be a taking "in violation of international law," and therefore can never supply a basis to pierce sovereign immunity under the expropriation exception to the FSIA:

> [T]he phrase "rights in property taken in violation of international law, as used in the FSIA's expropriation exception . . . incorporates the domestic takings rule," which "assumes that what a country does to property belonging to its own citizens within its own borders is not the subject of international law." (quoting 28 U.S.C. § 1605(a)(3)). Therefore, because Plaintiff is a citizen of Russia and his property was allegedly taken in Russia by the Russian government, the expropriation exception does not apply.

*Bilalov I*, 2022 WL 4225968, at *7 (quoting *Fed. Republic of Ger. v. Philipp*, 141 S. Ct. 703, 709, 715 (2021) (internal quotation marks omitted)).

That ruling is categorical: there is nothing Bilalov can do to change the fact that he was a Russian citizen during the alleged expropriation of Krasnaya Polyana, and therefore no way that he could ever pierce Sberbank's immunity using the expropriation exception. What he needed to avoid the FSIA in New York (or so he thought) was a non-Russian citizen to sign on as a plaintiff

and eventual judgment creditor, ideally in Ukraine, where he could defeat the Sberbank Defendants with ease and by default. Enter Ismailov.

What Plaintiffs overlook, however, is that – as Bilalov's partner and privity – Ismailov is likewise bound by the preclusive effect of *Bilalov I. See Ferris v. Cuevas*, 118 F.3d 122, 128 n. 6 (2d Cir. 1997) ("Business partners are generally held to be in privity for purposes of business activities").

### 3. *Ukrainian martial law precludes Ukrainian lawyers from providing services to Russian defendants*

So Bilalov had his non-Russian accomplice, and he had a fake agreement to sue upon that ostensibly permitted him to both sue the Sberbank Defendants abroad and collect from them back here in New York. What next? File an action in Ukraine, the one jurisdiction in which a Russian defendant – let alone a Russian state-owned enterprise – is incapable of mounting any defense under current conditions.

That is no conjecture. Ukraine is currently under martial law, including regulations preventing Ukrainian nationals from providing services to Russian nationals. *See* Resolution of the Cabinet of Ministers of Ukraine No. 187, "On Ensuring the Protection of National Interests in Future Claims of the State of Ukraine in connection with the Military Aggression of the Russian Federation" (March 3, 2022) (A copy of Cabinet Resolution No. 187 is attached to the accompanying Declaration of Michael Van Riper ("Van Riper Decl.") at Exhibit 1).

But that is not all. Current Ukrainian regulations also authorize the seizure of Russian state-owned and private property. *See* "On Amendments to Chapter XIII 'Final and Transitional Provisions' of the Law of Ukraine 'On Executive Proceedings'" (Van Riper Decl. Ex. 2); Law of Ukraine, "About the Main Principles of Forced Seizure in Ukraine of Objects of Property Rights of the Russian Federation and Its Residents.") (Van Riper Decl. Ex. 3). They strip Russian nationals

of notarial services – a penalty far more onerous in civil law jurisdictions than in common law jurisdictions. *See* Resolution of the Cabinet Ministers of Ukraine No. 164, "Some Issues of Notary in the Conditions of Martial Law." (Van Riper Decl. Ex. 4). Russian state immunity does not presently exist in the Ukrainian courts in any form. *See Anonymous v. Russian Federation*, No. 308/9708/19 (Supreme Court of Ukraine, April 14, 2022) (Van Riper Decl. Ex. 5).

The genesis of these regulations, statutes, and decisional law is beside the point. The point is that Plaintiffs knew they existed, and took advantage of them to get the very thing *this* Court had previously denied: a nine-figure judgment. Plaintiffs' actions might not technically meet the definition of war profiteering, but they are not all that far off.

### 4. *Grossly Deficient Email Service*

Plaintiffs did not rest, however, on the unavailability of impartial tribunals and due process in Ukraine. They also ensured that service of process in the Ukraine action would be accomplished in the manner *least* calculated to afford notice of the action: that is, by email to a personal Gmail address for Kuznetsov sourced off the internet (kuznecov.s.k.1962@gmail.com), and by publication on the Ukrainian court's website. (First Am. Compl. ¶¶ 105-108). This despite the fact that – as Bilalov's Ukrainian lawyers admit in a counterintuitive attempt to *justify* this digital sewer service – correspondence between the Ukrainian court system and .ru internet domains "is prohibited" by Ukrainian Presidential Decree, and has been since 2017. (First Am. Compl., Ex. C ¶ 15).

