**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

MUSAIB ISMAILOVYCH ISMAILOV and AKHMED
HADZHYIOVYCH BILALOV,

              Plaintiffs,

        -v-

MYKHAILO SAFARBEKOVYCH HUTSERIEV,
STANISLAV KOSTIANTYNOVYCH KUZNETSOV,
and PUBLIC JOINT STOCK COMPANY
"SBERBANK OF RUSSIA,"

              Defendants.

------------------------------------------------------------------------x

Civ. No. 1:24-cv-03287-AT

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTIONS TO DISMISS AND FOR SANCTIONS**

**SEIDEN LAW LLP**
Jake Nachmani
Michael Stolper
MarcAnthony Bonanno
322 Eighth Avenue, Suite 1200
New York, NY 10001
(212) 523-0686

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 4

A.   Plaintiffs Are Rightful Owners Of Krasnaya Polyana ............................................ 4

B.   Defendants Take Krasnaya Polyana From Plaintiffs ................................................ 4

C.   Russia Exerts Extensive Control Over Sberbank .................................................... 6

D.   The Ukrainian Court Issues A Judgment For Plaintiffs And Against Defendants ................. 7

E.   Plaintiffs Seek To Recognize And Enforce The Ukrainian Judgment ................................ 8

F.   Plaintiffs Serve Defendants ....................................................................... 8

G.   This Action Is Not *Bilalov v. Gref et al.*, 1:20-cv-09153 (AT) (S.D.N.Y.) ........................... 9

ARGUMENT ..................................................................................................... 10

I. DEFENDANTS' MOTIONS TO DISMISS SHOULD BE DENIED ..................................... 10

A.   The Court Has Subject Matter Jurisdiction Pursuant To 28 U.S.C. § 1605(a)(3) ................. 10

   1.   Ismailov Has Rights In Property At Issue ........................................................ 11

   2.   Sberbank's Taking Of Ismailov's Property Is Cognizable Under The FSIA ...................... 13

   3.   Sberbank's Taking Violated International Law .................................................... 18

   4.   The FAC Sufficiently Alleges Nexus ............................................................. 20

   5.   Ismailov's Claim Is Not Barred by Res Judicata .................................................. 23

   6.   The Court Has Jurisdiction Over The Claims Against Kuznetsov And Hutseriev ............ 26

B.   THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ...................... 30

   1.   The Court Has Jurisdiction Over Defendants Pursuant To The FSIA ............................. 30

   2.   The Court Has Quasi In Rem Jurisdiction ........................................................ 33

   3.   The Court's Exercise Of Personal Jurisdiction Comports With Due Process .................... 37

i

C.   THE S.D.N.Y. IS A PROPER VENUE FOR THIS ACTION ............................................... 38

    1.   The S.D.N.Y. Is A Proper Venue For The Sberbank Defendants ..................................... 38

    2.   The S.D.N.Y. Is A Proper Venue For Hutseriev ................................................................. 39

D.   PLAINTIFFS PROPERLY EFFECTUATED SERVICE OF PROCESS ........................... 40

E.   THE COURT SHOULD RECOGNIZE THE UKRAINIAN JUDGMENT .......................... 46

    1.   The Ukrainian Judgment Is Final, Conclusive, And Enforceable .................................... 46

    2.   Defendants' CPLR 5304 Challenges Fail ........................................................................... 46

    a.   The Ukrainian Judicial System Is Fair And Impartial ......................................................... 48

    b.   The Ukrainian Court Had Personal Jurisdiction Over Defendants ................................... 50

    c.   The Ukrainian Court Had Subject Matter Jurisdiction Over The Ukrainian Action .......... 53

II.  THE MOTION FOR SANCTIONS SHOULD BE DENIED ................................................... 54

A.   The FAC Is Based On Supported And Meritorious Legal Positions ..................................... 55

    1.   Plaintiffs' Legal Arguments Are Well Supported And Meritorious .................................. 55

    2.   Plaintiffs' Motion For Alternative Service Was Valid And Correctly Decided ................ 56

B.   Defendants' Asserted "Fact Errors" Are Baseless ................................................................. 57

    1.   The Sales Agreement Is Authentic And Enforceable .......................................................... 57

    2.   Plaintiffs' Reference To The Forum Selection Clause Is Not Sanctionable ..................... 58

    3.   Defendants' Assertions As To Sberbank USA Are Irrelevant ........................................... 59

C.   Defendants Fail To Establish That Plaintiffs Have An Illegitimate Purpose ........................ 59

CONCLUSION .................................................................................................................................... 60

## TABLE OF AUTHORITIES

**Cases**

*Abelesz v. Magyar Nemzeti Bank*,
   692 F.3d 661 (7th Cir. 2012) ...................................................................................... 12, 16

*Aboutaam v. L'Office Federale De La Culture De La Confederation Suisse*,
   2019 WL 4640083 (S.D.N.Y. Sept. 24, 2019)...................................................................... 20

*Abu Dhabi Com. Bank PJSC v. Saad Trading, Contracting & Fin. Servs. Co.*,
   117 A.D.3d 609 (1st Dep't 2014) ................................................................................ 31, 37

*Actava TV, Inc. v. Joint Stock Co. "Channel One Russia Worldwide"*,
   2018 WL 11282742 (S.D.N.Y. Sept. 4, 2018)..................................................................... 43, 44

*AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*,
   160 A.D.3d 93 (1st Dep't 2018) .................................................................................... 33, 34

*Altmann v. Republic of Austria*,
   317 F.3d 954 (9th Cir. 2002) .................................................................................. 16, 19, 39

*Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*,
   795 F.3d 351 (2d Cir. 2015)............................................................................................ 29

*Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*,
   663 F. Supp. 3d 11 (D.D.C. 2023) ................................................................................... 13

*Ammann v. Sharestates, Inc.*,
   2024 WL 1956237 (E.D.N.Y. Mar. 21, 2024)..................................................................... 59

*AMTO, LLC v. Bedford Asset Mgmt., LLC*,
   2015 WL 3457452 (S.D.N.Y. June 1, 2015) ....................................................................... 42

*Arch Trading Corp. v. Republic of Ecuador*,
   2015 WL 3443906 (S.D.N.Y. May 28, 2015) ...................................................................... 16

*Arista Recs. LLC v. Media Servs. LLC*,
   2008 WL 563470 (S.D.N.Y. Feb. 25, 2008)....................................................................... 44

*Banco De Serguros Del Estado v. J.P. Morgan Chase & Co.*,
   500 F. Supp. 2d 251 (S.D.N.Y. 2007).............................................................................. 53

*Banco Metropolitano, S.A. v. Desarrollo de Autopistas y Carreteras de Guatemala, Sociedad
   Anonima, Through Junta Interventora of Dag*, 616 F. Supp. 301 (S.D.N.Y. 1985) ................ 45

*Banco Nacional de Cuba v. Chem. Bank New York Tr. Co.*,
   822 F.2d 230 (2d Cir. 1987)........................................................................................... 11

*Bank v. Spark Energy Holdings, LLC*,
    2014 WL 2805114 (E.D.N.Y. June 20, 2014) .......................................................................... 25

*Batbrothers LLC v. Paushok*,
    109 N.Y.S.3d 837 (Sup. Ct. N.Y. Cty. 2018) .................................................................... 53, 59

*Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*,
    999 F.3d 808 (2d Cir. 2021)..................................................................................... 13, 16, 18, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................................. 46

*Bennett v. Islamic Republic of Iran*,
    799 F.3d 1281 (9th Cir. 2015) ................................................................................................. 28

*Bidonthecity.com LLC v. Halverston Holdings Ltd.*,
    2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014) ......................................................................... 44

*Bilalov* v. *Gref. et al.*,
    2022 WL 4225968 (S.D.N.Y. Sept. 13, 2022).................................................................. *passim*

*Bishop v. Cnty. of Suffolk*,
    2019 WL 13422759 (E.D.N.Y. Aug. 31, 2019)......................................................................... 56

*Blanco v. Banco Indus. de Venezuela, S.A.*,
    997 F.2d 974 (2d Cir. 1993)...................................................................................................... 48

*Bodner v. Banque Paribas*,
    114 F. Supp.2d 117 (E.D.N.Y.2000) ........................................................................................ 28

*Bravo v. Shamailov*,
    221 F. Supp. 3d 413 (S.D.N.Y. 2016)....................................................................................... 24

*Breuninger v. Williams*,
    2023 WL 4211030 (S.D.N.Y. June 27, 2023) .......................................................................... 58

*Cargill Fin. Servs. Int'l, Inc. v. Barshchovskiy*,
    2024 WL 4240998 (S.D.N.Y. Sept. 19, 2024)......................................................................... 31

*Cassirer v. Kingdom of Spain*,
    461 F. Supp. 2d 1157 (C.D. Cal. 2006) ................................................................................... 39

*Cassirer v. Kingdom of Spain*,
    616 F.3d 1019 (9th Cir. 2010) ................................................................................................. 16

*Castleton Commodities Merchant Trading L.P. v. Casado*,
    2020 WL 790505 (Sup. Ct. N.Y. Cty. Feb. 18, 2020) ............................................................. 51

*Cayuga Nation v. Tanner*,
  824 F.3d 321 (2d Cir. 2016) ................................................................................. 10

*Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*,
  56 F.3d 359 (2d Cir. 1995)................................................................................... 24

*Chase Manhattan Bank, N.A. v. Celotex Corp.*,
  56 F.3d 343 (2d Cir. 1995)............................................................................. 24, 25

*Chettri v. Nepal Bangladesh Bank, Ltd.*,
  2014 WL 4354668 (S.D.N.Y. Sept. 2, 2014).......................................................... 45

*CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*,
  100 N.Y.2d 215 (2003) ........................................................................... 32, 48, 50

*CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*,
  296 A.D.2d 81 (1st Dep't 2002) .......................................................................... 51

*CME Media Enterprises B.V. v. Zelezny*,
  2001 WL 1035138 (S.D.N.Y. Sept. 10, 2001)............................................... 34, 36, 37

*Commissions Imp. Exp. S.A. v. Republic of the Congo*,
  2012 WL 1468486 (S.D.N.Y. Apr. 27, 2012)......................................................... 39

*Crescendo Mar. Co. v. Bank of Commc'ns Co.*,
  2016 WL 750351 (S.D.N.Y. Feb. 22, 2016)........................................................... 38

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  333 F. Supp. 3d 380 (D. Del. 2018)................................................................. 18, 22

*Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*,
  79 F. Supp. 2d 374(S.D.N.Y. 2000)..................................................................... 27

*De Csepel v. Republic of Hungary*,
  27 F.4th 736 (D.C. Cir. 2022).............................................................................. 29

*De Csepel v. Republic of Hungary*,
  859 F.3d 1094 (D.C. Cir. 2017)............................................................................ 16

*Drexel Burnham Lambert Group Inc. v. Galadari*,
  610 F. Supp. 114 (S.D.N.Y. 1985) ....................................................................... 48

*Eisemann v. Greene*,
  204 F.3d 393 (2d Cir. 2000)................................................................................ 59

*EM Ltd. v. Banco Cent. De La Republica Argentina*,
  800 F.3d 78 (2d Cir. 2015).................................................................................. 17

*Equipav S.A. Pavimentacao, Engenharia e Comercio Ltda. v. Bertin*,
  2024 WL 196670 (S.D.N.Y. Jan. 18, 2024) .......................................................... 33, 34

*Erchonia Corp. v. Bissoon*,
  421 F. App'x 122 (2d Cir. 2011) .......................................................................... 56

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
  40 F.4th 56 (2d Cir. 2022) .................................................................................... 37, 38

*Fed. Republic of Germany v. Philipp*,
  592 U.S. 169 (2021) .............................................................................................. 19

*Ferris v. Cuevas*,
  118 F.3d 122 (2d Cir. 1997) .................................................................................. 25

*First City, Texas Houston, N.A. v. Rafidain Bank*,
  281 F.3d 48 (2d Cir. 2002) .................................................................................... 30, 44

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983) .............................................................................................. 15, 17

*Fishoff v. Coty Inc.*,
  634 F.3d 647 (2d Cir. 2011) .................................................................................. 55

*Four Keys Leasing & Maint. Corp. v. Simithis*,
  849 F.2d 770 (2d Cir. 1988) .................................................................................. 54

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
  479 F. Supp. 2d 376 (S.D.N.Y. 2007) .................................................................. 35, 36

*Gabay v. Mostazafan Found. of Iran*,
  151 F.R.D. 250 (S.D.N.Y. 1993) .......................................................................... 16, 19

*Gater Assets Ltd. v. AO Moldovagaz*,
  2 F.4th 42 (2d Cir. 2021) ...................................................................................... 38

*Geveke & Co. Int'l v. Kompania Di Awa I Elektrisidat Di Korsou N.V.*,
  482 F. Supp. 660 (S.D.N.Y. 1979) ........................................................................ 36

*Goldfarb v. Cannel One Russia*,
  2018 WL 11225240 (S.D.N.Y. Oct. 19, 2018) .................................................... 43

*Greater Chautauqua Fed. Credit Union v. Marks*,
  600 F. Supp. 3d 405, 424 (S.D.N.Y. 2022) .......................................................... 28

*Greenleaf v. Safeway Trails*,
  140 F.2d 889 (2d Cir. 1944) .................................................................................. 28

*Grp. One Ltd. v. GTE GmbH*,
  523 F. Supp. 3d 323 (E.D.N.Y. 2021) ......................................................................... 41

*GSS Grp. Ltd. v. Nat. Port Auth.*,
  680 F.3d 805 (D.C. Cir. 2012) .................................................................................... 38

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005) ................................................................................. 38, 40

*Hansen v. Danish Tourist Bd.*,
  147 F. Supp. 2d 142 (E.D.N.Y. 2001) ....................................................................... 26

*Hanson v. Denckla*,
  357 U.S. 235 (1958) .................................................................................................... 33

*Harvardsky Prumyslovy Holding, A.S.-V Likvidaci v. Kozeny*,
  166 A.D.3d 494 (2018) .......................................................................................... 34, 48

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*,
  743 F. App'x 442 (D.C. Cir. 2018) ...................................................................... 11, 16

*Helmerich & Payne Int'l Drilling Co. v. Petroleos de Venezuela, S.A.*,
  2024 WL 4253142 (D.D.C. Sept. 20, 2024) .............................................................. 21

*Highland Cap. Mgmt. LP. v. Schneider*,
  198 F. App'x 41 (2d Cir. 2006) ................................................................................. 28

*In re Pfizer Inc. Sec. Litig.*,
  288 F.R.D. 297 (S.D.N.Y. 2013) ................................................................................ 57

*In re Qiwi PLC Sec. Litig.*,
  2023 WL 5279301 (E.D.N.Y. Aug. 15, 2023) ........................................................... 43

*In re Refco Inc. Sec. Litig.*,
  2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) .......................................................... 25

*Indoafric Exports Priv. Co. v. Citibank, N.A.*,
  2016 WL 6820726 (S.D.N.Y. Nov. 7, 2016) .............................................................. 54

*Int'l Hous. Ltd. v. Rafidain Bank Iraq*,
  893 F.2d 8 (2d Cir. 1989) ........................................................................................... 13

*John Galliano, S.A. v. Stallion, Inc.*,
  15 N.Y.3d 75 (2010) ................................................................................ 46, 50, 53, 59

*Jota v. Texaco, Inc.*,
  157 F.3d 153 (2d Cir. 1998) ....................................................................................... 28

*Kadmon Corp., LLC v. Ltd. Liab. Co. Oncon*,
    2023 WL 2346340 (S.D.N.Y. Mar. 3, 2023) ............................................................ 42

*Kaplan v. Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021) .................................................................................. 46

*Kensington Int'l Ltd. v. Republic of Congo*,
    2007 WL 1032269 (S.D.N.Y. Mar. 30, 2007) ........................................................ 18

*Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*,
    2024 WL 3013759 (S.D.N.Y. June 13, 2024) ......................................................... 44

*Khan v. Khan*,
    360 F. App'x 202 (2d Cir. 2010) ............................................................................ 40

*Kiobel v. Millson*,
    592 F.3d 78 (2d Cir. 2010) .................................................................................... 57

*Koehler v. Bank of Bermuda Ltd.*,
    12 N.Y.3d 533 (2009) ............................................................................................ 34

*Kotsopoulos v. Asturia Shipping Co.*,
    467 F.2d 91 (2d Cir. 1972) .................................................................................... 13

*La Dolce Vita Fine Dining Co. v. Zhang*,
    2023 WL 1927827 (S.D.N.Y. Feb. 10, 2023) ......................................................... 38

*Laba v. JBO Worldwide Supply Pty Ltd.*,
    2021 WL 2739228 (S.D.N.Y. July 1, 2021) ........................................................... 58

*Landauer Ltd. v. Joe Monani Fish Co.*,
    22 N.Y.3d 1129 (2014) .......................................................................................... 50

*Lee v. Grand Sichuan E. (N.Y.) Inc.*,
    2014 WL 199512 (S.D.N.Y. Jan. 17, 2014) ........................................................... 56

*Lenchyshyn v. Pelko Elec., Inc.*,
    281 A.D.2d 42 (4th Dep't 2001) ............................................................................ 31

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013) .................................................................................. 30

*Liu v. Guan*,
    225 A.D.3d 749 (2d Dep't 2024) ........................................................................... 47

*Luv N' Care, Ltd. v. Shiboleth LLP*,
    2017 WL 3671039 (S.D.N.Y. Aug. 8, 2017) ........................................................... 58

viii

*MacDermid, Inc. v. Deiter*,
  702 F.3d 725 (2d Cir. 2012) ................................................................................. 30

*Makhnevich v. MTGLQ Invs., L.P.*,
  2021 WL 3406484 (S.D.N.Y. Aug. 4, 2021) ........................................................ 23

*Malherbe v. Oscar Gruss & Son, Inc.*,
  2023 WL 199425 (S.D.N.Y. Jan. 17, 2023) ......................................................... 47

*Marvel Characters, Inc. v. Simon*,
  310 F.3d 280 (2d Cir. 2002) ................................................................................. 23

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006) ................................................................................. 29

*Mattel, Inc. v. Animefun Store*,
  2020 WL 2097624 (S.D.N.Y. May 1, 2020) ........................................................ 41

*McCarty v. The Bank of New York Mellon*,
  2015 WL 5821405 (S.D.N.Y. Sept. 8, 2015) ....................................................... 60

*McKesson Corp. v. Islamic Republic of Iran*,
  52 F.3d 346 (D.C. Cir. 1995) ............................................................................... 18

*Milan Industries Ltd. v. Wilson Worldwide Proprietary Ltd.*,
  2011 WL 11071743 (N.Y. Sup. Ct. June 1, 2011) ............................................... 32

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
  863 F.3d 96 (2d Cir. 2017) ................................................................................... 35

*N.L.R.B. v. Thalbo Corp.*,
  171 F.3d 102 (2d Cir. 1999) ................................................................................. 23

*Nemariam v. Fed. Democratic Republic of Ethiopia*,
  491 F.3d 470 (D.C. Cir. 2007) ............................................................................. 12

*OGI Grp. Corp. v. Oil Projects Co. of Ministry of Oil*,
  2020 WL 6342886 (D.D.C. Oct. 29, 2020) .......................................................... 39

*Oliveri v. Thompson*,
  803 F.2d 1265 (2d Cir. 1986) ............................................................................... 55

*Omega SA v. 375 Canal, LLC*,
  324 F.R.D. 47 (S.D.N.Y. 2018) ........................................................................... 54

