EXHIBIT 13



Сквирський районний суд Київської області

Справа № 376/560/23
Провадження № 2/376/477/2023

## РІШЕННЯ
## ІМЕНЕМ УКРАЇНИ

"25" травня 2023 р.    Сквирський районний суд Київської області у складі:

Головуючого судді – Коваленка О.М.,
за участю секретаря – Щур Л.А.,
представника позивача – Кучерука М.В.,
представника третьої особи – Соколовського В.Л.,

розглянувши у відкритому судовому засіданні в м. Сквира Київської області цивільну справу за позовом Ісмаілова Мусаійба Ісмаіловича до Гуцерієва Михайла Сафарбековича, Кузнецова Станіслава Костянтиновича, Публічного акціонерного товариства «Сбербанк росії», третя особа Білалов Ахмед Гаджийович про стягнення упущеної вигоди, за позовом третьої особи, яка заявляє самостійні вимоги щодо предмета спору Білалова Ахмеда Гаджийовича до Гуцерієва Михайла Сафарбековича, Кузнецова Станіслава Костянтиновича, Публічного акціонерного товариства «Сбербанк росії», третя особа Ісмаілов Мусаійб Ісмаілович про стягнення збитків у вигляді упущеної вигоди,

Встановив:

Позивач Ісмаілов М.І. звернувся до Сквирського районного суду Київської області з вищевказаним позовом у якому просить стягнути на його користь солідарно з Гуцерієва Михайла Сафарбековича, Кузнецова Станіслава Костянтиновича та Публічного акціонерного товариства «Сбербанк росії» збитки у формі упущеної вигоди у розмірі 30 000 000 (тридцять мільйонів) доларів США, а також судові витрати

02.03.2023 року ухвалою Сквирського районного суду Київської області відкрито провадження у справі (том 1 а. с. 134).

Ухвалою Сквирського районного суду Київської області від 21.04.2023 року до спільного розгляду з первісним позовом була прийнята позовна заява третьої особи, яка заявляє самостійні вимоги щодо предмета спору Білалова А.Г., у якій він просить стягнути на його користь солідарно з Гуцерієва Михайла Сафарбековича, Кузнецова Станіслава Костянтиновича та Публічного акціонерного товариства «Сбербанк росії» збитки у формі упущеної вигоди 170 000 000 (сто сімдесят мільйонів) доларів США та судові витрати (том 1 а. с. 145,146).

Позивач Ісмаілов Мусаіб Ісмаілович свою позицію обгрунтував тим, що 17.04.2009 року на території Британських Віргінських Островів засновано та зареєстровано компанію «Зіланд Девелопмент Корп.» (англ. Zeeland Development Corp., далі – компанія Зіланд). У той же день директором компанії Зіланд призначено Тоомаса Трууверта, а засновником та бенефіціарним власником компанії Зіланд був Драган Перович. У період з вересня 2009 року до березня 2012 року здійснювалася поетапна емісія акцій ВАТ «Красная поляна». У вищезазначений період компанія Зіланд набула у власність 817 акцій відкритого акціонерного товариства «Красная поляна». Відкрите акціонерне товариство «Красная поляна» володіло земельною ділянкою біля м. Сочі, на якій було заплановано будівництво гірсько-лижного курорту та готельно-розважального

комплексу для його використання у зимових олімпійських іграх 2014 року.

09.03.2013 року між Ісмаіловим М.І. та Білаловим А.Г. укладено Угоду за якою Ісмаілов М.І. набував повноважень Довірчого управителя Компанії Зіланд, а також активів, які перебувають у власності Компанії Зіланд. Положеннями п.3.3 Угоди від 09.03.2013 року було погоджено, що за володіння акціями Компанії Зіланд та або успішного відчуження активів, які перебувають у власності Компанії Зіланд, Ісмаілов М.І. отримує 15% від вартості продажу акцій ВАТ «Красная поляна». Дана домовленість також підтверджується афідевітом від 04.07.2022.

15.03.2013 року на підставі Угоди про передання акцій Драган Перович передав у власність Ісмаілова М.І. компанію Зіланд. Водночас у власність Ісмаілова М.І. перейшли також активи компанії Зіланд у вигляді 817 акцій ВАТ «Красная поляна». Будучи номінальним бенефіціарним власником компанії Зіланд, його приватний інтерес охоплював отримання прибутку від відчуження акції, вартість яких станом на 2013 рік значно виросла.

У той же день 15.03.2013 року, переслідуючи комерційний, приватний інтерес отримання прибутку від суми продажу акцій ВАТ «Красная поляна», Ісмаіловим М.І. від імені компанії Зіланд укладено з Гуцерієвим М.С. та ВАТ «Сбербанк росії», від імені якого діяв Кузнецов С.К., за вказівкою та дорученням, Президента, Голови правління Грефа Г.О., угоду про продаж 23,736% акцій ВАТ «Красная поляна» в кількості 817 шт. на загальну суму 200 000 000 доларів США. Відповідно до умов угоди Гуцерієв М.С. купує дані акції в інтересах кредитора ВАТ «Сбербанк росії» з метою отримання підконтрольною Гуцерієву М.С. групою компаній «БИН» кредитної лінії в розмірі 15 000 000 000 доларів США від ВАТ «Сбербанк росії». За змістом п. п. 2 та 4 зазначеної Угоди Гуцерієв М.С. та підконтрольна йому група компаній «БИН» зобов'язувалась виплатити суму купівлі акцій протягом 30 (тридцяти) календарних днів з дня підписання Угоди, а Кредитор – ВАТ «Сбербанк росії» зобов'язувався відкрити відповідну кредитну лінію на користь групи компаній «БИН» протягом 10 (десяти) десяти календарних днів з момента передачі акцій, придбаних у компанії Зіланд у власність ВАТ «Сбербанк росії». Утім, після 15.03.2022 року Гуцерієв М.С. і Кузнецов С.К. перестали виходити на зв'язок.

У подальшому позивач за первісним позовом дізнався, що 11.03.2013 року директор компанії Зіланд Тоомас Трууверт в м. Талін надав нотаріальну довіреність на ім'я Білалова Магомеда Гаджиєвича (рідного брата Білалова А.Г.) з правом повного представництва компанії, фактично передав власні повноваження Білалову М.Г. У той же день нібито між Білаловим М.Г. та Гуцерієвим М.С. підписано Меморандум (угода про наміри) якою передбачено, що Білалов М.Г. від свого імені зобов'язується здійснити продаж 41,429% акцій ВАТ «Красная поляна» в кількості 1426 шт. (601 акція власності Білалова М.Г., 404 акції власності «Зіланд Девелопнет корп» та 421 акцію «Камбара Оверсаз С.А.») від свого імені та, діючи за дорученням зазначених компаній, за ціною 20 000 000 доларів США на користь офшорних компаній «Велен Фінанс ЛТД», «Товнфолк трейдінг інвестмент ЛТД» та «Ханберг фінанс ЛТД», які представляв Гуцерієв М.С. Також, у цьому Меморандумі в п. 3 визначено, що дана попередня угода кваліфікується як попередній договір купівлі-продажу вищезазначених акцій.

13.03.2013 року до вищевказаного Меморандуму укладено доповнення № 1, яким передбачено, що у випадку майбутнього продажу Покупцем акцій за ціною більшою ніж ціна купівлі, Продавцю буде виплачена різниця їх ринкової вартості. Орієнтовно різниця становила 80 000 000 доларів США. У той же день директором компанії Зіланд Тоомасом Труувертом та її власником Драганом Перовичем нотаріально підписано одноголосні письмові рішення на підтвердження довіреності від 11.03.2013 року виписаної Тоомасом Труувертом на ім'я Білалова М.Г., яке апостильовано 18.03.2013 нотаріусом Пілія І.О. у м. москва.

18.03.2013 року нібито за підписом Білалова М.Г. від імені компанії «Зіланд Девелопнет Корп» підписаний договір купівлі-продажу 404 акцій ВАТ «Красная поляна» на користь компанії «Товнфолк трейдінг інвестмент ЛТД». При цьому у договорі здійснено посилання на попередній договір купівлі-продажу акцій від 12.03.2013 року, який у дійсності датований 11.03.2013 року. У договорі відсутня норма відшкодування різниці у випадку майбутнього продажу акцій їх вигодонабувачем. Договір не підписувався та не візувався Гуцерієвим М.С.

Ознайомившись з вказаними документами, Ісмаіловим М.І. візуально встановлено, що підписи Білалова М.Г., який було відтворено на аркушах Договору купівлі-продажу акцій від

Сквирський районний суд
Київської області

18.03.2013 року та на Меморандумі від 11.03.2013 року, не відповідає його дійсному підпису.

Також Ісмаілову М.І. відомо від Білалова М.Г., що він не підписував жодних подібних документів, як і не отримував будь-якої довіреності від компанії Зіланд на вчинення будь-яких дій спрямованих на відчуження акцій ВАТ «Красная поляна» у кількості 817 акцій, облікованих за компанією Зіланд, так і своїх – 601 шт.

Використання відповідачами документів з підробленим підписом Білалова М.Г. підтверджується Висновком експерта від 19.12.2022 року № 62, складеного за результатами проведення почеркознавчої експертизи, якою констатовано, що підписи на вищезазначених документах виконанні не Білаловим М.Г., а іншою особою з наслідуванням підпису (підписам) Білалова М.Г.

У свою чергу, Гуцерієв М.С., у процесі реалізації Угоди від 15.03.2013 року (за підписом Ісмаілова М.І., Гуцерієва М.С. та Кузнецова С.К.), діючи за дорученням Кузнецова С.К. в інтересах ВАТ «Сбербанк росії» отримав у власність від компанії Зіланд 817 акцій ВАТ «Красная поляна», внаслідок використання завідомо підробних документів, переоформивши власність акцій на підконтрольну йому компанію, яка у подальшому передала їх ВАТ «Сбербанк росії». Будь-які грошові кошти ні Гуцерієвим М.С., ні підконтрольною йому групою компаній «БИН» на користь компанії Зіланд чи Білалова А.Г. сплачені не були, так само не відбувалося розрахунку в інший спосіб.

Предметом зобов'язання відповідно до Угоди від 15.03.2013 року була сплата Гуцерієвим М.С. та/або підконтрольними йому компаніями, які входили до групи компаній «БИН» грошових коштів за придбання акцій ВАТ «Красная поляна» у компанії Зіланд, у розмірі 200 000 000 доларів США.

Зобов'язання щодо виплати грошових коштів у розмірі 200 000 000 доларів США виникало як похідне від отримання ВАТ «Сбербанк росії» у власність належних Білалову А.Г. 817 акцій ВАТ «Красная поляна» за посередництва Гуцерієва М.С. та Кузнецова С.К., а також надання ВАТ «Сбербанк росії» підконтрольний Гуцерієву М.С. групі компаній «БИН» кредитної лінії у розмірі 15 000 000 000 доларів США та було обмежене строком у 30 днів з моменту підписання угоди від 15.03.2013.

Солідарні недобросовісні дії Гуцерієва М.С., Кузнецова С.К. та ВАТ «Сбербанк росії» щодо недотримання умов угод від 18.11.2011 року та від 15.03.2013 року та незаконне заволодіння ВАТ «Сбербанк Росії» акціями ВАТ «Красная поляна», які облікувалися за підконтрольною йому компанією Зіланд, за незаконного сприяння Гуцерієва М.С. та Кузнецова С.К., перешкодили йому задовольнити свій інтерес за виконання п.п. 1 та 2 Угоди від 15.03.2013, у вигляді отримання 85% від вартості продажу акцій ПАТ «Красная Поляна», що призвело до прямих збитків у формі упущеної вигоди у розмірі 30 000 000 доларів США.

Третя особа, яка заявляє самостійні вимоги щодо предмета спору, Білалов А.Г. обґрунтував свою позицію аналогічними обставинами, зазначивши, що солідарні недобросовісні дії Гуцерієва М.С., Кузнецова С.К. та ВАТ «Сбербанк росії» щодо недотримання умов угод від 18.11.2011 року та від 15.03.2013 року та незаконне заволодіння ВАТ «Сбербанк Росії» акціями ВАТ «Красная поляна», які облікувалися за підконтрольною йому компанією Зіланд, за незаконного сприяння Гуцерієва М.С. та Кузнецова С.К., перешкодили йому задовольнити свій інтерес за виконання п.п. 1 та 2 Угоди від 15.03.2013, у вигляді отримання 85% від вартості продажу акцій ПАТ «Красная Поляна», що призвело до прямих збитків у формі упущеної вигоди у розмірі 170 000 000 доларів США.

11.05.2023 року підготовче провадження закрито та справу призначено до судового розгляду по суті у відкритому судовому засіданні (ухвала суду том 2 а. с. 175,176).

Позивач Ісмаілов Мусаіб Ісмаілович в судове засідання не з'явився, його представник Куперук Максим Васильович в судовому засіданні позовні вимоги підтримав в повному обсязі, просив їх задовольнити та надав пояснення аналогічні викладеним в позові.

Третя особа, яка заявляє самостійні вимоги щодо предмета спору Білалов Ахмед Гаджиєвич в судове засідання не з'явився, його представник Соколовський Валерій Леонідович в судовому засіданні позовні вимоги третьої особи підтримав в повному обсязі, просив їх задовольнити та надав пояснення аналогічні викладеним в позові.

