# EXHIBIT 3

# СОГЛАШЕНИЕ

г. Баден-Баден                                                09 марта 2013 года

**Билалов Ахмед Гаджиевич**, 19 ноября 1970 года рождения, гражданин РФ, зарегистрирован по адресу г. Сочи, пер. Инжирный, д. 25, **далее именуемый Бенефициаром**, и

**Исмаилов Мусаиб Исмаилович**, 15 января 1970 года рождения, гражданин Украины, зарегистрированный по адресу: город Одесса, ул. Тенистая, д. 15, кв. 48, **далее именуемый Доверительный управляющий**, принимаю во внимание:

1. **Zeeland Development Corp.**, компания, зарегистрированная в соответствии с законодательством Великобритании Виргинские острова, здание Акара, улица Де Кастро, 24, Уикхэмс Кей I, город Роуд, Тортола, Британские Виргинские острова, фактически принадлежит **Бенефициару**;
2. на балансе компании в управлении Zeeland Development Corp. перебывают акции ОАО «Красная поляна» (Российская Федерация, ГРН 2092366034264) в количестве 817 шт.

### Договорились о нижеследующем:

Доверительный управляющий, на основании документа о передачи акций, обязуется принять в собственность акции Zeeland Development Corp. от предыдущего Доверительного управляющего Драгана Перовича (Dragon Perovic, personal ID 36806090316, date of birth 09.06.1968, Tallin), на нижеследующих условиях:

### ОБЩИЕ ПОЛОЖЕНИЯ

A. Доверительный управляющий зарегистрирован или имеет право на регистрацию в качестве держателя акций и будет зарегистрирован или имеет право на регистрацию в качестве держателя акций в соответствии с долевым распределением.

B. Бенефициар предоставил стоимость выпущенных акций и предоставил или предоставит стоимость акций, выпущенных в соответствии с долевым распределением в соответствии с условиями соглашения.

C. Доверительный управляющий согласился приобрести и держать право собственности в соответствии с полномочиями и ограничениями, изложенными в этом соглашении.

### Оперативные положения

1 Определения:

В этом соглашении применяются следующие определения:

Компания означает ООО «КРАСНАЯ ПОЛЯНА», частное общество с ограниченной ответственностью, организовано в соответствии с законодательством Российской Федерации.

Правомочный капитал означает:

а) количество выпущенных Акций; и/или

б) лежащие в основе Вознаграждения за акции, состоящие из Акций, которые могут быть выпущены в будущем (при этом подразумевается, что Бенефициар не имеет права на такие Акции, за исключением прав, изложенных в соглашениях, регулирующие Премии в виде акций, до тех пор, пока такие Акции не станут выпущенными акциями), как указано на странице подписи или иным образом выдано Доверительному управляющему в пользу Бенефициара.

Вознаграждения за акции означают опционы на покупку Акций или акций с ограничением прав пользования или других вознаграждений, основанных на акциях, которые могут быть предоставлены Бенефициару.

Выпущенные акции означают ту часть Правомочного капитала, которая состоит из Акций, которые рассматриваются в соглашении.

Акции означает доля в капитале Компании.

## 2. Декларация о доверии

Доверительный управляющий заявляет, что Доверительный управляющий владеет Выпущенными акциями в доверительном управлении для Бенефициара и будет держать Акции, выпущенные в соответствии с долевым распределением, в доверительном управлении для Бенефициара, в каждом случае абсолютно.

## 3. Договора доверенного лица

3.1 В соответствии с пунктами 3.3 и 3.4 Доверительный управляющий обязуется перед Бенефициаром, что Доверительный управляющий будет:

**(а) выполнять каждое из следующих действий:**

(i) отчитываться перед Бенефициаром обо всех дивидендах, объявленных по Выпущенным Акциям и любых Акций, выпущенных в соответствии с долевым распределением, в той мере, в какой его условия предусматривают выплату дивидендов до урегулирования вознаграждений за акции, если таковые имеются;

(ii) голосовать в отношении выпущенных акций и любых акций, выпущенных в соответствии с долевым распределением в той мере, в какой ее условия предусматривают возможность голосовать в отношении лежащих в основе Акций до урегулирования долевого распределения, исключительно по указанию Бенефициара;

(iii) по запросу Бенефициара передать Выпущенные акции и любые Акции, выпущенные в соответствии с долевым распределением Бенефициару или

другой стороне по указанию Бенефициара; а также

(iv) после получения уведомления о проведении общего собрания или запроса на подписание письменного решения незамедлительно запросить указания у Бенефициара.

