## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------x
MUSAIB ISMAILOVYCH ISMAILOV and          :
AKHMED HADZHYIOVYCH BILALOV,             :
                                         :
              Plaintiffs,                :
                                         :
                                         :   Case No: 1:24-cv-03287-AT
         -v-                             :
                                         :
MYKHAILO SAFARBEKOVYCH                   :
HUTSERIEV, STANISLAV                     :
KOSTIANTYNOVYCH KUZNETSOV, and           :
PUBLIC JOINT STOCK COMPANY               :
"SBERBANK OF RUSSIA",                    :
                                         :
              Defendants.                :
------------------------------------------------------------------x
```

### DECLARATION OF OLEKSANDRA VYTIAGANETS
### IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
### AND THE SBERBANK DEFENDANTS' MOTION FOR SANCTIONS

OLEKSANDRA VYTIAGANETS, under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746, declares that the following is true and correct:

1.     I am a Solicitor of the Senior Courts of England and Wales, an Advocate in Ukraine, and an Associate at the firm of DWF Law LLP ("DWF"). I qualified as an Advocate in Ukraine on January 10, 2019 (certificate number 2473) and as a Solicitor on January 17, 2021 (Solicitors' Regulation Authority ID number 812513). Copies of my practicing certificates are attached hereto as **Exhibit 1**. I specialize in international commercial arbitration and litigation and my experience includes dealing with cases and matters involving a wide range of sectors, including international trade, commerce, and finance.

2.     Save as otherwise appears, the facts set forth herein are within my own knowledge or derived from documents in my possession.

3.    I respectfully submit this declaration in support of Plaintiffs' consolidated memorandum of law in opposition to: (i) the motion to dismiss of defendants Public Joint Stock Company "Sberbank of Russia" ("Sberbank") and Stanislav Kostiantynovych Kuznetsov ("Kuznetsov"; and with Sberbank, "Sberbank Defendants") (ECF 52, "Sberbank Motion to Dismiss"); (ii) the motion to dismiss of defendant Mykhailo Safarbekovych Hutseriev ("Hutseriev"; and collectively with the Sberbank Defendants, "Defendants") (ECF 79, "Hutseriev Motion to Dismiss"); and (iii) the motion for sanctions of the Sberbank Defendants (ECF 69; "Motion for Sanctions"; and collectively as to all of Defendants' motions, the "Motions").[1]

4.    DWF is a full-service international law firm with over 2800 employees and 27 offices worldwide. It has a diverse portfolio of clients, ranging from FTSE 100 multinational entities to private individuals. DWF's clients range across a variety of sectors, including oil, gas, energy, infrastructure, foreign trade, investments, financial services, freight transport, logistics, the auto industry, telecommunications, IT, and the public sector.

5.    I completed my law studies at Yaroslav the Wise National Law Academy of Ukraine, which is now known as Yaroslav Mudryi National Law University. This institution is one of the world's leading universities and the largest law school in Ukraine, ranked #151-200 in the QS World University Rankings by Subject for 2024. I graduated with a Bachelor's degree with distinction in 2008 and a Master's degree with distinction in 2009. Copies of my Ukrainian diplomas are attached hereto as **Exhibit 2**.

---

[1] Capitalized terms not defined herein have the same meanings as ascribed to them in the First Amended Complaint (ECF 18, "FAC"). References to "¶," "Sb. Br." "Hut. Br.," and "Sanctions Br." are to paragraphs of the FAC and pages of the Sberbank Defendants' Motion to Dismiss, Hutseriev's Motion to Dismiss, and the Sanctions Motion, respectively. References to "Ismailov Decl.," are to the Declaration of Ismailov, filed contemporaneously herewith. Reference to an exhibit's page number is to the page number of the ECF-filed version of the exhibit, inclusive of its cover page.

6.      From 2010 to 2014, I worked in the private sector in Ukraine, primarily as a litigator representing corporate and individual clients in courts located in Kremenchuk, Kyiv, Kyiv region, Odesa, Odesa region, and Dnipro region. I frequently acted independently as legal counsel in courts of general jurisdiction, as well as in commercial and administrative courts, including appellate and cassation levels. At that time, Ukrainian law permitted legal representation in civil, commercial, and administrative matters based on a Power of Attorney without requiring a bar practicing certificate for individuals holding a full legal degree. My case portfolio covered debt recovery, damages claims, enforcement proceedings, and involved foreign parties.

7.      In 2014, I joined the Verkhovna Rada of Ukraine (Parliament of Ukraine) as a legal assistant and advisor to a Member of Parliament. My primary responsibilities included conducting regulatory and legal analysis of law bills, preparing amendments and proposals for law bills considered at the Parliament, and drafting new laws.

8.      In September 2015, I relocated to the United Kingdom after being awarded the Hodgson Law Scholarship to pursue an LL.M. in international human rights at the University of Liverpool, which I completed with distinction in 2016.

9.      Subsequently, I received a Classic Doctoral Training Grant (STEAM FF) to pursue a PhD in international investment law at Birmingham City University, where I combined my studies with part-time employment at DWF in Birmingham and preparing for the Qualified Lawyers Transfer Scheme exams to qualify as a solicitor in England and Wales, a process I completed by 2022. Copies of my English diplomas are attached hereto as **Exhibit 3**.

10.      Currently, I work as an attorney and dual-qualified lawyer at DWF in DWF's commercial arbitration and litigation departments. I frequently advise clients from Ukraine and the

post-Soviet space on complex cross-border commercial arbitration and litigation matters. This work often includes providing opinions on foreign law.

11.    A copy of my CV, which contains further details of my credentials and experience, is attached hereto as **Exhibit 4**.

12.    If called as a witness, I could and would testify to the same as stated herein.

13.    I am not authorized and I do not intend to waive any legal advice, litigation, or other privilege by referring to any matters in this declaration.

