# EXHIBIT 18

Case category no **925/1248/21: not defined.**

Sent for publication: **06/22/2023.** Registered: **06/23/2023.** Provision of general access: **23.06.2023.**

Effective date: **05/30/2023**

Number of court proceedings: **not determined**


Верховний Суд

**DECREE**

**ON BEHALF OF UKRAINE**

May 30, 2023

Kyiv

Law no. 925/1248/21

**The Supreme Court as part of the panel of judges of the Commercial Court of Cassation:**

Vaskovsky OV - chairman, SV Zhukov, V.Ya. Pogrebnyak,

with the participation of the court session secretary Aliferenko TV

**considered the cassation appeal** of the limited liability company "Smilyansk Electromechanical Plant"

**on the resolution** of the Northern Commercial Court of Appeal (chairman - BM Grek, judges: VO Pantelienko, BM Polyakov) dated November 8, 2022

**according to the statement** of the Joint Stock Company "International Reserve Bank"

**to** Joint-Stock Company "Scientific and Production Enterprise "Smilyansk Electromechanical Plant"

**about** being declared bankrupt.

**Participants in the case:**

representative of the creditor (International Reserve Bank Joint Stock Company) - MA Razumov, lawyer,

the representative of the creditor (complainant - Limited Liability Company "Smilyansk Electromechanical Plant") - did not appear,

the debtor's representative did not appear.

1. **Summary of requirements**

**1.1.** On 22.10.2021, the Economic Court of the Cherkasy Region decided to open, at the request of the joint-stock company "Sberbank" (new name the Joint-Stock Company "International Reserve Bank", hereinafter - the Creditor) in the bankruptcy case of the Joint-Stock Company "Scientific and Production Enterprise "Smilyansk Electromechanical Plant" (hereinafter - the Debtor), recognition of the Creditor's monetary claims to the Debtor in the amount of UAH 219,328,988 65 kopecks, as secured by the Debtor's property, in the amount of UAH 76,700 00 kopecks (the first stage of satisfaction), in the amount of UAH 8,782,892 53 kopecks (fourth stage of satisfaction), in the amount of 118,301,214 kopecks (sixth stage of satisfaction), introduction of the property disposal procedure, moratorium on the satisfaction of creditors' claims and the appointment of Demchan's arbitration manager, etc.

**1.2.** On 11/23/2021, the creditor submitted an application with the following requirements:

- to accept the Lender's refusal of part of the security, namely the pledge under the pledge agreement No. 4 dated 04/29/2013, according to which the subject of the pledge is the right to claim cash proceeds for the delivered goods, with a pledge value of UAH 50,000,000 00 kopecks. (hereinafter - Pledge Agreement);

- to change the sequence of claims of the Creditor in the amount of UAH 50,000,000 00 kopecks recognized by the decision of the Commercial Court of the Cherkasy Region dated October 22, 2021. (42,878,468 UAH 45 kopecks - part of the debt for the body of the loan under Credit Agreement-2, 7,121,531 UAH 55 kopecks - inflationary losses for the Debtor's failure to fulfill the obligation to return the body of the loan under the same agreement) from secured collateral to bankruptcy creditor claims with the fourth round of repayment;

- recognize additional monetary claims against the Debtor in the amount of UAH 73,561,588 15 kopecks, consisting of: expenses for payment of court fees in the amount of UAH 4,540 00 kopecks. - with pleasure, first of all, in the amount of UAH 63,068,552 99 kopecks. requirements of the fourth stage and in the amount of UAH 10,488,495 16 kopecks. - requirements of the sixth stage.

**1.3.** The application is based on the Debtor's indebtedness under credit agreements concluded with the Creditor, due to the lateness of the Debtor's fulfillment of the relevant obligations, the amount of which was not considered in the preparatory meeting; the right of the Creditor to refuse to provide security for part of the claims in the amount of UAH 50 million, as well as the corresponding need to change the order of satisfaction of claims for this amount.

**1.4.** On 11/23/2021, the Creditor also submitted an application to refuse part of the security, which is justified by the Creditor's right to refuse security for part of creditor claims in the amount of UAH 50 million. and the need to change the sequence of meeting requirements for this amount.

**1.5.** 11/23/2021 LLC "Representative of NPP Smilyansk Electromechanical Plant", city of Moscow, Russian Federation (hereinafter - LLC) submitted an application for recognition of monetary claims to the Debtor in the amount of UAH 18,147,851 79 kopecks.

**1.6.** The statement is substantiated by the Debtor's improper performance of his obligations to the Creditor under contract No. 50/129 dated 01.04.2013, contract No. 55/201 dated 11.02.2019, contract No. 57-10.1/16 dated 08.05.2019 concluded between them, as a result of which The Debtor is indebted to the Creditor for goods not delivered by him under these agreements for the stated amount of monetary claims.

**2.    Summary of the decision of the court of first instance**

**2.1.** On July 7, 2022, the Commercial Court of the Cherkasy Region decided, in particular, on:

- leaving without consideration the application of the limited liability company Representation of the NVP Smilyansk Electromechanical Plant;

- recognition of additional requirements of the Creditor, subject to entry into the register of creditors' claims against the Debtor in the amount: UAH 589 30 kopecks. (first round of repayment), UAH 9,546,631 06 kopecks. (fourth round of repayment);

- rejection of the remaining additional requirements of the Creditor in the amount of UAH 64,010,417.09;

- acceptance of the Lender's refusal of part of the security, namely the pledge under pledge agreement No. 4, concluded on 04/29/2013 between JSC Sberbank and the Debtor, according to which the subject of the pledge is the right to claim cash proceeds for the delivered goods, with a pledge value in the amount of 50,000,000 UAH 00 kop.;

- establishing that the Creditor's claims against the Debtor in the amount of 50,000,000 UAH 00 kopecks, consisting of part of the overdue debt for the body (amount) of the loan under the agreement on opening a credit line No. 76-В/13/35/ЮО/КЛ in the amount 42,878,468 UAH 45 kopecks and inflationary losses due to the Debtor's failure to fulfill the obligation to return the body (amount) of the loan under the agreement on opening a credit line No. 76-В/13/35/ЮО/КЛ in the amount of UAH 7,121,531 55 kopecks. and recognized by the court decision dated 10/22/2021 are those that are subject to entry into the register of creditors' claims (fourth round of repayment), the Creditor's claims in the amount of UAH 169,328,988 65 kopecks, recognized by the court decision dated 10/22/2021 as secured, are as follows, which are to be entered in the register of creditors' claims separately, and the rest of the Creditor's claims to Debtors recognized by the court decision dated October 22, 2021 are subject to entry into the register of creditors' claims in accordance with the order established in the decision.

