# EXHIBIT 27

Case category no **376/560/23: Civil cases (from 01.01.2019); Cases of legal proceedings; Cases in disputes arising from transactions, in particular contracts (except categories 301000000-303000000), from them.**

Sent for publication: **06/26/2023.** Registered: **06/26/2023.** Provision of general access: **27.06.2023.**

Effective date: **06/25/2023**

Number of court proceedings: **2/376/477/2023**



Skvirsky district court of Kyiv region

Case no. 376/560/23

Proceedings No. 2/376/477/2023

## DECISION

## ON BEHALF OF UKRAINE

May 25, 2023. Skvyrskyi District Court of the Kyiv Oblast in the composition of:

Presiding judge OM Kovalenko,

with the participation of secretary LA Shchur,

representative of the plaintiff PERSON_1,

representative of the third person Sokolovsky VL,

having considered in an open court session in the city of Skvira, Kyiv region, a civil case on the claim of PERSON_2 against PERSON_3, PERSON_4, Public Joint Stock Company "Sberbank of Russia", a third person PERSON_5 on the recovery of lost profit, on the claim of a third party who declares independent claims regarding the subject of the dispute PERSON_5 to PERSON_3 , PERSON_4 , Public Joint Stock Company "Sberbank of Russia", a third party PERSON_2 about recovery of damages in the form of lost profits,

Installed:

The plaintiff INDIVIDUAL_2 appealed to the Skvyrskyi District Court of the Kyiv region with the above-mentioned lawsuit, in which he asks to recover damages in the form of lost profit in the amount of 30,000,000 ( thirty million) US dollars in his favor jointly with INDIVIDUAL_3 , INDIVIDUAL_4 and the Public Joint Stock Company "Sberbank of Russia", and also court costs

On March 2, 2023, the Skvyr district court of the Kyiv region opened proceedings in the case (volume 1 ap 134).

By the decision of the Skvyrsky District Court of the Kyiv Region dated 04/21/2023, the claim of a third party, which asserts independent claims regarding the subject of the dispute PERSON_5, was accepted for joint consideration with the original claim, in which he asks to recover in his favor jointly with PERSON_3, PERSON_4 and the Public Joint Stock Company "Sberbank of Russia" damages in the form of lost profits of 170,000,000 (one hundred and seventy million) US dollars and court costs (volume 1 ap 145,146) .

The plaintiff PERSON_2 justified his position by the fact that on 04/17/2009 the company "Zeeland Development Corp." was founded and registered on the territory of PERSON_6. (English Zeeland Development Corp., hereinafter the Zeeland company). On the same day, Toomas Truewerth was appointed director of the Zeeland company, and PERSON_7 was the founder and beneficial owner of the Zeeland company. In the period from September 2009 to March 2012 , a phased issue of shares of OJSC "Krasnaya Polyana" was carried out. In the above-mentioned period, the Zeeland company acquired 817 shares of the Krasnaya Polyana open joint-stock company. Open joint-stock company "Krasnaya Polyana" owned a plot of land near the city of Sochi, on which the construction of a mountain ski resort and a hotel and entertainment complex was planned for its use in the 2014 Winter Olympic Games .

On March 9, 2013, PERSON_2 and PERSON_5 concluded an Agreement according to which PERSON_2 acquired the powers of the Trustee of the Zeeland Company, as well as the assets owned by the Zeeland Company. According to clause 3.3 of the Agreement dated 09.03.2013, it was agreed that for the ownership of shares of the Company Zeeland and or the successful disposal of assets owned by the Company Zeeland, PERSON_2 receives 15% of the sale price of the shares of OJSC Krasnaya Polyana. This agreement is also confirmed by an affidavit dated July 4, 2022.

On March 15, 2013, based on the Agreement on the transfer of shares, PERSON_7 transferred the ownership of PERSON_2 to the company PERSON_8. At the same time, the assets of the company Ziland in the form of 817 shares of OJSC "Krasnaya Polyana" also became the property of PERSON_2. As the nominal beneficial owner of the Zeeland company, his private interest included profiting from the disposal of the shares, the value of which had increased significantly as of 2013 .

On the same day, 15.03.2013, pursuing the commercial, private interest of profiting from the sale of shares of OJSC "Krasnaya Polyana", PERSON_2 on behalf of the company Zeeland entered into an agreement with PERSON_3 and OJSC "Sberbank of Russia", on whose behalf PERSON_4 acted, on the instructions and by order of the President, Chairman of the Board Gref G.O., the agreement on the sale of 23.736% of the shares of OJSC "Krasnaya Polyana" in the amount of 817 shares. for a total of $200,000,000 . In accordance with the terms of the agreement, PERSON_3 buys these shares in the interests of the creditor OJSC Sberbank of Russia in order to obtain a credit line in the amount of USD 15,000,000,000 from OJSC Sberbank of Russia by the BYN group of companies controlled by PERSON_3 . Pursuant to clauses 2 and 4 of the said Agreement, PERSON_3 and the group of companies controlled by him "BYN" undertook to pay the amount of the purchase of shares within 30 (thirty) calendar days from the date of signing the Agreement, and the Creditor JSC "Sberbank of Russia" undertook to open the corresponding credit line in favor of the "BYN" group of companies within 10 (ten) ten calendar days from the moment of the transfer of the shares purchased from the company Zeeland to the ownership of JSC "Sberbank of Russia". However, after March 15, 2022, PERSON_3 and PERSON_4 stopped communicating.

