# EXHIBIT 31

# Vienna Convention on the Law of Treaties
### 1969

Done at Vienna on 23 May 1969. Entered into force on 27 January 1980.
United Nations, *Treaty Series*, vol. 1155, p. 331



Copyright © United Nations

2005

**Vienna Convention on the Law of Treaties**
**Done at Vienna on 23 May 1969**

*The States Parties to the present Convention*,

*Considering* the fundamental role of treaties in the history of international relations,

*Recognizing* the ever-increasing importance of treaties as a source of international law and as a means of developing peaceful cooperation among nations, whatever their constitutional and social systems,

*Noting* that the principles of free consent and of good faith and the *pacta sunt servanda* rule are universally recognized,

*Affirming* that disputes concerning treaties, like other international disputes, should be settled by peaceful means and in conformity with the principles of justice and international law,

*Recalling* the determination of the peoples of the United Nations to establish conditions under which justice and respect for the obligations arising from treaties can be maintained,

*Having in mind* the principles of international law embodied in the Charter of the United Nations, such as the principles of the equal rights and self-determination of peoples, of the sovereign equality and independence of all States, of non-interference in the domestic affairs of States, of the prohibition of the threat or use of force and of universal respect for, and observance of, human rights and fundamental freedoms for all,

*Believing* that the codification and progressive development of the law of treaties achieved in the present Convention will promote the purposes of the United Nations set forth in the Charter, namely, the maintenance of international peace and security, the development of friendly relations and the achievement of cooperation among nations,

*Affirming* that the rules of customary international law will continue to govern questions not regulated by the provisions of the present Convention,

*Have agreed* as follows:

PART I.
INTRODUCTION

*Article 1*
*Scope of the present Convention*

The present Convention applies to treaties between States.

*Article 2*
*Use of terms*

1. For the purposes of the present Convention:

(*a*)    "treaty" means an international agreement concluded between States in written form and governed by international law, whether embodied in a single instrument or in two or more related instruments and whatever its particular designation;

(*b*)    "ratification", "acceptance", "approval" and "accession" mean in each case the international act so named whereby a State establishes on the international plane its consent to be bound by a treaty;

(*c*)    "full powers" means a document emanating from the competent authority of a State designating a person or persons to represent the State for negotiating, adopting or authenticating the text of a treaty, for expressing the consent of the State to be bound by a treaty, or for accomplishing any other act with respect to a treaty;

(*d*)    "reservation" means a unilateral statement, however phrased or named, made by a State, when signing, ratifying, accepting, approving or acceding to a treaty, whereby it purports to exclude or to modify the legal effect of certain provisions of the treaty in their application to that State;

(*e*)    "negotiating State" means a State which took part in the drawing up and adoption of the text of the treaty;

(f)    "contracting State" means a State which has consented to be bound by the treaty, whether or not the treaty has entered into force;

(*g*)    "party" means a State which has consented to be bound by the treaty and for which the treaty is in force;

(*h*)    "third State" means a State not a party to the treaty;

(*i*)    "international organization" means an intergovernmental organization.

2. The provisions of paragraph 1 regarding the use of terms in the present Convention are without prejudice to the use of those terms or to the meanings which may be given to them in the internal law of any State.

*Article 3*
*International agreements not within the scope*
*of the present Convention*

The fact that the present Convention does not apply to international agreements concluded between States and other subjects of international law or between such other subjects of international law, or to international agreements not in written form, shall not affect:

(*a*)    the legal force of such agreements;

(*b*)    the application to them of any of the rules set forth in the present Convention to which they would be subject under international law independently of the Convention;

(*c*)    the application of the Convention to the relations of States as between themselves under international agreements to which other subjects of international law are also parties.

*Article 4*
*Non-retroactivity of the present Convention*

Without prejudice to the application of any rules set forth in the present Convention to which treaties would be subject under international law independently of the Convention, the Convention applies only to treaties which are concluded by States after the entry into force of the present Convention with regard to such States.

*Article 5*
*Treaties constituting international organizations and treaties*
*adopted within an international organization*

The present Convention applies to any treaty which is the constituent instrument of an international organization and to any treaty adopted within an international organization without prejudice to any relevant rules of the organization.

PART II.
CONCLUSION AND ENTRY INTO FORCE OF TREATIES
SECTION 1.        CONCLUSION OF TREATIES

*Article 6*
*Capacity of States to conclude treaties*

Every State possesses capacity to conclude treaties.

*Article 7*
*Full powers*

1. A person is considered as representing a State for the purpose of adopting or authenticating the text of a treaty or for the purpose of expressing the consent of the State to be bound by a treaty if:

(*a*)    he produces appropriate full powers; or

(*b*)    it appears from the practice of the States concerned or from other circumstances that their intention was to consider that person as representing the State for such purposes and to dispense with full powers.

2.In virtue of their functions and without having to produce full powers, the following are considered as representing their State:

(*a*)    Heads of State, Heads of Government and Ministers for Foreign Affairs, for the purpose of performing all acts relating to the conclusion of a treaty;

(*b*)    heads of diplomatic missions, for the purpose of adopting the text of a treaty between the accrediting State and the State to which they are accredited;

(*c*)    representatives accredited by States to an international conference or to an international organization or one of its organs, for the purpose of adopting the text of a treaty in that conference, organization or organ.

*Article 8*
*Subsequent confirmation of an act performed*
*without authorization*

An act relating to the conclusion of a treaty performed by a person who cannot be considered under article 7 as authorized to represent a State for that purpose is without legal effect unless afterwards confirmed by that State.

*Article 9*
*Adoption of the text*

1.The adoption of the text of a treaty takes place by the consent of all the States participating in its drawing up except as provided in paragraph 2.

2.The adoption of the text of a treaty at an international conference takes place by the vote of two thirds of the States present and voting, unless by the same majority they shall decide to apply a different rule.

*Article 10*
*Authentication of the text*

The text of a treaty is established as authentic and definitive:

(*a*)    by such procedure as may be provided for in the text or agreed upon by the States participating in its drawing up; or

(*b*)    failing such procedure, by the signature, signature ad referendum or initialling by the representatives of those States of the text of the treaty or of the Final Act of a conference incorporating the text.

