# EXHIBIT 36

Machine Translated by Google





# RECOMMENDATIONS FOR ENSURING FAIR JUDICIAL STANDARDS WHEN CONSIDERING CLAIMS AGAINST THE RUSSIAN FEDERATION

Developed jointly by:

Ukrainian Arbitration Association Institute of Legislative Ideas

September 2024

**Preface**

Large-scale military aggression (the Economic and Civil Russian Federation against Ukraine procedural codes) has led to unprecedented destruction, international treaties and internal displacement of universally recognized principles of the population within Ukraine and the outflow of the proper administration of justice. refugees abroad, deaths, maiming and suffering of civilians. Until 2022, proceedings against sovereign states were rather isolated cases in the general array of practice of Ukrainian courts. In view of this, the authors of these recommendations consider it appropriate to consolidate and

Numerous victims (both businesses and citizens of Ukraine) seek to receive compensation for the losses and moral damage caused to them. In the absence of (at least to a certain extent structurally set out at the same time) effective and accessible documents on the specifics of consideration of international compensation mechanisms, cases against the Russian Federation starting from 2022 and up to now, taking into account its status, as well as the victims, appeal to offer certain procedural Ukrainian courts. According to Opendatabot data, as of the end of March 2024, at least 487 cases against the Russian Federation's compliance with the above were pending in Ukrainian courts, including 310 cases of procedural standards, except for standards for further consideration of such cases. claims by citizens, and 177 - quality assurance of Ukrainian enterprises. In 397 cases against justice, the Russian Federation has already had a practical goal, namely the increase of decisions. chances of recognition and fulfillment

Ukrainian court decisions in other countries.

Despite the illegality of Russian aggression, the Russian Federation remains a sovereign state. This status determines a number of features of the consideration of civil and economic claims against it, which arise both from the current

Ukrainian procedural law

---

[1] Ukrainians won 397 lawsuits regarding compensation for damages by Russia; available at: https://urlc.net/MMzw

The recommendations focus on procedural aspects, and do not comment
on the substantive legal grounds for filing lawsuits (which will depend on the
circumstances of each specific case), or the issue of sovereign immunity of
the Russian Federation (which was resolved in the relevant practice of
the Supreme Court).

The recommendations are primarily aimed at highlighting the issues outlined in
them for Ukrainian judges. They can also be useful to participants in the
respective cases and their representatives. However, the recommendations are not
exhaustive and do not (and cannot) comment on all procedural issues arising
in cases against the Russian Federation.

We also hope that the recommendations will lead to additional discussion of
the issues highlighted in them among a wide range of stakeholders and an
assessment of the need to adapt the Ukrainian procedural law to the
unprecedented realities of today. All
conclusions given in the recommendations are the position of the organization of the
co-authors and the personal positions of the authors indicated below.

**List of authors**

*Olena Perepelinska,* President of UAA, lawyer, partner of Integrites

*Oleksiy Serhiyevich Maslov,* member of the Board of the UAA, lawyer, advisor to Avellum

*Oleksandra Serova,* lawyer, managing lawyer of Avellum

*Oleksandr Stadnyk,* lawyer Avellum

*Maryana Antonovych,* lawyer, member of UAA, legal advisor of the USAID "Justice for All"
Program

*Olga Shenk,* lawyer, partner in the litigation practice of the Kyiv office
CMS Cameron McKenna Nabarro Olswang

*Victoria Ivasechko,* member of UAA, lawyer, adviser of Redcliffe Partners

*Artur Mucha,* lawyer at Redcliffe Partners

*Olena Koch,* lawyer

*Ihor Semenov,* member of UAA, lawyer, managing partner of the "Zakhyst" Bar Association

*Tetyana Nesterchuk,* member of UAA, barrister Fountain Court Chambers, London

*Maryna Ryashchenko,* member of UAA, lawyer, adviser to Ilyashev and Partners

*Daryna Ushchapivska,* member of UAA, senior lawyer of Asters

*Bohdan Karnaukh,* expert analyst of IZI, candidate of legal sciences

*Andriy Klymosyuk,* expert analyst of the Institute of Industrial and Scientific Research, candidate of legal sciences

*Katalina Shkuro,* member of UAA, lawyer of Sayenko Kharenko JSC

I. Introduction 6

**II. Brief summary of recommendations** 9

**III. Proper notification / delivery of documents** 13

III(1) Regarding notification / delivery of documents under Articles 13

498 CPC and 367 CPC

III(2) Procedures provided for by international treaties 15

III(2)(a) Hague Convention 15

III(2)(b) Minsk Convention and Kyiv Agreement 20

III(3) Delivery in accordance with Article 498 of the Civil Code of Ukraine and Article 367 23

Civil Code of Ukraine in the absence of international conventions

III(4) Regarding other methods of notification / delivery of documents 24

according to the Code of Civil Procedure and Code of Civil Procedure

III(5) Alternative methods of notification / delivery of documents, 28

that can be used by plaintiffs

III(5)(a) The most common methods in international practice 28

notification / delivery of documents

III(5)(b) Service in Manner Permitted by Law 30

of a foreign state

III(5)(c) Direct sending of documents 30

III(5)(d) Sending to diplomatic missions in third countries 35

**IV. Translation of documents** 37

IV(1) Provisions of international conventions on the translation of documents 37

IV(2) Provisions of national legislation regarding 39

translation of documents

IV(3) Requirements for registration and certification of translation of documents 41

IV(4) Regarding documents to be translated 43

**V. Procedural terms** 48

**VI. Subsequent messages VII.** 58

**Direction of the court decision** 60

**VIII. Proper justification of the reasons for the court decision** 62

**I. Introduction**

1. The specificity of states as subjects of civil and economic legal relations is determined by the principle of sovereign equality of states. Many actions that are allowed to be done with respect to other subjects of legal relations can be considered as interference with sovereignty when they are directed against a foreign state.

2. Precisely because of this, both in international public law and in the legislation of foreign countries, special approaches were developed to the notification of foreign states about the consideration of court cases and the delivery of court documents to them, as well as to other procedural features of the consideration of cases with the participation of foreign states. In preparing these proposals, the Working Group of authors from the Ukrainian Arbitration Association and the Institute of Legislative Ideas (hereinafter **the "Working Group"),** among others, considered the provisions of the following legal acts:

I. The UN Convention on Jurisdictional Immunities of States and Their Property of 2004 (hereinafter **"the** UN Convention"), available at the link; ⎯⎯⎯⎯⎯⎯

II. European Convention on State Immunities of 1972 (hereinafter **"European Convention"),** available at the link; ⎯⎯⎯⎯⎯⎯

**(Note:** Neither the UN Convention nor the European Convention has been ratified by Ukraine, and the UN Convention has not yet entered into force due to the insufficient number of ratifications, however, the Supreme Court noted in its decisions that *"the concept of limited jurisdictional immunity of the debtor state set forth in them is applied according to the* [2] *customary international law" and that "these Conventions reflect the trend of the development of international law regarding the recognition that there are certain limits within which a foreign state has the right to claim* [3] *immunity in civil proceedings" .*

III. Act of the United Kingdom on State Immunities c. 33, 1978 (hereinafter **"SIA"),** available at the link; ⎯⎯⎯⎯⎯⎯

IV. US Foreign Immunities Act 28 USC Ch. 98 of 1976 (hereinafter **"FSIA"),** available at link; ⎯⎯⎯⎯⎯⎯

---

[2] Resolution of the Supreme Court in case No. 796/165/18 of January 25, 2019.
[3] Resolution of the Supreme Court in case No. 308/9708/19 of April 14, 2022.

VI. Canadian State Immunities Act RSC 1985, c. S-18, 1985 (hereinafter "CSIA"), available at link;

—————————

VII. Israel Law on Immunities of Foreign States, No. 5769-2009 of 2009 (hereinafter "Israel Law on Immunities"), available at the link;                                          —————————

VIII. Law of the Kingdom of Spain on the Privileges and Immunities of Foreign States, International Organizations with Headquarters in Spain and International Conferences and Meetings Held in Spain No. 16/2015 of 2015 (hereinafter **the "Spanish Law on Immunities"),** available at the link;

—————————

IX. The German Code of Civil Procedure, 2005, available at link; _____

X. Law of the Czech Republic on Private International Law 91/2012 (hereinafter **"Law of the Czech Republic on Private International Law"),** available at the link.

3. In addition, the Working Group examined the official positions of the states on the issues of serving court documents to foreign states, expressed by them within the framework of the survey of the Committee of Legal Advisers on Public International Law of the Council of Europe. The survey results were published in 2020 and include responses from 31 countries. The results of the survey are available at the link.        ——————————

4. The study of international conventions, foreign legislation, official positions of foreign states allows establishing certain common approaches to the issue of notification and delivery of court documents to foreign states, as well as to the conduct of court proceedings with the participation of foreign states in general. Compliance with the norms of international law and best international practices and taking into account the experience of foreign legislation is important in order to ensure the compliance of Ukrainian legislation with international public law. In addition, it will significantly increase the chances that the court decisions adopted on its basis will be considered to be in accordance with the principles of *due process* and *fair trial* and will be recognized and enforced in foreign countries.

5. In a globalized world, it is decisions that can be enforced in many countries that guarantee a truly effective restoration of the plaintiffs' violated rights, especially when the debtors for such decisions are foreign states.

6. In the following sections, the recommendations analyze the following features of court proceedings with the participation of foreign states:

I. proper notice / delivery of documents at the beginning of the court proceedings **(Section** II);

II. translation of documents to be handed over **(Section IV);**

III. peculiarities of the application of the terms of court proceedings **(Chapter** V);

IV. sending the following notifications about court proceedings **(Chap** VI);

V. referral of a court decision **(Chapter VII);**

VI. the importance of proper justification of the judgment **(Chapter VIII).**

## II. Brief summary of recommendations

### Regarding proper notification / delivery of documents

- The working group notes the impossibility of serving court documents in accordance with the Hague Convention, the Minsk Convention, the Kyiv Agreement, as well as Article 498 of the Civil Code of Ukraine and Article 367 of the Civil Code of Ukraine. The working group recommends that the courts clearly mention and explain the impossibility of applying the Hague Convention, the Minsk Convention, the Kyiv Agreement, as well as Article 498 of the Civil Code of Ukraine or Article 367 of the Civil Code of Ukraine. This approach will demonstrate that the courts have made efforts to ensure due process / natural justice *(due process, natural justice etc).*

- The working group believes that notification of foreign countries by placing an announcement on the official web portal of the judiciary of Ukraine should be *a "method of last resort"* and should be used only in cases where no other methods of notification have worked. At the same time, the court must demonstrate that such other methods of notification are not possible. At the same time, the Working Group recommends using this method of notification along with alternative methods of notification of judicial proceedings in accordance with the recommendations indicated below. The working group notes that a similar approach is used by some EU countries, such as Estonia and Germany. Thus, in Estonia, if a foreign country ignores the service of documents through diplomatic channels, the Estonian Embassy in such a country warns it that *"the service is made by publication on the basis of the national law of Estonia (based on Article 317 of the Civil Procedure Code)".*

- The Working Group **recommends that** the Russian Federation be notified and process documents sent to it by its Prosecutor General's Office, the Ministry of Justice and the Ministry of Foreign Affairs to their respective official email addresses.

- The working group **recommends** using international delivery services that have connections with the Russian Federation as a method of delivery in the form of direct delivery of documents. In connection with the fact that, according to the rules of civil proceedings, lawsuits for the recovery of damages from the Russian Federation are filed mainly by natural persons, and the burden

the sending of documents is entrusted to the court, we consider this method of service more appropriate for commercial proceedings, where the court can offer / instruct the party to carry out such sending on its own
expense.

- The Working Group does not recommend sending documents to diplomatic missions of the Russian Federation in third countries, given that such actions may constitute interference with the sovereignty of a foreign state and violate the principle of inviolability of diplomatic missions and, accordingly, will not be considered as proper notification in the case of further recognition and enforcement of decisions Ukrainian courts in foreign countries.

**Regarding the translation of documents**

The working group **recommends:**

- in order to comply with the procedural rights of the Russian Federation as a defendant (which is necessary for the execution of Ukrainian court decisions abroad) and proper notification of the defendant about the date, time and place of the case hearing, to ensure the translation of the main documents related to the case into Russian before the opening of the case proceedings; to translate at least the statement of claim with attachments and the decision to open
- proceedings; certify the accuracy of the translation by a notary; to consider the possibility of placing the cost of translation and
- certification on the plaintiffs and recommending the plaintiffs
- to translate the decision on the opening of proceedings; and in the event that the plaintiffs claim compensation for the costs of translating documents, to attribute them to court costs and charge them to the defendant in the
- manner prescribed by the procedural legislation.

**Regarding procedural terms**

Taking into account the possibility of the court applying extended time limits within the limits set by the Code of Civil Procedure and the Code of Criminal Procedure of Ukraine, the Working Group **recommends that** the courts of Ukraine establish extended time limits for holding a preparatory meeting, as well as for the defendant (Russian Federation) to provide a response to the lawsuit:

- to set a time limit for conducting preparatory proceedings of at least 60 days from the day of the opening of the proceedings in the case and to extend such a time limit up to 30 days at the initiative of the court in case of non-appearance of the defendant (on the basis of part 3 of Article 189 of the Code of Civil Procedure
- of Ukraine, part 3 of Article 177 of the Code of Criminal Procedure of Ukraine); to set a deadline for the defendant to submit a response, close to or similar to the deadline set aside for conducting preparatory proceedings (on the basis of Part 7 of Article
- 178 of the Civil Code of Ukraine, Part 8 of Article 165 of the Civil Code of Ukraine); in the absence of any confirmation of handing over or direct delivery of documents to the defendant, extend the deadline for the
- defendant to file a response for an additional 30 days; in the motivational part of the decisions, indicate that giving the defendant the maximum period for filing a response is due to the fact that the defendant is a foreign country, and such a period allows the defendant to be notified in advance of the hearing of the case, and such a
- period is sufficient for the defendant to prepare a response; if at the time of consideration of the case, appointed within the procedural terms established by the Code of Criminal Procedure and Code of Criminal Procedure of Ukraine, the non-resident party did not appear at the court session and no confirmation of service or direct delivery of documents was received, to recommend to the courts to extend the period for resolving the dispute with simultaneous postponement of the case so that a period of at least six months has passed from the date of sending the decision to open proceedings to the Russian Federation (on the basis of Article 3 of the Law of Ukraine "On Private International Law", Part 2 of Article 15 of the Hague Convention).

**Regarding the following messages**

The working group **recommends** making the following notifications in the case by posting announcements on the official web portal of the judiciary and sending electronic messages to the official e-mail addresses of the authorized bodies of the Russian Federation.

**Regarding sending a court decision**

Taking into account the best international and foreign practice, as well as the requirements of Ukrainian procedural legislation, the Working Group recommends that the courts organize the delivery of judgments issued in cases of compensation for war damage to the defendant state. In the absence of an opportunity to apply the mechanisms for serving court documents provided for by international agreements, the Working Group recommends that courts use alternative methods of serving court decisions, in particular:

- sending court decisions to e-mails of state bodies authorized to represent the Russian Federation in foreign court proceedings (at the time of preparation of these recommendations: the Prosecutor General's Office, the Ministry of Justice and the Ministry of Foreign Affairs); and sending judgments by international delivery services that have
- connections with the Russian Federation (for example, DHL).


**Regarding the proper substantiation of the reasons for the court decision**

- Since the decisions of Ukrainian courts on issues of compensation for war damage are likely to be repeatedly examined by foreign courts in proceedings on the recognition and granting of permission for the execution of such decisions, the Working Group **recommends** that the grounds for the decisions be substantiated in detail. The motivation must be specific, unambiguous and based on evidence (in cases of compensation for property damage) and relevant factual circumstances (in particular, in cases of compensation for moral damage). The court must determine which specific rights of the plaintiff were violated (right to life, health, freedom, property ownership, etc.). The working group **recommends that** courts avoid an approach in which the amount claimed by the
- plaintiff for moral damages is "automatically" accepted by the court as appropriate. When determining the amount of compensation, one should take into account all the factual circumstances of the case and take into account the practice of international judicial institutions regarding the calculation of just satisfaction for moral suffering. The working group **recommends** also justifying in the text of the decisions the fact that the defendant was
- properly notified of the case and the grounds for not applying the jurisdictional immunity of the Russian Federation during

    consideration of the case.

## III. Proper notification / delivery of documents

1. Notifying the parties of the proceedings, including providing the parties with sufficient time to present their position, is important for compliance with the fundamental principles of equality and competition between the parties to court proceedings. As a component of these principles, notification of the parties is necessary for compliance of judicial proceedings with the rule of law, due process and fair trial. 2.
Failure to comply with the requirements for notifying the parties of the case, which includes [4]

providing the parties with sufficient time to present their position, may lead to the annulment of the court decision in the order of appeal proceedings, as well as to the impossibility of its recognition and enforcement in other countries. For example, the Convention on the Recognition and Enforcement of Judgments in Civil or Commercial Matters, concluded on July 2, 2019 in The Hague, which was recently ratified by Ukraine, provides that the recognition and enforcement of a judgment may be refused if **"a document, on the basis of in which the proceedings or an equivalent document containing a statement of the main elements of the claim, (i) was not served on the defendant in time and in such a manner as to enable him to organize his defense […], or (ii) was served on the defendant in the requested State in a manner , which is incompatible with the fundamental principles of the requested State regarding the delivery of documents."** 3. Similar provisions can be found in the legislation on the recognition and enforcement of foreign court decisions of many countries of the world. For example, in the [7] USA, the United Kingdom, Germany, Hong Kong and the UAE.

