**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MUSAIB ISMAILOVYCH ISMAILOV, and AKHMED HADZHYIOVYCH BILALOV,<br><br>    Plaintiffs,<br><br>  v.<br><br>MYKHAILO SAFARBEKOVYCH HUTSERIEV, STANISLAV KOSTIANTYNOVYCH KUZNETSOV, and PUBLIC JOINT STOCK COMPANY "SBERBANK OF RUSSIA,"<br><br>    Defendants. | Case No. 1:24-cv-03287 (AT) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE SBERBANK DEFENDANTS'
MOTIONS TO DISMISS**

Jay S. Auslander
Natalie Shkolnik
Aari Itzkowitz
Michael Van Riper
Wilk Auslander LLP
825 Eighth Avenue, Suite 2900
New York, New York 10019
Tel: (212) 981-2338

*Attorneys for Defendants Stanislav*
*Kostiantynovych Kuznetsov and Public Joint*
*Stock Company Sberbank of Russia*

## **TABLE OF CONTENTS**

Page

I.   PLAINTIFFS' IMPROPER SUBMISSION OF EXTRINSIC MATERIAL DOES NOTHING TO RESCUE THE FIRST AMENDED COMPLAINT'S DEFICIENT PLEADING OF THE EXPROPRIATION EXCEPTION ...................................................... 1

   A.   Plaintiffs Respond to the Sberbank Defendants' Facial Challenges to Subject-Matter Jurisdiction By Improperly Attempting to Amend their Complaint Through their Opposition Papers.......................................................................................................... 1

   B.   Plaintiffs Abandoned Their Alter Ego Theory When They Amended Their Complaint. 4

II.  THE ALLEGATIONS OF THE FIRST AMENDED COMPLAINT DO NOT ESTABLISH THE APPLICABILITY OF THE EXPROPRIATION EXCEPTION ................................... 6

   A.   Ismailov's "Lost Profits" Are Not "Property Rights" Within the Meaning of the Expropriation Exception............................................................................................... 6

   B.   No Property Rights Are "In Issue" In an Action to Recognize a Judgment, Notwithstanding Cases Applying the Commercial Activity Exception (An Exception Not Relevant to this Action)........................................................................................ 7

   C.   *Zappia* Holds What It Holds: A State-Owned Enterprise, As Distinct From Its Sovereign, Cannot Engage in a "Taking" of Property...................................................... 8

   D.   Plaintiffs Untimely, Newly Asserted, And Unpleaded Alter Ego Theory Does Not Save The First Amended Complaint ................................................................................... 10

CONCLUSION............................................................................................................................ 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*,
  663 F. Supp. 3d 11 (D.D.C. 2023) .................................................................................. 7

*Arch Trading Corp. v. Republic of Ecuador*,
  839 F.3d 193 (2d Cir. 2016) ................................................................................. 10, 11, 12

*Banco Nacional de Cuba v. Sabbatino*,
  376 U.S. 398 (1964) ...................................................................................................... 14

*Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*,
  999 F.3d 808 (2d Cir. 2021) .......................................................................................... 10

*Blecher v. Holy See*,
  631 F. Supp. 3d 163 (S.D.N.Y. 2022) .......................................................................... 4, 5

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
  581 U.S. 170 (2017) ........................................................................................................ 3

*CAC Grp., Inc. v. Maxim Grp., LLC*,
  No. 12-cv-5901, 2012 WL 4857518 (S.D.N.Y. Oct. 10, 2012) ..................................... 3

*Clean Coal Techs., Inc. v. Leidos, Inc.*,
  377 F. Supp. 3d 303 (S.D.N.Y. 2019) ............................................................................ 3

*Daventree Ltd. v. Republic of Azerbaijan*,
  349 F. Supp. 2d 736 (S.D.N.Y. 2004) ............................................................................ 6

*De Letelier v. Republic of Chile*,
  748 F.2d 790 (2d Cir. 1984) .......................................................................................... 11

*Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*,
  162 F.3d 63 (2d Cir. 1998) .............................................................................................. 5

*EM Ltd. v. Banco Cent. De La Republica Argentina*,
  800 F.3d 78 (2d Cir. 2015) .......................................................................................... 4, 11

*Empresa Cubana Exportadora De Azucar y Sus Derivados v. Lamborn & Co.*,
  652 F.2d 231 (2d Cir. 1981) .......................................................................................... 14

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983) ...................................................................................................... 11

*Garb v. Republic of Poland*,
   440 F.3d 579 (2d Cir. 2006) ........................................................................................... 9

*Goldberg v. Saint-Sauveur Valley Resorts, Inc.*,
   No. 17-cv-00061, 2018 WL 8370060 (D. Vt. Dec. 20, 2018) ...................................... 5

