**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MUSAIB ISMAILOVYCH ISMAILOV, and AKHMED HADZHYIOVYCH BILALOV, <br><br> Plaintiffs, <br><br> v. <br><br> MYKHAILO SAFARBEKOVYCH HUTSERIEV, STANISLAV KOSTIANTYNOVYCH KUZNETSOV, and PUBLIC JOINT STOCK COMPANY "SBERBANK OF RUSSIA," <br><br> Defendants. | Case No. 1:24-cv-03287 (AT) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS BY
DEFENDANT MYKHAILO SAFARBEKOVYCH HUTSERIEV**

Jay S. Auslander
Natalie Shkolnik
Aari Itzkowitz
David Partida
Michael Van Riper
Wilk Auslander LLP
825 Eighth Avenue, Suite 2900
New York, New York 10019
Tel: (212) 981-2338

*Attorneys for Defendant Mykhailo
Safarbekovych Hutseriev*

# **TABLE OF CONTENTS**

Page

I.    IN THE ABSENCE OF ANCHOR JURISDICTION OVER SBERBANK UNDER THE FSIA, NO SUPPLEMENTAL JURISDICTION EXISTS OVER HUTSERIEV ............... 1

II.   PLAINTIFFS HAVE ESTABLISHED NEITHER SPECIFIC PERSONAL JURISDICTION, NOR QUASI IN REM JURISDICTION IN THIS ACTION ................ 6

III.  THE UNIFORM ACT FORECLOSES RECOGNITION OF THE UKRAINIAN JUDGMENT ................................................................................................................... 11

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*,
160 A.D.3d 93, 73 N.Y.S.3d 1 (1st Dept. 2018) ........................................................................ 7

*Appelbaum v. Palagonia*,
20 Misc. 3d 1137(A), 867 N.Y.S.2d 372 (Sup. Ct. 2008) .......................................................... 9

*CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*,
100 N.Y.2d 215 (2003) .............................................................................................................. 7

*Concord Line Co. v. Just Oil & Grain Pte Ltd.*,
No. 08 CIV. 5035 (AKH), 2010 WL 2382414 (S.D.N.Y. June 14, 2010) ................................... 9

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003) ................................................................................................................... 3

*Electrolines, Inc. v. Prudential Assurance Co., Ltd.*,
260 Mich. App. 144 (2003) ........................................................................................................ 8

*Freund v. Republic of France*,
592 F. Supp. 2d 540 (S.D.N.Y. 2008) ......................................................................................... 3

*Gater Assets Ltd. V. AO Moldovagaz*,
2 F.4th 42 (2d Cir. 2021) ............................................................................................................ 6

*John Galliano, S.A. v. Stallion, Inc.*,
15 N.Y.3d 75 (2010) ............................................................................................................ 13, 14

*Kim v. Co-op. Centrale Raiffeisen-Boerenleebank B.A.*,
364 F. Supp. 2d 346 (S.D.N.Y. 2005) ....................................................................................... 11

*Lenchyshyn v. Pelko Elec., Inc.*,
281 A.D.2d 42 (4th Dep't 2001) ................................................................................................. 7

*Malherbe v. Oscar Gruss & Son, Inc.*,
No. 21-cv-10903, 2023 WL 199425 (S.D.N.Y. Jan. 17, 2023) ................................................. 12

*Manichaean Cap., LLC v. SourceHOV Holdings, Inc.*,
No. 20-cv-5679, 2021 WL 276674 (S.D.N.Y. Jan. 27, 2021) ..................................................... 8

*Shaffer v. Heitner*,
433 U.S. 186 (1977) ................................................................................................................... 8

*Silverman, Tr. of Ests. of Nat'l Events Holdings, LLC v. Citibank, N.A.*,
No. 1:22-cv-5211, 2023 WL 2753055 (S.D.N.Y. Mar. 31, 2023)........................................... 15

*Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*,
774 F. Supp. 858 (S.D.N.Y. 1991) ....................................................................................... 9

*Williams v. Fed. Gov't of Nigeria*,
No. 23-CV-7356, 2024 WL 3759649 (S.D.N.Y. Aug. 12, 2024) ........................................... 10

**Statutes**

28 U.S.C. § 1330.................................................................................................................. 6

28 U.S.C. § 1605(a)(3)......................................................................................................... 3

28 U.S.C. § 1610(b) ............................................................................................................ 9

**Rules**

CPLR 314(3).................................................................................................................... 8, 9

