# SEIDEN | LAW

February 21, 2025

**VIA ECF**
Hon. Analisa Torres
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Re: <i>Ismailov et al. v. Hutseriev et al.</i>, 1:24-cv-03287-AT (S.D.N.Y)

On behalf of Plaintiffs and pursuant to Rules I.A-B of Your Honor's Individual Practices, we write to provide notice of supplemental authorities in connection to Defendants' Motions to Dismiss (ECF 52; ECF 79). For the reasons set forth below, the recently issued decisions *Cargill Financial Services International, Inc. et al., v. Barshchovskiy,* 2025 WL 522108 (S.D.N.Y. Feb. 18, 2025) ("*Cargill*") and *Schansman v. Sberbank of Russia PJSC*, 2025 WL 379439 (2d Cir. Feb. 4, 2025) ("*Schansman*") support the denial of Defendants' Motions to Dismiss.[1]

As to *Cargill*, *Cargill* rejects Defendants' assertion that, in order for the Ukrainian Judgment to be recognized, Plaintiffs must purportedly establish that the Court has personal jurisdiction over Defendants; *Cargill* supports Plaintiffs' position that, ***even where a judgment debtor contests judgment recognition, a court does not need to have personal jurisdiction over the judgment debtor***. *Cargill* likewise rejects Defendants' assertion that, before the Court can recognize the Ukrainian Judgment, Plaintiffs purportedly had to have first attached Defendants' property; *Cargill* supports Plaintiffs' position that ***a judgment creditor does not need to attach a judgment debtor's property in order for a court to recognize a foreign judgment***.

As to *Schansman*, *Schansman* rejects Defendants' assertion that this Court cannot recognize the Ukrainian Judgment because Plaintiffs purportedly did not identify Sberbank property in the SDNY; *Schansman* recognizes that, ***as to some of the SDNY-located property that Plaintiffs identified as Sberbank's, Sberbank had recently used that property to plausibly and knowingly finance terrorism, leading to the death of 298 people, including 80 children***.

Below, Plaintiffs address *Cargill* and *Schansman's* holdings and their application to this case. True and correct copies of these cases are attached as <u>Exhibits A and B</u>, respectively.

---

[1] Capitalized and abbreviated terms have the same meaning ascribed to them in Plaintiffs' Opposition to Defendants' Motions to Dismiss and for Sanctions (ECF 84, "Plaintiffs' Opposition Brief" or "Pl. Br.") "Pl. Supp. Notice," "Sb. Reply," and "Hut. Reply" refer Plaintiffs' previous Notice of Supplemental Authority (ECF 98) and to the replies in support of the Sberbank Defendants' Motion to Dismiss (ECF 92) and Defendant Hutseriev's Motion to Dismiss (ECF 94), respectively. All emphasis is added; internal quotations and citations are omitted. Whereas Defendants assert that a notice of supplemental authority is improper (ECF 100 at 1), the Court no doubt knows that such notice is routine and meant to address the relevance of new authorities.

### *Cargill* Requires No Personal Jurisdiction Or Pre-Recognition Attachment Of Property

In *Cargill*, the SDNY addressed whether, under New York's Uniform Act, a New York court must have personal jurisdiction over a foreign judgment debtor. *See Cargill*, 2025 WL 522108, at *5. There, the judgment creditor sought recognition in New York of an award issued by the High Court of Justice, Business and Property Courts of England & Wales ("English Court"; and as to the foreign judgment, the "English Judgment"). *See id.* at *1. On the judgment creditor's motion for summary judgment, the judgment debtor maintained that the SDNY should not recognize the English Judgment because the debtor was not subject to personal jurisdiction in the SDNY. *See id.* at *3. For numerous reasons, *Cargill* rejected the judgment debtor's contention, holding that "Article 53 does not require that a New York court faced with a request to recognize a foreign money judgment establish personal jurisdiction over the judgment debtor." *Id.* at 5.

