# SEIDEN | LAW

March 18, 2025

**VIA ECF**
Hon. Analisa Torres
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:** ***Ismailov et al. v. Hutseriev et al.*, 1:24-cv-03287-AT (S.D.N.Y)**

On behalf of Plaintiffs, we write pursuant to the Court's order dated February 5, 2025 (ECF 102, "February 2025 Order") concerning the availability of jurisdictional discovery. Pursuant to Rule III.J of Your Honor's Individual Practices, Plaintiffs request oral argument as to this letter brief.[1]

On March 10, 2025, counsel for the parties met and conferred to discuss the February 2025 Order. Nachmani Supp. Decl. ¶4. Plaintiffs inquired as to whether Defendants were willing to provide Plaintiffs with limited jurisdictional discovery based on selected, relevant areas of inquiry; Defendants rejected the proposal outright. *Id.* In light of the February 2025 Order, Plaintiffs also inquired as to whether Defendants would withdraw their Sanctions Motion; Defendants refused, maintaining without explanation that sanctions remain appropriate. *Id.*

As to the February 2025 Order, while Plaintiffs re-assert that jurisdictional discovery is *not* necessary because the FAC and Plaintiffs' submissions establish the Court's jurisdiction over this case pursuant to the Expropriation Exception and personal jurisdiction over Defendants, Plaintiffs accept the Court's invitation to set forth that limited jurisdictional discovery is available and, if necessary, warranted.[2]

---

[1] Capitalized terms have the same meaning ascribed to them in the FAC and Plaintiffs' Opposition to Defendants' Motions (ECF 84, "Plaintiffs' Opposition Brief" or "Pl. Br."). "Sb. Reply," "Hut. Reply," and "Pl. Sur-Reply" refer to the replies in support of Sberbank's Motion to Dismiss (ECF 92) and Hutseriev's Motion to Dismiss (ECF 94), respectively, and Plaintiffs' Proposed Sur-Reply (ECF 97-1). References to "Nachmani Suppl. Decl." are to paragraphs of and exhibits identified in the Supplemental Declaration of Jake Nachmani, filed herewith. Citations to exhibits to the (original) Nachmani Declaration and Szakonyi Report are set forth as they were in Plaintiffs' Opposition Brief – that is to the pdf page number and not to the number at the bottom of a respective page. All emphasis is added; internal quotations and citations are omitted.

[2] Although the Court holds Defendants' three Motions in abeyance, based on Plaintiffs' establishing that the Expropriation Exception applies and at minimum a prima facie showing of subject matter jurisdiction as set forth in Section I.A-D *infra*, regardless of jurisdictional discovery, the Court should without delay deny the Sanctions Motion. Pl. Br. at 55-59.

---

**SEIDEN | LAW**

## I.  LIMITED JURISDICTIONAL DISCOVERY IS AVAILABLE AND WARRANTED

On a Rule 12(b)(1) challenge under the FSIA, a court "***must look at the substance of the allegations*** to determine whether an exception to the FSIA applies." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001). To defeat such a challenge, a plaintiff "has the burden of going forward ***with evidence showing that, under exceptions to the FSIA, immunity should not be granted***." *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993). For that reason, a court "***can and should consider matters outside the pleadings relevant to the issue of jurisdiction***." *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 199 (2d Cir. 2016). A court "***must resolve disputed issues of fact***, if there are any, when deciding the motion to dismiss." *Id.*; *see also Hijazi v. Permanent Mission Of Saudi Arabia to United Nations*, 689 F. Supp. 2d 669, 670 (S.D.N.Y.) (a court has the "***obligation***" to do so). If resolution of a "factual issue may result in the dismissal … for want of jurisdiction," a court "***must***" review evidence related to that issue. *Robinson*, 269 F.3d at 140 n.6. Accordingly, whether an exception to foreign sovereign immunity applies "***should not be resolved without adequate development of the factual record***." *Gabay v. Mostazafan Found. of Iran*, 151 F.R.D. 250, 256 (S.D.N.Y. 1993).

