

*Jay S. Auslander*
*Partner*
*212.981.2338*
*jauslander@wilkauslander.com*

April 1, 2025

**VIA ECF**

Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007
Torres_NYSDChambers@nysd.uscourts.gov.

> Re:    *Ismailov, et al. v. Hutseriev, et al.*, No. 24-cv-03287 (AT) (S.D.N.Y.)

Dear Judge Torres:

We represent Defendants Sberbank of Russia PJSC ("Sberbank"), Stanislav Kostiantynovych Kuznetsov (collectively, with Sberbank, the "Sberbank Defendants") and Mykhailo Safarbekovych Hutseriev (collectively, with the Sberbank Defendants, "Defendants") in the above-titled action. We write in response to Plaintiff Musaib Ismailovych Ismailov's and Akhmed Hadzhyiovych Bilalov's (collectively, "Plaintiffs") letter of March 18, 2025 (ECF No. 104) ("Pls.' Ltr."), and in accordance with Your Honor's Order of February 25, 2025, which requested additional briefing addressing "whether jurisdictional discovery is available and, if so, whether it is warranted on any issue now before the Court." (ECF No. 102).

The answer to both questions is no. The central problem with Plaintiffs' position is that it conflates two distinct types of challenges available at the pleading state to a foreign state defendant under the FSIA: (i) a facial challenge to the *sufficiency* of the pleadings; and (ii) a factual challenge to the *veracity* of the pleadings. *See generally Nam v. Permanent Mission of Republic of Korea to United Nations*, 118 F.4th 234, 244 (2d Cir. 2024). At the pleading state, a "defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both," *see id*., but only factual challenges open the door to extrinsic evidence and, therefore, jurisdictional discovery. Even then, moreover, jurisdictional discovery is not available as a matter of course, but only to "verify *allegations* of specific facts crucial to an immunity determination." *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) ("*EM Ltd. I*") (quoting *First City, Texas–Houston, N.A. v. Rafidain Bank,* 150 F.3d 172, 176 (2d Cir.1998)) (emphasis added).

No such discovery is appropriate here because – first and foremost – Defendants' challenges under the FSIA are all facial challenges. They are directed at the First Amended



Hon. Analisa Torres
April 1, 2025
Page 2

Complaint as it stands, not as Plaintiffs have retconned it in their opposition papers, and not as Plaintiffs imagine it to be in their accompanying exhibits and expert submissions. Until Plaintiffs "articulate a 'reasonable basis' for the court first to assume jurisdiction," they can take no jurisdictional discovery to resolve disputes over such facts. *See Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 207 (2d Cir. 2016) (quoting *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990)).

No such discovery is appropriate here, moreover, because Plaintiffs have neither alleged nor identified any specific facts crucial to an immunity determination. Rather, Plaintiffs identify a vague group of loosely connected topics and legal theories extrinsic to their own pleadings, not specific and concrete facts that – if true – would establish the expropriation exception. What they instead suggest is a quintessential "fishing expedition that seeks to examine the details of the relationships between them and a number of distinct legal entities without any non-speculative basis for believing that those details would establish jurisdiction." *Id*.

## I.    Procedural Framework and Legal Standard for Jurisdictional Discovery

"Plaintiffs must allege sufficient facts to warrant jurisdictional discovery." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 783 (S.D.N.Y. 2005) (citing *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 146 (2d Cir. 2001)); *see also Agrocomplect, AD v. Republic of Iraq*, 524 F. Supp. 2d 16, 34 (D.D.C. 2007), *aff'd*, 304 F. App'x 872 (D.C. Cir. 2008) ("Jurisdictional discovery is not warranted when [the] plaintiff['s] allegations, even if supplemented or verified, would remain insufficient to establish a FSIA exception." (alterations in original)).

Here, that is the very question before the Court: whether the First Amended Complaint survives any of Defendants' several facial challenges. It does not, and therefore – because Plaintiffs do not "articulate a 'reasonable basis' for the court first to assume jurisdiction," *Arch Trading Corp.*, 839 F.3d at 207 – no jurisdictional discovery is appropriate. *See also Robinson*, 269 F.3d at 146 ("[T]he conclusory nature of [Plaintiff's] allegations alone would give us pause before we would allow them to sustain jurisdiction.")