Was there another way for Plaintiffs to help ensure that the Sberbank Defendants would at least receive *notice* of Plaintiffs' lawsuit in Ukraine despite martial law, even if not technically good service? Well, yes: the very means identified by Plaintiffs' counsel in their subsequent *ex parte* application to *this* Court on May 7, 2024, asking the Court to authorize alternative service under Rule 4(f) by email delivery to Sberbank's U.S.-based counsel:

Rule 4(f) permits service by any internationally-agreed upon "means of service that is reasonably calculated to give notice" to each defendant . . . Service by email does not violate any due process considerations where the email address is "*undisputedly* connected to the defendants" and the address was one "that the defendants used for *business* purposes."

(ECF No. 14) (emphasis added).

By concealing the governing law – 28 U.S.C. § 1608, not Rule 4(f) – this application was itself sanctionable (*see* below at 27). Yet it nevertheless establishes that Plaintiffs had a precise idea in mind of what would constitute reasonable notice to the Sberbank Defendants of a lawsuit against them under U.S. notions of due process, while openly conceding that an email fired off to some questionable (*not* undisputed) and personal (*not* business) Gmail address does not suffice. Plaintiffs simply *chose* not to use that same back-up method in Ukraine – until the Ukrainian judgment was in the proverbial bag, of course, and they returned to this Court to collect. Then they were suddenly *very* solicitous towards providing actual notice.

The problem is that U.S. notions of due process – not Ukrainian – control whether a foreign issuing court had personal jurisdiction under the Uniform Act, including whether the issuing court made proper service. Not only is Plaintiffs' contention that the Ukrainian court had personal jurisdiction over Sberbank frivolous (*see* below at 26-27), their own letter confirms it.

### 5.    The Inevitable Result

With no proper notice of the action in Ukraine, and with no way to mount a defense even if they had notice, the Sberbank Defendants inevitably suffered judgment by default on May 25, 2023. (First Am. Compl. ¶ 112). The Ukrainian court entered two awards. The first award went to Ismailov, in the principal amount of $30,000,000, imposed jointly and severally upon the Sberbank Defendants and Hutseriev. The second award went to Bilalov, in the principal amount of $170,000,000, again jointly and severally against all three defendants. (First Am. Compl. ¶ 113).

The First Amended Complaint nevertheless does not distinguish between the two, asking that the Court enter a lump-sum judgment "in favor of Plaintiffs Ismailov and Bilalov" in the "principal amount of $200,000,000.00 in favor of Plaintiffs." It does not explain why Ismailov should recover $200,000,000 instead of $30,000,000, nor why Bilalov should recover $200,000,000 instead of $170,000,000. That is sloppy, but perhaps not sanctionable. What *is* sanctionable is Bilalov's persistence in seeking *any* judgment against Sberbank whatsoever after the Court held in *Bilalov I* that Sberbank is immune to his claims under the well-established domestic takings rule.

In any event, the Ukrainian court's judgment was not the final word in the underlying Krasnaya Polyana affair. The final word – or, more precisely, the last-filed judgment – would come from this Court in *Bilalov I*.

### C.    Last-Filed Final Judgment in *Bilalov I*

Back here in the Southern District, Judge Willis entered a report and recommendation on March 16, 2023, recommending that the Court deny Bilalov's third motion to amend. (*Bilalov I*, ECF No. 120). By rule, and as set forth in that report, Bilalov had fourteen days to object: March 30, 2023.

By that date, the Ukrainian action was well underway. The Ukrainian court had issued an order formally opening the proceeding on March 2, 2023, and held a "preliminary meeting" on March 23, 2023. (Ex. B at 1). Yet Bilalov did not file objections to the report and recommendation, seek further leave to amend, or otherwise notify this Court of his pending breach of contract claim in Ukraine. In due course, this Court entered final judgment on July 5, 2023 *against* Bilalov, about six weeks after the Ukrainian court had entered its judgment *for* Bilalov. (*Bilalov I*, ECF No. 121). He did not appeal.

### D.    The Present Action

In the present action, Plaintiff Bilalov seeks to recognize a judgment against the Sberbank Defendants imposing damages for their alleged expropriation of Krasnaya Polyana, a Russian company that owned a ski resort in Sochi that later became a competition site in the 2014 Winter Olympic Games.

### 1.    *Plaintiffs At Last Reveal the Existence of the Sales Agreement*

Backed by his Ukrainian judgment, Bilalov could finally tell the whole story, the story he omitted from *Bilalov I*, the story he neglected to mention in not one, but three motions to amend, or on his improper interlocutory appeal, or as an objection to Judge Willis' report and recommendation, or on a proper appeal from final judgment, or in any post-judgment motion under Rule 60(b). The First Amended Complaint in this concocted action at last explains it all: the (phony) Sales Agreement; Kuznetsov's supposed involvement not just as a peripheral conspirator, but as the signer of that Agreement on Sberbank's behalf; the baffling choice-of-law clause that also somehow operates as a forum selection clause – all of it. Yet one part of the story is conspicuously absent: there is no mention of *Bilalov I*. Not a word. Convenient.