*Orient Overseas Container Line v. Kids Int'l Corp.*,
  1998 WL 531840 (S.D.N.Y. Aug. 24, 1998) ....................................................... 35

*Patel v. Clane Gessel Studio*,
  2024 WL 1939307 (S.D.N.Y. Apr. 18, 2024)........................................................................ 40

*Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*,
  895 F.3d 194 (2d Cir. 2018)............................................................................................... 11

*Peterson v. Islamic Republic of Iran*,
  2023 WL 2601265 (S.D.N.Y. Mar. 22, 2023) ..................................................................... 30

*Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*,
  760 F.2d 390 (2d Cir. 1985)............................................................................................... 39

*Randolph v. Budget Rent-A-Car*,
  97 F.3d 319 (9th Cir. 1996) ............................................................................................... 27

*Rankel v. Kabateck*,
  2013 WL 7161687 (S.D.N.Y. Dec. 9, 2013) ...................................................................... 38

*Refineria Di Korsou N.V. v. Petroleos de Venezuela S.A.*,
  2023 WL 8039362 (S.D.N.Y. Nov. 20, 2023)..................................................................... 45

*Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*,
  235 F.3d 738 (2d Cir. 2000)............................................................................................... 30

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992)........................................................................................................... 20

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008)........................................................................................................... 29

*Robinson v. Gov't of Malaysia*,
  269 F.3d 133 (2d Cir. 2001)............................................................................................... 10

*Rodick v.* City *of Schenectady*,
  1 F.3d 1341 (2d Cir. 1993)................................................................................................. 54

*RSM Prod. Corp. v. Fridman*,
  2007 WL 1515068 (S.D.N.Y. May 24, 2007) .................................................................... 44

*Ryzhov v. Malofeyev*,
  2023 WL 8039482 (S.D.N.Y. Nov. 20, 2023)..................................................................... 43

*S.C. Chimexim S.A. v. Velco Enterprises Ltd.*,
  36 F. Supp. 2d 206 (S.D.N.Y. 1999).................................................................................. 50

*Sabeniano v. Citibank, N.A. New York*,
  2013 WL 1164891 (S.D.N.Y. Mar. 20, 2013) .................................................................... 47

*Sakhrani v. Takhi,*
    1997 WL 33477654 (S.D.N.Y. Sept. 10, 1997)..........................................................................45

*Samantar v. Yousuf,*
    560 U.S. 305 (2010)..................................................................................................................26

*Sanderson v. Leg Apparel LLC,*
    2024 WL 498094 (S.D.N.Y. Feb. 8, 2024)...............................................................................58

*Schubarth v. Federal Republic of Germany,*
    891 F.3d 392 (D.C. Cir. 2018)..................................................................................................20

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v.*
    *Navimpex Centrala Navala,* 989 F.2d 572 (2d Cir. 1993).............................................26, 30, 35

*Servaas Inc. v. Republic of Iraq,*
    653 F. App'x 22 (2d Cir. 2011) .........................................................................................12, 30, 35

*Seungick Chung v. Grace Rd. Church,*
    2014 WL 6911346 (D. Conn. Dec. 8, 2014).............................................................................40

*Shaffer v. Heitner,*
    433 U.S. 186 (1977)............................................................................................31, 32, 33, 37

*Shakhova v. Pugachov,*
    CACE20013987 (Fla. Cir. Court, 17th Judicial District, June 9, 2023) ...................................49

*ShelterZoom Corp. v. Goroshevsky,*
    2020 WL 4252722 (S.D.N.Y. July 23, 2020) .....................................................................41, 43

*Shipcraft v. Arms Corp. of the Philippines, Inc.,*
    2013 WL 649415 (N.Y. Sup. Ct. Feb. 19, 2013)...............................................................31, 53

*Shukla v. Meta Platforms Inc.,*
    2024 WL 4108563 (S.D.N.Y. July 17, 2024) ...........................................................................25

*Smith Rocke Ltd. v. Republica Bolivariana de Venezuela,*
    2014 WL 288705 (S.D.N.Y. Jan. 27, 2014) .........................................................11, 12, 16, 20

*Sonic Finance Inc. v. Prima Bulkship Pte. Ltd.,*
    2017 WL 4284556 (N.Y. Sup. Ct. Sep. 27, 2017)....................................................................32

*Stengel v. Black,*
    486 F. App'x 181 (2d Cir. 2012..............................................................................................25

*Storey v. Cello Holdings, L.L.C.,*
    347 F.3d 370 (2d Cir. 2003)..........................................................................................54, 55, 57

*Strom v. Goldman, Sachs & Co.*,
   202 F.3d 138 (2d Cir. 1999)............................................................................................. 23

*Sulzer Mixpac AG v. Medenstar Indus. Co.*,
   312 F.R.D. 329 (S.D.N.Y. 2015) ..................................................................................... 41

*Sung Hwan Co. v. Rite Aid Corp.*,
   7 N.Y.3d 78 (2006) ......................................................................................................... 51

*Sussman v. Bank of Israel*,
   56 F.3d 450 (2d Cir. 1995)............................................................................................... 60

*Taylor v. Sturgell*,
   553 U.S. 880 (2008)......................................................................................................... 24

*Teck Metals, Ltd. v. Certain Underwriters at Lloyd's London*,
   2010 WL 1286364 (E.D. Wash. Mar. 29, 2010)............................................................. 27

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)......................................................................................................... 46

*Tianzhu Coal Co. Ltd. Under Yaojie Coal & Elec. Grp. v. Ju*,
   215 N.Y.S.3d 920 (Sup. Ct. Nassau Cty. 2024)............................................................. 47

*Tounkara v. Republic of Senegal,*
   2022 WL 17826422 (S.D.N.Y. Dec. 20, 2022) .............................................................. 25

*Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*,
   204 F.3d 384 (2d Cir. 2000)............................................................................................. 13

*Trejos Hermanos Sucesores S.A. v. Verizon Commc'ns Inc.*,
   2024 WL 149551 (S.D.N.Y. Jan. 12, 2024) ................................................... 46, 47, 53

*Tuebor Reit Sub LLC v. Paul*,
   2020 WL 4897137 (S.D.N.Y. Aug. 19, 2020)................................................................. 40

*Two Shields v. Wilkinson*,
   790 F.3d 791 (8th Cir. 2015) .......................................................................................... 29

*U.S. E.P.A. ex rel. McKeown v. Port Authority of N.Y. & N.J.,*
   162 F. Supp. 2d 173 (S.D.N.Y. 2001).............................................................................. 38

*United States v. Cordones*,
   2022 WL 815229 (S.D.N.Y. Mar. 17, 2022) .................................................................. 26

*Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*,
   312 F.3d 82 (2d Cir. 2002)............................................................................................... 27

*Universal Trading & Inv. Co. v. Kiritchenko*,
 2007 WL 2669841 (N.D. Cal. Sept. 7, 2007) .............................................................. 49

*Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne De Navigation
 (C.N.A.N.)*, 730 F.2d 195 (5th Cir. 1984) ................................................................. 15

*Vinogradov v. Sokolova*,
 77 Misc. 3d 284 (Sup. Ct. N.Y. Cty. 2022) ......................................................... 51, 53

*Water Splash, Inc. v. Menon*,
 581 U.S. 271 (2017) .................................................................................................... 43

*West v. Multibanco Comermex, S.A.*,
 807 F.2d 820 (9th Cir. 1987) ..................................................................................... 12

*Williams v. Fed. Gov't of Nigeria*,
 2024 WL 3759649 (S.D.N.Y. Aug. 12, 2024) ................................................... *passim*

*Xceed Mortg. Corp v. Ramchandani*,
 2010 WL 1323507 (N.Y. Sup. Ct. Mar. 29, 2010) ..................................................... 32

*Zagami v. Cellceutix Corp.*,
 2017 WL 1180923 (S.D.N.Y. Mar. 29, 2017) ............................................................ 56

*Zaltz v. JDATE*,
 952 F. Supp. 2d 439 (E.D.N.Y. 2013) ........................................................................ 40

*Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*,
 215 F.3d 247 (2d Cir. 2000) ............................................................................. *passim*

## Statutes

28 U.S.C. § 1330(b) ......................................................................................................... 30

28 U.S.C. § 1367 .............................................................................................................. 26

28 U.S.C. § 1391(b) .................................................................................................... 39, 40

28 U.S.C. § 1391(f) ..................................................................................................... 38, 39

28 U.S.C. § 1603(a) ..................................................................................................... 14, 15

28 U.S.C § 1605(a)(2) .................................................................................................. 12, 13

28 U.S.C. § 1605(a)(3) ......................................................................................... *passim*

28 U.S.C. § 1608(b) .......................................................................................... 41, 44, 45

**Rules**

Fed. R. Civ. P. 4(n)(1)..................................................................................................... 35

Fed. R. Civ. P. 11(b)(1)............................................................................................... 3, 59

Fed. R. Civ. P. 11(b)(2)......................................................................................... 3, 55, 56

Fed. R. Civ. P. 11(b)(3)............................................................................................. 3, 57

Fed. R. Civ. P. 12(b)(1)................................................................................................. 10

Fed. R. Civ. P. 12(b)(2)................................................................................................. 30

Fed. R. Civ. P. 12(b)(3)................................................................................................. 38

Fed. R. Civ. P. 12(b)(5)........................................................................................... 40, 45

Fed. R. Civ. P. 12(b)(6)................................................................................................. 46

Fed. R. Civ. P. 19(a)(1)(A) ........................................................................................... 27

Fed. R. Civ. P. 19(a)(1)(B) ...................................................................................... 28, 29

CPLR 5302(a)(2) .......................................................................................................... 46

CPLR 5304(a)(1) .......................................................................................................... 48

CPLR 5304(a)(2) ..................................................................................................... 50, 55

CPLR 5304(a)(3) .......................................................................................................... 54

CPLR 5304(b).............................................................................................................. 53

CPLR 5304(c) .............................................................................................................. 46

CPLR 5305(a)(3) .......................................................................................................... 59

CPLR 5305(a)(4) .......................................................................................................... 51

CPLR 5305(b)............................................................................................................... 51

CPLR 5307.................................................................................................................... 36

**Other Authorities**

House of Representatives Report No. 94-1487........................................................ 12, 20

Restatement (Third) of Foreign Relations Law § 481 .................................................. 33

Plaintiffs Musaib Ismailovych Ismailov ("Ismailov") and Akhmed Hadzhyiovych Bilalov ("Bilalov"; and with Ismailov, "Plaintiffs") submit this memorandum of law in opposition to: (i) the motion to dismiss of defendants Public Joint Stock Company "Sberbank of Russia" ("Sberbank") and Stanislav Kostiantynovych Kuznetsov ("Kuznetsov"; and with Sberbank, "Sberbank Defendants") (ECF 52, "Sberbank Motion to Dismiss"); (ii) the motion to dismiss of defendant Mykhailo Hutseriev ("Hutseriev"; and collectively with the Sberbank Defendants, "Defendants") (ECF 79, "Hutseriev Motion to Dismiss"); and (iii) the motion for sanctions of the Sberbank Defendants (ECF 69; "Motion for Sanctions"; and as to all the motions, the "Motions").[1]

## PRELIMINARY STATEMENT

This is a judgment enforcement action under New York's Uniform Act. In 2023, Plaintiffs initiated an action in Ukraine as a result of Defendants' 2013 illegal taking of Plaintiffs' interest in Krasnaya Polyana, a real estate development entity that owned the ski resort positioned to be the site of the 2014 Winter Olympic Games in Sochi, Russia. The Ukrainian Court adjudicated the matter and issued a judgment for Plaintiffs, holding Defendants jointly and severally liable for $200 million. Plaintiffs seek recognition of that judgment in this District.

This is also an FSIA case. Although Sberbank, the entity that took Ismailov's interest in Krasnaya Polyana, is a Russian instrumentality, sovereign immunity does not attach. Sberbank, in concert with Defendants Kuznetsov and Hutseriev, took Krasnaya Polyana from Ismailov, a

---

[1] Capitalized terms not defined herein have the same meaning ascribed in the First Amended Complaint ("FAC"). References to "¶," "Sb. Br." "Hut. Br.," and "Sanctions Br." are to paragraphs of the FAC and pages of the Sberbank Motion to Dismiss, the Hutseriev Motion to Dismiss, and the Sanctions Motion, respectively. References to "Nachmani Decl.," "Ismailov Decl.," "Bilalov Decl.," "Vytiaganets Decl.," and "Szakonyi Decl." are to the Declarations of Jake Nachmani, Ismailov, Bilalov, Oleksandra Vytiaganets, and David Szakonyi, respectively, filed herewith. All emphasis is added; internal quotations and citations are omitted. Reference to an exhibit's page number is to the page number of the ECF-filed version of the exhibit, inclusive of its cover page.

Ukrainian citizen. Sberbank never paid Ismailov. Sberbank maintained ownership of Krasnaya Polyana and at all relevant times engaged in commercial activity in the U.S. Accordingly, this case should proceed under the FSIA's Expropriation Exception.

Defendants seek dismissal of the FAC on numerous grounds, all of which fail. The Sberbank Defendants maintain that subject matter jurisdiction does not exist because the Expropriation Exception does not apply to Ismailov's interest in Krasnaya Polyana, as such property is intangible. The S.D.N.Y. and Courts of Appeals across the country hold otherwise. The Sberbank Defendants maintain that Ismailov has no rights in property at issue because the Ukrainian Judgment already decided those rights. But the Second Circuit and the S.D.N.Y. mandate that, when determining rights at issue in the context of a judgment enforcement action, a court must look to the facts in the underlying case that gave rise to the judgment. The Sberbank Defendants assert that, as a matter of law, an instrumentality cannot expropriate property and that, in the prior *Bilalov* matter, Your Honor concluded as such as to Sberbank. However, controlling law mandates the opposite, and Your Honor reached no such conclusion. As to the prior *Bilalov* action, numerous material differences exist between that case and this such that res judicata does not apply. As to commercial activity, Sberbank ignores its own U.S.-based commerce and irrelevantly focuses on a non-party. The Court's subject matter jurisdiction over Ismailov's claim against Sberbank warrants the Court's supplemental jurisdiction over all of Plaintiffs' claims.

The Court also has personal jurisdiction over Defendants. Defendants maintain that the Court cannot exercise personal jurisdiction because no New York jurisdictional basis exists. But Defendants ignore that under the FSIA the Court has personal jurisdiction over them because the Expropriation Exception applies and Plaintiffs properly effectuated service of process. Moreover, under the Uniform Act, because the Ukrainian Court had personal jurisdiction over Defendants

this Court does not need to establish jurisdiction over them. That Defendants have property in this District provides an additional basis for the Court to exercise jurisdiction.

As to service, Plaintiffs properly served Defendants in accordance with the Court's June 2024 Order. Defendants challenge Plaintiffs' service, maintaining that Russia purportedly prohibits service by email. However, Your Honor already rejected this argument; and overwhelmingly so too does the S.D.N.Y. Plaintiffs' effectuation of service was also appropriate because Defendants received actual notice of this suit, serving Defendants in Russia pursuant to the Hague Convention would be futile, Plaintiffs' serving Defendants' U.S. counsel comported with service rules in New York and D.C., and service sufficiently complied with the FSIA.

The Ukrainian Judgment should be enforced under the Uniform Act. The Judgment is final, conclusive, and enforceable. To defeat a motion to dismiss, that is all CPLR 5302 requires. While Defendants raise numerous challenges under CPLR 5304, the Uniform Act explicitly holds that such challenges are irrelevant on a motion to dismiss and should be rejected. Whereas Defendants maintain that the Ukrainian Judgment should not be enforced because Ukraine is currently under martial law, Ukraine's judicial system remains fair and impartial and provides due process to its litigants. Under Ukrainian law, the Ukrainian Court had subject matter jurisdiction over Plaintiffs' case and properly exercised personal jurisdiction over Defendants.

The Sanctions Motion should be denied. The Sberbank Defendants' 11(b)(2) challenges rehash their same failing arguments from their Motion to Dismiss, including mischaracterizing Your Honor's holding in *Bilalov* and misstating controlling authority that warrants denial of their Motions. Moreover, all of Plaintiffs' arguments are supported by law. The Sberbank Defendants' 11(b)(3) challenges should be rejected as premature and are factually baseless. Their 11(b)(1) challenges fail as a matter of law and are unfounded. Defendants' Motions should be denied.

3

**FACTUAL AND PROCEDURAL BACKGROUND**

A. **Plaintiffs Are Rightful Owners Of Krasnaya Polyana**

Ismailov is a Ukrainian citizen. ¶6; Ismailov Decl. ¶6. Bilalov is a Russian citizen who is in the process of becoming a U.S. citizen. ¶¶7-8; Bilalov Decl. ¶¶5-6. Through their ownership of Zeeland Development Corp. ("Zeeland"), Plaintiffs each had a stake in OJSC Krasnaya Polyana ("Krasnaya Polyana"), an investment company that owned ski resorts in Russia, including the resort that, in 2007, Russia determined would be the site of its 2014 Olympic Games ("Ski Resort"). ¶¶2, 61-65; Ismailov Decl. ¶¶22, 24-28; Ismailov Exs. 3-4; Bilalov Decl. ¶¶19, 30-36; Bilalov Exs. 2-3. Through Zeeland, Plaintiffs owned 817 shares of Krasnaya Polyana. ¶¶87-89; FAC Ex. A; Ismailov Decl. ¶¶25, 30; Ismailov Ex. 4; Bilalov Decl. ¶¶31, 38.

B. **Defendants Take Krasnaya Polyana From Plaintiffs**

Beginning in 2008 and because of Krasnaya Polyana's increased value as the site of the 2014 Winter Olympics, Russia, through its banking instrumentality Sberbank, invested in Krasnaya Polyana. ¶¶66-74; Bilalov Decl. ¶¶19-24; Bilalov Ex. 1; Ismailov Decl. ¶22. Russia directed Sberbank's Vice Chairman, Defendant Kuznetsov, to become an investor, with Kuznetsov becoming Krasnaya Polyana's Chairman of the Board. ¶¶67, 70; Bilalov Decl. ¶¶25, 28; Bilalov Ex. 2. Russia instructed Sberbank to issue a $1.6 billion credit line to Krasnaya Polyana to build the Ski Resort. ¶68; Bilalov Decl. ¶¶21, 62-64. By the end of 2008, Sberbank owned more than 25 percent of Krasnaya Polyana. ¶71. By the end of 2012, Sberbank owned more than 50 percent. Bilalov Ex. 7; Ismailov Decl. ¶47; Nachmani Decl. ¶¶35-38; Nachmani Exs. 29-32.

But that was not enough for Russia, and, around 2012, Sberbank, sought to take Plaintiffs' interest in Krasnaya Polyana. Bilalov Decl. ¶¶63-64. Sberbank used coercion and threats to do so. ¶¶82-83; Bilalov Decl. ¶¶37, 40-41, 62-64; Ismailov Decl. at ¶31. In 2013 and as a pretext for

4

wresting control of Krasnaya Polyana from Plaintiffs, Sberbank, at Russia's direction, generated a fraudulent report that falsely indicated that the Ski Resort, then being built by Bilalov's brother, incurred unnecessary costs and delays; Sberbank presented this report to Putin himself. ¶84. Sberbank then sought to seize two-thirds of Krasnaya Polyana, as reflected by February 2013 meeting minutes signed by Sberbank's CEO, Herman Gref ("Gref"), and Russia's Vice Prime Minister, Dmitry Kozak. ¶82. When Bilalov refused to transfer his Krasnaya Polyana ownership, Gref threatened Bilalov with bodily harm or death. Bilalov Decl. ¶¶37, 40. Sberbank made good on its threats; Bilalov was nearly fatally poisoned. ¶83; Bilalov Decl. ¶¶40-41; Bilalov Ex. 4.