Відповідачі у судове засідання не з'явились, по час та місце розгляду справи повідомлені належним чином, шляхом направлення повідомлень про виклик на відомі суду адреси електронної пошти та шляхом розміщення оголошень на офіційному веб-сайті судової влади України (том том 1 а. с. 136,137, том. 2 а. с. 177 - 179). Відповідачі причин своє неявки суду не повідомили та представників до суду не направили, правом на відзив не скористались, будь – яких заяв та клопотань на адресу суду не надавали.

Відповідно до вимог ч. 1 ст. 223 ЦПК України неявка у судове засідання будь-якого учасника справи за умови, що його належним чином повідомлено про дату, час і місце цього засідання, не перешкоджає розгляду справи по суті, крім випадків, визначених цією статтею.

Суд вважає за необхідно розгляну справу на підставі вимог ст. 223 ЦПК України у відсутність відповідачів.

Суд, заслухавши пояснення представників позивача та третьої особи, яка заявляє самостійні вимоги щодо предмета спору, дослідивши матеріали справи, дійшов до наступного.

Згідно з вимогами ч. 1 ст. 2 ЦПК України завданням цивільного судочинства є справедливий, неупереджений та своєчасний розгляд і вирішення цивільних справ з метою ефективного захисту порушених, невизнаних або оспорюваних прав, свобод чи інтересів фізичних осіб, прав та інтересів юридичних осіб, інтересів держави.

Частиною 1 ст. 4 ЦПК України передбачено, що кожна особа має право в порядку, встановленому цим Кодексом, звернутися до суду за захистом своїх порушених, невизнаних або оспорюваних прав, свобод чи законних інтересів.

Відповідно до ст. 76 ЦПК України доказами є будь-які фактичні дані, на підставі яких суд встановлює наявність або відсутність обставин, що обґрунтовують вимоги і заперечення сторін, та інших обставин, які мають значення для вирішення справи.

Згідно з вимогами ст. 81 ЦПК України кожна сторона зобов'язана довести ті обставини на які вона посилається як на підставу своїх вимог та заперечень, крім випадків, встановлених ст. 82 ЦПК України.

Відповідно до вимог ч. 3 ст. 12 ЦПК України кожна сторона повинна довести обставини, які мають значення для справи і на які вона посилається як на підставу своїх вимог або заперечень, крім випадків, встановлених цим Кодексом.

Згідно з вимогами ч. 1 ст. 13 ЦПК України суд розглядає справи не інакше як за зверненням особи, поданим відповідно до цього Кодексу, в межах заявлених нею вимог і на підставі доказів, поданих учасниками справи або витребуваних судом у передбачених цим Кодексом випадках.

Судом встановлено, що 05.09.2001 року було створено Відкрите акціонерне товариство «Красная поляна» (п. 1.1. статті 1 Статуту в редакції від 16.07.2009 року) (том 2 а. с. 17).

Відповідно до п. 3.1.Статуту встановлено, що метою товариства є розробка і супроводження інвестиційного проекту створення і розвитку конкурентоздатного на міжнародному ринку спортивно-туристичних послуг вітчизняного гірськолижного, оздоровчого і курортного комплексу «Горная карусель», а також отримання прибутку шляхом насичення ринку товарами і послугами (том 2 а. с. 17).

Згідно з п. 7.1. Статуту визначено, що статутний капітал товариства визначає мінімальний розмір майна товариства, що гарантує інтереси його кредиторів, та складається з номінальної вартості розміщених акцій товариства, придбаних акціонерами (розміщення акцій). Всі акції товариства є іменними. Статутний капітал товариства розділений на 2007 (Дві тисячі сім) акцій (том 2 а. с. 21).

17.04.2009 року на території Британських Віргінських островів було засновано комерційну компанію «Зіланд Девелопмент Корп.». Директором призначено Тоомаса Трууверта, а засновником та бенефіціарним власником компанії Зіланд був Драган Перович (том а. с. 28 - 34).

18.11.2011 року, між Білаловим А.Г. та ВАТ «Сбербанк росії», від імені якого діяв Кузнецов С.К. було укладено договір, за умовами якого Білалов А.Г. та ВАТ «Сбербанк росії», маючи спільний комерційний інтерес, зобов'язувались залучати іноземний капітал та інвесторів до проекту ВАТ «Красная поляна» та на цьому підґрунті сприяти один одному у досягненні названих цілей. Компанія «Зіланд Девелопмент Корп.» набуває у власність 602 акції ВАТ «Красная поляна»

Сквирський районний суд
Київської області

(том 2 а. с. 46).

05.03.2012 року ВАТ «Красная поляна» на підставі рішення Ради директорів про додатковий випуск цінних паперів від 17.02.2012 № 112, прийнятого на основі рішення про збільшення статутного капіталу акціонерного товариства шляхом розміщення додаткових акцій, прийнятого на Позачергових загальних зборах акціонерів ВАТ «Красная поляна» від 06.02.2012 року, Протокол від 06.02.2012 № 53, здійснено додаткове розміщення акцій по закритій підписці у кількості 1 435 штук. Державний реєстраційний номер випуску 1-01-33085-E-006D (том 1 а. с. 94 - 104).

Після 05.03.2012 року статутний капітал ВАТ «Красная поляна» є таким, що розділений на 3 442 (Три тисячі чотириста сорок дві) акції.

Частину акцій ВАТ «Красная поляна» з нового випуску, а саме 215 штук придбав «Зіланд Девелопмент Корп.» на підставі договору купівлі продажу цінних паперів № 6 від 23.05.2012 (том 1 а.с. 115 - 118).

Як вбачається з доповідної записки головного бухгалтера ВАТ «Сбербанк росії» станом на 04.02.2013 року «Зіланд Девелопмент Корп.» володіє акціями ВАТ «Красная поляна» у кількості 817 штук, що становить 23,736 % статутного капіталу. В свою чергу банківська (консолідована) група Сбербанка росії, а саме ТОВ «Сбербанк Капітал», єдиним засновником та власником частки у розмірі 100 відсотків є ВАТ «Сбербанк росії» володіє акціями ВАТ «Красная поляна» у кількості 1 722 штуки, що становить 50,029 % статутного капіталу, що також підтверджується аудиторським висновком ЗАТ «Ернст енд Янг Внєшаудит» (том 1 а. с. 120 -126).

09.03.2013 року між Білаловим А.Г. та Ісмаіловим М.І. було укладено договір, з тексту якого вбачається, що він є договором про передачу в довірче управління акцій ВАТ «Красная поляна» в кількості 817 штук, які знаходяться на балансі «Зіланд Девелопмент Корп.» За вказаним договором Ісмаілов М.І. на підставі документа про передачу акцій зобов'язується прийняти у власність акції «Зіланд Девелопмент Корп.» від попереднього довірчого керуючого Драгана Перовича на умовах зазначених у цьому договорі (том 1 а. с. 54 - 58).

Довірчий керуючий зобов'язується володіти акціями Бенефіціара протягом 10 (десяти) років. Довірчий керуючий отримує 15 % від загальної кількості акцій ВАТ «Красная поляна» при виконанні умов Договору та/або 15 % вартості акції ВАТ «Красная поляна» в кількості 817 штук у разі продажу третім особам до закінчення строку дії цього Договору (пункт 3.3. Договору) (том 1 а. с. 56).

Договір від 09.03.2013 року та його умови повністю підтверджуються афідевітом, вчиненим Ісмаіловим М.І. 04.07.2022, справжність підпису на якому посвідчено Лапкевич Т.В., приватним нотаріусом Київського міського нотаріального округу, та зареєстрованого в реєстрі за № 989 (том 1 а. с. 24,25).

15.03.2013 року на підставі документа про передачу акцій Драган Перович передав у власність Ісмаілову М.І. «Зіланд Девелопмент Корп.», передавши йому 1 акцію, що було 100 % статутного капіталу. Водночас у власність Ісмаілова М.І. перейшли також активи компанії «Зіланд Девелопмент Корп.» у вигляді 817 акцій ВАТ «Красная поляна».

Також 15.03.2013року між «Зіланд Девелопмент Корп.», від імені якої діяв власник Ісмаілов М.І. (Продавець), Гуцерієвим М.С. (Покупець) та ВАТ «Сбербанк росії», від імені якого діяв Кузнецов С.К., на підставі довіреності від 10.11.2010 № 01-1/1025, вчиненої від імені ВАТ «Сбербанк росії», Президентом, Головою Правління Грефом Г.О. та посвідченої Любочкіною О.О., тимчасово виконуючим обов'язки нотаріуса міста москва Казанової О.Ю. (Кредитор), було укладено договір купівлі-продажу акцій ВАТ «Красная поляна» (том 1 а. с. 59).

Згідно з п. 1 договору від 15.03.2013 Продавець передає у власність Покупця 23,736 % акцій ВАТ «Красная поляна» в кількості 817 штук оціночною вартістю 189 800 000 (Сто вісімдесят дев'ять мільйонів вісімсот тисяч доларів США) (далі Акції) за ціною 200 000 000 (Двісті мільйонів доларів США).

Покупець зобов'язується сплатити Продавцю 200 000 000 (Двісті мільйонів доларів США) в рахунок придбання акцій, указаних в п. 1 цього Договору протягом 30-ти днів (п. 2 договору від 15.03.2013) (том 1 а. с. 59).

Відповідно до п. 3 договору від 15.03.2013 Покупець купує Акції за дорученням і в

інтересах Кредитора (ВАТ «Сбербанк росії») в рамках реалізації проекту надання кредитної лінії на користь підприємств Покупця – Групи компаній «БИН» (том 1 а. с. 59).

Вищевказаним договором, після передачі Покупцем Акцій Кредитору, придбаних за його дорученням і в його інтересах, Кредитор гарантує надання Групі компаній «БИН» кредитної лінії на загальну суму 15 000 000 000 (П'ятнадцять мільярдів доларів США) протягом 10 днів (п. 4 договору від 15.03.2013) (том 1 а. с. 59).

Також судом встановлено, що 11.03.2013 року директор «Зіланд Девелопнет Корп» Тоомас Трууверт в м. Талін надав нотаріальну довіреність на ім'я Білалова Магомеда Гаджиєвича (рідного брата Білалова А.Г.) з правом повного представництва компанії, фактично передав власні повноваження Білалову М.Г. При цьому в довіреності відсутній зразок підпису повіреної особи (том 1 а. с. 68,69).

У подальшому акції ВАТ «Красная поляна», в тому числі і 817 штук, які знаходилися на балансі «Зланд Девелопмент Корп.» були відчужені на підставі підробних документів на користь компаній, від імені та в інтересах яких діяв Гуцерієв М.С.

Так, 41,429% акцій ВАТ «Красная поляна» в кількості 1426 шт. (601 акція власності Білалова М.Г., 404 акції власності «Зіланд Девелопнет Корп.» та 421 акцію «Камбара Оверсаз С.А.», 413 з яких перейшли від «Зіланд Девелопмент Корп.») були відчужені на користь офшорних компаній «Велен Фінанс ЛТД», «Товнфолк трейдінг інвестмент ЛТД» та «Ханберг фінанс ЛТД», які представляв Гуцерієв М.С. на підставі підробних Меморандуму (угоди про наміри) від 11.03.2013, Доповнення № 1 від 13.03.2013 до Меморандуму (Договору про наміри) від 11.03.2013 та договору купівлі-продажу від 18.03.2013 (том 1 а. с. 70 - 76).

Факт підробки підписів зі сторони продавців на Меморандумі (угоді про наміри) від 11.03.2013, Доповненні № 1 від 13.03.2013 до Меморандуму (Договору про наміри) від 11.03.2013 та договорі купівлі-продажу від 18.03.2013 підтверджується Висновком експерта № 62 від 19.12.2022 року, наданого за результатами проведення почеркознавчої експертизи у рамках кримінального провадження № 12022100030002505 від 28.09.2022, потерпілім у якому визнаний позивач Ісмаілов М.І.(том 1 а. с. 78 - 88).

З матеріалів справи вбачається, що у кінцевому результаті в 2013 році акції ВАТ «Красная поляна» в кількості 817 штук, які знаходилися на балансі «Зіланд Девелопмент Корп.» перейшли у власність банківської (консолідованої) групи Сбербанку росії, а саме ТОВ «Сбербанк Капітал», єдиним засновником та власником частки у розмірі 100 відсотків, я кого є ВАТ «Сбербанк росії». Дане повністю підтверджується аудиторським висновком ЗАТ «Ернст енд Янг Внешаудит» від 24.03.2014, у якому зазначено, що ВАТ «Сбербанк росії» володіє 92,10 % акцій ВАТ «Красная поляна».

Пунктом 2 ч. 3 ст. 22 ЦК України встановлено, що збитками є доходи, які особа могла б реально одержати за звичайних обставин, якби її право не було порушене (упущена вигода).

Згідно з ч. ч. 1, 2 ст. 638 ЦК України договір вважається укладеним та таким, що породжує права та обов'язки у сторін договору у випадку якщо сторони досягли згоди з усіх істотних умов договору, зокрема щодо предмету договору, строку його виконання тощо.

Відповідно до ч. 4 ст. 263 ЦПК України визначено, що при виборі і застосуванні норми права до спірних правовідносин суд враховує висновки щодо застосування відповідних норм права, викладені в постановах Верховного Суду.