**(b) ни в коем случае, без согласия Бенефициара, не делать ни одного из следующих действий:**

(i) подавать какие-либо иски, совершать действия или инициировать разбирательства против Компании или пытаться ликвидировать компанию;

(ii) пытаться изменить, исправить или добавить содержание учредительного договора и устава Общества;

(iii) осуществлять любые права голоса в отношении Выпущенных акций или любых Акции, выпущенных в соответствии с долевым распределением, если применимо, без указания Бенефициара;

(iv) передавать Выпущенные Акции или любые Акции, выпущенные в соответствии с долевым распределением Бенефициару или другой стороне по указанию Бенефициара.

3.2 Доверительный управляющий не обязан контролировать, повышать или сохранять стоимость Уполномоченного капитала и его обязанности строго ограничены теми, которые изложены в этой декларации.

3.3 Доверительный управляющий должен владеть акциями Бенефициара в течение 10 (десяти) лет. Доверительный управляющий получает 15% от общего количества акций Компании при выполнении условий Соглашения и/или 15% стоимости акций ОАО «Красная Поляна» (РФ, ГРН 2092366034264) в количестве 817 шт при продаже третьим лицам либо до окончания срока действия этого Соглашения.

3.4 Доверительный управляющий не обязан следовать указаниям, которые противоречат или нарушают:

(a) учредительный договор и устав Компании; или же

(b) любое акционерное соглашение (включая любые присоединения к нему), подписи договора, договора переуступки или иное договорное обязательство, относящееся к Привилегированному капиталу, в отношении которого Доверительный управляющий или Бенефициар – сторона.

3.5 Доверительный управляющий уполномочен время от времени назначать доверенное лицо или доверенных лиц для представления Доверительного управляющего на общих собраниях Общества.

### 4. Договора бенефициара

4.1 Бенефициар заключает с Доверительным управляющим следующие обязательства:

(a) После письменного уведомления от Доверительного управляющего Бенефициар примет передачу правового титула на выпущенные акции и любые акции, выпущенные в соответствии с долевым распределением на имя Бенефициара.

(b) В дополнение к любому праву на освобождение от ответственности или компенсацию, разрешенную законом, Доверительный управляющий имеет право время от времени возмещать себе расходы или платить и увольняться из любых трастовых денег, поступающих в руки Доверительного управляющего. Все расходы, понесенные Доверительным управляющим в отношении выполнения трастов, должны быть предусмотренными в соглашении.

(c) Доверительный управляющий не несет ответственности за любые убытки, понесенные Бенефициаром, за исключением, когда убытки связаны с мошенничеством, неправомерным поведением или грубой небрежностью или умышленным бездействием Доверительного управляющего является нарушением условий соглашения.

(d) Бенефициар возместит ущерб Доверительному управляющему в отношении всех расходов, издержек, разбирательств, претензий, требований, налогов, пошлин и других вопросов (и все связанные проценты, штрафы и расходы) возникающих в результате исполнения Доверительным управляющим трастов, объявленных настоящим соглашением, за исключением случаев, в которых Доверительный управляющий не имеет права на освобождение от ответственности или компенсацию в соответствии с предыдущим параграфом.

## 5. Разное

5.1 Это соглашение регулируется законодательством Джерси. Стороны подчиняются неисключительной юрисдикции судов Джерси для разрешения любых споров, возникающих по поводу этого соглашения или в связи с ним. Стороны соглашаются не возражать против осуществление юрисдикции этих судов на любом основании.