**The Ukrainian Judicial System Is Fair And Impartial**

14.    Ukraine has been under martial law since Russia's full-scale invasion began on February 24, 2022. The initial imposition of martial law was through Presidential Decree No. 64/2022, titled "On the Imposition of Martial Law in Ukraine" and dated February 24, 2022 ("Decree No. 64/2022"). Attached hereto as **Exhibit 5** is a true and correct copy of Decree No. 64/2022, for which a translation has been provided by Google Translate (https://rm.coe.int/1680a5b041).

15.    Decree No. 64/2022 has been extended multiple times, with the latest extension, Presidential Decree No. 469/2024, dated July 23, 2024, being for an additional 90 days. Attached hereto as **Exhibit 6**, is a true and correct copy of Presidential Decree No. 469/2024, for which a translation has been provided by Google Translate (https://zakon.rada.gov.ua/laws/show/469/2024#n2).

16.    Article 1 ("Article 1") of the Law of Ukraine, "About the Legal Regime of Martial Law," dated May 12, 2018, No. 389-VIII (in its entirety, the "Martial Law Regime"), defines martial law as a special legal regime applied in response to armed aggression or threats to the state's independence and territorial integrity. It grants necessary powers to state authorities,

military command and administrations, and local governments to counter threats, repel aggression, and ensure national security, including temporary restrictions on constitutional rights.

17.     Attached hereto as part of **Exhibit 7** is a true and correct copy of Article 1 of the Martial Law Regime, for which a translation has been provided by Google Translate (https://zakon.rada.gov.ua/laws/show/389-19#n3). Included within **Exhibit 7** are true and correct copies of Articles 12 and 26 of the Law of Ukraine "About the Legal Regime of Martial Law" (dated May 12, 2015, No. 389-VIII; "Article 12" and "Article 26," respectively), for which a translation has been provided by Google Translate  (https://zakon.rada.gov.ua/laws/show/389-19#n3).

18.     Even though the Martial Law Regime restricts certain constitutional rights, notably, Ukraine's administration of justice remains largely unchanged from before the Russian invasion – before martial law was invoked – as Ukraine's judicial system operates under the framework of the Ukrainian Constitution and laws of Ukraine.

19.     For example, Article 12 of the Martial Law Regime mandates that the institutions of Ukraine's judicial system operate strictly within the scope and procedures defined by the Constitution and relevant laws. Ex. 7 at 11-12.

20.     Article 26 of the Martial Law Regime sets forth the fair administration of justice under martial law as follows:

> "1. Justice in the territory where martial law has been imposed is carried out only by courts. Courts established in accordance with the Constitution of Ukraine operate on this territory.
>
> 2. Shortening or extending the time of any forms of judicial proceedings is prohibited.
>
> 3. In case of impossibility to administer justice by the courts operating in the territory where martial law has been imposed, the laws of Ukraine may change the territorial jurisdiction of court cases considered in these courts,

> or the location of the courts may be changed in accordance with the procedure established by law.
>
> 4. Creation of extraordinary and special courts is not allowed."

Ex. 7 at 19.

21.    Article 496 of the Civil Procedural Code of Ukraine confirms that foreign parties in Ukraine have the same procedural rights and obligations as Ukrainian individuals and legal entities.  Attached hereto as part of **Exhibit 8** is a true and correct copy of Article 496 of the Civil Procedural Code of Ukraine, for which a translation has been provided by Google Translate (https://zakon.rada.gov.ua/laws/show/1618-15/ed20231231#Text).  Also  included  as  part  of **Exhibit 8** are true and correct copies of Articles 10(8), 15, 19, 49, 62, 128, 175-177, 211, 212, 497, and 498 of the Civil Procedural Code of Ukraine, for which a translation has been provided by Google Translate (https://zakon.rada.gov.ua/laws/show/1618-15/ed20231231#Text).

22.    The current restrictions in Ukraine do not prevent Russian nationals or entities from obtaining equal access or protections under Ukrainian law.

**Resolution No. 164 Does Not Prevent Russian Parties From Defending Claims In Ukraine**

23.    Defendants, citing the Resolution of the Cabinet of Ministers of Ukraine, No. 164, dated February 28, 2022, "Regarding certain notarial matters under martial law conditions" ("Resolution No. 164"), assert that Russian nationals do not have access to notarial services in Ukraine which, in their view, prevented Defendants' ability to defend the Ukrainian Action.  Sb. Br. at 40 (citing Exhibit 6, ECF 53-6); Sanctions Br. at 10-11 (citing Exhibit 4, ECF 70-4).

24.    Attached hereto as **Exhibit 9** is a true and correct copy of the Resolution No. 164, for  which  a  translation  has  been  provided  by  Google  Translate (https://zakon.rada.gov.ua/laws/show/164-2022-%D0%BF#Text).

25.     Resolution No. 164 requires notaries to refuse notarial services for Russian citizens in Ukraine such that Russian citizens cannot obtain a Power of Attorney from a notary in Ukraine to retain counsel. However, it does not prevent them from retaining counsel by other means.

26.     Specifically, Defendants Kuznetsov and Hutseriev could have had the Ukrainian Court certify a Power of Attorney that authorized an attorney to act on their behalf.  Sberbank could also have obtained a Power of Attorney that was certified by the director or person authorized by its constituent documents pursuant to Article 62 of the Civil Procedural Code of Ukraine. Ex. 8 at 13-14.

27.     Defendants could also seek notary services outside of Ukraine. Attached hereto as **Exhibit 10** is a true and correct copy of the Decree of the Cabinet of Ministers, No. 107, "Some issues of acceptance on the territory of Ukraine during martial law of documents issued by authorized bodies of foreign states," dated February 4, 2023 ("Decree No. 107"), for which a translation has been provided by Google Translate (https://zakon.rada.gov.ua/laws/show/107-2023-%D0%BF#Text).