**2.2.** The court decision regarding the Creditor's additional claims **is motivated by** the validity and evidence of these claims for part of the claimed amount, taking into account:

- the failure of the court to consider part of the claims and the absence of a decision to reject the claims in the amount of UAH 73,561,588 15 kopecks, specified in the application for opening proceedings in the bankruptcy case due to the existence of a legal dispute regarding them;

- the court-accepted refusal of the Creditor to provide security for claims in the amount of 50,000,000 UAH 00 kopecks, which is the basis for their inclusion in the register of claims of creditors with repayment in the fourth tier;

- the fact of securing these requirements of the Creditor with a pledge, including, and in accordance with the pledge agreement No. 4 dated 29.04.2013 between the Creditor and the Debtor, according to which the subject of the pledge is the right to claim cash proceeds for the delivered goods with a pledge value of 50,000,000, UAH 00, due to which the balance of the Creditor's claims, which are secured by the Debtor's property, amounts to 169,328 UAH 988 65 kopecks. (219,328,988 UAH 65 kopecks (which were already recognized by the court) - 50,000,000 UAH 00 kopecks);

- the fact that the debtor of the mortgagor in this part of the claims is LLC "Representative of NPP Smilyansky Electromechanical Plant", Moscow, Russian Federation (code 50877746028662);

- lack of grounds for recognition of monetary claims in the amount of UAH 1,817,241 66 kopecks. interest for the legitimate use of the loan, accrued under credit agreements for the period from 04/30/2018 to 01/31/2019 in accordance with the unjustified increase from 17.5% fixed rate to 2% interest rate to 19.5% - in the absence of appropriate changes to credit agreements voluntarily or judicially;

- lack of grounds for recognition of additional monetary claims regarding the accrued penalty - UAH 10,488,495 16 kopecks. and inflationary losses - UAH 306,720 58 kopecks. for late payment of the above-mentioned interest increased by 2 points in the period indicated by the bank;

- lack of grounds for recognizing the entire amount of additional claims in the amount of 60,702,103 UAH 95 kopecks, only from this amount 5,635,588 UAH 82 kopecks. (under Credit Agreement-1) and UAH 3,703,196 40 kopecks. (according to Credit Agreement-2) for improper use of credit funds, taking into account 3% per annum of the overdue amount, for the period from 02.01.2019 to 09.08.2021 for a debt of UAH 72,251,138 77 kopecks, since these amounts are calculated on the basis of clause 6.2 credit agreements and Article 625 of the Civil Code of Ukraine, while in Chapter 6 of the agreements there are no provisions on changing the 3% annual interest rate established by the specified article to any other amount of these interest rates;

- the validity of demands for interest payments for the use of credit under Credit Agreement-1 in the amount of UAH 207,845. 84 kopecks (out of the 242,486 hryvnias 80 kopecks declared by the Creditor), which were not considered at the preparatory meeting and were not recognized by the

court, taking into account that according to the correct amount of interest for the use of the loan, accrued for the period from April 30 to May 28, 2018 with a rate of 17, 5% per annum on a debt of UAH 72,251,138 77 kopecks, the interest debt amounts to UAH 969,946 79 kopecks, of which UAH 668,072 24 kopecks. were recognized by the Creditor as paid (301,874 UAH 55 kopecks - 94,028 UAH 71 kopecks = 207,845 UAH 84 kopecks);

- lack of grounds for consideration of the statement submitted by the Limited Liability Company "Representative of NVP Smilyansky Electromechanical Plant", Moscow, with monetary claims to the Debtor in the amount of UAH 18,147,851 79 kopecks. due to the legally established moratorium (ban) on the fulfillment of monetary obligations to this creditor, which was created and registered in accordance with the legislation of the Russian Federation, as well as taking into account the inadmissibility of the possibility of participation of such legal entities and the Russian Federation in the representative bodies of creditors with further influence on the procedure for restoring solvency The debtor is a business entity of Ukraine.

3. **Summary of the decision of the appellate court**

**3.1.**   On November 8, 2022, the Northern Commercial Court of Appeal decided: to dismiss the Debtor's appeal, and to satisfy the Creditor's appeal; to change the decision of the Economic Court of Cherkasy Region dated 07.07.2022, satisfying the Creditor's application for recognition of additional monetary claims against the Debtor and recognizing these claims of the Creditor against the Debtor in the amount of UAH 4,540 00 kopecks. - with pleasure, first of all, in the amount of UAH 53,521,921 93 kopecks. - with pleasure in the fourth place and in the amount of UAH 10,488,495 16 kopecks. - with pleasure in the sixth place; exclude from the decree of the Cherkasy region dated 07.07.2022 the paragraph with the decision to reject the remaining additional claims of the Creditor in the amount of UAH 64,010,417 09 kopecks; in the rest, leave this decision of the local court unchanged.

**3.2.**   The court decision **is motivated by** the validity of the decision of the local court to leave without consideration the application of the Limited Liability Company "Representative of NVP Smilyansk Electromechanical Plant" with monetary claims to the Debtor due to the lack of grounds for its substantive consideration (satisfaction, rejection) as a result of the introduced moratorium on the fulfillment of monetary obligations before this creditor, established and registered in accordance with the legislation of the Russian Federation, with the possibility of consideration of such claims on the merits after the cancellation of the specified moratorium.

In terms of the additional requirements of the Creditor, the court decision is motivated by the validity of the entire amount of additional monetary claims declared to the Debtor in view of the conditions agreed by the parties in the credit agreements for the application of an interest rate increased by 2% - up to 19.5%, the need to pay this interest also for the period of improper use with credit funds - until the moment of their return in full, given the proof of the grounds for this - violation by the borrower (Debtor) of the conditions in clause 2.4 of Appendix No. 1 of each of the credit agreements, as well as taking into account the validity and correctness of arithmetic calculations of other declared amounts as part of additional monetary claims that were not considered by the court in the preparatory session in this case.

4. **Circumstances established by the courts**

**4.1.**   On December 9, 2021, the state registration of changes to the Charter of the joint-stock bank Sberbank, which were approved by the National Bank of Ukraine on November 22, 2021, was carried out.

According to clause 1.4. The bank's charter in the new version, the full official name of the bank in Ukrainian is International Reserve Bank joint-stock company, the abbreviated official name of the bank is JSC MR BANK.

In accordance with the decision of the Board of the National Bank of Ukraine No. 91-rsh/BT dated 25.02.2022 "On revoking the banking license and liquidation of the International Reserve Bank joint-stock company", the Executive Directorate of the Deposit Guarantee Fund of Individuals adopted decision No. 131 dated 25.02.2022 "On the start of the liquidation procedure JSC MR BANK and delegation of powers of the liquidator of the bank".

On 25.02.2022, the liquidation procedure of JSC MR BANK was started for a period of three years from 25.02.2022 to 24.02.2025 inclusive.

The specified information is public and posted on the website of the Individual Deposit Guarantee Fund.

**4.2.**   The decision of the National Security and Defense Council of Ukraine (NSDC) dated May 11, 2022 established:

- to forcibly withdraw corporate rights in the amount of 100 percent of the property of the joint-stock company International Reserve Bank (code according to the EDRPOU - 25959784, location: 01601, Kyiv, Volodymyrska St. 46), belonging to the public joint-stock company Sberbank of Russia (location: Russian Federation , 117997, Moscow, Vavilova Street, 19, registration number - 1027700132195).

The Cabinet of Ministers of Ukraine, the Individual Deposit Guarantee Fund, with the participation of the National Bank of Ukraine, to ensure the compulsory seizure of the objects of ownership of the Russian Federation and its residents specified in this decision within ten days from the date of publication of the Decree of the President of Ukraine on the implementation of this decision

**4.3.**   During the preparatory session, the court established that the Creditor's claims in the application for opening proceedings in the Debtor's bankruptcy case in the amount of UAH 219,328,988 65 kopecks, as secured by a pledge of the Debtor's property, consist of payment claims:

- interest for legitimate use of credit under credit agreement No. 75-В/13/35/ЮО/КЛ dated 29.04.2013 (hereinafter - Credit Agreement-1) - USD 333,199.65, which is at the official rate of the NBU (USD 1 as of September 16, 2021 is UAH 26,645) is UAH 8,878,104 67 kopecks. and 36,638,807 UAH 54 kopecks;

- inflationary losses for late payment of interest for legitimate use of credit under the Credit Agreement -1 - UAH 5,495,821 13 kopecks;

- interest for the legitimate use of credit under contract No. 76-В/13/35/ЮО/КЛ dated 29.04.2013 (hereinafter - Credit contract-2) - 88,670.77 US dollars, which is at the official rate of the NBU (1 US dollar as of as of September 16, 2021 is UAH 26,645) is UAH 2,362,632 67 kopecks. and

UAH 27,716,780 30 kopecks;

- inflationary losses for late payment of interest for legitimate use of credit under the Credit Agreement -2 - 4,157,517 UAH 05 kopecks;

- commission for credit management under the Credit Agreement -1 - 2,587,500 UAH 00 kopecks;

- commission for credit management under the Credit Agreement -2 - 2,587,500 UAH 00 kopecks;

- parts of overdue debt for the body of the loan under the Credit Agreement -1 - UAH 67,859,692 35 kopecks;

- parts of overdue debt for the body of the loan under the Credit Agreement -2 - UAH 43,085,430 57 kopecks;

- inflationary losses due to the Debtor's failure to fulfill the obligation to return the loan amount under the Credit Agreement -1 - UAH 10,837,670 82 kopecks;

- inflationary losses due to the debtor's failure to fulfill the obligation to return the loan under the Credit Agreement -2 - 7,121,531 UAH 55 kopecks.