Subsequently, the plaintiff in the original lawsuit found out that on March 11, 2013, the director of the Zeeland company, Toomas Trouwert, in Tallinn, granted a notarial power of attorney in the name of PERSON_9 (the relative of PERSON_5) with the right to fully represent the company, in fact transferred his own powers to PERSON_9. On the same day, a Memorandum (agreement of intent) was allegedly signed between PERSON_9 and PERSON_3, which stipulates that PERSON_9, on his own behalf, undertakes to sell 41.429% of the shares of OJSC "Krasnaya Polyana" in the amount of 1,426 shares. (601 shares of ownership of PERSON_9, 404 shares of ownership of "Zeeland Developnet Corp" and 421 shares of "Kambara Oversaz S.A.") on its own behalf and, acting on behalf of the specified companies, at a price of 20,000,000 US dollars in favor of offshore companies "Velen Finance LTD", "Townfolk Trading Investment LTD" and "Hanberg Finance LTD", represented by PERSON_3. Also, in clause 3 of this Memorandum, it is determined that this preliminary agreement qualifies as a preliminary agreement for the purchase and sale of the above-mentioned shares.

On March 13, 2013, Addendum No. 1 was concluded to the above-mentioned Memorandum, which stipulates that in the event of a future sale of shares by the Buyer at a price higher than the purchase price, the difference in their market value will be paid to the Seller. The difference was estimated to be $80,000,000 . On the same day, the director of the company Zeeland Toomas Truuwert and its owner PERSON_10 notarized unanimous

written decisions to confirm the power of attorney dated 03.11.2013 issued by Thomas Truuwert in the name of PERSON_9, which was apostilled on March 18, 2013 by the notary Pilia I.O. in the city of Moscow.

On March 18, 2013 , a contract of purchase and sale of 404 shares of JSC "Krasnaya Polyana" in favor of the company "Townfolk Trading Investment LTD" was allegedly signed by PERSON_9 on behalf of the company "Zeeland Developnet Corp". At the same time, the contract refers to the previous share purchase and sale agreement dated March 12, 2013, which is actually dated March 11, 2013. The contract does not provide for the compensation of the difference in the event of the future sale of shares by their beneficiary. The contract was not signed or endorsed by PERSON_3.

Having familiarized himself with the specified documents, PERSON_2 visually established that the signature of PERSON_9, which was reproduced on the sheets of the Share Purchase Agreement dated March 18, 2013 and on the Memorandum dated March 11, 2013, does not correspond to his valid signature.

PERSON_2 also knows from PERSON_9 that he did not sign any such documents, nor did he receive any power of attorney from the company Zeeland to take any actions aimed at alienating the shares of OJSC "Krasnaya Polyana" in the amount of 817 shares accounted for by the company Zeeland. and its 601 pcs.

The defendants' use of documents with the forged signature of PERSON_9 is confirmed by Expert Opinion No. 62 dated 19.12.2022 , drawn up based on the results of a handwriting examination, which stated that the signatures on the above-mentioned documents were not executed by PERSON_9, but by another person imitating the signature(s) of PERSON_9.

In turn, PERSON_3, in the process of implementing the Agreement dated March 15, 2013 (under the signature of PERSON_2, PERSON_3 and PERSON_4), acting on behalf of S.K. Kuznetsov. in the interests of OJSC "Sberbank of Russia" received ownership of 817 shares of OJSC "Krasnaya Polyana" from the company Zeeland, as a result of the use of known forged documents, transferring the ownership of the shares to a company under his control, which later transferred them to OJSC "Sberbank of Russia". Neither PERSON_3 nor the "BYN" group of companies controlled by him paid any money in favor of Zeeland or PERSON_5, nor was there any settlement in any other way.

The subject of the obligation in accordance with the Agreement dated 03.15.2013 was the payment by PERSON_3 and/or companies under his control, which were part of the "BYN" group of companies, of funds for the purchase of shares of OJSC "Krasnaya Polyana" from the company Zeeland, in the amount of $200,000,000 USA.

The obligation to pay cash in the amount of USD 200,000,000 arose as a result of Sberbank of Russia OJSC taking ownership of 817 shares of Krasnaya Polyana OJSC owned by PERSON_5 through the mediation of PERSON_3 and PERSON_4, as well as giving Sberbank of Russia OJSC to the controlled PERSON_3 to the "BYN" group of companies for a credit line in the amount of 15,000,000,000 US dollars and was limited to a period of 30 days from the moment of signing the agreement dated 03/15/2013.

Joint dishonest actions of PERSON_3, PERSON_4 and Sberbank of Russia OJSC regarding non-compliance with the terms of the agreements dated 11/18/2011 and 03/15/2013 and the illegal acquisition by OJSC Sberbank of Russia of shares of Krasnaya Polyana OJSC, which were accounted for by the company controlled by it, Ziland. with the illegal assistance of PERSON_3 and PERSON_4, prevented him from satisfying his interest from the fulfillment of clause 1 and 2 of the Agreement dated March 15, 2013, in the form of receiving 85% of the sale price of PJSC "Krasnaya Polyana" shares, which resulted in direct losses in the form of lost profit in the amount of USD 30,000,000.