5

*Article 11*
*Means of expressing consent to be bound by a treaty*

The consent of a State to be bound by a treaty may be expressed by signature, exchange of instruments constituting a treaty, ratification, acceptance, approval or accession, or by any other means if so agreed.

*Article 12*
*Consent to be bound by a treaty expressed by signature*

1. The consent of a State to be bound by a treaty is expressed by the signature of its representative when:

(*a*)    the treaty provides that signature shall have that effect;

(*b*)    it is otherwise established that the negotiating States were agreed that signature should have that effect; or

(*c*)    the intention of the State to give that effect to the signature appears from the full powers of its representative or was expressed during the negotiation.

2. For the purposes of paragraph 1:

(*a*)    the initialling of a text constitutes a signature of the treaty when it is established that the negotiating States so agreed;

(*b*)    the signature ad referendum of a treaty by a representative, if confirmed by his State, constitutes a full signature of the treaty.

*Article 13*
*Consent to be bound by a treaty expressed by an*
*exchange of instruments constituting a treaty*

The consent of States to be bound by a treaty constituted by instruments exchanged between them is expressed by that exchange when:

(*a*)    the instruments provide that their exchange shall have that effect; or

(*b*)    it is otherwise established that those States were agreed that the exchange of instruments should have that effect.

*Article 14*
*Consent to be bound by a treaty expressed by ratification,*
*acceptance or approval*

1. The consent of a State to be bound by a treaty is expressed by ratification when:

6

(*a*)   the treaty provides for such consent to be expressed by means of ratification;

(*b*)   it is otherwise established that the negotiating States were agreed that ratification should be required;

(*c*)   the representative of the State has signed the treaty subject to ratification; or

(*d*)   the intention of the State to sign the treaty subject to ratification appears from the full powers of its representative or was expressed during the negotiation.

2. The consent of a State to be bound by a treaty is expressed by acceptance or approval under conditions similar to those which apply to ratification.

*Article 15*
*Consent to be bound by a treaty expressed by accession*

The consent of a State to be bound by a treaty is expressed by accession when:

(*a*)   the treaty provides that such consent may be expressed by that State by means of accession;

(*b*)   it is otherwise established that the negotiating States were agreed that such consent may be expressed by that State by means of accession; or

(*c*)   all the parties have subsequently agreed that such consent may be expressed by that State by means of accession.

*Article 16*
*Exchange or deposit of instruments of ratification,*
*acceptance, approval or accession*

Unless the treaty otherwise provides, instruments of ratification, acceptance, approval or accession establish the consent of a State to be bound by a treaty upon:

(*a*)   their exchange between the contracting States;

(*b*)   their deposit with the depositary; or

(*c*)   their notification to the contracting States or to the depositary, if so agreed.

*Article 17*
*Consent to be bound by part of a treaty and*
*choice of differing provisions*

1. Without prejudice to articles 19 to 23, the consent of a State to be bound by part of a treaty is effective only if the treaty so permits or the other contracting States so agree.

2. The consent of a State to be bound by a treaty which permits a choice between differing provisions is effective only if it is made clear to which of the provisions the consent relates.

*Article 18*
*Obligation not to defeat the object and purpose*
*of a treaty prior to its entry into force*

A State is obliged to refrain from acts which would defeat the object and purpose of a treaty when:

(*a*)    it has signed the treaty or has exchanged instruments constituting the treaty subject to ratification, acceptance or approval, until it shall have made its intention clear not to become a party to the treaty; or

(*b*)    it has expressed its consent to be bound by the treaty, pending the entry into force of the treaty and provided that such entry into force is not unduly delayed.

SECTION 2.        RESERVATIONS

*Article 19*
*Formulation of reservations*

A State may, when signing, ratifying, accepting, approving or acceding to a treaty, formulate a reservation unless:

(*a*)    the reservation is prohibited by the treaty;

(*b*)    the treaty provides that only specified reservations, which do not include the reservation in question, may be made; or

(*c*)    in cases not failing under subparagraphs (*a*) and (*b*), the reservation is incompatible with the object and purpose of the treaty.

*Article 20*
*Acceptance of and objection to reservations*

1. A reservation expressly authorized by a treaty does not require any subsequent acceptance by the other contracting States unless the treaty so provides.

2. When it appears from the limited number of the negotiating States and the object and purpose of a treaty that the application of the treaty in its entirety between all the parties is an essential condition of the consent of each one to be bound by the treaty, a reservation requires acceptance by all the parties.

3. When a treaty is a constituent instrument of an international organization and unless it otherwise provides, a reservation requires the acceptance of the competent organ of that organization.

4. In cases not falling under the preceding paragraphs and unless the treaty otherwise provides:

(*a*)    acceptance by another contracting State of a reservation constitutes the reserving State a party to the treaty in relation to that other State if or when the treaty is in force for those States;

(*b*)    an objection by another contracting State to a reservation does not preclude the entry into force of the treaty as between the objecting and reserving States unless a contrary intention is definitely expressed by the objecting State;

(*c*)    an act expressing a State's consent to be bound by the treaty and containing a reservation is effective as soon as at least one other contracting State has accepted the reservation.

5. For the purposes of paragraphs 2 and 4 and unless the treaty otherwise provides, a reservation is considered to have been accepted by a State if it shall have raised no objection to the reservation by the end of a period of twelve months after it was notified of the reservation or by the date on which it expressed its consent to be bound by the treaty, whichever is later.

*Article 21*
*Legal effects of reservations and of objections to reservations*

1. A reservation established with regard to another party in accordance with articles 19, 20 and 23:

(*a*)    modifies for the reserving State in its relations with that other party the provisions of the treaty to which the reservation relates to the extent of the reservation; and

(*b*)    modifies those provisions to the same extent for that other party in its relations with the reserving State.