[8]                                    [9]                    [10]                    [11]                    [12]

*III.(1) Regarding notification / delivery of documents in accordance with Articles 498 of the Code of Civil Procedure and 367 of the Code of Civil Procedure*

4. When deciding the issue of recognition and enforcement of a Ukrainian court decision, a foreign court will take into account compliance, firstly, with the prescriptions of the Ukrainian process, including

---

[4] European Commission "For Democracy through Law", Rule of Law Checklist, 2016; Partial Judgment on Jurisdiction and Liability in Mohamed Amar Al-Bahlul v. Republic of Tajikistan, SCC Case No. 064/2008, dated September 2, 2009, para. 221. CPC, Art.
[5] 376(3)(3); Code of Criminal Procedure, Art.
[6] 277(3)(3). Code of Civil Procedure,
[7] Art. 468(2)(2). The
Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters, ratified by Law of Ukraine
[8] No. 2342-IX of July 1, 2022, Art. 7(1)(a). The Model Act of the
[9] United States on the Recognition of Foreign Judgments on the Recovery of Money, 2005, Art. 4 **(Note:** provision
[10] of the Model Act to one degree or another reflected in the legislation of most states). Act of the
[11] United Kingdom on (reciprocal enforcement) of foreign court decisions p. 13, 1933, Art. 4. Civil procedural law of
[12] Germany, 2005, Art. 328. Regulations of Hong Kong on (Reciprocal
Enforcement of) Foreign Judgments, 1960, Art. 6. UAE Federal Law on the Implementation of the
Code of Civil Procedure No. 11 of 1992, Art. 235.

13

applicable international treaties, and secondly, universal norms of due process / natural justice (due process, natural justice, etc.).

5. When resolving disputes about recovery of damages caused by armed aggression, the defendant is a foreign state - the Russian Federation. In order to comply with the above-mentioned prescriptions and norms, she must be properly notified of the initiation of court proceedings. Given the status of a foreign state as a participant in the legal process, it is impossible to properly notify the Russian Federation on the territory of Ukraine, which makes it necessary to serve documents abroad.

6. The procedural codes (Civil Procedural Code of Ukraine - hereinafter CPC or CPC of Ukraine, and Economic Procedural Code - hereinafter CPC or CPC of Ukraine) provide that in the event of the need to serve documents, obtain evidence, conduct separate procedural actions on the territory of another state, a court of Ukraine may apply for a corresponding court mandate in accordance with Articles 498 of the Code of Criminal Procedure and 367 of the Code of Criminal Procedure.

7. Article 498 of the Civil Code provides: ***"1. In the event that in the process of consideration of a court case, it is necessary to hand over documents, obtain evidence, carry out separate procedural actions on the territory of another state, the court of Ukraine may apply to a foreign court or another competent body of a foreign state (hereinafter referred to as a foreign court) with a corresponding judicial mandate in the order, established by this Code or an international treaty, the binding consent of which has been given by the Verkhovna Rada of Ukraine" (emphasis*** added by the

8. Article 367 of the Civil Procedure Code stipulates: ***"1. In the event that, in the process of considering the case, the commercial court needs to hand over documents, obtain evidence, and conduct separate procedural actions on the territory of another state, the commercial court may apply to a foreign court or another competent body of a foreign state (hereinafter - a foreign court) with a corresponding judicial mandate in order , established by this Code or an international treaty, consent to the bindingness of which has been given by the Verkhovna Rada of Ukraine" (em***

9. Accordingly, according to the general prescription of the Code of Criminal Procedure and the Code of Civil Procedure, in the event that international treaties of Ukraine, the binding consent of which was granted by the Verkhovna Rada of Ukraine, contain norms on the delivery of court documents to foreign states, such norms will have priority over the order of delivery provided for by national legislation.

### III.(2) The procedures are stipulated by international treaties

10. **The working group draws attention to the fact that Ukraine has ratified at least three international treaties that prima facie can be applied to the issue of the service of judicial documents in foreign countries, namely (1) the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters of 1965 (hereinafter the "Hague Convention"), (2) the Convention on Legal Assistance and Legal Relations in Civil, Family and Criminal Matters of 1993 (hereinafter the "Minsk Convention") and (3) the Agreement on the Procedure for the Resolution of Disputes Related to the Implementation of Economic activities from December 19, 1992 (hereinafter "Kyiv Agreement"). The working group analyzed the applicability of each of these treaties.**

### III.(2a) The Hague Convention

11. **According to Part 1 of Article 1 of the Hague Convention, it is applied in civil and commercial cases in all cases where there is a need to transfer judicial and extrajudicial documents for service abroad.**

12. **The working group notes that Russia has made the following declaration regarding the Hague Convention: "It is highly desirable that the documents intended for delivery to the Russian Federation, the President of the Russian Federation, the Government of the Russian Federation, the Ministry of Foreign Affairs of the Russian Federation" be sent in diplomatic order, i.e. by sending verbal notes by diplomatic institutions of foreign countries accredited in the Russian Federation". The Working Group states that due to the breakdown[13] of diplomatic relations between Russia and Ukraine, it is impossible to deliver documents to the Russian Federation as a defendant in the manner chosen by it under the Hague Convention.[14]**

---

[13] Available at: https://urlc.net/MMAp

[14] Statement of the Ministry of Foreign Affairs of Ukraine on the severance of diplomatic relations with the Russian Federation dated February 24, 2022, available at the link: https://urlc.net/MMAv

[15] Compensation for damages caused by the military actions of the Russian Federation: how to get confirmation of the notification of the Russian Federation about the court proceedings and the sending of court documents, Orest Bumba, lawyer of the ARMADA Law Firm, November 10, 2023, access via the link: https://urlc.net/MMAD

13. This also correlates with the position that the authorities of the Russian Federation take in some cases, for example: [15]

> **"The Ministry of Foreign Affairs of the Russian Federation, referring to the note dated February 15, 2023 No. 2142/2dsng, returns without consideration the court documents received in the annex to the appeals [PIP], which represents the interests of \*\*\*\*\*\*\*\*, for transfer to the sender The Ministry reminds that sending the materials of court cases, in particular notices of scheduled meetings, by means of a private appeal to Russian agencies does not meet the requirements of the procedure for implementation and processing of requests for international legal assistance, established, in particular, by the Convention on Service Abroad in force in the relations between the Russian Federation and Ukraine judicial and extrajudicial documents in civil or commercial cases of 1965, taking into account the statements of the Russian Federation under the 1965 Convention. The Ministry confirms that all documents of similar content, if received at the address of the Russian Federation, will be left without consideration" (emphasis added by the authors).**

14. At the same time, the Working Group notes that even without the specified reservation, the implementation of the provisions of the Hague Convention is not possible. According to Part 1 of Article 2 of the Convention, each Contracting State appoints a Central Authority whose duty is to receive requests for service of documents originating from other Contracting States and to take procedural actions in accordance with the provisions of Articles 3-6.

15. In accordance with Article 5 of the Hague Convention, the Central Authority of the requested State delivers the document by hand or ensures its delivery by the relevant authority: (a) in the manner determined by its domestic law for the delivery of documents drawn up in that State to persons in its territory, or (b) in a special manner stipulated by the requesting authority, unless such manner is incompatible with the laws of the requested State.

16. At the same time, Article 10 of the Hague Convention provides for alternative methods of sending court documents, which can be used if the requested State does not object to their use. Among the alternative ways, in particular, it is provided to send directly by post to persons who are abroad.

---

[15] Compensation for damages caused by the military actions of the Russian Federation: how to get confirmation of the notification of the Russian Federation about the court proceedings and the sending of court documents, Orest Bumba, lawyer of the ARMADA Law Firm, November 10, 2023, access via the link: https://urlc.net/Kvlo

17. It should be noted that Russia waived the admissibility of applying Article 10 of the Hague Convention to it and designated the Ministry of Justice as the central body for the purposes of Article 2 of the Hague Convention, as well as the body authorized to receive documents transmitted by consular institutions in accordance with Article 9 of the Hague Convention.
In addition, it noted that in accordance with Part 3 of Article 5, documents to be served on the territory of the Russian Federation are accepted only if they are written in Russian or translated into Russian.

18. As mentioned above, on February 24, 2022, the Ministry of Foreign Affairs of Ukraine informed the Ministry of Foreign Affairs of the Russian Federation about Ukraine's decision to break diplomatic relations with Russia, which were established by the Protocol on the Establishment of Diplomatic Relations between Ukraine and the Russian Federation dated February 14, 1992. Therefore, the activities of diplomatic missions of Ukraine in Russia and Russia in Ukraine, as well as any diplomatic communication, have been suspended in accordance with the Vienna Convention on Diplomatic Communications of 1961. [16]

19. According to Article 63 of the Vienna Convention on the Law of International Treaties of 1969:
"The severance of diplomatic or consular relations between the parties to the treaty does not affect the legal relations established between them by the treaty, **except in cases where the presence of diplomatic or consular relations is necessary for the performance of the treaty" (emphasis** added by the authors).

20. Since diplomatic relations between Ukraine and the Russian Federation have been severed, Ukrainian courts are unable to serve court documents on the territory of the aggressor state through the mechanism of the Hague Convention. Thus, in some court cases, Ukrainian courts applied with a court order to the Ministry of Justice of Ukraine regarding the possibility of serving procedural documents to the defendant and received an official answer that *"it is not possible to resolve the issue of sending an order to the Russian Federation to serve court documents on the territory of the aggressor state possible".*

[17]

---

[16] See, for example, the decision of the Eastern Commercial Court of Appeal in case No. 905/839/22 of November 7, 2023, available at https://urlc.net/Kvlz; the decision of the Eastern Commercial Court of Appeal in case No. 922/4628/23 dated December 15, 2023, available at the following link: https://urlc.net/KvlB
[17] See, for example, the decision of the Leninsky District Court of Zaporozhye in case No. 334/2768/23 of July 13, 2023, available at the link: https://urlc.net/KvlF

21. In addition, in letter No. 25814/12.1.1/32-22 dated March 21, 2022, the Ministry of Justice of Ukraine directly requests ***"not to carry out any correspondence related to cooperation with the justice institutions of Russia and Belarus on the basis of international treaties of Ukraine with issues of international legal relations and legal cooperation in civil and criminal cases, and in the field of private international law, except for cases of transfer to courts or citizens on the territory of Ukraine of documents received as a result of the execution of requests, orders and petitions".*** Ukrainian courts take into account the specified letter in their activities.

22. Also, in Ukrainian court decisions there are references to letters from the Ministry of Foreign Affairs of Ukraine and the Ministry of Justice of Ukraine, which detail the approach to the specified issues:

*I. **"The functioning of foreign diplomatic institutions of Ukraine on the territory of the Russian Federation and the activities of diplomatic institutions of the Russian Federation on the territory of Ukraine have been stopped. The Ministry of Foreign Affairs of Ukraine does not communicate with the state authorities of the Russian Federation through the mediation of third countries. In connection with this, it is currently impossible for the diplomatic service of Ukraine to assist in the transfer of court documents to the Russian side (letters of the Ministry of Foreign Affairs of Ukraine issue No. 71/17-500-67127 dated September 4, 2022 and issue No. 71/17-500-77469 dated 03.10.2022)" (emphasis** added by the authors).*

*II. **"By letter dated 04.09.2022 No. 71/17-500-67127 regarding the provision of information on the possibility of serving court documents on the territory of the Russian Federation, the Ministry of Foreign Affairs of Ukraine reported the following: - due to the full-scale aggression of the Russian Federation against Ukraine, diplomatic relations between Ukraine and the Russian Federation was torn down, and all employees of foreign diplomatic institutions of Ukraine were evacuated***

---

[18]  Letter of the Ministry of Justice of Ukraine No. 25814/12.1.1/32-22 dated March 21, 2022 "Regarding the enforcement of international treaties of Ukraine during the period of martial law", available at the link: https://urlc.net/KvlR; Review of the judicial practice of the Commercial Court of Cassation as part of the Supreme Court regarding the service of documents abroad in commercial matters from September 26, 2023, available at the link: https://urlc.net/KvlW. See, for example,

[19]  the decision of the Supreme Court as part of the panel of judges of the Cassation Economic Court in case No. 21/96 of July 26, 2022, available at the link: https://urlc.net/Kvm2; ***"Review of mass media. Problematic issues of consideration of disputes in commercial court proceedings, related to compensation for damage caused to*** the Russian Federation", Serhiy Stasyuk, judge of the Commercial Court of the City of Kyiv, candidate of legal sciences, March 29, 2023, access via the link: https://

[20]  urlc.net/MMBN . See, for example, the decision of the Northern Commercial Court of Appeal in case No. 910/20620/21 of December 14, 2023, available at: https://urlc.net/MMBQ; Decision of the Western Commercial Court of Appeal in case No. 914/3711/23 dated January 8, 2024, available at https://urlc.net/MMBU.

*from the territory of the aggressor state; - in view of the above, it is currently* **impossible for the bodies of the diplomatic service of Ukraine to provide assistance regarding the transfer of court documents to the Russian side"** **(emphasis** added by the authors). [21]

***III.* "[T]he transfer of any documents to the competent authorities of the Russian Federation, including through diplomatic channels, is currently impossible** *(letter of the Ministry of Justice of Ukraine issue No. 100817/98748-22-22/12.1.3 dated 10.31.2022). Therefore,* **there is no possibility to send decisions either directly to the address of the defendant, or by sending a power of attorney, or through other diplomatic channels" (emphasis** added by the authors). [22]

***IV.* "The Ministry of Justice of Ukraine by letter dated 06.10.2022 No. 91935/114287-22-22/12.1.1 reported that Article 8 of the 1965 Convention provides that each Contracting State may serve court documents on persons who are abroad without the application of any coercion directly through its diplomatic or consular agents; according to the reservation of the Russian Federation to Article 8 of the Convention, "diplomatic and consular agents of foreign States are not allowed to serve documents on the territory of the Russian Federation, except in cases when the document is to be served to a citizen of the State of origin of these documents." Therefore,** **since diplomatic relations between Ukraine and the Russian Federation are currently severed, the possibility of serving court documents on the territory of the aggressor state is not considered possible"** **(emphasis** added by the authors). [23]

23. It is obvious that, taking into account the refusal of the Russian Federation to receive court documents by alternative means, the termination of diplomatic relations by Ukraine, as well as the position of the Ministry of Justice of Ukraine and the Ministry of Foreign Affairs of Ukraine, sending court documents by the means specified by the Hague Convention is not possible.

---

[21] See, for example, the decision of the Commercial Court of Kyiv in case No. 910/4242/24 dated April 15, 2024, available at https://urlc.net/MMCr. See, for

[22] example, the decision of the Northern Commercial Court of Appeal in case No. 910/20620/21 of December 14, 2023, available at: https://urlc.net/KvmX; Decision of the Western Commercial Court of Appeal in case No. 914/3711/23 dated January 8, 2024, available at https://urlc.net/Kvn8. See, for example,

[23] the decision of the Commercial Court of Kyiv in case No. 910/4242/24 of April 15, 2024, available at https://urlc.net/Kvne.

24. It should be noted that according to Part 1 of Article 1 of the Hague Convention, it does not apply if the address of the person to whom the document must be served is unknown. This confirms that there are cases where the Convention may not apply, in particular, due to the actual impossibility of sending due to the absence of the recipient's address.

25. In the conditions of the impossibility of physically sending court documents through any channels, it is possible to talk about the impossibility of applying the Convention, which is not excluded by its content. And so the courts may not apply it (while explaining in detail why they do not apply the Hague Convention), but must ensure the defendant's right to protection in other ways, as the Working Group explains further in these recommendations.

### III.(2c) Minsk Convention and Kyiv Agreement

26. The signing of the Hague Convention does not prohibit the contracting states from entering into other international agreements on the procedure for serving court documents. Before the beginning of the full-scale aggression of the Russian Federation against Ukraine, these issues were also regulated by the Minsk Convention and the Kyiv Agreement. However, the Working Group believes that the delivery of court documents under both international treaties has ceased to be possible due to Ukraine's withdrawal from these treaties.

### Minsk Convention

27. Law of Ukraine No. 2783-IX, which entered into force on December 23, 2022, provides for the suspension of the Minsk Convention and its Protocol in relations with the Russian Federation and the Republic of Belarus and the subsequent withdrawal of Ukraine from it.

28. In accordance with Article 72 of the Vienna Convention on the Law of International Treaties, unless the contract provides otherwise or if the parties have not agreed otherwise, the suspension of the contract in accordance with its provisions or in accordance with this Convention releases the participants, in whose mutual relations the contract is suspended, from obligations obligation to perform the contract in their mutual relations during the suspension period.