*Hulton v. Bayerische Staatsgemaldesammlungen*,
   346 F. Supp. 3d 546 (S.D.N.Y. 2018) ........................................................................... 3

*Hunter v. New York City Health & Hosps. Corp.*,
   No. 13-cv-2659, 2015 WL 1527646 (E.D.N.Y. Mar. 31, 2015)..................................... 3

*Hussein v. Maait*,
   607 F. Supp. 3d 374 (S.D.N.Y. 2022) ........................................................................... 8

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F.Supp.2d 371 (S.D.N.Y. 2001) .............................................................................. 3

*In re Wireless Tel. Servs. Antitrust Litig.*,
   No. 02-cv-2637 DLC, 2004 WL 2244502 (S.D.N.Y. Oct. 6, 2004) ............................. 5

*Kensington Int'l Ltd. v. Itoua*,
   505 F.3d 147 (2d Cir. 2007) ........................................................................................... 8

*Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*,
   No. 08-cv-588, 2012 WL 1638326 (S.D.N.Y. May 8, 2012)......................................... 5

*OBB Personenverkehr AG v. Sachs*,
   577 U.S. 27 (2015).................................................................................................... 7, 8

*Phillips v. City of Middletown*, No.,
   17-cv-5307, 2018 WL 4572971 (S.D.N.Y. Sept. 24, 2018)........................................... 5

*Rodriguez v. Pan Am. Health Org.*,
   502 F. Supp. 3d 200 (D.D.C. 2020) ......................................................................... 9, 10

*Servaas Inc. v. Republic of Iraq*,
   653 F. App'x 22 (2d Cir. 2011) ................................................................................ 7, 8

*Smith Rocke Ltd. v. Republica Bolivariana de Venezuela*,
   No. 12-cv-7316, 2014 WL 288705 (S.D.N.Y. Jan. 27, 2014)....................................... 7

*Virtual Countries, Inc. v. Republic of S. Afr.*,
   300 F.3d 230 (2d Cir. 2002) ........................................................................................... 3

*Zappia Middle East Construction Co. Ltd. v. Emirate of Abu Dhabi*,
   215 F.3d 247 (2d Cir. 2000) ............................................................................... 5, 9, 11

**Statutes**

22 U.S.C. § 2370(e)(2)........................................................................................................ 14

28 U.S.C. § 1610............................................................................................................... 9

**Rules**

Federal Rule of Civil Procedure 12(b).................................................................... 1, 3, 16

**Other Authorities**

Executive Order 13662 ...................................................................................................... 13

Executive Order 14024 ...................................................................................................... 13

Defendants Public Joint Stock Company Sberbank of Russia ("Sberbank") and Stanislav Kostiantynovych Kuznetsov (collectively, the "Sberbank Defendants") respectfully submit this Reply Memorandum of Law in further support of their omnibus motions to dismiss under Federal Rule of Civil Procedure 12(b). (ECF No. 50). The Sberbank Defendants join in Parts I through III of the contemporaneously filed *Reply Memorandum of Law in Support of Motions to Dismiss by Defendant Mykhailo Safarbekovych Hutseriev*. By emphasizing and focusing upon certain aspects of Plaintiffs' opposition, the Sberbank Defendants' do not waive any of the legal or factual contentions or arguments set forth in their moving papers.

Before we even proceed an iota further, however, we respectfully remind the Court of the farcical nature of this entire exercise: That Plaintiffs have brought this repetitive (of *Bilalov I*) action naming parties that are not even the counter parties to the newly-discovered, one-page, $200 million "agreement" they apparently forgot about in *Bilalov I*. The counterparties to that agreement are Zeeland Development Corp. and BIN Group of Companies, whose absence from the angry, martial-law induced Ukrainian default judgment makes the absurdity of that default judgment – and the forum-shopping and due-process machinations that led to it – so obvious. Instead, on we go, ignoring the sake of these motions that the caption-box in *this* case bears no rational relationship to the concocted Sales Agreement that plaintiffs now proffer for the first time in this years-long saga.