CPLR 5304........................................................................................................ 11, 12, 14, 15

Federal Rule of Civil Procedure 12(b)............................................................................. 1, 16

Federal Rules of Civil Procedure 5(b) ............................................................................... 15

**Regulations**

31 C.F.R. § 587.202(f) ......................................................................................................... 9

N.Y.C.C.R.R. § 202.5b(f)(1)......................................................................................... 14, 15

**Other Authorities**

Wright & Miller, *Federal Practice and Procedure* § 1070 (4th Ed. 2014) ..................................... 9

Defendant Mykhailo Safarbekovych Hutseriev respectfully submits this Reply Memorandum of Law in further support of his omnibus motions to dismiss under Federal Rule of Civil Procedure 12(b). (ECF No. 77). Hutseriev joins in Parts I and II of the of the contemporaneously filed *Reply Memorandum of Law in Support of The Sberbank Defendants' Motions To Dismiss*. By emphasizing and focusing upon certain aspects of Plaintiffs' opposition, Hutseriev does not waive any of the legal or factual contentions or arguments set forth in his moving papers.

## I.  IN THE ABSENCE OF ANCHOR JURISDICTION OVER SBERBANK UNDER THE FSIA, NO SUPPLEMENTAL JURISDICTION EXISTS OVER HUTSERIEV

Plaintiffs' asserted basis for supplemental jurisdiction over the individual defendants, Hutseriev and Stanislav Kostiantynovych Kuznetsov, is their claim against Sberbank of Russia PJSC ("Sberbank"),[1] which Plaintiffs contend gives the Court original subject matter jurisdiction over that claim through the expropriation exception to the FSIA. (Pls.' Opp'n Br. 26). Without that anchor claim, no supplemental jurisdiction exists over Plaintiffs' claims against Hutseriev (nor Kuznetsov) – which is to say that, unless Plaintiffs can establish the expropriation exception against Sberbank, their claims against Hutseriev and Kuznetsov fail as well.

In their moving papers, the Sberbank Defendants explain at length why the expropriation exception does not and cannot apply (Plaintiffs belated attempt to sneak an alter ego argument

---

[1] For purposes of this reply, we do not here repeat the most glaring and sanctionable failure of this entire action, which is that Sberbank itself is not a party to the contract plaintiffs allege was breached.  Nor, astoundingly, are plaintiffs themselves. In fact, not a single party to the purported contract that was purportedly breached (and that forms the basis of this recognition proceeding) *is even a party here*. We also respectfully remind the Court of a bit of absurdity here: We are generating a lot of paper here discussing people and entities who are not even the parties to the one-page, $200 million "sales agreement" that plaintiffs somehow conjured up after the demise of *Bilalov I* and the race to a courthouse in the most anti-Russian jurisdiction on the planet.  We proceed under these circumstances, as we must, but are constrained to highlight the discrepancy.

through the backdoor notwithstanding), but there is one additional reason the expropriation exception is verboten in this case: the absence of any commercial nexus between Plaintiffs' claims and the United States.

In resisting this argument, Plaintiffs now cast aside their prior reliance on the operations of Sberbank CIB as a basis for the nexus element, explaining that: "For numerous reasons, this is irrelevant." [2] (Pls.' Opp'n Br. 22). That concession is serious and surprising, given that – according to Paragraph 48 of the First Amended Complaint – "Sberbank satisfies the Expropriation Exception [because] . . . Sberbank, *via Sberbank* [CIB] *USA*, is engaged in commercial activity in the United States." (Emphasis added). So much for that.

Changing tack once again at the eleventh-hour, Plaintiffs now claim that it is Sberbank's own activity in the United States (and not Sberbank CIB's activity) that creates the required commercial nexus. And, in another change of tack, Plaintiffs identify the property at issue. Yet, Plaintiffs identify the property in issue as control of the Krasnaya Polyana operating company (at other places, plaintiffs identify the property at issue as the villa itself, *or* Zeeland's shares in the company, *or* Plaintiffs' lost profits – whatever they think best suits them in responding to each of Defendants' objections in the moment.)