First, *Cargill* based its holding on the purpose of Article 53. *See id.* at *3-5. *Cargill* noted that "Article 53 provides a streamlined mechanism for recognition of a foreign money judgment." *Id.* at *3. Citing the SDNY in *Williams v. Fed. Gov't of Nigeria*, 2024 WL 3759649 (S.D.N.Y. Aug. 12, 2024) ("*Williams*"), the Court of Appeals in *CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*, 100 N.Y.2d 215 (2003) ("*CIBC Mellon*"), and the Appellate Division in *Lenchyshyn v. Pelko Elec., Inc.*, 281 A.D.2d 42 (4th Dep't 2001) (4th Dep't 2001) ("*Lenchyshyn*"), *Cargill* noted that under Article 53 "the judgment creditor does not seek any new relief against the judgment debtor, but instead merely asks the court to perform its ministerial function of recognizing the foreign country money judgment and converting it into a New York judgment." *Id.* To that effect, *Cargill* distinguished between judgment *recognition* and judgment *enforcement*, noting that the purpose of the former is to make "(1) conclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in this state would be conclusive; and (2) enforceable in the same manner and to the same extent as a judgment rendered in this state." *Id.* at *4. ***Without such recognition, a foreign country money judgment is but "a meaningless piece of paper, enforceable only within the borders of the jurisdiction of the court that rendered it***." *Id. Cargill* noted that **only after** a foreign judgment is recognized may a judgment creditor proceed with judgment enforcement, subject to applicable procedures for such enforcement. *See id*.

Second, *Cargill* based its holding on the language of the Uniform Act and case law thereunder. Citing the Court of Appeals in *John Galliano, S.A. v. Stallion, Inc.*, 15 N.Y.3d 75 (2010) ("*John Galliano*") and the First Department in *Abu Dhabi Com. Bank PJSC v. Saad Trading, Contracting & Fin. Servs. Co.*, 117 A.D.3d 609 (1st Dep't 2014) ("*Abu Dhabi*"), *Cargill* recognized that **the Uniform Act "does not provide for non-recognition on the ground that the New York court lacks personal jurisdiction over the judgment debtor**[.]" *Cargill*, 2025 WL 522108, at *5. As to personal jurisdiction, what is required is merely that "the foreign court that rendered the money judgment have had personal jurisdiction over the debtor." *Id.*

Third, *Cargill* distinguished *AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*, 160 A.D.3d 93 (1st Dep't 2018) ("*AlbaniaBEG*") by relying on *Akhmedova v Akhmedov*, 189 A.D.3d 602 (1st Dep't 2020). *See Cargill*, 2025 WL 522108, at *5-7. *Cargill* recognized that a judgment creditor did *not* need to establish personal jurisdiction over a judgment debtor where the judgment debtor's CPLR 5304 challenges were either "**meritless on their face**" or "**lacking in evidentiary support**." *Id.* at *6. To that effect, *Cargill* found that the judgment debtor's CPLR 5304 affirmative defenses

were meritless or lacking evidentiary support because the defenses were challenges that should have been raised before the English Court. *See id.* ("If Defendant had an issue with respect to the evidence before or the procedures followed by the arbitrators, the proper forum to raise those arguments would have been in the English court tasked with confirming the Award."). Similarly, *Cargill* rejected the judgment debtor's assertion that the English Judgment was procured by fraud, as the judgment debtor "allege[d] no facts and, more importantly, offer[ed] no admissible evidence, to support the conclusion that the English Judgment was obtained by fraud." *Id.* at *7. Relatedly, *Cargill* held that any fraud was not colorable, as the judgment debtor had actual notice of the underlying action and could have litigated such issues before the English Court. *See id.*

And <u>fourth</u>, basing its reasoning on policy grounds, *Cargill* rejected the judgment debtor's contention that the court should not recognize the English Judgment because the debtor purportedly did not maintain property in the SDNY. *See id.* at *7. *Cargill* stated:

> Article 53 governs the recognition, not the enforcement, of a foreign money judgment. Its effect is simply to permit a foreign money judgment to be treated the same and no better or worse than the judgment of a sister state and to make the judgment "enforceable in the same manner and to the same extent as a judgment" rendered in New York.