For that reason and in the FSIA context, "***generally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue*** [.]" *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998). A court is "typically within its discretion to order jurisdictional discovery where a plaintiff has made out a prima facie case for jurisdiction." *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017). A prima facie case is established where a plaintiff "has shown ***a reasonable basis for assuming [subject matter] jurisdiction***." *First City, Texas-Houston, N.A.*, 150 F.3d at 176. Upon such a showing, a court "***has the authority, and duty, to order discovery into the FSIA jurisdictional issue***." *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 185 F. Supp. 2d 335, 338 (S.D.N.Y. 2002).

Jurisdictional discovery is warranted "***to verify allegations of specific facts crucial to an immunity determination***." *First City, Texas-Houston, N.A.*, 150 F.3d at 176. To that effect, it is warranted "***to substantiate exceptions to statutory foreign sovereign immunity***." *Id.* Likewise, it is warranted "***to assist the court in undertaking an FSIA jurisdiction analysis***." *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 748 (2d Cir. 2000); *see also Reiss v. Societe Centrale du Groupe des Assurances Nationales*, 246 F. Supp. 2d 273, 277 (S.D.N.Y. 2003) ("if material issues of fact are in dispute, it is essential for the district court of afford the parties the opportunity to present evidentiary material at a hearing on the question of FSIA jurisdiction."). Jurisdictional discovery should also be granted where a plaintiff "***has pointed to specific facts that it desires to controvert, … the disputed facts are peculiarly within the knowledge*** of the sovereign, … ***and the requests are reasonably calculated to elucidate whether an FSIA jurisdictional exception applies***." *Compania del Bajo Caroni (Caromin) v. Bolivarian Republic of Venezuela*, 556 F. Supp. 2d 272, 282 (S.D.N.Y. 2008) (citing authorities). Parties "should be given a fair opportunity to engage in jurisdictional discovery and submit to the Court the evidence needed to resolve that issue." *Mateo v. Perez*, 1999 WL 216651, at *3 (S.D.N.Y. Apr. 13, 1999).

As set forth below in Sections I.A-D *infra*, Plaintiffs establish that jurisdictional discovery is available, and, if necessary, warranted as to the following issues.

2

# SEIDEN | LAW

**A.  Jurisdictional Discovery Is Available as to Sberbank's Owning Ismailov's Shares**

For at least two reasons, jurisdictional discovery is available and, if necessary, warranted as to Sberbank's owning Ismailov's Zeeland shares in Krasnaya Polyana or alternatively Sberbank's owing property that it exchanged for Ismailov's Zeeland shares in Krasnaya Polyana.

*First*, jurisdictional can be used to verify and substantiate Ismailov substantial showing on this issue. The FAC alleges that Sberbank took and owned Ismailov's Zeeland shares. ¶¶90-91. The Ukrainian Judgment concludes this. FAC Ex. D. at 21 (judgment arose out of Sberbank's taking the Zeeland shares in Krasnaya Polyana), *id.* at 25 (same based on audit on Sberbank). Sberbank admitted that it owned these shares, stating in its 2013 shareholder report that Sberbank had "finalized purchase price allocation of identifiable assets of OJSC Krasnaya Polyana," such that Sberbank's taking Ismailov's property caused Sberbank's ownership of Krasnaya Polyana to skyrocket from approximately 50 percent in 2012 to over 90 percent in 2013. Nachmani Decl. ¶¶35-36; Nachmani Ex. 29 at 189, 194 (as of 2012 Sberbank owned approximated 50 percent of Krasnaya Polyana); Nachmani Ex. 30 at 243 (as of 2013 Sberbank owned over 90 percent of Krasnaya Polyana); Ismailov Decl. ¶¶45-47; Ismailov Ex. 7 at 8-10 (audit reflecting that Sberbank owned approximately 50 percent of Krasnaya Polyana in 2012); Ismailov Ex. 8 at 17 (reflecting Sberbank's ownership of Krasnaya Polyana was above 90 percent at the end of 2013).