### Defendants Raise Only Facial Challenges Under the FSIA

On a Rule 12(b)(1) motion under the FSIA, a "defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Nam*, 118 F.4th 234, 244 (2d Cir. 2024). When the defendant "challenges only the legal sufficiency of the plaintiff's jurisdictional allegations" – a facial challenge – the Court treats the motion in the usual manner under Rule 12, "tak[ing] all facts alleged in the complaint as true and draw[ing] all reasonable inferences in favor of plaintiff." *Id*. (citing *Robinson*, 269 F.3d at 140).

The record on a facial challenge thus consists of the complaint and documents integral to it: "Where the motion presents a facial challenge to the Court's jurisdiction, or one based purely on the sufficiency of the plaintiff's allegations, the Court must accept well-pled factual allegations as true and generally may consider only the complaint and any documents referenced in or attached to it." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 388 (D. Del. 2018), *aff'd and remanded*, 932 F.3d 126 (3d Cir. 2019). "Affidavits and briefs in opposition

do not fall in this category." *Id*. (quoting *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F. 3d 99, 105 (3d Cir. 2015). In contrast, "where there is a factual challenge," and "evidence relevant to the jurisdictional question is before the court, the district court . . . may refer to [that] evidence." *Nam*, 118 F.4th at 244.

By bringing facial challenges to the First Amended Complaint, Defendants' motions thus challenge the very predicate that Plaintiffs must establish in order to open up jurisdictional discovery in the first place: a well-pleaded complaint that "plausibly allege[s] that subject matter jurisdiction exists." Wright and Miller, 13 Fed. Prac. & Proc. Juris. § 3522 n. 9.50 (3d ed.) ("A plaintiff seeking discovery to prove subject matter jurisdiction must first plausibly allege that subject matter jurisdiction exists." (citing *DeMolick v. United States*, 2023 WL 3562979 at *4 (3d Cir. 2023)).

Here, Defendants' arguments under the FSIA constitute facial challenges to all four elements of the expropriation exception, and unless and until Plaintiffs can survive these challenges to the legal sufficiency of their allegations, there are – quite literally – no "*allegations of specific facts* crucial to an immunity determination" to "verify" through jurisdictional discovery. *EM Ltd. I*, 473 F.3d at 486.

Plaintiffs maintain that they can cure their failure to "establish" the elements of the expropriation exception by resort to jurisdictional discovery, but the problem is more fundamental than that, because they have not alleged that exception in the first place. Consistent with the "goal of the FSIA to enable a foreign government to obtain an early dismissal when the substance of the claim against it does not support jurisdiction," *Robinson*, 269 F.3d at 146, the Court should rule on these facial objections before it authorizes jurisdictional discovery to resolve any facts that remain controverted.

First, Defendants challenge whether an action seeking recognition of a foreign money judgment is or ever can be an action in which rights in allegedly expropriated property are "in issue" under 28 U.S.C. 1604(a)(3). (*See* Sberbank Defs.' Mem. L. Supp. Mot. Dismiss 22) ("The expropriation exception does not apply when property rights are in some loose sense implicated by a cause of action or incorporated into the plaintiffs' complaint . . . . it applies only to an action in which rights to allegedly expropriated property are actually 'in issue.'"). That is a purely legal question, one that cannot possibly benefit from further discovery, and one squarely answered in Defendants' favor by *Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp.3d 11 (D.D.C. 2023). (*See id*.) Had Plaintiffs brought (yet another) plenary action, their underlying rights in Krasnaya Polyana *might* be said to be "in issue" – they would still in-*valid*, to be sure, but there might at least be a debate as to whether those rights were "in issue" (subject to and without prejudice towards Defendants' defenses and immunity under the FSIA). Instead, Plaintiffs ask the Court to rubberstamp the Ukrainian court's judgment under the Uniform Act with no examination of the underlying merits. The expropriation exception does not reach such actions.