One explanation is that Bilalov decided not to tell counsel about it, and counsel did not ask. But we can rule out that possibility, because, in their subsequent May 7, 2024 letter motion to authorize alternative service, counsel pointed to the docket in *Bilalov I*, among others, to support Plaintiffs' argument that service on the Sberbank Defendants' U.S.-based attorneys would provide adequate notice of *this* suit. (ECF No. 14, at 3). No, Plaintiffs failed to mention *Bilalov I* because it precludes this action, and they hoped nobody would notice. This reveals their improper purpose under Rule 11(b)(1). (*See* below 21-23).

2.    *Plaintiffs File a Sanctionable Motion for Alternative Service*

In the same May 7, 2024 application for alternative service, Plaintiffs similarly concealed the governing law from the Court. Although Plaintiffs concede that Sberbank is a "foreign state" under the FSIA, that *ex parte* letter motion addressed itself only to service upon individuals overseas under Rule 4(f), failing entirely to brief the Court on the correct standard: 28 U.S.C. § 1608, by operation of Rule 4(j)(1) ("A foreign state or its political subdivision, agency, or instrumentality *must be served* in accordance with 28 U.S.C. § 1608.") (emphasis added). (ECF No. 14, at 1).

As the Sberbank Defendants explain in their motion to dismiss, moreover, the standard for court-ordered service under Rule 4(f) differs vastly from that under 28 U.S.C. § 1608. The former authorizes court-ordered alternative service so long as it is not "prohibited by international agreement," *i.e.* the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention"). The latter authorizes such service only when "consistent with the law of the place where service is to be made," *i.e.* domestic *Russian* law.

3.    *Plaintiffs Attribute Sberbank CIB's Jurisdictional Contacts to Sberbank, Even Through Sberbank CIB Does Not Exist*

Not content to conceal the relevant law, the First Amended Complaint also conceals another dispositive fact: that Sberbank CIB no longer exists. According to the First Amended Complaint: "Sberbank [CIB] *is* a corporation incorporated under the laws of Delaware and *is* licensed to do business in New York." That is false. Sberbank CIB dissolved in December *2023*, as would have been apparent to anyone who took the approximately five minutes required to investigate Sberbank CIB's corporate status on the New York Secretary of State's surprisingly user-friendly website. (Van Riper Decl. Ex. 6).

15

Plaintiffs use of the present tense is no idle falsehood, as Plaintiffs repeatedly attribute Sberbank CIB's forum contacts *to* Sberbank in order to establish personal jurisdiction *over* Sberbank (itself a glaring error of law, but probably not quite frivolous). More tellingly, Plaintiffs attribute Sberbank CIB's alleged commercial activity *in the present* to Sberbank in a misguided effort to allege the "nexus" element of the expropriation exception. *Compare* First Am. Compl. ¶ 42(b) ("Sberbank satisfies the Expropriation Exception. 28 U.S.C. § 1605(a)(3). Specifically: . . . Sberbank, via Sberbank USA, *is* engaged in commercial activity in the United States.") (emphasis added) *with*  28 U.S.C. § 1605 (applying exception when "property exchanged for such property *is* owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality *is* engaged in a commercial activity in the United States.") (emphasis added). There are myriad legal problems with that theory, all addressed at greater lengths in Sberbank's motions to dismiss, but the most fundamental problem is that it is based on a lie.

### 4.    The Sberbank Defendants Provide Safe Harbor Notice

On August 21, 2024, the Sberbank Defendants served safe harbor notice on Plaintiffs' counsel by email and Federal Express, attaching a copy of their notice of motion, this brief, and its supporting exhibits in substantially final form, including the New York Department of State records showing that Sberbank CIB does not exist. (Van Riper Decl. Ex. 7). The cover letter to Plaintiffs' counsel directed that they "withdraw" the First Amended Complaint and file a voluntary dismissal of the action *with* prejudice, as well as "correct[]" their May 7, 2024 letter application for alternative service by filing a letter with the Court explaining their failure to properly advise Your Honor and asking the Court to vacate its Order of June 6, 2024. *See* Fed. R. Civ. P 11(c)(2) (prohibiting a motion under Rule 11 "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected" within the safe harbor period). Plaintiffs have done neither.

## ARGUMENT

The First Amended Complaint is utterly devoid of merit both factually and legally, and no reasonable attorney who conducted a reasonable investigation could possibly have believed otherwise.

## I. LEGAL STANDARD UNDER RULE 11

Under Rule 11(a), "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record." That signature:

> [C]ertifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) [the pleading] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Consequently, "[a] pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (internal quotation marks omitted).

In assessing whether a pleading violates Rule 11, "the standard . . . is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003)); *see also Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000).