In 2013, Sberbank took Krasnaya Polyana from Plaintiffs. ¶¶86-91; Bilalov Decl. ¶¶51-55; Bilalov Exs. 5-8; Ismailov Decl. ¶¶43-47. In March 2013, Ismailov met with Hutseriev in Moscow; Hutseriev presented Ismailov with the Sales Agreement. Ismailov Decl. ¶¶30-31; Bilalov Decl. ¶¶37-38. Under the Sales Agreement, Plaintiffs, through Zeeland, were to sell their 817 shares in Krasnaya Polyana to BIN Group on behalf of Sberbank in exchange for $200 million. ¶90; FAC Ex. A at 3; Ismailov Decl. ¶37; Bilalov Decl. ¶45. Upon BIN Group's purchase of Zeeland's 817 shares, Sberbank would extend a $15 billion credit line to BIN Group. FAC Ex. A; Ismailov Decl. ¶¶39-40; Bilalov Decl. ¶¶47-48. Ismailov signed the Sales Agreement for Zeeland and received an executed version of it, with Kuznetsov and Hutseriev's signatures and Sberbank's corporate seal. FAC Ex. A; Ismailov Decl. ¶¶33-36; Bilalov Decl. ¶¶42-44.

Defendants never paid for these shares. ¶¶2, 91; Ismailov Decl. ¶44; Bilalov Decl. ¶52. And yet Sberbank owned and took possession of Plaintiffs' ownership stake; whereas by the end of 2012 Sberbank owned just over 50 percent of the Company, by the end of 2013, Sberbank's ownership increased to over 90 percent, padding Sberbank's financial statements with over $600 million in asset value. Bilalov Decl. ¶¶ 53-55; Bilalov Exs. 6-8; Ismailov Decl. ¶¶45-47; Nachmani

Decl. at ¶¶36, 38; Nachmani Ex. 30 at 243; Nachmani Ex. 32 at 54-55. After Russia used Krasnaya Polyana for its 2014 Winter Olympics, Sberbank sold its interest in it at a massive profit. Bilalov Decl. ¶56; Bilalov Ex. 9; Ismailov Decl. ¶48; Nachmani Decl. ¶¶37-38; Nachmani Ex. 31 at 118; Nachmani Ex. 32 at 54-55. Defendants do not deny these facts.

### C. Russia Exerts Extensive Control Over Sberbank

Defendants' taking of Plaintiffs' Krasnaya Polyana ownership stake at Russia's direction is consistent with Russia's extensive control over Sberbank over the last three decades. Szakonyi Ex. 2 at 2-16. Since 1991, the Russian government has been Sberbank's majority owner. *Id.* at 2-3, 9-10. Russia dictates Sberbank's dividend policy, ordering that Sberbank pay it massive dividends while also deciding whether such payments are made to the bank's other shareholders. *Id.* at 4, 9-11; Nachmani Decl. ¶¶29-31; Nachmani Exs. 23-25. Sberbank's management consists of government officials – Putin allies who serve at his discretion and oversee Sberbank's operations. Szakonyi Ex. 2 at 14. Russia dictates that Sberbank's financial policies align with Putin's political interests. *Id.* at 4-8, 10-14; Nachmani Decl. ¶¶23-26; Nachmani Exs. 17-20. Russia dictates the interest rate at which Sberbank issues loans. Szakonyi Decl. Ex. 2 at 5-6; Nachmani Decl. ¶¶23-24; Nachmani Exs. 17-18. Russia orders Sberbank to issue loss-bearing loans and engage in profit-losing financial policies so as to ensure the continuity of Putin's regime and the consolidation of his power. Szakonyi Ex. 2 at 6-7, 15; Nachmani Decl. ¶23; Nachmani Ex. 17. Russia directs Sberbank to open branch offices in regions where Russia seeks to exert political influence. Szakonyi Decl. Ex. 2 at 11-12, 15-16; Nachmani Decl. ¶¶27-28, 32-33; Nachmani Exs. 21-22, 26-27. Sberbank helps Putin's regime "buy votes" to influence elections. Szakonyi Ex. 2 at 7-8. Sberbank covers up state corruption. *Id.* at 13-14. The U.S. sanctioned Sberbank because Russia so extensively controls it. *Id.* at 11. Sberbank is considered Russia's "pocket bank" and its

6

"Ministry of Cash" and has become a "symbol" of the Russian state and "a political instrument of Putin's Russia." *Id.* at 2, 3, 5, 11. The report of David Szakonyi, filed herewith as Exhibit 2 to the Szakonyi Declaration, more fully sets forth Russia's extensive control over Sberbank.

### D. The Ukrainian Court Issues A Judgment For Plaintiffs And Against Defendants

Plaintiffs sought justice for Defendants' illegal taking. Because Paragraph 5 of the Sales Agreement provides that disputes related to the Sales Agreement can be brought in Ukraine and because Ismailov is a Ukrainian citizen, Plaintiffs brought suit against Defendants there. FAC Ex. A; Bilalov Decl. ¶70; Ismailov Decl. ¶50. On March 2, 2023, Plaintiffs filed their statement of claim in tort for lost profits arising from Defendants' taking Plaintiffs' 817 Zeeland-based shares in Krasnaya Polyana in the Skvyra District Court of Kyiv Region ("Ukrainian Court"; and as to the action, the "Ukrainian Action"). ¶¶93-94; Vytiaganets Decl. ¶¶40, 69; Vytiaganets Ex. 23; Bilalov Decl. ¶71; Ismailov Decl. ¶51. On March 2, 2023, the Ukrainian Court approved Plaintiffs' statement of claim, issuing an order to open the action (initiation order with the statement of claim, "Initiating Documents"). ¶93; Vytiaganets Decl. ¶40; Vytiaganets Ex. 23.

Defendants were served with the Initiating Documents in numerous ways. On March 23, 2023, the Ukrainian Court emailed them to Defendants. ¶¶106-107; FAC Ex. E; Vytiaganets Decl. ¶¶63-65. From March through September 2023, the Ukrainian Court provided this information as well as upcoming hearing dates on its website. ¶108; FAC Ex. E; Vytiaganets Decl. ¶65. Plaintiffs went so far as to ensure that Defendants could not credibly deny service; because service by mail from Ukraine to Russia was prohibited under Russian law, on March 9, 2023, Ismailov had the Initiating Document mailed from inside Russia to Defendants in Russia. Ismailov Decl. ¶¶56-57; Ismailov Ex. 12; Bilalov Decl. ¶76; Vytiaganets Decl. ¶63. The Ukrainian Court concluded that these methods of service were sufficient. Vytiaganets Decl. ¶¶66-67; Vytiaganets Ex. 27 at 5.

The Ukrainian Court had subject matter jurisdiction over Plaintiffs' case and personal jurisdiction over Defendants under Articles 75 and 76 of the Law of Ukraine and Articles 19, 175-177 of the Civil Procedural Code of Ukraine. Vytiaganets Decl. ¶¶68-78; Vytiaganets Exs. 23, 32. The Ukrainian Court concluded as such. Vytiaganets Decl. ¶70; Vytiaganets Ex. 23 at 2.

Defendants did not appear in the Ukrainian Action. ¶¶109, 111, 115; Vytiaganets Decl. ¶¶40, 67; Vytiaganets Decl. Exs. 26, 27 at 5. In May 2023, the Ukrainian Court issued a judgment against Defendants, holding them jointly and severally liable for $30 million to Ismailov and $170 million to Bilalov ("Ukrainian Judgment"). ¶113; FAC Ex. D at 30; Vytiaganets Decl. ¶40; Vytiaganets Exs. 26-27. The Ukrainian judicial system is fair and impartial; it provides litigants with notice and an opportunity to be heard in accordance with due process, as set forth in detail in the Declaration of Oleksandra Vytiaganets. Vytiaganets Decl. ¶¶14-39; Vytiaganets Exs. 5-22. Defendants reject the Ukrainian Judgment and have not satisfied their judgment debt under it.

### E.   Plaintiffs Seek To Recognize And Enforce The Ukrainian Judgment

Plaintiffs seek to domesticate and enforce the Ukrainian Judgment in New York. ECF 18. Ismailov's claim against Sberbank, Count I, arises under 28 U.S.C. § 1605(a)(3), as, Ismailov, a Ukrainian citizen, seeks to enforce a judgment arising out of his ownership rights in Krasnaya Polyana that Sberbank, an instrumentality of Russia, took from him and never paid him. ¶¶30-35, 121-137; Ismailov Decl. ¶¶6-9, 61. Sberbank has engaged in massive commerce in the U.S. ¶¶13-29, 42; Nachmani Decl. ¶¶39-54; Nachmani Exs. 34-48. Bilalov and Ismailov's claim against the non-instrumentality individual defendants, Count II, arises under New York's Uniform Foreign Country Money-Judgments Recognition Act. ¶¶138-153. Plaintiffs seek relief in this District because Defendants have property here. ¶¶55-56; Nachmani Decl. at ¶¶39-51; Nachmani Ex. 33.

8

### F. **Plaintiffs Serve Defendants**

In May 2024 and pursuant to Rule 4(f), Plaintiffs sought to serve Defendants and their U.S. counsel by email. ECF 14 ("Motion for Alternative Service"). In June 2024, the Court granted Plaintiffs' Motion for Alternative Service. ECF 17 ("June 2024 Order"). The Court concluded that, because Defendants were all located in Russia, serving Defendants there pursuant to the Hague Convention was impracticable because of Russia's suspension of "all judicial cooperation with the United States in civil and commercial matters." June 2024 Order at 1. Likewise, the Court concluded that Russia's Central Authority rejects Hague Convention service requests. *Id.* at 1-2. The Court concluded that serving Defendants by email would "not violate any international agreement" because "Russia has not explicitly objected to service by electronic means." *Id.* at 2. The Court also concluded that emailing Defendants at their professional and personal email addresses and/or emailing Defendants' U.S. counsel in the S.D.N.Y. and in D.C. would comport with due process because such service was "likely to reach" Defendants. *Id.* Plaintiffs served Defendants by email in accordance with the Court's June 2024 Order. ECF 28-30. Defendants received actual notice of this action. Nachmani Ex. 1. Defendants appeared. ECF 33-36, 58-61.

### G. **This Action Is Not *Bilalov v. Gref et al.*, 1:20-cv-09153 (AT) (S.D.N.Y.)**

During the pendency of the Ukrainian Action, the Court adjudicated the matter of *Bilalov v. Gref et al.*, 1:20-cv-09153 (AT) (S.D.N.Y.) ("*Bilalov*"). In that action, Bilalov brought tort claims against Sberbank and other defendants in connection with their taking a portion of Bilalov's ownership in Krasnaya Polyana. Similarities aside, this action is not a *Bilalov* copycat. The parties are different; Ismailov was not a plaintiff, and Kuznetsov and Hutseriev were not defendants – and Sberbank USA, a defendant in *Bilalov* – is not a defendant here. The property at issue is different; whereas *Bilalov* concerned the 1426 shares of Krasnaya Polyana that Bilalov personally owned to

which Ismailov had no rights, this action concerns 817 shares that Zeeland owned, as evidenced by the Sales Agreement, to which Ismailov and Bilalov both had rights – and these Zeeland-based shares were distinct from and not commingled with Bilalov's personally-owned shares. Bilalov Decl. ¶¶27, 29, 36, 65-68; Bilalov Decl. Ex. 2 at 47-61; Ismailov Decl. ¶¶29, 62-64; Ismailov Decl. Ex. 3 at 57-61. The nature of the cases and claims are different; whereas *Bilalov* was seeking to establish liability on the merits in tort, this is a judgment enforcement action seeking recognition of the Ukrainian Judgment, which was not enforceable and final during *Bilalov*'s pendency.

## ARGUMENT

### I. DEFENDANTS' MOTIONS TO DISMISS SHOULD BE DENIED

#### A. The Court Has Subject Matter Jurisdiction Pursuant To 28 U.S.C. § 1605(a)(3)

On a 12(b)(1) motion, a court must "accept[] as true the allegations in the complaint and draw[] all reasonable inferences in favor of the plaintiff." *Cayuga Nation v. Tanner*, 824 F.3d 321, 327 (2d Cir. 2016). Under the FSIA, a court "must look at the substance of the allegations to determine whether one of the exceptions to the FSIA's general exclusion of jurisdiction over foreign sovereigns applies." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001).

Under 28 U.S.C. § 1605(a)(3) ("Expropriation Exception") a foreign state and its instrumentalities are not immune from the jurisdiction of U.S. courts in any case:

> in which rights in property taken in violation of international law are in issue and … that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

Accordingly, a court has subject matter jurisdiction under the Expropriation Exception where: "(1) rights in property are in issue; (2) … the property was taken; (3) … the taking was in violation of international law; and (4) … one of the two nexus requirements is satisfied." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000). The FAC establishes this.

10

1. *Ismailov Has Rights In Property At Issue*

"[A]ll types of property can be expropriated, whether tangible or intangible. Personal property, airspace rights, contract rights, ***even the shares of a corporation***." *Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d 194, 201 (2d Cir. 2018). A "creditor's right to repayment is property." *Banco Nacional de Cuba v. Chem. Bank New York Tr. Co.*, 822 F.2d 230, 238 (2d Cir. 1987). Under the Expropriation Exception, ***"rights to payment"*** *are* ***"rights to property under the FSIA."*** *Smith Rocke Ltd. v. Republica Bolivariana de Venezuela*, 2014 WL 288705, at *5 (S.D.N.Y. Jan. 27, 2014).

Ismailov has rights in property at issue. Ismailov, through Zeeland, was an owner of Krasnaya Polyana. ¶¶86-90; Ismailov Decl. ¶¶24-28; Ismailov Ex. 4 at 11; Bilalov Decl. ¶¶33-35. Sberbank, through BIN Group, took that property from Ismailov. ¶¶42, 91; Ismailov Decl. ¶¶39, 43-44. Sberbank never paid Ismailov or Zeeland for Krasnaya Polyana, notwithstanding Sberbank's taking control of Krasnaya Polyana. ¶¶91; Ismailov Decl. ¶¶43-47; Ismailov Exs. 6-8; Bilalov Decl. ¶¶53-55; Nachmani Decl. at ¶36; Nachmani Ex. 30 at 243-244. These allegations are sufficient. *See Smith Rocke Ltd.*, 2014 WL 288705, at *5 (right to repayment under note was right in property at issue); *see also Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 743 F. App'x 442, 455 (D.C. Cir. 2018) (court had "little trouble" concluding that taking of corporate ownership was a right in property).

The Sberbank Defendants maintain that their taking of Ismailov's property is not cognizable because the Expropriation Exception purportedly does not apply to "intangible property" such as the Krasnaya Polyana ownership interest. Sb. Br. at 24-26. Nothing in the language of the Expropriation Exception or its legislative history makes any distinction between tangible and intangible property; both refer simply to "property." 28 U.S.C. § 1605(a)(3); H.R.

11

Rep. No. 94–1487, at 19-20. The S.D.N.Y. and Courts of Appeals across the country reject this tangible/intangible distinction. *See Smith Rocke Ltd.*, 2014 WL 288705, at *5 (recognizing that the tangible/intangible distinction is based on a "misinterpretation" of the FSIA); *see also Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 673 (7th Cir. 2012) ("rights in property element … applies to both tangible and intangible property"); *Nemariam v. Fed. Democratic Republic of Ethiopia*, 491 F.3d 470, 478 (D.C. Cir. 2007) ("the tangible/intangible characterization of property interests ... is a distinction without a difference"; Expropriation Exception applied to the plaintiffs' bank accounts); *West v. Multibanco Comermex, S.A.*, 807 F.2d 820, 830 (9th Cir. 1987) (recognizing that rights to intangible property are protected from expropriation).

The Sberbank Defendants also maintain that the Expropriation Exception is inapplicable in a judgment enforcement action because the judgment already resolved the property rights that would otherwise be "at issue." Sb. Br. at 23-24. However, the Second Circuit expressly holds that an enforcement of a foreign judgment is a cognizable claim under the FSIA because, to determine whether an FSIA exception applies, a court should not examine the judgment itself but rather "***the underlying conduct that gave rise to the judgment***." *Servaas Inc. v. Republic of Iraq*, 653 F. App'x 22, 23-24 (2d Cir. 2011). In *Servaas Inc.*, the Second Circuit, in determining whether plaintiffs-creditors could enforce a foreign judgment against a sovereign debtor under § 1605(a)(2) (the commercial activities exception), did *not* analyze whether the judgment itself satisfied the elements of § 1605(a)(2) *but instead* analyzed whether the sovereign's "contracting for the purchase of goods, services and technology"—the "***underlying conduct***" giving rise to the judgment— satisfied its requirements. *Servaas Inc.*, 653 F. App'x at 24. The Second Circuit found this conduct-based analysis necessary because to look strictly at whether the judgment itself satisfied § 1605(a)(2)'s elements would inevitably "***preclude plaintiffs from enforcing any foreign***

12

***judgments against foreign sovereigns in U.S. courts under § 1605(a)(2)***." *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 389 (2d Cir. 2000).

The S.D.N.Y applies this same analysis under the Expropriation Exception. In *Williams v. Fed. Gov't of Nigeria*, 2024 WL 3759649 (S.D.N.Y. Aug. 12, 2024), in determining whether the plaintiff-creditor could enforce a judgment against a foreign sovereign debtor, the S.D.N.Y. did not analyze whether the judgment itself satisfied § 1605(a)(3) but instead examined the "***underlying history of the case***"—that the "***Nigerian government seized [plaintiff's] funds***," focusing its analysis on "***the underlying extortion and commitment (but failure) to repay Plaintiff in full***—that involves the expropriation of funds …." *See id.* at \*10.

Here, the Court should apply this conduct-based analysis and permit Ismailov to enforce the Ukrainian Judgment. *See Int'l Hous. Ltd. v. Rafidain Bank Iraq*, 893 F.2d 8, 11-12 (2d Cir. 1989) (examining the conduct—*i.e.*, the breach of contract—underlying a foreign judgment to determine whether jurisdiction existed in a suit to enforce foreign judgment).[2]

2. *Sberbank's Taking Of Ismailov's Property Is Cognizable Under The FSIA*

The Expropriation Exception applies to "cases concerning property taken by a foreign government." *Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*, 999 F.3d 808, 819 (2d Cir. 2021). The term "foreign government" is synonymous with "foreign state."

---

[2] The Sberbank Defendants' cited authorities are inapposite. *Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91 (2d Cir. 1972) concerned a choice-of-law analysis and has no connection to the FSIA. *See id.* at 95. *Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp. 3d 11 (D.D.C. 2023) concerned whether the FSIA's arbitration exception could support a claim brought to enforce a foreign judgment that itself recognized an underlying arbitral award. *See id.* at 32. *Amaplat* stands for the unremarkable proposition that where an FSIA exception *is* form-based, then form matters, and supports Plaintiffs, as it held that the sovereign defendant's underlying *conduct* warranted the application of the FSIA's waiver exception. *See id.* at 36.