Верховний Суд у постанові від 30.03.2021 у справі № 908/2261/17 зробив висновок, що при визначенні розміру упущеної вигоди мають враховуватися відомості, які безспірно підтверджують реальну можливість отримання винагороди, якби зобов'язання було виконано боржником у належний спосіб. Дохід не може бути абстрактним, адже для відшкодування упущеної вигоди повинні враховуватися заходи, вжиті потерпілою особою для його отримання. Вимагаючи відшкодування збитків у вигляді упущеної вигоди, особа повинна довести, що за звичайних обставин вона мала реальні підстави розраховувати на одержання певного доходу.

Аналізуючи обставини зазначені у позовній заяві, пояснення представників позивача та третьої особи, яка заявляє самостійні вимоги щодо предмета спору, матеріали, які долучені до цивільної справи, суд доходить висновку, що позивач за звичайних обставин мав реальну можливість отримати дохід у розмірі, зазначеному в договорі від 15.03.2013, тобто у розмірі 15%

від 200 000 000 доларів США вказаної суми, а саме 30 000 000 доларів США, а Білалов А.Г. – 85% від зазначеної суми, тобто 170 000 000 доларів США.

З договору від 15.03.2013 року вбачається, що перехід права власності на акції ПАТ «Красная поляна» мав задовольнити інтереси всіх сторін, а саме Гуцерієв М.В., який діяв у інтересах ВАТ «Сбербанк Росії» та за дорученням його посадової особи – Кузнецова С.К., за сприяння останнього отримував від ВАТ «Сбербанк Росії» кредитну лінію на підконтрольні йому компанії у розмірі 15 000 000 000 доларів США (п. 4 договору від 15.03.2011), ВАТ «Сбербанк росії», через посередництво Гуцерієва М.С. отримував у власність від «Зіланд Девелопмент Корп.» 23,736% статутного капіталу ПАТ «Красная поляна» у кількості 817 штук, а «Зіланд Девелопмент Корп.» отримувало грошові кошти за передані акції у розмірі 200 000 000 доларів США (п. 2 договору від 15.03.2011), які у подальшому відповідно до договору від 09.03.2013 року мали бути розподілені між Ісмаіловим М.І. та Білаловим А.Г. по 15 % та 85 % відповідно.

Невиконання зобов'язань за договором від 15.03.2013 року в частині сплати грошових коштів у розмірі 200 000 000 доларів США на користь «Зіланд Девелопмент Корп.» та вчинення відповідачами дій, які призвели до незаконного переходу права власності на акції ПАТ «Красная поляна» в кількості 817 штук до ВАТ «Сбербанк росії» завдало Ісмаілову М.І. та Білалову А.Г. збитків у вигляді упущеної вигоди.

Відповідно до ст. 541 ЦК України встановлено, що солідарний обов'язок або солідарна вимога виникають у випадках, встановлених договором або законом, зокрема у разі неподільності предмета зобов'язання.

Згідно з ч. 1 ст. 1190 ЦК України особи, спільними діями або бездіяльністю яких було завдано шкоди, несуть солідарну відповідальність перед потерпілим.

Зважаючи, що збитки були завдані позивачеві та третій особі, яка заявляє самостійні вимоги щодо предмета спору, спільними та узгодженими діями відповідачів, то суд доходить висновку про необхідність солідарного стягнення упущеної вигоди з відповідачів на користь Ісмаілова М.І. та Білалова А.Г.

Водночас у ході судового розгляду в цивільній справі було встановлено, що після 2013 року Відкрите акціонерне товариство «Сбербанк росії» було перейменовано на Публічне акціонерне товариство «Сбербанк росії».

За таких обставин позовні вимоги слід задовольнити та стягнути солідарно з Гуцерієва М.С., Кузнецова С.К. та ПАТ «Сбербанк росії» на користь Ісмаілова М.І. збитки у формі упущеної вигоди у розмірі 30 000 000 доларів США, а на користь Білалова А.Г. збитки у формі упущеної вигоди у розмірі 170 000 000 доларів США.

Суд дійшов висновку про стягнення збитків в іноземній валюті без зазначення еквівалента суми збитків в національній валюті з огляду на наступне.

Статтею 99 Конституції України встановлено, що грошовою одиницею України є гривня.

При цьому Основний Закон не встановлює заборони щодо можливості використання в Україні грошових одиниць іноземних держав.

Відповідно до вимог ст. 192 ЦК України іноземна валюта може використовуватися в Україні у випадках і в порядку, встановлених законом.

Тобто відповідно до чинного законодавства гривня має статус універсального платіжного засобу, який без обмежень приймається на всій території України, однак обіг іноземної валюти обумовлений вимогами спеціального законодавства України.

Такі випадки передбачає статтею 193, частиною четвертою статті 524 ЦК України, Законом України від 16.04.1991 № 959-XII «Про зовнішньоекономічну діяльність», Декретом Кабінету Міністрів України від 19.02.1993 №15-93«Про систему валютного регулювання і валютного контролю» (далі Декрет № 15-93), Законом України від 23.09.1994 року № 185/94-ВР «Про порядок здійснення розрахунків в іноземній валюті).

Декретом № 15-93 (в редакції та який був чинний на час укладення договору) встановлено режим здійснення валютних операцій на території України, визначено загальні принципи валютного регулювання, повноваження державних органів і функції банків та інших фінансових установ України в регулюванні валютних операцій, права й обов'язки суб'єктів валютних відносин,

Сквирський районний суд
Київської області
*1027*7465981*1*1*

порядок здійснення валютного контролю, відповідальність за порушення валютного законодавства.

У статті 1 Декрету № 15-93 визначено, що терміни, які використовуються в цьому Декреті, мають таке значення:

«валютні цінності»:

валюта України – грошові знаки у вигляді банкнотів, казначейських білетів, монет і в інших формах, що перебувають в обігу та є законним платіжним засобом на території України, а також вилучені з обігу або такі, що вилучаються з нього, але підлягають обмінові на грошові знаки, які перебувають в обігу, кошти на рахунках, у внесках в банківських та інших фінансових установах на території України;

іноземна валюта – іноземні грошові знаки у вигляді банкнотів, казначейських білетів, монет, що перебувають в обігу та є законним платіжним засобом на території відповідної іноземної держави, а також вилучені з обігу або такі, що вилучаються з нього, але підлягають обмінові на грошові знаки, які перебувають в обігу, кошти у грошових одиницях іноземних держав і міжнароднихрозрахункових (клірингових) одиницях, що перебувають на рахунках або вносяться до банківських та інших фінансових установ за межами України.

Для цілей цього Декрету надалі під термінами: «валюта України» розуміється як власне валюта України, так і платіжні документи та інші цінні папери, виражені у валюті України;

«іноземна валюта»: розуміється як власне іноземна валюта, так і банківські метали, платіжні документи та інші цінні папери, виражені в іноземній валюті або банківських металах;

«валютні операції»: операції, пов'язані з переходом права власності на валютні цінності, за винятком операцій, що здійснюються між резидентами у валюті України;

«резиденти»: фізичні особи (громадяни України, іноземні громадяни, особи без громадянства), які мають постійне місце проживання на території України, у тому числі ті, що тимчасово перебувають за кордоном;

«нерезиденти»: фізичні особи (іноземні громадяни, громадяни України, особи без громадянства), які мають постійне місце проживання за межами України, в тому числі ті, що тимчасово перебувають на території України.

У статті 2 цього Декрету вказано, що резиденти і нерезиденти мають право бути власниками валютних цінностей, що знаходяться на території України. Резиденти мають право бути власниками також валютних цінностей, що знаходяться за межами України, крім випадків, передбачених законодавчими актами України.

Резиденти і нерезиденти мають право здійснювати валютні операції з урахуванням обмежень, встановлених цим Декретом та іншими актами валютного законодавства України.

У статті 5 Декрету № 15-93 визначено, що операції з валютними цінностями здійснюються на підставі генеральних та індивідуальних ліцензій НБУ.

У частині четвертій названої статті перераховано випадки, у разі яких індивідуальні ліцензії видаються резидентам і нерезидентам на здійснення разової валютної операції на період, необхідний для здійснення такої операції.

Індивідуальної ліцензії потребують такі операції: а) вивезення, переказування і пересилання за межі України валютних цінностей, за винятком:

вивезення, переказування і пересилання за межі України фізичними особами – резидентами іноземної валюти на суму, що визначається НБУ;

вивезення, переказування і пересилання за межі України фізичними особами – резидентами і нерезидентами іноземної валюти, яка була раніше ввезена ними в Україну на законних підставах;

платежів у іноземній валюті, що здійснюються резидентами за межі України на виконання зобов'язань у цій валюті перед нерезидентами щодо оплати продукції, послуг, робіт, прав інтелектуальної власності та інших майнових прав, за винятком оплати валютних цінностей та за договорами (страховими полісами, свідоцтвами, сертифікатами) страхування життя;

платежів у іноземній валюті за межі України у вигляді процентів за кредити, доходу (прибутку) від іноземних інвестицій;

вивезення за межі України іноземної інвестиції в іноземній валюті, раніше здійсненої на території України, в разі припинення інвестиційної діяльності;

платежів у іноземній валюті за межі України у вигляді плати за послуги з аеронавігаційного обслуговування повітряних суден, що справляється Європейською організацією з безпеки аеронавігації (Євроконтроль) відповідно до Багатосторонньої угоди про сплату маршрутних зборів, вчиненої в м. Брюсселі 12 лютого 1981 року, та інших міжнародних договорів;

переказ інвестором (представництвом іноземного інвестора на території України) за межі України іноземної валюти іншим інвесторам за відповідною угодою про розподіл продукції;

б) ввезення, переказування, пересилання в Україну валюти України, за винятком випадків, передбачених пунктом 2 статті 3 цього Декрету;

в) надання і одержання резидентами кредитів в іноземній валюті, якщо терміни і суми таких кредитів перевищують встановлені законодавством межі;

г) використання іноземної валюти на території України як засобу платежу або як застави, за винятком оплати в іноземній валюті за товари, роботи, послуги, а також оплати праці, на тимчасово окупованій території України;

д) розміщення валютних цінностей на рахунках і у вкладах за межами України, за винятком:

відкриття фізичними особами - резидентами рахунків у іноземній валюті на час їх перебування за кордоном;

відкриття кореспондентських рахунків уповноваженими банками;

відкриття рахунків у іноземній валюті резидентами, зазначеними в абзаці четвертому пункту 5 статті 1 цього Декрету;

відкриття рахунків у іноземній валюті інвесторами - учасниками угод про розподіл продукції, в тому числі представництвами іноземних інвесторів за угодами про розподіл продукції;

е) здійснення інвестицій за кордон, у тому числі шляхом придбання цінних паперів, за винятком цінних паперів або інших корпоративних прав, отриманих фізичними особами - резидентами як дарунок або у спадщину.

У частині четвертій статті 5 Декрету № 15-93 наведено вичерпний перелік обставин, за яких особа, яка здійснює валютну операцію, має отримати на її здійснення індивідуальну ліцензію. Декретом № 15-93 не передбачено обов'язку в отриманні індивідуальної ліцензії на передачу/ отримання між фізичними особами - резидентами/нерезидентами, які перебувають в Україні, іноземної валюти в позику.

Статтею 524 ЦК України визначено, що зобов'язання має бути виражене у грошовій одиниці України – гривні. Сторони можуть визначити грошовий еквівалент зобов'язання в іноземній валюті.

Статтею 533 ЦК України встановлено, що грошове зобов'язання має бути виконане у гривнях.

Якщо у зобов'язанні визначено грошовий еквівалент в іноземній валюті, сума, що підлягає сплаті у гривнях, визначається за офіційним курсом відповідної валюти на день платежу, якщо інший порядок її визначення не встановлений договором або законом чи іншим нормативно-правовим актом.

Заборони на виконання грошового зобов'язання у іноземній валюті, у якій воно зазначено у договорі, чинне законодавство не містить.

Із аналізу наведених правових норм можна зробити висновок, що гривня як національна валюта є єдиним законним платіжним засобом на території України. Сторони, якими можуть бути як резиденти, так і нерезиденти – фізичні особи, які перебувають на території України, у разі укладення цивільно-правових угод, які виконуються на території України, можуть визначити в грошовому зобов'язанні грошовий еквівалент в іноземній валюті.

При цьому відсутня заборона на укладення цивільних правочинів, предметом яких є іноземна валюта, крім використання іноземної валюти на території України як засобу платежу або як застави, за винятком оплати в іноземній валюті за товари, роботи, послуги, а також оплати праці, на тимчасово окупованій території України.

Тому як укладення, так і виконання договірних зобов'язань в іноземній валюті не суперечить чинному законодавству.

Така позиція повністю узгоджується з правовими висновками, викладеними у постановах Великої Палати Верховного Суду від 04.07.2018 у справі № 761/12665/14-ц, від 16.01.2019 у справах № 373/2054/16-ц та № 464/3790/16-ц.

Що стосується можливості і порядку визначення в рішенні суду еквівалента суми боргу в національній валюті, то Великою Палатою Верховного Суду у постанові від 04.07.2018 у справі № 761/12665/14-ц, вказано, що зазначення судом у своєму рішенні двох грошових сум, які необхідно стягнути з боржника, внесло двозначність до розуміння суті обов'язку боржника, який може бути виконаний примусово. У разі зазначення у судовому рішенні про стягнення суми коштів в іноземній валюті з визначенням еквівалента такої суми у гривні стягувачеві має бути перерахована вказана у резолютивній частині судового рішення сума в іноземній валюті, а не її еквівалент у гривні.