5.2 Если иное не указано, любое соглашение, завет, представительство или гарантия по настоящему договору двумя или более лицами обязывает их совместно и каждого из них в отдельности, как и любая выгода в пользу двух или более лиц касается их совместно и каждого из них в отдельности.

5.3 Непоправимый вред в результате нарушения. Стороны признают, что в связи с характером настоящего Соглашения, его нарушение может привести к тому, что Бенефициар понесет непосредственный и непоправимый ущерб, для которого не существует адекватных средств правовой защиты по закону. Соответственно и в дополнение к другим средствам правовой защиты, доступным Бенефициару по настоящему Соглашению, в случае нарушения настоящего Соглашения Доверительным управляющим, Бенефициар может добиваться любой доступной судебной защиты по праву справедливости, включая конкретное исполнение, судебный запрет (будь то предварительный или постоянный) и учет прибыли в каждом случае без внесения залога или иного обеспечения.

5.4 СОГЛАСИЕ С ЮРИСДИКЦИЕЙ И МЕСТО ПРОВЕДЕНИЯ В НЬЮ-ЙОРКЕ. Доверительный управляющий соглашается с тем, что Верховный суд штата Нью-Йорк по округу Нью-Йорка и Окружной суд США Южного округа Нью-Йорка должен иметь личную юрисдикцию и надлежащее место в отношении любого спора между Доверительным управляющим и Бенефициаром. В любом споре с Бенефициаром Доверительный управляющий не будет выдвигать требование или прямо отказывается от любой такой юрисдикции как неудобной ему.

5.5 Поправки к настоящему Соглашению вступают в силу только в том случае, если они составлены в письменной форме и подписаны сторонами. Настоящее Соглашение является полным пониманием сторон, заменяет собой все предварительные договоренности, будь то письменные или устные. Это соглашение не имеет других сторон или бенефициаров.

В случае, если в любое время один или несколько пунктов настоящего Соглашения признаются недействительными любым судом, такие положения считаются отделимыми и остальная часть настоящего Соглашения считается действительной и имеет юридическую силу.

_____ А. Билалов          _____ М. Исмаилов



RapidTranslate.org
support@rapidtranslate.org
(844) 473-7832

Member # 274316

## CERTIFICATION OF TRANSLATION ACCURACY

We, RapidTranslate, a professional translation services company with a corporate membership to the American Translators Association, hereby certify that a qualified, experienced, and competent professional translator has translated the provided original document to the best of the translator's abilities. In our best judgment, the translated documents and text therein are a true and accurate translation, which reflect the original content, meaning, and style of the originally provided document(s). RapidTranslate has no relation to the client or original owner of the provided documents.

This is to certify the correctness of the translation only. RapidTranslate makes no claims, representation, guarantees, or warranties concerning the authenticity of the original document translated. Further, RapidTranslate disclaims any and all liability for the manner in which the translation is used by the customer or any third party, including end-users of the translation.

A copy of the translation is attached to this certification.

Sincerely,
Authorized Representative
RapidTranslate.org

390 NE 191st St #8058
Miami, Florida 33179

State of: Florida
County of: Miami-Dade
Subscribed and sworn to (or affirmed) before me on October 23, 2024

Notary Public:

CARLA ZENSEN
Notary Public · State of Florida
Commission # HH 509701
My Comm. Expires May 21, 2028
Bonded through National Notary Assn.

 RapidTranslate.org
support@rapidtranslate.org
(844) 473-7832


Member # 274316

# CERTIFICATION BY TRANSLATOR

I, Aleksei Timashkov, certify that I am competent to translate in the English and Russian languages and that the above/attached document is a complete and accurate translation of the above/attached document.

This document has not been translated for a family member, friend, or business associate.