28.     Pursuant to Decree No. 107:

> "[D]uring martial law and within six months after its termination or cancellation, documents produced or certified on the territory of foreign countries by an institution or a person specially authorized for that purpose within the limits of their competence according to the established form and sealed with a seal are accepted on the territory of Ukraine without a special certificate (consular legalization, affixing of an apostille, etc.) if, as of February 24, 2022, such documents were accepted on the territory of Ukraine without a special certificate." (Emphasis added).

29.     Also, under Article 13 of the Convention on Legal Assistance and Legal Relations in Civil, Family and Criminal Matters of 1993, which was in force in relation to Russia as of February 24, 2022, documents certified in Russia (including any Power of Attorney) would be accepted by the Ukrainian Court without further legal measures, such as by a court order.

30.    Attached hereto as **Exhibit 11** is a true and correct copy of the Convention on Legal Assistance and Legal Relations in Civil, Family and Criminal Matters of 1993, for which a translation has been provided by Google Translate (https://zakon.rada.gov.ua/laws/show/997_009#Text).

**Resolution No. 187 Does Not Restrict Access to Legal Services**

31.    Defendants, citing the Resolution of the Cabinet of Ministers No. 187, "On ensuring the protection of national interests in future lawsuits of the state of Ukraine in connection with the military aggression of the Russian Federation," dated March 3, 2022 ("Resolution No. 187"), assert that Resolution No. 187 bans the provision of legal services to Russian citizens, Russian companies, or Ukrainian companies with at least a 10 percent ownership by the Russian Federation or Russian individuals/companies (collectively, "Russian Parties"). Sb. Br. at 40 (citing Exhibit 5, ECF 53-5); Hut. Br. at 28-29 (citing Exhibit 4, ECF 80-4); Sanctions Br. at 10 (citing Exhibit 1, ECF 70-1). Attached hereto as **Exhibit 12** is a true and correct copy of Resolution No. 187.

32.    Resolution No. 187 establishes a moratorium on the fulfillment of monetary and other legal obligations to Russian Parties which will be in place until the adoption of a law on the settlement of relations with such persons. The Letter of the Ministry of Justice dated March 10, 2023 confirms that the purpose of Resolution No. 187 was to strengthen the protection of the interests of Ukraine in future claims in connection with the military aggression of Russia and to stop the financing of legal entities associated with the Russian Federation, which inevitably leads to the indirect financing of Russia's military aggression. Attached hereto as **Exhibit 13** is a true and correct copy of the Letter, for which a translation has been provided by Google Translate (https://minjust.gov.ua/news/ministry/denis-malyuska-posilyuemo-zahist-natsionalnih-interesiv-za-maybutnimi-pozovami-ukraini-u-zvyazku-z-viyskovoyu-agresieyu-rf).

33.     Resolution No. 187 does not restrict the provision of legal services for Russian Parties. If it did (which it does not), it would directly contravene Article 59 of the Ukrainian Constitution that enshrines the right to professional legal assistance and Article 6 of the European Convention of Human Rights ("ECHR") guaranteeing a right to fair trial, of which Ukraine is a member.[2] In case of the conflict of laws, the norms of the Ukrainian Constitution and the ECHR would prevail over Resolution No. 187 by virtue of Articles 8, 9, and 113 of the Ukrainian Constitution. Attached hereto as **Exhibit 14** is a true and correct copy of Article 8, 9, 59, and 113 of the Ukrainian Constitution for which a translation has been provided by Google Translate (https://zakon.rada.gov.ua/laws/show/254%D0%BA/96-%D0%B2%D1%80#n4363).

34.     Additionally, Resolution No. 187 does not prevent Russian Parties from obtaining legal advice from a Ukrainian qualified lawyer located outside Ukraine or from accessing the Ukrainian courts. The right to obtain legal advice is also provided under Article 15 of the Civil Procedural Code of Ukraine. Ex. 8 at 7.

35.     The Martial Law Regime also did not restrict Russian Parties from taking other steps to defend claims asserted against them in Ukrainian courts.  For example, Russian Parties can submit hard copies of court documents (perhaps by courier) or electronically pursuant to Article 43 of the Civil Procedural Code of Ukraine.  Ex. 8 at 9-10. Pursuant to Article 212 of the Civil Procedural Code of Ukraine, Russian Parties can also attend hearings via a videoconference. Ex. 8 at 20-21.  And pursuant to Article 211 of the Civil Procedural Code of Ukraine, Russian

---

[2] *See e.g.* Guide on Article 6 of the European Convention on Human Rights, 'Right to a Fair Trial (Civil Limb)' (updated 29 February 2024) paragraph 176 stating that Article 6 § 1 may sometimes compel the State to provide for the assistance of a lawyer when such assistance proves indispensable for an effective access to court, highlighting the importance of professional legal assistance for a fair trial (https://ks.echr.coe.int/documents/d/echr-ks/guide_art_6_eng-pdf).

Parties can request that the hearing be conducted based on their written submission without their presence. Ex. 8 at 20.

36.    The following cases were initiated after the implementation of the Martial Law Regime and confirm that Russian Parties have full and fair access to Ukrainian courts, are provided with notice and an opportunity to have their cases be heard, and can obtain legal representation:

    a.  **Matter No. 916/1947/22**, February 21, 2023: Russian citizen brought a claim challenging the decision of a general meeting of a business entity, "Markony" Ltd. Attached hereto as **Exhibit 15** is a true and correct copy of Matter No. 916/1947/22, for which a translation is provided by Google Translate (https://reyestr.court.gov.ua/Review/109344955).

    b.  **Matter No. 910/19191/21**, July 7, 2022: Russian plaintiff brought a claim represented by Ukrainian counsel; adjudicated in parties' absentia. Attached hereto as **Exhibit 16** is a true and correct copy of Matter No. 910/19191/21 for which a translation is provided by Google Translate (https://reyestr.court.gov.ua/Review/105147510).