4.4. Competitive creditor claims in the amount of UAH 127,160,807 39 kopecks, which are repaid in accordance with the sequence established by law and consist of:

- 76,700 UAH 00 kopecks - the first level of satisfaction (expenses from the payment of the court fee for filing the application 22,700 UAH 00 kopecks and the advance payment to the arbitration manager of three amounts of the minimum wage for three months of the performance of powers 54,000 UAH 00 kopecks):

- UAH 8,782,892 83 kopecks - the fourth stage of satisfaction, namely: the balance of debt for the body of the loan under the Credit Agreement - UAH 1 4,391,446 42 kopecks; balance of debt for the body of the loan under the Credit Agreement -2 4,391,446 UAH 41 kopecks:

- 118,301,214 UAH 56 kopecks. - the sixth stage of satisfaction, namely: penalty for late repayment of debt under the loan under the Credit Agreement -1 - UAH 41,164,150 15 kopecks: penalty for late repayment of debt under the loan under the Credit Agreement -2 - UAH 27,053,086 24 kopecks .; penalty for late payment of interest for using credit under the Credit Agreement -1 - UAH 29,108,534 19 kopecks; penalty for late payment of interest for using credit under the Credit Agreement -2 - UAH 18,055,162 42 kopecks; penalty for late payment of the loan commission under the Credit Agreement -1 - 1,460,140 UAH 78 kopecks; penalty for late payment of the loan commission under the Credit Agreement -2 -1 460 140 UAH 78 kopecks.

4.5. The court took into account the response of the Debtor and the fact that he recognized the requirements of the Creditor in this part.

The decision of the Commercial Court of the Cherkasy Region dated 10/22/2021 has entered into force.

With regard to the rest of the requirements stated by the Creditor in the application for the opening of proceedings in the case, the court agreed with the Debtor's arguments regarding the existence of a legal dispute, in particular, regarding the obligations to pay interest on debt for the use of credit funds in the amount of 62,746,907 UAH 83 kopecks, regarding obligations penalty for late payment of interest accrued in national currency for a total of 10 488,495 hryvnias 16 kopecks, as well as regarding obligations to pay inflationary losses in the amount of 306,720 hryvnias 58 kopecks, calculated as interest.

The decision to reject the Creditor's claims in the amount of UAH 73,561,588 15 kopecks. due to the consequences of the preparatory meeting, the court did not accept.

4.6. The court in the preparatory session established that the Creditor's claims are secured by a pledge, including in accordance with the pledge agreement No. 4 dated 04/29/2013 between the Creditor and the Smilyansk Electromechanical Plant joint-stock company.

In accordance with the terms of clause 3.1. of the pledge agreement, the subject of the pledge was transferred to the Lender's pledge - the right to claim cash proceeds for the delivered goods, which exists and/or will arise in the future from the pledgor under contract No. 50/120 dated November 30, 2012 in the amount of 104,400,000.00 Russian rubles 00 kopecks, according to contract No. 50/128 dated 10.12.2012 in the amount of 48,532,764.00 Russian rubles 00 kopecks, according to contract No. 50/121 dated 20.03.2013 in the amount of 130,500 00.00 Russian rubles 00 kopecks concluded between the mortgagor and LLC Representation of NPP Smilyansky Electromechanical Plant, Moscow, Russian Federation (code 50877746028662).

The debtor of the mortgagor in this part of the requirements is LLC Representation of the NPP Smilyansky Electromechanical Plant, Moscow, Russian Federation (code 50877746028662).

According to clause 3.2. of pledge agreement No. 4 on the date of conclusion of this agreement, the value of the subject of pledge is UAH 50,000,000 00 kopecks.

4.7. Regarding the additional requirements of the Creditor in the amount of UAH 1,817,241 66 kopecks. (1,096,633 hryvnias 72 kopecks + 720,607 hryvnias 94 kopecks), calculated on the basis of clause 6.6 of the credit agreements.

According to clause 1.4. credit agreements - 31.01.2019 is defined as the last day of validity of the credit line.

By Section 6 of the credit agreement, the parties reached an agreement on the procedure for accrual and payment of interest for the use of credit.

This section of the agreements was revised in accordance with the agreement on amendments No. 16 of 04/12/2018 to the Credit Agreement-1 and the agreement on amendments No. 17 of 04/12/2018 to the Credit Agreement-2.

The content of these sections of both agreements is identical to each other.

According to clause 6.1. of credit agreements, the borrower undertakes to pay the bank for the use of the loan interest in the amount stipulated by the credit agreement. Interest on the loan is calculated on the total amount owed on the credit line in the currency of the debt.

Clause 6.4. credit agreements indicate that the interest is charged for the period in which, in accordance with clause 1.4. of credit agreements, the borrower is obliged to repay the loan in full to the bank, must be paid no later than the day provided for repayment of the loan.

Clause 1.3.1 of credit agreements was also changed.

According to clause 1.3.1 of the credit agreements, the interest rate for using the credit is 17.5% per annum.

Clause 6.6. of credit agreements, the parties agreed that in the event of a breach by the borrower of any of its obligations, provided for in clauses 2.5., 7.3., 7.9., 7.10 of the credit agreements and/or sub-clauses 2.4., 2.5., 2.6., 2.10., of the Appendix No. 1 to credit agreements for each case of such a violation, the amount of the current fixed interest rate, starting from On the 20th calendar day from the date of occurrence of such a case, a new amount is established, namely, an amount increased by 2 (two) percentage points.

The borrower agrees to the change in the interest rate specified in this clause of the credit agreements, which does not require the parties to conclude an additional agreement to the agreements. The bank notifies the borrower in writing about setting the new interest rate.

**4.8.**    04/16/2018 The creditor, with reference to the borrower's violation of subsections 2.4. Annex No. 1 to the credit agreements, addressed the Debtor with a written notification that, starting from 04/30/2018, the interest rate for using the credit will be 17.5% + 2%, i.e. 19.5% per annum.

Therefore, the Lender claims interest for the legitimate use of the loan, calculated for the period from 04/30/2018 to 01/31/2019 at an interest rate of 2% per annum (that is, the difference that was not considered by the court) in the amount of:

1) according to the agreement on the opening of the Credit Agreement-1, additional interest for the legitimate use of the loan in hryvnias, accrued for the period from 04.30.2018 to 01.31.2019, inclusive, in the amount of 1,096,633 UAH 72 kopecks.

2) according to Credit Agreement-2, additional interest for legitimate use of credit in hryvnias, accrued for the period from 04/30/2018 to 01/31/2019 inclusive, in the amount of UAH 720,607 94 kopecks.