The third person, who makes independent claims regarding the subject of the dispute, PERSON_5, justified his position with similar circumstances, noting that the joint and unconscionable actions of PERSON_3, PERSON_4 and OJSC "Sberbank of Russia" regarding non-compliance with the terms of the agreements dated 11/18/2011 and 03/15/2013 and illegal acquisition of OJSC "Sberbank of Russia" by OJSC "Krasnaya Polyana" OJSC, which were accounted for by the company controlled by him, Ziland, with the illegal assistance of

PERSON_3 and PERSON_4, prevented him from satisfying his interest from the fulfillment of clause 1 and 2 of the Agreement dated March 15, 2013, in the form of receiving 85% of the sale price of PJSC "Krasnaya Polyana" shares, which resulted in direct losses in the form of lost profit in the amount of USD 170,000,000 .

On May 11, 2023 , the preliminary proceedings were closed and the case was scheduled for trial on the merits in an open court session (court decision, volume 2, p. 175, 176).

The claimant PERSON_2 did not appear at the court session, his representative PERSON_1 supported the claim in full, asked to satisfy them and gave explanations similar to those stated in the lawsuit.

The third person who makes independent claims regarding the subject of the dispute PERSON_5 did not appear at the court session, his representative PERSON_11 supported the claims of the third party in full at the court session, asked them to be satisfied and gave explanations similar to those stated in the lawsuit.

The defendants did not appear at the court session, the time and place of the hearing of the case were properly notified by sending summons notices to e-mail addresses known to the court and by posting announcements on the official website of the judiciary of Ukraine (Volume 1 a.s. 136, 137, vol. 2 a. 177 - 179). The defendants did not inform the court of the reasons for their non-appearance and did not send representatives to the court, did not use the right of appeal, did not submit any statements and petitions to the court.

In accordance with the requirements of Part 1 of Art. 223 of the Civil Procedure Code of Ukraine, the non-appearance of any participant in the court session, provided that he has been properly notified of the date, time and place of this session, does not prevent consideration of the case on its merits, except for the cases specified in this article.

The court considers it necessary to review the case based on the requirements of Art. 223 of the Civil Code of Ukraine in the absence of defendants.

The court, after listening to the explanations of the plaintiff's representatives and the third person who makes independent claims regarding the subject of the dispute, after examining the case materials, came to the following conclusion.

? According to the requirements of Part 1 of Art. 2 of the Civil Procedure Code of Ukraine, the task of the civil judiciary is the fair, impartial and timely consideration and resolution of civil cases in order to effectively protect the violated, unrecognized or contested rights, freedoms or interests of individuals, the rights and interests of legal entities, and the interests of the state.

? Part 1 of Art. 4 of the Civil Code of Ukraine stipulates that every person has the right, in accordance with the procedure established by this Code, to apply to the court for the protection of his violated, unrecognized or disputed rights, freedoms or legitimate interests.

? According to Art. 76 of the Civil Code of Ukraine evidence is any factual data on the basis of which the court establishes the presence or absence of circumstances justifying the claims and objections of the parties, and other circumstances that are important for the resolution of the case.

? According to the requirements of Art. 81 of the Code of Criminal Procedure of Ukraine, each party is obliged to prove the circumstances to which it refers as the basis of its claims and objections, except for the cases established by Art. 82 of the Code of Civil Procedure of Ukraine.

? In accordance with the requirements of Part 3 of Art. 12 of the Code of Criminal Procedure of Ukraine, each party must prove the circumstances that are relevant to the case and to which it refers as the basis of its claims or objections, except for the cases established by this Code.

? According to the requirements of Part 1 of Art. 13 of the Code of Criminal Procedure of Ukraine, the court considers cases only upon the person's appeal submitted in accordance with this Code, within the limits of the

requirements declared by him and on the basis of the evidence submitted by the participants in the case or demanded by the court in the cases provided for by this Code.

The court established that on September 5, 2001, the Open Joint-Stock Company "Krasnaya Polyana" was established (clause 1.1 of Article 1 of the Statute as amended on July 16, 2009) (volume 2 a. p. 17).

In accordance with clause 3.1 of the Statute, it is established that the purpose of the company is the development and support of an investment project for the creation and development of a competitive international market of sports and tourism services of the domestic ski, health and resort complex "INFORMATION_1", as well as obtaining profit by saturating the market with goods and services (volume 2 a. p. 17).

According to clause 7.1. The charter defines that the authorized capital of the company determines the minimum size of the company's property, which guarantees the interests of its creditors, and consists of the nominal value of the placed shares of the company, purchased by shareholders (placement of shares). All company shares are registered. The authorized capital of the company is divided into 2,007 (Two thousand and seven) shares (volume 2 a. p. 21).

On April 17, 2009, the commercial company "Zeeland Development Corp." was founded on the territory of the British Virgin Islands. Toomas Truuwert was appointed director, and PERSON_7 was the founder and beneficial owner of the Zeeland company (vol. 1 a. p. 28 - 34).

On November 18, 2011, PERSON_5 and OJSC "Sberbank of Russia", on behalf of which PERSON_4 acted, concluded an agreement under the terms of which PERSON_5 and OJSC "Sberbank of Russia", having a common commercial interest, undertook to attract foreign capital and investors to the project of OJSC "Krasnaya Polyana" and on this basis to help each other in achieving the stated goals. Company "Zeeland Development Corp." acquires ownership of 602 shares of OJSC "Krasnaya Polyana" (volume 2 a. p. 46).