2. The reservation does not modify the provisions of the treaty for the other parties to the treaty inter se.

3. When a State objecting to a reservation has not opposed the entry into force of the treaty between itself and the reserving State, the provisions to which the reservation relates do not apply as between the two States to the extent of the reservation.

*Article 22*
*Withdrawal of reservations and of*
*objections to reservations*

1. Unless the treaty otherwise provides, a reservation may be withdrawn at any time and the consent of a State which has accepted the reservation is not required for its withdrawal.

2. Unless the treaty otherwise provides, an objection to a reservation may be withdrawn at any time.

3. Unless the treaty otherwise provides, or it is otherwise agreed:

(*a*)    the withdrawal of a reservation becomes operative in relation to another contracting State only when notice of it has been received by that State;

(*b*)    the withdrawal of an objection to a reservation becomes operative only when notice of it has been received by the State which formulated the reservation.

*Article 23*
*Procedure regarding reservations*

1. A reservation, an express acceptance of a reservation and an objection to a reservation must be formulated in writing and communicated to the contracting States and other States entitled to become parties to the treaty.

2. If formulated when signing the treaty subject to ratification, acceptance or approval, a reservation must be formally confirmed by the reserving State when expressing its consent to be bound by the treaty. In such a case the reservation shall be considered as having been made on the date of its confirmation.

3. An express acceptance of, or an objection to, a reservation made previously to confirmation of the reservation does not itself require confirmation.

4. The withdrawal of a reservation or of an objection to a reservation must be formulated in writing.

SECTION 3.        ENTRY INTO FORCE AND PROVISIONAL,
APPLICATION OF TREATIES

*Article 24*
*Entry into force*

1. A treaty enters into force in such manner and upon such date as it may provide or as the negotiating States may agree.

2. Failing any such provision or agreement, a treaty enters into force as soon as consent to be bound by the treaty has been established for all the negotiating States.

3. When the consent of a State to be bound by a treaty is established on a date after the treaty has come into force, the treaty enters into force for that State on that date, unless the treaty otherwise provides.

4. The provisions of a treaty regulating the authentication of its text, the establishment of the consent of States to be bound by the treaty, the manner or date of its entry into force, reservations, the functions of the depositary and other matters arising necessarily before the entry into force of the treaty apply from the time of the adoption of its text.

*Article 25*
*Provisional application*

1. A treaty or a part of a treaty is applied provisionally pending its entry into force if:

(*a*)    the treaty itself so provides; or

(*b*)    the negotiating States have in some other manner so agreed.

2. Unless the treaty otherwise provides or the negotiating States have otherwise agreed, the provisional application of a treaty or a part of a treaty with respect to a State shall be terminated if that State notifies the other States between which the treaty is being applied provisionally of its intention not to become a party to the treaty.

PART III.

OBSERVANCE, APPLICATION AND

INTERPRETATION OF TREATIES

SECTION 1.        OBSERVANCE OF TREATIES

*Article 26*
*"Pacta sunt servanda"*

Every treaty in force is binding upon the parties to it and must be performed by them in good faith.

*Article 27*
*Internal law and observance of treaties*

A party may not invoke the provisions of its internal law as justification for its failure to perform a treaty. This rule is without prejudice to article 46.

SECTION 2.        APPLICATION OF TREATIES

*Article 28*
*Non-retroactivity of treaties*

Unless a different intention appears from the treaty or is otherwise established, its provisions do not bind a party in relation to any act or fact which took place or any situation which ceased to exist before the date of the entry into force of the treaty with respect to that party.

*Article 29*
*Territorial scope of treaties*

Unless a different intention appears from the treaty or is otherwise established, a treaty is binding upon each party in respect of its entire territory.

*Article 30*
*Application of successive treaties relating to*
*the same subject matter*

1. Subject to Article 103 of the Charter of the United Nations, the rights and obligations of States Parties to successive treaties relating to the same subject matter shall be determined in accordance with the following paragraphs.

2. When a treaty specifies that it is subject to, or that it is not to be considered as incompatible with, an earlier or later treaty, the provisions of that other treaty prevail.

3. When all the parties to the earlier treaty are parties also to the later treaty but the earlier treaty is not terminated or suspended in operation under article 59, the earlier treaty applies only to the extent that its provisions are compatible with those of the later treaty.

4. When the parties to the later treaty do not include all the parties to the earlier one:

(*a*)    as between States Parties to both treaties the same rule applies as in paragraph 3;

(*b*)    as between a State party to both treaties and a State party to only one of the treaties, the treaty to which both States are parties governs their mutual rights and obligations.

5. Paragraph 4 is without prejudice to article 41, or to any question of the termination or suspension of the operation of a treaty under article 60 or to any question of responsibility which may arise for a State from the conclusion or application of a treaty the provisions of which are incompatible with its obligations towards another State under another treaty.

SECTION 3.        INTERPRETATION OF TREATIES

*Article 31*
*General rule of interpretation*

1. A treaty shall be interpreted in good faith in accordance with the ordinary meaning to be given to the terms of the treaty in their context and in the light of its object and purpose.

2. The context for the purpose of the interpretation of a treaty shall comprise, in addition to the text, including its preamble and annexes:

(*a*)    any agreement relating to the treaty which was made between all the parties in connection with the conclusion of the treaty;

(*b*)    any instrument which was made by one or more parties in connection with the conclusion of the treaty and accepted by the other parties as an instrument related to the treaty.

3. There shall be taken into account, together with the context:

(*a*)    any subsequent agreement between the parties regarding the interpretation of the treaty or the application of its provisions;

(*b*)    any subsequent practice in the application of the treaty which establishes the agreement of the parties regarding its interpretation;

(*c*)    any relevant rules of international law applicable in the relations between the parties.

4. A special meaning shall be given to a term if it is established that the parties so intended.

*Article 32*
*Supplementary means of interpretation*

Recourse may be had to supplementary means of interpretation, including the preparatory work of the treaty and the circumstances of its conclusion, in order to confirm the meaning resulting from the application of article 31, or to determine the meaning when the interpretation according to article 31:

(*a*)    leaves the meaning ambiguous or obscure; or

(*b*)    leads to a result which is manifestly absurd or unreasonable.