29. Article 25 of the Law of Ukraine "On International Treaties of Ukraine" contains a similar norm, according to which the suspension of the validity of an international treaty of Ukraine under the conditions, if the treaty does not provide otherwise, or in the absence of another agreement with other parties to it, releases Ukraine from the obligation to perform during the period of suspension of the contract with those of its parties with whom the contract is suspended, and does not affect the legal relations of Ukraine with other parties established by the contract in relation to others.

30. During the period of suspension of the international agreement, Ukraine refrains from actions that could prevent the renewal of the agreement. According to the Ministry of Foreign Affairs of Ukraine, the operation of the Minsk Convention in relations with the Russian Federation and the Republic of Belarus has been suspended since December 27, 2022. From the date of suspension of the Minsk Convention, the courts and other competent bodies of Ukraine do not cooperate with the relevant bodies of the Russian Federation and the Republic of Belarus on issues of providing legal (judicial) assistance and extradition in civil and criminal cases on the basis of the Convention, including direct communication between justice institutions, respectively to the Protocol to it.

31. Regarding the withdrawal of Ukraine from the Minsk Convention and the Protocol, the Convention is considered terminated for Ukraine in relations with all its parties from May 19, 2024, since the next five-year period of validity of the Convention for Ukraine ends the day before, and in accordance with part 2 of Article 84 of the Minsk Convention, each Contracting Party may withdraw from this Convention by sending a written notification of this to the depositary 12 months before the end of the current five-year term of its validity.

32. Thus, from the end of December 2022, the Minsk Convention cannot be applied by Ukraine to send court orders to the Russian Federation or the Republic of Belarus.

33. In addition, the Minsk Convention, in principle, does not directly indicate whether its provisions on the delivery of documents are applied in the case of delivery of documents to the Contracting Party acting as the defendant in the case. A comprehensive interpretation of the preamble and the relevant provisions of the Minsk Convention (Articles 1 and 10) allows us to conclude that it applies only when serving documents to citizens and legal entities of the Contracting Parties, and not to the Contracting Party itself (for example, the Russian Federation).

34. In any case, the procedure for communication provided by Article 5 of the Minsk Convention - through the central bodies of the competent justice institutions of the Contracting Parties - is practically impossible to implement due to the breakdown of diplomatic relations between Ukraine and the Russian Federation, as was described above.

### Kyiv Agreement

35. Law of Ukraine No. 2855-IX, which entered into force on February 5, 2023, provides for the withdrawal of Ukraine from the Kyiv Agreement on the basis of Article 62 of the Vienna Convention on the Law of International Treaties in connection with a fundamental change in the circumstances that existed on the date of the conclusion of the Kyiv Agreement.

36. According to Article 2 of the Law of Ukraine "On International Treaties of Ukraine", *"termination is the loss of force by an international treaty under the conditions determined by the international treaty itself or by the voluntary decision of the parties (denouncement, withdrawal from the treaty)."*

37. According to Part 1 of Article 70 of the Vienna Convention on the Law of International Treaties and Article 25 of the Law of Ukraine "On International Treaties of Ukraine", the termination of an international treaty of Ukraine releases Ukraine from any obligation to perform the treaty and does not affect the rights, obligations obligations or the legal position of Ukraine that arose as a result of the execution of the contract before its termination.

38. As stipulated in part 2 of Article 70 of the Vienna Convention on the Law of International Treaties, if a state withdraws from a multilateral treaty, the specified rule is applied *"in relations between this state and each of the other parties to the treaty from the date of entry into force of such withdrawal."*

39. Pursuant to part 2 of Article 24 of the Law of Ukraine "On International Treaties of Ukraine", the termination and suspension of an international treaty of Ukraine, the binding consent of which has been given by the Verkhovna Rada of Ukraine, shall be carried out in the form of a law of Ukraine. The relevant Law of Ukraine No. 2855-IX entered into force on February 5, 2023.

40. Thus, from February 2023, the Kyiv Agreement is not subject to application by Ukraine to send court orders to Russia or the Republic of Belarus.

41. In any case, the order of communication provided by Article 5 of the Kyiv Agreement - "competent courts and other bodies of the member states of the Commonwealth of Independent States communicate with each other directly" - is practically impossible to implement due to the breakdown of diplomatic relations between Ukraine and the Russian Federation.

### III.(3) Delivery in accordance with Article 498 of the Civil Code of Ukraine and Article 367 of the Civil Code of Ukraine in the absence of international conventions

42. *Pursuant to Article 498 of the Civil Code of Ukraine and Article 367 of the Civil Code of Ukraine, a judicial mandate is sent in accordance with the procedure established by these codes or an international treaty, the consent to the binding of which has been given by the Verkhovna Rada of Ukraine, and if no international treaty has been concluded - to the Ministry of Justice of Ukraine, which sends a mandate to the Ministry of Foreign Affairs of Ukraine for transmission through diplomatic channels.*

43. *Along with that, as described above (see paragraphs 18-23), Ukraine severed diplomatic relations with the Russian Federation and evacuated all employees of diplomatic and consular institutions of Ukraine from the territory of the aggressor state. Accordingly, direct submission of court documents to the Russian side through diplomatic channels in accordance with Article 498 of the Civil Code of Ukraine and Article 367 of the Civil Code of Ukraine is not possible. It is worth noting that in accordance with Articles 45 and 46 of the Vienna Convention on Diplomatic Communications of 1961, Ukraine and the Russian Federation may agree on the performance of the functions of transferring documents through diplomatic channels (mediated) through a third country, however, as of the date of these Recommendations, the Working Group is not aware of such agreements.*

44. Recommendation: *The working group notes the impossibility of serving court documents in accordance with the Hague Convention, the Minsk Convention, the Kyiv Agreement, as well as Article 498 of the Civil Code of Ukraine and Article 367 of the Civil Code of Ukraine. The working group recommends that the courts clearly mention and explain the impossibility of applying the Hague Convention, the Minsk Convention, the Kyiv Agreement, as well as Article 498 of the Civil Code of Ukraine or Article 367 of the Civil Code of Ukraine. This approach will demonstrate that the courts have made efforts to ensure due process / natural justice (due process, natural justice etc).*

---

[24] See, for example, the ruling of the Eastern Commercial Court of Appeal in case No. 905/839/22 of November 7, 2023, available at: https://urlc.net/MMDd; the decision of the Eastern Commercial Court of Appeal in case No. 922/4628/23 dated December 15, 2023, available at the following link: https://urlc.net/MMDl; the decision of the Cherkasy Court of Appeal in case No. 705/4186/22 dated December 21, 2022, available at https://urlc.net/KvnP.

*III.(4) Regarding other methods of notification/delivery of documents in accordance with the Code of Civil*
*Procedure and Code of Criminal Procedure*

45. As evidenced by current judicial practice in cases of compensation for damages caused as a result of the armed aggression of the Russian Federation, the notification of the Russian Federation about the consideration of the court case is carried out by publishing the relevant announcement on the official website of the judiciary of Ukraine. This method of notification is mainly used by courts in combination with alternative methods of notification, in particular, by sending relevant court documents to the e-mail of authorized bodies of the Russian Federation or by notifying diplomatic missions of the Russian Federation in a third country. At the same time, in some cases, the courts are limited to publishing the relevant announcement on the official website of the judiciary of Ukraine.

46. Thus, Ukrainian courts justify the impossibility of serving court documents in the manner prescribed by the relevant international treaties of Ukraine and the provisions of Article 498 of the Civil Code of Ukraine and Article 367 of the Civil Code of Ukraine, respectively. Therefore, the courts state that the only available way of notifying the Russian Federation in the case of a pending case is to place advertisements on the website of the judiciary of Ukraine. [25]

47. The working group believes that the publication of a relevant announcement on the official website of the judiciary of Ukraine can be used as an additional method of notifying the Russian Federation about the consideration of a court case in combination with other available methods of notification in accordance with the recommendations below.

48. Yes, the current procedural legislation of Ukraine does not provide that in the event of the impossibility of applying for a court order to serve the defendant with court documents or serving court documents through diplomatic channels, such a party can be notified of the court proceedings by publishing an announcement on the official website of the judiciary of Ukraine. At the same time, Ukrainian courts often refer to the provisions of Part 4 of Article 122 of the Civil Procedure Code of Ukraine and Part 10 of Article 187 of the Civil Procedure Code of Ukraine, respectively, which regulate the issue of notification of a party or

---

[25] See, for example, the decision of the Commercial Court of Kyiv in case No. 910/10517/22 of November 7, 2022, available at the following link: https://urlc.net/MMDC; the decision of the Novograd-Volyn city-district court of the Zhytomyr region in case No. 285/761/24 dated May 23, 2024, available at the link: https://urlc.net/MMDK; the decision of the Zhovtnevy District Court of Dnipropetrovsk in case No. 201/5634/24 dated May 21, 2024, available at the following link: https://urlc.net/MMDQ; decision of the Kyiv District Court of Kharkiv in case No. 643/3750/24 dated May 10, 2024, available at https://urlc.net/Kvoi.

another participant in the case, whose location is unknown. [26]

49. The working group notes that currently Ukrainian courts mainly use such a method of notification as the publication of a corresponding announcement about a court proceeding on the official website of the judiciary as one of the methods, in particular, or (a) obliging the plaintiff to send the relevant court documents to the Russian Federation in the person of the Prosecutor General's Office of the Russian Federation, the Ministry of Justice or the Ministry of Foreign Affairs to their official e-mail addresses or to the address of diplomatic missions of the Russian Federation in a third country; or (b) by sending relevant court documents in the specified manner independently. For example:

*I.* In case No. 911/233/23 (911/3536/23) the Commercial Court of the Kyiv region, referring to the impossibility of serving the Russian Federation with court documents through diplomatic channels, the suspension of the functioning of foreign diplomatic institutions of Ukraine on the territory of Russia and the suspension of the activities of diplomatic institutions of Russia on the territory of Ukraine, in the absence of communication between the Ministry of Foreign Affairs of Ukraine and the authorities of Russia through the mediation of third countries, and also, taking into account the fact that JSC "Ukrposhta" has stopped the delivery of postal items to / from Russia, decided that the notification of the Russian Federation in the person of the Prosecutor General's Office of the Russian Federation Federation and the State Corporation for the Development of Web.RF (as a co-defendant) on the consideration of the case will be carried out by placing an announcement on the official website of the judiciary of Ukraine. In addition, the court additionally obliged the plaintiff to send the procedural documents to the defendants with the subsequent provision of evidence of such sending, in particular, to the address of the embassy of the Russian Federation and the office of the DKR Web.RF [27] in another country.

*II.* In case No. 914/3711/23, the economic court, citing the severance of diplomatic relations with the Russian Federation, as well as the withdrawal of Ukraine from the Kyiv Agreement, came to the conclusion that it is impossible to apply for a court order to serve the Russian Federation with court documents on the opening of proceedings in the case. Therefore, referring to the provisions of Part 4 of Article 122 of the Civil Procedure Code of Ukraine, the court decided on the necessary further action

[26] See, for example, the ruling of the Commercial Court of Chernihiv Region in case No. 914/3711/23 dated March 12, 2024, available at the following link: https://urlc.net/Kvox; the decision of the Commercial Court of Kyiv in case No. 910/4720/22 of December 6, 2022, available at the following link: https://urlc.net/KvoB; decision of the Commercial Court of Kyiv in case No. 910/9159/23 dated June 15, 2023, available at the following link: https://urlc.net/MMEm; decision of the Zhovtnevy District Court of Zaporizhzhia in case No. 331/4708/23 of July 28, 2023, available at

[27] the link: https://urlc.net/KvoO. Decision of the Economic Court of the Kyiv region in case No. 911/233/23 (911/3536/23) dated December 11, 2023, available at https://urlc.net/KvoW.

notify the defendant about the date, time and place of the case hearing by posting an announcement on the official website of the judiciary of Ukraine. In addition, the court additionally obliged the plaintiff to send scanned copies of relevant court documents to the official e-mail of the Ministry of Justice of the Russian Federation - pr@minjust.gov.ru and to the Embassy of the Russian Federation in Poland. [28]

***III.*** In case No. 910/6561/23, the commercial court established the impossibility of applying for a court order to serve the Russian Federation with court documents on the opening of proceedings in the case in accordance with Article 367 of the Civil Procedure Code of Ukraine. Therefore, referring to the provisions of Part 4 of Article 122 of the Civil Procedure Code of Ukraine, the court came to the conclusion that with the publication of the announcement of the summons on the official website of the judiciary, the Russian Federation is considered to have been notified of the date, time and place of the hearing of the case. At the same time, the court ordered the plaintiff to send scanned copies of the notarized translation of the decision to open proceedings to the official e-mail address (address) of the Ministry of Justice of the Russian Federation - pr@minjust.gov.ru, and provide proof of this to the court. [29]

A similar approach was applied by commercial courts in a number of other cases regarding compensation for damage caused by the aggression of the Russian Federation. [30]

IV. In case No. 331/4737/23, the Zhovtnevy District Court of Zaporizhzhia, finding that the transfer of any documents to the competent authorities of the Russian Federation, including through diplomatic channels, is currently impossible (referring to the relevant notifications of the Ministry of Foreign Affairs of Ukraine and the Ministry of Justice of Ukraine) , stating that from December 27, 2022, the Ukrainian side has suspended the operation of the Minsk Convention in Ukraine's relations with the Russian Federation and the Republic of Belarus, as well as referring to the suspension of postal communication between Ukraine and the Russian Federation, with the aim of taking all possible measures to notify the defendants about the consideration of the case , decided (a) to send the decision on the opening of proceedings in the case together with a copy of the statement of claim with attachments to the e-mail address of the embassy of the Russian Federation available on the Internet, as well as (b) to post an announcement about

---

[28] Decision of the Economic Court of Chernihiv Region in case No. 914/3711/23 dated March 12, 2024, available at https://urlc.net/Kvp7.

[29] Decision of the Commercial Court of Kyiv in case No. 910/6561/23 dated August 22, 2023, available at https://urlc.net/MMET. See,

[30] for example, the decision of the Economic Court of Kyiv in case No. 910/19584/23 of December 27, 2023, available at the following link: https://urlc.net/Kvph; decision of the Economic Court of Kyiv in case No. 910/1340/24 of February 8, 2024, available at the following link: https://urlc.net/MMF1; decision of the Economic Court of Kyiv in case No. 916/4333/23 of November 9, 2023, available at https://urlc.net/MMF9.

the summons of the defendants on the relevant website of the court of the judiciary[31] of Ukraine. A similar approach was applied by the courts of general jurisdiction, which considered cases of compensation for damage caused as a result of the aggression of the Russian Federation, in the course of civil proceedings, in a number of other cases (including by sending a decision to open proceedings in the case together with a copy of the statement of claim with attachments to e-mail addresses of the Embassy of the Russian Federation and the Ministry of Foreign Affairs of the Russian Federation available on the Internet).[32]

50. Separately, we draw attention to the position of the Supreme Court in the case of the application for recognition and granting of permission to enforce the arbitration award. Thus, in case No. 824/40/22, the Supreme Court appealed to the Ministry of Justice of the Russian Federation with a judicial mandate to hand over to the Russian Federation a copy of the decision on the opening of appeal proceedings, a copy of the appeal complaint and the materials attached to it, stopped[33] the proceedings in the case pending the receipt of a response from the competent body of the Russian Federation on the execution of the mandate. At the same time, the Supreme Court asked the Ministry of Foreign Affairs of Ukraine to hand over relevant court documents to the Ministry of Justice of the Russian Federation.[34]

51. Referring to the explanation of the Ministry of Foreign Affairs of Ukraine and the Ministry of Justice of Ukraine regarding the impossibility of transferring a court order, including through diplomatic channels, the Supreme Court resumed proceedings in the case and posted information about the case on the official website of the Supreme Court. The Supreme Court came to the conclusion that it thus took all the measures defined by the current legislation and international agreements to notify the Russian Federation of the judicial proceedings.[35]

52. **Recommendations:** In view of the above, the Working Group believes that the notification of foreign countries by placing an announcement on the official web portal of the judiciary of Ukraine should be *a "method of last resort"* and should be used only in cases where no other methods of notification have worked.

---

[31] Decision of the Zhovtnevy District Court of Zaporizhzhia in case No. 331/4737/23 of July 28, 2023, available at https://urlc.net/MMFv. See,

[32] for example, the decision of the Zhovtnevy District Court of Zaporizhzhia in case No. 331/4791/23 dated July 28, 2023, available at the following link: https://urlc.net/MMFD; decision of the Zhovtnevy District Court of Dnipropetrovsk in case No. 201/4671/23 dated May 3, 2023, available at https://urlc.net/Kvq6.

[33] Decision of the Supreme Court in case No. 824/40/22 dated September 9, 2022, available at https://urlc.net/MMFW.

[34] Decision of the Supreme Court in case No. 824/40/22 dated September 9, 2022, available at https://urlc.net/MMG3.

[35] Resolution of the Supreme Court in case No. 824/40/22 of February 9, 2023, available at https://urlc.net/Kvqt.