I. **PLAINTIFFS' IMPROPER SUBMISSION OF EXTRINSIC MATERIAL DOES NOTHING TO RESCUE THE FIRST AMENDED COMPLAINT'S DEFICIENT PLEADING OF THE EXPROPRIATION EXCEPTION**

    A. **Plaintiffs Respond to the Sberbank Defendants' Facial Challenges to Subject-Matter Jurisdiction By Improperly Attempting to Amend their Complaint Through their Opposition Papers**

In addition to claim and issue preclusion, the Sberbank Defendants' Rule 12(b)(1) motion

brings six separate *facial* challenges to the First Amended Complaint's deficiently plead invocation of the expropriation exception as the basis for subject-matter jurisdiction under the FSIA: (i) that the domestic takings rule continues to bar *any* claim by Bilalov; (ii) that Plaintiffs' alleged *intangible* rights to Krasnaya Polyana and any damages for breach of the Sales Agreement are not properly within the scope of the expropriation exception; (iii) that – however characterized – Plaintiffs do not allege that any rights in property are "in issue," because their action seeks to recognize a judgment post-issue and, not to actually litigate those supposed rights; (iv) that both Sberbank Defendants are constitutionally incapable of executing a "taking," which is the prerogative only of sovereigns, not their agencies or instrumentalities; (v) that, even setting aside the domestic takings rule, the First Amended Complaint does not allege any of the three bases for finding an expropriation in violation of international law – a taking that is arbitrary, discriminatory, or without provision for adequate compensation; and (vi) that Plaintiffs do not allege the required commercial nexus under the expropriation exception (even as a legal conclusion, let alone with plausible allegations of fact). (*See* Sberbank Defs.' Mov. Br.) (ECF No. 52).

Plaintiffs now belatedly recognize these pleading deficiencies, submitting reams of extrinsic evidence that they rely upon not only to oppose the Sberbank Defendants' motion for sanctions (which is appropriate), but to bridge these yawning chasms in the complaint in their attempt to plead the expropriation exception (which is plainly not appropriate). Most prominently, Plaintiffs submit a declaration and expert report by Professor David Szakonyi (ECF Nos. 90 and 90-2) (collectively, the "Szakonyi Declaration") *in support of a theory that they affirmatively abandoned* when amending their original complaint in favor of their First Amended Complaint: that Sberbank acted as the alter ego of the Russian Federation when it allegedly expropriated

2

Plaintiffs' rights.[1]

It is true that the proponents of a claim against a foreign state have the right – indeed, the obligation – to come forward with evidence in the teeth of a *factual* challenge under Rule 12(b)(1). *See Virtual Countries, Inc. v. Republic of S. Afr.*, 300 F.3d 230, 241 (2d Cir. 2002). Yet those proponents must first and foremost meet their facial *pleading* burden: "[T]he possibility that the Court might resort to evidence outside the pleadings does not relieve Plaintiffs of their burden to set out factual allegations *in the Complaint* that amount to 'a legally valid claim' under the FSIA and its exceptions." *Hulton v. Bayerische Staatsgemaldesammlungen*, 346 F. Supp. 3d 546, 549 (S.D.N.Y. 2018) (quoting *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017)). The intended cumulative effect of Plaintiffs' improper post-complaint, extra-pleadings declarations is to create the misimpression of a factual dispute when, in reality, Plaintiffs have yet to even properly plead the expropriation exception in the first place.

Even absent Plaintiffs' pulling the rug out from under themselves, "[i]t is axiomatic that a plaintiff cannot amend a complaint with new allegations contained in an opposition to a motion to dismiss." *CAC Grp., Inc. v. Maxim Grp., LLC*, No. 12-cv-5901, 2012 WL 4857518, at *1 n. 1 (S.D.N.Y. Oct. 10, 2012), *aff'd*, 523 F. App'x 802 (2d Cir. 2013) (citing *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371, 432 (S.D.N.Y. 2001)); *see also Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 321 (S.D.N.Y. 2019); *Hunter v. New York City Health & Hosps. Corp.*, No. 13-cv-2659, 2015 WL 1527646, at *12 (E.D.N.Y. Mar. 31, 2015).

---

[1] As the court will see, the choice of Professor Szakonyi is odd: Szakonyi is not an admitted lawyer in the United States, Russia, or Ukraine, and he is neither an economist, nor a banking expert, nor an expert in martial law. Though an associate professor of political science and international affairs, not a single one of his published articles concerns banking in general, Sberbank in particular, the relationship between Sberbank and the Russian Federation under the Russian Constitution, or Ukrainian martial law. At best, Szakonyi is a generalist writer, save one publication about politics in Russia, published before the current conflict with Ukraine.

To the extent Plaintiffs ask the Court to rely upon such material to oppose the Sberbank Defendants' facial pleading challenges and to cure the deficiencies of the First Amended Complaint, the Court should ignore it – including the Szakonyi Declaration – and instead "resolve [these] jurisdictional issues by reviewing *solely* the amended complaint's well-*pleaded* facts together with information cognizable on a facial attack under established law." *Blecher v. Holy See*, 631 F. Supp. 3d 163, 169 n.2 (S.D.N.Y. 2022) (emphasis added). (The same goes for the Declaration of Oleksandra Vytiaganets, which Defendants address at length at pages 12 – 14 of the contemporaneously filed *Reply Memorandum of Law in Support of Motions to Dismiss By Defendant Mykhailo Safarbekovych Hutseriev*).