No matter, Plaintiffs' new approach fails, too:

First, Plaintiffs continue to ignore the use of the present tense "is" in the expropriation exception, which – when applied to an agency or instrumentality – requires *both* (i) that the

---

[2] Plaintiffs also argue that the Sberbank Defendants "waived any argument as to whether Sberbank USA's activities can be imputed to Sberbank." This is farcical, as the Sberbank Defendants have repeatedly argued exactly that: "[Plaintiffs] do not allege the required commercial nexus between their alleged expropriation and the United States – quite the opposite, as they rely on a subsidiary, Sberbank CIB USA, Inc. ('Sberbank CIB'), to establish that nexus, even though Sberbank CIB no longer exists." (Sberbank Defs.' Mov. Br. 3).

property in issue or any property exchanged for it "*is* owned or operated" by that agency or instrumentality *and* (ii) that the agency or instrumentality "*is* engaged" in commercial activity in the United States. 28 U.S.C. § 1605(a)(3) (emphasis added); *cf. Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003).

The First Amended Complaint fails at both of those sub-prongs, even with Plaintiffs' freshly applied gloss, because Plaintiffs still make no allegation that Sberbank *presently* owns the Krasnaya Polyana operating company.[3] Rather, as in *Freund v. Republic of France*, 592 F. Supp. 2d 540, 560 (S.D.N.Y. 2008), Plaintiffs are asking the Court itself to assume that Sberbank currently owns or operates the company based on the allegation that Sberbank had at one point acquired it in the past. *Freund* correctly rejected that approach, and – just as in that case – "Plaintiffs do not specifically allege that property presently owned by [Sberbank] is somehow derived from the expropriated property, and they cite no authority that would permit the Court to infer such traceability." *Id*.

One might raise the superficial objection that more time had passed in *Freund* than has passed since 2013 (the year Plaintiffs allege Sberbank took ownership in the project, itself roughly 12 years ago, even though the patently counterfeit agreement Bilalov now proffers for the first time does not even include Sberbank as a party), except that *Plaintiffs themselves* expressly contradict in their own opposition brief and their supporting exhibits when *they* allege that "Sberbank also represented that in *2016* it would sell Krasnaya Polyana" and incredibly that

---

[3] Nor, as we set forth in our Moving Br. at 10-12, do they allege that Sberbank itself *ever* owned or operated it; that distinction goes to BIN Group of Companies (BIN Group), the counterparty to the apparently newly-discovered contract between Zeeland Development Corp., who are not the plaintiffs here, and BIN Group, who is not a defendant here.

"Sberbank sold its interest in [Krasnaya Polyana] at a massive profit." If that is correct, then there is no basis at all on which to assume that Sberbank *currently* owns or operates the company.

Of course, apart from the lack of merit to Plaintiffs' current arguments, the Court should not overlook the central problem here: *none* of this is actually plead in the First Amendment Complaint, which says nothing about the *present* ownership of the company *at all*, and should therefore be dismissed because it does not allege a central requirement of the nexus element.[4] Yet it is quite telling that, even if the Court were inclined to consider Plaintiffs' opposing declarations in resolving Defendants' facial challenges under the FSIA – which would be procedurally improper, those declarations themselves would yet again sink Plaintiffs' own theory of subject matter jurisdiction because they foreclose the conclusion that Sberbank or any Defendant owns the property at present.

The same result entails when assessing whether Sberbank "is engaged in a commercial activity in the United States," which is an additional requirement of the nexus element (that is, the foreign state must both own or operate property *at present* and engage in a commercial activity in the United States *at present*).  As Plaintiffs have it, Sberbank engaged in "massive" activity "at all relevant times." But of course there is only *one* relevant time period here: April 30, 2024, when Plaintiffs filed suit. None of Plaintiffs' assertions of commercial activity by Sberbank in the United

---

[4] Plaintiffs furtively recast this argument as follows: "The Sberbank Defendants maintain that Plaintiffs cannot *establish* that Sberbank owned Ismailov's interest in Krasnaya Polyana." (Pls.' Opp'n Br. 21) (emphasis added). But that is *not* what Defendants maintain. As Defendants explain: "What is missing? The 'owned or operated' element – even as a conclusory legal assertion, let alone supported by well-pleaded facts . . . [Plaintiffs] are entirely silent on the present ownership of Zeeland's shares . . . They say nothing about whether BIN Group, the Sberbank Defendants or anyone else subsequently liquidated or sold those shares, or when, or to whom, or whether that imaginary party engages in commercial activity in the United States. They fall short, then, of the Supreme Court's admonition in *Helmerich* that the allegations must show the applicability of the exception, not just make out a hazy case for it." (Sberbank Defs.' Mov. Br. 30).