*Id*. For that reason, *Cargill* noted that *only after* a foreign judgment is recognized may a judgment creditor seek judgment enforcement – and that enforcement, *not* recognition, may require a court's proper exercise of jurisdiction over the judgment debtor or the debtor's property. *See id.* Accordingly, *Cargill* held that "[i]t thus follows that it is no offense to due process that the court recognize a foreign judgment absent personal jurisdiction." *Id.* at *8. Rejecting the judgment debtor's assertion that personal jurisdiction is a purported prerequisite for judgment recognition, *Cargill* referred to such a prerequisite as "*a game of judgment enforcement whack-a-mole*" by which a judgment creditor "could obtain recognition in a jurisdiction only if the judgment creditor was able to find assets of the foreign judgment debtor in that jurisdiction." *Id.* at *8. To that effect and because pre-recognition asset discovery is disfavored, *Cargill* noted that "***judgment enforcement is not possible until after a court grants judgment recognition***." *Id.* Holding otherwise would create an untenable scenario for a judgment debtor:

> if it were the case that the judgment creditor could only obtain recognition and use those tools if the creditor was able to locate assets, the clever judgment debtor could perpetually evade judgment enforcement. *See Lenchyshyn*, 723 N.Y.S.2d at 2. All the judgment debtor would have to do would be to wait until the judgment creditor identified assets sufficient to permit the judgment recognition action and then—before the court was able to act—move the assets elsewhere. ***The result would be to require the creditor to go on a never-ending hunt to satisfy the foreign judgment. A debtor who was resourceful enough would never have to satisfy the Court's judgment, and the judgment would forever remain a piece of paper that, as a practical matter, would convey no benefit.***

*Id*.

### *Schansman* Identifies Sberbank Property In The SDNY Used To Finance Terrorism

In *Schansman*, the Second Circuit addressed whether Sberbank's commercial activity in New York – its provision of financial services via New York bank accounts to the Donetsk People's Republic ("DPR"), a recognized terrorist organization – should abrogate Sberbank's immunity as a Russian instrumentality under the FSIA and the Anti-Terrorism Act ("ATA"). *See Schansman*, 2025 WL 379439, at *1. The case arose out of the DPR's act of terrorism involving its shooting down a commercial aircraft, causing the murder of 298 people, including 80 children. *See id.*; *Schansman* ECF 156 ¶¶1, 75. Plaintiffs alleged that Sberbank knowingly provided financial services to the DPR, that such services constituted material support to a terrorist organization, and that such support led to these innocent people's deaths. *See id.* at *2.

The SDNY denied Sberbank's motion to dismiss, holding that Sberbank was not immune from suit under the FSIA's commercial activity exception. *See id.* at *4. The SDNY held that Sberbank's "provi[sion of] material support and financing to the DPR, in part by operating correspondent accounts in New York" and "authorization of money transfers" concerned commercial activity that Sberbank carried out in the United States. *Id.*

The Second Circuit affirmed. *See id.* at *7. The Second Circuit held that the FSIA's commercial activity exception should apply because the gravamen of the case was Sberbank's use of its New York bank accounts to knowingly authorize U.S. money transfers to the DPR so that the DPR could pursue its terroristic activities. *See id.* at *9. The Second Circuit held that Sberbank's knowing provision of financial services to the DPR "***knowing that the DPR perpetrated acts of terrorism***" should "***fall[] within the ambit of the ATA's prohibitions on financing terrorism***." *Id.* Likewise, the Second Circuit rejected Sberbank's assertion that the identified money transfers from its New York bank accounts could not have been used to procure the weapons used to shoot down the aircraft, recognizing that such transfers and accounts were "non-exhaustive examples, and Plaintiffs have not had the benefit of meaningful discovery." *Id.*

### The Court Should Follow *Cargill* and *Schansman*

*Cargill* and *Schansman* should guide this Court because they accord with Plaintiffs' positions on four core issues in this case. First, *Cargill* correctly observed that, under the Uniform Act and the SDNY's holdings in *Williams*, the Court of Appeals' holdings in *John Galliano* and *CIBC Mellon*, and the Appellate Division's holdings in *Abu Dhabi* and *Lenchyshyn*, ***for a foreign judgment to be recognized, the recognizing court does not need to have personal jurisdiction over a judgment debtor***. *See Cargill*, 2025 WL 522108, at *3-6; Pl. Br. at 30-32.