As to what Sberbank did with Ismailov's Zeeland shares, Sberbank stated to its shareholders in 2015 that it had executed the sale of its shares in Krasnaya Polyana (Nachmani Decl. ¶37; Nachmani Ex. 31 at 118) and represented to shareholders in 2016 that it had sold its ownership in Krasnaya Polyana for 35 billion rubles, over $390 million based on current exchange rates. Nachmani Decl. ¶38; Nachmani Ex. 32 at 54-55. Likewise, in its 2016 financial statements, Sberbank represented that it had made a profit of 12.2 billion rubles on this deal, approximately $136.5 million based on current exchange rates. Ismailov Decl. ¶48; Ismailov Ex. 9 at 14. That Plaintiffs have both tracked Sberbank's taking of Ismailov's property back to Sberbank and have identified Sberbank's exchange for and profits from the sale of that property at minimum establishes Ismailov's prima facie showing, warranting jurisdictional discovery on this issue; Ismailov will use such discovery to verify and substantiate his prima facie showing, if necessary.[3]

*Second*, jurisdictional discovery is available and, if necessary, warranted to resolve material issues of fact, as Defendants maintain that Plaintiffs have not established that Sberbank owned Krasnaya Polyana or owns property that Sberbank had exchanged for its owned shares of Krasnaya Polyana. Hut. Reply at 3-4; Sb. Reply at 1. Notably, Ismailov's ability to substantiate his showing and disprove Defendants' challenge would be based on facts solely within Sberbank's knowledge, including:

---

[3] Any money Sberbank received as a result of its sale of Ismailov's Zeeland shares in Krasnaya Polyana constitutes cognizable exchanged-for property under the Expropriation Exception. *See* Pl. Sur-Reply at 12-13; *see also Republic of Hungary v. Simon*, 145 S. Ct. 480, 495 (2025) (when an FSIA defendant "sells expropriated property, the cash proceeds it gets in return is the relevant property for purposes of § 1605(a)(3)."; vacating and remanding *Simon v. Republic of Hungary*, 77 F.4th 1077 (D.C. Cir. 2023) on inapposite grounds); *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 687-88 (7th Cir. 2012) (exchanged-for property satisfied Expropriation Exception).

# SEIDEN | LAW

- Whether Sberbank actually sold its ownership of Krasnaya Polyana, including Plaintiffs' 817 Zeeland shares, and, if so, whether Sberbank received the purported 35 billion rubles for it;

- How Sberbank priced its ownership of Krasnaya Polyana shares and the proportion of the 35-billion-ruble sales price that should be attributed to Ismailov's Zeeland shares in Krasnaya Polyana;

- Into what accounts Sberbank deposited and/or retained the proceeds of its sales of its ownership of Krasnaya Polyana, including the sale of the 817 Zeeland shares;

- Whether and how Sberbank subsequently used the proceeds of its sale of its Krasnaya Polyana ownership for other transactions; and

- In which accounts Sberbank currently retains the proceeds of its sale of its ownership of Krasnaya Polyana.

For these reasons, jurisdictional discovery on the disposition of Ismailov's Zeeland shares is available and, if necessary, warranted. *See Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000) (having ordered extensive jurisdictional discovery on expropriated property, including in *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 1996 WL 413680, at *7 (S.D.N.Y. July 24, 1996) (discovery concerning expropriated property or property exchanged for it) and *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 1995 WL 686715, at *3 (S.D.N.Y. Nov. 17, 1995) (discovery on issue of "the disposition of the plaintiff's property")); *Hum. Rts. in China v. Bank of China*, 2003 WL 22170648, at *6 (S.D.N.Y. Sept. 18, 2003) (ordering jurisdictional discovery on issues related to from where property was taken because discovery could clarify certain "jurisdictional facts" and "legal principles" related to sovereign immunity); *see also Helmerich & Payne Int'l Drilling Co. v. Petroleos de Venezuela, S.A.*, 2024 WL 4253142, at *2, *4 (D.D.C. Sept. 20, 2024) (jurisdictional discovery on issue of property ownership established that FSIA defendant illegally took and then owned property).

## B. Jurisdictional Discovery Is Available as to Sberbank's U.S. Commercial Activities

For at least two reasons, jurisdictional discovery is available and, if necessary, warranted as to whether Sberbank engaged in sufficient U.S. commercial activities under § 1605(a)(3).