Second, Defendants challenge whether Plaintiffs' alleged intangible rights to payment for Zeeland's shares in Krasnaya Polyana constitute "property" within the meaning of the expropriation exception. (*See* Sberbank Defs.' Mem. L. Supp. Mot. Dismiss 24-25) ("[W]hether

characterized as the shares of Krasnaya Polyana (which are intangible) or as a right to payment under the Sales Agreement, the property rights that Plaintiffs claim are 'in issue' in this case cannot be the object of an expropriation . . . ."). Again, this is a purely legal question, and one answered in Defendants' favor by *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 749 (S.D.N.Y. 2004) and *Nemariam v. Fed. Democratic Republic of Ethiopia*, 491 F.3d 470, 473 (D.C. Cir. 2007). No amount of discovery could alter the purely legal nature of that question, nor alter the conclusion that this pleading deficiency is fatal to Plaintiffs' claims.

It bears repeating, moreover, that neither Ismailov nor Bilalov had *any* rights under the purported single-page Sales Agreement, because neither of them was a party to it, nor were either of the individual defendants, Kuznetsov and Hutseriev. Rather, Zeeland was the alleged seller, BIN Group was the alleged buyer, and Sberbank was an alleged lender to BIN Group. (First Am. Compl. Ex. A) (ECF No. 18-2). While Plaintiffs insist that additional discovery could reveal the present status of "Ismailov's shares," (Pls.' Ltr. 3) there is of course no such thing – only Zeeland's shares (if any) (*see* First Am. Compl. ¶¶ 89-90) – and no amount of discovery could change that fact.

Third, and most significantly, Defendants challenge the very notion that a state-owned enterprise, as distinct from its sovereign, can expropriate property. (*See* Sberbank Defs.' Mem. L. Supp. Mot. Dismiss 28) ("[T]he Court's reasoning in *Bilalov I* was both correct and categorical: Sberbank cannot 'take' because Sberbank is not the sovereign.")

Indeed, the word "challenge" understates the force and valence of this objection, as the rule that only foreign states *qua* states can expropriate within the meaning of 28 U.S.C. § 1605 is firmly established both within and without the Second Circuit and was a key basis for this Court's dismissal of *Bilalov I. See Garb v. Republic of Poland*, 440 F.3d 579, 587 (2d Cir. 2006) ("[N]ationalization of property is a 'quintessential [g]overnment act.'"); *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000) ("The term "taken" thus clearly refers to acts of a sovereign, not a private enterprise, that deprive a plaintiff of property without adequate compensation."); *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1228 (11th Cir. 2018) ("Under the expropriation exception, expropriation is a uniquely sovereign act, as opposed to a private act. Similar to the concept embodied in our Fifth Amendment to the U.S. Constitution, FSIA expropriation involves sovereign 'takings' of property, without just compensation."); *Bilalov I*, 2022 WL 4225968, at *6 ("[F]or the purposes of the FSIA, the term taken refers to acts of a sovereign, not a private enterprise, that deprive a plaintiff of property without adequate compensation.")

After some initial quibbling over the scope and effect of that rule, Plaintiffs have now gone all-in on the theory that Sberbank acted as the alter ego of the Russian Federation when it entered into the (non-existent) Sales Agreement with Zeeland and allegedly expropriated Plaintiffs' property by failing to pay the purchase price to Zeeland under that Agreement. They therefore seek jurisdictional discovery on that issue: that is, whether – under the *Bancec* test, *see First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 614 (1983) – Sberbank may be deemed to have acted as the alter ego of the Russian Federation.



The main problem with that theory is that Plaintiffs have already *affirmatively stricken it from their own complaint*. (Suppl. Redline Am. Compl. ¶ 51) (ECF No. 18-1). Only in response to Defendants' motions to dismiss – which apprised them of the rule of *Zappia*, *Garb*, and *Bilalov I* – did Plaintiffs apparently realize their mistake and attempt to revise the First Amended Complaint through the backdoor, submitting reams of entirely extrinsic and largely extraneous exhibits in support of a theory that they had already abandoned.