A.    Improper Purpose

Rule 11(b)(1) sets out a non-exclusive list of improper purposes, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *See also Walker v. City of New York*, No. 14-cv-0680, 2024 WL 1158798, at *14 (E.D.N.Y. Mar. 18, 2024) ("Courts have recognized other improper purposes beyond those specifically identified in Rule 11(b)(1) . . . .").

"[W]ithout question, successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11." *Knipe v. Skinner*, 19 F.3d 72, 77 (2d Cir. 1994). The Court, moreover, may further infer an improper purpose from Plaintiffs' repetition or addition of frivolous legal positions: "Although the 'improper purpose' and 'frivolousness' inquiries are separate and distinct, they will often overlap since evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose." *Sussman v. Bank of Israel*, 56 F.3d 450, 458 (2d Cir. 1995) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1990)).

This Court took precisely that approach in *LCS Group v. Shire LLC*, inferring an improper purpose when a plaintiff – who did *not* participate in a previously dismissed action, but *was* in privity – nevertheless brought a successive action arising out of the same underlying dispute, supported by new and frivolous RICO claims. *LCS Grp., LLC v. Shire LLC*, No. 18-cv-02688, 2019 WL 1234848, at *14 (S.D.N.Y. Mar. 8, 2019) (Torres, J.), *aff'd* No. 20-2319, 2022 WL 1217961 (2d Cir. Apr. 26, 2022). As the Court explained: "a court may infer improper purpose where multiplicative filings are coupled with 'objectively unreasonable statements.'" *Id.* (quoting *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 393 (2d Cir. 2003)).

B.    Frivolous Law

Simply being wrong is not by itself sanctionable under Rule 11(b)(2), but sanctions may be imposed where a legal contention is "patently contrary to existing law." *Omari v. Khaimah Free*

*Trade Zone Authority*, No. 16-cv-3895 (NRB), 2017 WL 3896399, *12 (S.D.N.Y. Aug. 18, 2017)

(quoting *Storey*, 347 F.3d at 391). Accordingly, "where it is patently clear that a claim has

absolutely no chance of success under the existing precedents, and where no reasonable argument

can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated."

*Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985).

In addition, an attorney's good faith or subjective belief that the legal contentions of the

pleading are correct is not relevant: "pure heart, empty head" is not a defense to a sanctions motion

under Rule 11. *Star Mark*, 682 F.3d at 177; *McGreal v. Village of Orland Park*, 928 F.3d 556, 560

(7th Cir. 2019) ("An empty head but a pure heart is no defense." (quoting *Thornton v. Wahl*, 787

F.2d 1151, 1154 (7th Cir. 1986))).

      C.      <u>Unsupported Factual Contentions</u>

A pleading violates Rule 11(b)(3) when "after reasonable inquiry, a competent attorney

could not form a reasonable belief that the pleading is well grounded in fact" *Kropelnicki v. Siegel*,

290 F.3d 118, 131 (2d Cir. 2002) (quoting *W.K. Webster & Co. v. Am. President Lines, Ltd.*, 32

F.3d 665, 670 (2d Cir.1994) (internal quotation marks omitted). When "a particular allegation is

utterly lacking in support," moreover, the Court may impose sanctions. *O'Brien v. Alexander*, 101

F.3d 1479, 1489 (2d Cir. 1996).

**II.     PLAINTIFFS FILED THE FIRST AMENDED COMPLAINT FOR THE IMPROPER PURPOSE OF AVOIDING THE PRECLUSIVE EFFECT OF *BILALOV I* AND AVOIDING FURTHER SCRUTINY OF THEIR CLAIMS**

*Bilalov I* is simultaneously the first-filed *action* in this now multi-national dispute and the

last-in-time *judgment*. For Plaintiffs, that is bad news followed by worse news. It is bad news

because, as the first-filed action, *Bilalov I* would have blocked any subsequent case in federal court

while it remained pending, even though final preclusive effect attached to *Bilalov I* only upon entry

of judgment. It is *worse* news because, as the last-filed judgment, *Bilalov I* now controls in the

event of conflict with any earlier judgment, including the Ukrainian judgment. No wonder that the First Amended Complaint makes no mention of *Bilalov I*.

A.      The First-Filed Action Rule

By the time Plaintiffs commenced the Ukrainian lawsuit in March 2023, this Court had already dismissed all of Bilalov's claims and was awaiting Judge Willis' report and recommendation on whether to grant Bilalov another amendment of his complaint. *Bilalov I*, however, had not yet reached final judgment and therefore had not yet accrued binding preclusive effect. *See, e.g., EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (only a "final judgment on the merits" carries preclusive effect).

For Bilalov, then – who was staring defeat in the face – time was running short but had not yet expired. Yet *Bilalov I*, even though not yet preclusive, was nevertheless holding place under the first-filed rule, a "well-settled rule in this Circuit," holding that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 392 (S.D.N.Y. 2014) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989)). *Bilalov I*, however, would presumably have no first-filed effect in Ukraine, and it would *definitely* have no such effect if the Sberbank Defendants never received notice of those proceedings in time to object. Therefore, Plaintiffs proceeded in Ukraine, returned to the Southern District with their claims fully laundered, and filed this action.