*Id.* Under the FSIA, an instrumentality is defined as being a "foreign state." *See* 28 U.S.C. § 1603(a)(3) (the term "foreign state" includes "an agency or instrumentality of a foreign state").

The FAC alleges that Ismailov was deprived of his property because Sberbank, an instrumentality of Russia, took his Krasnaya Polyana ownership without paying him. ¶¶42, 91. The Sberbank Defendants maintain that under *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi* ("*Zappia*") Sberbank's taking of Ismailov's property is incognizable because the Second Circuit purportedly created a "rule" that "state-owned enterprise[s]" are "categorically incapable of executing a 'taking'" under § 1605(a)(3). Sb. Br. at 3, 28. In the Sberbank Defendants' view, because Sberbank is an instrumentality and "not the Russian Federation," "the expropriation exception cannot apply." Sb. Br. at 28. The Sberbank Defendants misread *Zappia*.

Notwithstanding that the Sberbank Defendants' interpretation would yield absurd results, conferring greater FSIA protections for instrumentalities than for foreign sovereigns, *Zappia* established no such rule. In *Zappia*, the plaintiff construction company alleged that Emirates Commercial Bank ("ECB"), a ***non-instrumentality private bank***, took its assets ***before ECB was merged into a government-owned banking instrumentality***. *See Zappia*, 215 F.3d at 250. Under an agency theory of liability, the plaintiff construction company sought to hold the Emirate of Abu Dhabi (the foreign sovereign) and ADIA (the Emirate's instrumentality) ***liable based on ECB's misconduct that occurred before it became an instrumentality***. *See id.* at 250. The government actors moved to dismiss on the ground that "[t]he actions of ECB, ***a privately owned bank***, … had not been taken as the Government's agent or alter ego." *Zappia* Brief of Defendants-Appellees, 1999 WL 33631094, at *12–13. After extensive jurisdictional discovery, the District Court agreed. *Id.* at *16-17. On appeal, the Emirate and ADIA stated the relevant issue: "whether actions of a ***privately-held*** bank can be characterized as a governmental 'taking,' … where there was no

14

showing that the Government directed [ECB's] day-to-day activities or the specific actions that were the subject of the suit, ***merely because that bank later merged into another bank that was majority-owned by a government institution***." *Id.* at \*3.

The Second Circuit, applying traditional veil-piercing analysis in the FSIA context, correctly held that the actions of a ***non-instrumentality could not confer jurisdiction over the foreign sovereign and its instrumentality***. *See Zappia*, 215 F.3d at 251 (citing *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 626-27 (1983) ("*Bancec*")). Correctly read, *Zappia* stands for the unremarkable proposition that, in the context of the FSIA, the activities of an entity, whether a government actor or private enterprise, may not automatically be imputed to another. Contrary to the Sberbank Defendants' assertion, the Second Circuit did *not* dismiss the claims against the instrumentalities because the instrumentalities were not the sovereign but rather  because the instrumentalities did not exert sufficient control over the private bank such that the bank's actions could be imputed to them. *See Zappia*, 215 F.3d at 252.

*Zappia* itself refutes the Sberbank Defendants' "categorical" rule. Sb. Br. at 28. Having determined that the conduct of the non-instrumentality private bank could not be imputed to the sovereign or its instrumentalities, the Second Circuit addressed whether ADIA's own conduct was sufficient to confer jurisdiction. *See* 215 F.3d at 252. The Court found jurisdiction lacking *not* because ADIA as an instrumentality was incapable of committing a taking but rather because the plaintiff failed to demonstrate that ADIA engaged in misconduct giving rise to the taking. *See id.*

To that effect, the FSIA and its legislative history set forth that instrumentalities can commit takings and accordingly that an FSIA exception can be applied against them. *See* 28 U.S.C. § 1603(a) (incorporating "instrumentality" in the definition of a "foreign state"); *Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne De Navigation (C.N.A.N.)*, 730

F.2d 195, 204 (5th Cir. 1984) ("the legislative history of the FSIA indicates that section 1605(a)(3) was intended to subject to United States jurisdiction any foreign agency or instrumentality that has nationalized or expropriated property without compensation, or that is using expropriated property taken by another branch of the state.") (citing 1976 U.S. Code Cong. & Ad. News 6604, 6618).

So too does this Circuit. *See Beierwaltes*, 999 F.3d at 819, 820 (Expropriation Exception applies to cases concerning the taking by a "foreign state" and "foreign state" includes an "instrumentality"); *Arch Trading Corp. v. Republic of Ecuador*, 2015 WL 3443906, at *3 (S.D.N.Y. May 28, 2015) (citing *Zappia* and finding jurisdiction over an instrumentality for its taking but not against the sovereign); *Smith Rocke Ltd.*, 2014 WL 288705, at *7 (taking committed by instrumentalities satisfied Expropriation Exception); *Gabay v. Mostazafan Found. of Iran*, 151 F.R.D. 250, 253 (S.D.N.Y. 1993) (taking committed by instrumentality was cognizable under § 1605(a)(3); dismissed on grounds not applicable here). Circuit Courts across the country hold accordingly. *See Helmerich*, 743 F. App'x at 455 (that the instrumentality took over the operations of plaintiff's company described the expropriation of "a shareholder's direct rights to a T."); *De Csepel v. Republic of Hungary*, 859 F.3d 1094, 1108 (D.C. Cir. 2017) (recognizing applicability of Expropriation Exception to takings committed by instrumentalities); *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 673 (7th Cir. 2012) (citing *Zappia* and recognizing that property expropriated by banking instrumentality constituted taking under Expropriation Exception); *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1021-22 (9th Cir. 2010) (foundation-instrumentality expropriated property); *Altmann v. Republic of Austria*, 317 F.3d 954, 969 (9th Cir. 2002) (same as to gallery-instrumentality).

The Sberbank Defendants' taking of Ismailov's property is actionable under § 1605(a)(3) even under the Sberbank's Defendants' reading because Sberbank is an alter ego of Russia. An

16

instrumentality is shown to be an alter ego of a sovereign where the sovereign "extensively control[s]" the instrumentality such that "a relationship of principal and agent is created." *Bancec*, 462 U.S. at 629. The relevant factors for establishing extensive control include whether the foreign state: "(1) uses the instrumentality's property as its own; (2) ignores the instrumentality's separate status or ordinary corporate formalities; (3) deprives the instrumentality of the independence from close political control that is generally enjoyed by government agencies; (4) requires the instrumentality to obtain approvals for ordinary business decisions from a political actor; and (5) issues policies or directives that cause the instrumentality to act directly on behalf of the sovereign state." *EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 91 (2d Cir. 2015).

Russia's extensive control over Sberbank supports this showing. As to the first factor, whether Russia uses Sberbank's property as its own, Russia directed Sberbank to take Ismailov's interest in Zeeland and proceeded to use it as its own for the 2014 Winter Olympics. ¶¶65, 67-68, 74, 79, 81-84; Nachmani Ex. 32 at 54-55. Russia forces Sberbank to invest in infrastructure and technological projects, which Russia uses as its property. Szakonyi Ex. 2 at 13. Russia forces Sberbank to pay it billions of dollars from Sberbank's dividends, funds which Russia uses for its budgets. Szakonyi Ex. 2 at 4, 9-11; Nachmani Decl. ¶¶29-31; Nachmani Exs. 23-25.

As to factors two through five, Russia exerts excessive control over Sberbank's operations and financial policies. For the purpose of consolidating and protecting Putin's power, Russia dictates Sberbank's issuance of dividends and loans, and Sberbank's interest rates, even though such policies often materially lower Sberbank's profits and harm Sberbank's non-sovereign shareholders. Szakonyi Ex. 2 at 4, 9-11. Russia owns a majority stake in Sberbank and packs Sberbank's board with Putin loyalists, who oversee Sberbank's operations and ensure that Sberbank's policies align with Putin's. *Id.* at 2-3, 9-10, 14. When Russia tells Sberbank to open

17

offices, increase business, or purchase assets in various regions so as to increase Russia's political influence and consolidate Putin's power, Sberbank does so. *Id.* at 5-7, 11-12, 15-16. At Russia's direction, Sberbank literally buys votes to sway elections in Putin's favor. *Id.* at 7-8. Sberbank covers up Russia's corruption. *Id.* at 13-14. Sberbank is rightfully referred to as Russia's "pocket bank" and its "Ministry of Cash"; Sberbank is no mere state instrumentality – it is an "instrument for the conduct of state policy" and a "political instrument of Putin's Russia." *Id.* at 2, 3, 5, 11.

Such facts demonstrate an alter ego relationship. *See McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346, 351-52 (D.C. Cir. 1995) (alter ego relationship shown where the instrumentality took action because it "believed that [government] desired them to take these steps," where the government held 52 percent of instrumentality's stock and controlled a majority of its board seats); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 407-08 (D. Del. 2018) (energy company was deemed alter ego of the foreign sovereign where the sovereign ordered company to purchase assets and set oil sales prices, its directors were political allies of Venezuela's President, and its corporate operations were meant to align with Venezuela's political aims; evidence presented after expansive briefing and two oral arguments); *Kensington Int'l Ltd. v. Republic of Congo*, 2007 WL 1032269, at *12 (S.D.N.Y. Mar. 30, 2007) (explaining that "commingling of ... assets" is a "classic earmark[ ] of an alter-ego relationship").

### 3. *Sberbank's Taking Violated International Law*

A taking is in violation of international law if it concerns one of three categories of takings: (i) "nationalization[s] or expropriation[s] of property without payment of ... prompt[,] adequate[,] and effective compensation"; (ii) takings that are "discriminatory; and (iii) takings that are arbitrary." *Beierwaltes*, 999 F.3d at 821. Under the "domestic takings rule," an international law violation is one by which a state takes the property of a national of another state, as "what a country

does to property belonging to its own citizens within its own borders is not the subject of international law." *Fed. Republic of Germany v. Philipp*, 592 U.S. 169, 176 (2021).

Sberbank took Ismailov's property in violation of international law by taking Ismailov's Krasnaya Polyana ownership without payment and taking subsequent control and ownership of Krasnaya Polyana on behalf of Russia. ¶91; Ismailov Decl. ¶¶27-28, 30-33, 43-45; Ismailov Exs. 4, 6. Sberbank's taking comports with the domestic takings rule, as Ismailov is a Ukrainian citizen, and Sberbank is a Russian instrumentality. ¶¶6, 35, 42-43, 51; Ismailov Decl. ¶¶6-9. These allegations are sufficient, as Defendants concede. Sb. Br. at 2 (the taking "would (presumably) escape the reach of [the domestic takings] rule."); *see Altmann*, 317 F.3d at 968 (Germany's taking property from Czech family without compensation was in violation of international law); *Gabay*, 151 F.R.D. at 253 (same as to Iranian instrumentality's taking of U.S. citizen's business).

Relying again on *Zappia*, the Sberbank Defendants assert that Sberbank's taking was not in violation of international law because a "breach of a commercial contract alone does not constitute a taking pursuant to international law." Sb. Br. at 29. *Zappia* does not compel this. Its holding pertained to nonpayment on a services contract; there was no "property" at issue. Sberbank's challenge also fails because Plaintiffs' claim in Ukraine was not based on Defendants' breach of the Sales Agreement; it was not a contract claim but a tort claim arising from Defendants' illegal taking. Vytiaganets Decl. ¶¶40, 69; Vytiaganets Exs. 23, 26-27. Indeed, Sberbank's tortious misconduct, occurring before and after it took Krasnaya Polyana, was meant to ensure that Sberbank could take Ismailov's property and signal to Plaintiffs that they would have no recourse in Russia. Bilalov Decl. ¶¶19-21, 39-41, 51-52 62-64; Bilalov Ex. 4; Ismailov Decl. ¶¶ 31, 43-44.

The Sberbank Defendants maintain that their taking was not a violation of international law because Plaintiffs purportedly cannot establish *all three* types of international law violations.

19

Sb. Br. at 29. But the Sberbank Defendants misconstrue the law, as their own cited authority sets forth that the three types of illegal takings are each independently colorable "categories of illegal takings"; only one type must be shown. *See Beierwaltes*, 999 F.3d at 821 (noting that plaintiffs correctly sought to argue that the taking fit one category). House Report 94-1487, which sets forth this issue's legislative history, accords: "The term 'taken in violation of international law' ***would include*** the nationalization or expropriation of property without payment … ***It would also include*** takings which are arbitrary ***or*** discriminatory in nature." H.R. Rep. No. 94-1487, at 19–20 (1976). The S.D.N.Y agrees; a violation of international law "requires ... that the taking not be for a public purpose, ***or*** that the taking be discriminatory, ***or*** not accompanied by provision for just compensation." *Aboutaam v. L'Office Federale De La Culture De La Confederation Suisse*, 2019 WL 4640083, at *3 (S.D.N.Y. Sept. 24, 2019); *Smith Rocke Ltd.*, 2014 WL 288705, at *7 (same).

4. *The FAC Sufficiently Alleges Nexus*

To sufficiently allege the nexus element of the Expropriation Exception, a plaintiff must set forth that the property taken from plaintiff "is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]" 28 U.S.C. § 1605(a)(3). "Commercial" within the meaning of the FSIA is "when a foreign government acts, not as regulator of a market, but in the manner of a private player within it." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992).

Plaintiffs establish this. As a result of Sberbank's taking, Sberbank became a 92 percent owner of Krasnaya Polyana. ¶¶90-91; Bilalov Decl. ¶¶53-55; Bilalov Exs. 6-8; Ismailov Decl. ¶¶45-47; Nachmani Decl. ¶¶35-38; Nachmani Exs. 29-32. At all relevant times, Sberbank, an instrumentality of Russia, conducted massive commercial activity in the U.S. ¶¶13-24; Nachmani Decl. ¶¶20, 39-54; Nachmani Exs. 14, 33-48. Nexus is satisfied. *See Schubarth v. Federal Republic*

20

*of Germany*, 891 F.3d 392, 400 (D.C. Cir. 2018) (state-owned corporation engaged in U.S. commercial activity because it marketed "to potential buyers in the United States" and "made billions in land sales through 2008"); *Helmerich & Payne Int'l Drilling Co. v. Petroleos de Venezuela, S.A.*, 2024 WL 4253142, at *10 (D.D.C. Sept. 20, 2024) (instrumentality, including its subsidiary, engaged in U.S. commercial activity based on contracts with U.S. entities).

The Sberbank Defendants maintain that Plaintiffs cannot establish that Sberbank owned Ismailov's interest in Krasnaya Polyana. Sb. Br. at 30. Not so, for numerous reasons.

*First*, Sberbank publicly reported in its financial statements that it had taken the Zeeland-based shares, representing that, as of December 31, 2013, it had "finalized purchase price allocation of identifiable assets of OJSC Krasnaya Polyana." Nachmani Ex. 30 at 68, 243-244; Bilalov Decl. ¶¶53-55; Bilalov Decl. Exs. 6-8; Ismailov Decl. ¶¶45-47. As a result of Sberbank's taking of these shares, Sberbank's ownership interest in Krasnaya Polyana skyrocketed, going from approximately 50 percent ownership in 2012 to over 90 percent in 2013. Nachmani ¶¶35-36; Nachmani Ex. 29 at 189, 194; Nachmani Ex. 30 at 243-44; Bilalov Decl. ¶¶53-55; Bilalov Decl. 6-8; Ismailov Decl. ¶¶45-47; Ismailov Exs. 6-8. Sberbank also represented that in 2016 it would sell Krasnaya Polyana. Nachmani Decl. ¶38; Nachmani Ex. 32 at 54.

*Second*, the Ukrainian Judgment confirms that Sberbank became an owner of the Zeeland-based shares in Krasnaya Polyana. Specifically, the Ukrainian Judgment concludes that:

> ***Hutseriev … acting on behalf of S. K. Kuznetsov in the interests of OJSC "Sberbank of Russia" obtained ownership of 817 shares of OJSC "Krasnaya Polyana" from Zeeland Company … transferring the ownership of the shares to the company controlled by him, which later transferred them to OJSC "Sberbank of Russia".***

21

FAC Ex. D at 21; *id.* ("***The obligation to pay monetary funds in the amount of USD 200,000,000 arose as a result of the acquisition by OJSC "Sberbank of Russia" of 817 shares of OJSC "Krasnaya Polyana"***"). The Ukrainian Judgment further sets forth that:

> It can be seen from the case materials that ultimately in 2013, ***817 shares of OJSC "Krasnaya Polyana"***, which were on the balance sheet of Zeeland Development Corp., ***became the property of the banking (consolidated) group of Sberbank of Russia, namely Sberbank Capital LLC, the sole founder and owner of a 100 percent share of JSC Sberbank of Russia. This is fully confirmed by the audit opinion of CJSC "Ernst & Young Vneshaudit", dated March 24, 2014, which states that OJSC "Sberbank of Russia" owns 92.10 % of the shares of OJSC Krasnaya Polyana.***

*Id.* at 25.

The Sberbank Defendants also maintain that Plaintiffs cannot establish nexus because the commercial activity of Sberbank USA, a subsidiary of Sberbank's, should not be recognized, as Sberbank USA is now supposedly defunct. Sb. Br. at 31. For numerous reasons, this is irrelevant.

*First*, while Plaintiffs recognize why Defendants raise this challenge (the FAC does refer to Sberbank USA), whether Sberbank USA is open is irrelevant because the FAC alleges Sberbank's extensive commercial activity in the U.S. ¶12 (Sberbank has routed millions of dollars to New York), ¶14 (Sberbank has traded ADRs on the NYSE), ¶¶15, 23 (25 percent of Sberbank's shareholders are located in the U.S. and that its U.S. business was so substantial that it did not need to advertise), ¶¶17-18 (Sberbank has provided various banking services in the U.S. and charged fees for them), ¶¶19-20 (Sberbank has U.S. bank accounts), ¶¶21, 24 (OFAC concluded that Sberbank conducts extensive U.S. business). Notwithstanding that Sberbank is currently sanctioned by the Treasury Department, Sberbank is still permitted to engage in energy-related transactions in the U.S. Nachmani Decl. ¶¶52-53; Nachmani Exs. 46-47; *see Crystallex Int'l Corp.*, 333 F. Supp. 3d at 419 (property was recognizable for the purpose of identifying commercial activity even though the property was sanctioned and thereby "effectively frozen").

*Second*, whether Sberbank USA closed in 2023 is irrelevant because Plaintiffs alleged that Sberbank USA conducted commercial activity in the U.S. on Sberbank's behalf and Defendants have not argued and thereby waived any argument as to whether Sberbank USA's activities can be imputed to Sberbank. *See Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 142 (2d Cir. 1999) ("we will not consider contentions first advanced" on a reply brief); *Makhnevich v. MTGLQ Invs., L.P.*, 2021 WL 3406484, at *7 (S.D.N.Y. Aug. 4, 2021) (waiving unasserted argument on reply).

5. *Ismailov's Claim Is Not Barred by Res Judicata*

The Sberbank Defendants assert that issue preclusion bars Ismailov's claim because, in *Bilalov*, Your Honor purportedly concluded that "Sberbank was immune to claims for its alleged expropriation of Krasnaya Polyana" and/or resolved the "the issue of whether Sberbank – as a state-owned enterprise – was capable of 'expropriating' Krasnaya Polyana at all." Sb. Br. at 27.

Issue preclusion prevents parties "from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002). It applies only if: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *N.L.R.B. v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999). For numerous reasons, issue preclusion does not apply.