Вказана позиція також узгоджується з правовим висновком Великої Палати Верховного Суду, викладеним у постанові від 23.10.2019 у справі № 723/304/16-ц.

Суд відхиляє доводи представника третьої особи, яка заявляє самостійні вимоги щодо предмета спору, в частині необхідності застосування до спірних правовідносин розділу 5004 Цивільного процесуального кодексу штату Нью Йорк, а саме щодо нарахування 9 % річних на суму завданих збитків та не бере до уваги консультативний висновок від 05.05.2023 року, здійснений компанією Holwell Shuster&Goldberg LLP за підписом власника та керуючого партнера Hon. Richard J. Holwell, з огляду на наступне.

Відповідно до ч. 1 ст. 10 ЦК України, яка корелюється з ч. 1 ст. 9 Конституції України встановлено, що чинний міжнародний договір, який регулює цивільні відносини, згода на обов'язковість якого надана Верховною Радою України, є частиною національного цивільного законодавства України.

Частиною 1 ст. 3 ЦПК України визначено, що цивільне судочинство здійснюється відповідно до Конституції України, цього Кодексу, Закону України «Про міжнародне приватне право», законів України, що визначають особливості розгляду окремих категорій справ, а також міжнародних договорів, згода на обов'язковість яких надана Верховною Радою України.

Згідно з ч. 3 цієї ж статті встановлено, що провадження в цивільних справах здійснюється відповідно до законів, чинних на час вчинення окремих процесуальних дій, розгляду і вирішення справи.

Положеннями ч. 1 ст. 74 Закону України «Про міжнародне приватне право» визначено, що процесуальна правоздатність і дієздатність іноземних осіб в Україні визначаються відповідно до права України.

Отже, Цивільний процесуальний кодекс штату Нью Йорк не є міжнародним договором, згода на обов'язковість якого надана Верховною Радою України, а тому не є частиною національного цивільного законодавства України та водночас необхідність застосування до спірних правовідносин положень Цивільного процесуального кодексу штату Нью Йорк не випливає і з колізійних норм Закону України «Про міжнародне приватне право».

Відповідно до вимог ч. 1 ст. 141 ЦПК Українисудовий збір покладається на сторони пропорційно розміру задоволених позовних вимог.

З огляду на те, що суд дійшов висновку про необхідність задоволення позовів у повному обсязі, то в силу положень ст. 141 ЦПК України з відповідачів на користь позивача та третьої особи, яка заявляє самостійні вимоги щодо предмета спору, слід стягнути понесені ними судові витрати у вигляді сплати судових зборів за подання до суду позовних заяв майнового характеру у розмірі по 13 420 гривень на кожного, сплата якого підтверджується Квитанціями до платіжного доручення (том 1 а. с. 127 та том 2 а. с. 156)

На підставі викладеного та керуючись ст. ст. 9,99 Конституції України, ст. 74 Закону України «Про міжнародне приватне право», ст. ст. 10,22,192,193,524,533,541, 1190 ЦК України, ст. ст. 2,3,4,12,13,76,81,89,141,258, 259, 263-265,351,352,354 ЦПК України, суд

Вирішив:

Позов Ісмаїлова Мусайіба Ісмаїловича до Гуцерієва Михайла Сафарбековича, Кузнецова

Сквирський районний суд
Київської області

*1027*7465981*1*1*

Станіслава Костянтиновича, Публічного акціонерного товариства «Сбербанк росії», третя особа Білалов Ахмед Гаджийович, про стягнення упущеної вигоди та позов третьої особи, яка заявляє самостійні вимоги щодо предмета спору Білалова Ахмеда Гаджийовича до Гуцерієва Михайла Сафарбековича, Кузнецова Станіслава Костянтиновича, Публічного акціонерного товариства «Сбербанк росії», третя особа Ісмаілов Мусайіб Ісмаілович про стягнення збитків у вигляді упущеної вигоди – задовольнити в повному обсязі.

Стягнути солідарно з Гуцерієва Михайла Сафарбековича, Кузнецова Станіслава Костянтиновича, Публічного акціонерного товариства «Сбербанк росії» на користь Ісмаілова Мусайіба Ісмаіловича збитки у формі упущеної вигоди у розмірі 30 000 000 (Тридцять мільйонів) доларів США.

Стягнути з Гуцерієва Михайла Сафарбековича на користь Ісмаілова Мусайіба Ісмаіловича судовий збір у розмірі 4 473 (Чотири тисячі чотириста сімдесят три) гривні 33 копійки.

Стягнути з Кузнецова Станіслава Костянтиновича на користь Ісмаілова Мусайіба Ісмаіловича судовий збір у розмірі 4 473 (Чотири тисячі чотириста сімдесят три) гривні 33 копійки.

Стягнути з Публічного акціонерного товариства «Сбербанк росії» на користь Ісмаілова Мусайіба Ісмаіловича судовий збір у розмірі 4 473 (Чотири тисячі чотириста сімдесят три) гривні 34 копійки.

Стягнути солідарно з Гуцерієва Михайла Сафарбековича, Кузнецова Станіслава Костянтиновича, Публічного акціонерного товариства «Сбербанк росії» на користь Білалова Ахмеда Гаджийовича збитки у формі упущеної вигоди у розмірі 170 000 000 (Сто сімдесят мільйонів) доларів США.

Стягнути з Гуцерієва Михайла Сафарбековича на користь Ісмаілова Мусайіба Ісмаіловича судовий збір у розмірі 4 473 (Чотири тисячі чотириста сімдесят три) гривні 33 копійки.

Стягнути з Кузнецова Станіслава Костянтиновича на користь Ісмаілова Мусайіба Ісмаіловича судовий збір у розмірі 4 473 (Чотири тисячі чотириста сімдесят три) гривні 33 копійки.

Стягнути з Публічного акціонерного товариства «Сбербанк росії» на користь Ісмаілова Мусайіба Ісмаіловича судовий збір у розмірі 4 473 (Чотири тисячі чотириста сімдесят три) гривні 34 копійки.

З текстом рішення можливо ознайомитися за адресою: court.gov.ua.

Рішення суду набирає законної сили після закінчення строку подання апеляційної скарги всіма учасниками справи, якщо апеляційну скаргу не було подано.

У разі подання апеляційної скарги рішення, якщо його не скасовано, набирає законної сили після повернення апеляційної скарги, відмови у відкритті чи закриття апеляційного провадження або прийняття постанови суду апеляційної інстанції за наслідками апеляційного перегляду.

Рішення суду може бути оскаржене до Київського апеляційного суду через суд першої інстанції протягом 30 днів з дня його проголошення.

Якщо в судовому засіданні було оголошено лише вступну та резолютивну частини судового рішення або у разі розгляду справи (вирішення питання) без повідомлення (виклику) учасників справи, зазначений строк обчислюється з дня складення повного судового рішення.

Учасник справи, якому повне рішення або ухвала суду не були вручені у день його (її) проголошення або складення, має право на поновлення пропущеного строку на апеляційне оскарження на рішення суду – якщо апеляційна скарга подана протягом тридцяти днів з дня вручення йому повного рішення суду.

Строк на апеляційне оскарження може бути поновлений у разі пропуску з інших поважних причин, крім випадків, зазначених у частині другій статті 358 ЦПК України.

Реквізити сторін:

Позивач: Ісмаілов Мусайіб Ісмаілович, реєстраційний номер облікової картки платника податків: 2558221237, місце проживання за адресою: 09024, Київська обл., Білоцерківський р-н, с. Великі Єрчики, вул. Конопластого, 48.

Відповідач-1: Гуцерієв Михайло Сафарбекович, місце проживання за адресою: 11517, російська федерація, м. москва, котельнічна набережна, 33, буд. 1.

Відповідач-2: Кузнецов Станіслав Костянтинович, місце проживання за адресою: 117312, російська федерація, м. москва, вул. Вавілова, буд. 19.

Відповідач-3: Публічне акціонерне товариство «Сбербанк росії», код ОКПО: 00332537, місцезнаходження за адресою: 117312, російська федерація, м. москва, вул. Вавілова, буд. 19.

Третя особа, яка заявляє самостійні вимоги щодо предмета спору: Білалов Ахмед Гаджийович, місцезнаходження за адресою: Сполучені Штати Америки, м. Нью-Йорк, 200 E 61ST ST 36D NEW YORK, NY 10065 т.

Суддя:                                                                О.М. Коваленко

В.І. Гаращук



Виготовлено з автоматизованої системи документообігу суду

набрав законної сили
25.06.2023

Сквирський районний суд
Київської області





Всього в копії
____ арк.
Секретар с/з ____
Таранчук В.О.

**ДЛЯ НАДАННЯ ЗА ВИМОГОЮ**

**АФІДЕВІТ**

*Місто Київ, Україна*
*Другого серпня дві тисячі двадцять третього року.*

Я, **Соколовський Валерій Леонідович**, 13 жовтня 1987 року народження, реєстраційний номер облікової картки платника податків 3206214935, 484927, виданий Солом'янським РУ ГУ МВС України в м. Києві 17.03.2005 року, зареєстрований за адресою: Київська область, Обухівський район, місто Українка, проспект Дніпровський, будинок 3, квартира 6, перебуваючи при здоровому розумі, ясній пам'яті та діючи добровільно, розуміючи значення своїх дій, без будь-якого примусу як фізичного так і морального, повідомляю, що 25 травня 2023 року Сквирським районним судом Київської області ухвалено Рішення у справі № 376/560/23, провадження № 2/376/477/2023, за позовом Ісмаілова Мусайіба Ісмаіловича до Гуцерієва Михайла Сафарбековича, Кузнецова Станіслава Костянтиновича, Публічного акціонерного товариства «Сбербанк росії», третя особа яка заявляє самостійні вимоги щодо предмета спору Білалова Ахмеда Гаджийович про стягнення упущеної вигоди, за позовом третьої особи Білалова Ахмеда Гаджийовича до Гуцерієва Михайла Сафарбековича, Кузнецова Станіслава Костянтиновича, Публічного акціонерного товариства «Сбербанк росії», третя особа Ісмаілов Мусайіб Ісмаілович про стягнення збитків у формі упущеної вигоди.
На підтвердження фактів, викладених у цьому документі мною долучено до нього:
1) Рішення Сквирського районного суду Київської області від 25 травня 2023 року, справа № 376/560/23, провадження №2/376/477/2023.
На ці мої офіційні свідчення, за правильність яких я ручаюсь, можна посилатися завжди і всюди, де в цьому виникне необхідність і на підтвердження цього вищевказаного, я ставлю свій підпис.

ПІДПИС _____ *Соколовський В. Л.*

*Місто Київ, Україна, другого серпня дві тисячі двадцять третього року.*
Я, *Майдибура О.В.*, приватний нотаріус Київського міського нотаріального округу, засвідчую справжність підпису *Соколовського Валерія Леонідовича*, який зроблено у моїй присутності.
Особу *Соколовського Валерія Леонідовича*, який підписав документ, встановлено, його дієздатність перевірено.
На підтвердження фактів, викладених у документі *Соколовський Валерій Леонідович* долучив до нього:
1) Рішення Сквирського районного суду Київської області від 25 травня 2023 року, справа № 376/560/23, провадження №2/376/477/2023.

Зареєстровано в реєстрі за № 1785/4

**ПРИВАТНИЙ НОТАРІУС**






| Apostille | | |
|---|---|---|
| **Apostille**<br>**Апостиль**<br>**(Convention de La Haye du 5 octobre 1961**<br>**Гаазька Конвенція від 5 жовтня 1961 року)** | | |
| 1. Країна: | Україна | |
| Цей офіційний документ | | |
| 2. підписаний | Майдибура О.В. | |
| 3. у якості | приватного нотаріуса | |
| 4. містить проставлену печатку / штамп | приватного нотаріуса Київського міського нотаріального округу | |
| Підтверджено | | |
| 5. в | м. Києві | |
| | | 6. дата | 02.08.2023 |
| 7. ким | головним спеціалістом Міністерства юстиції України Аксьоновою Л.М. | |
| 8. за № | 3467303 | |
| 9. Печатка / штамп | | 10. Підпис |
| Проставлено електронно-цифровий підпис печатку Міністерства юстиції України | | |

Проставлено електронно-цифровий підпис (печатку) Міністерства юстиції України.
Проставлено електронно-цифровий підпис посадової особи Міністерства юстиції України та містить візуальне зображення зразка підпису цієї особи.