Name: Aleksei Timashkov

RapidTranslate.org
390 NE 191st St #8058
Miami, FL 33179



[Translated from Russian]

# AGREEMENT

Town of Baden-Baden                                                                                  March 09, 2013

**Akhmed Gadzhievich Bilalov**, born on November 19, 1970, a citizen of the Russian Federation, registered at the city of Sochi, Inzhirny Alley, 25, **hereinafter referred to as the Beneficiary**, and

**Musaib Ismailovich Ismailov**, born on January 15, 1970, a citizen of Ukraine, registered at the city of Odessa, Tenistaya Street, 15, apt. 48, **hereinafter referred to as the Trustee**, taking into consideration:

1. **Zeeland Development Corp.**, a company registered under the laws of the United Kingdom at Akara Building, De Castro Street 24, Wickhams Cay I, Road Town, Tortola, British Virgin Islands, is de facto owned by the **Beneficiary**;
2. Zeeland Development Corp. holds on its balance shares of OJSC "Krasnaya Polyana" (Russian Federation, OGRN 2092366034264) in the amount of 817 shares.

**Have agreed to the following:**

The Trustee, based on the share transfer document, undertakes to take ownership of Zeeland Development Corp.'s shares from the previous Trustee, Dragon Perovic (personal ID 36806090316, date of birth June 09, 1968, Tallinn), under the following conditions:

**GENERAL PROVISIONS**

A. The Trustee is registered or has the right to be registered as a holder of shares and will be registered or has the right to be registered as a holder of shares in accordance with the equity allocation.
B. The Beneficiary has provided the value of the issued shares and has provided or will provide the value of shares issued in accordance with the equity allocation under the terms of the agreement.
C. The Trustee has agreed to acquire and hold ownership in accordance with the powers and restrictions set forth in this agreement.

**Operational Provisions**

**1. Definitions:**
In this agreement, the following definitions apply:

[Signature]                                                                              [Signature]

[Translated from Russian]

*Company* means LLC "Krasnaya Polyana", a private limited liability company incorporated under the laws of the Russian Federation.

*Authorized capital* means:

(a) the amount of issued shares; and/or

(b) the underlying Stock compensation consisting of shares that may be issued in the future (provided that the Beneficiary has no rights to such shares, except for the rights set forth in agreements governing stock awards, until such shares become issued shares), as stated on the signature page or otherwise issued to the Trustee for the benefit of the Beneficiary.

*Stock compensation* means options to purchase shares or restricted shares or other stock-based awards that may be granted to the Beneficiary.

*Issued shares* means that portion of the *Authorized capital* that consists of shares covered by the agreement.

*Shares* means an equity stake in the Company.

## 2. Trust Declaration

The Trustee declares that the Trustee holds the *Issued shares* in trust for the Beneficiary and will hold shares issued under the equity allocation in trust for the Beneficiary, in each case absolutely.

## 3. Trustee's Obligations

3.1. Subject to clauses 3.3 and 3.4, the Trustee agrees before the Beneficiary to:

**(a) perform each of the following actions:**

(i) report to the Beneficiary all dividends declared on the *Issued shares* and any shares issued under the equity allocation, to the extent that their terms provide for the payment of dividends before the settlement of stock compensation, if any;

(ii) vote on the issued shares and any shares issued under the equity allocation to the extent that their terms provide for voting on the underlying shares before the settlement of the equity allocation, solely at the direction of the Beneficiary;

(iii) upon the Beneficiary's request, transfer the *Issued shares* and any *Shares* issued under the equity allocation to the Beneficiary or

[Signature]                                    [Signature]

[Translated from Russian]

another party at the Beneficiary's direction; and

(iv) upon receiving notice of a general meeting or a request to sign a written resolution, promptly seek instructions from the Beneficiary.

**(b) under no circumstances, without the Beneficiary's consent, do any of the following:**

(i) file any claims, take action, or initiate proceedings against the Company or attempt to liquidate the Company;

(ii) attempt to amend, correct, or add to the content of the Company's articles of incorporation and bylaws;

(iii) exercise any voting rights in respect of the *Issued shares* or any *Shares* issued under the equity allocation, if applicable, without the direction of the Beneficiary;

(iv) transfer the *Issued shares* or any *Shares* issued under the equity allocation to the Beneficiary or another party at the Beneficiary's direction.