    c.  **Matter No. 910/8991/21**, March 1, 2023: Concerning a business entity whose owner was a Russian citizen and whose legal representation was present at the hearing. Attached hereto as **Exhibit 17** is a true and correct copy of Matter No. 910/8991/21 for which a translation is provided by Google Translate (https://reyestr.court.gov.ua/Review/109741501).

    d.  **Matter No. 925/1248/21**, May 30, 2023: Concerning a business entity owned by a Russian citizen and was represented by Ukrainian counsel. Attached hereto as **Exhibit 18** is a true and correct copy of Matter No. 925/1248/21, for which a translation is provided by Google Translate (https://reyestr.court.gov.ua/Review/111709194).

    e.  **Matter No. 910/1418/23**, March 14, 2024: Plaintiff was beneficially owned by a Russian citizen and was represented by Ukrainian counsel (based on a warrant dated 01.23.2024 VA No. 1071053). Attached hereto as **Exhibit 19** is a true and correct copy of Matter No. 910/1418/23, for which a translation is provided by Google Translate (https://reyestr.court.gov.ua/Review/117684936).[3]

---

[3] The information about the Russian element in some matters cited herein is also based on the presentation by Oleg Vaskovkiy, the Judge and the Secretary of Judicial Chamber for Bankruptcy Cases of the Commercial Cassation Court of the Supreme Court at the XI International Arbitration readings in memory of Academician Igor Pobirchenko, 11 October 2024 (time 3:36:04) https://www.youtube.com/live/nwy17fxakVc?si=R5WaQRoJQ5PEm5e_.

f. **Matter No. 11-cc/803/1985/24**, November 7, 2024: Criminal proceedings against a Russian citizen who was present and had a legal representative at the hearing. Attached hereto as **Exhibit 20** is a true and correct copy of Matter 11-cc/803/1985/24, for which a translation is provided by Google Translate (https://reyestr.court.gov.ua/Review/122900126).

g. **Matter No. 1-кп/569/505/24**, June 14, 2024: Proceedings against 60 defendants, most of which were Russian citizens who had legal representation at trial. Attached hereto as **Exhibit 21** is a true and correct copy of Matter 1-кп/569/505/24, for which a translation is provided by Google Translate (https://reyestr.court.gov.ua/Review/119761082).

**The Courts Of England And Wales Have Found Ukrainian Courts To Be Fair And Impartial**

37.    Courts in the United Kingdom have concluded that the Ukrainian judicial system is fair and impartial during the period in which Ukraine has been under martial law. *WWRT Limited v. Kostiantyn Valentynovych Zhevago* [2024] EWHC 122 (Comm) is an example. Attached hereto as **Exhibit 22** is a true and correct copy of English Commercial Court case *WWRT Limited v. Kostiantyn Valentynovych Zhevago* [2024] EWHC 122 (Comm) (https://www.bailii.org/ew/cases/EWHC/Comm/2024/122.html).

38.    In *WWRT Limited v. Kostiantyn Valentynovych Zhevago* [2024] EWHC 122 (Comm), in a dispute between an English company and a Ukrainian defendant, the court considered whether the courts of England and Wales was a more appropriate forum to hear the dispute in light of the ongoing war in Ukraine. Notwithstanding that Ukraine was already under martial law, the court concluded that Ukraine had a functioning civil justice system:

> "192…The invasion of Ukraine in late February 2022 obviously had a significant impact, initially, on Ukraine's civil justice system. However, by early April 2022, the Russian army had retreated from the area closest to Kyiv. If one looks at the position as at 20 May 2022, it is clear that there had been very significant improvements from the position as at the end of February, and furthermore that there was an improving trend. There was, therefore, as at 20 May 2022, a functioning civil justice system …

11

194. It was common ground, of course, that there is some risk to life in Kyiv, which does not exist in London, because of air raids. However, this does not mean that there is a real risk that justice cannot be done in a country which has a functioning civil justice system …

195. … It is significant, in my view, that Ukraine was mounting a fierce defence of the country and showing a determination to return, as far as possible, to the ordinary functioning of the state. The fact that the civil justice system continued to function is consistent with that.

196. … The factual position is that the Russian invasion did have an immediate impact on functioning of the civil justice system in Ukraine. However, even if were to be assumed that, as at the end of February, the civil justice system had ceased to function, the question would arise: was that temporary or likely to be long-term or permanent? The evidence indicates that by 20 May 2022, as far as the Kyiv courts were concerned, the answer was: temporary only. There were already significant improvements by 20 May 2022, and the evidence of subsequent events confirms that the Kyiv courts had not and would not suffer a long-term or permanent cessation…

198. Accordingly, WWRT's case based upon the impact of the Ukrainian war fails."

Ex. 22 at 52-53.

39.    For these reasons, the Court in *WWRT Limited* held that there was no "real risk that substantial justice will not be done in Ukraine" and concluded that Ukraine was a proper forum for the dispute.  Ex. 22 at 60.

**The Ukrainian Action's Proceedings**

40.    According to the Ukrainian Unified Court Register, which published each order and decision of the Ukrainiain Court and all hearing-related information for the Ukrainian Action on the day of the decision or when an upcoming hearing date had been decided (or well in advance of it), the procedural history of the Ukrainian Action is as follows:

     a.  On March 2, 2023, upon Ismailov's filing his Statement of Claim, the Court ruled to open the proceedings initiated by Ismailov against Defendants and provided a preliminary hearing date of March 23, 2023 (the Statement of Claim with the March 2, 2023 order to initiate

12

proceedings, "Initiating Documents"). Attached hereto as **Exhibit 23** is a true and correct copy of the Ukrainian Court's March 2, 2023 ruling, for which a translation is provided by Google Translate (https://reyestr.court.gov.ua/Review/109441891).

b. On April 21, 2023, the Court ruled to add Bilalov as a third party-plaintiff, raising separate claims from Ismailov because they were substantially related to Ismailov's, and the Court adjourned the preliminary hearing to May 11, 2023. Attached hereto as **Exhibit 24** is a true and correct copy of the Ukrainian Court's April 21, 2023 ruling, for which a translation is provided by Google Translate (https://reyestr.court.gov.ua/Review/110369418).