**4.9.**    According to clause 2.4. of Appendix No. 1 of the loan agreements, the borrower undertakes from the date of conclusion of the loan agreements to ensure the opening of current (card) accounts in the bank for the borrower's employees, in connection with which:

a) within 3 months from the date of conclusion of the contract, conclude an agreement with the bank on opening card accounts for the benefit of individuals, on terms agreed with the bank, with the opening of current (card) accounts for at least 90% of the borrower's employees. At the same time, issue a salary card project for 100% of all newly hired employees of the borrower from the first month of lending;

b) to provide bank employees with access to the premises of the enterprise to carry out work related to the transition to PJSC Sberbank cards of work shops, and issuing cards for those wishing to switch to the salary project of PJSC Sberbank.

To fulfill the specified conditions of clause 2.4. Annex No. 1 to the credit agreements between the borrower and the bank on the date of conclusion of the credit agreements, 29.04.2013, agreement No. 12/ЗП/Ч1/65 was concluded, and subsequently current (card) accounts were opened for all employees of the joint-stock company Scientific and Production Enterprise Smilyansk Electromechanical Plant.

The borrower has fulfilled the terms of clause 2.4. Appendix No. 1 to credit agreements.

Since the conclusion of the credit agreements and until April 30, 2018, the bank did not increase the interest rate due to the Debtor's violation of clause 2.4. Appendix No. 1 of credit agreements.

**4.10.**    In 2017, a number of Borzhnyk employees on their own initiative closed their card accounts at JSC Sberbank and switched to receiving salaries at JSC Raiffeisen Bank Aval, in connection with which JSC Sberbank intended to increase the interest rate.

After the borrower's appeal (letter dated 10/03/2017 No. 37/167), who explained that forcing employees to serve at a particular bank is against the law, JSC Sberbank decided not to raise the rate (the bank's letter dated 10/30/2017 No. 470/3/5/ 60-1).

In 2018, in response to JSC Sberbank's letter dated April 16, 2018 No. 183/5/60-1 regarding the new interest rate, the Debtor (letter dated April 16, 2018 No. 37/50) replied to the bank that he had not violated the terms of the credit agreements in part of the salary card project, since the company is not responsible for the choice of bank institution by natural persons - employees.

The bank decided to charge interest for using the loan at a rate of 19.5% instead of a rate of 17.5% (letter of JSC Sberbank dated April 26, 2018 No. 225/5/60-1).

Disagreeing with the bank's decision, the Debtor in 2019 refused to sign reconciliation acts with a new interest rate (letter dated January 25, 2019 No. 37/8).

In the letter dated February 7, 2019 No. 37/10, the debtor emphasized the illegality of the bank's actions, which actually exerted influence on the borrower with the aim of forcing employees to serve at JSC Sberbank.

**4.11.**    Regarding the additional requirements of the Creditor in the amount of 60,702,103 UAH 95 kopecks. (36,631,327 hryvnias 30 kopecks + 24,070,776 hryvnias 65 kopecks), accrued on the basis of clause 6.2 of credit agreements and article 625 of the Civil Code of Ukraine for the period from 02/01/2019 to 09/08/2021:

Clause 6.2. credit agreements establish that the accrual of interest begins from the day the loan is granted (inclusive). The accrual of interest is completely and finally stopped on the day of actual repayment of the loan in full. After the expiration of the last day of validity of the credit line specified in clause 1.4. of this contract, the amount of the interest rate for the use of the credit remains in the amount that was in effect as of the last day of the credit line, and is recalculated in the future (starting from the day of the last day of the credit line until the day of the actual return of the credit in full) in the amount and according to the procedure provided for in this contract.

The borrower is obliged to pay the interest calculated in accordance with clauses 6.1-6.2 of this contract every month no later than 3 working days following the end of the period (clause 6.3 of the contract).

The period of the parties in this Article 6 of the agreement means each of the periods, the first of which begins on the date of the month in which the credit agreement was concluded and ends on the day preceding such date of the next (corresponding) month. The last period ends on the day when the loan was fully repaid in full.

Clause 11.3. of credit agreements, it is established that the agreement enters into force from the date of its signing by the parties and is valid until the parties fully fulfill their obligations under the credit agreements.

**4.12.**       The amount of 3% per annum under Credit Agreement-1, accrued for the period from 02.01.2019 to 09.08.2021 on the debt 72,251,138 UAH 77 kopecks. is UAH 5,635,588 82 kopecks. and according to Credit Agreement-2 - UAH 3,703,196 40 kopecks.

**4.13.**       Regarding the additional requirements of the Creditor in the amount of UAH 242,486, 80 kopecks. from the payment of interest for the use of credit under Credit Agreement-1 for the period from 04/30/2018 to 05/28/2018:

As a result of the preparatory meeting, the court, taking into account the Debtor's response, recognized as undisputed the demands of the Creditor for the payment of interest (in the amount of 17.5%) for the period from April 30 to May 28, 2018 under Credit Agreement-1 in the amount of UAH 94,028 71 kopecks.

This amount was included in the total amount of the bank's claims in this part recognized by the court in the preparatory meeting.

During the specified period, the Creditor charged the Debtor 1,004,587 UAH 75 kopecks. percent

At the same time, evidence of the Debtor's full and proper fulfillment of his obligations to pay accrued interest for the disputed period in the amount of 969,946 UAH 79 kopecks. the case materials do not contain.

So, the debt amounts to UAH 301,874 55 kopecks. (969,946 UAH 79 kopecks - 668,072 UAH 24 kopecks (the payment of which was actually recognized by the bank)).

Of these, claims in the amount of UAH 207,845 84 kopecks were not considered in the preparatory session and were not recognized by the court. (301,874 hryvnias 55 kopecks. 94,028 hryvnias 71 kopecks).

Thus, part of the interest for the legitimate use of credit in hryvnia under the agreement on opening a credit line No. 75-В/13/35/ЮО/КЛ dated 04.29.2013, accrued for the period from 04.30.2018 to 05.28.2018 inclusive, is subject to recognition - in the amount UAH 207,845 84 kopecks. (fourth round of repayment).

In the rest, a statement on the recognition of additional monetary claims for the payment of interest in the amount of UAH 34,640 96 kopecks. the court leaves without satisfaction.

**4.14.**       The court decision dated 15.06.2022 was received by the representative of the LLC - attorney Franchuk A.V. 06/21/2022, which is confirmed by an extract from the Ukrposhta website.

Also, the court decision dated 05/25/2022 was received on 06/01/2022 by lawyer Franchuk A.V., which is confirmed by a registered mail delivery notice.

However, the representative of the LLC did not appear at the court session for the second time, he did not submit an application for consideration of his creditor claims in the absence of a court representative.

**5.**     **Summary of the requirements of the cassation appeal**

**5.1.**       16.12.2022 "Smilyansk Electromechanical Plant" Limited Liability Company filed a cassation appeal, in which it asks to annul the decision of the Northern Commercial Court of Appeal dated 08.11.2022, and to refer the case to the appellate court for a new consideration.

**6.**     **Arguments of the person who filed a cassation appeal**

**6.1.**       According to the arguments in the cassation appeal, the basis for cassation appeal of the judgment of the court of appeal in this case is the provisions of paragraph 1 of part two of Article 287 of the Code of Civil Procedure of Ukraine, since the courts incorrectly applied the provisions of Articles 39, 45-47 of the Code of Ukraine on Bankruptcy Procedures (hereinafter - KUzPB) regarding the rules for consideration of the monetary claims of the initiating creditor, in particular in the event that he declares additional monetary claims, without taking into account the conclusions of the Supreme Court The court in the decision of 09/21/2021 in case No. 235/2121/18 regarding the rules for reviewing and changing the adopted court decision, as having satisfied the Creditor's demands for the waiver of security for part of the claims in the amount of UAH 50 million, which were considered and recognized in accordance with the decision of the preparatory meeting in this case, and changing their order, the courts actually reviewed the decision of the preparatory meeting regarding the Creditor's claims out of order, established procedural law.