05.03.2012 OJSC "Krasnaya Polyana" based on the decision of the Board of Directors on the additional issue of securities dated 17.02.2012 No. 112, adopted on the basis of the decision to increase the authorized capital of the joint-stock company by placing additional shares, adopted at the Extraordinary General Meeting of Shareholders of OJSC "Krasnaya Polyana" dated February 6, 2012, Minutes dated February 6, 2012 No. 53, an additional placement of 1,435 shares by closed subscription was carried out . State registration number of issue 1-01-33085-E-006D (volume 1 a. p. 94 - 104).

After 05.03.2012 , the authorized capital of OJSC Krasnaya Polyana is divided into 3,442 (Three thousand four hundred and forty two) shares.

Part of the shares of OJSC "Krasnaya Polyana" from the new issue, namely 215 shares, is purchased by "INDIVIDUAL_12" on the basis of the contract for the purchase and sale of securities No. 6 dated 05/23/2012 (volume 1 a.s. 115 - 118).

As can be seen from the report of the chief accountant of Sberbank of Russia OJSC as of February 4, 2013, Zeeland Development Corp. owns 817 shares of Krasnaya Polyana OJSC, which is 23.736% of the authorized capital. In turn, the banking (consolidated) group of Sberbank of Russia, namely Sberbank Capital LLC, the sole founder and owner of a 100 percent stake is Sberbank of Russia OJSC, owns 1,722 shares of Krasnaya Polyana OJSC , which is 50,029 % of the authorized capital, which is also confirmed by the audit opinion of CJSC "Ernst & Young International Audit" dated 03.18.2013 (volume 1 a. p. 120-126).

On March 9, 2013 , PERSON_5 and PERSON_2 concluded an agreement, the text of which shows that it is an agreement on the transfer of 817 shares of OJSC Krasnaya Polyana to the trust management, which are on the balance sheet of Zeeland Development Corp. According to the specified contract, PERSON_2, on the basis of the share transfer document, undertakes to take ownership of the shares of Zeeland Development Corp. from the previous trustee Dragan Perovych on the terms specified in this contract (volume 1 a. p. 54 - 58).

The Trustee undertakes to own the Beneficiary's shares for 10 (ten) years. The trustee receives 15% of the total number of shares of OJSC "Krasnaya Polyana" upon fulfillment of the terms of the Agreement and/or 15% of the value of shares of OJSC "Krasnaya Polyana" in the amount of 817 shares in the event of sale to third parties before the expiration of this Agreement (Clause 3.3 of the Agreement ) (volume 1 a. p. 56).

The contract dated 09.03.2013 and its terms are fully confirmed by an affidavit made by PERSON_2 on 04.07.2022, the authenticity of the signature on which is certified by PERSON_13, a private notary of the Kyiv City Notary District, and registered in the register under No. 989 (volume 1 a. p. 24,25 ).

On March 15, 2013, on the basis of the document on the transfer of shares, PERSON_7 transferred the ownership of PERSON_2 to "PERSON_12", transferring to him 1 share, which was 100% of the authorized capital. At the same time, the assets of the company "Zeeland Development Corp." also became the property of PERSON_2. in the form of 817 shares of OJSC Krasnaya Polyana.

Also on 15.03.2013 between "Zeeland Development Corp.", on behalf of which the owner PERSON_2 (Seller), PERSON_3 (Buyer) acted and OJSC "Sberbank of Russia", on behalf of which PERSON_4 acted, on the basis of power of attorney dated 11/10/2010 No. 01-1 /1025, made on behalf of OJSC "Sberbank of Russia", by the President, Chairman of the Board Gref G.O. and certified PERSON_14, temporarily acting notary of the city of Moscow Casanova O.Yu. (Creditor), a contract for the purchase and sale of shares of OJSC "Krasnaya Polyana" was concluded (volume 1 a. p. 59).

According to Clause 1 of the contract dated 03.15.2013, the Seller transfers to the Buyer 23.736% of the shares of OJSC "Krasnaya Polyana" in the amount of 817 shares with an estimated value of 189,800,000 ( one hundred and eighty-nine million and eight hundred thousand US dollars) (hereinafter the Shares) at the price 200,000,000 ( Two hundred million US dollars).

The Buyer undertakes to pay the Seller 200,000,000 (Two hundred million US dollars) for the purchase of the shares specified in Clause 1 of this Agreement within 30 days (Clause 2 of the Agreement dated 03/15/2013) (Volume 1, Section 59 ).

In accordance with clause 3 of the agreement dated 03.15.2013, the Buyer purchases Shares on behalf of and in the interests of the Lender (JSC Sberbank of Russia) within the framework of the project of providing a credit line for the benefit of the Buyer's enterprises of the BYN Group of Companies (volume 1 a. p. 59 ).

According to the above agreement, after the Buyer transfers the Shares to the Lender, purchased on his behalf and in his interests, the Lender guarantees to provide the "BYN" Group of Companies with a credit line in the total amount of 15,000,000,000 ( Fifteen billion US dollars) within 10 days ( clause 4 of the agreement dated 15.03.2013) (volume 1 a. p. 59).

Also, the court established that on March 11, 2013 , the director of Zeeland Developnet Corp., Toomas Trouwert, in Tallinn, granted a notarial power of attorney in the name of PERSON_9 (the cousin of PERSON_5) with the right to fully represent the company, in fact transferred his own powers to PERSON_9. At the same time, the power of attorney lacks a sample signature of the authorized person (volume 1 a. p. 68, 69).