*Article 33*
*Interpretation of treaties authenticated in two or more languages*

1. When a treaty has been authenticated in two or more languages, the text is equally authoritative in each language, unless the treaty provides or the parties agree that, in case of divergence, a particular text shall prevail.

2. A version of the treaty in a language other than one of those in which the text was authenticated shall be considered an authentic text only if the treaty so provides or the parties so agree.

3. The terms of the treaty are presumed to have the same meaning in each authentic text.

4. Except where a particular text prevails in accordance with paragraph 1, when a comparison of the authentic texts discloses a difference of meaning which the application of articles 31 and 32 does not remove, the meaning which best reconciles the texts, having regard to the object and purpose of the treaty, shall be adopted.

SECTION 4.        TREATIES AND THIRD STATES
*Article 34*
*General rule regarding third States*

A treaty does not create either obligations or rights for a third State without its consent.

*Article 35*
*Treaties providing for obligations for third States*

An obligation arises for a third State from a provision of a treaty if the parties to the treaty intend the provision to be the means of establishing the obligation and the third State expressly accepts that obligation in writing.

*Article 36*
*Treaties providing for rights for third States*

1. A right arises for a third State from a provision of a treaty if the parties to the treaty intend the provision to accord that right either to the third State, or to a group of States to which it belongs, or to all States, and the third State assents thereto. Its assent shall be presumed so long as the contrary is not indicated, unless the treaty otherwise provides.

2. A State exercising a right in accordance with paragraph 1 shall comply with the conditions for its exercise provided for in the treaty or established in conformity with the treaty.

*Article 37*
*Revocation or modification of obligations or*
*rights of third States*

1. When an obligation has arisen for a third State in conformity with article 35, the obligation may be revoked or modified only with the consent of the parties to the treaty and of the third State, unless it is established that they had otherwise agreed.

2. When a right has arisen for a third State in conformity with article 36, the right may not be revoked or modified by the parties if it is established that the right was intended not to be revocable or subject to modification without the consent of the third State.

*Article 38*
*Rules in a treaty becoming binding on third States*
*through international custom*

Nothing in articles 34 to 37 precludes a rule set forth in a treaty from becoming binding upon a third State as a customary rule of international law, recognized as such.

PART IV.
AMENDMENT AND
MODIFICATION OF TREATIES

*Article 39*
*General rule regarding the amendment of treaties*

A treaty may be amended by agreement between the parties. The rules laid down in Part II apply to such an agreement except insofar as the treaty may otherwise provide.

*Article 40*
*Amendment of multilateral treaties*

1. Unless the treaty otherwise provides, the amendment of multilateral treaties shall be governed by the following paragraphs.

2. Any proposal to amend a multilateral treaty as between all the parties must be notified to all the contracting States, each one of which shall have the right to take part in:

(*a*)    the decision as to the action to be taken in regard to such proposal;

(*b*)    the negotiation and conclusion of any agreement for the amendment of the treaty.

3. Every State entitled to become a party to the treaty shall also be entitled to become a party to the treaty as amended.

4. The amending agreement does not bind any State already a party to the treaty which does not become a party to the amending agreement; article 30, paragraph 4 (b), applies in relation to such State.

5. Any State which becomes a party to the treaty after the entry into force of the amending agreement shall, failing an expression of a different intention by that State:

(*a*)    be considered as a party to the treaty as amended; and

(*b*)    be considered as a party to the unamended treaty in relation to any party to the treaty not bound by the amending agreement.

*Article 41*
*Agreements to modify multilateral treaties between*
*certain of the parties only*

1. Two or more of the parties to a multilateral treaty may conclude an agreement to modify the treaty as between themselves alone if:

(*a*)    the possibility of such a modification is provided for by the treaty; or

(*b*)    the modification in question is not prohibited by the treaty and:

   (i)    does not affect the enjoyment by the other parties of their rights under the treaty or the performance of their obligations;
   (ii)    does not relate to a provision, derogation from which is incompatible with the effective execution of the object and purpose of the treaty as a whole.

2. Unless in a case falling under paragraph 1 (*a*) the treaty otherwise provides, the parties in question shall notify the other parties of their intention to conclude the agreement and of the modification to the treaty for which it provides.

Part V.
Invalidity, Termination and Suspension of the Operation of Treaties
section 1.          general provisions

*Article 42*
*Validity and continuance in force of treaties*

1. The validity of a treaty or of the consent of a State to be bound by a treaty may be impeached only through the application of the present Convention.

2. The termination of a treaty, its denunciation or the withdrawal of a party, may take place only as a result of the application of the provisions of the treaty or of the present Convention. The same rule applies to suspension of the operation of a treaty.

*Article 43*
*Obligations imposed by international law*
*independently of a treaty*

The invalidity, termination or denunciation of a treaty, the withdrawal of a party from it, or the suspension of its operation, as a result of the application of the present Convention or of the provisions of the treaty, shall not in any way impair the duty of any State to fulfil any obligation embodied in the treaty to which it would be subject under international law independently of the treaty.

*Article 44*
*Separability of treaty provisions*

1. A right of a party, provided for in a treaty or arising under article 56, to denounce, withdraw from or suspend the operation of the treaty may be exercised only with respect to the whole treaty unless the treaty otherwise provides or the parties otherwise agree.

2. A ground for invalidating, terminating, withdrawing from or suspending the operation of a treaty recognized in the present Convention may be invoked only with respect to the whole treaty except as provided in the following paragraphs or in article 60.

3. If the ground relates solely to particular clauses, it may be invoked only with respect to those clauses where:

(*a*)    the said clauses are separable from the remainder of the treaty with regard to their application;

(*b*)    it appears from the treaty or is otherwise established that acceptance of those clauses was not an essential basis of the consent of the other party or parties to be bound by the treaty as a whole; and

(*c*)    continued performance of the remainder of the treaty would not be unjust.

4. In cases falling under articles 49 and 50, the State entitled to invoke the fraud or corruption may do so with respect either to the whole treaty or, subject to paragraph 3, to the particular clauses alone.