At the same time, the court must demonstrate that such other methods of notification are not possible. At the same time, the Working Group recommends using this method of notification along with alternative methods of notification of judicial proceedings in accordance with the recommendations indicated below. The working group notes that a similar approach is used by some EU countries, such as Estonia and Germany. Thus, in Estonia, if a foreign country ignores the service of documents through diplomatic channels, the Estonian Embassy in such a country warns it that "the service is made by publication on the basis of the national law of Estonia (based on Article 317 of the Civil Procedure Code)".[37]

### III.(5) Alternative methods of notification / delivery of documents that can be used by plaintiffs

53. **In this section, the Working Group presents alternative methods of notification / service of documents in foreign legislation and international conventions and analyzes the extent to which such methods can be applied by Ukrainian courts in view of the provisions of the procedural law of Ukraine (CPC and Civil Procedure Code).**

54. **Analyzing alternative methods of notification / delivery of documents, the Working Group takes into account the conclusion of the Supreme Court, according to which: "The key to assessing the legality of these actions of the court [notification of the participant in the process] should not be the way they are carried out (sending or not sending a registered letter), but their ability to ensure the achievement of the goal of informing a person about a court decision, since the specified circumstance relates to the beginning of the period for**

55. **In view of the above, along with the analysis of alternative methods of notification for compliance with the requirements of the procedural law of Ukraine, the Working Group also takes into account the actual effectiveness of such a method to achieve the general goal of informing the defendant.**

[36] Questionnaire, replies from Estonia and Germany.
[37] Questionnaire, response of Estonia, Art. 25.
[38] Ruling of the Supreme Court in case No. 927/195/22 of June 23, 2023, available at the link: https://urlc.net/MMGk, Ruling of the Supreme Court in case No. 920/367/17 of April 20, 2023, available at the following link: https://urlc.net/KvqO. ___ _____ _

### III.(5a) The most common methods of notification / delivery of documents in international practice

56. Based on the analysis of international practice, the Working Group identified the two most common methods of notification / delivery of documents to foreign countries during legal proceedings in the courts of other countries:

### I. on the basis of a special agreement between the plaintiff and the foreign company by the state

This method of notification / service of documents allows the plaintiff to use a preliminary agreement (for example, in a deed concluded with a foreign state) or an ad hoc agreement (for example, a diplomatic mission of a foreign state in the country of the court agreed to receive documents) with a foreign state regarding the method of serving court documents. The provision on "special arrangements" is provided for, among others, in Article 22(1)(b) of the UN Convention, Article 1608(a)(1)

FSIA (USA), Article 23 AUFSIA (Australia) and Article 9(1) CSIA (Canada).

### II. through diplomatic channels This

method is one of the most traditional ways of notifying / serving court documents. Although international public law does not contain a definition of "diplomatic channels", from the Questionnaire and the studied provisions of the legislation, the Working Group understands that diplomatic channels usually mean the transfer of documents to the Ministry of Foreign Affairs of the court state for further transmission to the Ministry of Foreign Affairs of the receiving state through diplomatic representation of the court state in the receiving state. This method of serving documents is provided (as the main one, or one of the possible ones) in the vast majority of the researched acts: Article 22(1)(c)(i) of the UN Convention, Article 16(2) of the European Convention, Article 12(1) of the SIA (Combined Kingdom), Article 1608(a)(4) FSIA (USA), Article 24 AUFSIA, Article 9(2) CSIA (Canada), Article 13(a) of the Israel Immunities Act, Article 52 of the Spanish Immunities Act, Article 7 of the Czech of the Law on MPrP.

**Conclusion:** The Working Group states that none of these delivery methods work in practice for the Russian Federation. In tortious legal relations (and the vast majority of claims arising from the invasion of the Russian Federation are precisely tortious) the plaintiffs will usually not have "special arrangements" with the Russian Federation, and the delivery

through diplomatic channels is not possible due to the breakdown of diplomatic relations between Ukraine and the Russian Federation as described above.

Machine Translated by Google

Considering the above, the Working Group does not recommend their use.

### III.(5c) Delivery in a manner permitted by the legislation of a foreign state

58. This method of notification / delivery of documents is provided for by Article 22(1)(c)(ii) of the UN Convention. The working group did not find similar provisions in other international treaties or acts of national legislation, although it is worth noting that the UN Convention was ratified by 23 states, which reflects the support of such a method of delivery by these states.

59. After a preliminary review of the legislation of the Russian Federation, the Working Group (which, however, did not include lawyers qualified in Russian law) found no provisions that would regulate or establish the "manner of notification" to the Russian Federation of legal proceedings against it abroad

60. **Conclusion:** The working group does not see the reasons or the practical possibility of using this method of communication and does not recommend it.

### III.(5c) Direct sending of documents

61. It is worth noting that some countries allow **"direct notification"** or **"direct sending of documents"** to foreign countries. For example, Section 1608(a)(3) of the FSIA (USA) allows notice/service by sending documents **"by any mail requiring a signature on the notice of service"** addressed to **"the head of the foreign state's department of foreign affairs".**

62. Although the Working Group did not find similar provisions in the analyzed international treaties or other acts of foreign legislation, we believe that the experience of the United States is worth paying attention to, especially because the direct sending of documents in the current circumstances is almost the only possible way of sending documents to the Russian federation

63. Below, the Working Group considers and provides recommendations on sending documents directly to the Russian Federation (1) by e-mail, and (2) by means of international mail.

### *By e-mail*

64. The working group states that under the existing conditions, notification by e-mail to the official e-mail address of the authorities of the Russian Federation can be an effective method of service that does not contradict the Code of Civil Procedure and the Code of Criminal Procedure.

65. At the same time, the notification by e-mail must be sent to the e-mail address of the competent body of the Russian Federation, because there is no single e-mail address of the Russian Federation as a state. According to the study of the Working Group, the Prosecutor General's Office of the Russian Federation from 2021 is a body that ensures the representation and protection of the interests of the Russian Federation in interstate bodies, *foreign* and international (interstate) *courts,* foreign and international arbitration courts (arbitration), except in cases of consideration of disputes between the Russian Federation and foreign states or international organizations. [39]

66. The Ministry of Justice of the Russian Federation and the Ministry of Foreign Affairs of the Russian Federation also perform the functions of state representation in court disputes. Therefore, it may be appropriate to send additional e-mail messages to the official e-mail addresses of these bodies.

67. The court and the parties may send procedural documents to the Russian Federation represented by the Prosecutor General's Office of the Russian Federation, the Ministry of Justice and the Ministry of Foreign Affairs of the Russian Federation to their official email addresses (at the time of writing these Recommendations:

*I.* General Prosecutor's Office - e-rp_support@genproc.gov.ru; *II.* Ministry of Justice - info@minjust.gov.ru; and *III.* the Ministry of Foreign Affairs - ministry@mid.ru).

---

[39] Federal Law of the Russian Federation "On the Prosecutor's Office of the Russian

[40] Federation", Article 39.1(1) Regulation "On the Ministry of Justice of the Russian Federation", paragraph

[41] 19(27) reference; link. Regulation "On the Ministry of Foreign Affairs of the Russian Federation" clause 6(20) link.

68. It is worth noting that the Ukrainian procedural legislation establishes that the parties submit documents and take procedural actions in the case in electronic form using the Unified Court Information and Communication System (UCITS). This requirement applies to claims and other procedural documents. At the same time, the exchange of documents in EUITS takes place between the electronic offices of the participants in the case. Instead, the e-mail address is used to register the EUITS e-cabinet. In view of this, a referral to the e-mail address of the competent authorities of the Russian Federation will not be considered a referral through EUITS in the manner provided by the procedural

legislation

69. At the same time, the Working Group believes that the parties can use this method of sending documents in cases against the Russian Federation

with the permission of the court, since the procedural legislation considers the e-mail address as a method of communication with a person outside the EUITS. The parties may indicate such a referral in the procedural documents submitted to the court. In addition, the Code of Civil Procedure and Code of Criminal Procedure expressly provide for the possibility of the court summoning and notifying the parties to the case by e-mail in cases of urgent need established by these codes. Taking this into account, the Working Group believes that the sending of documents by the parties [47] and the court in cases against the Russian Federation by e-mail complies with the provisions of the Code of Criminal Procedure and Code of Criminal Procedure.

70. Previously, the Grand Chamber of the Supreme Court in the decision of September 13, 2023 in case No. 204/2321/22 allowed the use of an email address certified by a qualified electronic signature before the start of the EUITS work.

71. In addition, the obligation to register and use electronic cabinets in EUITS does not apply to foreign (registered not under the legislation of Ukraine) state authorities, legal entities, local self-government bodies.

[49]

---

[42] CPC, Article 43(5), (6); Code of Criminal Procedure, Article

[43] 42 (5), (6). CPC, Article 177(1); CPC, Article 164(1)(1).

[44] CPC, Article 14(4), (5); Code of Civil Procedure, Article

[45] 6(4), (5). Provisions on the procedure for the functioning of individual subsystems of the Unified Judicial Information and Telecommunication System, approved by the decision of the High Council of Justice No. 1845/0/15-21 of August 17, 2021, paragraphs 5.8., 9. CPC, Art. 131(2), Art. 175(3)(2); Code

[46] of Criminal Procedure, Art. 120(8), Art. 162(3)(2). Code of Civil Procedure,

[47] Art. 128 (9); Code of Criminal Procedure,

[48] Art. 120 (6). Resolution of the Grand Chamber of the Supreme Court in case No. 204/2321/22 of September 13, 2023, available at https://urlc.net/Kvr0. Code of Civil Procedure, Art. 14(6);

[49] Code of Criminal Procedure, Art. 6(6).

That is, the state authorities of the Russian Federation do not have the obligation (and, as far as the Working Group understands – the technical possibility) to register electronic[50] offices in EUITS. This is a confirmation of the admissibility of sending by email for the purposes of notification of the Russian Federation.

72. Therefore, under the conditions when the Russian Federation does not have (and cannot have) an electronic office in EUITS, it is expedient for courts to apply and allow the parties to send to an electronic address as an additional method delivery.

73. The working group notes that this approach is already used by some Ukrainian courts. For example, the Commercial Court of the city of Kyiv in case No. 910/5351/23, by its decision, recognized the notification of the[51] Russian Federation by sending it to an email address (which, however, belonged to its Ministry of Justice):

*"In turn, the e-mail of the Ministry of Justice of the Russian Federation - pr@minjust.gov.ru - pr@minjust.gov.ru, information about which is posted on the website of the Ministry of Justice of the Russian Federation https:// minjust.gov.ru, was discovered by the court on the Internet.*

*Considering the fact that .gov.ru is the main domain of Russian state websites, on which the main website of the Russian government is located, the court comes to the conclusion that the sites on the specified links belong to the state bodies of the Russian Federation, therefore the e-mail of the Ministry of Justice of the Russian Federation - pr @minjust.gov.ru was notified by the Russian Federation in the person of the relevant body, and therefore is the official e-mail (address) of the Ministry of Justice of the Russian Federation.*

*In view of the above and in order to comply with the constitutional principles of competition between the parties and the equality of all participants in the process before the law and the court, the court deems it necessary to take all possible measures to ensure the defendant's opportunity to participate in the consideration of this case.*

---

[50] Provisions on the procedure for the functioning of individual subsystems of the Unified Judicial Information and Telecommunication System, approved by the decision of the High Council of Justice No. 1845/0/15-21 of August 17, 2021, in point 9 require the presence of a qualified electronic signature for registration in the EUITS, then in accordance with Article 22 of the Law of Ukraine "On electronic identification and electronic trust services" such a signature can be obtained only by Ukrainian individuals and legal entities and foreigners (but not foreign legal entities or foreign countries / state authorities). The decision of the
[51] Commercial Court of the city of Kyiv in case No. 910/5351/23 dated August 2, 2023, is available at https://urlc.net/MMH4.

*Compliance with the procedural conditions of notifying the defendant that a lawsuit has been filed against him, sending a copy of the lawsuit with attachments and further notification of the progress of the case, which is important in view of the future implementation of this court decision in foreign courts that pay attention to procedural aspects , and not the consideration of the case on its merits. It is necessary to notify the defendant in this case and send him*

*documents, even if it is a terrorist and aggressor state, because failure to notify is a gross violation of the fundamental principles of the judicial process, enshrined in international conventions and the Constitution of Ukraine, on the equality of participants in the legal process before the law and the court" (emphasis added by the authors) .*

74. **Recommendations:** The Working Group recommends that the Russian Federation be notified and process documents be sent to it in the form of its Prosecutor General's Office, the Ministry of Justice and the Ministry of Foreign Affairs to their respective official e-mail addresses.

### *International delivery services / postal communication*

75. In the absence of direct postal communication between Ukraine and the Russian Federation, as well as the termination of cooperation between the postal services of a number of states and the postal service of the Russian Federation, it is advisable to consider the possibility of using alternative international delivery services for the delivery of documents. At the same time, it is worth considering that certain international delivery services have also stopped connecting with the Russian Federation.

76. For example, DHL is an international delivery service that, as of the date of these Recommendations, supports connections with the Russian Federation.

77. With regard to competent authorities, the Working Group notes the same authorities as those mentioned in paragraph 65 of the Recommendations above (the Working Group also notes that at the date of these Recommendations these authorities have the following official addresses:

*I. General Prosecutor's Office - "Str. Bolshaya Dmytrovka, 15a, building 1, Moscow, Russia, GSP-3, 125993";*

*II. Ministry of Justice - "Zhytnaya ulitsa, 14, str. 1, Moscow, Russia, 119991"; III. Ministry of Foreign Affairs - "Smolenskaya-Sennaya Pl., 32/34, Moscow, Russia, 119200").*

78. Courts, at their discretion, may use international delivery services as an independent or **additional** method of service to e-mail, and may instruct parties to send notices in this manner.

79. For example, according to the rules of commercial proceedings, a party independently sends copies of statements to other parties to the case, in accordance with clause 1 of part 1 of article 164 of the Civil Procedure Code of Ukraine. At the same time, in civil proceedings, in accordance with Part 1 of Article 177 of the Civil Procedure Code of Ukraine, the parties submit such copies to the court for further sending.

80. **Recommendations:** The working group recommends using international delivery services that have connections with the Russian Federation as a method of delivery in the form of direct delivery of documents. Due to the fact that, according to the rules of civil proceedings, claims for the recovery of damages from the Russian Federation are mainly filed by natural persons, and the burden of sending documents is placed on the court, we consider this method of service to be more appropriate for commercial proceedings, where the court can offer / instruct party to carry out such sending on its own expense.

### III.(5d) Sending to diplomatic missions in third countries

81. The working group draws attention to the practice of plaintiffs in legal proceedings in Ukrainian courts to notify the Russian Federation and hand over documents to it through its diplomatic missions, including those located on the territory of third countries. For example, in case No. 635/7195/23 in the proceedings of the Kharkiv District Court of the Kharkiv region, the party was identified as the Russian Federation[52] represented by its embassy in Ireland.

---

[52] The decision of the Kharkiv District Court of the Kharkiv Region in case No. 635/7195/23 dated August 21, 2023, is available at https://urlc.net/KvrB.

82. Although we agree that such a method of notification / delivery of documents could be simpler for practical implementation, our analysis of the practice of foreign states has shown that many states of the world consider such notification / delivery of documents through a diplomatic mission to be an inappropriate interference with the sovereignty of a foreign state and / or violation of the immunities of the premises of diplomatic missions under Article 22 of the Vienna Convention on Diplomatic Communications.

83. Yes, the corresponding position was directly expressed by the following countries, among others: Austria, Belgium, Cyprus, Estonia, Germany, Greece, Ireland, Latvia, the Netherlands, Serbia, Spain, the United Kingdom, [53] Canada, the USA. In particular, for example, Germany expressed the following position: *"[t]he delivery of documents notifying the initiation of proceedings against Germany to the German embassy in the court state is considered a violation of international law and, in Germany's opinion, is not proper notification. The embassy will refuse to receive documents delivered in this way.* In the case of *Republic of Sudan v. Harrison et al.,* the US Supreme Court, ruling that service of documents on the Sudanese mission to the US was not proper, was guided by the following: *"[w]ith at least 1974, the State Department has taken the position that the principle of immunity under Article 22 [of the Vienna Convention on Diplomatic communications] prohibits the delivery of documents by mail to a diplomatic mission of a foreign state in the United States.* [55]

84. **Recommendations:** The Working Group does not recommend using this method of delivery, given that such actions may constitute interference with the sovereignty of a foreign state and violate the principle of inviolability of diplomatic missions and, accordingly, will not be considered as proper notification in the event of further recognition and implementation of decisions of Ukrainian courts in foreign countries.

---

[53] See the responses of these states in the
[54] Questionnaire. Questionnaire, answer of
[55] Germany, Art. 36. Decision of the Supreme Court of the United States in the case *Republic of Sudan v. Harrison and others* No. 16-1094 of March 26, 2019, Art. 14, available at the link.

**IV. Translation of documents**

85. Providing the defendant with documents in a language he understands is a component of the principle of equality of the parties to the legal process and an important element of the principles of *due process* and *fair trial,* because it allows providing the defendant with the proper conditions for organizing his defense in the case. In particular, the courts are obliged to provide the conditions under which the party would have the opportunity to familiarize himself with the essence of the claims brought against him, to present his evidence and objections (for example, in the form of a response), personally or by involving
representative for protection.