## B. Plaintiffs Abandoned Their Alter Ego Theory When They Amended Their Complaint

The Court should reject the Szakonyi Declaration for another reason: as set forth above, it is an impermissible attempt to revive a theory that Plaintiffs themselves abandoned in the First Amended Complaint.

In their original complaint, Plaintiffs attempted to cast Sberbank as an alter ego of the Russian Federation, stating that "the Court has and can exercise personal jurisdiction over Sberbank – *which is an alter ego of Russia* – without conducting any due process analysis applicable to 'persons.'" (ECF No. 18-1 at 14, ¶ 51) (emphasis added). In the First Amended Complaint, however, Plaintiffs struck that reference. (*Id*). Thus, the First Amended Complaint now makes *no* assertion that Sberbank acted as the Russian Federation's alter ego, nor does it allege any facts that might support such a dramatic legal conclusion. It alleges merely and only that Sberbank is an "agen[cy] or instrumentality" of the Russian Federation (*id*.), a conclusion nobody disputes, but which decidedly does not render Sberbank the Federation's alter ego. *See generally EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 90-91 (2d Cir. 2015) ("[W]e are

thus required to presume that [an agency or instrumentality] is legally separate and distinct from [its sovereign].")

For all their bravado, then, it is clear that Plaintiffs have now belatedly realized that *Zappia Middle East Construction Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000) (to say nothing of this very Court's decision in *Bilalov I*) means *exactly* what it says: that an aggrieved plaintiff cannot proceed against a state-owned enterprise under the expropriation exception, because a state-owned enterprise cannot nationalize property, except if and when it acts as the alter ego of its sovereign. That is why they submit the Szakonyi Declaration: to establish the only avenue for jurisdiction even academically left open to them under *Zappia* – that Sberbank acted as the Russian Federation's alter ego – despite having affirmatively abandoned that avenue already.

It is well established that an amended complaint "supersedes the original and renders it of no legal effect." *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 68 (2d Cir. 1998). "[A] court may not import information that was contained in the prior pleading but omitted from the amended pleading." *Phillips v. City of Middletown*, No. 17-cv-5307, 2018 WL 4572971, at *4 (S.D.N.Y. Sept. 24, 2018) (quoting *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-cv-588, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012). Plaintiffs have thus abandoned the claim that Sberbank acted as the Russian Federation's alter ego.

Now, though, "[f]or whatever reasons, the plaintiffs chose to drop" their alter ego theory "from the Amended Complaint and now seek to resurrect them" with the Szakonyi Declaration. *In re Wireless Tel. Servs. Antitrust Litig.*, No. 02-cv-2637 DLC, 2004 WL 2244502, at *6 (S.D.N.Y. Oct. 6, 2004). The Court, however, should not permit them to do so, because "an affidavit 'cannot be used' to amend a pleading by 'asserting new facts or theories for the first time in opposition to a motion to dismiss.'" *Blecher*, 631 F. Supp. 3d at 169 n.2 (citing *Goldberg v. Saint-Sauveur Valley*

5

*Resorts, Inc.*, No. 17-cv-00061, 2018 WL 8370060, at *8 n. 7 (D. Vt. Dec. 20, 2018)). The proper

procedure would have been a motion to amend[2], not a belated expert report.

## II.    THE ALLEGATIONS OF THE FIRST AMENDED COMPLAINT DO NOT ESTABLISH THE APPLICABILITY OF THE EXPROPRIATION EXCEPTION

### A.    Ismailov's "Lost Profits" Are Not "Property Rights" Within the Meaning of the Expropriation Exception

The First Amended Complaint has always been cagey as to which precise property rights

Plaintiffs claim are "in issue," never once actually identifying those rights. Plaintiffs' opposition

papers are not much better, vacillating among Zeeland's shares in Krasnaya Polyana PJSC,

Ismailov's indirect ownership interest – through Zeeland – in Krasnaya Polyana, and Ismailov's

right to repayment under the Sales Agreement.