States in *either* the First Amended Complaint, *or* their opposition papers took place at that time; indeed, the latest is dated more than two years earlier, in January 2022. And Sberbank's inclusion in OFAC General License 8I authorizing certain energy sector transactions does not at all show that Sberbank is presently engaged in commercial activity in the United States. Sanctions preclude transactions with blocked Specially Designated Nationals by U.S. persons *wherever* located – including Russia itself – and thus a license permitting certain transactions with Sberbank says nothing about whether Sberbank is engaged in U.S.-based commercial activity.

Second, by attempting to make Sberbank the alter ego of the Russian Federation in order to avoid the application of *Zappia v. Middle East Construction Company* – which would be fatal to Plaintiffs' claim – Plaintiffs adopt a far more stringent nexus test for…*themselves*; one they do not, indeed *cannot*, satisfy.

For the expropriation exception to apply to a "foreign state" that are not agency or instrumentality (like the Russian Federation), the property in issue or its proceeds must be (i) presently located *in the United States*, (ii) *in connection with* a commercial activity carried on in the United States by the foreign state, a far more exacting standard than what applies to an agency or instrumentality.

By hurriedly attempting to recast their suit under an alter ego theory, Plaintiffs have therefore once again left the proverbial frying pan for the fire, not only triggering the act of state doctrine and treaty law (Sberbank Defs.' Mov. Br. 26-28) but stripping away any reliance they might have made on the less strict version of the nexus element that applies to agencies or instrumentalities. Accordingly, the First Amended Complaint fails even more spectacularly, making not a single allegation that the property at issue (however defined: the villa, the shares,

Ismailov's indirect ownership interest, or lost profits) is itself presently located in the United States, or that it is connected to any U.S.-based commercial activity.

To fix *those* self-invited deficiencies, Plaintiffs would have no other recourse but to amend the complaint, but their delay and obfuscation has left that option unavailable to them (and it would in any event be futile, not least because of the other whipsaws they would place themselves within if they expressly alleged that Sberbank acted as the Russian Federation's alter ego).

## II.   PLAINTIFFS HAVE ESTABLISHED NEITHER SPECIFIC PERSONAL JURISDICTION, NOR QUASI IN REM JURISDICTION IN THIS ACTION

As they do throughout their analysis of the FSIA, Plaintiffs again confuse state-owned corporate instrumentalities with the state itself. Yes, both are "foreign states" as defined under the FSIA, but it is only the state itself (and *not* its agencies or instrumentalities) that is not a "person" for purposes of the Fifth or Fourteenth Amendments such that it is unable to invoke the protections of due process. An agency or instrumentality, by contrast, *is* a person and may invoke those protections. The Second Circuit is unambiguous on this: "[W]hen it comes to the Fifth Amendment, we have indicated – and today hold directly – that only the sovereign itself and its 'alter egos' are not 'persons.' Agencies and instrumentalities of foreign sovereigns retain their status as 'separate legal person[s],' and receive protection from the exercise of personal jurisdiction under the Due Process Clause." *Gater Assets Ltd. V. AO Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021) (citation omitted) (alteration in original).

Accordingly, Plaintiffs are not correct when they insist that, by satisfying *subject matter* jurisdiction under 28 U.S.C. § 1330 (the FSIA's central jurisdictional provision), they will have necessarily established *personal jurisdiction* over Sberbank. Although 28 U.S.C. § 1330 would typically be both the starting and ending point in a suit against the state itself, it is *only* the starting

6

point against an "agency or instrumentality" with separate corporate status, like Sberbank. After that, Plaintiffs must establish jurisdiction over Sberbank consistent with the Due Process Clause.

To avoid that hurdle, Plaintiffs continue to insist that the Due Process Clause requires no personal jurisdiction in an action against a judgment debtor. Plaintiffs are wrong: no jurisdiction over the person need be established *in an action against a judgment creditor who does not contest the underlying judgment*. But the inverse is equally correct: some form of jurisdiction over the person *must be* established when the judgment creditor contests recognition, as they do here. Plaintiffs' repeatedly flogging of *Lenchyshyn v. Pelko Elec., Inc.*, 281 A.D.2d 42 (4th Dep't 2001), completely ignores the First Department's most recent holding that, in a contested recognition action: "To require a defendant to litigate such substantive issues in a forum where it maintains no property, and where it has no contacts that would otherwise subject it to personal jurisdiction, would 'offend [the] traditional notions of fair play and substantial justice' at the heart of the Due Process Clause." *AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*, 160 A.D.3d 93, 108 (1st Dept. 2018).