Second, *Cargill* rejects the same assertion raised by Defendants that in a contested judgment recognition action a court must purportedly conclude that it has personal jurisdiction over the judgment debtor before it can recognize a foreign judgment. *See Cargill*, 2025 WL 522108, at *6-7; Sb. Br. at 33; Hut. Br. at 21-22; Hut. Reply at 7-8; ECF 100 at 2-4. To that effect, *Cargill is a contested action*, and *Cargill* refused to apply *AlbaniaBEG* (requiring a showing of personal jurisdiction prior to judgment recognition) because the judgment debtor's CPLR 5304 challenges were meritless and/or unsupported by evidence. *Cargill*, 2025 WL 522108, at *6-7.

4

SEIDEN | LAW

  The same is true here for the reasons in *Cargill*. Pl. Br. at 46-54. Pursuant to the Uniform Act's 2021 amendments, *Cargill* correctly analyzed the judgment debtor's CPLR 5304 challenges as *affirmative defenses on summary judgment and not as reviewable challenges on a motion to dismiss*. Compare *Cargill*, 2025 WL 522108, at *3, *6 with *Cargill Fin. Servs. Int'l, Inc. v. Barshchovskiy*, 2024 WL 4240998, at *6 (S.D.N.Y. Sept. 19, 2024). Defendants' CPLR 5304 challenges are likewise procedurally defective and should be rejected. Pl. Br. at 47 (citing authorities). Like the judgment debtor's CPLR 5304 affirmative defenses in *Cargill*, Defendants' CPLR 5304 challenges are meritless on their face because, like the *Cargill* judgment debtor's analogous challenges, Defendants concede that they had actual notice of the Ukrainian Action and thereby should have raised those challenges there. *See Cargill*, 2025 WL 522108, at *6 (because judgment debtor had notice of the foreign proceeding, if judgment debtor "had an issue with respect to the evidence before or the procedures followed by the arbitrators, the proper forum to raise those arguments would have been in the English court tasked with confirming the Award."). Moreover, like the *Cargill* judgment debtor's CPLR 5304 affirmative defenses, Defendants failed to support their CPLR 5304 challenges with colorable evidence – or any evidence whatsoever. Sb. Br. at 40-41 (no evidence as to CPLR 5304(a)(2) or (a)(3)); Hut. Br. at 28 (no evidence as to CPLR 5304(a)(2)); Hut. Reply at 11-15 (no evidence as to any CPLR 5304 challenge); Pl. Br. at 50-54 (explaining why Defendants' submitted evidence is unavailing). And like the *Cargill* judgment debtor's affirmative defense that the foreign judgment was procured by fraud, though expending pages maintaining that the Ukrainian Judgment is the product of fraud, Defendants fail to submit any evidence whatsoever to support of this meritless assertion. *See Cargill*, 2025 WL 522108, at *7 (assertion that foreign judgment was procured by fraud was "meaningless" because the judgment debtor "offer[ed] no admissible evidence, to support the conclusion"); Pl. Br. at 57-58. Because Defendants' CPLR 5304 challenges are meritless, "there is nothing to litigate" and like the judgment debtor in *Cargill*, Defendants have "failed to "place[ ] in question" the Ukrainian Judgment's entitlement to recognition such that the Court does *not* need to exercise personal jurisdiction over Defendants. *Cargill*, 2025 WL 522108, at *7.