*First*, jurisdictional discovery can be used to verify and substantiate Ismailov's substantial and at minimum prima facie showing that at all relevant times Sberbank engaged in massive commercial activity in the U.S. For example, the Sales Agreement is based on USD, with the Zeeland shares in Krasnaya Polyana valued in USD, the purchase price for the shares is set forth in USD, and Sberbank's contribution is denominated in USD. FAC Ex. A at 3. Sberbank facilitated transactions through bank accounts in the U.S., conducting approximately $46 billion in U.S. dollar transactions daily. ¶¶12, 19-21; Pl. Br. at 22; Nachmani Decl. ¶¶11, 39, 41-50; Nachmani Exs. 5, 33, 35-44; Pl. Sur-Reply at 13. Until the spring of 2022, Sberbank traded its ADRs on the NYSE, generating billions of dollars of market capitalization, and, as of August

4

# SEIDEN | LAW

2023, U.S. companies were still investing in Sberbank. ¶¶14-15, 23; Pl. Br. at 22; Nachmani Decl. ¶¶14-15; Nachmani Exs. 8-9; Pl. Sur-Reply at 13. Approximately 25 percent of Sberbank's shareholders are in the U.S., and its U.S. business ties were so strong that Sberbank did not need lobbyists. ¶¶15, 23; Pl. Br. at 22; Nachmani Decl. ¶16; Nachmani Ex. 10; Pl. Sur-Reply at 13.

*Second*, jurisdictional discovery is available and, if necessary, warranted to resolve material issues of fact, as Defendants maintain that Plaintiffs purportedly cannot establish cognizable U.S. commercial activity as a result of Sberbank's having been sanctioned in 2022. Hut. Reply at 4-5; Sb. Reply at 1. And notwithstanding that Defendants' position fails as a legal matter (Pl. Sur-Reply at 13-14; Defendants also cite no law), Ismailov has established at minimum a reasonable basis for the Court to reject Defendants' challenge. Ismailov established that, from 2022 through the present, Sberbank has been permitted to engage in U.S.-based energy-related transactions. Pl. Br. at 22; Nachmani Decl. ¶¶52-53; Nachmani Exs. 46-47; Pl. Sur-Reply at 13-14. In January 2025, OFAC extended Sberbank's license to conduct these transactions through March 12, 2025. Also in January 2025, OFAC granted Sberbank *an additional license* to engage in civil nuclear energy-related transaction through June 30, 2025. Nachmani Suppl. Decl. ¶¶7-8; Nachmani Suppl. Exs. 3-4. Moreover, the U.S. government is considering lifting sanctions against Russian entities, permitting those entities, including Sberbank, to once again engage in wide-ranging commercial activities in this country. Nachmani Supp. Decl. ¶¶10-11; Nachmani Suppl. Exs. 6-7. To the extent the Court credits Defendants' challenge, Ismailov's ability to disprove Defendants' assertion would be based on facts solely within Sberbank's knowledge, including:

- In what U.S.-related energy and nuclear transactions Sberbank took part;

- The parties to these transactions and Sberbank's role in them;

- The value of and the fees/profits Sberbank earned from these transactions; and

- The bank accounts Sberbank used to effectuate these transactions and the accounts Sberbank used to maintain its fees/profits from these transactions.

For these reasons, jurisdictional discovery on Sberbank's U.S. commercial activities is available and, if necessary, warranted. *See Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1333 (2d Cir. 1990) (ordering jurisdictional discovery on defendant's U.S. commercial activities based on plaintiff's specific factual allegations and to resolve factual issues concerning such activity); *Reiss*, 185 F. Supp. 2d at 338 (parties entitled to jurisdictional discovery to determine if FSIA's commercial activity exception applied); *see also Simon v. Republic of Hungary*, 77 F.4th 1077, 1120 (D.C. Cir. 2023) (noting the district court's granting of jurisdictional discovery on defendant's U.S. commercial activity based on defendant's factual challenges); *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 666 (7th Cir. 2012) (ordering jurisdictional discovery on instrumentality's U.S. commercial activities); *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1024 (9th Cir. 2010) (recognizing same as ordered in *Cassirer v. Kingdom of Spain*, 2006 WL 8423211, at *3 (C.D. Cal. Apr. 27, 2006)); *Schubarth v. Fed. Republic of Germany*, 2020 WL 13065292, at *13 (D.D.C. Mar. 12, 2020) (jurisdictional discovery on U.S. commercial activity); *Malewicz v. City of Amsterdam*, 362 F. Supp. 2d 298, 315 (D.D.C. 2005) (same).