Even now, Plaintiffs' requests for jurisdictional discovery do not establish a non-speculative basis to assert an alter ego theory under *Bancec* (more on that below). The more fundamental problem, however, is – again – that "Plaintiffs must allege sufficient facts to warrant jurisdictional discovery," *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d at 783, and the First Amended Complaint makes not even the faintest attempt to do so. To the contrary, Plaintiffs' discovery demands operate as an admission, a concession that they have not alleged a plausible basis to equate Sberbank with the Russian Federation, and thus no plausible basis to invoke the expropriation exception under the rule of *Zappia* (or, indeed, *Bilalov I*). Nor is it clear that they ever could, given that their theory collides headlong into the act of state doctrine.

In any event, the First Amended Complaint simply *does not allege* an alter ego theory – period, end of story. Plaintiffs cannot seek jurisdictional discovery in support of this theory unless and until they "articulate" a "reasonable basis" for setting aside immunity under the expropriation exception. *Arch Trading*, 839 F.3d at 207 (quoting *Filus*, 907 F.2d at 1332).

Fourth, Defendants challenge Plaintiffs' failure to allege the basis on which Sberbank's alleged non-payment under a commercial contract constituted a violation of international law within the meaning of 28 U.S.C. 1605. (*See* Sberbank Defs.' Mem. L. Supp. Mot. Dismiss 29).

The First Amended Complaint purports to have addressed the domestic takings rule by joining Ismailov as a Plaintiff. Yet "breach of a commercial contract alone does not constitute a taking pursuant to international law," *Zappia*, 215 F.3d at 252 (citing *First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda–Permanent Mission,* 877 F.2d 189, 193 (2d Cir.1989)), and the Complaint says precisely nothing about how Sberbank's alleged breach fits within the test established in *Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*, 999 F.3d 808, 821 (2d Cir. 2021). On the contrary, the First Amended Complaint affirmatively rules out the theory that any taking was "arbitrary," because it concedes (as it must) that Krasnaya Polyana had a public purpose as a site of the 2014 Winter Olympic Games. (First Am. Compl. ¶¶ 65, 68, 79). The First Amended Complaint is otherwise silent on how Sberbank's supposed breach violated international law, as if the requirement that a taking violate international law does not even exist. This, too, is a *facial* deficiency, one that Plaintiffs cannot seek to cure through jurisdictional discovery because they simply have not alleged a prima facie theory that Defendants' alleged failure to pay Ismailov under a commercial contract was a taking in violation of international law in the first place.

Fifth, Defendants challenge the First Amended Complaint's failure to allege a commercial nexus between Defendants' alleged breach of the Sales Agreement and the United States – that is, whether "property or any property exchanged for such property is owned or operated by an agency



Hon. Analisa Torres
April 1, 2025
Page 6

or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(2). Plaintiffs' counsel now says that "at all relevant times Sberbank engaged in massive commercial activity in the U.S." (Pls.' Ltr. 4). But there is only *one* relevant time: April 2024, when Plaintiffs filed their lawsuit, and the First Amended Complaint fails to allege even in conclusory fashion that Sberbank engaged in any U.S.-based commercial activity at that time.

Defendants' supporting exhibits, moreover, are directed to its various arguments under Rule 19 and Rule 12(b)(6), not their challenge to subject matter jurisdiction under Rule 12(b)(1).

Exhibit 1 is Sberbanks' Code of Corporate Conduct, submitted to show that Sberbank indemnifies its officers and directors – such as Kuznetsov – in support of Kuznetsov's argument under Rule 19 that the case against him may not proceed in Sberbank's absence. Exhibits 3, 4, 5, 6, and 7 are all sources of foreign law, specifically provisions of Ukrainian procedural and martial law submitted in support of Defendants' challenge to the enforceability of the judgment under CPLR 5304 under Rule 12(b)(6). As such, these exhibits do not transmute Defendants' facial challenges into factual challenges, and the Court should rule on those challenges before authorizing any jurisdictional discovery.

The lone exception, Exhibit 2, consists of official records from Delaware confirming that Sberbank CIB dissolved in December 2023, demonstrating that it cannot have engaged in any commercial activity in the United States at the time of filing despite the First Amended Complaint's allegation that "Sberbank, via Sberbank [CIB], is engaged in commercial activity in the United States." (First Am. Compl. ¶ 42(c)). Yet, ironically, that fact – Sberbank CIB's December 2023 dissolution – is one with which Plaintiffs do not take issue. And even if they did, the First Amended Complaint still fails to allege any commercial activity by Sberbank CIB at the time of filing.