B.      The Last-In-Time Judgment Rule

The problem for Plaintiffs is that the Ukrainian court had acted too quickly. It entered judgment on May 25, 2023, while this Court entered judgment on July 5, 2023. That triggers a different rule: the last-in-time judgment rule, under which – as between two inconsistent judgments – the later judgment is entitled to preclusive effect. *See, e.g., Ackerman v. Ackerman*, 676 F.2d 898,

903 n. 5 (2d Cir. 1982).[1] The Ukrainian court judgment is not entitled to any preclusive effect at all, because it is invalid – but even if it were, *Bilalov I* controls.

The full issue and claim preclusive effect of *Bilalov I* is examined in the Sberbank Defendants' motion to dismiss, but two such effects make the First Amended Complaint an exercise in improper purpose under Rule 11: <u>First</u>, *Bilalov I* is res judicata over all claims that were or could have been brought by Bilalov or his privities, including their bogus claim for breach of the Sales Agreement. <u>Second</u>, *Bilalov I* is issue preclusive over all issues of law and fact litigated in *Bilalov I* and essential to its final judgment, including the Court's ruling that Bilalov cannot proceed under the expropriation exception.

Debatably (at least on a motion for sanctions), the latter ruling does not bind Ismailov, only Bilalov, because the rule that partners are in privity has occasional exceptions. Ismailov, then, shares Bilalov's improper purpose, but not necessarily his frivolous position (at least not on this point). Yet, even if that is true, *Bilalov himself* is *still* pursuing the Sberbank Defendants for $200,000,000 and *still* seeking to pierce immunity under the expropriation exception. The Court is therefore left with the following irreducible minimum quantum of issue preclusion: the *exact* same Plaintiff (Bilalov) has raised the *exact* same issue (the expropriation exception) against the *exact* same defendant (Sberbank), even though the Court ruled against Bilalov on that issue in a

---

[1] Lest Plaintiffs take the wrong lesson here, they should note well that the last-in-time judgment rule does *not* run both ways; that is, it does not control when the first judgment is rendered by an American court and the last judgment is rendered by a foreign court that does not apply issue or claim preclusion. *See, e.g., id.*; *In re Bruetman*, 259 B.R. 649, 672 (Bankr. N.D. Ill.), *aff'd*, 32 F. App'x 158 (7th Cir. 2002) ("[P]arties who litigate to a conclusion in a United States court can hardly expect any United States court to give effect to a subsequent contrary ruling by a foreign court, and that should not be done here.")

decision necessary to a final judgment (*Bilalov I*). The same result – dismissal – *must* entail: only this time, Bilalov's persistence is frivolous and sanctionable.

C.    Filing Suit to Avoid Preclusive Effect Is An Improper Purpose and Constitutes Harassment Under Rule 11(b)(1)

*Bilalov I* therefore forecloses this action. Plaintiffs' scheme did not work. But that does not mean it escapes sanction. To the contrary, Bilalov and Ismailov's "filing of the second complaint on the heels of the dismissal of [*Bilalov I*] reveals an improper purpose." *Knipe*, 19 F.3d at 77. Bilalov has "offered no reason why his theory of liability" – breach of the Sales Agreement – "could not have been included in his first complaint, nor has he offered any reason why his arguments respecting the [FSIA] would receive more favorable treatment the second time around." *Id*.

Similarly, in *LCS Group*, this Court considered whether sanctions were appropriate when the plaintiff, LCS, sued a group of defendants under RICO after its sole manager and member had previously lost a federal lawsuit against those same defendants under state law, all of it arising out of the same underlying patent dispute. The Court answered in the affirmative, explaining that: "[A]n improper purpose can be inferred based on LCS (and [its manager's]) filing of two actions arising out of the same [patent review] petition and making statements in the present complaint that are objectively unreasonable in light of Judge Gergel's ruling in the first action."

The same is true here. The purpose of the Ukrainian action and this action was to insulate Plaintiffs' claims from the pesky scrutiny this Court had applied in *Bilalov I*. But choosing to ignore prior rulings in favor of "cranking up a separate suit is simply unacceptable and not permitted." *Prachand v. Government of India Tourist Office*, No. 92-C-4336, 1992 WL 245523, at *5 (N.D. Ill. Sept. 22, 1992). That conclusion is only reinforced by Plaintiffs' equally frivolous

legal positions. *Cf. Sussman*, 56 F.3d at 458 ("[E]vidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose.")*.*

## III.   THE FRIVOLOUS LEGAL BASIS OF THE FIRST AMENDED COMPLAINT VIOLATES RULE 11

Because Sberbank is an "agency or instrumentality" within the meaning of the FSIA, and Kuznetsov was sued for his alleged actions on Sberbank's behalf, both are immune from suit under 28 USC § 1604. The expropriation exception to sovereign immunity does not even arguably apply. In addition, the Uniform Act specifically prohibits recognizing this obviously contrived Ukrainian judgment.