*First*, the Sberbank Defendants grossly mischaracterize Your Honor's *Bilalov* holding. In *Bilalov* and contrary to the Sberbank Defendants' assertion, Your Honor did *not* conclude that "Sberbank was immune to claims for its alleged expropriation of Krasnaya Polyana" or resolve whether Sberbank "was capable of 'expropriating' Krasnaya Polyana." In reality, Your Honor dismissed *Bilalov* on the limited, factual basis that § 1605(a)(3) did not apply because, under the

23

domestic takings rule, Bilalov "is a citizen of Russia and his property was allegedly taken in Russia by the Russian government[.]" *Bilalov*, 2022 WL 4225968, at *7 (S.D.N.Y. Sept. 13, 2022).

*Second*, Ismailov is *not* relitigating the same Russia-Russia takings issue. The Sberbank Defendants concede that, because Ismailov is Ukrainian, Sberbank's taking of his property does not trigger the domestic takings rule. Sb. Br. at 2, 10. Likewise, that Your Honor reached no conclusion as to whether Sberbank can expropriate property allows Ismailov to set forth that Sberbank can and did. Relatedly, because Ismailov was not a party in *Bilalov*, his claim is not barred. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (no res judicata where a person "who was not a party to a suit generally has not had a full and fair opportunity to litigate the claims and issues"); *Bravo v. Shamailov*, 221 F. Supp. 3d 413, 426 (S.D.N.Y. 2016) (issue preclusion inapplicable because plaintiffs did not participate in the first litigation).

Presumably under a theory of claim preclusion, the Sberbank Defendants assert that the Court's prior domestic takings rule holding bars Ismailov's claim purportedly because Bilalov and Ismailov were in privity as business partners. Sb. Br. at 27. The Sberbank Defendants are wrong.

Privity "must be found in the substantial identity of the incentives of the earlier party with those of the party against whom res judicata is asserted." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995). Privity exists where a party "control[led] or substantially participate[d] in the control of the presentation on behalf of a party" to the prior action. *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995).

Ismailov and Bilalov are not in privity, as there was no identity of interests between Bilalov in *Bilalov* and Ismailov here. In *Bilalov*, Bilalov sued in connection with the 1426 shares in Krasnaya Polyana that he personally owned; Ismailov did not personally own any shares of Krasnaya Polyana (or have any interest in Bilalov's shares) but rather was entitled to Krasnaya

24

Polyana ownership through his Zeeland ownership only. Bilalov Decl. ¶¶33-36, 65-68; Bilalov Ex. 3; Ismailov Decl. ¶¶27-29, 62-64. Whether Bilalov won or lost had no bearing on Ismailov's ownership. Moreover, Defendants fail to submit any evidence that Ismailov purportedly controlled *Bilalov* or even participated in it – and he did not. Bilalov Decl. ¶¶65-68; Ismailov Decl. ¶¶62-64. There is no privity. *See Chase Manhattan Bank.*, 56 F.3d at 345-46 (buyer and a seller, while in contractual privity, were not in privity for the purposes of claim preclusion when their interests as plaintiffs were different); *Shukla v. Meta Platforms Inc.*, 2024 WL 4108563, at *11 (S.D.N.Y. July 17, 2024) (no privity where parties did not share identity of interests).

And, even if Ismailov and Bilalov were in privity, Ismailov's claim against Sberbank would not be barred by res judicata because the dismissal of Bilalov's prior claims was "for lack of jurisdiction" and as such it was "not an adjudication on the merits of [the] claim." *Stengel v. Black*, 486 F. App'x 181, 183 (2d Cir. 2012). The assertion of jurisdiction in a subsequent action is barred by res judicata "only if [the subsequent action] presents a jurisdictional issue that is identical to the issue that the [prior action] decided." *Bank v. Spark Energy Holdings, LLC*, 2014 WL 2805114, at *5 (E.D.N.Y. June 20, 2014). Because Ismailov's assertion of § 1605(a)(3) presents different jurisdictional issues than in *Bilalov*, res judicata cannot apply. *See Tounkara v. Republic of Senegal*, 2022 WL 17826422, at *11 (S.D.N.Y. Dec. 20, 2022) (res judicata did not bar new claims arising from identical facts as prior, dismissed claims that were brought by same plaintiff against the same defendant because the dismissal of the prior claims was on jurisdictional grounds).[3]

---

[3] The Sberbank Defendants' reliance on *Ferris v. Cuevas*, 118 F.3d 122 (2d Cir. 1997) is unavailing. Sb. Br. at 27. In *Ferris,* unlike here, the party against whom preclusion was sought controlled the first action and the other party. *See Ferris*, 118 F.3d at 126-27, 130. Moreover, courts interpreting *Ferris* have rejected the proposition that business partners are generally held to be in privity, recognizing that "New York law on privity for preclusion purposes does not include partnerships." *In re Refco Inc. Sec. Litig.*, 2013 WL 12191844, at *12 (S.D.N.Y. Mar. 25, 2013) (rejecting same assertion as "underwhelming" and referring to it as a "breezy reference").

6. *The Court Has Jurisdiction Over The Claims Against Kuznetsov And Hutseriev*

The Court has supplemental jurisdiction over Plaintiffs' claims against Kuznetsov and Hutseriev (Counts II & III) pursuant to 28 U.S.C. § 1367(a). The Court has original subject matter jurisdiction over Count I, Ismailov's claim against Sberbank, pursuant to § 1605(a)(3). *See* Section I.A *supra*. Defendants do not challenge that Counts II and III form part of the same case or controversy as Count I or raise any challenge under § 1367(c). The Court should exercise supplemental jurisdiction over Counts II & III. *See Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 583 (2d Cir. 1993) (FSIA was basis for supplemental jurisdiction over state law claim to enforce foreign judgment); *Hansen v. Danish Tourist Bd.*, 147 F. Supp. 2d 142, 157 (E.D.N.Y. 2001) (exercising supplemental jurisdiction over state law claims where court had original jurisdiction pursuant to claim that satisfied FSIA exception).

The Sberbank Defendants maintain that the Court cannot exercise jurisdiction over Plaintiffs' claims against Kuznetsov because Sberbank's purported FSIA immunity attaches to Kuznetsov. Sb. Br. at 31. This is irrelevant; assuming (but not accepting) that Sberbank is the "real party in interest," this suit should be "treated as a suit against the entity." *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010). To that effect, Kuznetsov's immunity "rises and falls" with Sberbank's. *Williams*, 2024 WL 3759649, at *19. Because the Expropriation Exception defeats Sberbank's FSIA immunity, it likewise defeats Kuznetsov's. *See id.* (application of FSIA exception to foreign state nullified official's assertion of immunity); *United States v. Cordones*, 2022 WL 815229, at *5 (S.D.N.Y. Mar. 17, 2022) ("if an instrumentality of a sovereign is not entitled to immunity … an agent, acting on that sovereign's behalf, cannot be entitled to immunity.").

26

To that effect, courts emphasize the appropriateness of exercising supplemental jurisdiction in FSIA cases where state law claims are brought against non-sovereign defendants, such as Kuznetsov and Hutseriev, and the Court should do the same here. *See, e.g.*, *Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*, 79 F. Supp. 2d 374, 386 (S.D.N.Y. 2000) ("FSIA permits the exercise of … pendent party jurisdiction, *i.e.*, to hear in FSIA cases … closely related claims against other parties over which there is no independent basis of jurisdiction."; rejecting supplemental jurisdiction on inapplicable grounds); *Randolph v. Budget Rent-A-Car*, 97 F.3d 319, 329 (9th Cir. 1996) (supplemental jurisdiction over claims against non-sovereign defendants where claims were related to justiciable FSIA claim); *Teck Metals, Ltd. v. Certain Underwriters at Lloyd's London*, 2010 WL 1286364, at *6 (E.D. Wash. Mar. 29, 2010) (court had "supplemental jurisdiction … over claims asserted against non-foreign sovereign defendants … along with claims asserted against a non-immune foreign sovereign.").

The Sberbank Defendants also maintain that the Court purportedly cannot exercise jurisdiction over Plaintiffs' claims against Kuznetsov because Sberbank is a "required" or "indispensable" party under Rule 19 over whom the Court does not have jurisdiction. Sb. Br. at 32. Notwithstanding that Rule 19 is inapplicable because the Court has subject matter jurisdiction over Count I, the Sberbank Defendants' assertion fails for numerous additional reasons.

*First*, even if the Court does not exercise subject matter jurisdiction over Count I, Sberbank is not a required party under Rule 19(a)(1)(A); Sberbank's absence does not warrant the dismissal of the claims against Kuznetsov. A party is required or "necessary … only if in that party's absence complete relief cannot be accorded among those already parties." Fed. R. Civ. P. 19(a)(1)(A). For that reason, Rule 19 does not mandate the joinder of joint obligors, because one of several joint obligors is not typically an indispensable party to an action against the others." *Universal*

27

*Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002). Likewise, "joint tortfeasors are not indispensable parties." *Highland Cap. Mgmt. LP. v. Schneider*, 198 F. App'x 41, 45 (2d Cir. 2006). The rationale is that, because of joint and several liability, a plaintiff:

> "by his judgment against one of his joint debtors, gets the relief he is entitled to, and no injustice is done to that debtor, because he is only made to perform an obligation which he was legally bound to perform before. The absent joint obligors are not injured, because their rights are in no sense affected, and they remain liable to contribution to their coobligor who may pay the judgment by suit, as they would have been had he paid it without suit."

*Greenleaf v. Safeway Trails*, 140 F.2d 889, 890 (2d Cir. 1944).

Here, all Defendants are jointly and several liable. As to the underlying misconduct, Defendants are all joint tortfeasors. ¶¶4, 95, 113; FAC Ex. D at 30; Bilalov Decl. ¶¶78-79; Ismailov Decl. ¶¶59-60; Vytiaganets Decl. ¶69. As to the Ukrainian Judgment, ***Defendants are all explicitly jointly and severally liable to Plaintiffs as joint debtors***. FAC Ex. D at 30; Bilalov Decl. ¶¶78-79; Ismailov Decl. ¶¶59-60. The Court can provide Plaintiffs full relief under the Ukrainian Judgment by allowing Plaintiffs to seek relief against Kuznetsov and/or Hutseriev. *See Jota v. Texaco, Inc.*, 157 F.3d 153, 162 (2d Cir. 1998) (sovereign was not a required party because "much of the relief could be fully provided by [non-sovereign defendant]"); *Greater Chautauqua Fed. Credit Union v. Marks*, 600 F. Supp. 3d 405, 424 (S.D.N.Y. 2022) ("judgment debtors are not necessary parties" because "even in their absence, the Court could accord complete relief"); *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117, 136-38 (E.D.N.Y.2000) (sovereigns were not necessary parties where plaintiffs sued banks under joint tortfeasor theory); *Bennett v. Islamic Republic of Iran*, 799 F.3d 1281, 1288 (9th Cir. 2015) (judgment debtor was not required party).

*Second*, even if Count I is dismissed, Sberbank is not a required party under Rule 19(a)(1)(B). A party is required only if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical

28

matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). "[P]rejudice to [an] absent part[y] approaches the vanishing point" when "the absent and remaining parties' interests are aligned in all respects." *Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 360 (2d Cir. 2015).

Sberbank is not a required party under Rule 19(a)(1)(B)(i) because Sberbank and Kuznetsov's interests are aligned. Sberbank and Kuznetsov, defining themselves jointly as the "Sberbank Defendants," filed their Motion to Dismiss and the Sanctions Motion. Because Kuznetsov is an agent of Sberbank, Kuznetsov's conduct is imputable to Sberbank. That Sberbank promises to indemnify Kuznetsov (Sb. Br. at 32) demonstrates their identity of interests; if Plaintiffs are able to enforce the Ukrainian Judgment against Kuznetsov, any such remuneration will ultimately be paid back to Kuznetsov by Sberbank. *See De Csepel v. Republic of Hungary*, 27 F.4th 736, 750 752 (D.C. Cir. 2022) (no prejudice to absent sovereign because remaining parties would protect sovereign's interest; that damages were limited to monetary relief limited potential for prejudice to absent party); *Two Shields v. Wilkinson*, 790 F.3d 791, 799 (8th Cir. 2015) (absent party was not indispensable where remaining party had "the incentive to make every argument on the merits that the absent [party] would or could make").[4]

---

[4] The Sberbank Defendants' reliance on *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) is unavailing. Sb. Br. at 32. In *Pimentel,* an interpleader action over the disposition of assets, the Supreme Court concluded that the sovereign was a necessary party because the non-sovereign parties' claims to assets at issue conflicted with the foreign sovereign's. *See Pimentel*, 553 U.S. at 866-67. Here, Defendants are not fighting over assets – or anything for that matter. Sberbank's assertion of holding Kuznetsov harmless is irrelevant under Rule 19; in whatever manner Sberbank indemnifies Kuznetsov is distinct from the full relief the Court can jointly and severally award under the Ukrainian Judgment. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F.3d 377, 385 (2d Cir. 2006) (defendant was not required party because inevitability of future litigation amongst defendants was irrelevant to plaintiff's ability to be accorded relief).

## B.  THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

On a 12(b)(2) motion, a plaintiff must merely "make a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013). A plaintiff's allegations "must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). All factual disputes "are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport*, 989 F.2d at 580.

### 1.  The Court Has Jurisdiction Over Defendants Pursuant To The FSIA

"Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject matter] jurisdiction under subsection (a) where service has been made under [the FSIA]." 28 U.S.C. § 1330(b). The Second Circuit holds that "subject matter jurisdiction plus service of process equals personal jurisdiction." *Servaas Inc.*, 653 F. App'x at 24; *see also Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 746 (2d Cir. 2000) (personal jurisdiction "equals subject matter jurisdiction plus valid service of process").

The Court has jurisdiction over the Sberbank Defendants because the Court has subject matter jurisdiction over Count I (*see* Section I.A *supra*), and Plaintiffs properly served Defendants in accordance with the Court's June 2024 Order. *See* Section I.D *infra*; *First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 55 (2d Cir. 2002) (jurisdiction over instrumentality-debtor because FSIA exception applied and service properly effectuated); *Peterson v. Islamic Republic of Iran*, 2023 WL 2601265, at \*16 (S.D.N.Y. Mar. 22, 2023) (same as to bank-instrumentality).

Defendants maintain that, under CPLR Article 53, New York's Uniform Foreign Country Money Judgments Recognition Act ("Uniform Act"), case law "unequivocally holds" that Plaintiffs must establish an independent basis for jurisdiction over them under CPLR 302. Sb. Br. at 33; *see also* Hut. Br. at 19-22. Defendants are wrong.

In a proceeding under the Unform Act, a judgment creditor seeking recognition of a foreign money judgment "*need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts because [n]o such requirement can be found in the CPLR, and none inheres in the Due Process Clause of the United States Constitution, from which jurisdictional basis requirements derive*." *Abu Dhabi Com. Bank PJSC v. Saad Trading, Contracting & Fin. Servs. Co.*, 117 A.D.3d 609, 611 (1st Dep't 2014). On this issue, the Appellate Division in *Lenchyshyn v. Pelko Elec., Inc.*, 281 A.D.2d 42 (4th Dep't 2001) rejected the exact argument that Defendants raise here. *See id.* at 48-49. Relying on the Supreme Court's decision in *Shaffer v. Heitner*, 433 U.S. 186 (1977), *Lenchyshyn* mandates that, in an action for recognition of a foreign judgment, "*no jurisdictional basis for proceeding against the judgment debtor need be shown before a foreign judgment will be recognized or enforced in a given state*." *Id.* at 48 (citing authorities); *see also Abu Dhabi Com. Bank PJSC*, 117 A.D.3d at 611 (the Unform Act "does not provide for non-recognition [of a foreign judgment] on the ground that the New York court lacks personal jurisdiction over the judgment debtor in a CPLR article 53 proceeding.").

Courts interpreting *Lenchyshyn* reject the very assertion that Defendants expend pages mischaracterizing (Sb. Br. at 33-35; Hut. Br. at 19-22) and reinforce the correct statement of law: that a proceeding to recognize a foreign judgment "*is not predicated on a showing of CPLR §§301 or 302 personal or in rem jurisdiction over the judgment debtor in New York*." *Shipcraft v. Arms Corp. of the Philippines, Inc.*, 2013 WL 649415, at *2, 5 (N.Y. Sup. Ct. Feb. 19, 2013) (rejecting argument that foreign judgment should not be enforced because debtor defendant did not have minimum contacts with or assets in New York; "*application of Article 53 does not rely upon the existence of either in personam or in rem jurisdiction*."); *see also Cargill Fin. Servs. Int'l, Inc. v. Barshchovskiy*, 2024 WL 4240998, at *6 (S.D.N.Y. Sept. 19, 2024) ("a New York court asked

31

to recognize and enforce a foreign money judgment ***need not have in personam jurisdiction over the judgment debtor***.”); *Sonic Finance Inc. v. Prima Bulkship Pte. Ltd.*, 2017 WL 4284556, at *3 (N.Y. Sup. Ct. Sep. 27, 2017) (plaintiffs “***need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts***”); *Milan Industries Ltd. v. Wilson Worldwide Proprietary Ltd.*, 2011 WL 11071743, at *2 (N.Y. Sup. Ct. June 1, 2011) (same principle); *Xceed Mortg. Corp v. Ramchandani*, 2010 WL 1323507 (N.Y. Sup. Ct. Mar. 29, 2010) (applying same principle). The Court of Appeals has signaled its approval of *Lenchyshyn*, noting that “[i]n proceeding under [the Uniform Act], the judgment creditor does not seek any new relief against the judgment debtor, but instead merely asks the court to perform its ministerial function of recognizing the foreign country money judgment and converting it into a New York judgment.” *CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*, 100 N.Y.2d 215, 222 (2003).

Defendants relatedly maintain that a judgment creditor-plaintiff must purportedly establish personal jurisdiction in New York over a judgment debtor-defendant where the debtor-defendant *contests* recognition of the foreign judgment. Sb. Br. at 33; Hut. Br. at 21-22. Again, not so.

The S.D.N.Y explicitly rejects Defendants’ proposition – and does so as it relates to a court’s jurisdiction over a foreign sovereign debtor-defendant. *See Williams*, 2024 WL 3759649, at *16. In the S.D.N.Y., a judgment creditor-plaintiff ***does not need to establish personal jurisdiction in New York*** over a judgment debtor-defendant, ***whether or not the debtor-defendant contests the enforcement of the judgment***, because, pursuant to the Supreme Court’s decision in *Shaffer*, “***there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter***.” *Williams*, 2024 WL 3759649, at *17 (quoting *Shaffer*, 433 U.S. at 210, n. 36 (1977)). Accordingly, ***“[t]o the extent that a defendant***

32

***has property in New York, a judgment creditor cannot avoid execution on that property by the expedient of avoiding personal jurisdiction in New York***." *Id.* at \*17.

Defendants' own authority, *AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*, 160 A.D.3d 93 (1st Dep't 2018) ("*AlbaniaBEG*") is in accord. Sb. Br. at 33; Hut. Br. at 21-22. In *AlbaniaBEG*, the First Department recognized that, notwithstanding whether a judgment debtor-defendant contests the enforcement of a foreign judgment, "***the presence of a judgment debtor's assets in the forum remain[s] a jurisdictional basis for proceedings to enforce a previously rendered foreign judgment, even if the forum state and the defendant's property therein had no connection to the claim underlying the judgment***." *AlbaniaBEG*, 160 A.D.3d at 103. To that effect, *AlbaniaBEG* validates this Court's recognizing the Ukrainian Judgment regardless of whether there is an independent basis for personal jurisdiction because, in the context of "post-judgment asset jurisdiction, a debtor could easily render itself judgment-proof simply by removing its assets to a place where it was not subject to personal jurisdiction" such that a court should "foreclose avenues by which duly rendered judgments might be defeated." *Id.* at 104.