Для перевірки видачі апостилю, див. www.apostille.minjust.gov.ua

Electronically and digitally signed (stamped) by the Ministry of Justice of Ukraine.
Electronically and digitally signed by the official of the Ministry of Justice of Ukraine and accompanied by the image of his/her signature

To verify the issuance of this Apostille, see www.apostille.minjust.gov.ua

Signé (timbré) en version numérique et digitale par le Ministère de la Justice de l'Ukraine.
Signé en version numérique et digitale par le fonctionnaire du Ministère de la Justice de l'Ukraine et accompagné de l'image de sa signature

Cette Apostille peut être vérifiée à l'adresse suivante: www.apostille.minjust.gov.ua





*Stamp: COPY*



Skvyrskyi District Court of Kyiv Region

Case No. 376/560/23
Proceedings No. 2/376/477/2023

### DECISION
### IN THE NAME OF UKRAINE

**May 25, 2023.** Skvyrskyi District Court of Kyiv Region composed of:
O. M. Kovalenko, the Presiding judge,
with the participation of L. A. Shchur, the secretary,
M. V. Kucheruk, the representative of the plaintiff,
V. L. Sokolovskyi, the third party representative,
having considered in an open court hearing in Skvyra, Kyiv region, a civil case on the claim of Musaib Ismailovych Ismailov against Mykhailo Safarbekovych Hutseriev, Stanislav Kostiantynovych Kuznetsov, and Public Joint Stock Company "Sberbank of Russia", Akhmed Hadzhyiovych Bilalov, the third party, on the recovery of damages on the claim of a third party who files independent claims regarding the subject matter of the dispute between Akhmed Hadzhyiovych Bilalov and Mykhailo Safarbekovych Hutseriev, Stanislav Kostiantynovych Kuznetsov, and Public Joint Stock Company "Sberbank of Russia", Musaib Ismailovych Ismailov, the third party, on the recovery of damages.

Found that:

M. I. Ismailov, the plaintiff, appealed to the Skvyrskyi District Court of Kyiv Region with the above-mentioned claim, in which he asks to collect damages in the amount of USD 30,000,000 (thirty million) jointly and severally from Mykhailo Safarbekovych Hutseriev, Stanislav Stanislav Kostiantynovych Kuznetsov, and Public Joint Stock Company "Sberbank of Russia", as well as legal costs

On March 02, 2023, the Skvyrskyi District Court of Kyiv Region opened proceedings in the case (Volume 1, a. p. 134).

By the decision of the Skvyrskyi District Court of Kyiv Region, dated April 21, 2023, the claim of A. H. Bilalov, the third party who files independent claims regarding the subject matter of the dispute, was accepted for joint consideration with the original claim, in which he asks to collect in his favor jointly and severally from Mykhailo Safarbekovych Hutseriev, Stanislav Kostiantynovych Kuznetsov, and Public Joint Stock Company "Sberbank of Russia" damages in the amount of USD 170,000,000 (one hundred and seventy million) and legal costs (volume 1 a. p. 145, 146).

Musaib Ismailovych Ismailov, the plaintiff, justified his position by the fact that on April 17, 2009, Zeeland Development Corp. company was founded and registered in the territory of the British Virgin Islands (hereinafter referred to as "Zeeland Company"). On the same day, Toomas Truuwert was appointed the director of Zeeland Company, and Dragan Perovych was the founder and beneficial owner of Zeeland Company. From September 2009 to March 2012, the issue of shares of OJSC "Krasnaya Polyana" was carried out on a phased basis. Zeeland Company acquired 817 shares of the Open Joint-Stock Company "Krasnaya Polyana" during the period mentioned above. Open Joint-Stock Company "Krasnaya Polyana" owned a land plot near Sochi, on which the

*(Official seal: Ukraine * Skvyrskyi District Court of Kyiv Region * Identification code 02892221)*

Skvyrskyi District Court of Kyiv Region
Barcode
*1027*7465981*1*1*

construction of a mountain ski resort and a hotel and entertainment center to use it during the 2014 Winter Olympic Games.

On March 09, 2013, M. I. Ismailov and A. H. Bilalov concluded the Agreement according to which M. I. Ismailov acquired the powers of the Trustee of Zeeland Company, as well as the assets owned by the Zeeland Company. According to clause 3.3 of the Agreement, dated March 09, 2013, it was agreed that M. I. Ismailov shall receive 15 % of the sale price of shares of OJSC "Krasnaya Polyana" for the ownership of Zeeland Company shares and or the successful disposal of assets owned by Zeeland Company. This agreement is also confirmed by the affidavit, dated July 04, 2022.

On March 15, 2013, on the basis of the Share Transfer Agreement, Dragan Perovych transferred the ownership of Zeeland Company to M. I. Ismailov. At the same time, the assets of Zeeland Company in the form of 817 shares of OJSC "Krasnaya Polyana" were also transferred into the ownership of M. I. Ismailov. As the nominal beneficial owner of Zeeland Company, his private interest included the receipt of profit from the disposal of shares, the value of which had increased significantly as of 2013.

On the same day (March 15, 2013), pursuing a commercial, private interest in receiving profit from the sale of shares of OJSC "Krasnaya Polyana", M. I. Ismailov, on behalf of Zeeland Company, concluded with M. S. Hutseriev and OJSC "Sberbank of Russia", on behalf of which S. K. Kuznetsov acted, on the instructions and on behalf H. O. Href, the President, Chairman of the Board, an agreement on the sale of 23.736 % of 817 shares of OJSC "Krasnaya Polyana" for a total of USD 200,000,000. According to the terms and conditions of the agreement, M. S. Hutseriev shall buy these shares in the interests of the OJSC "Sberbank of Russia" (the creditor) for the purpose of obtaining loan facility in the amount of USD 15,000,000,000 from JSC "Sberbank of Russia" by BIN Group of Companies controlled by M. S. Hutseriev. According to the content of clauses 2 and 4 of the said Agreement M. S. Hutseriev and BIN Group of Companies controlled by him shall pay the shares purchase amount within 30 (thirty) calendar days from the date of Agreement, and OJSC "Sberbank of Russia", the Creditor, shall open a corresponding loan facility in favor of BIN Group of Companies within 10 (ten) calendar days from the moment of transferring shares purchased from Zeeland Company to the ownership of OJSC "Sberbank of Russia". However, after March 15, 2022, M. S. Hutseriev and S. K. Kuznetsov stopped communicating.

Subsequently, the plaintiff, in the initial claim, found out that on March 11, 2013, Toomas Truuvert, the director of Zeeland Company, in Tallinn, granted a notarized power of attorney in the name of Mahomed Hadzhyevych Bilalov (brother of A. H. Bilalov) with the right to fully represent the company, and, in fact, transferred his own powers to M. H. Bilalov. On the same day, allegedly, M. H. Bilalov and M. S. Hutseriev signed a Memorandum (agreement of intent), which stipulates that M. H. Bilalov shall sell 41.429 % of OJSC "Krasnaya Polyana" shares in the amount of 1426 shares (601 shares belonging to M. H. Bilalov, 404 shares belonging to Zeeland Development Corp. and 421 shares belonging to Kambara Oversaz S.A.) on his own behalf and on behalf of the specified companies at a price of USD 20,000,000 for the benefit of offshore companies "Velen Finance LTD", "Townfolk Trading Investment LTD" and "Hanberg Finance LTD" represented by M. S. Hutseriev. Also, in clause 3 of this Memorandum, it is determined that this preliminary agreement shall qualify as a preliminary agreement for the purchase and sale of the above-mentioned shares.

On March 13, 2013, Addendum No. 1 was concluded to the above-mentioned Memorandum, which stipulates that in the event of future sale of shares by the Buyer at a price higher than the purchase price, the difference in their market value shall be paid to the Seller. The difference amounted to USD 80,000,000. On the same day, Toomas Truuwert, the director of Zeeland Company, and Dragan Perovych, its owner, notarized unanimous written decisions to confirm the power of attorney, dated March 11, 2013, issued by Toomas Truuwert in the name of M. H. Bilalov, which was apostilled on March 18, 2013, by I. O. Pilia, the notary, in the city of Moscow.

(Official seal: Ukraine * Skvyrskyi District Court of Kyiv Region * Identification code 02892221)

Skvyrskyi District Court of Kyiv Region
Barcode
*1027*7465981*1*1*

On March 18, 2013, allegedly under the signature of M. H. Bilalov, on behalf of Zeeland Development Corp., a purchase and sale agreement to sell 404 shares of OJSC "Krasnaya Polyana" was signed in favor of Townfolk Trading Investment LTD company. At the same time, the agreement refers to the previous share purchase and sale agreement dated March 12, 2013, which is actually dated March 11, 2013. The agreement does not provide for the compensation of the difference in the event of the future sale of shares by their beneficiary. The agreement was not signed and was not endorsed by M. S. Hutseriev.

Having familiarized himself with the specified documents, M. I. Ismailov visually established that the signature of M. H. Bilalov, which was reproduced on the pages of the Share Purchase and Sale Agreement, dated March 18, 2013, and on the Memorandum, dated March 11, 2013, does not correspond to his valid signature.

M. I. Ismailov also learned from M. H. Bilalov that he did not sign any such documents, nor did he receive any power of attorney from Zeeland Company to take any actions aimed at alienating the shares of OJSC "Krasnaya Polyana" in the amount of 817 shares attributed to Zeeland Company and his shares (601 pcs.).

The defendants' use of documents with the forged signature of M. H. Bilalov is confirmed by Expert Opinion No. 62, dated December 19, 2022, drawn up based on the results of a handwriting examination, which established that the signatures on the above-mentioned documents were not executed by M. H. Bilalov, but by another person imitating the signature(-s) of M. H. Bilalov.

In turn, M. S. Hutseriev, in the process of implementing the Agreement, dated March 15, 2013 (signed by M. I. Ismailov, M. S. Hutseriev, and S. K. Kuznetsov), acting on behalf of S. K. Kuznetsov in the interests of OJSC "Sberbank of Russia" obtained ownership of 817 shares of OJSC "Krasnaya Polyana" from Zeeland Company as a result of the use of deliberately forged documents, transferring the ownership of the shares to the company controlled by him, which later transferred them to OJSC "Sberbank of Russia". Neither M. S. Hutseriev nor BIN Group of Companies controlled by him paid funds for the benefit of Zeeland Company or A. H. Bilalov, nor was there any other way of settlement.

The subject matter of the obligation according to the Agreement, dated March 15, 2013, was the payment of funds for the purchase of OJSC "Krasnaya Polyana" shares from Zeeland Company by M. S. Hutseriev and/or companies controlled by him, which were part of BIN Group of Companies, in the amount of USD 200,000,000.

The obligation to pay monetary funds in the amount of USD 200,000,000 arose as a result of the acquisition by OJSC "Sberbank of Russia" of 817 shares of OJSC "Krasnaya Polyana", the property belonging to A. H. Bilalov, through the mediation of M. S. Hutseriev and S. K. Kuznetsov, as well as provision of BIN Group of Companies, controlled by M. S. Hutseriev, with a loan facility in the amount of USD 15,000,000,000 by OJSC "Sberbank of Russia" and was limited to a period of 30 days from the moment of signing the agreement dated March 15, 2013.

Collective unscrupulous actions of M. S. Hutseriev, S. K. Kuznetsov, and OJSC "Sberbank of Russia" regarding non-compliance with the terms and conditions of the agreements, dated November 18, 2011, and March 15, 2013, and the illegal acquisition by OJSC "Sberbank of Russia" of OJSC "Krasnaya Polyana" shares attributed to Zeeland Company controlled by him, with the illegal assistance of M. S. Hutseriev and S. K. Kuznetsov, prevented him from satisfying his interest from the fulfillment of clause 1 and 2 of the Agreement dated March 15, 2013, in the form of receiving 85 % of the sale price of PJSC "Krasnaya Polyana" shares, which resulted in direct losses in the form of damages in the amount of USD 30,000,000.

A. H. Bilalov, the third party who files independent claims regarding the subject matter of the dispute, justified his position with similar circumstances, noting that collective unscrupulous actions of M. S. Hutseriev, S. K. Kuznetsov, and OJSC "Sberbank of Russia" regarding non-compliance with the terms and conditions of the agreements dated, November 18, 2011, and March 15, 2013, and the illegal acquisition by OJSC "Sberbank of Russia" of OJSC "Krasnaya Polyana" shares

*(Official seal: Ukraine \* Skvyrskyi District Court of Kyiv Region \* Identification code 02892221)*

*Skvyrskyi District Court of Kyiv Region Barcode*
*\*1027\*7465981\*1\*1\**

attributed to Zeeland Company controlled by him, with the illegal assistance of M. S. Hutseriev and S. K. Kuznetsov, prevented him from satisfying his interest from the fulfillment of clause 1 and 2 of the Agreement dated March 15, 2013, in the form of receiving 85 % of the sale price of OJSC "Krasnaya Polyana" shares, which resulted in direct losses in the form of damages in the amount of USD 170,000,000.

On May 11, 2023, the preparatory proceedings were closed and the case was scheduled for trial on the merits in an open court hearing (court decision, volume 2, a. p. 175, 176).

Musaib Ismailovych Ismailov, the plaintiff, did not appear at the hearing, Maksym Vasylovych Kucheruk, his representative, supported the claims in full at the court hearing, asked to satisfy them, and gave explanations similar to those stated in the claim.

Ahmed Hadzhyevych Bilalov, the third party who files independent claims regarding the subject matter of the dispute, did not appear at the hearing. Valeriy Leonidovych Sokolovskyi, his representative, fully supported the claims of the third party at the hearing, asked to satisfy them, and gave explanations similar to those stated in the claim.

The defendants did not appear at the court hearing, the time and place of the case hearing were properly notified by sending summons notices to e-mail addresses known to the court and by posting announcements on the official website of the judicial authorities of Ukraine (Volume 1 a. p. 136,137, Vol. 2 a. p. 177-179). The defendants failed to inform the court of the reasons for their non-appearance and failed to send representatives to the court, failed to use the right of appeal, and failed to submit any statements and petitions to the court.