3.2. The Trustee is not obliged to monitor, increase, or maintain the value of the *Authorized capital*, and the Trustee's duties are strictly limited to those set forth in this declaration.

3.3. The Trustee shall hold the Beneficiary's shares for a period of 10 (ten) years. The Trustee shall receive 15% of the total number of Company shares upon fulfilling the terms of the Agreement and/or 15% of the value of the shares of OJSC "Krasnaya Polyana" (RF, OGRN 2092366034264) in the amount of 817 shares upon sale to third parties or before the expiration of this Agreement.

3.4. The Trustee is not required to follow instructions that contradict or violate:

(a) the articles of incorporation and bylaws of the Company; or

(b) any shareholders' agreement (including any joinder agreements), signing agreements, assignment agreements, or other contractual obligations related to the *Authorized capital* to which the Trustee or the Beneficiary is a party.

3.5. The Trustee is authorized from time to time to appoint an attorney or attorneys to represent the Trustee at general meetings of the Company.

## 4. Beneficiary's Obligations

4.1. The Beneficiary enters into the following obligations with the Trustee:

(a) Upon written notice from the Trustee, the Beneficiary shall accept the transfer of legal title to the issued shares and any shares issued under the equity allocation in the name of the Beneficiary.

[Signature]                    [Signature]

[Translated from Russian]

(b) In addition to any right to indemnity or compensation permitted by law, the Trustee is entitled from time to time to reimburse itself for expenses or pay and discharge themselves from any trust funds received by the Trustee. All expenses incurred by the Trustee in relation to the execution of the trusts shall be provided for in the agreement.

(c) The Trustee shall not be liable for any losses incurred by the Beneficiary, except where such losses are attributable to fraud, misconduct, gross negligence, or willful failure by the Trustee in breach of the terms of the agreement.

(d) The Beneficiary shall indemnify the Trustee in respect of all expenses, costs, proceedings, claims, demands, taxes, duties, and other matters (and all related interest, penalties, and expenses) arising from the Trustee's execution of the trusts declared by this agreement, except where the Trustee is not entitled to indemnity or compensation under the previous paragraph.

### 5. Miscellaneous

5.1. This agreement is governed by the laws of Jersey. The parties submit to the non-exclusive jurisdiction of the courts of Jersey to resolve any disputes arising from or in connection with this agreement. The parties agree not to object to the exercise of jurisdiction by these courts on any grounds.

5.2. Unless otherwise stated, any agreement, covenant, representation, or warranty under this agreement by two or more persons binds them jointly and each of them severally, as any benefit in favor of two or more persons benefits them jointly and each of them severally.

5.3. Irreparable harm from breach. The parties acknowledge that due to the nature of this Agreement, its breach may cause the Beneficiary immediate and irreparable harm for which there are no adequate legal remedies. Accordingly, and in addition to other remedies available to the Beneficiary under this Agreement, in the event of a breach of this Agreement by the Trustee, the Beneficiary may seek any available equitable relief, including specific performance, injunctive relief (whether preliminary or permanent), and an accounting for profits in each case without posting a bond or other security.

[Signature]                                                       [Signature]

[Translated from Russian]

5.4. CONSENT TO JURISDICTION AND VENUE IN NEW YORK. The Trustee agrees that the Supreme Court of the State of New York for the County of New York and the United States District Court for the Southern District of New York shall have personal jurisdiction and venue over any dispute between the Trustee and the Beneficiary. In any dispute with the Beneficiary, the Trustee shall not claim or hereby expressly waive any objection to such jurisdiction as inconvenient.

5.5. Amendments to this Agreement shall only be effective if made in writing and signed by the parties. This Agreement constitutes the entire understanding of the parties and supersedes all prior arrangements, whether written or oral. This agreement has no other parties or beneficiaries.

Should any provisions of this Agreement at any time be deemed invalid by any court, such provisions shall be considered severable, and the remainder of this Agreement shall be deemed valid and enforceable.

[Signature] A. Bilalov          [Signature] M. Ismailov