c. On May 11, 2023, the Court ruled to finalize the preliminary hearing on the same date and listed the matter for trial on May 24, 2024. Attached hereto as **Exhibit 25** is a true and correct copy of the Ukrainian Court's May 11, 2023 ruling, for which a translation is provided by Google Translate (https://reyestr.court.gov.ua/Review/110868296).

d. On May 25, 2023 the Court entered a judgment in favor of Plaintiffs and against Defendants after holding a trial in absentia of the Defendants. Attached hereto as **Exhibit 26** is a true and correct copy of the Ukrainian Court's May 25, 2023 judgment against Defendants, for which a translation is provided by Google Translate (https://reyestr.court.gov.ua/Review/111761238).

e. On May 26, 2023 the Court made corrections to its judgment in relation to the distribution of court costs (the decision referred to in the Court's ruling dated September 25, 2023 cited in (h) below).

f. On June 27, 2023, the Ukrainian Court published the full text of its May 25, 2023 judgment in the public domain of the Ukrainian Unified Court Register. Attached hereto as **Exhibit 27** is a true and correct copy of the Ukrainian Court's May 25, 2023 judgment that was fully published on June 27, 2023, for which a translation is provided by Google Translate (https://reyestr.court.gov.ua/Review/111761242).

g. On August 29, 2023, the Ukrainian Court ruled to accept the application to clarify the judgment. Attached hereto as **Exhibit 28** is a true and correct copy of the Ukrainian Court's August 29, 2023 ruling, for which a translation is provided by Google Translate (https://reyestr.court.gov.ua/Review/113877146).

h. On September 25, 2023 the Court ruled to dismiss the application for clarification. Attached hereto as **Exhibit 29** is a true and correct copy of the Ukrainian Court's September 25, 2023 ruling, for which a translation

is provided by Google Translate (https://reyestr.court.gov.ua/Review/114072127).

41.    The Ukrainian Judgment became enforceable 30 days after the full text was issued, during which Defendants had the opportunity to appeal the Ukrainian Judgment to the Kyiv Court of Appeal. If Defendants did not receive the full judgment on the day it was issued or pronounced, they could request an extension of 30 days from the date Defendants received the Ukrainian Judgment. The right to an appeal within 30 days of receipt of the final judgment was confirmed in the publication of the Ukrainian Judgment in Exhibit 27. Ex. 27 at 13-14.

42.    The Ukrainian Judgment became binding and enforceable on June 25, 2023 as confirmed in the Ukrainian Unified Court Register's records. Ex. 27 at 13.

**Service On Defendants In The Ukrainian Action Was Proper Under Ukrainian Law**

43.    Pursuant to Articles 10(8) and 498 of the Civil Procedure Code of Ukraine, concerning service of a Ukrainian legal action's initiating documents in Russia, as a general rule, Ukrainian courts are required to follow the procedures established in existing international treaties between Russia and Ukraine. Ex. 8 at 5-6, 22-23. Presently (and at the time of the Ukrainian Action) there were two international treaties between Russia and Ukraine concerning service of Ukrainian initiating documents in Russia for civil matters: (i) the Convention on Legal Assistance and Legal Relations in Civil, Family and Criminal Matters of 1993 ("Minsk Convention"); and the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters of 1965 ("Hague Service Convention"). Attached hereto as **Exhibit 30** is a true and correct copy of  the Hague Service Convention, for which a translation is provided by Google Translate (https://www.hcch.net/en/instruments/conventions/status-table/print/?cid=17).

**The Minsk Convention Did Not Apply To Russian Parties**

44.     On December 2, 2022 (prior to the Ukrainian Action) Ukraine terminated the Minsk Convention in relation to Russia and Belarus, meaning that Ukraine no longer follows the Minsk Convention as it relates to Russia and Russian Parties. According to Article 72 of the Vienna Convention on the Law of Treaties ("VCLT") and Article 25 of the Law of Ukraine "On International Private Law," Ukraine is no longer required to comply with the Minsk Convention in relation to Russia. Therefore, the service of Ukrainian initiating documents could only have adhered to the Hague Service Convention.

45.     Attached hereto as part of **Exhibit 31** is a true and correct copy of Article 72 of the VCLT (https://legal.un.org/ilc/texts/instruments/english/conventions/1_1_1969.pdf). Ex. 31 at 26. Additionally, attached hereto as **Exhibit 32**, a true and correct copy of Article 25 of the Law of Ukraine "On International Private Law." Ex. 32 at 5.

**Service Under The Hague Service Convention Was Impossible**

46.     Russia has made broad prohibitions as to service of foreign legal documents under the Hague Convention. Russia has objected to service of documents by mail from persons outside of Russia under Article 10 (a); through judicial officers, officials, or other competent persons designated by Russia under Article 10 (c); and, by diplomatic and/or consular agents of Russia under Article 8. Attached hereto as **Exhibit 33**, is a true correct copy of a page from the Hague Service Convention's website entitled "Declaration/reservation/notification" (https://www.hcch.net/en/instruments/conventions/statustable/notifications/?csid=418&disp=resdn).

47.     As a result, Russia accepts service under Article 5 of Hague Service Convention only via its designated Central Authority. Ex. 30 at 3.

48.     Attached hereto as **Exhibit 34** is a true and correct copy of excerpts from the Practical Handbook on the Operation of Service Convention, including paragraphs 121 and 122. Under Article 3 of the Hague Service Convention, a request for service to Russia's Central Authority may be forwarded only by an "authority or judicial officer competent under the law of the State in which the documents originate." Ex. 34 at 7.