**6.2.**       According to the arguments in the cassation appeal, the basis for the cassation appeal of the court decision of the appellate court in this case is the provision of paragraph 1 of the second part of Article 287 of the Civil Procedure Code of Ukraine, also, since the appellate court

incorrectly applied the provisions of Article 625, the first part of Article 1048, the first part of Article 1050 and part one of Article 1054 of the Civil Code of Ukraine (hereinafter referred to as the Civil Code of Ukraine) regarding the rules for charging and charging interest, which arise from credit relations, without taking into account the conclusions of the Grand Chamber of the Supreme Court dated 28.03.2018 in case No. 444/9519/12, dated 2.05.2018 in case No. 910/1238/17 and dated 04.02.2020 in case No. 912/1120/16 , as defined by credit agreements between the Creditor and Interest should not be accrued by the debtor during the period of overdue monetary obligations under these contracts (after the expiration of the crediting period or in the event of a claim against the borrower in accordance with the second part of Article 1050 of the Civil Code of Ukraine), but only 3% per annum in accordance with Article 625 of the Civil Code of Ukraine , the change in the size of which was not agreed upon by the parties in the contracts, and the conditions for the Lender to apply an increased interest rate of 19.5% are absent due to failure to prove those violations of credit agreements (namely, provision by the Debtor of current (card) accounts of less than 90% to the Debtor's employees), for which such a rate is applied.

6.3.    In addition, the complainant pointed to the selective application by the courts of both instances of the rules for consideration of creditor claims, leaving without consideration the application of the Limited Liability Company "Representative of NVP Smilyansk Electromechanical Plant", m. Moscow, with monetary claims to the Debtor in the amount of UAH 18,147,851 79 kopecks. on the grounds of the non-appearance of his representative at the relevant court session, since the failure to consider such an application after its acceptance and appointment for consideration contradicts the provisions of Articles 45-47 of the Criminal Procedure Code and Articles 202, 226 of the Code of Criminal Procedure of Ukraine, therefore this application is subject to either rejection or approval essentially. The complainants also pointed out the need to apply an approach similar to the one applied to the claims of the specified creditor, with the Creditor's statement on the recognition of monetary claims also being left without consideration, taking into account the control of this person by persons of the Russian Federation, since the sole shareholder is Sberbank of Russia, registered and located in the Russian Federation, and the decision of the National Security and Defense Council of Ukraine and the Cabinet of Ministers of Ukraine on forced withdrawal the Lender has 100% of corporate rights in the stage of implementation, while the specified person is still a shareholder of the Lender.

7.    **Generalized statement of the position of other participants in the case**

7.1.    According to the arguments of the Creditor in the response to the cassation appeal, he denies the arguments of the complainant on the grounds that are generally similar to the reasons in the contested decision of the appeals court, emphasizing the refutation of the information about the Creditor's control over persons of the Russian Federation, the manipulation by the complainant of relevant information about the Creditor, taking into account the circumstances of application to the Creditor's bank liquidation procedure and seizure of the Creditor's property from the previous owners in favor of the state of Ukraine (nationalization).

8.    **The position of the Supreme Court and conclusions regarding the application of legal norms**

**Regarding the monetary claims of the creditor, which is established and registered in accordance with the legislation of the Russian Federation**

8.1.    One of the subjects of consideration in this case, according to the contested court decisions, were the monetary claims of one of the Debtor's creditors - LLC, which is a legal entity with its registered office in the city of Moscow, Russian Federation, which was created and registered in accordance with the legislation of this state.

8.2.    Meanwhile, the Court does not agree with the conclusions of the courts, both in the contested decision of the appellate court and in the decision of the court of first instance, which was left unchanged in the relevant part, on leaving without consideration the application of the LLC on the recognition of monetary claims against the Debtor, since the courts reached this conclusion in violation of the normal procedural law, with incorrect application and without application of provisions of material law, in view of the following.

8.3.    Thus, the courts established, along with the circumstances, which became the basis for leaving without consideration the application of the LLC with monetary claims to the Debtor in accordance with the provisions of the fourth part of Article 202 and the first paragraph of Article 226 of the Civil Procedure Code of Ukraine (repeated non-appearance of the representative of the LLC at the court session with consideration of his application with monetary claims to the Debtor despite due notification of the representative of the LLC about the date and place of the relevant court hearings, clause 4.14), as well as the circumstances of the LLC's registration in the city of Moscow, Russian Federation (code 50877746028662) (clause 4.6).

Meanwhile, the courts did not take into account the procedural consequences of these circumstances, because although they referred to the provisions of the current legislation regarding the moratorium (ban) - restrictions on civil turnover in respect of certain participants of such turnover, due to the armed aggression of the Russian Federation and the martial law introduced in connection with this in Ukraine state, however, incorrectly applied these provisions of the current legislation.

8.4.    In the conditions of the armed aggression of the Russian Federation and the martial law introduced in connection with this on the basis of the Decree of the President of Ukraine "On the introduction of martial law in Ukraine" dated 24.02.2022 No. 64/2022 (with the following changes, which were in effect on the date of adoption by the local court of the corresponding decision dated 07.07.2022 - dated 14.03.2022 No. 133/2022, dated 18.04.2022 No. 259/2022 and dated 17.05.2022 No. 341/2022), approved by the Law of Ukraine "On Approving the Decree of the President of Ukraine "On the Introduction of Martial Law in Ukraine " dated 24.02.2022 No. 2102-IX, the introduction of certain restrictions in civil turnover, especially regarding certain participants in such turnover, is generally permissible.

In particular, according to subparagraph 1 of paragraph 1 of the Resolution of the Cabinet of Ministers of Ukraine "On ensuring the protection of national interests in future lawsuits of the state of Ukraine in connection with the military aggression of the Russian Federation" dated 03.03.2022 No. 187 (hereinafter - Resolution of the CMU No. 187) to ensure protection national interests in future lawsuits by the state of Ukraine in connection with the military aggression of the Russian Federation until the adoption and entry into force of the Law of Ukraine on the regulation of relations with the participation of persons connected with the aggressor state, a moratorium (ban) on <u>implementation was established, including in by compulsory procedure</u> , monetary and other obligations, for which the Russian Federation is the creditor (collector) or such persons (hereinafter referred to as persons connected with the aggressor state) - legal entities created and registered in accordance with the legislation of the Russian Federation.

Therefore, the effect of the moratorium involves a ban on the execution of a specifically defined list of actions between the participants of legal relations, establishes a certain legal regime for these legal relations and affects the course of monetary and other obligations. Since the introduction of the specified moratorium, the subjective right of creditors (collectors), the list of which is given in Resolution No. 187, will be restricted in their ability to exercise their right to claim against the obligated party, including by applying for judicial protection. Also, although the moratorium does not terminate the subjective right, however, during the moratorium's validity period, such a right cannot be realized by execution.

**8.5.** At the same time, the Court takes into account that the purpose of the creditor's application of monetary claims to the debtor in the case of bankruptcy, as well as the rules for the repayment of these claims established by the legislator imperatively in the CUzPB, which, although different for each of the bankruptcy procedures, are equally binding for its participants, in particular, the creditor (creditors) and the debtor, indicate the existence of such a method of protection and restoration of the violated right as an appeal with the creditor's monetary claims (creditors) in bankruptcy procedures with the aim of their satisfaction, state coercion aimed at protecting and restoring the violated right of the creditor.

In this conclusion, the Court refers to the legal position of the Supreme Court, set out in the ruling dated 31.01.2023 in case No. 922/5226/21 (paragraph 8.11) and to the conclusion of the Supreme Court, which is similar in content, formulated in the ruling dated 13.12.2022 in case no. 910/1959/22.