In the future, shares of OJSC "Krasnaya Polyana", including 817 shares, which were on the balance sheet of "Zland Development Corp." were alienated on the basis of forged documents in favor of the companies on whose behalf and in whose interests PERSON_3 acted.

Yes, 41.429% of the shares of OJSC "Krasnaya Polyana" in the amount of 1,426 shares. (601 shares owned by PERSON_9, 404 shares owned by Zeeland Developnet Corp. and 421 shares of Kambara Oversaz S.A., 413 of which were transferred from Zeeland Development Corp.) were alienated in favor of offshore companies Velen Finance LTD , "Townfolk Trading Investment LTD" and "Hanberg Finance LTD", represented by PERSON_3 on the basis of forged Memorandum (Agreement of Intent) dated 03/11/2013, Addendum No. 1 dated 03/13/2013 to the Memorandum (Agreement of Intent) dated 03/11/2013 and sales contract dated 18.03.2013 (volume 1 a. p. 70 - 76).

The fact that the sellers forged signatures on the Memorandum (Agreement of Intent) dated 03/11/2013, Addendum No. 1 of 03/13/2013 to the Memorandum (Agreement of Intent) dated 03/11/2013 and the Sales Agreement dated 03/18/2013 is confirmed by Expert Opinion No. 62 dated 19.12.2022, provided based on the results of a handwriting examination as part of criminal proceedings No. 12022100030002505 dated 28.09.2022, in which the plaintiff PERSON_2 was recognized as the victim (volume 1 a. p. 78 - 88).

It can be seen from the case materials that in the final result in 2013 , 817 shares of OJSC Krasnaya Polyana were on the balance sheet of Zeeland Development Corp. became the property of the banking (consolidated) group of Sberbank of Russia, namely Sberbank Capital LLC, the sole founder and owner of a 100 percent share, which is JSC Sberbank of Russia. This is fully confirmed by the audit opinion of CJSC "Ernst & Young Vneshaudit" dated March 24, 2014, which states that JSC "Sberbank of Russia" owns 92.10% of the shares of JSC "Krasnaya Polyana".

Clause 2 part 3 of Art. 22 of the Civil Code of Ukraine, it is established that damages are incomes that a person could have actually received under normal circumstances, if his right had not been violated (forgotten benefit).

According to part 1, 2 of Art. 638 of the Civil Code of Ukraine, a contract is considered concluded and creates rights and obligations for the parties to the contract if the parties have reached agreement on all the essential terms of the contract, in particular regarding the subject of the contract, the term of its performance, etc.

In accordance with Part 4 of Art. 263 of the Code of Civil Procedure of Ukraine defines that when choosing and applying the rule of law to disputed legal relations, the court takes into account the conclusions on the application of the relevant rules of law set forth in the Supreme Court's rulings.

The Supreme Court in its ruling dated 03/30/2021 in case No. 908/2261/17 concluded that when determining the amount of lost profit, information must be taken into account that indisputably confirms the real possibility of receiving a reward if the obligation was fulfilled by the debtor in a proper manner. The income cannot be abstract, because the measures taken by the injured person to receive it must be taken into account to compensate for the lost benefit. Claiming damages in the form of lost profits, a person must prove that under normal circumstances he had real reasons to expect to receive a certain income.

Analyzing the circumstances specified in the statement of claim, the explanation of the plaintiff's representatives and the third party who makes independent claims regarding the subject of the dispute, the materials attached to the civil case, the court comes to the conclusion that the plaintiff under normal circumstances had a real opportunity to receive income in the amount specified in the contract dated 03/15/2013, i.e. in the amount of 15% of 200,000,000 US dollars of the specified amount, namely 30,000,000 US dollars, and PERSON_5 85% of the specified amount, i.e. 170,000,000 US dollars.

From the contract dated March 15, 2013, it is clear that the transfer of ownership of the shares of Krasnaya Polyana PJSC from Zeeland Development Corp. had to satisfy the interests of all parties, namely INDIVIDUAL_15, who acted in the interests of OJSC Sberbank of Russia and on behalf of its official INDIVIDUAL_4 , with the assistance of the latter, received from OJSC Sberbank of Russia a credit line for companies controlled by him in the amount of $ 15,000,000,000 USA (clause 4 of the agreement dated 15.03.2011), OJSC "Sberbank of Russia", through the mediation of PERSON_3, received ownership from "Zeeland Development Corp." 23.736% of the authorized capital of PJSC "Krasnaya Polyana" in the amount of 817 units, and "INDIVIDUAL_12" received cash for the transferred shares in the amount of USD 200,000,000 (clause 2 of the agreement dated 03.15.2011), which in the future, in accordance with the agreement dated 03.09. .2013 were to be distributed between PERSON_2 and PERSON_5 by 15% and 85%, respectively.

Non-fulfillment of obligations under the contract dated 03/15/2013 in terms of payment of funds in the amount of USD 200,000,000 in favor of "PERSON_12" and actions by the defendants that led to the illegal transfer of ownership rights to the shares of PJSC "Krasnaya Polyana" in the amount of 817 pieces from "PERSON_12" to OJSC "Sberbank of Russia" caused PERSON_2 and PERSON_5 losses in the form of lost profits.

According to Art. 541 of the Civil Code of Ukraine establishes that a joint obligation or a joint claim arises in cases established by a contract or law, in particular, in the case of indivisibility of the subject of the obligation.

According to Part 1 of Art. 1190 of the Civil Code of Ukraine, persons whose joint actions or inaction caused damage bear joint and several liability to the victim.