5. In cases falling under articles 51, 52 and 53, no separation of the provisions of the treaty is permitted.

*Article 45*
*Loss of a right to invoke a ground for invalidating, terminating,*
*withdrawing from or suspending the operation of a treaty*

A State may no longer invoke a ground for invalidating, terminating, withdrawing from or suspending the operation of a treaty under articles 46 to 50 or articles 60 and 62 if, after becoming aware of the facts:

(*a*)    it shall have expressly agreed that the treaty is valid or remains in force or continues in operation, as the case may be; or

(*b*)    it must by reason of its conduct be considered as having acquiesced in the validity of the treaty or in its maintenance in force or in operation, as the case may be.

SECTION 2.          INVALIDITY OF TREATIES

*Article 46*
*Provisions of internal law regarding competence*
*to conclude treaties*

1. A State may not invoke the fact that its consent to be bound by a treaty has been expressed in violation of a provision of its internal law regarding competence to conclude treaties as invalidating its consent unless that violation was manifest and concerned a rule of its internal law of fundamental importance.

2. A violation is manifest if it would be objectively evident to any State conducting itself in the matter in accordance with normal practice and in good faith.

*Article 47*
*Specific restrictions on authority to express*
*the consent of a State*

If the authority of a representative to express the consent of a State to be bound by a particular treaty has been made subject to a specific restriction, his omission to observe that restriction may not be invoked as invalidating the consent expressed by him unless the restriction was notified to the other negotiating States prior to his expressing such consent.

*Article 48*
*Error*

1. A State may invoke an error in a treaty as invalidating its consent to be bound by the treaty if the error relates to a fact or situation which was assumed by that State to exist at the time when the treaty was concluded and formed an essential basis of its consent to be bound by the treaty.

2. Paragraph 1 shall not apply if the State in question contributed by its own conduct to the error or if the circumstances were such as to put that State on notice of a possible error.

3. An error relating only to the wording of the text of a treaty does not affect its validity; article 79 then applies.

*Article 49*
*Fraud*

If a State has been induced to conclude a treaty by the fraudulent conduct of another negotiating State, the State may invoke the fraud as invalidating its consent to be bound by the treaty.

*Article 50*
*Corruption of a representative of a State*

If the expression of a State's consent to be bound by a treaty has been procured through the corruption of its representative directly or indirectly by another negotiating State, the State may invoke such corruption as invalidating its consent to be bound by the treaty.

*Article 51*
*Coercion of a representative of a State*

The expression of a State's consent to be bound by a treaty which has been procured by the coercion of its representative through acts or threats directed against him shall be without any legal effect.

*Article 52*
*Coercion of a State by the threat or use of force*

A treaty is void if its conclusion has been procured by the threat or use of force in violation of the principles of international law embodied in the Charter of the United Nations.

*Article 53*
*Treaties conflicting with a peremptory norm of*
*general international law ("jus cogens")*

A treaty is void if, at the time of its conclusion, it conflicts with a peremptory norm of general international law. For the purposes of the present Convention, a peremptory norm of general international law is a norm accepted and recognized by the international community of States as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character.

SECTION 3.         TERMINATION AND SUSPENSION
OF THE OPERATION OF TREATIES

*Article 54*
*Termination of or withdrawal from a treaty under*
*its provisions or by consent of the parties*

The termination of a treaty or the withdrawal of a party may take place:

(*a*)    in conformity with the provisions of the treaty; or

(*b*)    at any time by consent of all the parties after consultation with the other contracting States.

*Article 55*
*Reduction of the parties to a multilateral treaty below the*
*number necessary for its entry into force*

Unless the treaty otherwise provides, a multilateral treaty does not terminate by reason only of the fact that the number of the parties falls below the number necessary for its entry into force.

*Article 56*
*Denunciation of or withdrawal from a treaty containing no*
*provision regarding termination, denunciation or withdrawal*

1. A treaty which contains no provision regarding its termination and which does not provide for denunciation or withdrawal is not subject to denunciation or withdrawal unless:

(*a*)    it is established that the parties intended to admit the possibility of denunciation or withdrawal; or

(*b*)    a right of denunciation or withdrawal may be implied by the nature of the treaty.

2. A party shall give not less than twelve months' notice of its intention to denounce or withdraw from a treaty under paragraph 1.

*Article 57*
*Suspension of the operation of a treaty under its*
*provisions or by consent of the parties*

The operation of a treaty in regard to all the parties or to a particular party may be suspended:

(*a*)    in conformity with the provisions of the treaty; or

(*b*)    at any time by consent of all the parties after consultation with the other contracting States.

*Article 58*
*Suspension of the operation of a multilateral treaty by*
*agreement between certain of the parties only*

1. Two or more parties to a multilateral treaty may conclude an agreement to suspend the operation of provisions of the treaty, temporarily and as between themselves alone, if:

(*a*)     the possibility of such a suspension is provided for by the treaty; or

(*b*)     the suspension in question is not prohibited by the treaty and:

    (i)     does not affect the enjoyment by the other parties of their rights under the treaty or the performance of their obligations;

    (ii)     is not incompatible with the object and purpose of the treaty.

2. Unless in a case falling under paragraph 1 (*a*) the treaty otherwise provides, the parties in question shall notify the other parties of their intention to conclude the agreement and of those provisions of the treaty the operation of which they intend to suspend.

*Article 59*
*Termination or suspension of the operation of a treaty*
*implied by conclusion of a later treaty*

1. A treaty shall be considered as terminated if all the parties to it conclude a later treaty relating to the same subject matter and:

(*a*)     it appears from the later treaty or is otherwise established that the parties intended that the matter should be governed by that treaty; or

(*b*)     the provisions of the later treaty are so far incompatible with those of the earlier one that the two treaties are not capable of being applied at the same time.

2. The earlier treaty shall be considered as only suspended in operation if it appears from the later treaty or is otherwise established that such was the intention of the parties.