### *IV.(1) Provisions of international conventions on the translation of documents*

86. The need to translate documents sent to a foreign state into one of its official languages is provided for by the considered Conventions and acts of national and foreign legislation.

87. Although, as noted above, neither the Minsk Convention nor the Hague Convention can currently be applied in resolving disputes involving the Russian Federation, the Working Group considers it necessary to pay attention to the requirements of these conventions in terms of document translations in civil and commercial cases .

88. Part 1 of Article 5 of the Hague Convention provides that ***"if a document is to be served in accordance with part one of this article, the Central Authority may require that the document be drawn up or translated into the official language or one of the official languages of the requested State" (emphasis*** added by the authors ).

89. Therefore, according to the general rule of the Hague Convention, for successful service, the document must be drawn up or translated into the official language (or one of them) of the requested state.

90. The Working Group notes that the Russian Federation also made the following declaration regarding the Hague Convention: "According to the third part of Article 5 of the Convention, documents to be served on the territory of the Russian Federation are accepted only if they are drawn up in the Russian language or accompanied by a translation into Russian language.
Forms of request and confirmation of delivery of documents, as well as the main content of documents to be delivered

(with a translation of the standard conditions into Russian), are given in the appendix. It is highly desirable that the specified forms be filled out in Russian" (emphasis added by the authors).

[56]

91. The Minsk Convention contains similar provisions in terms of translation. In particular, Article 10 of the Minsk Convention stipulates that the requested justice institution serves documents in accordance with the procedure in force in its state, if the documents to be served are written in its language or Russian or have a certified translation into these languages. Otherwise, she transfers the documents to the recipient, if he agrees to accept them voluntarily.

92. In accordance with Article 17 of the Minsk Convention, taking into account the Protocol to it, in relation to each other during the implementation of the convention, the justice institutions of the contracting parties use the state languages of the contracting parties or the Russian language. In the case of execution of documents in the state languages of the contracting parties, certified translations in Russian are attached to them. That is, if the specified documents are written in Ukrainian, certified translations in Russian are attached to them.

[57]

93. In turn, Article 5 of the Kyiv Agreement provided that **"when applying for legal assistance and enforcement of decisions, the attached documents shall be in the language of the requesting state or in Russian."**

[58]

94. Having analyzed the requirements of the Hague Convention and the Minsk Conventions it can be summarized that documents are served in the order established by them only if they are written in the language of the requested state or provided with a certified translation into this language. The absence of a translation gives legal grounds for refusal to receive, because in this case the documents can be transferred to the recipient only if he agrees to accept them voluntarily.

95. The working group emphasizes that, as justified in section III(2) of these Recommendations, the above provisions of the Hague Convention, the Minsk Convention and the Kyiv Agreement cannot be applied in cases of recovery of damages from the Russian Federation. The analysis of their provisions is provided by the Working Group exclusively as an example of international legal regulation

[56] Available at: https://urlc.net/MMHM. Article 17
[57] of the Minsk Convention. Available at: https://urlc.net/Kvs8. Available at:
[58] https://urlc.net/MMHY.

the issue of translations of documents to be handed over to a foreign party
legal proceedings.

### IV.(2) Provisions of national legislation regarding the translation of documents

96. Similar provisions regarding the translation of documents are also contained in Part 3 of Article
499 of the Civil Procedure Code and Part 3 of Article 368 of the Civil Code of Ukraine:

*"The court mandate to provide legal aid is drawn up in the Ukrainian language. A
certified translation in the official language of the relevant state is attached to the
court order, unless otherwise established by an international treaty, the binding consent of
which has been granted by the Verkhovna Rada of Ukraine" (emphasis* added by the authors).

97. The procedure for processing orders for the delivery of documents for the implementation of current
international treaties of Ukraine on the provision of legal assistance in civil cases is regulated
by the Instruction on the Procedure for the Implementation of International Treaties on the
Provision of Legal Assistance in Civil Cases regarding the delivery of documents, obtaining evidence,
and the recognition and enforcement of court decisions. approved by the order of the Ministry
of Justice and the State Judicial Administration of Ukraine dated June 27, 2008 No. 1092/5/54
(hereinafter **the "Instruction").**

98. The instruction is applied in the case of an international agreement on the provision of legal
assistance in civil cases, valid in relations between Ukraine and a foreign state. However,
its provisions and approaches to the translation of documents, in the opinion of the Working Group,
may be useful in the consideration of disputes against the Russian Federation by Ukrainian

courts

99. According to clause 2.1 of section II of the Instructions, *"if, during the consideration of a civil
case in a court of Ukraine, it becomes necessary to hand over documents or receive evidence,
to carry out certain procedural actions abroad, the court of Ukraine draws up an order
for the provision of legal assistance abroad"* .

---

[59] Available at: https://urlc.net/MMI6._____

100. According to Clause 2.3 of Section II of the Instructions, "the assignment and the documents attached to it shall be drawn up in the language stipulated by the relevant international treaty of Ukraine. If the power of attorney or documents attached to it are written in Ukrainian, a certified translation into the language of the requested state or into another language stipulated by an international treaty of Ukraine should be attached. Documents to be served in accordance with the mandate of the court of Ukraine shall be drawn up in the language of the requested state or in another language stipulated by an international treaty of Ukraine, or accompanied by a certified translation into such language. In appropriate cases, the documents to be served may be drawn up or translated into the language that is reasonably believed to be understood by the person to whom the documents are to be served. This is determined separately by the court of Ukraine in the mandate" (emphasis added by the authors).

101. According to point 6.6 of Chapter VI of the Instructions, "if a document is to be served in a foreign state in accordance with the first part of Article 5 [of the Hague Convention], it must be drawn up or translated into the official language or one of the official languages of the requested state" (emphasis added added by authors).

102. According to Clause 8.4 of Chapter VIII of the Instructions, taking into account Article 17 of the Minsk Convention in the version of the 1997 Protocol, *"orders or documents based on the results of the execution of orders shall be drawn up in Russian. If the specified documents are written in Ukrainian, certified translations in Russian are attached to them " (emphasis* added by the authors).

103. The recommendations of the Practical Guide to the Application of the Hague Convention to Part 3 of Article 5 of the Convention, developed by the Permanent Bureau of the Hague Conference on Private International Law, and which is essentially a generalization of the practice of applying the said Convention by the courts of the participating states, also emphasize the need to *"observe various requirements on translation of documents provided for by the national legislation of the member states. In view of this, it can be immediately assumed that the applicant should always submit a translation of the document, except in cases where he has sufficient grounds to believe that documents served without formal requirements will be accepted, or that the addressee is likely to understand the language of the document " (emphasis* added by the authors).

---

[60] Available at: https://urlc.net/Kvsu, p. 149.

104. Although the requirement for the translation of documents to be served does not, in principle, apply to the transfer of such documents through alternative channels provided for by the Hague Convention, it should be borne in mind that, firstly, the Russian Federation has made a reservation regarding the inadmissibility of applying to it the methods of serving documents , provided for in Article 10 of the Hague Convention, and, secondly, even in the case of delivery of documents by mail, the practice of states differs. While some countries, for example, the USA, France and Germany, do not require the translation of documents that are sent by mail, other countries, for example, Austria, see this as a violation of the principle of a fair trial, guaranteed in paragraph 1 of Article 6 of the European Convention on the Protection of human rights and fundamental freedoms.

### IV.(3) Requirements for registration and certification of translation of documents

105. Analyzing the provisions of the CPC in the context of requirements for translations of foreign documents, it can be concluded that the CPC operates the following types of translations: *"notarized"* translation, *"authentic translation"* and *"certified in accordance with legislation".* In turn, the provisions of the Civil Procedure Code in the context of requirements for translations of foreign documents distinguish between *"authentic translation"* and *"certified translation".*

106. Although the above-mentioned provisions refer to the requirements for translations of foreign documents for submission to Ukrainian courts, they clearly indicate that the requirement to provide a translation consists not only in the implementation of the translation itself, but also in its proper certification by an authorized person, which aims to guarantee its authenticity.

107. In Ukraine, certifying the accuracy of translations traditionally belongs to the powers of notaries. Thus, in accordance with Clause 12 of Part 1 of Article 34 of the Law of Ukraine "On Notaries" (hereinafter **"Law on Notaries"),** notaries certify the accuracy of translations of documents from one language to another.

---

[61]  Available at: https://urlc.net/MMIq, para 144, Available at:

[62]  https://urlc.net/MMIA, para. 144, 226-227. Regarding documents of

[63]  foreign adopters for consideration of adoption cases (CPC, Article 311(5). Regarding a copy of the decision

[64]  of an international judicial institution, the jurisdiction of which is recognized by Ukraine, in the framework of consideration of proceedings under newly discovered or exceptional circumstances (CPC, Article

[65]  427(5) Regarding documents that are submitted to the court in the framework of consideration of requests for annulment of decisions of an arbitration court or international commercial arbitration (CPC, Article 427(4)(7); on granting permission to enforce a decision of a foreign court (CPC, Article 466(3) (6); on the recognition of a decision of a foreign court that is not subject to enforcement (CPC, Article 472(3)(3); on the recognition and granting of permission for the execution of an international commercial arbitration

[66]  decision (CPC, Article 476(4)(6) ); and others. Regarding a copy of the decision of an international court, the jurisdiction of which is recognized by Ukraine, as part of the proceedings under newly

[67]  discovered or exceptional circumstances (CPC, Article 323(4)). (3).

108. The Instruction specifies that in the implementation of international agreements on the provision of legal assistance in civil cases regarding the delivery of documents, the translation shall be certified by an authorized translator or by a notary (paragraph 6 of Clause 2.3 of Section II of the Instruction).

109. If the notary knows the relevant languages, he himself is entitled to certify the accuracy of the translation of the document from one language to another. If the notary does not know the relevant languages (one of them), the translation of the document can be done by a translator, the authenticity of whose signature is certified by the notary (Article 79 of the Notary Law, Clause 2.1 of Chapter 8 of the Procedure for Notarial Acts by Notaries of Ukraine, approved by Order of the Ministry of Justice No. 296/ 5 dated 22.02.2012 (hereinafter referred to as **the "Procedure"),** in such a case, the translator, together with the document establishing his identity, must provide a document confirming his qualification (clause 2.2 of Chapter 8 of the Procedure).

110. The translation must be made from the entire text of the document to be translated and end with signatures (clause 3.2 of Chapter 8 of the Procedure). The translation, placed on a sheet separate from the original or copy, is attached to it, laced and sealed with the signature of the notary and his seal (item 3.5 of chapter 8 of the Procedure).

111. Attention should also be paid to the practice of the Supreme Court regarding the obligation of the plaintiff to provide notarized translations of documents in the Russian language in the event of their delivery in accordance with Article 5 of the Hague Convention. On July 26, 2022, in case No. 21/96, following the lawsuit of the General Prosecutor's Office of Ukraine in the interests of the state, represented by the Cabinet of Ministers of Ukraine and the Ministry of Energy of Ukraine, against Naftogaz of Ukraine and JSC Gazprom regarding the invalidation of the sales contracts dated January 20, 2009, after analyzing the provisions of Article 5 of the Hague Convention and the reservations of the participating countries, the Cassation Economic Court of the Supreme Court obliged the plaintiff to provide notarized translations in Russian of the decision to postpone the consideration of the cassation appeal, the request for the delivery abroad of court documents and confirmation, as well as a brief summary of the document, to be served. [68]

112. Attention should also be paid to the practice of some courts, which post scanned copies of decisions on the opening of proceedings translated into Russian on the court's official website. [69]

---

[68] Resolution of the Cassation Economic Court of the Supreme Court in case No. 21/96 of July 26, 2022, available at https://urlc.net/MMJk.

[69] For example: Resolution of the Kyiv region in case No. 911/2763/22 dated March 30, 2023, available at https://urlc.net/MMJs.

### IV.(4) Regarding documents to be translated

113. The working group notes that most of the analyzed acts of foreign legislation and international treaties regulate the procedure for the delivery of documents that start the consideration of a case - according to the Ukrainian procedural law, such documents can be, for example, a statement of claim, a decision to open proceedings in a case). [70]

114. The Supreme Court also draws attention to established judicial practice regarding the fact that none of the norms of procedural legislation and international treaties, the binding consent of which was given by the Verkhovna Rada of Ukraine, do not contain requirements regarding the need to notify a foreign business entity of each subsequent court session on the case by sending to the competent body of a foreign state a court order to serve him documents. [71]

115. A similar approach was taken by some Ukrainian courts in cases of compensation for damage from the Russian Federation, leaving claims without movement in accordance with part 1 of Article 185 of the Civil Code of Ukraine or opening [72] proceedings in cases, additionally obliging the plaintiff to send a copy of the decision to open proceedings and (or ) of the statement of claim together with the documents attached to it and their notarized translation into Russian. [73]

116. Regarding the moment when such a translation must be carried out, in the opinion of the Working Group, the most expedient option seems to be that the plaintiff together with the statement of claim submits to the court a notarized translation of the statement of claim with annexes into Russian. In the future, after opening proceedings in the case, the courts oblige the plaintiff to provide a translation into Russian of the decision to open the proceedings and its notarization.

---

[70] Code of Civil Procedure, Art. 128(5), 157(2), 177(1), 187(5); Code of

[71] Criminal Procedure, Art. 120(4), 144(2), 164(1)(1), 176(5). For example: Supreme Court ruling in case No. 910/6880/17 of September 10, 2018, available at https://urlc.net/MMJI; the decision of the Supreme Court in case No. 910/570/16 of July 8, 2019, available at https://urlc.net/MMJT; Supreme Court decision in case No. 910/3980/16 dated June 9, 2020, available at https://urlc.net/Kvuh; decision of the Cassation Economic Court of the Supreme Court in case No. 914/86/22 of

[72] May 15, 2023, available at the link: https://urlc.net/ Kvus. For example: the decision of the Novosanzhar District Court of the Poltava Region in case No. 542/1323/18 dated September 3, 2021, available at the link: https://reyestr.court.gov.ua/Review/99394803; the decision of the Shpolyansk District Court of the Cherkasy Region in case No. 710/784/19 dated November 15, 2021, available at the link: https://reyestr.court.gov.ua/Review/101117073; decision of the Kyiv District Court of Odesa in case No. 947/7646/22 dated April 12, 2022, available at the link: https://urlc.net/KvuJ; decision of the Holosiivsky District Court of the city of Kyiv in case No. 752/6612/22 dated June 24, 2022, available at the link: https://urlc.net/MMKG.

117. As noted, translation is required only of documents related to the notification of the initiation of a case against a foreign state and the claims made against it, and not related to the delivery and translation of further documents. However, in practice, courts sometimes require the translation of documents that initiate appeal or cassation proceedings. Thus, in case No. 824/40/22, the Supreme Court tried to hand over to the Russian Federation copies of the decision to open appeal proceedings, copies of the appeal and the materials attached to it. In the already mentioned case No. 21/96, the Cassation Commercial Court of the Supreme Court obliged the plaintiff to provide, among other things, notarized translations into Russian of the cassation appeal, the decision to open cassation [74] proceedings. This approach seems to be correct, because it allows to ensure compliance with the principles of equality and competitiveness of the parties at the stages of appeal and cassation [75]

appeal.

118. In addition, in Chapter VI of these Recommendations, the Working Group emphasizes the importance of serving the defendant also with the judgment rendered following the merits of the case. In turn, part 2 of Article 23 of the UN Convention requires that such a decision be sent together with his
translation, in particular:

***"A copy of any decision rendered against a state that did not participate in the proceedings, if necessary, together with its translation into the official language or one of the official languages of the state concerned, shall be sent to the state by one of the means specified in part 1 of the article 22, and in accordance with the provisions of the specified part of the article [that is, in the same way as it is served***

---

[73] For example: the decision of the Economic Court of the city of Kyiv in case No. 910/12478/22 dated November 18, 2022, available at the link: https://urlc.net/MML2; ruling of the Economic Court of the Zaporizhia region in case No. 908/1100/22(908/2455/22) dated December 8, 2022, available at the link: https://urlc.net/MMLb; decision of the Economic Court of the City of Kyiv in case No. 910/6704/23 of May 4, 2023, available at the following link: https://urlc.net/Kvvt; rulings of the Economic Court of Chernihiv Region in case 927/1240/23 dated September 11, 2023 and October 9, 2023, available at the following link: https://urlc.net/Kvvw and https://reyestr.court.gov.ua/Review /114020667; decision of the Economic Court of Odesa region in case No. 916/3877/23 of September 11, 2023, available at the following link: https://urlc.net/KvvE; decision of the Economic Court of Odesa region in case No. 916/3985/23 of September 15, 2023, available at the link: https://urlc.net/MMLt; decision of the Commercial Court of Odesa region in case No. 916/4000/23 of September 27, 2023, available at the link: https://urlc.net/KvvQ and further decisions in the case; ruling of the Economic Court of Dnipropetrovsk region in case No. 904/6009/23 of February 7, 2024, available at the following link: https://urlc.net/KvvY; the decision of the Economic Court of the city of Kyiv in case No. 910/14477/23 of January 16, 2024, available at the following link: https://urlc.net/MMLS; decision of the Economic Court of Odesa Region in case No. 916/131/24 of January 15, 2024, available at the following link: https://urlc.net/Kvwd; the decision of the Commercial Court of the city of Kyiv in case No. 910/14076/23 of February 6, 2024, available at the link: https://urlc.net/MMM9; decision of the Commercial Court of Luhansk Region in case No. 913/720/20 dated February 12, 2024, available at the following link: https://urlc.net/Kvwv; decision of the Economic Court of the City of Kyiv in case No. 910/1361/24 dated February 22, 2024, available at the following link: https://urlc.net/MMMo; decision of the Economic Court of the City of Kyiv in case No. 910/18085/23 of March 12, 2024, available at the following link: https://urlc.net/Kvx4; decision of the Economic Court of Ternopil region in case No. 921/199/24 dated April 3, 2024, available at https://urlc.net/MMN0. Also worthy of attention is the practice of the courts regarding the "offer" to provide a notarized translation of documents: the decision of the Economic Court of Odesa Region in case No. 922/5343/23 dated February 13, 2024, available at the link: https://urlc.net/MMNb.