In defending the enforceability of the Ukrainian judgment, however – in particular, the

basis for the Ukrainian Court's subject matter jurisdiction – Plaintiffs' opposition papers finally

articulate what rights were supposedly in issue *in the Ukraine action itself*: "the Ukrainian Action

was a suit in tort for lost profits arising from Defendants' illegal taking . . . ." (Pls.' Mem. Opp'n

Mot. Dismiss 54). With that "clarification" in place, the expropriation exception now inexorably

slips beyond reach. Responding to the Sberbank Defendants' argument that intangible property –

and particularly the right to repayment attendant on an ordinary breach of contract – is not a

property right within the meaning of the expropriation exception, *see generally Daventree Ltd. v.*

*Republic of Azerbaijan*, 349 F. Supp. 2d 736, 751 (S.D.N.Y. 2004) ("[F]or purpose of the

---

[2] Plaintiffs, however, did not seek leave to amend, either within ten days of receipt of the motions or even now, as a cross-motion with their opposition papers. *See* this Court's Individual Practices in Civil Cases Rules III.B.ii; III.B. iv.  When deciding the Sberbank Defendants' facial challenges to jurisdiction under the FSIA, then, the Court should hold Plaintiffs to their manifestly deficient pleadings and neither permit them to amend by stealth through their declarations, nor grant them further leave to amend at this late juncture. The Court's rules on this point are clear and fair, and Plaintiffs chose not to avail themselves of those rules within the time permitted.

expropriations exception to the FSIA, the 'property taken ... means physical property [and] not the right to receive payment.") (internal citations omitted), Plaintiffs principally rely on *Smith Rocke Ltd. v. Republica Bolivariana de Venezuela*, No. 12-cv-7316, 2014 WL 288705, at *6 (S.D.N.Y. Jan. 27, 2014). Reasoning that the Second Circuit had not issue binding authority on that point, *Smith Rocke* took the contrary view that intangible property can be taken. Yet not even *Smith Rocke* takes a view of "property rights" expansive enough to reach *damages in tort*, and Plaintiffs cite no authority that does. Because no such authority exists.

**B.    No Property Rights Are "In Issue" In an Action to Recognize a Judgment, Notwithstanding Cases Applying the Commercial Activity Exception (An Exception Not Relevant to this Action)**

Even if a loss of profit arising from an alleged breach of contract could be a "property right" under the expropriation exception, that underlying right is not and cannot be "in issue" in an action to enforce a judgment, which presupposes that the issuing court has already conclusively determined the dispute in favor of the judgment creditor. *Cf. Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp. 3d 11, 32 (D.D.C. 2023). Plaintiffs principally and mistakenly resist this conclusion by recourse to *Servaas Inc. v. Republic of Iraq*, 653 F. App'x 22, 23-24 (2d Cir. 2011) (an unpublished, and as per the Second Circuit rules, *non-precedential* summary order, *see* Second Circuit Internal Operating Procedure 32.1.1), which determined that – when assessing the applicability of the *commercial activity exception* (not the expropriation exception) – the court should look to the underlying dispute. Yet, *Servaas* is unavailing because: (i) the operative phrase of the commercial activity exception – "based upon" – is broader than the operative phrase of the expropriation exception – that property rights actually are "in issue"; and (ii) *Servaas'*s 2011 application of the phrase "based upon" in the commercial activity exception does not survive the Supreme Court's more recent 2015 interpretation of that phrase. *See OBB Personenverkehr AG v.*

*Sachs*, 577 U.S. 27, 34 (2015).

The phrase "based upon" has slowly but steadily accumulated a strict interpretation in more recent years and now obtains only when the foreign state's commercial activity is the "gravamen" of the suit, which is to say that the "acts that actually injured" the plaintiff fit within the commercial activity exception. *Id*. at 35.  And as the Second Circuit explained in a *precedential* opinion dealing with the commercial exception (and not with the expropriation exception): "the 'based upon' element requires a 'degree of closeness between the acts giving rise to the cause of action and those needed to establish jurisdiction that is considerably greater than common law causation requirements.'" *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 156 (2d Cir. 2007).

This means that – contra *Servaas*, and as the district courts have increasingly recognized – an action to recognize a judgment (as opposed to a plenary action) cannot fit within the commercial activity exception, because such a claim is necessarily "'based upon' the judgment itself, not the conduct giving rise to the judgment." *Hussein v. Maait*, 607 F. Supp. 3d 374, 379-80 (S.D.N.Y. 2022). *Servaas*, then – which remains persuasive authority, but *only* persuasive and not controlling and only with respect to the commercial activity exception – ultimately does not survive as a correct application of the commercial activity exception to actions under the Uniform Act, to say nothing of the expropriation exception, which uses entirely different language. No property rights are "in issue" in an action to recognize a Ukrainian judgment that already purports to have decided the matter, as Plaintiffs' own briefing unwittingly concedes: "The Ukrainian Court adjudicated the matter and issued a judgment for Plaintiffs, holding Defendants jointly and severally liable for $200 million." (Pls.' Mov. Br. 1). (And of course the Ukrainian Court's adjudication of the "matter" must also be rejected because this Court had already done so itself).