*AlbaniaBEG* also puts to rest Plaintiffs' contention that "[t]he Court of Appeals has signaled its approval of *Lenchyshyn*" (Pls.' Opp'n Br. 32) in *CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*, 100 N.Y.2d 215, 222 (2003):

> *CIBC* . . . *cannot* be read to mean that the court's only function in such a proceeding is ministerial. Rather, the court's function under article 53 becomes ministerial *once it is established that there are no grounds for declining to recognize the foreign judgment*, either because such grounds are found lacking after being raised by the defendant (as occurred in both *John Galliano* and *CIBC*) or because the defendant does not raise any such grounds (as occurred in *Abu Dhabi* and *Lenchyshyn*).

*AlbaniaBEG*, 160 A.D.3d at 108 n. 16 (emphasis added).

Moreover, despite Plaintiffs' misplaced insistence to the contrary, Defendants have not taken the position that *quasi in rem* jurisdiction can *never* serve as a substitute for general or specific jurisdiction as a means of satisfying due process in an action to recognize a judgment.

7

Rather, Plaintiffs simply misunderstand (or deliberately misconstrue) the interplay between these various forms of jurisdiction. *See, e.g, Electrolines, Inc. v. Prudential Assurance Co., Ltd.*, 260 Mich. App. 144, 163 (2003) ([I]n an action brought to enforce a judgment, the trial court must possess jurisdiction over the judgment debtor *or* the judgment debtor's property.") (emphasis added). Plaintiffs thus miss the point when they brandish *Shaffer v. Heitner,* 433 U.S. 186 (1977): *quasi in rem* jurisdiction can theoretically supply a basis to exercise jurisdiction over a contesting judgment debtor sufficient to satisfy due process. But that merely begs the question here, because the issue is whether Plaintiffs, in this obviously contested action, can establish *any* form of jurisdiction: general, specific/long-arm, or *quasi in rem*.

Plaintiffs have abandoned the argument that general or specific jurisdiction applies here, focusing solely on *quasi in rem* jurisdiction. The problem with that approach is two-fold:

First, federal courts assert *quasi in rem* jurisdiction under Rule 4 by means of attachment using state procedures, which Plaintiffs have not and probably cannot accomplish consistent with attachment immunity under the FSIA or OFAC sanctions. As the court recently explained in an action to enforce a judgment from Delaware, *Manichaean Cap., LLC v. SourceHOV Holdings, Inc.*, No. 20-cv-5679, 2021 WL 276674, at *2 (S.D.N.Y. Jan. 27, 2021): "New York law permits *quasi in rem* jurisdiction over a nondomiciliary defendant, if the plaintiff serves the defendant outside New York, and 'a levy upon property of the person to be served has been made within the state pursuant to an order of attachment or a chattel of such person has been seized in an action to recover a chattel.'" (quoting CPLR 314(3)). Because, however, "Plaintiffs did not seek attachment of Defendant's property allegedly in New York before commencing the instant action[,] [t]here [wa]s no quasi in rem jurisdiction over Defendant." *Id*. (citation omitted).; *see also id*. ("[Q]uasi-in-rem jurisdiction requires that the property be seized, attached." (quoting *Viacom Int'l, Inc. v.*

*Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 863 (S.D.N.Y. 1991) (alterations in original)));

("[T]he entire concept of quasi in rem jurisdiction depends on property of a defendant being found

and attached." (quoting *Concord Line Co. v. Just Oil & Grain Pte Ltd.*, No. 08 CIV. 5035 (AKH),

2010 WL 2382414, at *2 (S.D.N.Y. June 14, 2010) (alteration in original))); ("[T]he levy must be

made prior to service of the summons and complaint." (quoting *Appelbaum v. Palagonia*, 20 Misc.

3d 1137(A), 867 N.Y.S.2d 372 (Sup. Ct. 2008))); *see also* Wright & Miller, *Federal Practice and

Procedure* § 1070 (4th Ed. 2014) ("Like its predecessor, Rule 4(n) assumes that seizure of property

is a necessary prerequisite to proceeding *quasi-in-rem* against a defendant . . . ."); *Id*. § 1121 ("The

federal courts have followed state statutory procedures on the subject carefully and have relied

upon state court interpretations of attachment and garnishment statutes to determine whether an

action has been properly commenced.")