  <u>Third</u>, *Cargill* rejects the same assertion raised by Defendants that the Court purportedly should not recognize the Ukrainian Judgment because Plaintiffs did not attach Defendants' property before seeking judgment recognition. *See id.* at *7-8; Sb. Br. at 35; Hut. Br. 23-24; Hut. Reply at 8-11. *Cargill* correctly rejects Defendants' assertion on policy grounds, noting the unfair "***whack-a-mole***" gamesmanship in which a judgment debtor could engage under this incorrect rule – specifically, a judgment debtor's moving assets upon a judgment creditor's asset identification to avoid judgement recognition, causing the judgment creditor "***to go on a never-ending hunt to satisfy the foreign judgment***" and causing a foreign judgment and a court's recognition thereof to "***forever remain a piece of paper that, as a practical matter, would convey no benefit.***" *Cargill*, 2025 WL 522108, at *8. Under *Cargill's* correct view of the law, the Court should recognize the Ukrainian Judgment notwithstanding that Plaintiffs have not yet attached Defendants' property; such attachment can be correctly done subject to the Ukrainian Judgment's enforcement. *See id.* at *7 (recognizing attachment as a process effectuated pursuant to judgment enforcement, not recognition); Pl. Br. at 35-36.[2]

---

[2] Should the Court determine that it needs personal jurisdiction over Defendants, the Court has such jurisdiction pursuant to the FSIA and independently pursuant to a quasi-in-rem theory. Pl. Br. at 30, 33-36; Pl. Supp. Notice at 4.

**SEIDEN | LAW**

Fourth, *Schansman* should guide this Court because the property identified as providing a basis for the court's application of the commercial activity exception *includes the same New York property* that Plaintiffs identified as belonging to Sberbank to establish that the Expropriation Exception applies. Pl. Br. at 34; Nachmani Decl. ¶¶39-51. Specifically, the same New York-based bank accounts that Sberbank used to finance and provide material support to terrorists in *Schansman*, including accounts with Deutsche Bank, Bank of New York Mellon, J.P. Morgan, and Citibank, are included in the numerous enumerated property that Plaintiffs identified as Sberbank property in the SDNY. Nachmani Decl. ¶¶41-49. While Defendants, without evidence, declare that such property is "ancient" and based on "decade-old records" such that this property purportedly cannot abrogate Sberbank's immunity (Hut. Reply at 9), Defendants' assertion fails as a matter of law and at most is a question of fact. *See* ECF 97-1 at 13-14. Moreover, whether Sberbank retains money in these accounts or has transferred money to other New York accounts are facts solely within Sberbank's knowledge and can be a basis for jurisdictional discovery, if necessary. *See Schansman*, 2025 WL 379439, at *9 (identified bank accounts and transfers at issue were "non-exhaustive examples" because plaintiffs did "not ha[ve] benefit of meaningful discovery"; recognizing that more transactions and bank accounts could be uncovered).

In light of *Schansman's* tragic facts and only after numerous rounds of briefing in which Defendants needlessly, persistently, and baselessly attacked Plaintiffs' character and motivation, Plaintiffs are finally compelled to respond to Defendants' charges. While Defendants attack Plaintiffs to draw attention away from their meritless legal positions, their ad hominem strategy is hypocritical and repugnant, as it is Sberbank that plausibly, knowingly, and callously provided material support to terrorists, leading to the murder of 298 innocent people, including 80 children. *See Schansman*, 2025 WL 379439, at *1, *9. That a jury can find that Sberbank financially enables terrorists demonstrates that Sberbank can no longer maintain the charade of being a good-faith, upstanding actor righteously outraged at Plaintiffs' claims when Sberbank has proven itself capable of committing heinous acts with horrifically violent ends. The jig is up. That Sberbank illegally took Plaintiffs' property should now come as no surprise.

For the reasons set forth in *Cargill* and *Schansman* as well as in Plaintiffs' Opposition Brief, Defendants' Motions to Dismiss should be denied.

Respectfully submitted,

                                                     */s/ Jake Nachmani*
                                                   SEIDEN LAW LLP
                                                   Jake Nachmani
                                                   Michael Stolper
                                                   MarcAnthony Bonanno
                                                   322 Eighth Avenue, Suite 1200
                                                   New York, NY 10001
                                                   (646) 766-1723

                                                   *Attorneys for Plaintiffs*

Enclosures
cc: All counsel of record (via ECF)