# SEIDEN | LAW

Similarly, and only if the Court requires further investigation into this area, jurisdictional discovery is available as to whether Sberbank USA's activities should be attributed to Sberbank. The FAC alleges that Sberbank USA, a non-publicly traded company, engaged in massive commercial activity in the U.S. For example, Sberbank USA was incorporated in Delaware since 1997 and licensed to do business in New York. ¶25; Nachmani Decl. ¶¶40, 46; Nachmani Exs. 34, 40. Sberbank USA was a registered broker dealer, as well as a member of FINRA, the CFTC, and the National Futures Association. Nachmani Decl. ¶¶40, 51; Nachmani Exs. 34, 45. Sberbank USA was listed as Sberbank's corporate and investment banking business, providing financial and advisory services to corporations, financial institutions, sovereign states, and governmental organizations. ¶¶13, 26; Nachmani Decl. ¶22; Nachmani Ex. 16. In August 2017, Sberbank USA executed an extension of its non-cancelable operating lease for its office premises through June 2028. Nachmani Decl. ¶51; Nachmani Ex. 45. As of December 31, 2018, Sberbank USA possessed at least $21 million in assets in the U.S. ¶29; Nachmani Decl. ¶51; Nachmani Ex. 45.

Defendants assert that this activity is not cognizable because Sberbank USA purportedly stopped operating in December 2023 (and this case was filed just four months later). Sb. Br. at 17-18, 31. Jurisdictional discovery will substantiate Ismailov's prima facie showing of Sberbank's control over Sberbank USA (¶¶12-13, 25, 27), as such facts are solely within Sberbank's knowledge, including the categories of facts considered under *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117 (2d Cir. 1984) ("*Beech*") that can establish that Sberbank USA's activities should be attributed to Sberbank, such as "1) common ownership; 2) financial dependence of the subsidiary on the parent corporation; 3) the degree of interference in personnel selection and a failure to observe corporate formalities; and 4) the degree of control the parent corporation wields over the subsidiary's marketing and operational policies." *Int'l Diamond Importers, Inc. v. Med Art, Inc.*, 2017 WL 2839640, at *2 (S.D.N.Y. June 29, 2017) (citing and relying on *Beech*).

The S.D.N.Y routinely grants jurisdictional discovery on this issue and, if the Court is inclined to determine whether Sberbank USA's commercial activity should be attributed to Sberbank, it can and should order discovery here. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003) (where plaintiffs alleged that a subsidiary was a mere department of a parent, an inquiry turning on "a multi-factor test that is very fact-specific," the district court erred in dismissing "prior to allowing discovery on plaintiffs' insufficiently developed allegations regarding the relationship between [the parent] and its subsidiary"); *Tese–Milner v. De Beers Centenary A. G.*, 613 F. Supp. 2d 404, 417 (S.D.N.Y. 2009) (jurisdictional discovery, rather than dismissal, is appropriate if questions remain "regarding the relationship between a parent and its subsidiary given the fact-specific nature of the inquiry into whether a subsidiary's contacts should be imputed to the parent"); *see also Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 518 (S.D.N.Y. 2014) (ordering jurisdictional discovery on foreign parent company's control over domestic subsidiary); *Allojet PLC v. Vantgage Assocs.*, 2005 WL 612848, at *10 (S.D.N.Y. Mar. 15, 2005) (ordering discovery under *Beech* because plaintiff made "a sufficient start" to establishing jurisdiction, especially in light of the "complicated" ascertainability of information because companies were not publicly held).