<u>Defendants Raise Other Threshold Defenses That Vitiate Any Need For Jurisdictional Discovery</u>

Defendants, moreover, bring several additional threshold challenges that would likewise dispose of the case, all of which the Court should resolve before permitting any jurisdictional discovery: "[W]here a colorable claim of immunity is made, a trial court should – at least if the defendant so argues – normally consider other potentially dispositive jurisdictional defenses before allowing FSIA discovery, with an eye towards minimizing the total costs imposed on the defendant." *In re Papandreou*, 139 F.3d 247, 254 (D.C. Cir. 1998) That is because: "If one (or more) of the other jurisdictional defenses hold out the promise of being cheaply decisive, and the defendant wants it decided first, it may well be best to grapple with it (or them) first. It would be bizarre if an assertion of immunity worked to increase litigation costs via jurisdictional discovery, to the neglect of swifter routes to dismissal." *Id*.

Hon. Analisa Torres
April 1, 2025
Page 7

## II.    Plaintiffs' Legal Authority Does Not Establish Their Entitlement to Any Jurisdictional Discovery

Plaintiffs' cited legal authority does nothing to dispel this framework. To the contrary, Plaintiffs repeatedly overlook or obscure the full context and import of their own caselaw, most of which involved factual challenges rather than facial challenges.

Indeed, Plaintiffs start by giving the game away, citing *Robinson*, 269 F.3d at 140 for the proposition that "a court 'must look at *the substance of the allegations* to determine whether an exception to the FSIA applies.'" That is correct: the allegations must come first; jurisdictional discovery may follow only as necessary to verify those allegations. Similarly, in *Rafidain*, 150 F.3d at 176, the Plaintiff had properly alleged that one of two foreign state instrumentalities (Rafidain) lacked immunity under the commercial activity exception; the Second Circuit therefore remanded to permit Plaintiff to take jurisdictional discovery from *that* defendant – the one Plaintiffs had already established was *not* immune.

Plaintiffs most forceful citation, *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 185 F. Supp. 2d 335, 338 (S.D.N.Y. 2002), speaks of a "duty" to order jurisdictional discovery. What Plaintiffs omit, however, is that this "duty" came from the Second Circuit, which had remanded for fact-finding because – in its view – the complaint at issue indeed sufficiently alleged the applicability of the commercial activity exception: and did so in "minute detail." *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 748 (2d Cir. 2000). As the district court subsequently put it: "[Plaintiff] *detailed facts in the complaint* that might support the Court's exercise of jurisdiction herein." *Reiss*, 185 F. Supp. 2d at 339. *Reiss* thus establishes no generalized "duty" to order jurisdictional discovery, but rather reaffirms that well-pleaded and detailed allegations are a necessary precondition to such discovery. *Id.* Plaintiffs here have not met that standard.

Taken together, Plaintiffs' citations collectively establish only that jurisdictional discovery may be ordered "circumspectly" under the FSIA, *Arch Trading*, 839 F.3d at 206, so long as (and *only* so long as) a plaintiff first alleges "a prima facie case that the district court had jurisdiction." *See In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 96 (2d Cir. 2008), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010) ("Since [Plaintiffs] did not establish a prima facie case that the district court had jurisdiction over [the defendants], the district court did not err in denying discovery on that issue." (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) (alterations in original))). That is a rule nobody disputes: what Plaintiffs' authorities fail to establish is that such discovery is appropriate here. It is not.

## III.    Plaintiffs Do Not Identify Specific Facts Crucial to an Immunity Determination

Lastly, even assuming solely for the sake of argument that the First Amended Complaint adequately pleaded a basis for jurisdiction under the expropriation exception (which it emphatically does not), Plaintiffs' proposed jurisdictional discovery fails the test of circumspection and precision required in the Second Circuit.



Jurisdictional discovery is appropriate only to "verify *specific facts crucial* to an immunity determination." *EM Ltd. I*, 473 F.3d at 486 (quoting *First City, Texas–Houston, N.A. v. Rafidain Bank,* 150 F.3d 172, 176 (2d Cir.1998)) (emphasis added). Here, Plaintiffs fail to point to either "specific" facts or "crucial" facts. *Id*.