### A.    The First Amended Complaint Depends Upon a Frivolous Application of the Expropriation Exception to the FSIA

As the Sberbank Defendants' motion to dismiss explain at greater length, once there is a judgment in a case, the underlying claims are merged into the judgment and can no longer be sued upon. *See Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp.3d 11, 31-32 (D.D.C. 2023) (ruling the arbitration exception is applicable because "Plaintiffs' action is not one to enforce the [underlying arbitration clauses] or to confirm the Zambian arbitral award . . .  Rather, Plaintiffs have brought an action under the D.C. Judgments Recognition Act to recognize and enforce the Zambian judgment.") Plaintiffs, however, ask the Court to look past the form of this action and instead assess the expropriation exception by looking at their underlying breach of contract claims. For purposes of this motion, the Sberbank Defendants will assume that this request is non-frivolous – wrong, but non-frivolous.

1.    *The Underlying Breach of Contract Claims Against Sberbank Categorically Fall Outside the Expropriation Exception Because Sberbank Is Not the Russian Federation and Because Bilalov's Claims Remain Blocked by the Domestic Takings Rule*

Plaintiffs' ultimate position is nevertheless frivolous because well-established Second Circuit law and *Bilalov I* foreclose the application of the expropriation exception to their underlying claims. Under the FSIA, the term "foreign state" includes "agencies or instrumentalities," which includes corporations majority-owned by the state. That statutory definition, however, does not change the fact that a state-owned enterprise is *not* the sovereign itself. In *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000), the Second Circuit therefore held that the expropriation exception – which requires a "taking" – cannot apply to state-owned enterprises unless they acted as the alter ego of the sovereign: "The term 'taken' thus clearly refers to acts of a sovereign, not a private enterprise, that deprive a plaintiff of property without adequate compensation."

If there were any doubt that the rule of *Zappia* applies to Sberbank, *Bilalov I* dispelled it, squarely applying *Zappia* to reject Bilalov's argument that Sberbank's immunity yielded to the expropriation exception:

> The legislative history of the FSIA makes clear that the phrase "taken in violation of international law," 28 U.S.C. § 1605(a)(3), "refers to the nationalization or expropriation of property without payment of the prompt adequate and effective compensation required by international law, including takings which are arbitrary or discriminatory in nature," *Zappia*, 215 F.3d at 251 (quotation marks and citation omitted). Thus, for the purposes of the FSIA, the term "taken" "refers to acts of a sovereign, not a private enterprise, that deprive a plaintiff of property without adequate compensation."

Only then did the Court "assum[e] arguendo" that Sberbank was an alter ego of the Russian Federation, before concluding that Bilalov's Russian citizenship would nevertheless foreclose application of the expropriation exception under the domestic takings rule. *Id.*

24

*Zappia*, now joined by *Bilalov I*, controls here again, categorically barring the claims of both Ismailov and Bilalov because Sberbank is not the Russian Federation. There is no non-frivolous rejoinder, no authority to the contrary, no argument to reverse that law, and no allegations in the First Amended Complaint even attempting to establish alter ego status. (To the contrary, Plaintiffs abandoned that already conclusory legal assertion when they amended).

Bilalov's frivolousness is even worse, because he continues to persist even in the face of the domestic takings rule. That rule, too, is both well-established and categorical. Bilalov is and was a *Russian* citizen. Sberbank is and was a *Russian* state-owned enterprise. Under the domestic takings rule, then, Bilalov *cannot possibly allege* a taking of his property by Sberbank in connection with Krasnaya Polyana. To paraphrase the Second Circuit, his "audacious attempt to revisit [*Bilalov I*]" is "patently frivolous." *Paganucci v. City of New York*, 993 F.2d 310, 312 (2d Cir. 1993).

> 2. *Because Plaintiffs Lack Any Non-Frivolous Basis to Invoke Original Subject Matter Jurisdiction under the FSIA, Plaintiffs Also Lack Any Non-Frivolous Basis to Invoke Subject Matter Jurisdiction Over Kuznetsov*

All of the foregoing arguments under the FSIA apply with equal force to Kuznetsov, because the First Amended Complaint proceeds against him in his representative capacity, making Sberbank the real party in interest. Although that point might – *might* – be debatable enough to avoid sanctions, the First Amended Complaint nevertheless crosses over from possibly debatable to outright sanctionable by insisting that *supplemental* jurisdiction extends to Plaintiffs' claims against Kuznetsov. That argument is frivolous because it necessarily requires the predicate assertion of original subject matter jurisdiction under the FSIA over Sberbank as a jurisdictional anchor, an assertion that – as set forth immediately above – is itself frivolous.