### 2. The Court Has Quasi In Rem Jurisdiction

Quasi in rem jurisdiction exists "where a plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him." *Hanson v. Denckla*, 357 U.S. 235, 246 n. 12 (1958). It allows a court to establish jurisdiction over a party based upon its power over property within its territory. *See Shaffer*, 433 U.S. at 199. The identified property does *not* need to be related to a plaintiff's cause of action "where quasi in rem jurisdiction is used to attach property to collect a debt based on a claim already adjudicated in a forum where there was personal jurisdiction over the defendant." *Equipav S.A. Pavimentacao, Engenharia e Comercio Ltda. v. Bertin*, 2024 WL 196670, at \*7 (S.D.N.Y. Jan. 18, 2024). In such a case, the "mere

presence of property" in the forum is a sufficient basis for jurisdiction. *CME Media Enterprises B.V. v. Zelezny*, 2001 WL 1035138, at \*3 (S.D.N.Y. Sept. 10, 2001); *see* Restatement (Third) of Foreign Relations Law § 481 cmt. h ("an action to enforce a judgment may usually be brought ***wherever property of the defendant is found, without any necessary connection between the underlying action and the property, or between the defendant and the forum.***").

While the Second Circuit does not mandate in a FSIA case seeking enforcement of a judgment that quasi in rem jurisdiction is required, and New York courts interpreting the Uniform Act recognize that jurisdiction is unnecessary over a judgment-debtor defendant, the Court nonetheless has quasi in rem jurisdiction. The Ukrainian Court, a court of competent jurisdiction (*see* Section I.E.2 *infra*), concluded that Defendants were debtors to Ismailov. ¶¶95, 112-13; Bilalov Decl. ¶¶78-79; Ismailov Decl. ¶¶59-60. Defendants have property in this District. ¶¶9-10, 12, 14, 19-20, 29, 58; Nachmani Decl. ¶¶39-51; Nachmani Ex. 33. As such, "principles of personal jurisdiction present no obstacle to the Court's recognition of the judgment against [them]." *Williams*, 2024 WL 3759649, at \*18 (allegations that foreign sovereign-instrumentality debtor-defendant maintained bank accounts in the S.D.N.Y. warranted exercise of quasi in rem jurisdiction); *see also Equipav*, 2024 WL 196670, at \*7 (identification of bank account belonging to defendant was sufficient to warrant quasi in rem jurisdiction in action to confirm arbitration award); *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 538 (2009) ("When a debtor is neither a domiciliary nor a resident of New York so that the creditor cannot obtain personal jurisdiction of the debtor-but owns assets in New York, courts have exercised jurisdiction over the debtor."); *Harvardsky Prumyslovy Holding, A.S.-V Likvidaci v. Kozeny*, 166 A.D.3d 494 (2018) ("Plaintiff alleges that [judgment debtor] has approximately $22 million at a bank in New York");

*AlbaniaBEG*, 160 A.D.3d at 112 (identification of property within the forum is a cognizable basis to exercise jurisdiction in an action for recognition of a foreign judgment).

The Sberbank Defendants maintain that the FSIA precludes quasi in rem jurisdiction as a basis for jurisdiction. Sb. Br. at 35-36. But as set forth above, FSIA case law explicitly embraces quasi in rem jurisdiction. *See Williams*, 2024 WL 3759649, at *18 (quasi in rem jurisdiction exercised over FSIA defendant); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,* 479 F. Supp. 2d 376, 488 (S.D.N.Y. 2007) (recognizing but not applying quasi in rem jurisdiction). Moreover, that an action seeking recognition of a foreign judgment or arbitral award can serve as a basis for establishing a FSIA exception implies that quasi in rem jurisdiction is a cognizable FSIA jurisdictional basis. *See Servaas Inc.,* 653 F. App'x at 24; *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela,* 863 F.3d 96, 115 (2d Cir. 2017) (FSIA exception applies against foreign state arbitral debtors); *Seetransport*, 989 F.2d at 579 (same).

Defendants also contend that the Court cannot exercise quasi in rem jurisdiction until Plaintiffs attach the Sberbank Defendants' property pursuant to Rule 4(n). Sb. Br. at 35; Hut. Br. 23-24. Not so; Defendants' reliance on Rule 4(n) is inapplicable, as that provision does not concern the basis for a court's exercising quasi in rem jurisdiction but rather concerns the operation of service of process in quasi in rem cases. And to the extent Rule 4(n) is applicable, Plaintiffs have complied with Rule 4(n)(1) as this case is "authorized by federal statute." Fed. R. Civ. P. 4(n)(1); 28 U.S.C. § 1605 (noting that a foreign state is not immune from jurisdiction "in any case" to which an FSIA exception applies); 28 U.S.C. § 1608 (concerning service of process under FSIA).[5]

---

[5] Hutseriev's reliance on *Orient Overseas Container Line v. Kids Int'l Corp.*, 1998 WL 531840 (S.D.N.Y. Aug. 24, 1998) is unavailing, as the defendant and third-party plaintiffs sought an attachment order as a basis to serve third-party defendants because service could not be effectuated in the forum district. *See id.* at *4. This case gives rise to no such issues.

35

Moreover, Defendants' position if accepted would yield absurd results; Plaintiffs cannot be made whole under the Ukrainian Judgment *until* the Court recognizes the Ukrainian Judgment, as the Uniform Act requires. *See* CPLR 5307 (noting that "*if* the court … finds the [foreign country] judgment is entitled to recognition … the foreign country is enforceable in the same manner and to the same extent as a judgment rendered in" New York). FSIA caselaw holds accordingly. *See Williams*, 2024 WL 3759649, at *18 (exercising quasi in rem jurisdiction over FSIA judgment debtor based on allegation of property in district, not based on prior-attachment of property); *Frontera Res. Azerbaijan Corp.*, 479 F. Supp. 2d at 388 (recognizing availability of quasi in rem jurisdiction against FSIA judgment debtor based on identification of assets; declining jurisdiction based on insufficiency of identifications and *not* on prior non-attachment of property).

Defendants also maintain that the Court cannot exercise quasi in rem jurisdiction because Plaintiffs have not purportedly identified Defendants' property in this District. Sb. Br. at 35; Hut. Br. at 23-24. Not so. ¶¶10, 12, 14, 19, 20, 29; Nachmani Decl. ¶¶39-51; Nachmani Ex. 33. If on reply Defendants maintain that this property no longer belongs to them or is not in their possession, that contention does not warrant the FAC's dismissal because "[i]f the defendant does not have property in New York, the recognition of the foreign judgment by a New York court will be of no effect." *Williams*, 2024 WL 3759649, at *17 (recognizing jurisdiction notwithstanding judgment creditor's inability to attach property). That those assets may be depleted or no longer owned by Defendants is no bar to the Court's exercising jurisdiction. *See CME Media Enterprises B.V.*, 2001 WL 1035138, at *4 (future asset depletion does not divest court of jurisdiction).[6]

---

[6] Contrary the Sberbank Defendants' assertion, *Geveke & Co. Int'l v. Kompania Di Awa I Elektrisidat Di Korsou N.V.*, 482 F. Supp. 660 (S.D.N.Y. 1979) does not stand for the proposition that, in the FSIA context, a court cannot adjudicate a quasi in rem action. Rather, the case recognizes the principle inapposite here that if no FSIA exception applies, the attachment of property cannot serve as a substitute basis for personal jurisdiction. *See id.* at 663-64.

3.    The Court's Exercise Of Personal Jurisdiction Comports With Due Process

"[T]he exercise of personal jurisdiction must comport with constitutional due process principles." *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 69 (2d Cir. 2022). "[Q]uasi in rem jurisdiction is subject to the due process restrictions outlined by the United States Supreme Court in *Shaffer*." *Williams*, 2024 WL 3759649, at *17, 18 (S.D.N.Y. Aug. 12, 2024). *Shaffer* holds that "***[o]nce it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter***." *Shaffer*, 433 U.S. at 210, n. 36. The Due Process analysis under *Shaffer* does not require minimum contacts with the forum domesticating a foreign judgment; rather it "requires minimum contacts between the defendant and the forum ***in the action that determines the defendant's liability to the plaintiff*** [.]" *Abu Dhabi Com. Bank PJSC*, 117 A.D.3d at 613.

Here, the Court's jurisdiction over Defendants comports with Due Process under *Shaffer*. The Ukrainian Court determined that Defendants are debtors of Ismailov. Vytiaganets Decl. ¶¶40-42; Section I.E.1 *infra*. The Ukrainian Court correctly exercised personal jurisdiction over Defendants. Section I.E.2.b *infra*. As to minimum contacts in Ukraine, Sberbank has been doing business in Ukraine for years and continues to do so in Ukraine's occupied regions. Nachmani Decl. ¶¶32-33, 36, 38; Nachmani Exs. 26-27, 30 (at 23-24, 66, 71, 243), 32 (at 124). Additionally, Plaintiffs have identified property belonging to Defendants in this District. *See* Section I.B.2 *supra*; *see also CME Media Enterprises B.V.*, 2001 WL 1035138, at *3 ("Minimum contacts are not required because an arbitration panel with personal jurisdiction over [debtor] has already adjudicated [creditor's] claims against [debtor] and determined that he is a debtor of [creditor]");

37

*La Dolce Vita Fine Dining Co. v. Zhang*, 2023 WL 1927827, at \*2 (S.D.N.Y. Feb. 10, 2023) (quasi in rem jurisdiction was appropriate where arbitration panel with personal jurisdiction already adjudicated claims); *Crescendo Mar. Co. v. Bank of Commc'ns Co.*, 2016 WL 750351, at \*5 (S.D.N.Y. Feb. 22, 2016) (same; "this is merely an action to recover on [a] debt.").

Moreover, the Court does not even need to make a Due Process determination because, "when it comes to the Fifth Amendment … the sovereign itself and its 'alter egos' are not 'persons.'" *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021). As set forth in Section I.A.2 *supra*, Sberbank is an alter ego of Russia and therefore not a "person" under the Due Process Clause and thereby not protected by Due Process. *See Esso Expl. & Prod. Nigeria Ltd.*, 40 F.4th at 66, 70 (no Due Process rights for instrumentality because instrumentality was state's alter ego); *GSS Grp. Ltd. v. Nat. Port Auth.*, 680 F.3d 805, 815 (D.C. Cir. 2012) ("Whenever a foreign sovereign controls an instrumentality to such a degree that a principal-agent relationship arises … the instrumentality receives the same due process protection as the sovereign: none.").

### C. THE S.D.N.Y. IS A PROPER VENUE FOR THIS ACTION

On a 12(b)(3) motion, "the plaintiff need only make a prima facie showing of [venue]." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). A court "must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits." *U.S. E.P.A. ex rel. McKeown v. Port Authority of N.Y. & N.J.,* 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001). A court "draws all reasonable inferences and resolves all factual conflicts in favor of plaintiff." *Rankel v. Kabateck*, 2013 WL 7161687, at \*2 (S.D.N.Y. Dec. 9, 2013).

1. <u>The S.D.N.Y. Is A Proper Venue For The Sberbank Defendants</u>

In an action against a foreign state's instrumentality, venue is proper "in any judicial district in which the … instrumentality is licensed to do business or is doing business[.]" 28 U.S.C. §

1391(f)(3). Venue is proper because Sberbank is an instrumentality of Russia and does business in the S.D.N.Y. ¶¶9-10, 12, 14, 19-20, 25, 29, 58; Nachmani Decl. ¶¶39-51; Nachmani Exs. 33-45.

Defendants contend that venue is improper because the FAC purportedly does not allege that Sberbank is licensed to do business here. Sb. Br. at 37. This is irrelevant if the instrumentality conducts business in the forum, which Sberbank does. *See Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*, 760 F.2d 390, 395 n. 4 (2d Cir. 1985) (§ 1391(f) "authorizes venue in the district where a foreign state instrumentality is licensed to do business *or is doing business*."); *Altmann*, 317 F.3d at 972 (venue was proper because instrumentality did business in the district); *Cassirer v. Kingdom of Spain*, 461 F. Supp. 2d 1157, 1177 (C.D. Cal. 2006) (museum-instrumentality's doing business in the district conferred venue).

The Sberbank Defendants also contend that venue is improper because the events leading to the Ukrainian Judgment did not occur in the S.D.N.Y. Sb. Br. at 36-37. Again, this is irrelevant; § 1391(f)(3) contains no such requirement. *See Altmann*, 317 F.3d at 972 (venue was proper notwithstanding that misconduct occurred overseas); *OGI Grp. Corp. v. Oil Projects Co. of Ministry of Oil*, 2020 WL 6342886, at *10 (D.D.C. Oct. 29, 2020) (§ 1391(f)(3) does not require events that giving rise to claim occurred in district); *Cassirer*, 461 F. Supp. 2d at 1177 (same).[7]

2.  The S.D.N.Y. Is A Proper Venue For Hutseriev

Venue is proper in a judicial district "in which any defendant is subject to the court's personal jurisdiction with respect to such action" so long as "there is no district in which an action may otherwise be brought as provided in this section." 28 U.S.C. § 1391(b)(3). Venue is proper under § 1391(b)(3) because, as set forth in Section I.B *supra*, any of the Defendants are subject to

---

[7] The Sberbank Defendants' reliance on *Commissions Imp. Exp. S.A. v. Republic of the Congo*, 2012 WL 1468486 (S.D.N.Y. Apr. 27, 2012) is unavailing, because, as that case was against the foreign sovereign itself, it concerned § 1391(f)(1), not § 1391(f)(3). *See id.* at *2.

personal jurisdiction in the S.D.N.Y., and §§ 1391(b)(1) and (b)(2) are inapplicable as Defendants are foreigners who do not reside in the S.D.N.Y. and their underlying misconduct giving rise to the Ukrainian Judgment occurred overseas. Sb. Br. at 4-5, 36-37; Hut. Br. at 12, 22, 24-25.

Citing no § 1391(b)(3) authority, Hutseriev maintains that venue is purportedly improper because there is no connection between Hutseriev's New York contacts and Plaintiffs' claims. Hut. Br. at 24-25. Again, no such connection is necessary where § 1391(b)(3)'s requirements are established. *See Patel v. Clane Gessel Studio*, 2024 WL 1939307, at *7 (S.D.N.Y. Apr. 18, 2024) (venue appropriate under § 1391(b)(3) because of personal jurisdiction and inapplicability of §§ 1391(b)(1) and (b)(2)); *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 446 (E.D.N.Y. 2013) ("Even if a substantial part of the events giving rise to this lawsuit were not deemed to have occurred in this District, venue would be proper under Section 1391(b)(3)" because (b)(3)'s requirements were established); *Seungick Chung v. Grace Rd. Church*, 2014 WL 6911346, at *1 n.1 (D. Conn. Dec. 8, 2014) (applicability of § 1391(b)(3) based on inapplicability of §§ 1391(b)(1) and (b)(2)).[8]

### D. PLAINTIFFS PROPERLY EFFECTUATED SERVICE OF PROCESS

On a Rule 12(b)(5) motion, "the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010). In assessing whether a plaintiff has established proper service, a court "must look to matters outside the complaint." *Tuebor Reit Sub LLC v. Paul*, 2020 WL 4897137, at *2 (S.D.N.Y. Aug. 19, 2020). A court should "look to Rule 4, which governs the content, issuance, and service of a summons." *Id.*

Plaintiffs effectuated service by emailing the FAC and amended summonses to Defendants and their U.S. counsel in accordance with the Court's June 2024 Order. ECF 17, 22-30. Defendants received actual notice of this suit, and all Defendants appeared. ECF 28-30, 34-36, 58-61.

---

[8] Hutseriev's reliance on *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353 (2d Cir. 2005) is unavailing as that case concerned § 1391(b)(2), not § 1391(b)(3). *See id.* at 356.

The Sberbank Defendants assert that Plaintiffs' service was purportedly defective pursuant to Rule 4(j) and 28 U.S.C. § 1608(b)(3)(C) because Russia supposedly prohibits service by email and such service would thereby be inconsistent "with the law of the place where service to be made." Sb. Br. at 37-38. Hutseriev similarly maintains that such service is defective because, based on Russia's supposed objection to service by email, Plaintiffs' service purportedly contravenes the Hague Convention. Hut. Br. at 25-26. For numerous reasons, Defendants' contentions fail.

*First*, Russia does not prohibit service by email. While Russia may prohibit service via postal channels under Article 10 of the Hague Convention, Your Honor correctly concluded that this prohibition does *not* include a prohibition by email unless Russia "***explicitly object[s] to service by electronic means***." June 2024 Order at 2. To that effect, Your Honor also correctly concluded that Russia has never made such an explicit objection, recognizing that ***"[n]umerous courts have held that service by email does not violate any international agreement***," that "***this Court, like others in this District, is not aware of any [] international agreement or Russian law that prohibits service via email***," and accordingly that "***the Court finds that serving Defendants by email would not violate an international treaty***." *Id.* at 2.

Other courts within the Second Circuit hold accordingly, recognizing that "because email is not a postal channel," that "service by email is authorized if the signatory country has not explicitly objected to service by electronic means." *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 343 (E.D.N.Y. 2021); *see also ShelterZoom Corp. v. Goroshevsky*, 2020 WL 4252722, at *2 (S.D.N.Y. July 23, 2020) (affirming service via email for a defendant residing in Russia because Russia's objection to Article 10 did not explicitly extend to an objection to electronic service); *Mattel, Inc. v. Animefun Store*, 2020 WL 2097624, at *5 (S.D.N.Y. May 1, 2020) (same as to Chinese defendant via China's non-explicit objection to electronic service); *Sulzer Mixpac AG v.*

41

*Medenstar Indus. Co.*, 312 F.R.D. 329, 339 (S.D.N.Y. 2015) (declining to "extend countries' objections to specific forms of service permitted by Article 10 … such as postal mail, to service by other alternative means, including email"); *AMTO, LLC v. Bedford Asset Mgmt., LLC*, 2015 WL 3457452, at \*7 (S.D.N.Y. June 1, 2015) (authorizing service via email to Russia-residing defendant because Russia did not explicitly object to electronic service and neither international agreement nor Russian law prohibited service via email).

Defendants fail to set forth a cognizable objection to this body of law. The Sberbank Defendants' hyperlink to Russia's supposed Declaration and Reservation to the Hague Convention is unusable or is a virus. Sb. Br. at 38. Their Exhibits 3 and 4 concern Russia's generic prohibition on service via "postal channels" under Article 10 and say nothing of service by email. And *Kadmon Corp., LLC v. Ltd. Liab. Co. Oncon*, 2023 WL 2346340 (S.D.N.Y. Mar. 3, 2023) is an outlier decision that recognizes its conclusion to be "untenable" and that other courts have neither followed concerning electronic service on a Russian defendant nor applied to a defendant in a foreign country whose Central Authority refuses to effectuate Hague Convention service, such as Russia. *Id.* at \*6. *Kadmon* itself concedes that a majority of courts have concluded that a country's objection to Article 10 does not include an objection to email service. *See id.* at \*6 n. 5.