According to the requirements of Part 1 of Art. 223 of the Civil Procedure Code of Ukraine, failure of any participant to appear at the court hearing, provided that he/she was duly notified of the date, time, and place of such a hearing, shall not prevent consideration of the case on its merits, except for the cases specified in this article.

The court considers it necessary to review the case based on the requirements of Art. 223 of the Civil Procedure Code of Ukraine in the absence of defendants.

The court, having listened to the explanations of the plaintiff's representatives and the third party who files independent claims regarding the subject matter of the dispute, after examining the case materials, came to the following.

According to the requirements of Part 1 of Art. 2 of the Civil Procedure Code of Ukraine, the task of the civil judiciary is the fair, impartial, and timely consideration and resolution of civil cases in order to efficiently protect the violated, unrecognized, or contested rights, freedoms or interests of individuals, the rights and interests of legal entities, and the interests of the state.

Part 1 of Art. 4 of the Civil Procedure Code of Ukraine stipulates that every person shall have the right, according to the procedure established by this Code, to apply to the court for the protection of his/her violated, unrecognized, or contested rights, freedoms, or legitimate interests.

According to Art. 76 of the Civil Procedure Code of Ukraine, evidence is any factual data, on the basis of which the court establishes the presence or absence of circumstances justifying the claims and objections of the parties and other circumstances important for the resolution of the case.

According to the requirements of Art. 81 of the Civil Procedure Code of Ukraine, each party shall prove the circumstances to which it refers as the basis of his/her claims and objections, except for the cases established by Art. 82 of the Civil Procedure Code of Ukraine.

According to the requirements of Part 3 of Art. 12 of the Civil Procedure Code of Ukraine, each party shall prove the circumstances relevant to the case and to which he/she refers as the basis of his/her claims or objections, except for the cases established by this Code.

According to the requirements of Part 1 of Art. 13 of the Civil Procedure Code of Ukraine, the court shall consider cases non otherwise than at the request of a person, submitted according to this Code within the limits of the requirements declared by him/her, and on the basis of evidence submitted by the participants in the case or demanded by the court in the cases provided for by this Code.

(Official seal: Ukraine * Skvyrskyi District Court of Kyiv Region * Identification code 02892221)

Skvyrskyi District Court of Kyiv Region
Barcode
*1027*7465981*1*1*

The court found that the Open Joint-Stock Company "Krasnaya Polyana" was established on September 05, 2001 (clause 1.1 of Article 1 of the Articles of Association as amended on July 16, 2009) (Volume 2, a. p. 17).

According to clause 3.1 of the Articles of Association, it is established that the purpose of the company is the development and support of an investment project for the creation and development of the competitive domestic ski, health, and resort "Mountain Carousel" Center in the international market of sports and tourism services, as well as obtaining profit by saturating the market with goods and services (volume 2 a. p. 17).

According to clause 7.1. of the Articles of Association, the authorized capital of the company determines the minimum size of the company's property, which guarantees the interests of its creditors and consists of the nominal value of the placed shares of the company purchased by shareholders (placement of shares). All company shares are registered shares. The authorized capital of the company is divided into 2,007 (two thousand and seven) shares (volume 2 a. p. 21).

On April 17, 2009, the commercial company "Zeeland Development Corp." was founded on the territory of the British Virgin Islands. Toomas Truuwert was appointed director, and Dragan Perovych was the founder and beneficial owner of Zeeland company (Vol. 1 a. p. 28-34).

On November 18, 2011, A. H. Bilalov and OJSC "Sberbank of Russia", on behalf of which S. K. Kuznetsov acted, concluded an agreement under the terms and conditions of which A. H. Bilalov and OJSC "Sberbank of Russia", having a common commercial interest, undertook to attract foreign capital and investors to OJSC "Krasnaya Polyana" project and, on this basis, to assist each other in achieving the stated goals. "Zeeland Development Corp." shall acquire ownership of 602 shares of OJSC "Krasnaya Polyana" (volume 2 a. p. 46).

On March 05, 2012, OJSC "Krasnaya Polyana" based on the decision of the Board of Directors on the additional issue of securities No. 112, dated February 17, 2012, adopted on the basis of the decision to increase the authorized capital of the open joint-stock company by placing additional shares, adopted at the Extraordinary General Meeting of Shareholders of OJSC "Krasnaya Polyana", dated February 06, 2012, Minutes No. 53, dated February 06, 2012, additional placement of 1,435 shares by closed subscription was carried out. State registration number of issue: 1-01-33085-E-006D (volume 1 a. p. 94-104).

After March 05, 2012, the authorized capital of OJSC Krasnaya Polyana was divided into 3,442 (three thousand four hundred and forty-two) shares.

Part of the shares of OJSC "Krasnaya Polyana" from the new issue, namely 215 shares, was purchased by "Zeeland Development Corp." on the basis of the agreement for the purchase and sale of securities No. 6, dated May 23, 2012 (Volume 1 a. p. 115-118).

As can be seen from the report note of the chief accountant of OJSC "Sberbank of Russia", as of February 04, 2013, "Zeeland Development Corp." owns 817 shares of OJSC Krasnaya Polyana, which is 23.736 % of the authorized capital. In turn, the banking (consolidated) Sberbank of Russia group, namely Sberbank Capital LLC, is the sole founder and owner of a 100 percent share of OJSC Sberbank of Russia, owns 1,722 shares of OJSC Krasnaya Polyana, which is 50,029% of the authorized capital, which is also confirmed by the audit opinion of CJSC "Ernst & Young Vneshaudit" dated March 18, 2013 (Volume 1 a. p. 120-126).

On March 09, 2013, A. H. Bilalov and M. I. Ismailov concluded an agreement, from the text of which it can be seen that it is an agreement on the transfer of 817 shares from the balance sheet of Zeeland Development Corp. to the trust management of OJSC "Krasnaya Polyana". According to the agreement, M. I. Ismailov on the basis of the shares transfer document shall take ownership of "Zeeland Development Corp." shares from Dragan Perovych, the previous trustee, under the terms and conditions specified in the agreement (Volume 1 a. p. 54-58).

The trustee shall own the Beneficiary's shares for 10 (ten) years. The trustee shall receive 15 % of the total number of shares of OJSC "Krasnaya Polyana" upon fulfillment of the terms and conditions of the Agreement and/or 15 % of the value of OJSC "Krasnaya Polyana" shares in the

amount of 817 shares in case of sale to third parties before the expiration of the Agreement (Clause 3.3 of the Agreement) (Volume 1 a. p. 56).

The agreement, dated March 09, 2013, and its terms and conditions are fully confirmed by an affidavit executed by M. I. Ismailov on July 07, 2022, the authenticity of the signature of which is certified by T. V. Lapkevych, a private notary of the Kyiv Municipal Notary District, and registered in the register under No. 989 (Volume 1 a. p. 24,25).

On March 15, 2013, on the basis of the shares transfer document, Dragan Perovych transferred the ownership of Zeeland Development Corp., to M. I. Ismailov by giving him 1 share, which was 100 % of the authorized capital. At the same time, the assets of the company "Zeeland Development Corp." were also transferred to the property of M. I. Ismailov in the form of 817 shares of OJSC "Krasnaya Polyana".

Also, on March 15, 2013, "Zeeland Development Corp.", on behalf of which the owner M. I. Ismailov acted (the Seller), M. S. Hutseriev (the Buyer) and OJSC "Sberbank of Russia", on whose behalf S. K. Kuznetsov acted, on the basis of the power of attorney No. 01-1/1025, dated November 10, 2010, executed on behalf of OJSC "Sberbank of Russia", by H. O. Href, the President, Chairman of the Board, and certified by O. O. Liubochkina, O. Yu. Kazanova, temporary acting notary of the city of Moscow (the Lender), concluded an agreement for the purchase and sale of OJSC "Krasnaya Polyana" shares (Volume 1 a. p. 59).

According to clause 1 of the agreement, dated March 15, 2013, the Seller shall transfer to the Buyer 23.736 % of the shares of OJSC "Krasnaya Polyana" in the amount of 817 shares with an estimated value of USD 189,800,000 (one hundred and eighty-nine million eight hundred thousand US dollars) (hereinafter referred to as the "Shares") at the price USD 200,000,000 (two hundred million US dollars).

The Buyer shall pay the Seller USD 200,000,000 (two hundred million US dollars) for the purchase of the shares specified in clause 1 of this Agreement within 30 days (clause 2 of the agreement dated March 15, 2013) (Volume 1 a. p. 59).

According to Clause 3 of the agreement dated March 15, 2013, the Buyer shall purchase the Shares on behalf of and in the interests of the Lender (JSC Sberbank of Russia) within the project of providing a loan facility for the benefit of the Buyer's enterprises BIN Group of Companies (Volume 1, a. p. 59).

According to the above agreement, after the Buyer transfers the Shares to the Lender, purchased on his behalf and in his interests, the Lender shall guarantee that he will provide the BIN Group of Companies with a loan facility amounting to USD 15,000,000,000 (fifteen billion US dollars) within 10 days (clause 4 of the agreement dated March 15, 2013) (Volume 1 a. p. 59).

The court also established that on March 11, 2013, Toomas Truuwert, the director of Zeeland Development Corp., in Tallinn, granted a notarized power of attorney in the name of Mahomed Hadzhyevych Bilalov (brother of A. H. Bilalov) with the right to fully represent the company, and, in fact, transferred his own powers to M. H. Bilalov. At the same time, the power of attorney lacks a sample signature of the authorized person (Volume 1 a. p. 68, 69).

Then, shares of OJSC "Krasnaya Polyana", including 817 shares, which were on the balance sheet of "Zeeland Development Corp.", were alienated on the basis of forged documents in favor of the companies on whose behalf and in whose interests M. S. Hutseriev acted.

In such a way, 41.429 % of the shares of OJSC "Krasnaya Polyana" in the number of 1,426 shares (601 shares owned by M. H. Bilalov, 404 shares owned by Zeeland Development Corp. and 421 shares of Kambara Oversaz S.A., 413 of which were transferred from Zeeland Development Corp.) were alienated in favor of offshore companies Velen Finance Ltd., Townfolk Trading Investment Ltd., and Hanberg Finance Ltd., represented by M. S. Hutseriev on the basis of the forged Memorandum (agreement of intent) dated March 11, 2013, Addendum No. 1, dated March 13, 2013, to the Memorandum (agreement of intent), dated March 11, 2013, and the sales agreement, dated March 18, 2013 (Volume 1 a. p. 70-76).

*(Official seal: Ukraine * Skvyrskyi District Court of Kyiv Region * Identification code 02892221)*

*Skvyrskyi District Court of Kyiv Region*
*Barcode*
*\*1027\*7465981\*1\*1\**

The fact that the sellers forged signatures on the Memorandum (agreement of intent), dated March 11, 2013, Addendum No.    1, dated March 13, 2013, to the Memorandum (agreement of intent), dated March 11, 2013, and the sales agreement dated March 18, 2013, is confirmed by Expert Opinion No. 62, dated December 19, 2022, issued based on the results of a handwriting examination as part of criminal proceedings No. 12022100030002505, dated September 28, 2022, in which the plaintiff M. I. Ismailov was recognized as the victim (Volume 1 a. p. 78-88).

It can be seen from the case materials that ultimately in 2013, 817 shares of OJSC "Krasnaya Polyana", which were on the balance sheet of Zeeland Development Corp., became the property of the banking (consolidated) group of Sberbank of Russia, namely Sberbank Capital LLC, the sole founder and owner of a 100 percent share of JSC Sberbank of Russia. This is fully confirmed by the audit opinion of CJSC "Ernst & Young Vneshaudit", dated March 24, 2014, which states that OJSC "Sberbank of Russia" owns 92.10 % of the shares of OJSC "Krasnaya Polyana".

Clause 2 of Part 3 of Art. 22 of the Civil Code of Ukraine establishes that damages are incomes that a person could have actually received under normal circumstances if his/her right had not been violated.

According to parts 1 and 2 of Art. 638 of the Civil Code of Ukraine, an agreement is considered concluded and shall create rights and obligations for the parties to the agreement if the parties have reached an agreement on all the essential terms and conditions of the agreement, in particular regarding the subject matter of the agreement, its term, etc.

According to Part 4 of Art. 263 of the Civil Procedure Code of Ukraine, when choosing and applying the rule of law to disputed legal relations, the court shall take into account the opinion regarding the application of the relevant rules of law set out in the Supreme Court's rulings.

The Supreme Court in its decision, dated March 30, 2021, in case No. 908/2261/17 concluded that when determining the number of damages, information shall be taken into account that indisputably confirms the real possibility of receiving a reward if the obligation is fulfilled by the debtor in a proper manner. The income cannot be of an abstract nature, since to compensate for damages, measures taken by the injured person to receive it shall be taken into account. Claiming damages, a person shall prove that under normal circumstances he/she had real reasons to expect to receive a certain income.

Analyzing the circumstances specified in the statement of claim, the explanation of the plaintiff's representatives and the third party who files independent claims regarding the subject matter of the dispute, and the materials attached to the civil case, the court comes to the conclusion that the plaintiff under normal circumstances had a real opportunity to receive income in the amount specified in the agreement dated March 15, 2013, i.e. in the amount of 15 % of USD 200,000,000, videlicet USD  30,000,000, and  A. H. Bilalov — 85 % of the specified amount, i.e. USD 170,000,000.