49.     In this context and according to the Practical Handbook on the Operation of Service Convention, the Hague Service Convention sets the minimum requirement that the request for service be forwarded by an "authority" or a "judicial officer," but leaves it to the requesting state (*i.e.* Ukraine) to determine who qualifies as a competent authority or judicial officer in the sense of Article 3. As set forth in paragraphs 121 and 122 of the Practical Handbook on the Operation of Service Convention, private persons are not entitled to directly send a request for service to the Central Authority. Ex. 34 at 7.

50.     Ukrainian courts commonly hold that the service of any documents to the competent authorities of Russia, including through diplomatic channels, is currently impossible. One such example is the Matter No. 913/268/24 from the Commercial Court of Luhansk Oblast. Attached hereto as **Exhibit 35** is a true and correct copy of the Commercial Court of Luhansk Oblast's    May    8,    2024    decision    in    Matter    No.    913/268/24 (https://lg.arbitr.gov.ua/sud5014/342345657568896969/1603119/), accessed on November 6, 2024, and translated by Google Translate.

51.     In Matter No. 913/268/24, when considering the application of the Hague Service Convention, the Commercial Court of Luhansk Oblast said:

> "According to the letter of the Ministry of Justice of Ukraine dated 21.03.2022 No. 25814/12.1.1/32-22 'On ensuring the implementation of international treaties of Ukraine during martial law,' taking into account the norms of customary law regarding the termination of the application of

16

international treaties by states during the military conflict between them, it is recommended not to carry out any correspondence related to cooperation with institutions of the Russian Federation on the basis of international treaties of Ukraine on international legal relations and legal cooperation in civil cases and in the field of private international law…***Therefore, the transfer of any documents to the competent authorities of the Russian Federation, including through diplomatic channels, is currently impossible*** (letter of the Ministry of Justice of Ukraine dated 31.10.2022 No. 100817/98748-22-22/12.1.3)."[4] (Emphasis added).

Ex. 35 at 10-12.

52.    The Supreme Court of Ukraine (the highest court in Ukraine) has also found it to be impossible to serve Russian Parties in Russia in accordance with the Hague Service Convention. Similarly, the Ukrainian Arbitration Association's Recommendations for Ensuring Fair Judicial Standards When Considering Claims Against the Russian Federation ("UAA Recommendations") found that it is generally accepted that due to the severed diplomatic relations between Ukraine and Russia, it is currently impossible to serve Ukrainian court documents in Russia under the Hague Service Convention (section II page 9). Attached hereto as **Exhibit 36** is a true and correct copy of the Ukrainian Arbitration Associations Recommendations for Ensuring Fair Judicial Standards When Considering Claims Against the Russian Federation, (http://arbitration.kiev.ua/Uploads/Admin/%D0%A0%D0%B5%D0%BA%D0%BE%D0%BC%D0%B5%D0%BD%D0%B4%D0%B0%D1%86%D1%96%D1%97.pdf) as translated by Google Translate.

---

[4] A similar position has also been adopted by other courts, *see e.g.* the Court Decree № 115428265, 30.11.2023, case no. 314/5214/23, available online at: Єдиний державний реєстр судових рішень (court.gov.ua). Judgment of the Commercial Court of Zaporizhzhya Oblast dated 14.12.2023, case no. 908/1100/22(908/2326/23), available at < https://zp.arbitr.gov.ua/sud5009/gromadyanam/advert/1617147/; the Judgment of Kyiv Commercial Court dated 14.03.2023, case no. 910/11505/22, available at: Єдиний державний реєстр судових рішень (court.gov.ua); the Decree of Zhovtneviy Region of Kryvyi Rig City dated 19.05.2023, case no. 212/3633/21, available at: Єдиний державний реєстр судових рішень (court.gov.ua);

**Recognized Means Of Alternative Service Under Ukrainian Law**

53.    Given the impossibility of effectuating service on Defendants under the Hague Service Convention, serving Defendants by alternative means at the court's discretion would not contradict the Hague Service Convention and would be proper so long as that service comported with Ukraine's concepts of due process and ensured Defendants' right to a fair trial in Ukraine.

54.    The Supreme Court of Ukraine, in a decision issued on June 16, 2023, in Matter No. 926/4889/22 ("Matter No. 926/4889/22") confirmed that notwithstanding the institution of martial law, providing notice to a defendant that a case has been initiated against them is imperative for ensuring defendants' rights to a fair trial were preserved.

55.    Note the decision from Matter No. 926/4889/22 is unavailable for public access as prohibited by the Ukrainian Unified Court Register. However, the decision has been quoted in "The Review of Judicial Practice of the Cassation Economic Court within the Supreme Court of Ukraine regarding the Service Abroad of Court Documents in Commercial Matters" ("Review of Judicial Practice"). Attached hereto as **Exhibit 37** is a true and correct copy of the Review of Judicial Practice for which a translation has been provided by Google Translate (https://supreme.court.gov.ua/userfiles/media/new_folder_for_uploads/supreme/ogliady/Oglyad_KGS_2023.pdf).

56.    Article 128 of the Civil Procedural Code of Ukraine provides that courts are responsible for issuing court summons-notices by: (i) personal service; (ii) registered mail or courier; or if required (iii) *by other means including email and publication of an announcement on the official website of Ukraine's judicial authorities*.  Ex. 8 at 15-16.

57.    As set forth herein, personal service of Ukrainian initiating documents on a party located in Russia could only have adhered to the Hague Service Convention, which is impossible.

18

Notwithstanding the impossibility of serving in accordance with the Hague Service Convention, personal service of any documents on a party located in Russia is impossible for a civil case pending before a Ukrainian court due to the ongoing war between Russia and Ukraine.

58.     Pursuant to the notice of the Joint Stock Company "Ukrposhta" (the Ukrainian national postal service), posted on February 25, 2022, postal cooperation with the Russian Post has been terminated, and parcels and transfers to Russia are no longer accepted.[5]  Accordingly, service by mail from inside Ukraine to Russia cannot be effectuated.  Attached hereto as **Exhibit 38** is a true and correct copy of the February 25, 2022 Notice from Ukrainian national postal service (https://www.ukrposhta.ua/ua/news/57561-ukrposhta-chastkovo-vidnovlju-robotu-viddilen-de-ce-bezpechno-dlja-klintiv-i-pracivnikiv), for which a translation has been provided by Google Translate.