**8.6.** And therefore, the moratorium (ban) on the fulfillment of monetary and other obligations, for which creditors (collectors) are legal entities created and registered in accordance with the legislation of the Russian Federation (clause 8.4) in relation to provisions of the Code of Civil Procedure regarding the rules and consequences of applying and recognizing the creditor's monetary claims against the debtor in a bankruptcy case (clause 8.5) excludes the possibility of recognizing, under the rules of this Code, the monetary claims of those creditors who are persons defined in Resolution of the CMU No. 187, in particular, legal entities created and registered in accordance with the legislation of the Russian Federation, which is an LLC.

**8.7.** Therefore, regardless of the presence of formal grounds for leaving without consideration the application of the LLC with monetary claims to the Debtor on the basis of part four of article 202 and paragraph 4 of part one of article 226 of the Civil Procedure Code of Ukraine, however, taking into account the circumstances established by the courts for the registration of the LLC in the city of Moscow, the Russian Federation ( code 50877746028662) (clause 4.6), i.e. creation and registration of a legal entity LLC in accordance with the legislation of the Russian Federation, the Court comes to the conclusion that these circumstances exclude the possibility of recognizing the monetary claims of the relevant subject (subjects) to the debtor in the case of bankruptcy under the rules of national legislation - KUzPB.

In this opinion, the Court refers to a similar approach in the application of the provisions establishing limitations in legal relations, where the creditor (collector) is a legal entity of the aggressor state and/or the occupying state, which was applied by the Supreme Court when adopting the resolution dated 18.05.2021 in case no. 924/774/18.

**8.8.** And therefore, the satisfaction of the stated LLC's monetary claims against the Debtor (paragraphs 1.5, 1.6) should be refused, in connection with which, taking into account the provisions of paragraph 3 of the first part of article 308, article 311 of the Code of Civil Procedure of Ukraine, the appealed decision of the appellate court and the court decision reviewed by the appellate court of the first instance in the part of the decision on leaving without consideration the application for the recognition of the monetary claims of the LLC to the Debtor are subject to annulment with the adoption of a new court decision in this part - on refusal to satisfy the LLC's application for recognition of monetary claims against the Debtor.

Having reached this conclusion, the Court agrees with the similar arguments of the complainant in the part relating to the monetary claims of the LLC to the Debtor (paragraph 6.3).

**8.9.** Along with this, the Court rejects the arguments of the complainant (paragraph 6.3) in the part in which he claims to apply a similar approach to the consideration of the Creditor's monetary claims against the Debtor with a decision on the Creditor's refusal to recognize monetary claims against the Debtor, since the provisions apply to the person of the Creditor The Law of Ukraine "On the Basic Principles of Forced Expropriation in Ukraine of Objects of Property Rights of the Russian Federation and Its Residents", in accordance with the requirements of Article 3 which, in accordance with the circumstances established by the courts, the National Security and Defense Council of Ukraine (NSDC) adopted a decision dated 11.05.2022 on the compulsory withdrawal of 100 percent of the corporate rights of the Lender's bank from the previous owners in favor of the state of Ukraine (clause 4.2). Therefore, the provisions of Resolution No. 187 do not apply to the person of the Creditor.

Regarding the rules and terms of the creditor's refusal to provide security

**8.10.** The Law (KUzPB) singles out from all creditors in a bankruptcy case the secured ones, which are creditors whose claims against the debtor or another person are secured by a pledge of the debtor's property. In particular, the CUzPB separately regulates the participation of these creditors in the bankruptcy case, the status, rules, conditions and deadlines for submitting an application with monetary claims to the debtor during bankruptcy proceedings, the procedure and conditions for satisfying their claims in this case, etc.

According to the prescriptions of the second and third paragraphs of the second part of Article 45 of the Code of Civil Procedure, secured creditors are obliged to submit an application with monetary claims to the debtor during bankruptcy proceedings in the part of claims that are unsecured, or on the condition that security is refused.

Secured creditors may waive the security in whole or in part. If the value of the collateral is not sufficient to cover the entire claim, the creditor should be considered secured only in part of the value of the collateral. The balance of claims is considered unsecured.

The consequence of the secured creditor's separation of the debtor's claims into secured and unsecured, in particular, by refusing the security, are different conditions for satisfaction and the order of satisfaction of the corresponding claims, since the repayment of the secured creditors' claims at the expense of the bankrupt's property, which is the subject of security, is carried out in the manner provided for by this by the Code, out of turn (part six of Article 64 of the Code of Civil Procedure), while in the event of the creditor's refusal to ensure the repayment of the corresponding claims is carried out according to the rules of that turn, which will be determined by the court in the court decision on the recognition of these claims for the corresponding amount.

8.11.     Along with the above, the KUzPB establishes uniform rules for all creditors, regardless of the composition of their claims against the debtor, regarding the deadlines for submission of applications by all creditors with monetary claims against the debtor - within 30 days from the day of the official publication of the announcement on the opening of bankruptcy proceedings, counting from this deadline begins from the day of the official publication of the announcement on the opening of bankruptcy proceedings (part one of Article 45 of this Code) from specifying the only consequences of missing such a period (part four of Article 45 of the Labor Code).

At the same time, the legislator provides the initiating creditor with the opportunity to declare additional monetary claims against the debtor, in addition to those specified in the application for opening bankruptcy proceedings, but also within the time limit established by the first part of this article (the first paragraph of the second part of Article 45 of the Criminal Procedure Code).

8.12.     In the sixth part of Article 45 of this Code, the legislator defined uniform rules for consideration of all creditors' applications with requirements to the debtor.

Thus, applications with the requirements of bankruptcy creditors or secured creditors, submitted within the time limit specified in the first part of this article, are considered by the commercial court in a preliminary court session .

Claims of creditors, declared after the expiration of the period established for their submission, are considered by the commercial court in the order of priority of their receipt in the court session, which is held after the previous meeting of the commercial court.

Based on the results of consideration of the said applications, the commercial court issues a decision on the recognition or rejection (in full or in part) of the claims of such creditors.

The decision of the commercial court is the basis for entering information about such creditors into the register of creditors' claims .

8.13.     Based on the content of the above provisions regarding the rules and terms of the creditor's refusal to provide security (clause 8.10) in relation to the rules for submission by creditors (in particular, the initiating creditor) of applications with monetary claims to the debtor and the procedure for their consideration by the commercial court, the Court concludes that the secured creditor has the right to refuse security by stating this in the application for opening bankruptcy proceedings (if the secured creditor is the initiator) or in a statement about monetary (additional) claims against the debtor (in other cases), by submitting this statement within the time limit established by the first part of Article 45 of the Criminal Procedure Code (within 30 days from the day of the official publication of the announcement on the opening of bankruptcy proceedings).

At the same time, the failure of the initiating creditor to refuse to provide security in the application for opening proceedings in the case does not deprive him of the right to make this refusal in the future, however, in compliance with the relevant terms and procedure, namely, by submitting a corresponding application - about additional monetary claims against the debtor within 30 days from the day of official publication of the announcement on the opening of bankruptcy proceedings.

This conclusion is consistent with the provisions on the procedure for forming the register of creditors' claims by the property manager, defined by the first paragraph of part eight of Article 45 of this Code, according to which the property manager is obliged to separately notify the commercial court about the claims of creditors secured by the debtor's property, according to their statements , and in the absence of such statements - according to the debtor's accounting data, as well as enter separately in the register information about the debtor's property, which is the subject of a pledge in accordance with the relevant state register.

8.14.     Therefore, as a general rule, the resolution of the previous meeting has the final character for forming the register of creditors' claims.