Considering that the damages were caused to the plaintiff and the third party, who is making independent claims regarding the subject of the dispute, by joint and coordinated actions of the defendants, the court comes to the conclusion of the need for joint recovery of lost profits from the defendants in favor of PERSON_2 and PERSON_5.

At the same time, during the court proceedings in the civil case, it was established that after 2013 , Open Joint Stock Company "Sberbank of Russia" was renamed to Public Joint Stock Company "Sberbank of Russia".

Under such circumstances , the claims should be satisfied and collected jointly with PERSON_3, PERSON_4 and PJSC "Sberbank of Russia" in favor of PERSON_2 in the form of lost profit in the amount of 30,000,000 US dollars, and in favor of PERSON_5 in the form of lost profit in the amount of 170,000,000 US dollars.

The court reached a conclusion on the recovery of damages in foreign currency without indicating the equivalent of the amount of damages in national currency in view of the following.

Article 99 of the Constitution of Ukraine establishes that the monetary unit of Ukraine is the hryvnia.

At the same time, the Basic Law does not prohibit the use of foreign currencies in Ukraine.

In accordance with the requirements of Art. 192 of the Civil Code of Ukraine foreign currency can be used in Ukraine in the cases and in the manner established by law.

That is, according to the current legislation, the hryvnia has the status of a universal means of payment, which is accepted without restrictions throughout the territory of Ukraine, but the circulation of foreign currency is conditioned by the requirements of special legislation of Ukraine.

Such cases are provided for by Article 193, part four of Article 524 of the Civil Code of Ukraine, the Law of Ukraine dated 16.04.1991 No. 959-XII "On Foreign Economic Activity", the Decree of the Cabinet of Ministers of Ukraine dated 19.02.1993 No. 15-93 "On the System of Currency Regulation and Currency Control" (hereinafter Decree No. 15-93), the Law of Ukraine dated September 23, 1994 No. 185/94-VR "On the Procedure for Making Settlements in Foreign Currency".

Decree No. 15-93 (as amended and in effect at the time of the conclusion of the contract) established the regime for conducting foreign exchange transactions on the territory of Ukraine, defined the general principles of currency regulation, the powers of state bodies and the functions of banks and other financial institutions of Ukraine in the regulation of foreign exchange transactions, the rights and duties of subjects of currency relations, procedure for currency control, responsibility for violation of currency legislation.

Article 1 of Decree No. 15-93 defines that the terms used in this Decree have the following meaning:

"currency values":

the currency of Ukraine monetary tokens in the form of banknotes, treasury bills, coins and in other forms, which are in circulation and are a legal tender in the territory of Ukraine, as well as withdrawn from circulation or those withdrawn from it, but subject to exchange for monetary tokens, which are in circulation, funds in accounts, in contributions in banking and other financial institutions on the territory of Ukraine;

foreign currency foreign monetary tokens in the form of banknotes, treasury bills, coins, which are in circulation and are legal tender in the territory of the relevant foreign state, as well as withdrawn from circulation or those that are withdrawn from it, but subject to exchange for monetary tokens that are in circulation, funds in

monetary units of foreign countries and international settlement (clearing) units, which are in accounts or deposited in banking and other financial institutions outside Ukraine.

For the purposes of this Decree, the following terms: "currency of Ukraine" shall mean both the actual currency of Ukraine and payment documents and other securities denominated in the currency of Ukraine;

"foreign currency": means both foreign currency itself and bank metals, payment documents and other securities denominated in foreign currency or bank metals;

"currency transactions": transactions related to the transfer of ownership of currency values, with the exception of transactions carried out between residents in the currency of Ukraine;

"residents": natural persons (citizens of Ukraine, foreign citizens, stateless persons) who have a permanent place of residence on the territory of Ukraine, including those who are temporarily abroad;

"non-residents": natural persons (foreign citizens, citizens of Ukraine, stateless persons) who have a permanent place of residence outside Ukraine, including those who are temporarily in the territory of Ukraine.

Article 2 of this Decree states that residents and non-residents have the right to be owners of currency values located on the territory of Ukraine. Residents have the right to be owners of currency values located outside of Ukraine, except for cases provided for by legislative acts of Ukraine.

Residents and non-residents have the right to carry out foreign exchange transactions, taking into account the restrictions established by this Decree and other acts of currency legislation of Ukraine.

Article 5 of Decree No. 15-93 stipulates that operations with currency values are carried out on the basis of general and individual licenses of the NBU.

The fourth part of the aforementioned article lists the cases in which individual licenses are issued to residents and non-residents for a one-time foreign exchange transaction for the period required for such transaction.

The following operations require an individual license: a) export, transfer and forwarding of currency values outside of Ukraine, with the exception of:

export, transfer and forwarding outside of Ukraine by natural persons who are residents of foreign currency for an amount determined by the NBU;

export, transfer and forwarding outside of Ukraine by resident and non-resident natural persons of foreign currency, which was previously imported by them into Ukraine on legal grounds;

payments in foreign currency made by residents outside Ukraine to fulfill obligations in this currency to non-residents regarding payment for products, services, works, intellectual property rights and other property rights, with the exception of payment of currency values and under contracts (insurance policies, certificates , certificates) life insurance;

payments in foreign currency outside Ukraine in the form of interest on loans, income (profit) from foreign investments;

export outside Ukraine of foreign investment in foreign currency, previously made on the territory of Ukraine, in case of termination of investment activity;