*Article 60*
*Termination or suspension of the operation of a treaty*
*as a consequence of its breach*

1. A material breach of a bilateral treaty by one of the parties entitles the other to invoke the breach as a ground for terminating the treaty or suspending its operation in whole or in part.

2. A material breach of a multilateral treaty by one of the parties entitles:

(*a*)     the other parties by unanimous agreement to suspend the operation of the treaty in whole or in part or to terminate it either:

(i)    in the relations between themselves and the defaulting State; or

(ii)    as between all the parties;

(*b*)    a party specially affected by the breach to invoke it as a ground for suspending the operation of the treaty in whole or in part in the relations between itself and the defaulting State;

(*c*)    any party other than the defaulting State to invoke the breach as a ground for suspending the operation of the treaty in whole or in part with respect to itself if the treaty is of such a character that a material breach of its provisions by one party radically changes the position of every party with respect to the further performance of its obligations under the treaty.

3. A material breach of a treaty, for the purposes of this article, consists in:

(*a*)    a repudiation of the treaty not sanctioned by the present Convention; or

(*b*)    the violation of a provision essential to the accomplishment of the object or purpose of the treaty.

4. The foregoing paragraphs are without prejudice to any provision in the treaty applicable in the event of a breach.

5. Paragraphs 1 to 3 do not apply to provisions relating to the protection of the human person contained in treaties of a humanitarian character, in particular to provisions prohibiting any form of reprisals against persons protected by such treaties.

*Article 61*
*Supervening impossibility of performance*

1. A party may invoke the impossibility of performing a treaty as a ground for terminating or withdrawing from it if the impossibility results from the permanent disappearance or destruction of an object indispensable for the execution of the treaty. If the impossibility is temporary, it may be invoked only as a ground for suspending the operation of the treaty.

2. Impossibility of performance may not be invoked by a party as a ground for terminating, withdrawing from or suspending the operation of a treaty if the impossibility is the result of a breach by that party either of an obligation under the treaty or of any other international obligation owed to any other party to the treaty.

*Article 62*
*Fundamental change of circumstances*

1. A fundamental change of circumstances which has occurred with regard to those existing at the time of the conclusion of a treaty, and which was not foreseen by the parties, may not be invoked as a ground for terminating or withdrawing from the treaty unless:

(*a*)    the existence of those circumstances constituted an essential basis of the consent of the parties to be bound by the treaty; and

(*b*)    the effect of the change is radically to transform the extent of obligations still to be performed under the treaty.

2. A fundamental change of circumstances may not be invoked as a ground for terminating or withdrawing from a treaty:

(*a*)    if the treaty establishes a boundary; or

(*b*)    if the fundamental change is the result of a breach by the party invoking it either of an obligation under the treaty or of any other international obligation owed to any other party to the treaty.

3. If, under the foregoing paragraphs, a party may invoke a fundamental change of circumstances as a ground for terminating or withdrawing from a treaty it may also invoke the change as a ground for suspending the operation of the treaty.

*Article 63*
*Severance of diplomatic or consular relations*

The severance of diplomatic or consular relations between parties to a treaty does not affect the legal relations established between them by the treaty except insofar as the existence of diplomatic or consular relations is indispensable for the application of the treaty.

*Article 64*
*Emergence of a new peremptory norm of general*
*international law ("jus cogens")*

If a new peremptory norm of general international law emerges, any existing treaty which is in conflict with that norm becomes void and terminates.

SECTION 4.        PROCEDURE

*Article 65*
*Procedure to be followed with respect to invalidity,*
*termination, withdrawal from or suspension of the*
*operation of a treaty*

1. A party which, under the provisions of the present Convention, invokes either a defect in its consent to be bound by a treaty or a ground for impeaching the validity of a treaty, terminating it, withdrawing from it or suspending its operation, must notify the other parties of its claim. The notification shall indicate the measure proposed to be taken with respect to the treaty and the reasons therefor.

2. If, after the expiry of a period which, except in cases of special urgency, shall not be less than three months after the receipt of the notification, no party has raised any objection, the party making the notification may carry out in the manner provided in article 67 the measure which it has proposed.

3.If, however, objection has been raised by any other party, the parties shall seek a solution through the means indicated in Article 33 of the Charter of the United Nations.

4.Nothing in the foregoing paragraphs shall affect the rights or obligations of the parties under any provisions in force binding the parties with regard to the settlement of disputes.

5.Without prejudice to article 45, the fact that a State has not previously made the notification prescribed in paragraph 1 shall not prevent it from making such notification in answer to another party claiming performance of the treaty or alleging its violation.

*Article 66*
*Procedures for judicial settlement, arbitration and conciliation*

If, under paragraph 3 of article 65, no solution has been reached within a period of 12 months following the date on which the objection was raised, the following procedures shall be followed:

(*a*)     any one of the parties to a dispute concerning the application or the interpretation of article 53 or 64 may, by a written application, submit it to the International Court of Justice for a decision unless the parties by common consent agree to submit the dispute to arbitration;

(*b*)     any one of the parties to a dispute concerning the application or the interpretation of any of the other articles in part V of the present Convention may set in motion the procedure specified in the Annex to the Convention by submitting a request to that effect to the Secretary-General of the United Nations.

*Article 67*
*Instruments for declaring invalid, terminating, withdrawing*
*from or suspending the operation of a treaty*

1.The notification provided for under article 65, paragraph 1, must be made in writing.

2.Any act of declaring invalid, terminating, withdrawing from or suspending the operation of a treaty pursuant to the provisions of the treaty or of paragraphs 2 or 3 of article 65 shall be carried out through an instrument communicated to the other parties. If the instrument is not signed by the Head of State, Head of Government or Minister for Foreign Affairs, the representative of the State communicating it may be called upon to produce full powers.

*Article 68*
*Revocation of notifications and instruments provided*
*for in articles 65 and 67*

A notification or instrument provided for in article 65 or 67 may be revoked at any time before it takes effect.