[74] Decision of the Supreme Court in case No. 824/40/22 dated September 9, 2022, available at https://urlc.net/Kvxy.

[75] Decision of the Cassation Economic Court of the Supreme Court in case No. 21/96 of December 29, 2021, available at https://urlc.net/KvxC.

*subpoena and lawsuit." (text [in square brackets] and underlining added by authors).*

119. Thus, the Working Group considers it necessary to pay attention to the need for translation as well as decisions on the merits of cases against the Russian Federation. In practice, this is often overlooked by both the plaintiff and the court.

120. In addition to referring to the above norms of Ukrainian legislation and international treaties, individual Ukrainian courts noted that:

*"According to the established practice of the European Court of Human Rights, the following requirements should be considered as integral parts of the "right to a trial": the requirement of "competitiveness" of the process in accordance with Article 6 of the Convention provides for the possibility of being informed and commenting on the remarks or evidence presented by the opposing party, in during the proceedings; the right to a "public hearing", which includes the right to an oral hearing and the personal presence of a party in civil proceedings before a court (Ekbatani v. Sweden, May 26, 1988, application number 10563/83, para. paras 24-33); the right to effective participation (T. and V. v. the United Kingdom, 16 December 1999, applications no. 24724/94; 24888/94, paras. 83-89)" (emphasis added by the authors ).*

*"The position of the defendant depends on the content of the statement of claim, who, like the plaintiff, has the right to judicial protection, and in order to exercise this right, he must be aware of what claims are made against him, on what grounds and what evidence this is supported" (emphasis*

and also took into account the position of the Supreme Court in case No. 910/17792/17 of June 2, 2020, *"that the constitutional right to participate in a trial, including being properly notified of the date of a trial, cannot be considered formal."*

[78]

---

[76] The decision of the Holosiivsky District Court of the city of Kyiv in case No. 752/6612/22 dated June 24, 2022, is available at the link: https://

[77] urlc.net/MMOP. For example: Decision of the Novosanzhar District Court of the Poltava Region in case No. 542/1323/18 dated September 3, 2021, available at https://urlc.net/MMOU.

[78] Resolution of the Cassation Economic Court of the Supreme Court in case No. 910/17792/17 dated June 2, 2020, available at https://urlc.net/Kvz8.

121. According to Part 3 of Article 123 of the Code of Criminal Procedure and Part 3 of Article 133 of the Code of Civil Procedure, court costs related to the consideration of the case include, among other things, costs related to the involvement of translators, as well as related to the performance of other procedural actions, necessary for consideration of the case or preparation for its consideration.

122. According to Part 3 of Article 127 of the Code of Criminal Procedure and Part 5 of Article 139 of the Code of Criminal Procedure, in cases where the amount of expenses for the translator's services was not fully paid by the parties to the case in advance or in order to secure court costs, the court collects these amounts in favor of the translator from the party, determined by the court in accordance with the rules on the distribution of court costs, established by this procedural legislation.

123. As the Supreme Court sums up, judicial[79] practice has developed in such a way that the costs of hiring an interpreter are usually borne by the plaintiff as an interested person in terms of solving the case on its merits. At the same time, after a decision is made in the case, if the claim is satisfied, the cost of such costs is charged to the defendant in accordance with procedural legislation.

124. Attempts by some plaintiffs to transfer the obligation to translate documents to the court do not find support in practice. In particular, in one of the cases where this issue came before the court, the Supreme Court noted the following: ***"The Supreme Court draws the attention of the complainant to the lack of funding in the courts to hire a translator on their own initiative to translate court documents for the purpose of sending them to a party in a case abroad (proper performance by the court of its duty to send the party a notice of the case). Such expenses, as noted above, are usually assigned to the plaintiff as an interested person in the case of the merits of the case, with their further distribution based on the results of the consideration of such a case."***

[80]

125. Thus, when applying to the court, it is the plaintiff who must organize a translation of a copy of the statement of claim and the documents attached to it into Russian with a notarized certificate of their authenticity.

[79] Resolution of the Cassation Economic Court of the Supreme Court in case No. 914/86/22 dated May 15, 2023, available at https://urlc.net/MMPh.

[80] Right there.

126. In this context, it is worth paying attention to the judicial practice of the Supreme Court, the analysis of which[81] shows that the costs of payment for the services of a translator and notary when translating and certifying documents belong to court costs and are subject to assessment and distribution in the prescribed manner
procedural legislation.

127. Judicial practice shows that in cases against the Russian Federation, the courts will satisfy the plaintiffs' claims that the costs of translation into Russian and notarization of documents will be borne by the defendant.[82]

128. Sometimes, in cases of recovery of damages from the Russian Federation, the courts not only oblige the plaintiff to ensure the translation of documents into Russian, but also involve a translator in the consideration of the case in accordance with the procedure provided by procedural legislation.[83]

129. **Recommendations:** Taking into account the provisions of the national legislation and international treaties analyzed above, the Working Group recommends:

*I.* in order to comply with the procedural rights of the Russian Federation as a defendant (which is necessary for the execution of Ukrainian court decisions abroad) and to properly notify the defendant of the date, time and place of the case hearing, it is necessary to ensure that the main documents related to the case are translated into Russian before the opening of the case proceedings; *II.* above all, the statement of claim with attachments and the decision to open proceedings are subject to translation; *III.* as for the execution of the translation, its accuracy must be certified by a notary; *IV.* organization
of the translation and its certification may be relied upon by the courts; *V.* when issuing a decision on the
opening of proceedings, it is advisable to recommend to the plaintiffs to carry out its translation; *VI.* in case the
claimants claim compensation for the costs of translation of documents, the courts have the right to attribute them to court costs and impose them on the defendant in the manner prescribed by the procedural legislation.

---

[81] For example: the decision of the Cassation Economic Court of the Supreme Court in case No. 922/2360/21 dated June 1, 2022, available at the link: https://urlc.net/KvzO.

[82] For example: the decision of the Economic Court of the Zaporizhia region in case No. 908/1100/22(908/2455/22) dated February 2, 2023, available at the link: https://urlc.net/KvzT.

[83] For example: the decision of the Economic Court of the Zaporizhia region in case No. 908/1100/22(908/2455/22) dated February 2, 2023, available at the link: https://urlc.net/MMPM.

## V. Procedural terms

130. An analysis of the conventions and legislation of foreign countries allows us to single out two main requirements for deadlines and providing foreign countries with sufficient time to present their position when they are notified.

131. **First,** this is the period that must elapse from the moment the documents are received by the foreign state to the first court hearing. This term should be sufficient for the foreign state to familiarize itself with the essence of the claim and prepare its objections (for example, a response to the claim). Most of the analyzed acts determine the duration of this period in two months, for example: Article 16(4) of the European Convention, Article 12(2) SIA (United Kingdom), Article 1608(d) FSIA (USA), Article 24(7) AUFSIA (Australia ). Some countries consider a period of two months as a norm of customary international law or as a best international practice

should be guided. [84]

132. **Secondly,** this is the period that must elapse from the moment of the state's notification until the court renders a decision, in the case when, despite the notification, the state does not participate in the court proceedings. According to the analysis of the Working Group, such a period in various analyzed acts can be from two months (Article 16(7) of the European Convention, Article 12(4) SIA (United Kingdom), Article 28(1) AUFSIA (Australia), Article 10(1 ) CSIA (Canada), Article 13(c) of the Israeli Immunities Act) up to four months (Article 23(1)(b) of the UN Convention, Article 55 of the Spanish Immunities Act).

133. **Thirdly,** failure to provide sufficient time to the defendant to present his position may be grounds for refusal to recognize and enforce the judgment in foreign countries. For example, in accordance with Article 7.1.a.i of the Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters (ratified by Law of Ukraine No. 2342-IX dated July 1, 2022), failure to serve the defendant may be grounds for refusing to recognize and enforce a judgment **"early and in such a way as to give him the opportunity to organize his defense"** of the document on the basis of which the proceedings were initiated. [85]

---

[84]  Questionnaire, answers from Canada, the Czech Republic and Switzerland.

[85] Available at: https://urlc.net/MMQ2._____ _

134. In order to determine the period that is sufficient for notifying the defendant about the initiation of court proceedings, it is appropriate to consider the provisions of the Hague Convention. Although, as stated above, the methods of service provided for by the Hague Convention cannot be applied due to the breakdown of diplomatic relations between Ukraine and Russia, the norms of the Convention regarding the determination of the terms of consideration of the case can be considered as a certain minimum procedural requirement, the violation of which will create risks for the recognition and enforcement of Ukrainian court decisions . In particular, Article 15 of the Convention defines the following:

*"If a document of summons or a similar document was to be transmitted abroad for the purpose of service in accordance with the provisions of this Convention, and if the defendant did not appear, judgment may not be rendered until it is established that*

*a) the document was served in the manner provided by the domestic law of the requested State for the service of documents drawn up in that country on persons who are in its territory, b) the*
*document was actually delivered personally to the defendant or at his place of residence in another manner provided for by this Convention , and that, in each of these cases, service or direct delivery was effected within a reasonable time sufficient for the defendant to exercise the defense.*

*Each Contracting State may declare that a judge may, notwithstanding the provisions of paragraph one of this article, give judgment even if no confirmation of service or direct delivery has been received, provided that all of the following conditions are met:*

*a) the document was transmitted by one of the methods provided for in this*
*Convention, b) a period of time that the judge determined to be sufficient for the given case and which is at least six months has passed since the date of sending the document, c) no confirmation has been received, despite all reasonable efforts to obtain it through the competent authorities of the requested State.*

*Notwithstanding the provisions of the previous parts, the judge may, in urgent cases, decide to apply any temporary or protective measures"* **(emphasis** added by the authors).

49

135. It is appropriate to note that in accordance with part 2 of Article 3 (the same in the Code of Civil Procedure and Code of Civil Procedure of Ukraine), if an international treaty of Ukraine provides for different rules than those established by Code of Criminal Procedure and Civil Code of Ukraine, the rules of such international agreement shall be applied. This is emphasized in the Recommendations of the Presidium of the Higher Economic Court of Ukraine No. 04-06/159 dated November 9, 2009 "On Amendments and Supplements to the Explanation of the Presidium of the Higher Economic Court of Ukraine dated May 31, 2002 No. 04-5/608 "On Some Issues of Practice consideration of cases involving foreign enterprises and organizations":

*"taking into account the recommendations of the Practical Guide to the Application of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents to Article 15 of the Convention, developed by the Permanent Bureau of the Hague Conference on* Private International *Law, and which is essentially a generalization of the practice of applying the said Convention by the courts of states - participants, in the event that at the time of consideration of the case, appointed within the procedural terms established by Article 69 of the Code of Civil Procedure, the non-resident party did not appear at the court session and no confirmation of service or direct delivery of documents was received, the court, taking into account prescriptions of the third part of Article 4 of the Civil Procedure Code and Article 3 of the Law of Ukraine "On Private International Law", extends the term of dispute resolution with the simultaneous postponement of the case (Article 77 of the Civil Code) within the time limits stipulated by Part 2 of Article 15 of the Convention. In the case of a court decision within six months from the date of sending the document, provided there is no evidence of service or direct delivery of the document to a non-resident, such a decision may be annulled on the basis of Articles 104, 11110 of the Code of Civil Procedure in connection with non-compliance with the requirements of point "b" of part 2 of the article 15 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Cases" (emphasis* added by the authors).

136. Taking into account the practice of foreign countries, as well as the above-mentioned provisions of the Hague Convention, the Working Group proposes to consider the possibility of applying extended terms at least within the limits provided for by the Code of Civil Procedure and the Code of Civil Procedure of Ukraine.

137. The analysis of court practice showed that when determining the time period given to the defendant to respond to the claim, the courts are guided in particular by the following provisions of the Civil Code of Ukraine or Civil Code of Ukraine.

---

[86] Available at: https://urlc.net/KvAr._____

138. **Central Committee of Ukraine:**

*I.* Part 3 of Article 189 of the Civil Procedure Code of Ukraine establishes that ***"preparatory proceedings must be conducted within sixty days from the day of the opening of proceedings in the case. In exceptional cases, for the proper preparation of the case for consideration on the merits, this period may be extended for no more than thirty days at the request of one of the parties or at the initiative of the court" (emphasis*** added by the authors).

*II.* According to Part 7 of Article 178 of the Civil Procedure Code of Ukraine , ***"the response shall be submitted within the time limit established by the court, which cannot be less than 15 days from the date of delivery of the decision to open proceedings in the case. The court should set a deadline for submitting a response that will allow the defendant to prepare it and relevant evidence, and other participants in the case to receive a response no later than the first preparatory meeting in the case" (emphasis*** added by the authors).

*III.* According to Part 4 of Article 179 of the Civil Procedure Code of Ukraine , ***"the response to the appeal shall be submitted within the time limit set by the court. The court must establish such a deadline for submitting a response to the response, which will allow the plaintiff to prepare his reasoning, arguments and relevant evidence, the other participants in the case - to receive a response to the response in advance before the start of the substantive proceedings, and the defendant - to provide objections to the participants in the case in advance before the start of the proceedings essentially" (e***

*IV.* In accordance with part 4 of Article 180 of the Civil Code of Ukraine, the defendant's objection is submitted within the time limit set by the court: ***"The court must establish such a deadline for submitting an objection that will allow other participants in the case to receive objections in advance before the start of the substantive consideration of the case" (emphasis*** added by the authors).

*V.* According to Part 1 of Article 199 of the Civil Code of Ukraine , ***"within the time limit set by the court, the plaintiff has the right to file a response to the response, and the defendant - an objection."*** According to part 2 of the specified article , ***"other participants in the case have the right to submit their written explanations regarding the response to the response and objection before the end of the preparatory proceedings, unless the court has set another deadline" (emphasis*** added by the authors).

***VI.*** According to Part 2 of Article 191 of the Civil Code of Ukraine, the courts inform the defendant that "if the defendant fails to respond within the time limit set by the court without valid reasons, the court has the right to resolve the dispute based on the available case materials."

139. Similar provisions are contained in **the Civil Procedure Code of Ukraine.**

***I.*** Part 3 of Article 177 of the Civil Procedure Code of Ukraine establishes that ***"preparatory proceedings must be conducted within sixty days from the day of the opening of proceedings in the case. In exceptional cases, for the proper preparation of the case for consideration on the merits, this period may be extended for no more than thirty days at the request of one of the parties or at the initiative of the court"*** (emphasis added by the authors).

***II.*** According to Part 8 of Article 165 of the Civil Procedure Code of Ukraine , ***"the appeal shall be submitted within the time limit established by the court, which cannot be less than fifteen days from the date of delivery of the decision to open proceedings in the case. The court should set a deadline for submitting a response that will allow the defendant to prepare it and relevant evidence, and other participants in the case to receive a response no later than the first preparatory meeting in the case"*** (emphasis added by the authors).

***III.*** According to Part 4 of Article 166 of the Civil Procedure Code of Ukraine, the response to the appeal is submitted within the time limit set by the court. ***"The court should establish such a deadline for submitting a response to the response, which will allow the plaintiff to prepare his reasoning, arguments and relevant evidence, the other participants in the case - to receive a response to the response in advance before the start of the substantive consideration of the case, and the defendant - to provide objections to the participants of the case in advance before the start of the review matters on the merits"*** (emphasis added by the authors).

***IV.*** According to Part 4 of Article 167 of the Civil Procedure Code of Ukraine, the defendant submits an objection within the time limit set by the court. ***"The court should establish such a deadline for submitting objections that will allow other participants in the case to receive objections in advance before the start of consideration of the case on the merits"*** (emphasis added by the authors).