### C. *Zappia* Holds What It Holds: A State-Owned Enterprise, As Distinct From Its Sovereign, Cannot Engage in a "Taking" of Property

8

Zappia forecloses this lawsuit, just as it foreclosed *Bilalov I*. As such, Plaintiffs argue at length that *Zappia* does not hold what it holds, chopping up its facts and rearranging them in a pastiche they hope will obscure that decision's plain import: Sberbank, as a separate corporate entity, an "agency or instrumentality" under the FSIA, is constitutionally incapable of "taking" property, unless it is the alter ego of its sovereign.

Plaintiffs maintain that neither *Zappia* nor this Court so holds, but courts outside the Second Circuit also understand the rule in that manner: "Those familiar with constitutional or international law should have a strong sense of the meaning of th[e] phrase ['taken']: improperly confiscated *by a government*." *Rodriguez v. Pan Am. Health Org.*, 502 F. Supp. 3d 200, 221 (D.D.C. 2020), *aff'd*, 29 F.4th 706 (D.C. Cir. 2022) (emphasis in original) (citing Black's Law Dictionary (11ᵗʰ ed. 2019)). "Indeed, *that is the interpretation* of the [expropriation exception] propounded by" the Second Circuit. *Id*. (citing *Zappia*, 215 F.3d at 251) (emphasis added).

According to Plaintiffs, however, "foreign government" under the FSIA is synonymous with "foreign state," and therefore there is no distinction to be drawn between a foreign state as such and its "agencies or instrumentalities." Nonsense: such distinctions are embedded throughout the FSIA itself, which defines a "foreign state" to include its "political subdivisions" and "agencies or instrumentalities," then repeatedly draws distinctions among those categories. *Compare, e.g.* 28 U.S.C. § 1610(a) (attachment immunity for foreign states) with 28 U.S.C. § 1610(b) (attachment immunity for agencies and instrumentalities). So do the courts, which – to take just one other example – would surely have refrained from spilling gallons of ink carefully distinguishing between the state itself and its political subdivisions (the so-called "core functions test") if such distinctions were immaterial. *See generally Garb v. Republic of Poland*, 440 F.3d 579, 590-91 (2d Cir. 2006) (reviewing ample case law). *These distinctions matter* – and, more importantly, they

are dispositive under the expropriation exception, because "[o]nly a sovereign, of course, has the capacity to nationalize or expropriate property." *Rodriguez*, 502 F. Supp. at 221.

Plaintiffs raise no subsequent cases that overrule *Zappia* or even call its holding into question. In *Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*, 999 F.3d 808, 820, 823 (2d Cir. 2021) for instance, the Second Circuit affirmed dismissal in favor of the Swiss Customs Administration on the grounds that "a state's exercise of its traditional or police powers over its internal affairs […]" – that is, seizure for purposes of a law enforcement investigation – does "not constitute a taking, even if they result in the loss of property or other economic harm." The issue of whether the Swiss Customs Administration was an entity with the power to nationalize or expropriate simply did not arise, yet Plaintiffs would have the Court infer from silence that *Beierwaltes* overruled *Zappia*. *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 198 (2d Cir. 2016) is even less availing, as that decision applies the commercial nexus element of the expropriation exception, concluding that the activities of two state instrumentalities could *not* be imputed to the Republic of Ecuador to satisfy the nexus element on the grounds that "agencies and instrumentalities of foreign states are presumed to be separate." Indeed they are.

The most convincing demonstration, however, that Plaintiffs' attempts to recast *Zappia* falls short is their own full court press on the issue that they abandoned when amending their original complaint: that Sberbank acted as the alter ego of the Russian Federation when it "expropriated" their interests (however defined) in Krasnaya Polyana.

### D.   Plaintiffs Untimely, Newly Asserted, And Unpleaded Alter Ego Theory Does Not Save The First Amended Complaint

For the reasons set forth in Section I above, the Court should exclude the Szakonyi Declaration from consideration on this motion, because it constitutes a prohibited attempt to plead a theory that Plaintiffs have already abandoned: that Sberbank acted as the Russian Federation's

10

alter ego when it allegedly expropriated Plaintiffs' lost profits in Krasnaya Polyana. Nor should the Court grant Plaintiffs leave to amend the First Amended Complaint to assert that theory at this late juncture. Yet even if the Court were to consider this material – indeed, even if every line of the Szakonyi Declaration were *already* part of the First Amended Complaint – dismissal would result.