In their opposition papers, Plaintiffs now purport to have identified Sberbank's property in

New York, mostly ancient correspondent banking accounts based on decade-old records predating

the Russia-Ukraine conflict and the current round of sanctions. But even if accurate, this is too

little too late: Plaintiffs did not seek attachment of that alleged property before commencing this

action and thus there simply cannot be *quasi in rem* jurisdiction over Defendants.

The FSIA, moreover, has a different set of exacting rules for attaching the property of an

"agency or instrumentality." 28 U.S.C. § 1610(b). And OFAC, for its part, forbids any attachment

of blocked assets in the absence of a specific license. *See, e.g.,* 31 C.F.R. § 587.202(f) ("Unless

licensed pursuant to this part, any attachment, judgment, decree, lien, execution, garnishment, or

other judicial process is null and void with respect to any property or interest in property blocked

pursuant to § 587.201."). Little wonder then that Plaintiffs want to steer the Court as far away as

possible from the necessity of an attachment, arguing that the Court need not bother with

9

attachment or other such trifles in assessing *quasi in rem* jurisdiction. But these requirements do exist, and they must be satisfied in order to attach any of Sberbank's supposed New York property, which is in turn a cornerstone requirement of *quasi in rem* jurisdiction.

Plaintiffs' reliance on *Williams v. Fed. Gov't of Nigeria*, No. 23-cv-7356, 2024 WL 3759649 (S.D.N.Y. Aug. 12, 2024), decided just as briefing opened on Defendants' motions, does not help them for two reasons. First, even the judgment creditor in that matter emphatically understood that he would need to attach precise and identifiable property to perfect *quasi in rem* jurisdiction, so much so that he proclaimed it in the complaint itself, originally filed in state court:

> Upon the acceptance of this Original Verified Complaint for filing, the Plaintiff will move for an attachment and levy upon of the Nigerian Government Defendants' accounts held in New York at JPMorgan Chase & Co. as more fully described in the Memorandum of Law in Support of the Motion for an Attachment and Levy; and other accompanying paperwork with the Moving Papers.

(Complaint ¶ 70, *Williams v. Fed. Gov't of Nigeria*, No. 23-cv-7356, ECF No. 1-1). Defendants then removed the state court action, *Williams v. Fed. Gov't of Nigeria*, Index No. 653037/2023, prior to any such motion (NYSCEF No. 23), but *no party* ever took the position that attachment was unnecessary to support quasi in rem jurisdiction. Second, *Williams* was simply incorrect (or, at the very least, premature) when determining that *quasi in rem* jurisdiction existed before the judgment creditor perfected his proposed attachment of the property. But that is no surprise, because defendants' briefing in that case did not raise *that* issue either – indeed, so far as Defendants' here can tell, the Williams defendants challenged only specific jurisdiction, and did not even refer to quasi in rem jurisdiction in their moving papers. (Defs.' Mem Law Supp. Mot. Dismiss, *Williams v. Fed. Gov't of Nigeria*, ECF No. 22).

It might have been possible for Plaintiffs here to resort to *quasi in rem* jurisdiction as a substitute for general and specific jurisdiction in this contested action. Here, Plaintiffs did not even

bother to try to seek (much less perfect) an attachment of any property. And they did not bother to try because of the difficulties presented by the FSIA and OFAC. Instead, Plaintiffs want the Court to create the shortcut for them, which it cannot do.

### III. THE UNIFORM ACT FORECLOSES RECOGNITION OF THE UKRAINIAN JUDGMENT

As set forth in the Moving Br. at 33, the Uniform Act forecloses recognition of the Ukrainian Judgment. Plaintiffs oppose this argument with a would-be gotcha: that the 2021 amendments to CPLR 5304 shifted the burden of proof for establishing a mandatory ground for non-recognition from a judgment creditor to a judgment debtor.

That is true, yet utterly beside the point: Here, Defendants challenge recognition of the judgment on the grounds that non-recognition is a *defense apparent on the face of the complaint*, rather than a pleading deficiency in the first instance. Had Plaintiffs brought this action prior to the 2021 amendments to the Uniform Act, the shoe would be on the other foot: *Plaintiffs* would have been required to affirmatively plead that no ground for non-recognition exists. *See, e.g., Kim v. Co-op. Centrale Raiffeisen-Boerenleebank B.A.*, 364 F. Supp. 2d 346, 352 (S.D.N.Y. 2005) ("A judgment cannot be recognized if the rendering jurisdiction does not provide 'procedures compatible with the requirements of due process of law,' or if '[t]he foreign court did not have personal jurisdiction over the defendant.' *The burden of proof on these issues is with the party seeking to enforce the judgment*.") (emphasis added) (internal citations omitted).