6

**SEIDEN | LAW**

**C. Jurisdictional Discovery Is Available as to Sberbank as an Alter Ego of Russia**

Jurisdictional discovery is available and, if necessary, warranted to verify and substantiate Ismailov's at minimum prima facie showing that Russia's extensive control over Sberbank renders Sberbank an alter ego of Russia. For example, Russia is Sberbank's majority owner. ¶¶11, 35; Pl. Br. at 17; Nachmani Decl. ¶¶10-11; Nachmani Exs. 4-5; Szakonyi Ex. 2 at 2-3, 9, 11. Sberbank is a proxy to "channel support" and "cultivate influence" because it increases "Russia['s] leverage … while offering the Kremlin deniability" by, for example making financial investments at Russia's behest in various regions, such as the Balkans and opening offices in Russia-occupied Ukraine. ¶37; Pl. Br. 17-18; Nachmani Decl. ¶¶27-28, 32-33; Nachmani Exs. 21-22, 26-27; Szakonyi Ex. 2 at 2-3, 5, 11-12. Russia requires Sberbank to pay it billions in dividends, funds Russia uses for its budget and military operations, including Russia's war in Ukraine. Pl Br. at 17; Nachmani Decl. ¶¶29-31; Nachmani Exs. 23-25; Szakonyi Ex. 2 at 4, 9-11. Sberbank is considered a "proxy for the Russian economy," holding a majority of household deposits and Russia's corporate loans. Nachmani Decl. ¶25; Nachmani Ex. 19. Russia dictates how Sberbank manages its lending portfolio so that the government can maintain cheap access to credit (to benefit Putin's consolidation of power); and the Central Bank of Russia grants Sberbank lower borrowing costs than other banks to secure high returns on equity, as Sberbank manages Russia's pensions, state-employee salaries, and municipal bills. Szakonyi Ex. 2 at 2, 5, 7-8.

Putin specifically exerts significant control over Sberbank. Putin ordered Sberbank to make billions of rubles worth of loans during the 2009 global recession; Putin ordered Sberbank to maintain bank branches and continue growing its loan portfolio despite being non-profitable, calling it "payment for state support"; Putin routinely conducts meetings with Sberbank's CEO to "deal with Sberbank's affairs," during which Putin receives reports concerning Sberbank's results and operations; Putin ordered Sberbank to make investments in Russian social projects, such as opening schools in remote reaches of Russia's territory north of the Arctic Circle. Pl. Br. 17-18; Nachmani Decl. ¶¶23-24, 26, 32-34; Nachmani Exs. 17-18, 20, 26-28; Szakonyi Ex. 2 at 2-3, 7-10, 13-14. Sberbank helps Russia "buy votes" to rig elections for pro-Putin candidates. Szakonyi Ex. 2 at 7-8 Sberbank is Russia's "pocket bank," its "Ministry of Cash," an "instrument for the conduct of state policy," and a "political instrument of Putin's Russia." Szakonyi Ex. 2 at 2-3, 5, 11. That Sberbank may be liable under the Anti-Terrorism Act for providing financial services to pro-Putin, Russian-separatist terrorists provides further indicia of Russia's control over Sberbank. *See Schansman v. Sberbank of Russia PJSC*, 128 F.4th 70, 90 (2d Cir. 2025).

Notably, ***Defendants do not challenge any of the allegations or evidence that Ismailov has set forth***, including those in the Nachmani Declaration and the Szakonyi Declaration. Rather, Defendants maintain merely that Plaintiffs purportedly abandoned their alter ego theory (Sb. Reply at 4-6) and that the factual allegations set forth in Professor Szakonyi's report do not purportedly add up to the conclusion that Russia so extensively controls Sberbank that Sberbank should be considered a Russian alter ego. Sb. Reply at 11-14. Notwithstanding that Defendants are wrong, jurisdictional discovery is available and, if necessary warranted, to verify and substantiate Ismailov's prima facie showing based on facts solely within Sberbank's knowledge, including facts under the following categories:

7

# SEIDEN | LAW

- Russia's Use of Sberbank's Property. That Sberbank provides Russia with a significant share of its dividends and a profits; that Russia uses the property transferred to it from Sberbank to benefit Russia; whether Russia uses and/or pays for any real estate or office space owned or rented by Sberbank; whether Russia and Sberbank share bank accounts.