First, Plaintiffs argue that jurisdictional discovery is appropriate on the current ownership of the shares of Krasnaya Polyana and/or their proceeds. Notably, they take liberties with their own allegations here, maintaining that: "[t]he FAC alleges that Sberbank took and owned Ismailov's Zeeland shares" even though, in reality, the First Amended Complaint alleges the "transfer of the 817 shares of the Company *to Hutseriev*," (¶ 91), while the (phony) Sales Agreement identifies *BIN Group* as the purchaser. (*Id*. Ex. A).

Again, it is only in their responses to Defendants' motions to dismiss that Plaintiffs belatedly assert that Sberbank took possession of the shares. Even then, although Defendants are hesitant to suggest that the Court should assume the truth of allegations that are *not* in the First Amended Complaint, the plain reality here is that – even if the Court *were* to assume for purposes of analysis that Sberbank (not BIN Group) received Zeeland's 817 shares in Krasnaya Polyana – the First Amended Complaint would still fail to allege the applicability of the expropriation exception, for all the reasons stated above. The present ownership of those 817 shares and their proceeds is therefore not a "crucial" fact, because the First Amended Complaint fails on numerous other grounds.

Second, Plaintiffs argue that discovery is appropriate to ascertain whether Sberbank is an alter ego of Russia, despite having literally lined out the phrase "alter ego" from the First Amended Complaint. The problem here is that – even crediting the letters of Plaintiffs' counsel as if they were allegations of the complaint (which of course the Court should *not* do) – Plaintiffs' frantic resort to newspaper articles and repeated talismanic invocation of the name Vladimir Putin do not establish the requisite day-to-day control required to establish an alter ego relationship under the *Bancec* test, and Plaintiffs identify no specific facts or even specific discovery requests that might lead to a contrary conclusion.

*Arch Trading* makes that abundantly clear: "the 'touchstone inquiry' for the 'extensive control' required by *Bancec* is 'whether the sovereign state exercises significant and repeated control over the instrumentality's *day-to-day operations*.'" *Arch Trading Corp.*, 839 F.3d at 202 (emphasis added).

Ridiculously, Plaintiffs offer theories of day-to-day operational control that the Second Circuit has *already rejected* almost verbatim – including in cases Plaintiffs themselves purport to rely on. For instance – citing their expert – Plaintiffs claim that they have shown a prima facie case for day-to-day control because Sberbank is, supposedly, an "instrument for the conduct of state policy," and a "political instrument of Putin's Russia." (Pls.' Ltr. 7).

Yet the Second Circuit has been absolutely clear that such allegations do not support the inference of an alter ego relationship between an instrumentality and its sovereign:



Hon. Analisa Torres
April 1, 2025
Page 9

> An entity does not become a sovereign's alter ego merely because it "assist[s]" the sovereign in carrying out the sovereign's "policies and goals."

*Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 55 (2d Cir. 2021) (citing *EM Ltd. v. Banco Central de la República Argentina*, 800 F.3d 78, 89 (2d Cir. 2015)).

Third, Plaintiffs claim that jurisdictional discovery is appropriate to determine whether "Sberbank USA's activities should be attributed to Sberbank" for purposes of the commercial nexus element of the expropriation exception. (Pls.' Ltr. 6). Again, however, that issue is only germane if Plaintiffs can survive Defendants' facial and procedural challenges to the First Amended Complaint, which they cannot. Yet Plaintiffs again face a more fundamental problem here: the law does not permit the Court to attribute the conduct of a subsidiary to a foreign state.

According to Plaintiffs, courts in the Southern District "routinely" grant jurisdictional discovery on whether the commercial activity of a subsidiary may be attributed to a parent for purposes of establishing the commercial nexus element of the expropriation exception. (Pls.' Ltr. 6).

No, they do not. Plaintiffs cite *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117 (2d Cir. 1984) and its progeny in support. But that case famously established that, for purposes of assessing in personam jurisdiction – that is, minimum contacts and due process – discovery into the agency relationship between a parent and its subsidiary may be appropriate, on the theory that the acts of a subsidiary acting as a "mere department" of its parent may constitute the acts of the parent itself for purposes of establishing long-arm jurisdiction.