B.    There Is No Non-Frivolous Argument That The Ukraine Court Had Personal Jurisdiction Under New York Law, Leaving The Judgment Incapable of Recognition Under CPLR 5304(a)(2)

CPLR 5304(a)(2) requires non-recognition of a judgment when the issuing court lacked personal jurisdiction. That inquiry is controlled not by the law of the issuing court, but by domestic law, and consequently requires *service* in compliance with due process under New York law as well: "[I]if recognition of a foreign money judgment were sought in New York and the defendant had received no meaningful notice of the foreign proceeding, that lack of notice would serve as a legitimate basis for not enforcing the judgment in our state, as the entry of such a judgment would not comport with our conception of personal jurisdiction or our notion of fairness." *John Galliano, S.A. v. Stallion, Inc*., 15 N.Y.3d 75, 80-81 (2010).

The Sberbank Defendants' motion to dismiss address this issue in greater detail, but we already know that the Sberbank Defendants did not receive meaningful notice of the Ukrainian proceedings – notice that is a fundamental requirement of due process under New York law, and therefore, in its absence, a complete defense to recognition of a judgment under CPLR 5304(2). We know this because Plaintiffs themselves have told us so – not in the *words* of the First Amended Complaint, to be sure, but by their subsequent *actions* in pursuing alternative service in their application of May 7, 2024. That application conceded outright that due process required, and that email service on Sberbank's U.S.-based counsel would provide, notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Pls.' May 7, 2022 Ltr 2) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 US 306, 314 (1950))

"Sometimes, actions speak louder than words." *United States v. Donziger,* No. 11-cv-0691 (LAK), 2021 WL 3141893, at *84 n. 817 (S.D.N.Y. July 26, 2021), *aff'd*, 38 F.4th 290 (2d Cir. 2022). This is such a time. The proof that the Sberbank Defendants received nothing close to

meaningful notice of the Ukraine action comes straight from counsel's own filings. In contending otherwise, the First Amended Complaint again crosses from merely wrong to frivolous and sanctionable.

### C.    Plaintiffs' Letter Application Was Frivolous

When Plaintiffs asked this Court to authorize alternative service on the Sberbank Defendants, moreover, they concealed the governing statute – 28 U.S.C. § 1608 – from this Court. They did not disclose 28 U.S.C. § 1608 to the Court and then *debate* that governing statute, they did not *argue* why that governing statute might not apply, nor *explain* why email service on U.S. counsel would comply with *Russian* law, as the statute requires. They simply ignored it.

What's more, this was an *ex parte* proceeding, where counsel's duty of candor to the Court is at its highest ebb. Accordingly, Plaintiffs' assertion that the Court could authorize service of the Sberbank Defendants by email to U.S. counsel under Rule 4(f) was not just frivolous, it may even be an appropriate matter for attorney discipline.

## IV.    SANCTIONABLE FACT ERRORS

The First Amended Complaint abounds with errors of fact, but at least three in particular lack any evidentiary support, thus violating Rule11(b)(3).

### A.    The Sales Agreement

First and foremost, the Sales Agreement is a patently obvious fake, which is why Bilalov conceded that it does not exist repeatedly throughout the course of *Bilalov I* by bringing a claim for unjust enrichment, rather than breach of contract. And counsel should have noticed, not just because the Sales Agreement is facially ridiculous, but because: (i) neither of their newly minted judgment creditors were parties to the Agreement; (ii) Zeeland and BIN Group, the actual buyer and seller under the Agreement were not parties in Ukraine and are not parties here; and (iii) Bilalov repeatedly attempted to amend in *Bilalov I without ever raising the Sales Agreement or*

*even hinting at its existence*, even though – according to counsel – the Sberbank Defendants expressly submitted to litigation in New York of all claims arising out of the Agreement.

"[T]he history of the[se] enforcement proceedings includes several crucial moments where a reasonable attorney would have, at a minimum, inquired further about the bona fides of the document that was the basis of the action he was prosecuting. At some point, failing to do so becomes willful blindness." *In re Girardi*, 611 F.3d 1027, 1036 (9th Cir. 2010). Perhaps counsel was nevertheless fooled (or self-deluded) as to the provenance of the Agreement, but Bilalov himself cannot possibly excuse his conduct by arguing that the Sales Agreement would find "evidentiary support after a reasonable opportunity for further investigation." At the very least he had actual knowledge of the forgery; at most, he created it himself!