*Second*, assuming Russia prohibits service by email (it does not), Plaintiffs' serving Defendants in a manner pursuant to the Hague Convention would be impossible, warranting the appropriateness of serving Defendants by alternative means. Your Honor correctly reached that conclusion, recognizing that Defendants were all "located in Russia" and ***"in 2003, Russia unilaterally suspended all judicial cooperation with the United States in civil and commercial matters"*** and "***Russia no longer effects service through its Central Authority, which is the method prescribed under the Hague Convention on the Service Abroad of Judicial and***

42

***Extrajudicial Documents in Civil or Commercial Matters***." June 2024 Order at 1-2 (citing authorities). To that effect, Hutseriev's reliance on *Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017) is unavailing, as that case did not contemplate a situation like this in which a plaintiff could not effectuate service because of the foreign country's refusal to comply with Hague Convention protocols. Indeed, *Water Splash, Inc.*'s holding is premised on the notion that a foreign country's Central Authority, there Canada's, *would* effectuate Hague Convention service. *See id.* at 275 ("When a central authority receives an appropriate request, it must serve the documents or arrange for their service, Art. 5, and then provide a certificate of service, Art. 6.").

For this reason, cases post-dating *Watersplash Inc.* authorize service by email on Russian defendants. *See Ryzhov v. Malofeyev*, 2023 WL 8039482, at *2 (S.D.N.Y. Nov. 20, 2023) (permitting service by email on Russian defendant); *In re Qiwi PLC Sec. Litig.*, 2023 WL 5279301, at *4 (E.D.N.Y. Aug. 15, 2023) (permitting service by email on Russian defendant "because Russia has suspended all judicial cooperation with the United States, service through the Hague Convention at [defendant's] Moscow address was not an option."); *ShelterZoom Corp.*, 2020 WL 4252722, at *2 (permitting service via email because "Russia no longer effects service through its Central Authority"); *Goldfarb v. Cannel One Russia*, 2018 WL 11225240 (S.D.N.Y. Oct. 19, 2018) (permitting service under Rule 4(f)(3) because of Russia's refusal to transmit service via its Central Authority); *Actava TV, Inc. v. Joint Stock Co. "Channel One Russia Worldwide"*, 2018 WL 11282742, at *2 (S.D.N.Y. Sept. 4, 2018) (granting alternative service because trying to serve Russian defendant pursuant to the Hague Convention would be futile). Defendants should not be permitted to escape this case because of Russia's contempt for U.S. courts.

*Third*, that Russia purportedly prohibits email service is irrelevant, as Plaintiffs effectuated service on Defendants not just by emailing them in Russia but by emailing their counsel here in

the U.S. – specifically in New York City and Washington, D.C. ECF 28-30. Where a plaintiff seeks to "serve [a] [d]efendant[] through a domestic agent," including an "attorney … compliance with the Hague Convention is not implicated." *Actava TV, Inc.*, 2018 WL 11282742, at *2. Alternative service via email accords with the law of those Districts, and Your Honor correctly determined that such service would comport with Due Process. June 2024 Order at 2; *see Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*, 2024 WL 3013759, at *5 (S.D.N.Y. June 13, 2024) ("alternative service through U.S. counsel is not prohibited by international agreement."); *Actava TV, Inc.*, 2018 WL 11282742, at *2 (granting alternative service on Russian defendant through defendant's U.S. counsel; citing authorities); *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, 2014 WL 1331046, at *10 (S.D.N.Y. Mar. 31, 2014) (authorizing service on Russian corporate defendant by emailing defendant's U.S. counsel); *Arista Recs. LLC v. Media Servs. LLC*, 2008 WL 563470, at *2 (S.D.N.Y. Feb. 25, 2008) (same); *RSM Prod. Corp. v. Fridman*, 2007 WL 1515068, at *2 (S.D.N.Y. May 24, 2007) (same as to individual defendant's U.S. counsel).

And *fourth*, the Sberbank Defendants' challenge is moot, as Plaintiffs served them in accordance with the FSIA's service of process provision, 28 U.S.C. § 1608(b). Service on an agency or instrumentality of a foreign sovereign is proper: "***if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state … as directed by order of the court consistent with the law of the place where service is to be made.***" 28 U.S.C. § 1608(b)(3)(C). Strict compliance with § 1608(b) is not required; service is properly effectuated where "compliance with the service requirements … were substantial and sufficient." *First City, Texas Houston, N.A.*, 281 F.3d at 55. When applying this "substantial compliance" test, "the primary factor is whether a defendant receives actual notice

44

and was not prejudiced by the lack of compliance with the FSIA." *Sakhrani v. Takhi*, 1997 WL 33477654, at *6 (S.D.N.Y. Sept. 10, 1997). A "technical defect in service should not override the fact that the defendant received actual notice of the lawsuit." *Chettri v. Nepal Bangladesh Bank, Ltd.*, 2014 WL 4354668, at *9 (S.D.N.Y. Sept. 2, 2014).

Plaintiffs' service on Defendants satisfied § 1608(b)(3)(C) and § 1608's substantial compliance standard. Under § 1608(b)(1), the Sberbank Defendants reject Plaintiffs' service, and Plaintiffs' seeking to enter into a special arrangement with them would be futile. Under § 1608(b)(2), Russia would have blocked Plaintiffs' attempt to serve Defendants pursuant to the Hague Convention. As to § 1608(b)(3)(C), the Court correctly determined that serving the Sberbank Defendants and/or their U.S. counsel by email comported with Due Process because such service was reasonably calculated to provide Defendants with notice of this action – and it did. June 2024 Order at 1-2. Accordingly, Plaintiffs' service on the Sberbank Defendants accords with the FSIA. *See Refineria Di Korsou N.V. v. Petroleos de Venezuela S.A.*, 2023 WL 8039362, at *3 (S.D.N.Y. Nov. 20, 2023) (substantial compliance with § 1608(b) where, per court order, plaintiffs' counsel served defendants by emailing defendants' counsel, demonstrating actual notice); *Banco Metropolitano, S.A. v. Desarrollo de Autopistas y Carreteras de Guatemala, Sociedad Anonima, Through Junta Interventora of Dag*, 616 F. Supp. 301, 304 (S.D.N.Y. 1985) (that defendants had actual notice warranted that service was acceptable, notwithstanding that service did not technically comport with § 1608(b)'s requirements).[9]

---

[9] The Sberbank Defendants do not challenge that service was defective because Plaintiffs did not translate the amended summonses and the FAC into Russian, waiving that argument on reply. If the Court concludes that service does not accord with § 1608(b), dismissal on 12(b)(5) grounds is not warranted, as any defect in service is "readily curable." *USAA Cas. Ins. Co v. Permanent Mission of Republic of Namibia*, 2010 WL 4739945, at *1 (S.D.N.Y. Nov. 17, 2010). Indeed, the Court can order Defendants to designate an individual in this District, such as Defendants' counsel here, to accept service via personal delivery. *See* 28 U.S.C. §§ 1608(b)(2) and (b)(3)(C).

45

### E.  THE COURT SHOULD RECOGNIZE THE UKRAINIAN JUDGMENT

To defeat a 12(b)(6) motion, a complaint must merely contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court "must accept as true all nonconclusory factual allegations in the complaint and draw all reasonable inferences in the Plaintiffs' favor." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021). The inquiry is whether "all of the facts alleged, taken collectively" permit a relevant inference, not whether "any individual allegation, scrutinized in isolation" does. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007).

#### 1.  The Ukrainian Judgment Is Final, Conclusive, And Enforceable

Under the Uniform Act, a foreign money judgment is enforceable when it is "final, conclusive, and enforceable" in its issuing jurisdiction. CPLR 5302(a)(2). A foreign money judgment "is to be recognized in New York under article 53 unless a ground for nonrecognition under CPLR 5304 is applicable." *John Galliano, S.A. v. Stallion, Inc.*, 15 N.Y.3d 75, 80 (2010).

The Ukrainian Judgment is a final, conclusive, and enforceable. ¶¶4, 112-15, 132-33, 148-49; Vytiaganets Decl. ¶¶41-42; Vytiaganets Ex. 27 at 13-14. Defendants do not challenge this. *See Trejos Hermanos Sucesores S.A. v. Verizon Commc'ns Inc.*, 2024 WL 149551, at *4 (S.D.N.Y. Jan. 12, 2024) (a judgment imposing an obligation to pay that was alleged to be final and enforceable satisfied CPLR 5302(a)).

#### 2.  Defendants' CPLR 5304 Challenges Fail

Once the party seeking enforcement of the foreign judgment meets its burden under CPLR 5302, the burden shifts to the party resisting recognition to "establish[ ] that a ground for non-recognition stated in [C.P.L.R. Sections 5304(a) or (b)] exists." CPLR 5304(c). "Employing a liberal standard, New York courts presume that a foreign country judgment is valid if that judgment, or the pleadings, shows that the court had jurisdiction over the action and is a court of

46

general jurisdiction." *Sabeniano v. Citibank, N.A. New York*, 2013 WL 1164891, at \*6 (S.D.N.Y. Mar. 20, 2013). For that reason, "New York courts rarely turn to § 5304." *Id.*

As a preliminary matter, Defendants' challenges under CPLR 5304(a)(1)-(3) fail because a "motion to dismiss is not a proper vehicle for litigating [CPLR 5304] defenses." *Malherbe v. Oscar Gruss & Son, Inc.*, 2023 WL 199425, at \*4 (S.D.N.Y. Jan. 17, 2023). This is because "[i]n 2021, New York revised Section 5304 to impose the burden of proof for establishing a specific ground for non-recognition upon the party raising it[.]" *Trejos Hermanos Sucesores S.A.*, 2024 WL 149551, at \*3. To that effect, the Uniform Act "firmly establish[es] the grounds for non-recognition as affirmative defenses[;]" a plaintiff "has no burden [on a motion to dismiss] other than to plead that the underlying judgment is final, conclusive, and enforceable[.]" *Malherbe*, 2023 WL 199425, at \*3. Defendants' CPLR 5304 challenges are procedurally inapplicable and should be disregarded, as "***[p]roving one or multiple grounds for non-recognition is the burden of the Defendant, and one which can be satisfied only at later stages of the proceedings, once raised as an affirmative defense***." *Id.*; *see also Liu v. Guan*, 225 A.D.3d 749, 751 (2d Dep't 2024) (recognizing that CPLR 5304 was amended in June 2021 (*see* L 2021, ch 127, § 5), and those amendments apply to cases commenced on or after the effective date (*see* L 2021, ch 127, § 10)); *see also Trejos Hermanos Sucesores S.A.*, 2024 WL 149551, at \*6 (debtor-defendants' 5304 challenges were affirmative defenses on summary judgment); *Tianzhu Coal Co. Ltd. Under Yaojie Coal & Elec. Grp. v. Ju*, 215 N.Y.S.3d 920 (Sup. Ct. Nassau Cty. 2024) (same).

As to Defendants' CPLR 5304 challenges, Defendants ask the Court to second-guess the Ukrainian Court's application of law. However, under principles of comity, the Uniform Act requires the Court to respect the Ukrainian Court's conclusions about its own laws. And for the below reasons, Defendants' challenges fail.

47

a. *The Ukrainian Judicial System Is Fair And Impartial*

Defendants maintain that the Ukrainian judicial system is not fair or impartial because it is currently under martial law such that the adjudication of a case against a Russian defendant precludes the possibility of a fair defense. Sb. Br. at 40; Hut. Br. at 28-30. Defendants are wrong.

"CPLR 5304(a)(1) does not demand that the foreign tribunal's procedures exactly match those of New York. "Under New York law [,] ... foreign decrees and proceedings will be given respect ... even if the result under the foreign proceeding would be different than under American law." *Drexel Burnham Lambert Group Inc. v. Galadari,* 610 F. Supp. 114, 118 (S.D.N.Y. 1985). The Second Circuit has "repeatedly emphasized that "[i]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 982 (2d Cir. 1993). For that reason, CPLR 5304(a)(1) is satisfied if the foreign court's procedures are merely "compatible with the requirements of due process of law. *CIBC Mellon Tr. Co.*, 100 N.Y.2d at 222. The touchstones of due process are "notice and an opportunity to be heard[.] *Harvardsky Prumyslovy Holding, A.S.-V Likvidaci v. Kozeny*, 166 A.D.3d 494, 495 (1st Dep't 2018).

The Ukrainian judicial system comports with the requirements of due process by giving litigants notice and an opportunity to be heard. ¶99, 116-20; ECF 18-4 at ¶¶15, 26-30; Vytiaganets Decl. ¶¶17-22, 54-55; Vytiaganets Exs. 7-8, 37. Martial law in Ukraine does not affect Ukraine's judicial system, as Ukraine's judicial system is governed by the Ukrainian constitution and the laws of Ukraine, which protect a litigant's due process rights. Vytiaganets Decl. ¶¶17-22; Vytiaganets Exs. 7-8. Moreover, Ukraine's martial law regime, specifically, Articles 12 and 26, expressly protects Ukraine's administration of justice, and Article 496 of Ukraine's Civil

Procedural Code ensures that foreign parties in Ukraine have the same procedural rights as Ukrainian parties. Vytiaganets Decl. ¶¶17-22; Vytiaganets Exs. 7-8.

Because Ukraine's judicial system continues to provide litigants with due process, courts in the U.S. and the United Kingdom have determined that it remains a fair and impartial system, notwithstanding the instatement of martial law. *See Shakhova v. Pugachov*, CACE20013987 at 7-8 (Fla. Cir. Court, 17th Judicial District, June 9, 2023) (Nachmani Ex. 49); *WWRT Limited v. Kostiantyn Valentynovych Zhevago* [2024] EWHC 122 (Comm) (Vytiaganets Decl. ¶¶37-39; Vytiaganets Ex. 22); *see also Universal Trading & Inv. Co. v. Kiritchenko*, 2007 WL 2669841, at *15 (N.D. Cal. Sept. 7, 2007) (extending comity to Ukrainian judgment because Ukrainian courts are "not so lacking in impartiality, due process, or procedural fairness that the United States courts should disregard all Ukrainian court decisions as a matter of course."). Indeed, over the last two years Russian litigants have successfully brought and defended cases in Ukraine. Vytiaganets Decl. ¶¶34-36; Vytiaganets Exs. 15-21 (providing authorities).

Defendants' references to Ukrainian law are unavailing. Whereas Defendants cite Ukrainian Resolution of the Cabinet of Ministers No. 187 ("Resolution No. 187"), for the proposition that the provision of legal services to Russians is banned (Sb. Br. at 40, citing Exhibit 5, ECF 53-5), Resolution No. 187 does no such thing; it merely establishes a moratorium on *fulfilling* monetary and other relief to Russian parties. Vytiaganets Decl. ¶¶31-33; Vytiaganets Exs. 12-14. The right to legal services for all parties is enshrined in Article 15 of Ukraine's Civil Procedural Code and Article 59 of the Ukrainian Constitution. Vytiaganets Decl. ¶¶33-34; Vytiaganets Exs. 8, 14. Moreover, Articles 43, 211, and 212 of Ukraine's Civil Procedural Code provides methods for parties to access Ukraine's judicial system from outside of Ukraine. Vytiaganets Decl. ¶35; Vytiaganets Ex. 8 at 9-10, 20-21. And whereas Defendants cite Ukrainian

Resolution of the Cabinet of Ministers No. 164 for the proposition that Russian nationals do not have access to notarial services in Ukraine (Sb. Br. at 40, citing Exhibit 6, ECF 53-6), Resolution No. 164 merely limits a notary from issuing a power of attorney. Vytiaganets Decl. ¶¶23-25; Vytiaganets Ex. 9. It does *not* prevent a Russian party from retaining counsel by other means, including having the Ukrainian Court certify a power of attorney or getting notarial services outside of Ukraine for cases inside Ukraine. Vytiaganets Decl. ¶¶25-30; Vytiaganets Exs. 10-11. The Uniform Act warrants the conclusion that Ukraine's judicial system remains fair and impartial. *See CIBC Mellon Tr. Co.*, 100 N.Y.2d at 222 (judicial system's use of a problematic mechanism did not render the system incompatible with due process); *S.C. Chimexim S.A. v. Velco Enterprises Ltd.*, 36 F. Supp. 2d 206, 214 (S.D.N.Y. 1999) (Romanian judicial system was fair and impartial even though it was "far from perfect," and evidence demonstrated that "corruption remains a concern" and "that [due process] guarantees are not always accorded" and "injustices" may occur).

b.  *The Ukrainian Court Had Personal Jurisdiction Over Defendants*

Defendants maintain that the Ukrainian Court's exercise of personal jurisdiction was purportedly defective because it was not in perfect conformity with New York's long-arm statute. Sb. Br. at 40-41; Hut. Br. at 28. Defendants' CPLR 5304(a)(2) challenge fails.

Under CPLR 5304(a)(2), whether a foreign court's exercise of personal jurisdiction should be recognized is *not* determined by whether it matches New York's long-arm statute; it turns on whether it generally "comports with New York's concept of personal jurisdiction, and if so, whether that foreign jurisdiction shares our notions of procedure and due process of law." *John Galliano, S.A*, 15 N.Y.3d at 81. "[S]o long as the exercise of jurisdiction by the foreign court does not offend due process, the judgment should be enforced without microscopic analysis of the underlying proceedings." *Landauer Ltd. v. Joe Monani Fish Co.*, 22 N.Y.3d 1129, 1131 (2014).

50

Whether the Ukrainian Court's personal jurisdiction matched New York's long-arm statute is irrelevant because the Ukrainian Court's jurisdictional exercise was proper under Ukrainian law. ¶¶98-99, 130, 146; Vytiaganets Decl. ¶¶70-74; Vytiaganets Exs. 23, 32. The Ukrainian Court explicitly held as such, concluding that "[t]he statement of claim was filed in compliance with the requirements of Articles 175-177 of the Civil Procedure Code of Ukraine, referred to the subject matter, *personal*, instance and territorial *jurisdiction of the court*." Vytiaganets Decl. ¶70; Vytiaganets Ex. 23 at 2. Under the Uniform Act, this is sufficient. *See Sung Hwan Co. v. Rite Aid Corp.*, 7 N.Y.3d 78, 83 (2006) (Korean court's exercise of personal jurisdiction was sufficient to warrant enforcement of foreign judgment even though Korea's concept of personal jurisdiction was "more expansive" than New York's); *Vinogradov v. Sokolova*, 77 Misc. 3d 284, 288 (Sup. Ct. N.Y. Cty. 2022) (Russian court had personal jurisdiction pursuant to Russian law); *Castleton Commodities Merchant Trading L.P. v. Casado*, 2020 WL 790505, at *4 (Sup. Ct. N.Y. Cty. Feb. 18, 2020) (same as to Curaçaon court's exercise of personal jurisdiction).

Additional bases under the Uniform Act warrant the Court's recognition of the Ukrainian Court's personal jurisdiction. *First*, pursuant to CPLR 5305(a)(4), the Ukrainian Judgment "may not be refused recognition for lack of personal jurisdiction" if the defendant is "a corporation or other form of business organization that … had otherwise acquired corporate status, in the foreign country." CPLR 5305(a)(4). At the time of Defendants' taking, Sberbank was a registered business in Ukraine and operated there. Nachmani Decl. ¶36; Nachmani Ex. 30 at 23-24, 66, 71, 243. Sberbank continues to do business in Ukraine. Nachmani Decl. ¶¶32-33; Nachman Exs. 26-27.