From the agreement, dated March 15, 2013, it is clear that the transfer of ownership of the OJSC "Krasnaya Polyana" shares from Zeeland Development Corp. had to satisfy the interests of all parties, namely M. V. Hutseriev, who acted in the interests of OJSC "Sberbank of Russia" and on behalf of S.K. Kuznetsov, its official, and, with the assistance of the latter, received from OJSC "Sberbank of Russia" loan facility for the companies under his control in the amount of USD 15,000,000,000 (clause 4 of the agreement, dated March 15, 2011). OJSC "Sberbank of Russia", through the mediation of M. S. Hutseriev, shall receive from "Zeeland Development Corp." ownership of 23.736 % of the authorized capital of OJSC "Krasnaya Polyana" in the amount of 817 shares, and Zeeland Development Corp. shall receive cash for the transferred shares in the amount of USD 200,000,000 (clause 2 of the agreement dated March 15, 2013), which were to be distributed between M. I. Ismailov and A. H. Bilalov (15 % and 85 %, respectively).

Non-fulfillment of obligations under the agreement, dated March 15, 2013, in terms of paying funds in the amount of USD 200,000,000 in favor of Zeeland Development Corp. and actions of the defendants that led to the illegal transfer of ownership rights to the shares of OJSC

(Official seal: Ukraine * Skvyrskyi District Court of Kyiv Region * Identification code 02892221)

Skvyrskyi District Court of Kyiv Region
Barcode
*1027*7465981*1*1*

"Krasnaya Polyana" in the amount of 817 shares from Zeeland Development Corp. to OJSC "Sberbank of Russia" caused M. I. Ismailov and A. H. Bilalov damages.

According to Art. 541 of the Civil Code of Ukraine, joint obligation or joint claim arises in cases established by an agreement or law, in particular in the case of indivisibility of the subject matter of the obligation.

According to Part 1 of Art. 1190 of the Civil Code of Ukraine, persons whose joint actions or inaction caused damages shall bear joint and several liability towards the victim.

Considering that the damages were caused to the plaintiff and the third party who files independent claims regarding the subject matter of the dispute, by joint and coordinated actions of the defendants, the court comes to the conclusion that it is necessary to jointly collect damages from the defendants in favor of M. I. Ismailov and A. H. Bilalov.

At the same time, during the court proceedings in the civil case, it was established that after 2013 Open Joint-Stock Company "Sberbank of Russia" was renamed to the Public Joint Stock Company "Sberbank of Russia".

Under such circumstances, the claims should be satisfied and damages in the amount of USD 30,000,000 in favor of M. I. Ismailov, and damages in the amount of USD 170,000,000 in favor of A.H. Bilalov shall be collected jointly from M. S. Hutseriev, S. K. Kuznetsov, and PJSC "Sberbank of Russia".

The court came to the conclusion on the recovery of damages in foreign currency without indicating the equivalent of the amount of damages in national currency in view of the following.

Article 99 of the Constitution of Ukraine establishes that hryvnia is the monetary unit of Ukraine.

At the same time, the Basic Law does not prohibit the use of foreign currencies in Ukraine.

According to the requirements of Art. 192 of the Civil Code of Ukraine, foreign currency can be used in Ukraine in the cases and according to the procedure established by the law.

That is, according to the current legislation, hryvnia has the status of a universal means of payment, which shall be accepted without restrictions throughout the territory of Ukraine, but the circulation of foreign currency is conditioned by the requirements of special Ukrainian legislation.

Such cases are provided for by Article 193, part four of Article 524 of the Civil Code of Ukraine, the Law of Ukraine No. 959-КИ, dated April 16, 1991, "On Foreign Economic Activity", the Decree of the Cabinet of Ministers of Ukraine No. 15-93, dated February 19, 1993, "On the System of Currency Regulation and Currency Control" (hereinafter referred to as the Decree No. 15-93), and the Law of Ukraine No. 185/94-ВР, dated September 23, 1994, "On the Procedure for Making Settlements in Foreign Currency".

Decree No. 15-93 (as amended and in effect at the time of the conclusion of the agreement) establishes the procedure for currency transactions in the territory of Ukraine, defines the general principles of currency regulation, the powers of state bodies, and the functions of banks and other financial institutions of Ukraine in the regulation of currency transactions, the rights and responsibilities of the subjects of currency relations, procedure for currency control, responsibility for violation of currency legislation.

Article 1 of Decree No. 15-93 defines that the terms used in this Decree have the following meanings:

"currency values":

currency of Ukraine: monetary tokens in the form of banknotes, treasury bills, coins, and in other forms, which are in circulation and are legal payment instruments in the territory of Ukraine, as well as withdrawn from circulation or those being withdrawn from it, but subject to exchange for monetary tokens, which are in circulation, funds in accounts, deposited in banking and other financial institutions in the territory of Ukraine;

foreign currency: foreign monetary tokens in the form of banknotes, treasury bills, or coins, which are in circulation and are legal payment instruments in the territory of the relevant foreign state, as well as withdrawn from circulation or those being withdrawn from circulation, but subject to

*(Official seal: Ukraine * Skvyrskyi District Court of Kyiv Region * Identification code 02892221)*

*Skvyrskyi District Court of Kyiv Region*
*Barcode*
*\*1027\*7465981\*1\*1\**

exchange for monetary tokens that are in circulation, funds in foreign currency units and international settlement (clearing) units that are in accounts or deposited in banking and other financial institutions outside of Ukraine.

For the purposes of this Decree, the terms: "currency of Ukraine" shall be understood as the actual currency of Ukraine, as well as payment documents and other securities denominated in the currency of Ukraine;

"foreign currency" shall mean both foreign currency itself and bank metals, payment documents and other securities denominated in foreign currency or bank metals;

"currency transactions": transactions related to the transfer of ownership of currency values, except for transactions carried out between residents in the currency of Ukraine;

"residents": natural persons (citizens of Ukraine, foreign citizens, stateless persons) having a permanent place of residence in the territory of Ukraine, including those who are temporarily abroad;

"non-residents": natural persons (foreign citizens, citizens of Ukraine, stateless persons) who have a permanent place of residence outside Ukraine, including those who are temporarily in the territory of Ukraine.

Article 2 of this Decree states that residents and non-residents shall have the right to be the owners of currency values located in the territory of Ukraine. Residents also shall have the right to be the owners of currency values located outside of Ukraine, except for cases provided for by legislative instruments of Ukraine.

Residents and non-residents shall have the right to carry out foreign exchange transactions, taking into account the restrictions established by this Decree and other instruments of currency legislation of Ukraine.

Article 5 of Decree No. 15-93 stipulates that operations with currency values shall be carried out on the basis of general and individual licenses of the NBU.

The fourth part of the aforementioned article lists cases in which individual licenses shall be issued to the residents and non-residents for a one-time foreign exchange transaction during the period necessary for such transaction.

The following transactions require an individual license: a) export, transfer, and forwarding outside Ukraine of currency values, except for export, transfer, and forwarding outside Ukraine by natural persons-residents of foreign currency for an amount determined by the NBU; export, transfer and forwarding outside of Ukraine by natural persons-residents and non-residents of foreign currency, which they previously imported into Ukraine on legal grounds;

payments in foreign currency made by residents outside Ukraine to fulfill obligations in this currency towards non-residents regarding payment for products, services, works, intellectual property rights, and other proprietary rights, except for payments for currency values and under agreements (insurance policies, certificates) life insurance;

payments in foreign currency outside Ukraine in the form of interest on loans, income (profit) from foreign investments;

export outside Ukraine of foreign investment in foreign currency, previously made in the territory of Ukraine in case of termination of investment activity; payments in foreign currency outside of Ukraine in the form of fees for aircraft air navigation services, which are handled by the European Organization for the Safety of Air Navigation (Eurocontrol) according to the Multilateral Agreement on the Payment of Route Fees concluded in Brussels on February 12, 1981, and other international agreements; transfer by an investor (representative of a foreign investor in the territory of Ukraine) outside of Ukraine of foreign currency to other investors under the relevant agreement on product distribution;

b)    import, transfer, forwarding to Ukraine of the currency of Ukraine, except for cases provided for in Clause 2 of Article 3 of this Decree;

c)    providing and receiving loans in foreign currency by residents, if the terms and amounts of such loans exceed the limits established by law;

*(Official seal: Ukraine * Skvyrskyi District Court of Kyiv Region * Identification code 02892221)*    *Skvyrskyi District Court of Kyiv Region*
*Barcode*
*\*1027\*7465981\*1\*1\**

d)      the use of foreign currency in the territory of Ukraine as a means of payment or as collateral, except for payment in foreign currency for goods, works, services, as well as wages in the temporarily occupied territory of Ukraine;

e)      placement of currency values in accounts and deposits outside of Ukraine, except for:
opening of foreign currency accounts by natural persons-residents during their stay abroad;
opening of correspondent accounts by the authorized banks;
opening of accounts in foreign currency by residents specified in the fourth paragraph of Clause 5 of Article 1 of this Decree;
opening of accounts in foreign currency by investors-participants of products distribution agreements, including representative offices of foreign investors under products distribution agreements;

e)      making investments abroad, including through the purchase of securities, except for securities or other corporate rights received by natural persons-residents as a gift or as an inheritance.

The fourth part of Article 5 of Decree No. 15-93 provides an exhaustive list of circumstances under which a person conducting a foreign exchange transaction shall obtain an individual license. Decree No. 15-93 does not provide for the obligation to obtain an individual license for the transfer/receipt of foreign currency as a loan between natural persons-residents/non-residents staying in Ukraine.

Article 524 of the Civil Code of Ukraine specifies that the obligation shall be expressed in the monetary unit of Ukraine (hryvnia). The parties can determine the monetary equivalent of the obligation in a foreign currency.

Article 533 of the Civil Code of Ukraine establishes that the monetary obligation shall be fulfilled in hryvnias.

If the obligation specifies a monetary equivalent in a foreign currency, the amount to be paid in hryvnias shall be determined at the official exchange rate of the corresponding currency on the day of payment, unless another procedure for its determination is established by the agreement or law or other laws and regulations.

Current legislation does not prohibit the performance of a monetary obligation in the foreign currency in which it is specified in the agreement.

From the analysis of the above legal rules, it can be concluded that hryvnia as the national currency is the only legal means of payment in the territory of Ukraine. The parties, who can be both residents and non-residents-natural persons staying in the territory of Ukraine, in the case of concluding civil law agreements that are performed in the territory of Ukraine, can determine the monetary equivalent in a foreign currency in the monetary obligation.

At the same time, there is no prohibition on the conclusion of civil transactions, the subject matter of which is foreign currency, except for the use of foreign currency in the territory of Ukraine as a means of payment or as collateral, except for payment in foreign currency for goods, works, services, as well as payment for labour in the temporarily occupied territories of Ukraine.

Therefore, both the conclusion and performance of contractual obligations in foreign currency do not contradict the current legislation.

This position is entirely consistent with the legal conclusions set forth in the decisions of the Grand Chamber of the Supreme Court dated July 04, 2018, in case No.    761/12665/14-ц,      dated January 16, 2019, in cases No.        373/2054/16-ц and No. 464/3790/16-ц.

As for the possibility and procedure of determining in the court decision the equivalent of the amount of the debt in national currency, the Grand Chamber of the Supreme Court, in the decision, dated July 04, 2018, in case No. 761/12665/14-ц indicated that the designation by the court in its decision of two monetary amounts, which shall be collected from the debtor, brought ambiguity to the understanding of the essence of the debtor's obligation, which can be enforced. In the event that the court decision specifies the amount of funds in foreign currency with the determination of the equivalent of such amount in hryvnia, the plaintiff shall be transferred the

*(Official seal: Ukraine * Skvyrskyi District Court of Kyiv Region * Identification code 02892221)*

*Skvyrskyi District Court of Kyiv Region*
*Barcode*
*\*1027\*7465981\*1\*1\**

amount in foreign currency specified in the operative part of the court judgement, and not in its equivalent in hryvnia.

This position is also consistent with the legal opinion of the Grand Chamber of the Supreme Court set out in the resolution, dated October 23, 2019, in case No. 723/304/16-ц.

The court rejects the arguments of the representative of the third party, who files independent claims regarding the subject matter of the dispute, in terms of the need to apply to disputed legal relations Section 5004 of the Code of Civil Procedure of the State of New York, videlicet with regard to the calculation of 9 % per annum on the amount of damages, and does not take into account the advisory opinion, dated May 05, 2023, executed by the company Holwell Shuster&Goldberg LLP under the signature of the owner and managing partner Hon. Richard J. Holwell, in view of the following.

According to Part 1 of Art. 10 of the Civil Code of Ukraine, which correlates with Part 1 of Art. 9 of the Constitution of Ukraine, it is established that the current international agreement regulating civil relations, the consent regarding the binding nature of which was given by the Verkhovna Rada of Ukraine, is part of the national civil legislation of Ukraine.

Part 1 of Art. 3 of the Civil Procedure Code of Ukraine defines that civil proceedings shall be carried out according to the Constitution of Ukraine, this Code, the Law of Ukraine "On International Private Law", laws of Ukraine that determine the peculiarities of consideration of certain categories of cases, as well as international treaties, the consent regarding the binding nature of which was given by Verkhovna Rada of Ukraine.

According to Part 3 of the same article, it is established that proceedings in civil cases shall be carried out according to the laws in force at the time of individual procedural actions, consideration and resolution of the case.