59.     Where personal service, service by registered mail or courier, and service under the Hague Service Convention are impossible and/or impracticable (see above regarding the impossibility of effectuating service pursuant to the Hague Convention), Ukrainian courts commonly notify Russian defendants pursuant to Article 128 of the Civil Procedural Code of Ukraine by publishing an announcement of court proceedings on the official website of the Judicial Power of Ukraine: https://court.gov.ua/. Ex. 8 at 15-16. Such notice comports with Ukraine's concepts of due process.

60.     Ukrainian courts and parties also can take additional steps to ensure a defendant's notice of an action, including effectuating service by email.  In Matter No. 913/268/24, the Commercial Court of Luhansk Oblast held that because service pursuant to the Hague Service

---

[5] Decree on the opening proceedings in the matter, case No. 913/268/24, proceedings No. 16/913/268/24, available at: Господарський суд Луганської області (arbitr.gov.ua) .

Convention was not possible, then service on the defendants by email and mail to Russian Embassies in Poland and the Czech Republic (effected by the claimant itself), and publication on the court's official website (effected by the court) was (in totality) sufficient. Ex. 35 at 2-3.

**Service On Defendants Was Proper Under Ukrainian Law**

61.     Service of process was properly effectuated in the Ukrainian Action. Specifically, on March 2, 2023, the Ukrainian Court opened the proceedings and confirmed that Defendants needed to be served with the Statement of Claim and had to provide a defense by March 23, 2023. Ex. 23 at 2-3.

62.     It appears that in the first instance, the Ukrainian Court may have attempted to serve the documents by post on the same day (March 2, 2023) (FAC Ex. E, noting references No. 376/560/23/1598/2023,     No.     376/560/23/1599/2023,     No.     376/560/23/1600/2023,     No. 376/560/23/1601/2023, No. 376/560/23/1602/2023, No. 376/560/23/1603/2023, which would be usually adopted for correspondence). This is likely a clerical error as such a service was and is impossible as stated above. The Ukrainian Court did not comment and/or rely on this in its judgment.

63.     Although not referenced by the Ukrainian Court, pursuant to Ismailov, on March 9, 2023, the Ukrainian Initiating Documents were sent by Ismailov's personal channels in Moldova to Moscow to be mailed to Sberbank directly from Moscow.  Accordingly, on or about March 9, 2023, from a post office in Moscow, the Ukrainian Initiating Documents were mailed to its corporate address, 19 Vavilova Street, Moscow 117312, Russia.  *See* Ismailov Decl. ¶56; Ismailov Decl. Ex. 12.

64.     On March 23, 2023, the Court served Defendants via email from inbox@sk.ko.court.gov.ua. The following addresses had successful delivery notifications

kuznecov.s.k.1962@gmail.com and m.s.guceriev@gmail.com.

65.    By its website, the Ukrainiain Court also published each of its decisions and orders in the Ukrainian Action and all hearing-related information on the day that the respective decisions were issued and when a hearing date had been decided – or well in advance thereof. On March 2, 2023, the Ukrainian Court published the initiation of the case and the summons to Defendants and provided notice of the upcoming March 23, 2023 hearing (which was not held and was rescheduled). On April 25, 2023, the Ukrainian Court published the summons and provided notice of the upcoming May 11, 2023 hearing.  On May 11, 2023, the Ukrainian Court published the summons and provided notice of the upcoming May 24, 2023 hearing. Such notice was done on the official website of the Judicial Power of Ukraine: https://court.gov.ua/. FAC Ex. E at 21-27.

66.    Based on the Court's service by email and publication, and Ismailov's service by mail to Sberbank, service of the Ukrainian Initiating Documents was made in accordance with Article 128 of the Civil Procedural Code of Ukraine. Ex. 8 at 15-16; *see supra* ¶¶50-51, Ex. 35 (Matter No. 913/268/24). The efforts undertaken were reasonable and provided Defendants with adequate notice of the Ukrainian Action.

67.    The propriety and sufficiency of service in the Ukrainian Action was confirmed by the Ukrainian Court when it stated: "The defendants did not appear at the court session, the time and place of the case hearing were properly notified by sending summons notices to e-mail addresses known to the court and by posting announcements on the official website of the judicial authorities of Ukraine (Vol. 1 a. c. 136, 137, p. 177)." Ex. 27 at 5.

**The Ukrainian Court Had Personal And Subject Matter Jurisdiction Over Plaintiffs' Claims**

68.    Pursuant to Article 19 of the Civil Procedural Code of Ukraine, the Ukrainian Court is a court of general jurisdiction, including subject matter and personal jurisdiction. It is authorized

to "consider cases arising from civil, land, labor, family, residential and other legal relations in the order of civil proceedings…" which includes claims for lost profits. Ex. 8 at 7-8.

69.      In the Ukrainian Action, Ismailov (a Ukrainian citizen) initiated a case for lost profits under Ukrainian tort law against Defendants.  Ismailov had a right to bring his claim for lost profits before the Ukrainian Court.

70.      On March 2, 2023, the Ukrainian Court determined that it had jurisdiction stating that "[t]he statement of claim was filed in compliance with the requirements of Articles 175-177 of the Civil Procedure Code of Ukraine, referred to the subject matter, personal, instance and territorial jurisdiction of the court." Ex. 23 at 2. The Ukrainian Court correctly made this determination.

71.      Article 76 of the Law of Ukraine "On International Private Law" ("Article 76") establishes the basis for the courts of Ukraine to have personal and subject matter jurisdiction over a dispute involving a "foreign element." Ex. 32 at 13.