8.15    At the same time, according to the content of the norms in paragraphs 4, 5, part six of Article 45 of the Code of Criminal Procedure, the legislator provided for the court to make changes to the register of claims of the debtor's creditors, approved by the decision of the previous court session during the consideration of the claims of bankruptcy or secured creditors, - on the basis of the decision of the commercial court to recognize the claims of the bankruptcy and/or the secured creditor in full (partially), accepted at the court session after forming the register of creditors' claims with the claims of bankruptcy creditors who were recognized by the court in the previous session. However, this applies only to those creditors whose claims are filed after the deadline set for their submission.

In these conclusions, the Court refers to the legal position of the Supreme Court on the issue of grounds and the possibility of making changes to the previously approved register of creditors' claims, set out in the resolution dated 07/09/2020 in case No. 916/177/17.

8.16.     Having reached the above conclusions, the Court agrees with the decision of both the appellate court and the court of first instance in the part disputed by the complainant - about the satisfaction by the courts of the Creditor's demand for refusal of security in respect of part of the claims in the amount of UAH 50 million, which have already been considered and recognized in accordance with the decision of the preparatory meeting in this case, and therefore the Court rejects the opposing arguments of the complainant (paragraph 6.1).

**Regarding the interest charged under the credit agreement**

8.17.     According to the provisions of Articles 625, 1048, 1049, the first part of Article 1050, Articles 1054, 1056-1 of the Civil Code of Ukraine, the creditor's right to charge interest on the loan provided for in the contract is terminated after the expiry of the crediting period specified in the contract or in the event of a demand being presented to the borrower in accordance with part two Article 1050 of the Civil Code of Ukraine.

The court refers to the legal position of the Grand Chamber of the Supreme Court, set out in the resolution dated 28.03.2018 in case No. 444/9519/12, the application of which by the courts according to the contested decisions is relevant in disputed legal relations.

8.18.     Thus, relations regarding the payment of interest for the debtor obtaining the opportunity to legally not pay the debt to the creditor for a certain period of time are regulated by the first part of Article 1048 of the Civil Code of Ukraine. Such interest is the usual payment of the debtor for the right to temporarily use the funds provided to him under the conditions defined by the contract and legislation, that is, within the limits of the parties' proper and conscientious performance of contractual obligations, and not in the event of their violation.

On the other hand, the consequences of overdue monetary obligation (when the debtor must pay money, but does not pay it illegally) are also regulated by legislation. In cases where the debtor has violated the terms of the contract by delaying the fulfillment of a monetary obligation, according to the first part of Article 1050 of the Civil Code of Ukraine, the provisions of Article 625 of this Code shall be applied in such legal relations.

**8.19.** In this opinion, the Court refers to the legal conclusions set forth by the Grand Chamber of the Supreme Court in the decision of 04/05/2023 in case No. 910/4518/16 (paragraphs 80-87), according to which "credit use" is the ability of the borrower for a fee to legally not return the debt (loan) to the creditor within a certain period of time agreed by the parties to the credit agreement. According to Article 1048 of the Civil Code of Ukraine, interest is paid not for the mere fact of the borrower receiving a loan, but for "using the loan" (that is, for the borrower's ability to legally not pay the debt to the creditor for a certain period of time).

And therefore the lender's expectation that the borrower must pay interest for "using the loan" beyond the term for which such a loan is granted (that is, beyond the existence of the possibility for the borrower to legitimately not pay the debt to the lender), goes beyond the mutual rights and obligations of the parties, arising on the basis of a credit agreement, and therefore such expectations cannot be considered legitimate. The specified benefit arises from the borrower precisely as a result of concluding a credit agreement. Non-fulfillment of the obligation to repay the loan cannot be a reason for the borrower to obtain the opportunity to legitimately not pay the debt to the creditor within a certain time, and therefore - for the obligation to pay interest in accordance with Article 1048 of the Civil Code of Ukraine.

Under such circumstances, giving the creditor the opportunity to charge interest in accordance with Article 1048 of the Civil Code of Ukraine outside the credit period will obviously disturb the balance of interests of the parties - the borrower will be charged with an obligation that does not correspond to any right of the creditor.

**8.20.** The accrual of inflationary losses on the amount of the debt and three percent per annum in accordance with Article 625 of the Civil Code of Ukraine is a measure of the debtor's responsibility for the delay of a monetary obligation, as they act as a way of protecting property rights and interest, which consists in compensating the creditor for material losses from the devaluation of monetary funds as a result of inflation processes and receiving compensation of the debtor for improper fulfillment of the obligation. Such conclusions are formulated, in particular, in the decisions of the Great Chamber of the Supreme Court dated 19.06.2019 in case No. 646/14523/15-ts, dated 18.03.2020 in case No. 902/417/18 (paragraph 8.35).

A common feature of civil liability is its compensatory nature. Civil liability measures are not aimed at punishing the debtor, but at restoring the property of the victim of the offense. One of the principles of civil law is the compensation of a person's property losses caused by an offense committed by another person (decision of the Grand Chamber of the Supreme Court dated March 18, 2020 in case No. 902/417/18 (paragraph 8.22)).

It should also be borne in mind that, in contrast to the amount of interest for "using credit", the amount of interest as a liability for late payment of a monetary obligation can be reduced by the court (paragraph 8.38 of the resolution of the Grand Chamber of the Supreme Court dated 18.03.2020 in case No. 902 /417/18).

**8.21.** Along with this, regarding the rules for agreement by the parties to the credit agreement on the amount of annual interest in accordance with Article 625 of the Civil Code of Ukraine, different from the 3% established by this article, the Court notes that individuals have the right to choose: to use the existing dispositive norms of legislation to regulate their relations or to establish for rules of conduct at their own discretion. A civil contract as an agreement between two or more parties, aimed at establishing, changing or terminating civil rights and obligations, reveals the autonomy of the will of the participants to regulate their relations according to their discretion and within the limits established by law, that is, it is an act of establishing mandatory rules for parties, an individual regulator of their behavior.

Meanwhile, according to the content of Articles 6, 627 of the Civil Code of Ukraine, their provisions do not allow freedom of contract in terms of violation, in particular, of the requirements of the Civil Code of Ukraine and other acts of civil legislation. Therefore, the parties cannot, with reference to the principle of freedom of contract, agree that their relations will be regulated by a certain rule of law of their choice, and not by the rule that regulates their relations based on the legal nature of the latter.

This does not mean that the parties cannot agree that in the event of a loan repayment delay, the borrower pays interest to the creditor precisely as a measure of responsibility, in particular in the same amount in which he paid interest as a fee for the loan granted, or in another amount. At the same time, such an agreement by its legal nature is an agreement on the payment of annual interest in the amount determined by the contract on the basis of Article 625 of the Civil Code of Ukraine, and this amount can be reduced by the court (paragraph 8.20 of this resolution).

And therefore, for the resolution of such disputes, it is important to interpret the terms of the contracts on which the creditors' claims are based, to find out whether the parties intended to establish the accrual of interest as a measure of responsibility in a certain amount for the period after the end of the crediting period. For this purpose, one can take into account (1) <u>the wording of the conditions for the payment of interest</u> , (2) <u>their placement in the structure of the contract</u> (in the sections that regulate the lawful or unlawful behavior of the parties), (3) the relationship with other provisions on the borrower's responsibility, etc. In case of doubt, the principle of contra proferentem should be applied (lat. verba chartarum fortius accipiuntur contra proferentem, i.e. the words of the contract are interpreted against the person who wrote them) (conclusion in paragraph 122 of the resolution of the Great Chamber of the Supreme Court dated 04/05/2023 in case No. 910/4518/ 16).