payments in foreign currency outside of Ukraine in the form of fees for aircraft air navigation services, which are handled by the European Organization for the Safety of Air Navigation (Eurocontrol) in accordance with the Multilateral Agreement on the Payment of Route Fees concluded in Brussels on February 12, 1981 , and other international contracts;

transfer by an investor (representative of a foreign investor on the territory of Ukraine) outside of Ukraine of foreign currency to other investors under the relevant agreement on product distribution;

b) importation, transfer, forwarding to Ukraine of the currency of Ukraine, with the exception of the cases provided for in clause 2 of article 3 of this Decree;

c) providing and receiving loans in foreign currency by residents, if the terms and amounts of such loans exceed the limits established by law;

d) the use of foreign currency on the territory of Ukraine as a means of payment or as collateral, with the exception of payment in foreign currency for goods, works, services, as well as payment of labor, on the temporarily occupied territory of Ukraine;

e) placement of currency values in accounts and deposits outside of Ukraine, with the exception of:

opening of foreign currency accounts by natural persons - residents during their stay abroad;

opening of correspondent accounts by authorized banks;

opening accounts in foreign currency by residents specified in the fourth paragraph of paragraph 5 of Article 1 of this Decree;

opening of accounts in foreign currency by investors - participants of production sharing agreements, including representative offices of foreign investors under production sharing agreements;

f) making investments abroad, including through the purchase of securities, with the exception of securities or other corporate rights received by natural persons - residents as a gift or as an inheritance.

The fourth part of Article 5 of Decree No. 15-93 provides an exhaustive list of circumstances under which a person conducting a foreign exchange operation must obtain an individual license to carry it out. Decree No. 15-93 does not provide for the obligation to obtain an individual license for the transfer/receipt of foreign currency on loan between natural persons - residents/non-residents staying in Ukraine.

Article 524 of the Civil Code of Ukraine stipulates that the obligation must be expressed in the currency of Ukraine, the hryvnia. The parties can determine the monetary equivalent of the obligation in foreign currency.

Article 533 of the Civil Code of Ukraine establishes that the monetary obligation must be fulfilled in hryvnias.

If the obligation specifies a monetary equivalent in a foreign currency, the amount to be paid in hryvnias is determined at the official exchange rate of the corresponding currency on the day of payment, unless another procedure for its determination is established by the contract or law or other regulatory legal act.

Current legislation does not prohibit the performance of a monetary obligation in the foreign currency in which it is specified in the contract.

From the analysis of the above legal norms, it can be concluded that the hryvnia as the national currency is the only legal means of payment on the territory of Ukraine. The parties, which can be both residents and non-resident natural persons who are in the territory of Ukraine, in the case of concluding civil law agreements performed in the territory of Ukraine, can determine the monetary equivalent in a foreign currency in the monetary obligation.

At the same time, there is no prohibition on the conclusion of civil transactions, the subject of which is foreign currency, except for the use of foreign currency on the territory of Ukraine as a means of payment or as collateral, with the exception of payment in foreign currency for goods, works, services, as well as payment for work, on temporarily occupied land territory of Ukraine.

Therefore, both the conclusion and performance of contractual obligations in foreign currency do not contradict the current legislation.

This position is fully consistent with the legal conclusions set forth in the decisions of the Grand Chamber of the Supreme Court dated July 4, 2018 in case No. 761/12665/14-ts, dated January 16, 2019 in cases No. 373/2054/16-ts and No. 464/3790/ 16th c.

As for the possibility and procedure of determining in the court decision the equivalent of the amount of the debt in national currency, the Grand Chamber of the Supreme Court in the decision dated 04.07.2018 in case No. 761/12665/14-ts indicated that the designation by the court in its decision of two monetary amounts, which must be collected from the debtor, brought ambiguity to the understanding of the essence of the debtor's obligation, which can be enforced. In the event that the court decision specifies the amount of funds in foreign currency with the determination of the equivalent of such amount in hryvnia, the debt collector must be transferred the amount in foreign currency specified in the final part of the court decision, and not its equivalent in hryvnia.

This position is also consistent with the legal opinion of the Grand Chamber of the Supreme Court, set out in the resolution dated 10/23/2019 in case No. 723/304/16-ts.

The court rejects the arguments of the representative of the third party, who declares independent claims regarding the subject of the dispute, in terms of the need to apply to disputed legal relations section 5004 of the Code of Civil Procedure of the State of New York, namely with regard to the calculation of 9% per annum on the amount of damages and does not take into account the advisory opinion of 05/05/2023, executed by Holwell Shuster&Goldberg LLP under the signature of the owner and managing partner Hon. Richard J. Holwell, in view of the following.

In accordance with Part 1 of Art. 10 of the Civil Code of Ukraine, which correlates with Part 1 of Art. 9 of the Constitution of Ukraine establishes that the current international agreement regulating civil relations, the binding consent of which was given by the Verkhovna Rada of Ukraine, is part of the national civil legislation of Ukraine.

Part 1 of Art. 3 of the Civil Procedure Code of Ukraine, it is determined that civil proceedings are carried out in accordance with the Constitution of Ukraine, this Code, the Law of Ukraine "On International Private Law", laws of Ukraine that determine the peculiarities of consideration of certain categories of cases, as well as international treaties, the binding consent of which has been given by the Supreme Council of Ukraine.

According to part 3 of the same article, it is established that proceedings in civil cases are carried out in accordance with the laws in force at the time of individual procedural actions, consideration and resolution of the case.