SECTION 5.      CONSEQUENCES OF THE INVALIDITY, TERMINATION
OR SUSPENSION OF THE OPERATION OF A TREATY

*Article 69*
*Consequences of the invalidity of a treaty*

1. A treaty the invalidity of which is established under the present Convention is void. The provisions of a void treaty have no legal force.

2. If acts have nevertheless been performed in reliance on such a treaty:

(*a*)    each party may require any other party to establish as far as possible in their mutual relations the position that would have existed if the acts had not been performed;

(*b*)    acts performed in good faith before the invalidity was invoked are not rendered unlawful by reason only of the invalidity of the treaty.

3. In cases falling under article 49, 50, 51 or 52, paragraph 2 does not apply with respect to the party to which the fraud, the act of corruption or the coercion is imputable.

4. In the case of the invalidity of a particular State's consent to be bound by a multilateral treaty, the foregoing rules apply in the relations between that State and the parties to the treaty.

*Article 70*
*Consequences of the termination of a treaty*

1. Unless the treaty otherwise provides or the parties otherwise agree, the termination of a treaty under its provisions or in accordance with the present Convention:

(*a*)    releases the parties from any obligation further to perform the treaty;

(*b*)    does not affect any right, obligation or legal situation of the parties created through the execution of the treaty prior to its termination.

2. If a State denounces or withdraws from a multilateral treaty, paragraph 1 applies in the relations between that State and each of the other parties to the treaty from the date when such denunciation or withdrawal takes effect.

*Article 71*
*Consequences of the invalidity of a treaty which conflicts*
*with a peremptory norm of general international law*

1. In the case of a treaty which is void under article 53 the parties shall:

(*a*)    eliminate as far as possible the consequences of any act performed in reliance on any provision which conflicts with the peremptory norm of general international law; and

(*b*)    bring their mutual relations into conformity with the peremptory norm of general international law.

2.In the case of a treaty which becomes void and terminates under article 64, the termination of the treaty:

(*a*)    releases the parties from any obligation further to perform the treaty;

(*b*)    does not affect any right, obligation or legal situation of the parties created through the execution of the treaty prior to its termination, provided that those rights, obligations or situations may thereafter be maintained only to the extent that their maintenance is not in itself in conflict with the new peremptory norm of general international law.

*Article 72*
*Consequences of the suspension of the operation of a treaty*

1.Unless the treaty otherwise provides or the parties otherwise agree, the suspension of the operation of a treaty under its provisions or in accordance with the present Convention:

(*a*)    releases the parties between which the operation of the treaty is suspended from the obligation to perform the treaty in their mutual relations during the period of the suspension;

(*b*)    does not otherwise affect the legal relations between the parties established by the treaty.

2.During the period of the suspension the parties shall refrain from acts tending to obstruct the resumption of the operation of the treaty.

PART VI.

MISCELLANEOUS PROVISIONS

*Article 73*
*Cases of State succession, State responsibility*
*and outbreak of hostilities*

The provisions of the present Convention shall not prejudge any question that may arise in regard to a treaty from a succession of States or from the international responsibility of a State or from the outbreak of hostilities between States.

*Article 74*
*Diplomatic and consular relations and the*
*conclusion of treaties*

The severance or absence of diplomatic or consular relations between two or more States does not prevent the conclusion of treaties between those States. The conclusion of a treaty does not in itself affect the situation in regard to diplomatic or consular relations.

25

*Article 75*
*Case of an aggressor State*

The provisions of the present Convention are without prejudice to any obligation in relation to a treaty which may arise for an aggressor State in consequence of measures taken in conformity with the Charter of the United Nations with reference to that State's aggression.

PART VII.
DEPOSITARIES, NOTIFICATIONS,
CORRECTIONS AND REGISTRATION

*Article 76*
*Depositaries of treaties*

1. The designation of the depositary of a treaty may be made by the negotiating States, either in the treaty itself or in some other manner. The depositary may be one or more States, an international organization or the chief administrative officer of the organization.

2. The functions of the depositary of a treaty are international in character and the depositary is under an obligation to act impartially in their performance. In particular, the fact that a treaty has not entered into force between certain of the parties or that a difference has appeared between a State and a depositary with regard to the performance of the latter's functions shall not affect that obligation.

*Article 77*
*Functions of depositaries*

1. The functions of a depositary, unless otherwise provided in the treaty or agreed by the contracting States, comprise in particular:

(*a*)    keeping custody of the original text of the treaty and of any full powers delivered to the depositary;

(*b*)    preparing certified copies of the original text and preparing any further text of the treaty in such additional languages as may be required by the treaty and transmitting them to the parties and to the States entitled to become parties to the treaty;

(*c*)    receiving any signatures to the treaty and receiving and keeping custody of any instruments, notifications and communications relating to it;

(*d*)    examining whether the signature or any instrument, notification or communication relating to the treaty is in due and proper form and, if need be, bringing the matter to the attention of the State in question;

(*e*)    informing the parties and the States entitled to become parties to the treaty of acts, notifications and communications relating to the treaty;

(*f*)    informing the States entitled to become parties to the treaty when the number of signatures or of instruments of ratification, acceptance, approval or accession required for the entry into force of the treaty has been received or deposited;

(*g*)    registering the treaty with the Secretariat of the United Nations;

(*h*)    performing the functions specified in other provisions of the present Convention.

2. In the event of any difference appearing between a State and the depositary as to the performance of the latter's functions, the depositary shall bring the question to the attention of the signatory States and the contracting States or, where appropriate, of the competent organ of the international organization concerned.

*Article 78*
*Notifications and communications*

Except as the treaty or the present Convention otherwise provide, any notification or communication to be made by any State under the present Convention shall:

(*a*)    if there is no depositary, be transmitted direct to the States for which it is intended, or if there is a depositary, to the latter;

(*b*)    be considered as having been made by the State in question only upon its receipt by the State to which it was transmitted or, as the case may be, upon its receipt by the depositary;

(*c*)    if transmitted to a depositary, be considered as received by the State for which it was intended only when the latter State has been informed by the depositary in accordance with article 77, paragraph 1 (*e*).