140. Some Ukrainian courts took into account the fact that the defendant is a foreign state and its notification and preparation require a longer period than the minimum period allotted for holding a preparatory meeting and submitting a response to the claim. Thus, the Commercial Court of the City of Kyiv in its decision in case No. 910/6704/23 dated May 4, 2023, directly stated that it decided to schedule a preparatory meeting after "a significant period of time to ensure proper notification of the Defendant about the consideration of the case", namely on July 27 in 2023. The court gave the defendant two months (until July 5, 2023) to file a response. In addition, the court granted the defendant a period of 10 days from the day of receipt of the response to the response. [87]

141. Similarly, in the decision to close the preparatory proceedings (the preparatory proceedings lasted more than 6 months) in case No. 711/2203/22 of December 19, 2022, the Dnipro District Court of Cherkasy

emphasized that:

*"The defendant state of the Russian Federation has not filed a response. Despite the severance of diplomatic relations between Ukraine and the Russian Federation, the court repeatedly postponed the preparatory court session, ensuring the principle of publicity and the obligation to notify the defendant by placing an announcement on the website of the judiciary regarding the date and time of the court session. […] The defendant did not appear [at] the court session, he did not give the reason for his non-appearance. The time, date and place of the court session were repeatedly notified in accordance with the procedure established by law, taking into account the above" (emphasis* added by the authors).

[88]

142. In case No. 910/6230/22, the Commercial Court of the city of Kyiv, by a decision of July 25, 2022, scheduled a preliminary court session for October 24, 2022 (three months after the opening of the proceedings). In the future, the court twice postponed the holding of the preparatory meeting (until January 23, 2023, i.e. only for half a year), about which it issued separate rulings-notifications of the defendant.

[90]

---

[87] Decision of the Commercial Court of the City of Kyiv in case No. 910/6704/23 dated May 4, 2023, available at https://urlc.net/KvBS.

[88] The ruling of the Prydniprovsky District Court of Cherkasy in case No. 711/2203/22 dated December 19, 2022, is available at the link: https://urlc.net/MMRQ.

[89] The decision of the Commercial Court of the city of Kyiv in case No. 910/6230/22 of July 25, 2022, is available at the link: https://urlc.net/MMS0.

[90] Rulings of the Commercial Court of the City of Kyiv in case No. 910/6230/22 dated October 24, 2022 and November 28, 2022, available at https://urlc.net/MMS4 and https://urlc.net/MMS8.

143. In case No. 755/7955/22, the Solomyansky District Court of the city of Kyiv scheduled a preliminary hearing for March 23, 2023 (more than five months after the opening of the proceedings) "taking into account the time required for proper notification of all participants in the legal process about the court session, the workload of the court, the reasonable terms of consideration of the case and the current situation regarding the martial law in Ukraine" (emphasis added by the authors). In other cases, the Solomyanskyi District Court of the city of Kyiv also granted a longer period for submitting a response - 30 days. [92]

144. In case No. 911/2639/22, postponing the consideration of the case, the Commercial Court of the Kyiv region noted in the decision dated June 9, 2023 that:

*"During the entire hearing of the case, the court took all possible measures to notify the defendant in the case of the existence of proceedings on the claim of a legal entity in Ukraine with the demand to recover damages. At the same time, taking into account the lack of diplomatic ties with the defendant state, it is not possible to properly hand over a package of documents abroad in a manner regulated by international treaties and consistent with the practice of dealing with cases involving foreign persons.*

*At present, the court cannot assert the validity of informing the defendant of the existence of demands for recovery of funds for property damage. Taking this into account, the court recommends that the plaintiff notify the defendant in all possible ways in order to provide access to the defendant's authorized person to the case materials, to the court's procedural decisions, and taking into account the need, if the defendant has a position regarding the lawsuit in accordance with the Civil Procedure Code of Ukraine, to provide the court with the necessary procedural documents."* [93]

---

[91] The decision of the Solomyansky district court of the city of Kyiv in case No. 755/7955/22 dated October 17, 2022, is available at the link: https://urlc.net/MMSf.

[92] For example: the decision of the Solomyansky district court of the city of Kyiv in case No. 760/12807/22 dated September 30, 2022, available at the link: https://urlc.net/KvCs; decision of the Solomyansky district court of the city of Kyiv in case No. 760/12802/22 of September 30, 2022, available at the link: https://urlc.net/MMSl; decision of the Solomyan District Court of the city of Kyiv in case No. 760/5727/23 dated March 29, 2023, available at https://urlc.net/KvCC.

[93] Decision of the Economic Court of the Kyiv region in case No. 911/2639/22 dated June 9, 2023, available at https://urlc.net/MMSz.

145. At the same time, the court repeatedly postponed the preparatory session (from January 17, 2023 to May 1, 2023) and initially granted more than 20 days for the defendant to submit a response. [94] [95]

146. In case No. 905/129/23, postponing the preparatory session, the Economic Court of the Donetsk region in the decision dated April 27, 2023 noted:

***"However, the court, despite all the circumstances mentioned above, must take all possible measures to comply with the requirements regarding the notification of the defendant about the opening of the proceedings in the case and its progress, and ensure an objective consideration of the case.***

***In view of this, the court considers it necessary to use additional alternative means of notifying the defendant, namely, to offer the plaintiff to translate the statement of claim with the documents attached to it, the decision of the Economic Court of Donetsk region on the opening of proceedings in case No. 905/129/23 dated 16.02.2023 and this resolution in the Russian language, with notarization of its authenticity, and subsequent mailing of the specified documents to the address of the Embassy of the Russian Federation in the Czech Republic.***

***According to the prescriptions of parts 1, 3 of article 177 of the Commercial Procedure Code of Ukraine, the tasks of preparatory proceedings are: 1) final determination of the subject of the dispute and the nature of disputed legal relations, claims and the composition of the participants in the legal process; 2) clarification of objections to claims; 3) determination of the circumstances of the case to be established and collection of relevant evidence; 4) resolution of appeals; 5) determining the order of consideration of the case; 6) taking other actions in order to ensure the correct, timely and unhindered consideration of the case on its merits.***

**According to Clause 3 Part 2 of Art. 183 of the Economic Procedural Code of Ukraine, the court postpones the preparatory meeting within the term of preparatory proceedings determined by this Code in other cases when the issues specified in the second part of Article 182 of this Code cannot be considered in this preparatory meeting.**

---

[94] Decision of the Economic Court of the Kyiv region in case No. 911/2639/22 dated May 1, 2023, available at https://urlc.net/KvCW.

[95] Decision of the Economic Court of the Kyiv region in case No. 911/2639/22 of December 23, 2022, available at https://urlc.net/MMSU.

*In the case of postponement of the preparatory meeting or announcement of a break, the preparatory meeting continues from the stage at which the meeting was postponed or a break was announced in it (Part 7 of Article 183 of the Economic Procedure Code of Ukraine).*

**In order to fully and comprehensively clarify all the circumstances of the case, to create proper conditions for the participants in the court process in exercising their rights provided for by the Economic Procedural Code of Ukraine, the court reached a conclusion [about] postponing the preparatory meeting within a reasonable time frame."**

147. In another case No. 905/581/23, the Commercial Court of the Donetsk region repeatedly postponed the preparatory meeting and repeatedly offered the defendant to file a response to the claim. Postponing the preparatory meeting, among other things, the court also referred to the impossibility of considering the issues provided for in part 2 of Article 182 of the Civil Procedure Code of Ukraine and the need to *"ensure that all participants in the process exercise their procedural rights and obligations ... [and] observe the principles of equality and competition between the parties."*

148. In case No. 915/1230/23, the Commercial Court of the Mykolaiv Region repeatedly postponed the preparatory session (starting from October 2, 2023) *"in order to observe the basic principles of commercial justice, in particular, equality before the law and the court; openness of information about the case, as well as the procedural rights of the participants in the case".*

149. The courts also referred to the conclusions of the European Court of Human Rights, given in the decision of the Civil Court of Cassation of the Supreme Court in case No. 372/4328/19 of February 15, 2021, in particular, regarding the fact that the right of access to the court must be effective:

---

[96] Decisions of the Economic Court of Donetsk region in case No. 905/129/23 dated February 16, 2023 and April 27, 2023, available at https://urlc.net/KvDM and https://urlc.net/MMTL.

[97] Decisions of the Commercial Court of Donetsk region in case No. 905/581/23 of May 31, 2023, June 20, 2023, July 25, 2023, September 19, 2023, November 10, 2023, November 29, 2023, January 31, 2024 and 21 February 2024, available at: https://urlc.net/MMTU, https://urlc.net/KvE2, https://urlc.net/KvEd, https://urlc.net/MMUc, https: //urlc.net/KvEm, https://urlc.net/MMUh, https://urlc.net/KvEp and https://urlc.net/MMUs.

[98] See also the rulings of the Economic Court of Donetsk region in case No. 905/944/22 of December 5, 2022 and January 17, 2023, available at https://urlc.net/MMUy and https://urlc.net/MMUE.

[99] Decisions of the Commercial Court of the Mykolaiv region in case No. 915/1230/23 dated August 21, 2023 and January 17, 2024, available at https://urlc.net/KvEN and https://urlc.net/KvES.

56

*"Implementing paragraph 1 of Article 6 of the Convention, each state party to the Convention has the right to establish rules of judicial procedure, including procedural prohibitions and restrictions, the purpose of which is to prevent [turning] the judicial process into disorderly traffic. At the same time, there should not be too formal an attitude to the legal requirements, as access to justice should be not only factual, but also real (§ 59 of the decision of the ECtHR in the case "De Geouffre de la Pradelle v. France" dated December 16, 1992 , application No. 12964/87)" (emphasis added by the authors).* [100]

150. Thus, with reference to the relevant practice of the European Court of Human Rights, the Economic Court of Donetsk region repeatedly postponed the preparatory proceedings for three months, after which it asked the Ministry of Justice of Ukraine for clarification regarding the procedure for implementing the provisions of international treaties in the part of the defendant's notification.

[101]

151. **Recommendations:** Taking into account the above norms of international law and the best international practice, as well as the possibility of applying extended time periods by the court within the limits defined by the Code of Civil Procedure and the Code of Civil Procedure of Ukraine, it is appropriate to recommend that the courts of Ukraine establish extended time periods for holding a preparatory meeting, as well as for the defendant (the Russian Federation ) to respond to the lawsuit:

*I.* to establish a time limit for conducting preparatory proceedings of at least 60 days from the day of the opening of the proceedings in the case and to extend such a time limit at the initiative of the court up to 30 days in case of non-appearance of the defendant (on the basis of Part 3 of Article 189 of the Civil Procedure Code of Ukraine, Part 3 of Article 177 of the Civil Procedure Code of Ukraine);

*II.* to set a deadline for the defendant to submit a response, close to or similar to the deadline set aside for conducting preparatory proceedings (on the basis of Part 7 of Article 178 of the Civil Code of Ukraine, Part 8 of Article 165 of the Civil Code of Ukraine);

*III.* in the absence of any confirmation of handing over or direct delivery of documents to the defendant, extend the deadline for the defendant to file a response for an additional 30 days;

---

[100] Ruling of the Civil Cassation Court of the Supreme Court in case No. 372/4328/19 dated February 15, 2021, available at https://urlc.net/KvF8.

[101] Decisions of the Economic Court of Donetsk region in case No. 905/799/22 of March 7, 2023 and July 7, 2023, available at https://urlc.net/MMV8 and https://urlc.net/MMVb.

IV. in the motivational part of the decisions, indicate that giving the defendant the maximum period for filing a response is due to the fact that the defendant is a foreign country, and such a period allows the defendant to be notified in advance of the hearing of the case, and such a period is sufficient for the defendant to prepare a response;

V. if at the time of consideration of the case appointed within the procedural time limits established by the Code of Criminal Procedure and Code of Civil Procedure of Ukraine, the non-resident party did not appear at the court session and no confirmation of service or direct delivery of documents was received, to recommend to the courts to extend the time limit for resolving the dispute with the simultaneous postponement of the case so that a period of at least six months has passed from the date of sending the decision to open proceedings to the Russian Federation (on the basis of Article 3 of the Law of Ukraine "On Private International Law", part 2 of Article 15 of the Hague Convention).

## VI. Next messages

152. The working group notes that most of the analyzed acts of foreign legislation / international treaties regulate the order of notification / delivery of documents that start the consideration of the case (according to the Ukrainian procedural law, such documents can be, for example, a statement of claim, a decision to open proceedings in a case, a decision on securing the claim). At the same time, such acts mostly do not regulate the issue of subsequent notifications that the parties receive in the case (according to Ukrainian procedural legislation, such notifications may arise in connection with statements on procedural issues, submission of new documents). The procedure for making such notifications is regulated[102]

procedural legislation.[103]

153. The Hague Convention referred to in these Recommendations in paragraph 1 of Article 1 establishes the scope of application to "all cases where there is a need to transfer judicial and extrajudicial documents for service abroad" - therefore, its provisions could be applied to serve further notices. However, in view of what is stated in Section II of these Recommendations above, the application of the Hague Convention to subsequent notifications in cases where the Russian Federation is a party is impossible (as well as the application of other international treaties mentioned above or notifications in accordance with Articles 367 of the Code of Civil Procedure and 498 of the Code of Civil Procedure) .

---

[102] Code of Civil Procedure, Art. 128(5), 157(2), 177(1), 187(5); Code of Criminal Procedure, Art. 120(4), 144(2), 164(1)(1), 176(5).

[103] Code of Civil Procedure, Art. 128; Code of Criminal Procedure, Art. 120.

154. Provisions of Article 2 of the Code of Criminal Procedure and Article 2 of the Code of Civil Procedure, as well as Article 6 of the European Convention on Human Rights establish the principle of reasonableness of time limits in court proceedings. In order to comply with this principle, as well as for the purpose of fully informing the respondent State, the Working Group believes that the following notifications in the case should be made by (1) posting an announcement on the official web portal of the judiciary, as described in Section [III(4)] of these of the Recommendations above and (2) sending e-mails to the official e-mail addresses of authorized bodies of the Russian Federation in the manner described in Section III(5)(c) of these Recommendations above. Both the court and the interested party may send e-mails for the purposes of subsequent notices.

155. The Working Group notes that, as of the date of these Recommendations, sending follow-up notices in a case by placing an announcement on the official web portal of the judiciary is a fairly stable practice.

156. For example, in case No. 953/7268/22, the Kyiv District Court of the city of Kharkiv decided:

*"On the basis of the above, taking into account the severance of diplomatic relations between Ukraine and the Russian Federation, which makes it impossible to send this decision to the address of the defendant, the notification of the defendant about the date, time and place of the court hearings in this case will be carried out by placing a corresponding announcement on the official web portal of the judiciary of Ukraine in accordance with the procedure provided for in part. 11th, 12*[104]

157. Also, the Lychakiv District Court of the city of Lviv in case No. 463/2663/24 determined during the opening of the proceedings that:

*"notification of the defendant about the date, time and place of court hearings in this case is mandatory, and therefore it will be carried out by placing a corresponding announcement on the official web portal of the judiciary of Ukraine in the manner provided for in part 11 of Article 128 of the Code of Civil Procedure of Ukraine".*[105]

**158. Recommendations:** The working group recommends making the following notifications in the case by placing announcements on the official web portal of the judiciary and sending electronic messages to the official e-mail addresses of the authorized bodies of the Russian Federation.

---

[104] Decision of the Kyiv District Court of Kharkiv in case No. 953/7268/22 of April 12, 2023, available at https://urlc.net/ KvFs.

[105] The decision of the Lychakiv District Court of Lviv in case No. 463/2663/24 dated April 18, 2024, is available at the link: https://urlc.net/KvFv.

## VII. Direction of the court decision

159. During consideration of cases on the recognition and granting of permission for the execution of foreign court decisions, courts, as a rule, analyze in detail the fact of notifying the defendant of the initiation of court proceedings and providing the defendant with the right to participate in the trial of the case. Despite this, the Working Group considers it necessary to emphasize the importance of serving the judgment on the respondent state as well.

160. Delivery of a court decision is an important element of the administration of justice, which provides the defendant with the right to familiarize himself with the decision against him and to determine his legal options, in particular, regarding the execution or appeal of the decision. Ensuring the right to appellate review of the case is one of the main principles of judicial proceedings in accordance with Clause 8 of Part 2 of Article 129 of the Constitution of Ukraine.

161. The calculation of the terms for appealing and revising the decision in absentia also depends on the moment when the defendant receives the court decision. The terms can be renewed if the omission was caused by the untimely receipt or non-receipt of the court decision by the defendant. Thus, failure to serve the court decision on the defendant jeopardizes the finality and binding nature of the court decision.

162. Acts of public international law and legislation of foreign countries on the jurisdictional immunity of states contain a requirement to serve a judgment against it on a foreign state that did not participate in the trial.

163. For example, part 2 of Article 23 of the UN Convention provides:

*"A copy of any decision rendered against a state that did not participate in the proceedings, if necessary, together with its translation into the official language or one of the official languages of the state concerned, shall be sent to the state by one of the means specified in part 1 of the article 22, and in accordance with the provisions of the specified part of the article [that is, in the same way as a summons and a lawsuit are served]].* (text [in square brackets] added by authors)

164. Similar rules are also established in part 2 of article 16 of the European Convention and in a number of legislative acts of foreign countries (for example, part 5 of article 12 of the SIA (United Kingdom), point (e) of article 1608 of the FSIA (USA) and part 2 of article 10 of the CSIA ( Canada)).