> 1.     *The Szakonyi Declaration Does Not Establish Day-to-Day Extensive Control by the Russian Federation Over Sberbank During the Relevant Timeframe*

In *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 627 (1983) ("*Bancec*"), the Supreme Court recognized Congress' intent that "instrumentalities of a foreign state are to be accorded a presumption of independent status" under the FSIA. This presumption can yield, but *only* "when the state exercises significant and repeated control over the [entities'] *day-to-day operations*." *Arch Trading*, 839 F.3d at 196 - 97 (quoting *EM Ltd. v. Banco Cent. de la República Argentina*, 800 F.3d 78, 91 (2d Cir. 2015)) (emphasis added). Later cases established five factors – now known as the *Bancec* factors – for assessing whether the state exercises the high degree of day-to-day control required to set aside that presumption:

> [W]hether the sovereign entity: (1) uses the instrumentality's property as its own; (2) ignores the instrumentality's separate status or ordinary corporate formalities; (3) deprives the instrumentality of the independence from close political control that is generally enjoyed by government agencies; (4) requires the instrumentality to obtain approvals for ordinary business decisions from a political actor; and (5) issues policies or directives that cause the instrumentality to act directly on behalf of the sovereign state.

*Id*. at 202. The *Bancec* presumption is not one the courts lightly set aside, no more so than its private law equivalent – the piercing of the corporate veil. *See De Letelier v. Republic of Chile*, 748 F.2d 790, 795 n. 1 (2d Cir. 1984) ("[A]buse of corporate form must be clearly demonstrated to justify holding the 'subsidiary' liable for the debts of its sovereign 'parent.'"); *Zappia*, 215 F.3d

11

at 252 ("The acts of a private commercial entity, even one that supports a government, cannot be attributed to a government that has not authorized the private entity to act on its behalf.")

*Arch Trading* – upon which Plaintiffs rely to make out their once-abandoned and now newly asserted alter ego theory – actually forecloses that theory, instructing that many of the supposed facts and circumstances relied upon by Professor Szakonyi simply do not add up to a finding of extensive *day-to-day* control sufficient to set aside the *Bancec* presumption. Most critically, *Arch Trading* explained that "'oversight' and 'participation'" by the government in the administration of a state-owned enterprise is *insufficient*, as is the exercise by the state of 'powers incidental to ownership,' including the 'appointment or removal of an instrumentality's officers or directors.'" *Id*. at 207.

With those qualifications in mind, Professor Szakonyi's Declaration falls short – far short – of the standard of *Bancec* and *Arch Trading*. Start with his topline conclusion: that Sberbank should be considered an "instrument" of Russia. Well, yes, Sberbank *is* an instrument of the Russian Federation within the meaning of the FSIA – hence the statutory term "agency or *instrumentality*" (and the Professor's lack of familiarity with the statute itself and the rigors it presupposes). That conclusion says nothing about whether the Court should set aside the presumption, under *Bancec*, that such instrumentalities are *separate* from their government.

Nor do any of the out-of-date hearsay sources on which Professor Szakonyi relies to support this underwhelming conclusion. Despite his pretension to expertise, his report consists of little more than regurgitated newspaper and journal articles, none of which analyze the relevant – and *extremely* demanding – legal standard for establishing alter ego relations between a state and its instrumentalities. Indeed, few of these sources even assess the relationship between Sberbank and the Russian Federation during the relevant timeframe: 2014, when Plaintiffs allege that

12

Sberbank "expropriated" Krasnaya Polyana. Those that come closest point to individual episodes that, in Plaintiffs view, undermine Sberbank's independence from the government of Russia, including – risibly – the government's supposed interventions following the financial crisis of 2008. If the touchstone for *day-to-day* control of a state-owned bank is whether its respective parent state sought or even demanded its assistance in that *once-a-generation* calamity, there is probably no state-owned or state-affiliated bank in existence that would escape the *Bancec* test.

Professor Szakonyi puts inordinate weight on the fact that Sberbank is subject to United States sanctions. That is true of vast swathes of the Russian economy, however, both among individuals and businesses in both the private and public sector, on the grounds that they participate in economic sectors targeted by Executive Order (E.O.) 13662 and later Executive Order (E.O.) 14024, including the financial services sector. Precisely, these orders authorize the Treasury Department to sanction individuals and entities that: "operate in such sectors of the Russian Federation economy as may be determined by the Secretary of the Treasury, in consultation with the Secretary of State, such as financial services, energy, metals and mining, engineering, and defense and related materiel." *Id*.

Indeed, when the Department issued sanctions against Sberbank, it explained that it did so "to degrade the economy of the Russian Federation," and – moreover – simultaneously sanctioned "Alfa-Bank, Russia's largest *private* bank." *See U.S. Treasury Escalates Sanctions on Russia for Its Atrocities in Ukraine* (April 6, 2022) (emphasis added) (available at https://home.treasury.gov/news/press-releases/jy0705). The sanctions on Sberbank thus arise from its important role in Russian finance and the United States government's declared interest in degrading that sector of the Russian economy. The sanctions say nothing – *absolutely nothing* – about the degree to which the Russian state exercises day-to-day control over Sberbank within the

13

meaning of *Bancec*. Professor Szakonyi's conclusion to the contrary illustrates only that he is out

his depth, as one would expect of a non-lawyer attempting to apply a complex, multi-factorial legal

test, one that affirmatively and very strongly presumes that the answer is *no*.