Defendants are well aware of the 2021 amendment to CPLR 5304 and that is why they move to dismiss on the basis that non-recognition is plain from the allegations of the First Amended Complaint itself when read alongside judicially noticeable provisions of Ukrainian martial law. (Mov. Br. at 13-15.) Plaintiffs would take that new paradigm an enormous (and ridiculous)  step further, arguing that a judgment debtor may not challenge the recognition of the

11

judgment at the pleading stage at all, yet not a single one of their cited authorities takes matters that far. Rather, each recognizes that the amendment shifted the burden of proof, not that the CPLR 5304 defenses may *never* be raised on a motion to dismiss. Even Plaintiffs' lead authority on this point, *Malherbe v. Oscar Gruss & Son, Inc.*, No. 21-cv-10903, 2023 WL 199425, at \*4 (S.D.N.Y. Jan. 17, 2023) acknowledges that: "It is true that '[a]n affirmative defense is grounds for dismissal when it is clear from the face of the complaint and documents integral thereto that plaintiff's claims are barred." Unsurprisingly, Defendants' moving papers already acknowledge this new burden of proof and pleading and advance their argument in accordance with it. (Moving Br. at 23). The Court must therefore set aside Plaintiffs' contention that the mandatory grounds for non-recognition cannot be raised at the pleading stage – *no case so holds* – and consider whether any of those grounds for non-recognition are indeed apparent (they are).

Plaintiffs next maintain that Defendants' opposition to recognition of the judgment "ask[s] the Court to second-guess the Ukrainian Court's application of law." Nonsense. The Ukrainian Court – having issued a judgment by default – *never heard Sberbank's defenses in the first place*. Although the Uniform Act permits recognition of a default judgment, the notion that the Ukrainian judgment was the product of considered review of the evidence and the law is absurd: the very basis of Sberbank's challenge is not that the Ukrainian court "got it wrong" (though it most assuredly did), but rather that the Ukrainian courts do not afford due process to Russian defendants, did not serve notice of the lawsuit in conformity with New York's standards of due process, and did not even have subject-matter jurisdiction under its own domestic law, and consequently never heard from Sberbank.[5]

---

[5] Plaintiffs impliedly concede the latter point when they argue that – actually, and in contradiction to the allegations of the First Amended Complaint – they pursued Sberbank not for breach of contract, but for their lost profits as damages in tort. The reason they attempt this rug pull is because

Plaintiffs principal response to these arguments comes from the opinion of Oleksandra Vytiaganets – who purports to be an expert Ukrainian lawyer, but not an American lawyer. That is a rather prominent stumble right out of the starting gate, because the availability of due process, impartial tribunals, and the propriety of methods of service and notice are assessed by comparison to domestic New York law, not the law of the issuing jurisdiction. *See John Galliano, S.A. v. Stallion, Inc.,* 15 N.Y.3d 75, 81 (2010). Vytiaganets' testimony therefore amounts to a vast but irrelevant tautology: that Ukrainian law and procedure comports with Ukrainian law and procedure. (*See, e.g.*, Vytiaganets Decl. ¶ 53) (service "would be proper so long as that service comported with Ukraine's concepts of due process . . . .")

Strikingly, Vytiaganets makes a series of material concessions: First and foremost, she confirms that "Ukraine has been under martial law" since February 24, 2022. And she admits that this martial law precludes the retention of notaries by Russian nationals, but contends that – in her view – this is no real impediment: "Resolution No. 164 requires notaries to refuse notarial services for Russian citizens in Ukraine such that Russian citizens cannot obtain a Power of Attorney from a notary in Ukraine to retain counsel. However, it does not prevent them from retaining counsel by other means." And what are those other means? None that would allow Russian nationals to hire actual Ukrainian litigators: "Resolution No. 187 does not prevent Russian Parties from obtaining legal advice from a Ukrainian qualified lawyer located *outside Ukraine*" (emphasis added). That is hardly a ringing endorsement: if you are a Russian national being sued in Ukraine, Vytiaganets says, you cannot retain a notary, and you cannot retain local litigation counsel, but you can seek the advice of a lawyer admitted to practice in Ukraine (just not one who lives there). Nor

---

they must: the Ukrainian court surely lacked subject matter jurisdiction over a breach of contract action alleging economic damages.

does Vytiaganets deny that no lawyer actually sitting and practicing in Ukraine would ever take on a Russian client, let alone an agency or instrumentality of the Russian Federation itself.