- Russia's Control of Sberbank's Policies and Transactions. That Russia controls how Sberbank conducts business, including Russia's approval or control over Sberbank's transactions, budgets, capital investments, spending programs, loan policies, and economic goals.

- Russia's Control Over Sberbank's Management and Operations. Russia's control over:  Sberbank's policies, transactions, and business relationships; Sberbank's profits; Sberbank's board of directors and executives, including by appointment and removal; Sberbank's organizational structure, including Sberbank's subsidiaries and affiliates; Sberbank's by-laws and corporate governance; and Sberbank's routine business affairs and operations, such as payroll and expenses.

- Profits and Beneficiaries. That Russia uses Sberbank funds to further Russia's policy goals or orders Sberbank to engage in activities that promote Russia's geo-political influence and support Putin's regime; that Sberbank takes out debt or issues loans for Russia's benefit or to Russia on favorable terms; that Russian officials divert Sberbank funds for personal use; any social programs to which Russia mandates Sberbank contribute.

For these reasons, jurisdictional discovery on Russia's extensive control over Sberbank is available and, if necessary, warranted. *See Gabay*, 151 F.R.D. at 255, 257 (ordering jurisdictional discovery on whether entity was controlled by sovereign); *see also Intelsat Glob. Sales & Mktg., Ltd. v. Cmty. of Yugoslav Posts Telegraps & Telephones*, 534 F. Supp. 2d 32, 36 (D.D.C. 2008) (ordering jurisdictional discovery as to relationship between sovereign and entity); *Agurcia v. Republica De Honduras*, 2020 WL 5803001, at \*4 (M.D. Fla. May 22, 2020) (same).[4]

---

[4] On reply and citing no authority, Defendants maintain that Ismailov's claim is incognizable because, if Sberbank were an alter ego of Russia, Ismailov purportedly would have to have pled that the taken property is located in the U.S., as is required in a taking committed by a sovereign. Hut. Reply at 5-6. Not so. An instrumentality is not transformed into a sovereign because the instrumentality is an alter ego of a sovereign; rather a "principal-agent relationship arises between them[.]" *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 55 (2d Cir. 2021). Likewise, an instrumentality's taking is not statutorily treated as a sovereign's taking because the instrumentality was the sovereign's alter ego; it is treated as an instrumentality's taking. *See Helmerich & Payne Int'l Drilling Co.*, 2024 WL 4253142, at \*4-5 (taking committed by alter ego instrumentality was cognizable when taken property was located outside the U.S.).

# SEIDEN | LAW

**D.  Jurisdictional Discovery Is Available as to Kuznetsov and Hutseriev**

Jurisdictional discovery is available and, if necessary, warranted as to Kuznetsov and Hutseriev on limited topics related to those set forth in Sections II.A-C *supra*. As to Kuznetsov, such discovery is available and, if necessary, warranted as to the following topics:

- Kuznetsov's access to and control over Sberbank's commercial activity and property in the U.S., including Sberbank's bank accounts in the U.S.;

- Kuznetsov's business transactions or contracts for goods or services in the U.S. and New York; and

- Kuznetsov's ownership of property in New York.

As to Hutseriev, such discovery is warranted as to the following topics:

- Hutseriev's business transactions or contracts for goods or services in the U.S. and New York; and

- Hutseriev's ownership of property in New York.

For the reasons set forth herein, jurisdictional discovery is available and, if necessary, warranted.[5]

Respectfully submitted,

/s/ Jake Nachmani
**SEIDEN LAW LLP**
Jake Nachmani
Michael Stolper
MarcAnthony Bonanno
322 Eighth Avenue, Suite 1200
New York, NY 10001
(646) 766-1723

*Attorneys for Plaintiffs*

cc: All counsel of record (via ECF)

---

[5] In the event that the Court grants jurisdictional discovery as to any issue herein, Plaintiffs will serve Defendants with narrowly-tailored document requests and deposition subpoenas.