*Beech's* "mere department" theory of long-arm jurisdiction, however, is a non-starter under the FSIA. Rather, *Arch Trading* again supplies the rule of decision, and it is – again – the *Bancec* test:

> Plaintiffs do not contend that either CFN or the Trust is itself engaged in commercial activity in the United States. Rather, they argue primarily that we should impute to each the United States activities of several other entities and on that basis determine that CFN and the Trust are subject to jurisdiction under prong [2]. But CFN and the Trust are entities distinct from the subsidiaries and other Ecuadorean entities to which plaintiffs point. The presumption of legal separateness established by the Supreme Court in *First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) *197 ("Bancec"), and respect for international comity compel us to treat these legally separate entities as just that, unless plaintiffs can demonstrate that CFN and the Trust exercise "significant and repeated control over the [entities'] day-to-day operations."

Even within its own sphere, moreover – whether forum contacts are sufficient to establish in personam jurisdiction – it is doubtful that *Beech* survived the Supreme Court's revolutionary decisions in *Goodyear Dunlop Tires Operations, S.A. v. Brown* and (especially) *Daimler AG v. Bauman*. *See generally Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 348



(S.D.N.Y. 2018). Yet whether alive or dead, the greater problem for Plaintiffs is that *Beech* simply *does not apply* in FSIA cases.

Unwittingly, then, Plaintiffs have shouldered themselves with the burden of establishing a second alter ego relationship, this time between Sberbank CIB and Sberbank. Yet – as with the supposed relationship between Sberbank and the Russian Federation – Plaintiffs have yet to formulate a cognizable theory of Sberbank's day-to-day control over Sberbank CIB. Worse yet, Plaintiffs have not only failed to even attempt to allege such a relationship in the First Amended Complaint, they did not even raise this new theory until prompted by the Court itself after the close of briefing.

Lastly, Plaintiffs' asserted bases for inferring Sberbank's own conduct of commercial activity in the United States are speculative, not concrete. Plaintiffs point out that the Sales Agreement is denominated in U.S. dollars, but that theory has two insurmountable problems: (i) the Sales Agreement is dated 2014, and therefore says nothing about whether Sberbank or Sberbank CIB are *presently* engaged in commercial activity in the United States, as the expropriation exception requires; (ii) ever since the 1944 Bretton-Woods conference, the dollar has remained the world's most extensively employed reserve currency, *see generally* Lan Cao, *Currency Wars and the Erosion of Dollar Hegemony*, 38 Mich. J. Int'l L. 57, 82 (2016) ("[The dollar] became the unquestioned top dog currency of the international system."), and therefore the argument that a dollar-denominated transaction implies commercial activity in the United States itself is risible. Perhaps that argument may have had purchase in 1925, but it has none in 2025.

Next, Plaintiffs ask the Court to infer commercial activity by Sberbank in the United States at the time they commenced the action on the basis of OFAC's General License 8L (available at https://ofac.treasury.gov/media/933791/download?inline). True to form, however, Plaintiffs flagrantly distort the scope and purpose of that license, which authorizes U.S. persons to *wind down* transactions, not engage in new ones: "all transactions prohibited by Executive Order (E.O.) 14024 involving one or more of the following entities that are ordinarily incident and necessary *to the wind down of any transaction related to energy* are authorized." General License 8L, therefore, does not even authorize commercial activity by Sberbank in the United States: it authorizes U.S. persons to *cease* any ongoing commercial activity with Sberbank, irrespective of location.

Defendants have raised a full panoply of facial challenges to subject matter jurisdiction under the First Amended Complaint and several threshold procedural defenses, any of which – if successful – would require dismissal. Jurisdictional discovery is therefore both unnecessary and inappropriate, unless and until before the Court has ruled on those objections.

Respectfully submitted,

Wilk Auslander LLP

*/s/Jay S. Auslander*
Jay S. Auslander
Natalie Shkolnik

**Wilk Auslander**

Hon. Analisa Torres
April 1, 2025
Page 11

Aari Itzkowitz
David Partida
Michael Van Riper

cc:     Counsel of record (by ECF)