B.    The Non-Existent Forum Selection Clause

Even if the Court declines to conclusively find that the Sales Agreement is fake at this early stage of the lawsuit, the First Amended Complaint's misrepresentations of the *content* of the Sales Agreement remains sanctionable. According to Plaintiffs: "Pursuant to paragraph 5 of the Sales Agreement . . . the Parties consented in writing to the jurisdiction of the Ukrainian courts at the time of the execution of the Sales Agreement." (First Am. Compl. ¶ 99). But that is not a forum selection clause, it is *at most* a choice of law clause (*see* supra 8) – and only a forum selection clause constitutes "consent[] in writing" to the jurisdiction of a given court. *See, e.g. Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005) ("[T]he courts have always been careful to contrast such [choice-of-law] provisions with forum-selection or consent to jurisdiction clauses." (quoting *ESI, Inc. v. Coastal Corp.*, 61 F.Supp.2d 35, 59 (S.D.N.Y.1999) (alterations in original))). On its face, moreover, the phony Sales Agreement does not bind Kuznetsov, so the allegation that Kuznetsov consented to *anything* in writing under that Agreement is false, even if the Agreement itself were real.

28

C.    The Lonely Demise of Sberbank CIB

So, too is the allegation that Sberbank CIB presently engages in any business or commercial activity in the Southern District and is presently licensed to do so in New York, because Sberbank CIB is dead as a doornail. As explained more fully above, this is not an idle misrepresentation or harmless mistake: it is a central plank of Plaintiffs' already flawed theory of personal jurisdiction in this case (attributing Sberbank CIB's forum contacts to Sberbank) and – more importantly – subject matter jurisdiction in this case (attributing Sberbank CIB's present engagement in commercial activity to Sberbank). Plaintiffs made these false allegations even though a simple online records search would have shown them that Sberbank CIB ceased its existence *months* before they filed a complaint and then First Amended Complaint that flatly claims otherwise. (*See* Van Riper Decl. Ex. 6). This, too, is sanctionable.

## V.    APPROPRIATE SANCTIONS

Upon finding a violation of Rule 11(b), the Court "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).  Although the Court may *not* "impose a monetary sanction [] against a represented party for violating Rule 11(b)(2)" – that is, for a frivolous *legal* position – the Court may nevertheless "sanction a represented party under subdivision (b)(1), if the party 'had actual knowledge that filing the paper constituted wrongful conduct, *e.g.,* the paper made false statements or was filed for an improper purpose.'" *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 140 (S.D.N.Y. 2002) (quoting *Salovaara v. Eckert*, 222 F.3d 19, 33 (2d Cir.2000)). The Court may also sanction represented parties for causing a violation of Rule 11(b)(3) – that is, an unsupported fact. Monetary sanctions, including an award attorneys' fees, are therefore entirely appropriate not only against Plaintiffs' counsel, but also against Bilalov and Ismailov directly for their violations of Rule 11(b)(1) and (3).

At present, however, the Court cannot issue any monetary award in favor of either of the Sberbank Defendants, because both are subject to sanctions under Treasury Department Regulations enforced by the Office of Foreign Assets Control ("OFAC"). Rather, the Court can find Plaintiffs and their counsel in violation of Rule 11, and Sberbank can then seek a license from OFAC permitting it to seek entry of that award. In *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-0151, 2022 WL 611586, at *8 (D. Del. Mar. 2, 2022), for instance – the product of exhaustive litigation, in which the Government occasionally participated directly – the district court authorized an auction of shares held by a blocked entity under Venezuela-related sanctions, subject to eventual licensing by OFAC. The court determined that: "nothing prohibits it from taking such actions, even if no party has obtained a specific license from OFAC." *Id*.

The Court may also issue litigation sanctions and enjoin Plaintiffs without OFAC approval, in order to deter repetition of this conduct in the future. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts."). At minimum, the Court should therefore strike the First Amended Complaint with prejudice and without leave to amend. In addition, the Court should enjoin plaintiffs from bringing any future action in the United States arising out of or relating to the 2013 transfer of Krasnaya Polyana, including any action under the Uniform Act. The Court should also require Plaintiff to inform it and the undersigned if they proceed with any such action overseas.

## CONCLUSION

For the reasons set forth above, this Court should grant the Sberbank Defendants' motion for sanctions under Rule 11 against both Plaintiffs' counsel and Plaintiffs themselves. An appropriate form of order has been contemporaneously submitted with this motion.

Date:   September 16, 2024
        New York, New York

                                            Respectfully submitted,


                                            */s/Jay S. Auslander*

                                            Jay S. Auslander
                                            Natalie Shkolnik
                                            Aari Itzkowitz
                                            Michael Van Riper
                                            Wilk Auslander LLP
                                            825 Eighth Avenue, Suite 2900
                                            New York, New York 10019
                                            Tel: (212) 981-2338

                                            *Attorneys for Defendants Stanislav*
                                            *Kostiantynovych Kuznetsov and Public Joint*
                                            *Stock Company Sberbank of Russia*