*Second*, under CPLR 5305(b), the Court should recognize the Ukrainian Court's personal jurisdiction, as the Court should accept "any jurisdictional basis it recognizes in its internal law." *CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*, 296 A.D.2d 81, 96 (1st Dep't 2002). The Ukrainian

51

Court's exercising personal jurisdiction comports with CPLR 302(a)(3)(i) and (ii). The Ukrainian Court concluded that Defendants tortiously took Plaintiffs' property, located outside of Ukraine, causing injury to Ismailov in Ukraine. FAC Ex. D at 21. Sberbank's business in Ukraine is material and ongoing. Nachmani Decl. ¶¶32-33; Nachmani Exs. 26-27, 50 at 7, 20, 151. Defendants should have expected their taking to have consequences to Ismailov in Ukraine, and Sberbank derives revenue from international commerce. Nachmani Ex. 51 at 28, 61-63, 67, 69-72.

Defendants also assert that the Court should not recognize the Ukrainian Court's exercise of personal jurisdiction because service on them was purportedly defective. In their view, service was effectuated by a "lone email" sent after the hearing in the Ukrainian Action had ended. Sb. Br. at 41; Hut. Br. at 28. For numerous reasons, Defendants' assertion fails.

*First*, Defendants mischaracterize this email. The email from the Ukrainian Court, dated March 23, 2023 at 10:51AM (Ukraine time) was *not* sent after the hearing; no hearing took place then, and the hearing to which the email relates was scheduled for May 11, 2023 and subsequently rescheduled for May 24, 2023 – *two months after the email*. ¶¶106-07; FAC Ex. E at 18-20; Vytiaganets Decl. ¶¶40, 64-65; Vytiaganets Exs. 23-24. Defendants had ample time to prepare a defense. Defendants do not deny that they received the Ukrainian Court's email. Under Ukrainian law, such notice by email is sufficient. Vytiaganets Decl. ¶56; Vytiaganets Ex. 8 at 15-16.

*Second*, Defendants are wrong that notice was provided to them solely by the Ukrainian Court's email. Notice was provided by *two additional methods*. It was done by publication on the Ukrainian Court's website – and such publication was done for each order on or about the day of the order. Vytiaganets Decl. ¶¶40, 65. On March 2, 2023, the Ukrainian Court published notice for the upcoming March 23, 2023 hearing; on April 25, 2023, it published notice of the upcoming May 11, 2023 hearing; on May 11, 2023, it published notice of the upcoming May 24, 2023

hearing. *Id.* Notice was also mailed to Defendants from within Russia on March 9, 2023. ¶¶105, 108; FAC Ex. E at 21-27; Ismailov Decl. ¶¶56-57; Ismailov Ex. 12; Vytiaganets Decl. ¶63; Vytiaganets Exs. 8, 27. Defendants do not deny that they received this notice. Under Ukrainian law, both methods are sufficient. Vytiaganets Decl. ¶¶56, 59-60, 66-67; Vytiaganets Exs. 8, 27.

Defendants' assertion fails because, under the Uniform Act, Defendants were provided with "meaningful notice" under the circumstances "in sufficient time to enable" them to defend the action. *John Galliano, S.A.*, 15 N.Y.3d at 81; *see Banco De Serguros Del Estado v. J.P. Morgan Chase & Co.*, 500 F. Supp. 2d 251, 263 (S.D.N.Y. 2007) ("so long as [plaintiff] properly serves [defendants] pursuant to Uruguayan law, they will be notified sufficiently of any suit there."); *Batbrothers LLC v. Paushok*, 109 N.Y.S.3d 837 (Sup. Ct. N.Y. Cty. 2018); (Russian court's determination that notice was sufficient satisfied Uniform Act; case materials were mailed and telegrammed to defendant); *Shipcraft v. Arms Corp. of the Philippines, Inc.*, 2013 WL 649415, at *3 (Sup. Ct. N.Y. Cty. Feb. 19, 2013) (service was not fundamentally unfair because it was deemed sufficient by Philippines court); *Vinogradov*, 77 Misc. 3d 284 at 288 (rejecting challenge to notice where it was provided by Russian court system in compliance with Russian law).[10]

c.  *The Ukrainian Court Had Subject Matter Jurisdiction Over The Ukrainian Action*

When considering enforcement of a foreign judgment, a court should "grant[] preclusive effect to the [foreign court's] finding" where the defendant "had the opportunity to fully and fairly litigate the ... issue before the [foreign court]." *Trejos Hermanos Sucesores S.A.*, 2024 WL 149551, at *6. The Ukrainian Court concluded that it had subject matter jurisdiction over the Ukrainian

---

[10] Defendants' challenge to notice actually arises under CPLR 5304(b), *not* CPLR 5304(a); it is a discretionary basis for non-recognition, not a mandatory one. CPLR 5304(b)(1). Accordingly, even if notice were insufficient, it would not trigger non-recognition. *See Shipcraft*, 2013 WL 649415, at *3 (noting that insufficiency of notice is a non-mandatory basis for non-recognition).

Action under Articles 175-177 of Ukraine's Civil Procedure Code. Vytiaganets Decl. ¶70; Vytiaganets Ex. 23 at 2. The Ukrainian Court also had jurisdiction under Section 5 of Article 76 of the Law of Ukraine, as the Ukrainian Action concerned a "foreign element," as defined by Article 1 of the Law of Ukraine, and concerned "compensation for damages, the claimant a natural person has a personal place of residence in Ukraine or a legal person – the defendant – has a place of residence in Ukraine…." Vytiaganets Decl. ¶¶71-74; Vytiaganets Ex. 32.

The Sberbank Defendants challenge the Ukrainian Court's subject matter jurisdiction under CPLR 5304(a)(3), maintaining that Article 76 purportedly relates only to cases concerning physical injury or property damage and not to commercial disputes. Sb. Br. at 41. Notwithstanding that Article 76 *does apply* to commercial disputes and that Article 76's language *does not so limit* a Ukrainian court's jurisdiction, the Ukrainian Action was a suit in tort for lost profits arising from Defendants' illegal taking to which Article 76 *does apply*. Vytiaganets Decl. ¶¶75-76; Vytiaganets Ex. 32. Hutseriev's challenge that Plaintiffs and Defendants were not the parties to the Sales Agreement (Hut. Br. at 27) fails as the Ukrainian Action did not arise under the Sales Agreement.

## II.  THE MOTION FOR SANCTIONS SHOULD BE DENIED

Rule 11 sanctions "represent a drastic, extraordinary remedy." *Omega SA v. 375 Canal, LLC*, 324 F.R.D. 47, 54 (S.D.N.Y. 2018). The standard is "objective unreasonableness." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003). Sanctions are appropriate only where "it should have been patently obvious to any attorney who had familiarized himself with the law" that the action was frivolous. *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988). The standard is "quite rigorous and very rarely succeeds … where evidence of bad faith or aggravated misconduct is not apparent." *Indoafric Exports Priv. Co. v. Citibank, N.A.*, 2016 WL 6820726, at *4 (S.D.N.Y. Nov. 7, 2016). A court must "resolve all doubts in favor of" the party opposing sanctions. *Rodick v.* City *of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993).

54

**A.  The FAC Is Based On Supported And Meritorious Legal Positions**

A Rule 11(b)(2) violation exists only where, it is "patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986). "Sanctions may not be imposed unless a particular contention is patently contrary to existing law." *Storey*, 347 F.3d at 39. That a legal theory is "a long-shot does not necessarily mean it is sanctionable." *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011). "[T]he operative question is whether the argument is frivolous, i.e., the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." *Id.*

1.   Plaintiffs' Legal Arguments Are Well Supported And Meritorious

There is nothing patently defective about Plaintiffs' legal positions. Plaintiffs support their arguments with detailed facts and availing caselaw and respond to Defendants' every challenge.

The Sberbank Defendants' 11(b)(2) challenges are mere replays of their Motion to Dismiss arguments. Defendants assert that Plaintiffs' legal positions are frivolous because *Zappia* and *Bilaov* purportedly foreclose this action. Sanctions Br. at 24-25; Sb. Br. at 28. But as set forth above, the Sberbank Defendants' reading of *Zappia* is wrong; an instrumentality *can* commit a violative taking. *See* Section I.A.2 *supra*. As to *Bilalov*, Your Honor reached no conclusion that Sberbank could not illegally take property, and Ismailov may raise that unresolved issue here as to Sberbank's taking of his property. *See id*. And even if the Court were inclined to conduct an alter ego analysis on Sberbank, Plaintiffs' claims would *still* be legally supported based on Russia's decades of extensive control over Sberbank. *See* Section I.A.2 *supra*; Szakonyi Ex. 2 at 2-16.

As to the Uniform Act, Defendants repeat their assertion that under CPLR 5304(a)(2) the Ukrainian Court did not have personal jurisdiction and accordingly that sanctions are warranted. Sanctions Br. at 26-27; Sb. Br. at 40-41. However, the Ukrainian Court under Ukrainiain law concluded that notice by the three service methods used was sufficient and that personal

55

jurisdiction existed – under New York law, the Court should not second guess the Ukrainian Court's conclusions. *See* Section I.E.2.b *supra*; Vytiaganets Decl. ¶¶56, 61-74; Vytiaganets Exs. 8, 23, 27, 32. Defendants' assertion that Plaintiffs' serving Defendants by alternative means *in this action* supposedly demonstrates the insufficiency of service *in the Ukrainian Action* is nonsensical. Sanctions Br. at 26-27. By the Court's June 2024 Order, Plaintiffs served Kuznetsov by the same email address at which the Ukrainian Court served him – and this Court correctly concluded that such service comported with due process and was calculated to provide notice. June 2024 Order at 2; *see* Section I.E.2.b *supra*; Vytiaganets Decl. ¶¶64-67; Vytiaganets Ex. 27 at 5.

The Sberbank Defendants' Rule 11(b)(2) challenges fail for the additional reason that they are merits disputes as to the application of law, which are improper under Rule 11. *See Lee v. Grand Sichuan E. (N.Y.) Inc.*, 2014 WL 199512, at *3 (S.D.N.Y. Jan. 17, 2014) ("Nor should Rule 11 motions be prepared to emphasize the merits of a party's position."); *Bishop v. Cnty. of Suffolk*, 2019 WL 13422759, at *10 (E.D.N.Y. Aug. 31, 2019) (denying Rule 11 motion where non-movant "cite[d] relevant … case law and argue[d] their position – as lawyers do"; rejecting movant's "competing analysis," as "arguments on the merits … are inappropriate in a Rule 11 motion"). To the extent the Court finds Defendants' challenges availing, sanctions are still not warranted. *See Erchonia Corp. v. Bissoon*, 421 F. App'x 122, 123 (2d Cir. 2011) (meritless claims were not sanctionable because "they were not entirely baseless."); *Zagami v. Cellceutix Corp.*, 2017 WL 1180923, at *14 (S.D.N.Y. Mar. 29, 2017) (same because not indefensible).

2.  <u>Plaintiffs' Motion For Alternative Service Was Valid And Correctly Decided</u>

Defendants maintain that Plaintiffs' seeking the Court's leave pursuant to Rule 4(f) is purportedly sanctionable because, in their motion for alternative service, Plaintiffs did not identify 28 U.S.C. § 1608. Sanctions Br. at 27. Plaintiffs did not pull a fast one on the Court. Plaintiffs

explicitly invoked the FSIA throughout the FAC. And as Defendants repeat throughout, this Court is well aware of its FSIA adjudication of *Bilalov*, Sberbank's invocation of FSIA immunity there, and the Court's ruling as to the domestic takings rule. Sb. Br. at 1-3, 6-12, 15-16, 26-28. Plaintiffs' effectuating service pursuant to the Court's June 2024 Order did not violate Russian law and comported with applicable laws, including 28 U.S.C. § 1608. *See* Section I.D *supra*.

**B. Defendants' Asserted "Fact Errors" Are Baseless**

Rule 11(b)(3) provides that "[b]y presenting to the court ... a pleading ... an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief ... the allegations and other factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010). Rule 11(b)(3) sanctions may not be imposed "unless a particular allegation is utterly lacking in support." *Storey,* 347 F.3d at 388.

1.  The Sales Agreement Is Authentic And Enforceable

The Sberbank Defendants expend pages asserting that the Sales Agreement is a "patently obvious fake" and a "forgery," made for the purpose of "laundering a phony claim through the Ukrainian courts." Sanctions Br. at 4, 7-8, 14, 27, 28; Sb. Br. at 4, 12, 13, 25. Defendants assert that Plaintiffs' reliance on the Sales Agreement is sanctionable. Sanctions Br. at 27-28. Not so.

As a preliminary matter, Defendants' 11(b)(3) challenge should be rejected as premature, because, prior to discovery, a "pre-trial motion for sanctions is not the appropriate vehicle to test the truth or falsity of allegations in a complaint." *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 331 (S.D.N.Y. 2013) ("If I were to accept this claim and sanction Plaintiffs, it would be tantamount to discrediting the truth of these allegations … A motion for sanctions cannot serve as an end-run around the fact finder's exclusive role to resolve factual disputes."). Notwithstanding that the Sales Agreement *is* authentic, the issue of its authenticity should not be decided without discovery,

because "only after discovery has been completed will the Court properly have before it evidence regarding the veracity" of Plaintiffs' allegations. *Luv N' Care, Ltd. v. Shiboleth LLP*, 2017 WL 3671039, at *13–14 (S.D.N.Y. Aug. 8, 2017) (denying Rule 11 motion where defendants "argu[ed] that Plaintiffs are simply lying in their pleadings"; collecting cases); *see also Breuninger v. Williams*, 2023 WL 4211030, at *8 (S.D.N.Y. June 27, 2023) (denying sanctions motion concerning factual dispute because court could not resolve dispute until after discovery); *Laba v. JBO Worldwide Supply Pty Ltd.*, 2021 WL 2739228, at *5 (S.D.N.Y. July 1, 2021) (Rule 11 motion based on purportedly forged document was premature because authenticity was issue of fact).

Regardless, the Sales Agreement is real. Plaintiffs authenticated it under penalty of perjury. Ismailov Decl. ¶¶30-44; Bilalov Decl. ¶¶37-52. That is sufficient. *See Sanderson v. Leg Apparel LLC*, 2024 WL 498094, at *4 (S.D.N.Y. Feb. 8, 2024) (attestation to disputed fact was sufficient to defeat Rule 11 challenge). The Ukrainian Court confirmed its authenticity. Vytiaganets Decl. ¶¶83-87; Vytiaganets Ex. 27. Plaintiffs' counsel vetted this issue. Nachmani Decl. ¶¶8-9; Bilalov Decl. ¶¶8-9. That the Sales Agreement is similar in form and substance and coheres with the likewise authenticated 2011 Agreement between Bilalov and Sberbank *and* the 2013 Partnership Agreement between Bilalov and Ismailov corroborates this conclusion. Bilalov Decl. ¶¶22-24; Bilalov Ex. 1; Ismailov Decl. ¶27; Ismailov Ex. 4. Although Zeeland was the party to the Sales Agreement, under Ukrainian law, Ismailov and Bilalov as Zeeland owners could seek tort damages against Defendants. Vytiaganets Decl. ¶69. *See* Section I.A.5 *supra*.

2.  Plaintiffs' Reference To The Forum Selection Clause Is Not Sanctionable

Defendants maintain that, because the Sales Agreement's forum selection clause is purportedly a choice of law clause, Plaintiffs' references to it are sanctionable. Sanctions. Br. at 8, 14, 28. While Plaintiffs recognize that the FAC references the forum selection clause, Plaintiffs

are *not* relying on the forum selection clause as a basis for recognition under CPLR 5305(a)(3). Moreover, the forum selection clause is consistent with how Russian and Ukrainian agreement set forth such clauses. Vytiaganets Decl. ¶¶80-82. If the Ukrainian Action sounded in contract rather than in tort, Plaintiffs would have raised this assertion under CPLR 5305(a)(3). And Plaintiffs' position thereto would not be sanctionable, as it would be supported by controlling law. CPLR 5305(a)(3) ("A foreign country judgment may not be refused recognition for lack of personal jurisdiction if: the defendant prior to the commencement of the proceeding had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved"); *John Galliano, S.A.*, 15 N.Y.3d at 81 (forum selection clause warranted recognition under CPLR 5305(a)(3); *Batbrothers LLC*, 109 N.Y.S.3d 837 (same).

3.    Defendants' Assertions As To Sberbank USA Are Irrelevant

Defendants repeat their motion to dismiss contention that the alleged commercial activity is that of Sberbank USA, not Sberbank, purportedly warranting sanctions. Sanctions Br. at 29; Sb. Br. at 17-18, 31, 37. Not so because Plaintiffs have thoroughly established the commercial activity of Sberbank itself. *See* Section I.A.4 *supra*; Nachmani Decl. ¶¶39-54; Nachmani Exs. 33-48.

**C. Defendants Fail To Establish That Plaintiffs Have An Illegitimate Purpose**

Rule 11(b)(1) provides that "[b]y presenting to the court a pleading … an attorney … certifies that … it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). A court must find "clear evidence that … the claims were brought in bad faith." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000). For 11(b)(1) sanctions to be issued, "the pleading must first be found to be frivolous." *Ammann v. Sharestates, Inc.*, 2024 WL 1956237, at *3 (E.D.N.Y. Mar. 21, 2024) ("a nonfrivolous action cannot be sanctioned for being filed with an improper purpose.").

59

There is no improper purpose here because the FAC's claims are supported by applicable law. Moreover, Plaintiffs brought this action for the objectively legitimate purpose of domesticating the Ukrainian Judgment. Whereas the Sberbank Defendants impute an improper purpose because in their view (yet again) *Bilalov* purportedly precludes Plaintiffs' claims (Sanctions Br. at 21), again this is not so. *See* Section I.A.5 *supra*; *Sussman v. Bank of Israel*, 56 F.3d 450, 458-59 (2d Cir. 1995) (the filing of a nonfrivolous action cannot be sanctioned for being filed with an improper purpose).[11]

## CONCLUSION

For all the reasons set forth herein, Defendants' Motions should be denied.[12]

Dated: November 19, 2024

Respectfully submitted,

 /s/ Jake Nachmani
**SEIDEN LAW LLP**
Jake Nachmani
Michael Stolper
MarcAnthony Bonanno
322 Eighth Avenue, Suite 1200
New York, NY 10001
(212) 523-0686

*Attorneys for Plaintiffs*

---

[11] Defendants' cited authorities are unavailing. *See, e.g.*, *Knipe v. Skinner*, 19 F.3d 72, 76 (2d Cir. 1994) (sanctions were appropriate because, unlike here, plaintiffs repeated arguments that the court had already rejected, plaintiffs could "not credibly argue" their theory of the case, and plaintiffs offered "no authority" in support of their arguments); *LCS Grp., LLC v. Shire LLC*, 2019 WL 1234848, at *16 (S.D.N.Y. Mar. 8, 2019) (issuing sanctions because plaintiffs brought claims that they knew were based on a "fraudulent declaration" and plaintiff "ma[d]e no attempt" to establish why the claims had "any chance of success under the existing precedents").

[12] If the Court grants any part of the Motions to Dismiss, Plaintiffs will seek leave to re-plead pursuant to Rule 15(a)(2). *See McCarty v. The Bank of New York Mellon*, 2015 WL 5821405, at *7 (S.D.N.Y. Sept. 8, 2015) (Torres, J.) (leave to replead where Court had "doubts" as to whether there could be a cognizable claim).