The provisions of Part 1 of Art. 74 of the Law of Ukraine "On Private International Law" defines that the procedural legal capacity and legal capacity of foreign persons in Ukraine shall be determined according to the law of Ukraine.

Therefore, the Civil Procedure Code of the State of New York is not an international treaty, the consent regarding the binding nature of which was given by the Verkhovna Rada of Ukraine, and therefore it is not part of the national civil legislation of Ukraine, and at the same time, the need to apply the provisions of the Civil Procedure Code of the State of New York to disputed legal relations does not result from the conflict of laws rules of the Law of Ukraine "On International Private Law".

According to the requirements of Part 1 of Art. 141 of the Civil Procedure Code of Ukraine, the court shall charge the parties with the court fee in proportion to the amount of the satisfied claims.

In view of the fact that the court came to the conclusion about the need to satisfy the claims in full, by virtue of the provisions of Art. 141 of the Civil Code of Ukraine, the defendants shall pay in favor of the plaintiff and the third party, who files independent claims regarding the subject matter of the dispute, the court fees incurred by them in the form of paying legal fees for submitting claims of a property nature to the court in the amount of 13,420 hryvnias for each, the payment of which shall be confirmed by the payment receipts (Volume 1 a. p. 127 and Volume 2 a. p. 156)

On the basis of the above and guided by Art. Art. 9 and 99 of the Constitution of Ukraine, Art. 74 of the Law of Ukraine "On International Private Law", Art. Art. 10, 22, 192, 193, 524, 533, 541, and 1190 of the Civil Code of Ukraine, Art. Art. 2, 3, 4, 12, 13, 76, 81, 89, 141, 258, 259, 263-265, 351, 352, and 354 of the Civil Procedure Code of Ukraine, the court

Held:

To satisfy in full the claim of Musaib Ismailovych Ismailov against Mykhailo Safarbekovych Hutseriev, Stanislav Kostiantynovych Kuznetsov, and Public Joint Stock Company "Sberbank of Russia", Akhmed Hadzhyiovych Bilalov, the third party, on the recovery of damages,

*(Official seal: Ukraine * Skvyrskyi District Court of Kyiv Region * Identification code 02892221)*

Skvyrskyi District Court of Kyiv Region
Barcode
*1027*7465981*1*1*

on the claim of a third party, who files independent claims regarding the subject matter of the dispute between Akhmed Hadzhyiovych Bilalov and Mykhailo Safarbekovych Hutseriev, Stanislav Kostiantynovych Kuznetsov, and Public Joint Stock Company "Sberbank of Russia", Musaib Ismailovych Ismailov, the third party, on the recovery of damages.

To collect damages in the amount of USD 30,000,000 (thirty million) jointly and severally from Mykhailo Safarbekovych Hutseriev, Stanislav Kostiantynovych Kuznetsov, and Public Joint Stock Company "Sberbank of Russia" in favor of Musaib Ismailovych Ismailov.

To collect a court fee in the amount of 4,473 (four thousand four hundred and seventy-three) hryvnias and 33 kopecks from Mykhailo Safarbekovych Hutseriev in favor of Musaib Ismailovych Ismailov.

To collect a court fee in the amount of 4,473 (four thousand four hundred and seventy-three) hryvnias and 33 kopecks from Stanislav Kostiantynovych Kuznetsov in favor of Musaib Ismailovych Ismailov.

To collect a court fee in the amount of 4,473 (four thousand four hundred and seventy-three) hryvnias and 34 kopecks from the Public Joint-Stock Company "Sberbank of Russia" in favor of Musaib Ismailovych Ismailov.

To collect damages in the amount of USD 170,000,000 (one hundred and seventy million) jointly and severally from Mykhailo Safarbekovych Hutseriev, Stanislav Kostiantynovych Kuznetsov, and Public Joint Stock Company "Sberbank of Russia" in favor of Akhmed Hadzhyiovych Bilalov.

To collect a court fee in the amount of 4,473 (four thousand four hundred and seventy-three) hryvnias and 33 kopecks from Mykhailo Safarbekovych Hutseriev in favor of Musaib Ismailovych Ismailov.

To collect a court fee in the amount of 4,473 (four thousand four hundred and seventy-three) hryvnias and 33 kopecks from Stanislav Kostiantynovych Kuznetsov in favor of Musaib Ismailovych Ismailov.

To collect a court fee in the amount of 4,473 (four thousand four hundred and seventy-three) hryvnias and 34 kopecks from the Public Joint-Stock Company "Sberbank of Russia" in favor of Musaib Ismailovych Ismailov.

The text of the decision can be read at: court.gov.ua.

The court decision shall take legal effect after the expiration of the term for filing an appeal by all participants in the case if the appeal was not filed.

In the case of filing an appeal, the court decision if it is not revoked, shall take effect after the return of the appeal, refusal to open or close the appeal proceedings, or the adoption of the decision of the court of appeal as a result of the appellate review.

The court's decision can be appealed in the Kyiv Court of Appeal through the court of first instance within 30 days from the day of its announcement.

If only the introductory and operative part of the court decision was read at the court hearing or in case of consideration of the case (resolution of the issue) without notification (summons) of the parties, the specified term shall be calculated from the date of the full court decision.

A party to the case who was not served with a full court decision or ruling on the day of its announcing or drafting shall have the right to renew the time frame for an appeal against the court decision if the appeal is filed within thirty days from the date of delivery of the full court decision.

The term for appeal may be renewed in case of omission for other valid reasons, except for the cases specified in the second part of Article 358 of the Civil Procedure Code of Ukraine.

Details of the parties:

Plaintiff: Musaib Ismailovych Ismailov, TIN: 2558221257, residing at the address: 09024, Kyiv region, Bila Tserkva district, Velyki Erchyky village, 48 Konopliastoho Str.

*(Official seal: Ukraine * Skvyrskyi District Court of Kyiv Region * Identification code 02892221)*

*Skvyrskyi District Court of Kyiv Region*
*Barcode*
*\*1027\*7465981\*1\*1\**

Defendant-1: Mykhailo Safarbekovych Hutseriev, residing at the address: 11517, Russian Federation, Moscow, 33 Kotelnichna naberezhna, bldg. 1.

Defendant-2: Kuznetsov Stanislav Kostiantynovych, residing at the address: 117312, Russian Federation, Moscow, 19 Vavilova Str.

Defendant-3: Public Joint-Stock Company "Sberbank of Russia", OKPO code (Russian National Nomenclature of Businesses and Organizations): 00332537, address: 117312, Russian Federation, Moscow, 19 Vavilova Str.

The third party who files independent claims regarding the subject of the dispute: Bilalov Akhmed Hadzhyiovych, residing at the address: United States of America, New York, 200 E 61ST ST 36D NEW YORK, NY 10065 t.

| | | |
|---|---|---|
| Judge: | *(signed)* | O. M. Kovalenko |
| *Secretary* | *(signed)* | *V. O. Taranchuk* |

*(Official seal: Ukraine * Skvyrskyi District Court of Kyiv Region * Identification code 02892221)*

*Stamp: Produced from the automated court document management system*    *Stamp: in force from June 25, 2023*    *Skvyrskyi District Court of Kyiv Region Barcode*
*\*1027\*7465981\*1\*1\**

*Stamp: The copy contains a total of 12 sheets.*
*Secretary        (signed)*
*V. O. Taranchuk*

*(Official seal: Ukraine * Skvyrskyi District*
*Court of Kyiv Region * Identification code 02892221)*

*(Coat of arms of Ukraine)*
UKRAINE

**TO WHOM IT MAY CONCERN**

**AFFIDAVIT**

*Kyiv, Ukraine*
*August second, two thousand twenty-three.*

I, **Valeriy Leonidovych Sokolovskyi**, born on October 13, 1987, registration number of taxpayer's record card 3206214935, passport ME 484927, issued by the Solomianskyi District Department of the Main Department of the Ministry of Internal Affairs of Ukraine in Kyiv on March 17, 2005, registered at: Kyiv Region, Obukhiv District, Ukrainka city, Dniprovskyi Ave., 3, apartment 6, being of sound mind, clear memory and acting voluntarily, understanding the significance of personal actions, without any coercion, both physical and moral, hereby state that on May 25, 2023, the Skvyrskyi District Court of Kyiv Region made a decision in case No. 376/560/23, proceedings No. 2/376/477/2023, on the claim of Musaib Ismailovych Ismailov against Mykhailo Safarbekovych Hutseriev, Stanislav Kostiantynovych Kuznetsov, and Public Joint Stock Company "Sberbank of Russia", Akhmed Hadzhyiovych Bilalov, the third party, on the recovery of damages on the claim of a third party who files independent claims regarding the subject matter of the dispute between Akhmed Hadzhyiovych Bilalov and Mykhailo Safarbekovych Hutseriev, Stanislav Kostiantynovych Kuznetsov, and Public Joint Stock Company "Sberbank of Russia", Musaib Ismailovych Ismailov, the third party, on the recovery of damages.

To confirm the facts stated in this document, I have attached hereto:

1) Decision of the Skvyrskyi District Court of Kyiv Region dated May 25, 2023, case No. 376/560/23, proceedings No. 2/376/477/2023.

These official testimonies of mine, for the correctness of which I vouch, may be referred to whenever and wherever necessary, and in confirmation of the above, I affix my signature.

**SIGNATURE**    *(signed)*    *V.L. Sokolovskyi*

*Kyiv, Ukraine, August second, two thousand twenty-three.*
I, **O.V. Maidybura**, *Private Notary of Kyiv City Notarial District, certify authenticity of the signature of* ***Valeriy Leonidovych Sokolovskyi*** *affixed in my presence.*

***Valeriy Leonidovych Sokolovskyi****, who signed this document, is identified, his capacity is verified.*

*To confirm the facts stated in the document,* ***Valeriy Leonidovych Sokolovskyi*** *attached to it:*

*1) Decision of the Skvyrskyi District Court of Kyiv Region dated May 25, 2023, case No. 376/560/23, proceedings No. 2/376/477/2023.*

*Entered to the register under number 17854.*

**PRIVATE NOTARY**    *(signed)*

*QR code, HCH 381656*

*(Official seal: Private Notary ***
*Oksana Vasylivna Maidybura ***
*Kyiv City Notarial District)*

*Stamp: Stitched (or bound), numbered and sealed a total of 13 (thirteen) sheets.*

*(Official seal: Private Notary \* Oksana Vasylivna Maidybura \* Kyiv City Notarial District)*

| **Apostille** (Convention de La Haye du 5 octobre 1961 Hague Convention of 5 October 1961) | |||
|---|---|---|---|
| 1. Country: | Ukraine | | |
| This public document | | | |
| 2. Has been signed by | O.V. Maidybura | | |
| 3.  Acting in the capacity of | Private Notary | | |
| 4. Bears the seal/stamp of | Private Notary of Kyiv City Notarial District | | |
| CERTIFIED | | | |
| 5. at | Kyiv | 6. Date | 2 August 2023 |
| 7. by | L.M. Aksonova, Chief Specialist of the Ministry of Justice of Ukraine | | |
| 8. Number | 1517381 | | |
| 9. Seal/stamp | | 10. Signature | |
| Electronically and digitally signed (stamped) by the Ministry of Justice of Ukraine | | | |

*(Seal: Ministry of Justice of Ukraine ** *
*for apostille only * No. 9217)*

*(signed)*

---

Electronically and digitally signed (stamped) by the Ministry of Justice of Ukraine
Electronically and digitally signed by the official of the Ministry of Justice of Ukraine and
accompanied by the image of his/her signature

To verify the issuance of this Apostille, see www.apostille.minjust.gov.ua

---

*(Seal: Ministry of Justice of Ukraine ** *
*for apostille only * No. 9217)*

*Stamp: Stitched (or bound), numbered and
sealed a total of 14 (fourteen) sheets.*

*(Seal: Ministry of Justice of Ukraine ** *
*for apostille only * No. 9217)*

*Цей переклад з української мови на англійську мову зроблено мною, перекладачем*
**Коцур Наталією Євгенівною**

*I, the translator* **Kotsur Natalia Yevgeniyivna,** *made this translation from Ukrainian to English.*

### SIGNATURE

*Місто Київ, Україна, третього серпня дві тисячі двадцять третього року.*

*Я, Майдибура О.В., приватний нотаріус Київського міського нотаріального округу, засвідчую справжність підпису перекладача Коцур Наталії Євгенівни, який зроблено у мій присутності.*

*Особу перекладача встановлено, її дієздатність та кваліфікацію перевірено.*

*Зареєстровано в реєстрі за №* _____

**ПРИВАТНИЙ НОТАРІУС** _____

*The city of Kyiv, Ukraine, the third of August two thousand and twenty-three.*

*I, Maidybura O.V., the Private Notary of Kyiv Municipal Notarial District, certify genuineness of the signature of the translator Kotsur Natalia Yevgeniyivna which was made in my presence.*

*Person, legal capability and qualification of the translator were verified.*

*Recorded in the register under №* _____

**PRIVATE NOTARY SIGNATURE** _____
*Official round seal: Maidybura O.V., Private Notary, Kyiv Municipal Notarial District*

*Total numbered, bound and sealed* **31** ( *thirty-one* ) *pages.*
*Signature*
*Impress of the Official Round Seal, reading: [Maidybura O.V., Private Notary of Kyiv Municipal Notarial District*