72.      Article 76 sets forth that Ukrainian courts have personal and subject matter jurisdiction over any case with a foreign element, including "(5) if in the case of compensation for damages, the claimant a natural person has a personal place of residence in Ukraine or a legal person – the defendant – has a place of residence in Ukraine…." Ex. 32 at 13.

73.      Article 1 of the Law of Ukraine "On International Private Law" defines "foreign element" as private law relations that manifests itself in (inter alia) when at least one participant is a citizen of Ukraine who lives outside Ukraine, a foreigner, a stateless person or a foreign legal entity. Ex. 32 at 1.

74.      The Ukrainian Court had personal jurisdiction over Defendants and subject matter jurisdiction over the Ukrainian Action under Section 5 of Article 76. This is because, in the

Ukrainian Action, Plaintiffs brought a claim for damages (lost profits), Ismailov is a resident of Ukraine, and Defendants are foreigners and a foreign legal entity.

75.     Defendants challenge the Ukrainian Court's subject matter jurisdiction over the Ukrainian Action under Article 76, maintaining that no subject matter jurisdiction exists because, in their view, Article 76 applies only to claims involving personal injury and not to commercial disputes or contractual disputes.  Sb. Br. at 41; Hut. Br. at 27.  Defendants are incorrect.

76.     Article 76 is applicable to commercial and contractual disputes such as the one presented in the Ukrainian Action. The language of Article 76 does not limit subject matter jurisdiction to personal injury actions but refers to compensation of damages.  According to Article 22(2)(2) of the Civil Code of Ukraine, lost profits also falls within the category of damages ("shkoda" the Ukrainian word used in Article 76 can mean "harm" (including personal injury) or "property damage").

77.     Importantly, under Article 75 of the Law of Ukraine, "On International Private Law," jurisdiction of the courts of Ukraine for cases with a foreign element is determined at the time the proceedings are opened even if during the proceedings the basis for such jurisdiction changes. Therefore, it is irrelevant that Bilalov, who joined the proceedings after the Ukrainian Court confirmed it had jurisdiction to consider the claim, did not have a place of residence in Ukraine. Ex. 32 at 13.

78.     Here, at the time the Ukrainian Action was commenced by Ismailov, Ismailov was the only plaintiff. For that reason, the Ukrainian Court determined that it had jurisdiction to hear Ismailov's claims. Ex. 23 at 2. After the Ukrainian Court determined that it had jurisdiction over Ismailov's claims, Bilalov moved (and the Court allowed) his third-party claims to be joined to Ismailov's. The addition of Bilalov's third-party claims do not change or remove the Ukrainian

Court's jurisdiction over the entire dispute. Simply put, jurisdiction extended to Bilalov's claims when the Ukrainian Court added Bilalov's claims to the Ukrainian Action.

**The Sales Agreement**

79.    The Sales Agreement provides that Zeeland was to sell its 817 shares of the Company to BIN Group in exchange for $200 million, which was to be paid within 30 days. FAC Ex. A at ¶¶1-2. BIN Group was to acquire the 817 shares of the Company for and on behalf of Sberbank, and Sberbank was to provide a $15 billion line of credit to BIN Group in exchange for BIN Group's acquisition of the shares for and on behalf of Sberbank. FAC Ex. A at ¶¶3-4.

80.    Paragraph 5 of the Sales Agreement is a dispute resolution clause that contains a forum selection provision that shows that the parties agreed to submit all disputes to any court of the CIS, within 10-years from the date of the Sales Agreement's execution. FAC Ex. A at ¶5.

81.    Ukraine was a founding member of the CIS and the official CIS website still identifies Ukraine as a member state. Attached hereto as **Exhibit 39** is a true and correct copy of the official CIS website identifying Ukraine as a member state, for which a translation is provided by Google Translate (https://e-cis.info/country/).

82.    Based on my experience drafting, analyzing and seeking to enforcing similar agreements with Eastern European parties, Paragraph 5 comprises both an applicable law and a forum selection provision. Accordingly, the parties to the Sales Agreement agreed to submit their Sales Agreement-related disputes to the Ukrainian Court to be considered under Ukrainian law.

83.    Defendants also challenge the supposed veracity of the Sales Agreement and claim that the Sales Agreement must be a forgery because it is somehow nonsensical that a $200 million contract would be only a single page. Sb. Br. 12; Sanctions Br. at 1-2, 8, 28; Hut. Br. at 2, 8-9. Defendants' challenge to the length of the Sales Agreement is misplaced.

84.    Throughout my career advising clients in Ukraine and (more generally) in Eastern Europe, I have seen similarly-styled agreements executed by parties.  These agreements are typically drafted by in-house lawyers, irrespective of the contract's value and significance. Such agreements are usually signed in one of the following circumstances: (i) when the parties are affiliated; (ii) when the parties have a high degree of trust between them; or (iii) there is an expectation that a conflict is unlikely to arise.

85.    Simply, the length, sophistication, and value of the contract is not indicative of foul play, forgery, or the validity and/or enforceability of the contract at issue.

86.    Based upon my review of the Court's findings in the Ukrainian Action, the Ukrainian Court did not have any concerns as to the validity or enforceability of the Sales Agreement.  In my experience, if the Ukrainian Court had reason to suspect that the Sales Agreement was a forgery or was in some other way illegitimate, the Ukrainian Court would have conducted its own analysis. *See* Ex. 27.

87.    Indeed, the Ukrainian Court did exactly this with other documents related to the Ukrainian Action. For instance, in this same case, the Ukrainian Court found that signatures in three separate agreements were in fact forgeries and that shares in the Company were alienated in reliance on the forged documents.  In this instance, the Ukrainian Court utilized a handwriting expert and information procured from a related criminal proceeding (No. 12022100030002505 dated September 28, 2022) to determine that the documents were indeed forged.

I, OLEKSANDRA VYTIAGANETS, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: November 18, 2024

_____

OLEKSANDRA VYTIAGANETS