**8.22.** Taking into account the above and taking into account the terms of both credit agreements between the Creditor and the Debtor regarding the calculation of interest, which are set out in clause 6.2. each of these contracts (the content of which is formulated and drawn up by the Lender's bank), namely:

- "Interest accrual begins from the day the loan is granted (inclusive). Interest accrual is completely and finally stopped on the day of the actual return of the loan in full. After the expiration of the last day of validity of the credit line specified in paragraph 1.4. of this contract, the amount of the interest rate for use the credit remains in the amount valid as of the last day of validity of the credit line, and is recalculated in the future (starting from the day of expiry of the last day of validity of the credit line and until the day of the actual return of the loan in full) in the amount and in the order provided by this contract";

The court comes to the conclusion that in the disputed legal relationship between the Creditor and the Debtor in credit agreements No. 1, 2, there were no clearly and unambiguously agreed conditions regarding the agreement on the amount of interest accrued beyond the credit period - after 01.31.2019, as responsibility for breach of obligations payments, which, however, are not interest for "using a loan", namely in an amount different from that specified in the second part of Article 625 of the Civil Code of Ukraine, i.e. in the amount of interest that was paid for using a loan.

In this conclusion, the Court also takes into account that clause 6.2 with the rules for calculating interest is located in section 6 "Interest for the use of credit", but not in section 10 "Liability of the parties to the contract" of each of the credit agreements, and this 10th section, like the entire the content of these contracts does not contain a reference to the agreement by the parties of a different amount of interest for improper use of credit funds according to the rules of the second part of Article 625 of the Civil Code of Ukraine.

Therefore, the appellate court reached an improper conclusion about the compliance with the provisions of Article 1056-1 and the second part of Article 1054 of the Civil Code of Ukraine, the conditions in clause 6.2 of both credit agreements with the agreement of the parties to stop charging interest completely and finally on the day of the actual repayment of the loan in full; on the consistency of the procedure for accrual and payment of interest in credit agreements (clause 6.2) with the provisions and articles 625, 1048, 1056-1 of the Civil Code of Ukraine - regarding the accrual of interest for the use of credit funds and after the credit period - until 31.01.2019 (the last day of the credit line ).

Therefore, the appellate court came to the erroneous conclusion that the parties agreed on the procedure for charging and paying interest in clause 6.2 of the credit agreements as consistent with the provisions of Article 625 of the Civil Code of Ukraine , and accordingly, the appellate court was also wrong about the legality of charging the amount of interest by the Creditor taking into account 19, 5% per annum from the overdue amount beyond the credit period - after 01.31.2019 in accordance with clause 6.2 of both credit agreements - in the amount of UAH 60,702,103 95 kopecks. (36,631,327 hryvnias 30 kopecks + 24,070,776 hryvnias 65 kopecks) - for the period from 01.02.2019 to 08.09.2021, having reached false conclusions regarding the legal nature of these percentages precisely as measures of civil liability under the rules of Article 625 of the Civil Code of Ukraine .

Having reached this conclusion, the Court agrees with the similar conclusions of the court of first instance in the part annulled by the appellate court and with similar arguments of the complainant in the part in which the complainant appeals to the rules for accrual and recovery of interest arising from credit relations during the period of overdue monetary obligation according to these agreements (paragraph 6.2 of credit agreements No. 1, 2).

8.23.    The court also agrees with the arguments of the complainant (paragraph 6.2) regarding the illegality of the conclusions of the appellate court about the application by the Creditor of an increased interest rate of 19.5% for the relevant period on the grounds that the circumstances established in the case (paragraph 4.10) refute the conditions for the application by the Creditor in the relevant period of an increased interest rate of 19.5% 2% interest due to failure to prove violations of credit agreements on the part of the Debtor (failure of the Debtor to provide current (card) accounts less than 90% to the Debtor's employees), for which this rate is applied.

In particular, the Court proceeds from those established circumstances (clause 4.10) that

- after the borrower's appeal (letter dated 10/03/2017 No. 37/167), who explained that forcing employees to serve at a particular bank is against the law, JSC Sberbank decided not to raise the rate (the bank's letter dated 10/30/2017 No. 470/3/5 /60-1);

- in 2018, in response to JSC Sberbank's letter dated April 16, 2018 No. 183/5/60-1 regarding the new interest rate, the Debtor (letter dated April 16, 2018 No. 37/50) replied to the bank that he had not violated the terms of the credit agreements in the part of the salary card project, since the company is not responsible for the choice of bank institution by natural persons - employees.

Therefore, we should agree with the conclusions of the court of first instance about its rejection of the 2% interest rate increase for the use of the loan, which took place on 04/30/2018.

8.24.    Thus, the conclusions of the appellate court in the contested resolution regarding the amended part of the recognized claims of the Creditor to the Debtor were made with incorrect application by this court, in particular the norms of Article 625, the first part of Article 1048, the first part of Article 1050, the first part of Article 1054, Article 1056-1 of the Civil Code of Ukraine , which led to the unjustified annulment of the legal and justified decision of the court of first instance in the relevant part with the adoption in this part by the court of appeals of an illegal resolution, which in the part of the decision to change the resolution of the court of first instance in connection with the cited violations is subject to cancellation.

Instead, the contrary conclusions in the decision of the court of first instance, annulled by the appeals court, based on the results of consideration of the Creditor's application for the recognition of additional monetary claims against the Debtor for part of the stated amount of claims, were made with the correct application of the specified norms of material and procedural law on the basis of the established circumstances of the case, in connection with which The court agrees with similar arguments and demands of the complainant (clause 6.2).

8.25.    In connection with the above and taking into account the provisions of paragraph 4 of the first part of Article 308 and Article 312 of the Civil Procedure Code of Ukraine, the contested resolution of the appellate court in the part of the decision on changing the decision of the court of first instance is subject to cancellation, and the decision of the court of first instance canceled by it in the part of the decision based on the results of the review statements of the Creditor on the recognition of additional monetary claims to the Debtor - to remain in force.

Guided by Articles 129, 300, 301, 308, 311, 312, 314, 315, 317 of the Economic Procedural Code of Ukraine, the Court

## POSITION:

1.    The cassation appeal of the Limited Liability Company "Smilyansk Electromechanical Plant" shall be partially satisfied.

2.    The resolution of the Northern Court of Appeal dated November 8, 2022 and the decision of the Cherkasy Oblast Commercial Court dated July 7, 2022 in case No. 925/1248/21 to be annulled in the part of the decision to leave without consideration the application of the Limited

Liability Company Representation of the NVP Smilyansk Electromechanical Plant on the recognition of monetary requirements to the Joint-Stock Company "Scientific and Production Enterprise" Smilyansk Electromechanical Plant".

**3.** In the canceled part, adopt a new decision: reject the application of the Limited Liability Company Representation of the Smilyansk Electromechanical Plant on the recognition of monetary claims to the Smilyansk Electromechanical Plant Joint-Stock Company.

**4.** The decision of the Northern Court of Appeal dated 08.11.2022 in case No. 925/1248/21 regarding the decision to change the decision of the Economic Court of Cherkasy Region dated 07.07.2022 shall be annulled.

**5.** Ruling of the Economic Court of Cherkasy Oblast dated 07.07.2022 in part of the decision based on the results of consideration of the application of the International Reserve Bank Joint Stock Company to recognize additional monetary claims against the Smilyansk Electromechanical Plant Joint Stock Company in case no. 925/1248/ 21 to remain in force.

**6.** In the rest, the resolution of the Northern Commercial Court of Appeal dated November 8, 2022 in case No. 925/1248/21 shall remain unchanged.

*The resolution enters into force from the moment of its adoption, is final and is not subject to appeal.*

**Presiding judge OV Vaskovsky**

**Judge SV Zhukov**

V. Ya. Undertaker