The provisions of Part 1 of Art. 74 of the Law of Ukraine "On International Private Law" defines that the procedural legal capacity and legal capacity of foreign persons in Ukraine are determined in accordance with the law of Ukraine.

Therefore, the Civil Procedure Code of the state of OSOBA_16 is not an international treaty, the binding consent of which has been given by the Verkhovna Rada of Ukraine, and therefore it is not part of the national civil legislation of Ukraine, and at the same time, the need to apply the provisions of the Civil Procedure Code of the state of OSOBA_16 to disputed legal relations does not follow from the conflict of laws norms of the Law of Ukraine "On International Private Law".

In accordance with the requirements of Part 1 of Art. 141 of the Civil Code of Ukraine, the court fee is assigned to the parties in proportion to the size of the satisfied claims.

In view of the fact that the court came to a conclusion about the need to satisfy the claims in full, by virtue of the provisions of Art. 141 of the Civil Code of Ukraine from the defendants in favor of the plaintiff and a third

party who declares independent claims regarding the subject of the dispute, the court costs incurred by them in the form of payment of court fees for submitting claims of a property nature to the court in the amount of 13,420 hryvnias for each, the payment of which confirmed by the Receipts for the payment order (volume 1 a. p. 127 and volume 2 a. p. 156)

On the basis of the above and guided by Art. Art. 9.99 of the Constitution of Ukraine, Art. 74 of the Law of Ukraine "On International Private Law", Art. Art. 10,22,192,193,524,533,541, 1190 of the Central Committee of Ukraine, Art. Art. 2,3,4,12,13,76,81,89,141,258, 259, 263-265,351,352,354 CPC of Ukraine, court

Decided:

Lawsuit by PERSON_2 against PERSON_3, PERSON_4, Public Joint Stock Company "Sberbank of Russia", third party PERSON_5, for recovery of lost profits and a lawsuit by a third party who claims independent claims regarding the subject of the dispute PERSON_5 against PERSON_3, PERSON_4, Public Joint Stock Company "Sberbank of Russia", third party person PERSON_2 about recovery of damages in the form of lost profits to be satisfied in full.

Collect jointly with PERSON_3, PERSON_4, Public Joint Stock Company "Sberbank of Russia" in favor of PERSON_2 damages in the form of lost profit in the amount of 30,000,000 ( Thirty million) US dollars.

Collect from PERSON_3 in favor of PERSON_2 a court fee in the amount of 4,473 (Four thousand four hundred and seventy-three) hryvnias and 33 kopecks.

Collect from PERSON_4 in favor of PERSON_2 a court fee in the amount of 4,473 (Four thousand four hundred and seventy-three) hryvnias and 33 kopecks.

Collect a court fee in the amount of 4,473 (Four thousand, four hundred and seventy-three) hryvnias and 34 kopecks from the Public Joint-Stock Company "Sberbank of Russia" in favor of PERSON_2.

Collect damages in the form of lost profit in the amount of 170,000,000 (One hundred and seventy million) US dollars jointly with PERSON_3, PERSON_4, and Public Joint Stock Company "Sberbank of Russia" in favor of PERSON_5 .

Collect from PERSON_3 in favor of PERSON_2 a court fee in the amount of 4,473 (Four thousand four hundred and seventy-three) hryvnias and 33 kopecks.

Collect from PERSON_4 in favor of PERSON_2 a court fee in the amount of 4,473 (Four thousand four hundred and seventy-three) hryvnias and 33 kopecks.

Collect a court fee in the amount of 4,473 (Four thousand, four hundred and seventy-three) hryvnias and 34 kopecks from the Public Joint-Stock Company "Sberbank of Russia" in favor of PERSON_2.

The text of the decision can be read at: court.gov.ua.

The court's decision becomes legally binding after the expiry of the period for filing an appeal by all parties to the case, if no appeal has been filed.

In case of filing an appeal, the decision, if it has not been canceled, becomes legally binding after the return of the appeal, refusal to open or close the appeal proceedings, or adoption of the decision of the court of appeal instance as a result of the appellate review.

The court's decision can be appealed to the Kyiv Court of Appeal through the court of first instance within 30 days from the day of its announcement.

If only the introductory and final parts of the court decision were announced at the court session, or in the case of case consideration (resolution of the issue) without notice (summons) of the participants in the case, the

specified term is calculated from the date of the full court decision.

A party to the case, who was not served with a full court decision or decision on the day of its announcement or conclusion, has the right to renew the missed deadline for an appeal against the court decision if the appeal is filed within thirty days from the day the full court decision was delivered to him.

The term for an appeal may be renewed in case of omission for other valid reasons, except for the cases specified in the second part of Article 358 of the Code of Civil Procedure of Ukraine.

Details of the parties:

Plaintiff: PERSON_2, registration number of the taxpayer's registration card: NUMBER_1, place of residence at: ADDRESS_1.

Defendant-1: PERSON_3, place of residence at: ADDRESS_2.

Defendant-2: PERSON_4, place of residence at: ADDRESS_3.

Defendant-3: Public joint-stock company "Sberbank of Russia", OKPO code: 00332537, location at address: 117312, Russian Federation, Moscow, str. Vavilova, building 19.

Third party asserting independent claims regarding the subject matter of the dispute: PERSON_5 , located at: United States of America, New York City, 200 E 61ST ST 36D NEW YORK, NY 10065 c.

Judge: OM Kovalenko