*Article 79*
*Correction of errors in texts or in certified copies*
*of treaties*

1. Where, after the authentication of the text of a treaty, the signatory States and the contracting States are agreed that it contains an error, the error shall, unless they decide upon some other means of correction, be corrected:

(*a*)    by having the appropriate correction made in the text and causing the correction to be initialled by duly authorized representatives;

(*b*)    by executing or exchanging an instrument or instruments setting out the correction which it has been agreed to make; or

(*c*)    by executing a corrected text of the whole treaty by the same procedure as in the case of the original text.

2. Where the treaty is one for which there is a depositary, the latter shall notify the signatory States and the contracting States of the error and of the proposal to correct it and shall specify an appropriate time-limit within which objection to the proposed correction may be raised. If, on the expiry of the time-limit:

(*a*)    no objection has been raised, the depositary shall make and initial the correction in the text and shall execute a procès-verbal of the rectification of the text and communicate a copy of it to the parties and to the States entitled to become parties to the treaty;

(*b*)    an objection has been raised, the depositary shall communicate the objection to the signatory States and to the contracting States.

3. The rules in paragraphs I and 2 apply also where the text has been authenticated in two or more languages and it appears that there is a lack of concordance which the signatory States and the contracting States agree should be corrected.

4. The corrected text replaces the defective text ab initio, unless the signatory States and the contracting States otherwise decide.

5. The correction of the text of a treaty that has been registered shall be notified to the Secretariat of the United Nations.

6. Where an error is discovered in a certified copy of a treaty, the depositary shall execute a procès-verbal specifying the rectification and communicate a copy of it to the signatory States and to the contracting States.

*Article 80*
*Registration and publication of treaties*

1. Treaties shall, after their entry into force, be transmitted to the Secretariat of the United Nations for registration or filing and recording, as the case may be, and for publication.

2. The designation of a depositary shall constitute authorization for it to perform the acts specified in the preceding paragraph.

PART VIII.
FINAL PROVISIONS

*Article 81*
*Signature*

The present Convention shall be open for signature by all States Members of the United Nations or of any of the specialized agencies or of the International Atomic Energy Agency or parties to the Statute of the International Court of Justice, and by any other State invited by the General Assembly of the United Nations to become a party to the Convention, as follows: until 30 November 1969, at the

Federal Ministry for Foreign Affairs of the Republic of Austria, and subsequently, until 30 April 1970, at United Nations Headquarters, New York.

*Article 82*
*Ratification*

The present Convention is subject to ratification. The instruments of ratification shall be deposited with the Secretary-General of the United Nations.

*Article 83*
*Accession*

The present Convention shall remain open for accession by any State belonging to any of the categories mentioned in article 81. The instruments of accession shall be deposited with the Secretary-General of the United Nations.

*Article 84*
*Entry into force*

1. The present Convention shall enter into force on the thirtieth day following the date of deposit of the thirty-fifth instrument of ratification or accession.

2. For each State ratifying or acceding to the Convention after the deposit of the thirty-fifth instrument of ratification or accession, the Convention shall enter into force on the thirtieth day after deposit by such State of its instrument of ratification or accession.

*Article 85*
*Authentic texts*

The original of the present Convention, of which the Chinese, English, French, Russian and Spanish texts are equally authentic, shall be deposited with the Secretary-General of the United Nations.

IN WITNESS WHEREOF the undersigned Plenipotentiaries, being duly authorized thereto by their respective Governments, have signed the present Convention.

DONE at Vienna this twenty-third day of May, one thousand nine hundred and sixty-nine.

ANNEX

1. A list of conciliators consisting of qualified jurists shall be drawn up and maintained by the Secretary-General of the United Nations. To this end, every State which is a Member of the United Nations or a party to the present Convention shall be invited to nominate two conciliators, and the names of the persons so nominated shall constitute the list. The term of a conciliator, including that of any conciliator nominated to fill a casual vacancy, shall be five years and may be renewed. A conciliator whose term expires shall continue to fulfil any function for which he shall have been chosen under the following paragraph.

2. When a request has been made to the Secretary-General under article 66, the Secretary-General shall bring the dispute before a conciliation commission constituted as follows:

The State or States constituting one of the parties to the dispute shall appoint:

(*a*)    one conciliator of the nationality of that State or of one of those States, who may or may not be chosen from the list referred to in paragraph 1; and

(*b*)    one conciliator not of the nationality of that State or of any of those States, who shall be chosen from the list.

The State or States constituting the other party to the dispute shall appoint two conciliators in the same way. The four conciliators chosen by the parties shall be appointed within sixty days following the date on which the Secretary-General receives the request.

The four conciliators shall, within sixty days following the date of the last of their own appointments, appoint a fifth conciliator chosen from the list, who shall be chairman.

If the appointment of the chairman or of any of the other conciliators has not been made within the period prescribed above for such appointment, it shall be made by the Secretary-General within sixty days following the expiry of that period. The appointment of the chairman may be made by the Secretary-General either from the list or from the membership of the International Law Commission. Any of the periods within which appointments must be made may be extended by agreement between the parties to the dispute.

Any vacancy shall be filled in the manner prescribed for the initial appointment.

3. The Conciliation Commission shall decide its own procedure. The Commission, with the consent of the parties to the dispute, may invite any party to the treaty to submit to it its views orally or in writing. Decisions and recommendations of the Commission shall be made by a majority vote of the five members.

4. The Commission may draw the attention of the parties to the dispute to any measures which might facilitate an amicable settlement.

5. The Commission shall hear the parties, examine the claims and objections, and make proposals to the parties with a view to reaching an amicable settlement of the dispute.

6. The Commission shall report within twelve months of its constitution. Its report shall be deposited with the Secretary-General and transmitted to the parties to the dispute. The report of the Commission, including any conclusions stated therein regarding the facts or questions of law, shall not be binding upon the parties and it shall have no other character than that of recommendations submitted for the consideration of the parties in order to facilitate an amicable settlement of the dispute.

7. The Secretary-General shall provide the Commission with such assistance and facilities as it may require. The expenses of the Commission shall be borne by the United Nations.

_____