165. International and foreign legislation provides for the delivery of a court decision in the same manner as provided for the delivery of subpoenas, lawsuits and other similar documents, on the basis of which

court proceedings begin.

166. In Ukraine, the need to deliver a court decision to the participants in the case who were not present at the court session is provided for in Part 5 of Article 272 of the Civil Code of Ukraine and Part 5 of Article 242 of the Civil Code of Ukraine.

167. **Recommendations:** In view of the best international and foreign practice, as well as the requirements of Ukrainian procedural legislation, we recommend that the courts organize the delivery of judgments issued in cases of compensation for war damage to the defendant state. As described in detail in Section II above, in the absence of an opportunity to apply the mechanisms for serving court documents provided for by international agreements, we recommend that courts use alternative methods of serving court decisions, in particular:

*I. sending court decisions to e-mails of state bodies authorized to represent the Russian Federation in foreign court proceedings (at the time of preparation of these recommendations: the Prosecutor General's Office, the Ministry of Justice and the Ministry of Foreign Affairs);*

*II. sending court decisions by international delivery services that have connections with the Russian Federation (for example, DHL).*

**VIII. Proper justification of the reasons for the court decision**

168. Article 263 of the Civil Code of Ukraine and Article 236 of the Civil Code of Ukraine establish that a court decision must be based on the principles of the rule of law, be legal and justified. A well-founded decision is a decision made on the basis of fully and comprehensively clarified circumstances, which the parties refer to as the basis of their claims and objections, confirmed by the evidence that was examined at the court hearing.

169. According to the established practice of the ECtHR, which reflects the principle related to the proper administration of justice, the decisions of courts and other dispute resolution bodies must properly state the grounds on which they are based (which, however, does not oblige judges provide a detailed answer to each of the arguments of the parties). The corresponding conclusions are set forth in the cases of ***"Seryavin and others v. Ukraine"*** (application No. 4909/04, paragraph 58) and ***"Benderskyi v. Ukraine"*** (application No. 22750/02, paragraph 42).

170. The Advisory Council of European Judges in Opinion No. 11 (2008) on the quality of judicial decisions also indicates that the quality of a judicial decision depends mainly on the quality of its motivation. The latter is a mandatory requirement, which the court should not neglect in the interests

quick consideration of the case.

171. According to subparagraph "b" of paragraph 1 of part 1 of Article 106 of the Law of Ukraine "On the Judiciary and the Status of Judges", the deliberate or negligent failure to indicate in the court decision the reasons for accepting or rejecting the arguments of the parties regarding the substance of the dispute is grounds for bringing the judge to disciplinary responsibility.

172. In summary, the statement of reasons in the court decision is the duty of the court. The fulfillment of this duty is the basis of the legitimacy of the decision. A reasoned decision demonstrates the logic of the motivation that led the judge to make the decision, forms consistent law enforcement in the country, increases the parties' trust in the court and demonstrates to foreign courts in cases of recognition and granting permission to execute Ukrainian court decisions that the administration of justice was fair and proper

way

173. The practice of Ukrainian courts in lawsuits against Russia has already attracted the attention of European institutions. The Expert Report of the Council of Europe from November 2023 on methods of protection and compensation mechanisms for victims of the war in Ukraine expresses concern about the probative value of court[106] decisions. This once again emphasizes the need for the most thorough reasoning of such decisions and adherence to fair trial standards in order to remove any doubts about the legitimacy of such decisions and facilitate their possible enforcement in foreign jurisdictions.

174. Special attention should be paid to the justification of court decisions in cases considered in the absence of the defendant. Procedural codes do not establish significant differences in evidentiary activities in the case of non-participation of the defendant in the proceedings. The non-participation of the defendant in the case does not release the plaintiff from the obligation to prove the circumstances that are the basis of his claims in accordance with Part 1 of Article 74 and Part 3 of Article 162 of the Civil Code of Ukraine, as well as Part 1 of Article 81 and Part 3 of Article 175 of the Civil Code of Ukraine. The court, in its turn, must evaluate the evidence according to its internal conviction, as provided for in Article 86 of the Civil Code of Ukraine and Article 89 of the Civil Code of Ukraine, and render a legal and justified decision, as described above.

175. In view of the above, claims for compensation of damages should not be satisfied "automatically", based only on the fact that the Russian Federation has unleashed a war on the territory of Ukraine. Even in the absence of objections from the defendant, who does not participate in the process, the court must check the plaintiff's fulfillment of its procedural duties, evaluate the plaintiff's arguments based on the evidence available in the case file, and reject unsubstantiated claims.

176. In cases of compensation for property damage caused by armed aggression, the Working Group recommends specifying in court decisions, with reference to evidence, whose property, in what manner and in what amount damage done

177. As an example of the positive practice of proper justification of court decisions, the Working Group draws attention to the decision of the Economic Court of the Kyiv region in case No. 911/2680/23 of October 26, 2023. Satisfying[107] the claim for recovery of damages from the Russian Federation, u

---

[106] EXPERT REPORT on Remedies and Redress Mechanisms for War-Affected Individuals in Ukraine. November 2023. URL: https://urlc.net/MMVA. p. 63.

[107] Available at the link: Unified State Register of Court Decisions (court.gov.ua) _____ _____ _____ .

in the specified decision, the court paid significant attention to the justification of the
decision with the evidence available in the case file. In particular, the court:

*I.* **Established the claimant's right of ownership of goods and material
values that were destroyed as a result of a war projectile hitting a warehouse during
hostilities on the territory of Bucha.** *At the same time, the court referred to sales contracts,
tax invoices and bank statements confirming the delivery and payment of goods and
material values.*

*II.* **He established the fact of storage of goods and material values in the
warehouse in the city of Bucha,** *which was hit by a combat projectile. At the same
time, the court was guided by agreements on the organization of storage, primary
documents, according to which accounting for the movement and stock of goods
located at the custodian's wholesale and distribution bases, warehouse invoices
for the acceptance of goods and material values is kept.*

*III.* **He established the fact of complete destruction due to the fire of goods
and material values that were stored in the warehouse.** At the same time, the
court was guided by official reports from the custodian and user of the warehouse, the
act of the fire, an extract from the Unified Register of Pretrial Investigations on the opening
of criminal proceedings based on the fact of damage to warehouses and property located
in the warehouse, the expert opinion of the regional chamber of commerce and industry, and
the plaintiff's documents on the inventory and write-off of destroyed goods and material values
from the plaintiff's balance sheet.

*IV.* **He established a cause-and-effect relationship between the destruction of goods
and material values and the illegal armed aggression of the Russian Federation.** At
the same time, the court was guided by the act on the fire, the act of inspection of real estate
and the scientific and technical conclusion of the specialized institute of building
structures, according to which the cause of the fire was determined to be the ingress of
ammunition and their fragments.

*V.* **Determined the amount of damages caused to the plaintiff (real damages and lost
profit),** *in particular on the basis of a complex expert study conducted by
court experts.*

178. Proper justification of decisions is also a guarantee of preventing the satisfaction of completely unfounded demands of unscrupulous plaintiffs. For example, on November 24, 2023, the judge of the Central City District Court of Kryvyi Rih, Dnipropetrovsk Region issued a decision in case No. 216/5656/22 on the recovery of property damage caused by the expropriation of the natural resources of the Ukrainian people by the Russian Federation during the illegal aggression against Ukraine in the amount of $1,990,149.79 for each of the four plaintiffs.

[108]

179. In support of their claims, the plaintiffs referred to an article in The Washington Post newspaper, according to which the Russian Federation controls territories of Ukraine with deposits of energy resources, metals and minerals, for a total amount of approximately 36.7 trillion US dollars. The plaintiffs defined this amount as the losses of the citizens ("shareholders") of Ukraine from the war. Having calculated the number of citizens, based on the dynamics of production and consumption of bread by the population of Ukraine for 2020, the plaintiffs determined the amount of damages per citizen in the amount of 1,990,149.79 USD.

180. The court of first instance satisfied the claims in full, while being guided exclusively by the information presented in the publications of foreign mass media.

181. Natural resources are undeniably the property of the Ukrainian people, and Ukraine has indeed suffered significant losses in connection with their expropriation and destruction by the Russian Federation. However, the question of assessing such damages should be solved comprehensively, with the involvement of relevant experts, within the framework of international reparation mechanisms. Individual decisions of the courts of Ukraine, based on evidence that cannot be considered proper, should not replace such mechanisms.

182. The court's disregard of the requirement that court decisions be motivated in the above-described case led to the adoption of a baseless decision, according to which every citizen of Ukraine has the right to receive compensation in the amount of almost 2 million UAH based on the article of The Washington Post alone, without any real prospects for the implementation of such decisions.

183. As for cases of compensation for moral damage, the latter, given its nature, cannot always be documented. Despite this, the task of moral damage can logically and naturally follow from the actual circumstances of the case.

---

[108] The decision is available at the link: Unified State Register of Court Decisions (court.gov.ua).

183. As for cases of compensation for moral damage, the latter, given its nature, cannot always be documented. Despite this, the task of moral damage can logically and naturally follow from the actual circumstances of the case.

184. In this regard, the Working Group recommends that courts in punitive damages cases avoid abstract references to plaintiffs' suffering, stress and anxiety, and instead refer to the specific circumstances of the case, as determined by the court, in which negative consequences are logically and occur naturally.

185. In general, the Working Group notes that natural persons, as a rule, demand compensation for non-pecuniary damage. All cases regarding compensation for moral damage caused by war can be divided into several categories: (a) cases where moral damage is related to the loss of a loved one; (b) cases where moral damage is related to mutilation or other damage to the plaintiff's health; (c) cases where non-pecuniary damage is associated with destruction, damage, loss of property or loss of access to property; (d) cases where moral damage is related to internal displacement or the need to leave the country; and (e) cases where moral damage is related to the fact of war as such.

[109]

186. As for categories (a), (b) and (c), in these cases, the existence of moral damage (provided the fact to which such damage is connected) is proven is usually not in doubt, and the only problematic issue remains the issue of calculating the amount of compensation. On the other hand, in categories (d) and (e), courts sometimes express opposite positions.

[110]

187. As for the last category (g), these are cases in which the plaintiffs refer to the very fact of Russia's invasion of Ukraine as a stressful factor, and claim that the moral damage consists of severe experiences that they had to undergo in connection with by war At the same time, there is no other physical or property damage, including the need for internal relocation. Some of these cases gained publicity in the press.

---

[109] See: Institute of Legislative Ideas. Compensation for moral damage caused by war: Ukrainian and international practice. URL: https://urlc.net/KvFP

[110] Right there.

188. It is noteworthy that in many cases where plaintiffs claim compensation for moral damage caused by forced displacement, the amount of such damage is estimated at 35,000 euros (in hryvnia equivalent). This figure comes from the case of Loizidou v. Turkey (no. 15318/89). [111]

189. In the present case, the applicant, a citizen of Cyprus, grew up in Kyrenia in northern Cyprus. She owned ten plots of land in Kyrenia. Before the Turkish occupation of northern Cyprus, on July 20, 1974, work on the construction of an apartment building was started on one of the plots. The applicant concluded an agreement with the developer on the exchange of the land plot for an apartment with an area of 100 square meters. m. However, as a result of the Turkish occupation of Northern Cyprus, since 1974, the applicant has not been able to access her property and "peacefully use" it due to the presence of Turkish troops there.

190. The ECtHR ruled that there had been a violation of Article 1 of Protocol No. 1, as the applicant effectively lost all control over her property, as well as all opportunities to use and dispose of it. In addition to the pecuniary damage (300,000 Cypriot pounds) in the form of lost profit, which the applicant could have received by renting out her plots of land, the ECtHR awarded non-pecuniary damage in the amount of 20,000 Cypriot pounds, which is equivalent to 35,000 euros.

191. Despite the fact that Ukrainian courts often satisfy the claims of internally displaced persons for the same amount, it is worth noting that the specified amount was determined by the ECtHR in view of the specific circumstances of the case under consideration. Such circumstances include, in particular, the amount of property to which the applicant lost access (ten plots of land), its value, the amount of property damage (more than half a million euros), and the duration of the violation (the Court took into account the period from 1990 to 1997). Therefore, this amount should not be considered as a "standard rate" of moral damages for all internal displacement cases.

192. According to the established practice of international institutions, a person who claims compensation for moral damages should not provide special evidence to prove his mental suffering. It is enough for a person to prove the fact of a traumatic event (mutilation, violence, torture, death of a loved one, etc.), and the presence of moral damage in such a case

presumed

---

[111] See, for example: the decision of the Kropyvnytskyi Court of Appeal in case No. 398/3995/22 of December 14, 2023; the decision of the Belozersky District Court of the Kherson Region in case No. 648/3345/18 of March 18, 2019, proceedings No. 2/648/161/19; the decision of the Rivne city court of the Rivne region in case No. 569/20061/18 dated January 11, 2019.

[112] See paragraph 10 Just satisfaction claims: Practice direction issued by the President of the ECtHR in accordance with Rule 32 of the Rules of Court on 28 March 2007 and amended on 9 June 2022. https://urlc.net/KvG1.

193. Mental pain and suffering must be distinguished from mental disorders, which should be equated with physical illnesses and as such are subject to separate proof and give a separate right to compensation.

194. The peculiarity of moral damage is that it cannot be accurately calculated. Difficulties with determining the amount of compensation do not deprive the victim of the right to receive it. These difficulties do not remove the court's obligation to take into account all the circumstances of the case, relevant for determining the amount of just satisfaction.

195. In addition to motivating the decision on the merits, the Working Group recommends that the courts also justify in the text of the decisions the fact that the defendant was properly notified of the case and the grounds for not applying the jurisdictional immunity of the Russian Federation during the case. Both issues are sensitive from the point of view of the potential recognition and enforcement of Ukrainian court decisions abroad, so a clear statement of the court's position on both issues will contribute to a better perception of Ukrainian court decisions in foreign jurisdictions.

196. As stated in Section II of these recommendations above, we consider it expedient to include in court decisions a section justifying the impossibility of applying well-known international mechanisms for serving court documents to the Russian Federation. In view of this, it is also necessary to indicate in the court decisions which alternative mechanisms of delivery of court documents were adopted by the court (to the official electronic addresses of the authorized bodies of the Russian Federation, by international courier delivery, and with the help of publication on the website of the judiciary) to clearly demonstrate that that the court took all available measures to notify the defendant.

197. As for the reasons for not applying the jurisdictional immunity of the Russian Federation in the courts of Ukraine, we recommend including appropriate justification with reference to the relevant practice of the Supreme Court, in particular to the Supreme Court ruling of April 14, 2022 in case No. 308/9708/19 and the Supreme Court ruling of 18 May 2022 in case No. 760/17232/20. [113]
[114]

---

[113] Available at the link: Unified State Register of Court Decisions (court.gov.ua).  ____ .
[114] Available at the link: Unified State Register of Court Decisions (court.gov.ua).  ____ .

198. In the mentioned resolutions, the Supreme Court formulated the approach of not applying the jurisdictional immunity of the Russian Federation during the consideration of cases of injury to a person and damage to property on the territory of Ukraine by illegal actions of the Russian Federation, among other things, on the basis of the concept of limited immunity of states embodied in the provisions of the European Convention and the UN Convention and common practice of the ECtHR. In addition, the Supreme Court considers that the support of the jurisdictional immunity of the Russian Federation contradicts the right of individuals to effective access to justice in order to protect violated rights, the international legal obligations of Ukraine in the field of combating terrorism, and the fundamental principles of international law.

199. Despite the fact that the stated position of the Supreme Court causes discussions in the legal community,[115] and it is currently unknown how this position will be perceived by foreign courts, the Working Group believes that its reflection in the text of court decisions is necessary from the point of view of proper justification, quality and persuasiveness of the judicial decision.

200. **Recommendations.** Since the decisions of Ukrainian courts on issues of compensation for damage caused by the war will likely be repeatedly examined by foreign courts in proceedings on the recognition and granting of permission for the execution of such decisions, we recommend that the grounds for making the decisions be substantiated in detail. The motivation must be specific, unambiguous and based on evidence (in cases of compensation for property damage) and relevant factual circumstances (in particular, in cases of compensation for moral damage). The court must determine which specific rights of the plaintiff were violated (right to life, health, freedom, property ownership, etc.). The working group recommends that courts avoid an approach in which the amount claimed by the plaintiff for moral damages is "automatically" accepted by the court as appropriate. When determining the amount of compensation, one should take into account all the factual circumstances of the case and take into account the practice of international judicial institutions regarding the calculation of just satisfaction for moral suffering.

201. We also recommend justifying in the text of the decisions the fact that the defendant was properly notified of the case and the grounds for not applying the jurisdictional immunity of the Russian Federation during the case.

---

[115] For more on this see: Karnauch B. Territorial Tort Exception? The Ukrainian Supreme Court ruled that the Russian Federation cannot invoke immunity from lawsuits filed by victims of the Russian-Ukrainian war. 2022 3(15) Access to Justice in Eastern Europe. https://urlc.net/KvGc.

Machine Translated by Google