       2.     *Even if the Szakonyi Declaration Could Establish a Basis for Inferring That Sberbank Acted as the Russian Federation's Alter Ego, That Conclusion Would Bar This Action*

As set forth above, before attempting to revive it here in their opposition papers, Plaintiffs

affirmatively abandoned their alter ego theory in the First Amended Complaint. Ironically, they

were right to do so, because – *even if they were right* – asserting an alter ego theory merely opens

up (at least) three additional reasons to dismiss their action.

First, by equating Sberbank with the Russian Federation, Plaintiffs compound their Rule 19

problem (*see* Sberbank Defs.' Mov. Br. 32), by implicating the Russian Federation itself as a malefactor

and potentially responsible party in a case where Plaintiffs have not (and cannot) join it as a party.

Second, Plaintiffs open themselves to a fatal attack under the act of state doctrine, a defense that

an agency or instrumentality cannot necessarily invoke (at least not at the pleading stage) but one

certainly available to the sovereign itself. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 428

(1964). Similar to the to the domestic takings rule (which maintains that a taking by a state of the property

*of its own citizens* cannot violate international law), the act of state doctrine precludes claims against a

"foreign sovereign" of property located in that sovereign's *territory*, even if the expropriation otherwise

violates international law. *Id*. Although the so-called Hickenlooper Amendment, 22 U.S.C. § 2370(e)(2),

later restricted the application of the act of state doctrine, the Second Circuit has long held that the

Hickenlooper Amendment applies *only* to cases in which the allegedly expropriated property is located

in the United States. *Empresa Cubana Exportadora De Azucar y Sus Derivados v. Lamborn & Co.*, 652

F.2d 231, 237 (2d Cir. 1981). Plaintiffs, of course, make no attempt to allege that the proceeds of

14

Sberbank's alleged expropriation of Krasnaya Polyana are now or were ever held in the United States, which means that – if Sberbank were acting as the alter ego of its sovereign, the Russian Federation –the act of state doctrine would bar the lawsuit.

Third, Plaintiffs potentially trigger the application of treaty law, including a bi-lateral investment treaty between the Russian Federation and Ukraine entered into on November 27, 1998, the "Agreement Between the Government of The Russian Federation and the Cabinet of Ministers of the Ukraine On the Encouragement and Mutual Protection of Investments." (the "Russia-Ukraine Investment Treaty"). That treaty requires mandatory international arbitration of certain disputes, defining an "investment" to include "all kinds of property and intellectual values, which are put in by the investor of one Contracting Party on the territory of the other Contracting Party." Article 5 of the treaty then provides that such investments "shall not be subject to expropriation," but also requires that disputes over "payment of compensation provided for in Article 5" be addressed in the first instance by negotiation following receipt of a claim in writing, and then by either arbitration or court proceedings of the nation "on whose territory the investments were carried out" – *i.e.*, Russia, under whose laws Krasnaya Polyana was organized.

Unsurprisingly, the limited scope of a reply brief is unsuited to an examination of the extremely complex contours of such treaties, but that is the point. Plaintiffs are not asking the Court to overlook a minor pleading deficiency by raising an alter ego theory. They are asking the Court, for the first time in their opposition papers, to consider *an entirely different case*, one that – if, when, and if it even *can* be properly pleaded – might well destroy Plaintiffs' own asserted basis for subject-matter jurisdiction in their Ukrainian lawsuit, yet one neither the Court nor Defendants have any hope of properly assessing because it arises from an alter ego theory that Plaintiffs *already abandoned*.

## CONCLUSION

For the reasons set forth above and in Defendants' moving papers, this Court should grant

15

the Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b).

Date:    December 24, 2024
         New York, New York

                                        Respectfully submitted,


                                        */s/Jay S. Auslander*

                                        Jay Auslander
                                        Natalie Shkolnik
                                        Aari Itzkowitz
                                        Michael Van Riper
                                        Wilk Auslander LLP
                                        825 Eighth Avenue, Suite 2900
                                        New York, New York 10019
                                        Tel: (212) 981-2338
                                        jauslander@wilkauslander.com
                                        nshkolnik@wilkauslander.com
                                        aitzkowitz@wilkauslander.com
                                        mvanriper@wilkauslander.com

                                        *Attorneys for Defendants Stanislav*
                                        *Kostiantynovych Kuznetsov and Public Joint*
                                        *Stock Company Sberbank of Russia*

16