Imagine for a moment whether such restrictions would pass muster *anywhere* in the United States. The question almost answers itself.

Second, Vytiaganets notes that even "[t]he Supreme Court of Ukraine (the highest court in Ukraine) has also found it to be impossible to serve Russian Parties in Russia in accordance with the Hague Service Convention." How this helps Plaintiffs is anyone's guess, since it acknowledges that – at present – the Ukrainian courts cannot properly accomplish service under applicable treaty law. Plaintiffs' expert then slams home the final nail:" "Notwithstanding the impossibility of serving in accordance with the Hague Service Convention, personal service of any documents on a party located in Russia is impossible for a civil case pending before a Ukrainian court due to the ongoing war between Russia and Ukraine." Precisely. Plaintiffs commenced their lawsuit in a jurisdiction (Ukraine) in which – according to their own expert – personal service on Russian nationals is impossible. This does not improve their position under CPLR 5304(2), it destroys it.

Plaintiffs then reassert their contention that posting case-initiating process (a statement of claim) on the Ukrainian court's website was sufficient to paper over these deficiencies. Again, however, New York law supplies the relevant benchmarks, not Ukrainian law. *Galliano*, 15 N.Y.2d at 81. In New York, initial service of process under Uniform Trial Court Rule 202.5-b is not permitted by online filing without the *advance* consent of the party being served. N.Y.C.C.R.R. § 202.5b(f)(1); *see also Silverman, Tr. of Ests. of Nat'l Events Holdings, LLC v. Citibank, N.A.*, No. 1:22-cv-5211, 2023 WL 2753055, at \*4 (S.D.N.Y. Mar. 31, 2023). Interlocutory papers may be thereafter be served electronically upon any party that has appeared in the action, but even then actual notice remains the touchstone, as such service remains ineffective if the "the notification

14

did not reach the address of the person to be served." N.Y.C.C.R.R. § 202.5b(f)(1). Essentially the same rule obtains under Federal Rules of Civil Procedure 5(b).

Third, Vytiaganets cites a decision of the High Court of England and Wales (King's Bench, Commercial Division) in a case involving that country and its nationals reaching the rather tepid and entirely irrelevant conclusion that "Ukraine ha[s] a functioning civil justice system." That may be true generally (according to the courts of the UK), but – given that the dispute she cites arose between Ukrainian and English nationals, citizens of countries not in armed conflict – the decision sheds no light whatsoever on whether Ukrainian courts afford due process and impartial tribunals *to Russian nationals* at this time, let alone agencies or instrumentalities of the Russian Federation.

So, to be clear, in response to Defendants' challenge under CPLR 5304, Plaintiffs have responded with an expert who lacks the relevant expertise (*i.e.* due process under New York law), who confirms the essential contention of Defendants that present martial law imposes severe restrictions on the use of notaries and lawyers by Russian defendants, who concedes that personal service is impossible as between Ukrainian courts and Russian nationals, and who cites English case law that is entirely beside the point. As Defendants emphasize in their moving papers, the *propriety* of Ukrainian martial law under current conditions is beside the point. The point is that Plaintiffs took advantage of those current conditions to circumvent this Court's rejection of *Bilalov I* by proceeding in the one jurisdiction in which they *knew* that Sberbank could not mount an effective defense, nor even receive proper notice.

The Ukrainian courts do not provide due process to Russian defendants and Plaintiffs did not properly serve or notify and Defendants of their action in Ukraine. These defenses are not only apparent on the face of the complaint, they are unwittingly ratified by Plaintiffs' own expert.

## CONCLUSION

15

For the reasons set forth above and in Defendants' moving papers, this Court should grant

the Defendants motion to dismiss under Federal Rules of Civil Procedure 12(b).


Date:   December 24, 2024
        New York, New York

Respectfully submitted,


*/s/Jay S. Auslander*

Jay S. Auslander
Natalie Shkolnik
Aari Itzkowitz
David J. Partida
Michael Van Riper
Wilk Auslander LLP
825 Eighth Avenue, Suite 2900
New York, New York 10019
Tel: (212) 981-2338
jauslander@wilkauslander.com
nshkolnik@wilkauslander.com
aitzkowitz@wilkauslander.com
dpartida@wilkauslander.com
mvanriper@wilkauslander.com


*Attorneys for Defendant Mykhailo
Safarbekovych Hutseriev*

16